**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Case No.: 1:19-cv-8209 |
| Plaintiff, ) ) ) | Judge: Virginia M. Kendall |
| v. ) ) | Magistrate Judge: Susan E. Cox |
| EXELON CORPORATION, CHRISTOPHER M. CRANE, JOSEPH NIGRO, JOSEPH DOMINGUEZ, and JEANNE M. JONES, ) ) ) ) ) | |
| Defendants. ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF**
**KAREN FISCHER FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL**

Karen Fischer ("Movant") respectfully submits this memorandum of law in support of

her motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of

1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995

(the "PSLRA"):

(a)     appointing Movant as Lead Plaintiff for the Class of all purchasers of the publicly

traded securities of Exelon Corporation ("Exelon" or the "Company") during the period from

February 9, 2019 through November 1, 2019, inclusive (the "Class Period"); and

(b)     approving Movant's selection of The Rosen Law Firm P.A. as Lead Counsel for

the Class, and the law firm of Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel

for the Class.

1

## INTRODUCTION AND BACKGROUND

This action was initiated on December 16, 2019 in this Court. That same day, a PSLRA early notice advising class members of the pendency of the action and the deadline for class members to seek lead plaintiff status was issued. *See* Declaration of Carl Malmstrom, filed herewith ("Malmstrom Decl."), Ex. 1.

Exelon was incorporated in 1999 and is headquartered in Chicago, Illinois. Exelon is a utility services holding company that engages in energy generation and delivery businesses in the U.S. and Canada. Exelon owns various "Utility Registrants" that are regulated by State utility commissions, including, among other entities, Commonwealth Edison ("ComEd"). ComEd's parent company is Exelon Utilities.

The complaint alleges that throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Exelon and/or its employees were engaged in unlawful lobbying activities; (2) the foregoing increased the risk of a criminal investigation into Exelon; (3) ComEd's revenues were in part the product of unlawful conduct and thus unsustainable; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times.

On July 15, 2019, during pre-market hours, Exelon filed a Current Report on Form 8-K with the SEC, disclosing that both Exelon and ComEd had "received a grand jury subpoena from the U.S. Attorney's Office for the Northern District of Illinois requiring production of information concerning their lobbying activities in the State of Illinois."

Then, on October 9, 2019, during pre-market hours, Exelon filed another Current Report on Form 8-K with the SEC, disclosing that, on October 4, 2019, both Exelon and ComEd

2

"received a second grand jury subpoena from the U.S. Attorney's Office for the Northern District of Illinois that requires production of records of any communications with certain individuals and entities, including Illinois State Senator Martin Sandoval." That Current Report also disclosed that, as far back as "[o]n June 21, 2019, the Exelon Corporation Board formed a Special Oversight Committee, consisting solely of independent directors, to oversee [Exelon and ComEd's] cooperation and compliance with the subpoena, any further action taken by the U.S. Attorney and any resulting actions that may be required or recommended."

On October 15, 2019, shortly before the market closed, Exelon issued a press release announcing the abrupt departure of Anne Pramaggiore ("Pramaggiore"), Chief Executive Officer ("CEO") of Exelon Utilities, and former President/CEO of ComEd. The Company's statement on Pramaggiore's retirement offered no reason for her departure, but analysts following the Company came to the conclusion that the criminal subpoenas and Pramaggiore's abrupt resignation were related. On this news, Exelon's stock price fell $2.15 per share, or 4.57%, to close at $44.91 per share on October 16, 2019.

Then, on October 31, 2019, during intraday trading, Exelon filed a Quarterly Report on Form 10-Q with the SEC, disclosing that "[o]n October 22, 2019, the SEC notified Exelon and ComEd that it has also opened an investigation into their lobbying activities." On this news, Exelon's stock price fell $1.17 per share, or 2.51%, to close at $45.49 per share on October 31, 2019.

Finally, on November 1, 2019, after the market opened, the *Chicago Tribune* reported that "[a] source with knowledge of the case in Chicago" confirmed that "Pramaggiore is one focus of the ongoing federal investigation." According to the same article, "[t]he ComEd lobbying investigation dates to at least mid-May, when the FBI executed search warrants at the

3

homes of former lobbyist Mike McClain of Quincy, a longtime confidant of House Speaker Michael Madigan, and of former 23rd Ward Ald. Michael Zalewski". Additionally, "[t]he information sought by the FBI included records of communications among Madigan, McClain and Zalewski about attempts to obtain ComEd lobbying work for Zalewski." On this news, Exelon's stock price fell an additional $0.15 per share to close at $45.34 per share on November 1, 2019—a total decline of 2.83% since the initial announcement of the SEC investigation.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

**I.     <u>MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF</u>**

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Act. *See*, 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

4

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the class and, therefore, should be appointed Lead Plaintiff.

### A.    Movant's Motion is Timely

On December 16, 2019, pursuant to Section 21D(a)(3)(A)(I) of the PSLRA, a notice announcing that a securities class action had been filed against Exelon and certain of its executive officers, and advising purchasers of Exelon's securities that they had until February 14, 2020 to file a motion to be appointed as lead plaintiff was issued.  *See* Malmstrom Decl., Ex. 1.

Movant files the instant motion and submits herewith her sworn certification attesting that she is willing to serve as representative of the Class and willing to provide testimony at deposition and trial, if necessary. *See* Malmstrom Decl., Ex. 2. Movant therefore satisfies the first PSLRA requirement that a putative lead plaintiff either file a complaint or make a motion in response to a published notice.

### B.    Movant Has The Largest Financial Interest in the Action

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii).  "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses."  *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005).  Of the *Lax/Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant

---

[1]  *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Secs. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period". *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

During the Class Period, Movant suffered losses of $128.72 in connection with her Exelon securities transactions during the Class Period. *See* Malmstrom Decl., Ex. 3. Movant is not aware of any other individual or group that has suffered greater losses in Exelon securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C.      Movant Satisfies the Requirements of
Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that the Movant satisfies the requirements of Rule 23 is sufficient. At the lead plaintiff stage, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore,

focuses on the qualities of the class representatives enumerated in [Rule] 23(a)(3) and 23(a)(4), that is, typicality and adequacy." *Mayo v. Apropos Tech., Inc.,* No. 01 C 8406, 2002 WL 193393, at *3 (N.D. Ill. Feb. 7, 2002) (citing *Lax.*, 1997 WL 461036, at *6).

### 1. Movant's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Mayo,* 2002 WL 193393 at *4; *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (citations omitted). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Mayo,* 2002 WL 193393 at *4.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the federal securities laws by disseminating false and misleading statements concerning the business, operations and financial prospects of Exelon. Movant, like all of the members of the Class, purchased Exelon securities at prices artificially inflated by Defendants' misrepresentations and omissions, and was damaged thereby. Movant's interests are closely aligned with other Class members' interests. Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant is Adequate

The adequacy of representation requirement of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a movant's claims and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and has made this motion to be appointed lead plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as lead plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78 u-4(a)(3)(B)(iii)(II).

The presumption that Movant is the most adequate lead plaintiff is not, therefore, subject to rebuttal. Movant has suffered substantial financial losses and believes she has the largest financial interest in this case of any timely lead plaintiff movant. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses defendants could raise against her that would render Movant inadequate to represent the Class. Accordingly, Movant is presumptively the most adequate plaintiff and should be appointed lead plaintiff for the Class. *See In re Cendant Corp.*, 264 F.3d at 268.

### II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

8

Movant has selected The Rosen Law Firm P.A. as Lead Counsel and Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel. Both firms are experienced in the area of securities litigation and class actions, and have successfully prosecuted securities litigations and securities fraud class actions on behalf of investors. *See* Malmstrom Decl., Exs. 4 & 5.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge that will enable these two law firms to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Movant respectfully requests the Court issue an Order: (i) appointing the Movant as Lead Plaintiff of the Class; (ii) approving The Rosen Law Firm P.A. as Lead Counsel and Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel for the Class; and (iii) granting such other relief as the Court may deem to be just and proper.

Dated: February 14, 2020           Respectfully submitted,

/s/*Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 545-4653
malmstrom@whafh.com

*[Proposed] Liaison Counsel for Plaintiff*

9

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, New York 10118
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for*
*Lead Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/*Carl V. Malmstrom*
Carl V. Malmstrom