**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOSHUA FLYNN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>      v.<br><br>EXELON CORPORATION, CHRISTOPHER M. CRANE, JOSEPH NIGRO, JOSEPH DOMINGUEZ, and JEANNE M. JONES,<br><br>        Defendants. | Case No. 1:19-cv-08209<br><br>Honorable Virginia M. Kendall |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE INSTITUTIONAL INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

Proposed Lead Plaintiff Greater Pennsylvania Carpenters' Pension Fund and Steamfitters Local 449 Pension Plan (together, the "Institutional Investor Group") respectfully submits this Memorandum of Law pursuant to Section 21(D)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(D)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) appointing the Institutional Investor Group as Lead Plaintiff; (ii) approving the Institutional Investor Group's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned action (the "Action") alleges that Exelon Corporation ("Exelon" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the Action alleges that from February 9, 2019 through November 1, 2019, both dates inclusive (the "Class Period"), Defendants misled investors by failing to disclose Exelon's involvement in unlawful lobbying activities. The Institutional Investor Group—a small, cohesive group comprised of two sophisticated institutional investors—respectfully submits that it should be appointed Lead Plaintiff on behalf of all individuals and entities who purchased or otherwise acquired Exelon securities during the Class Period, and who were damaged as a result of Defendants' alleged fraud (the "Class").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant

has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons discussed below, the Institutional Investor Group respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. The Institutional Investor Group incurred losses of ***$77,699*** on its Class Period transactions in Exelon securities as calculated on a last-in-first-out ("LIFO") basis.[1] *See Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 WL 91099, at *3–6 (N.D. Ill. Jan. 11, 2011) (Kendall, J.) (appointing group of institutional investors with largest financial interest). The Institutional Investor Group also meets the typicality and adequacy requirements of Rule 23 because its claims are typical of those of absent Class members, and because it will fairly and adequately represent the interests of the Class.

Further, the Institutional Investor Group is the paradigmatic Lead Plaintiff under the PSLRA because its members are sophisticated institutional investors with a substantial financial interest in the resolution of the Action. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 567 (N.D. Ill. 2004) ("Congress 'anticipated and intended' large institutional investors to oversee securities cases.") (citation omitted); *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018 WL

---

[1] A copy of the PSLRA-required Certifications of the Institutional Investor Group ("Certifications"), are attached as Exhibit A to the Declaration of Carol V. Gilden (the "Gilden Decl."). The Certifications set forth the respective transactions of the members of the Institutional Investor Group in Exelon securities during the Class Period. In addition, charts providing calculations of the members of the Institutional Investor Group's losses are attached as Exhibit B to the Gilden Decl.

3141814, at *5 (N.D. Ill. June 26, 2018) (finding that the PSLRA indicates a "presumption that institutional investors be appointed lead plaintiff") (citation omitted).

Further, members of the Institutional Investor Group have significant experience serving in a fiduciary capacity and supervising the work of outside counsel.  As set forth in greater detail in their Joint Declaration submitted herewith (*see* Gilden Decl., Ex. C), the Institutional Investor Group fully understands the obligations of a lead plaintiff to absent class members under the PSLRA, and is willing and able to undertake the  responsibilities of Lead Plaintiff in the Action to ensure its vigorous and efficient prosecution.  The Institutional Investor Group's collaboration in this litigation follows from their roles as fiduciaries to their respective members and their shared goals and interests in protecting and maximizing pension fund assets.  Moreover, prior to seeking a role as Lead Plaintiff, representatives from the Institutional Investor Group held a conference call to discuss, among other things, the merits of the claims against Defendants, as well as their common goals and strategy for the joint prosecution of this action.  *See* Gilden Decl., Ex. C, Joint Decl. ¶¶ 9–10.  Thus, the Institutional Investor Group has the incentive and commitment to vigorously prosecute this Action in a cohesive and coordinated fashion, and the ability to supervise and monitor counsel.

Finally, pursuant to the PSLRA, the Institutional Investor Group respectfully requests that the Court approve the selection of Labaton Sucharow as Lead Counsel for the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.

Accordingly, the Institutional Investor Group respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Counsel.

**FACTUAL BACKGROUND**

Exelon was incorporated in 1999 and is headquartered in Chicago, Illinois. Exelon is a utility services holding company that engages in energy generation and delivery businesses in the U.S. and Canada. Exelon owns various "Utility Registrants" that are regulated by State utility commissions, including, among other entities, Commonwealth Edison ("ComEd"). ComEd's parent company is Exelon Utilities.

On July 15, 2019, during pre-market hours, Exelon filed a Current Report on Form 8-K with the SEC, disclosing that both Exelon and ComEd had "received a grand jury subpoena from the U.S. Attorney's Office for the Northern District of Illinois requiring production of information concerning their lobbying activities in the State of Illinois."

Then, on October 9, 2019, during pre-market hours, Exelon filed another Current Report on Form 8-K with the SEC, disclosing that, on October 4, 2019, both Exelon and ComEd "received a second grand jury subpoena from the U.S. Attorney's Office for the Northern District of Illinois that requires production of records of any communications with certain individuals and entities, including Illinois State Senator Martin Sandoval." That Current Report also disclosed that, as far back as "[o]n June 21, 2019, the Exelon Corporation Board formed a Special Oversight Committee, consisting solely of independent directors, to oversee [Exelon and ComEd's] cooperation and compliance with the subpoena, any further action taken by the U.S. Attorney and any resulting actions that may be required or recommended."

On October 15, 2019, shortly before the market closed, Exelon issued a press release announcing the abrupt departure of Anne Pramaggiore ("Pramaggiore"), Chief Executive Officer ("CEO") of Exelon Utilities, and former President/CEO of ComEd. The Company's statement

4

on Pramaggiore's retirement offered no reason for her departure, but analysts following the Company came to the conclusion that the criminal subpoenas and Pramaggiore's abrupt resignation were related. On this news, Exelon's stock price fell $2.15 per share, or 4.57%, to close at $44.91 per share on October 16, 2019.

Then, on October 31, 2019, during intraday trading, Exelon filed a Quarterly Report on Form 10-Q with the SEC, disclosing that "[o]n October 22, 2019, the SEC notified Exelon and ComEd that it has also opened an investigation into their lobbying activities." On this news, Exelon's stock price fell $1.17 per share, or 2.51%, to close at $45.49 per share on October 31, 2019.

Finally, on November 1, 2019, after the market opened, the *Chicago Tribune* reported that "[a] source with knowledge of the case in Chicago" confirmed that "Pramaggiore is one focus of the ongoing federal investigation." According to the same article, "[t]he ComEd lobbying investigation dates to at least mid-May, when the FBI executed search warrants at the homes of former lobbyist Mike McClain of Quincy, a longtime confidant of House Speaker Michael Madigan, and of former 23rd Ward Ald. Michael Zalewski" (emphasis added). Additionally, "[t]he information sought by the FBI included records of communications among Madigan, McClain and Zalewski about attempts to obtain ComEd lobbying work for Zalewski." On this news, Exelon's stock price fell an additional $0.15 per share to close at $45.34 per share on November 1, 2019—a total decline of 2.83% since the initial announcement of the SEC investigation.

As a result of the foregoing, the Action alleges that throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Exelon and/or its employees were engaged in unlawful lobbying activities; (ii) the foregoing increased

5

the risk of a criminal investigation into Exelon; (iii) ComEd's revenues were in part the product of unlawful conduct and thus unsustainable; and (iv) that, as a result, the Company's public statements were materially false and misleading at all relevant times.

## ARGUMENT

I.  **THE INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED AS LEAD PLAINTIFF**

The Institutional Investor Group respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, believes it has the largest financial interest in this litigation of any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

### A. The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 WL 3934243, at *2–3 (N.D. Ill. July 30, 2013).

### B. The Institutional Investor Group Is The "Most Adequate Plaintiff"

#### 1. The Institutional Investor Group's Motion Is Timely

The Institutional Investor Group filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the action published notice on Globe Newswire on December 16, 2019. *See* Notice, Gilden Decl., Ex. D. That notice, in accordance with the PSLRA, indicated that applications for Lead Plaintiff must be made no later than 60 days from the date on which the notice was published, *i.e.*, February 14, 2020. The Institutional Investor Group filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2. The Institutional Investor Group Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Institutional Investor Group

7

incurred a substantial loss of **$77,699** on its transactions in Exelon securities on a LIFO basis during the Class Period. *See* Loss Analysis, Gilden Decl., Ex. B. To the best of its knowledge, the Institutional Investor Group's financial interest is the largest of any Lead Plaintiff movant, and it is thus the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3. The Institutional Investor Group Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the Institutional Investor Group otherwise satisfies the adequacy and typicality requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Acura Pharm., Inc.*, 2011 WL 91099, at *3 (noting that an investor need only establish a "*prima facie*" showing it satisfies the typicality and adequacy requirements of Rule 23 – a showing that "need not be extensive") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 263–64 (3d Cir. 2001)). Here, the Institutional Investor Group indisputably satisfies the typicality and adequacy requirements.

Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure, the claims or defenses of the representative party must be typical of those of the class. A Lead Plaintiff's claims are considered typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of class members and his or her claims are based on the same legal theory." *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)); *see also Danis v. USN Commc'ns., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999) (noting that the typicality requirement is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large") (citation omitted). To satisfy this requirement, "[t]he claims of the class representative need not be identical." *Tellabs*, 214 F.R.D. at 228 (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

8

Here, the Institutional Investor Group's claims and all other Class members' claims arise from the same course of events, and their legal arguments to establish defendants' liability are nearly identical. The Institutional Investor Group alleges, as do all class members, that Defendants violated the Exchange Act by making what they knew, or recklessly disregarded, were false or misleading statements of material facts concerning Exelon, or omitted to state material facts necessary to make the statements they did make not misleading. Indeed, like other Class members, the members of the Institutional Investor Group: (i) purchased or otherwise acquired Exelon securities during the Class Period; (ii) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (iii) were damaged thereby. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3). As such, the Institutional Investor Group satisfies the typicality requirement.

The Institutional Investor Group similarly satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied when the proposed lead plaintiff: (i) has "claims [that] are not antagonistic or in conflict with those of the class;" (ii) "has sufficient interest in the outcome of the case to ensure vigorous advocacy;" and (iii) "is represented by competent experienced counsel who [will] be able to prosecute the litigation vigorously." *Tellabs*, 214 F.R.D. at 228–29. The Institutional Investor Group satisfies these elements because its substantial financial interest in the litigation provides the ability and incentive to vigorously represent the Class' claims. The Institutional Investor Group's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. Further, there are no facts to suggest any

9

actual or potential conflict of interest or other antagonism between the Institutional Investor Group and the other Class members. Finally, the Institutional Investor Group has further demonstrated its adequacy through the selection of Labaton Sucharow as Proposed Lead Counsel for the Class. As discussed more fully below (*See infra* Section III), Labaton Sucharow is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively. Proposed Liaison Counsel Cohen Milstein is similarly experienced and highly qualified.

**II.     THE INSTITUTIONAL INVESTOR GROUP IS THE PROTOTYPICAL LEAD PLAINTIFF ENVISIONED BY CONGRESS**

In addition to satisfying the requirements of Rule 23, the Institutional Investor Group is the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with substantial interests in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 622 (E.D. Wis. 2009) (The PSLRA "was designed to encourage institutional investors, who are more likely to have significant financial holdings at stake as well as greater sophistication and experience in securities matters, to exercise control over the litigation and over counsel").

Moreover, courts in this District, including this Court, have found the prevailing "'trend' has been to allow small groups of investors to act as lead plaintiff" and "aggregate their losses for purposes of calculating the financial interest." *Bang*, 2011 WL 91099, at *2–3 (Kendall, J.) (noting that courts have "explicitly allowed small groups of investors to aggregate their losses in

10

computing the total loss amount and act as lead plaintiff") (citing *Cendant*, 264 F.3d at 266-67)). As a result, courts in this District frequently allow small, cohesive groups of institutional investors to jointly serve as lead plaintiff in securities class actions. *See, e.g.*, *Bristol Cty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 WL 5471110, at *6 (N.D. Ill. Nov. 9, 2012) (appointing a group of two institutional investors as they will "fairly and adequately protect the interests of the purported class"); *City of Sterling Heights Gen. Emps' Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at *8 (N.D. Ill. Apr. 18, 2012) (appointing a group of four institutional investors as the group is "a 'small, and presumptively cohesive' group of sophisticated and knowledgeable investors with aligned interests") (quoting *Goldstein v. Puda Coal, Inc.*, No. 11 Civ. 02598, 2011 WL 6075861, at *6 (S.D.N.Y. Dec. 6, 2011)).

The Institutional Investor Group consists of a small, cohesive group of two sophisticated institutional investors that have combined assets under management over $1 billion, and is therefore precisely the type of lead plaintiff envisioned by Congress upon passage of the PSLRA. As pension funds, the members of the Institutional Investor Group are not only sophisticated institutional investors, but are also accustomed to acting as fiduciaries, and their combined experience in legal and financial matters will substantially benefit the Class. As set forth in the Joint Declaration, the Institutional Investor Group also understands the duties of a lead plaintiff pursuant to the PSLRA, is willing to oversee the vigorous prosecution of the Action, and has pledged to "actively participate in discovery, provide testimony if needed at trial, and attend court and other proceedings." *See* Gilden Decl., Ex. C ¶ 13; *see also Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (finding group satisfactory where the members "represented that they are prepared to attend court proceedings, settlement conferences, and other hearings when doing so will be of benefit to the proposed

Class") (internal quotation marks and citation omitted). The Institutional Investor Group's understanding of the responsibilities and duties of the PSLRA lead plaintiff is based, in part, on its collective past and current experience prosecuting securities class actions, which will benefit the Class. *See id* ¶¶ 3, 5.

As set forth in the Joint Declaration, the members of the Institutional Investor Group individually determined to jointly seek appointment as Lead Plaintiff and litigate this action independently of counsel and in the best interests of all Class members. *See id.* ¶ 7–8. Following this, and based on each member's experience, sophistication, and resources, the members of the Institutional Investor Group determined to seek joint appointment as Lead Plaintiff. *See id.*; *see also, e.g.*, *Sokolow*, 2018 WL 3141814, at *4 (appointing group that submitted joint declaration that "explains how and why the [group] made the decision jointly to seek appointment as lead plaintiff in this matter"); *Allscripts Healthcare Sols., Inc.*, 2012 WL 5471110, at *6 (appointing group of institutions that "conferred with one another [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation"); *In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6–7 (N.D. Cal. Aug. 20, 2001) (finding a group composed of sophisticated investors that submitted declarations "providing background information and articulating why [each] member is seeking lead plaintiff status as part of the asserted group" to be "sufficiently cohesive and structured to maximize its individual strengths and sophisticated business knowledge" and to have "exhibited a cooperative spirit").

Following this decision, the members of the Institutional Investor Group held a conference call on February 14, 2020 to formalize their relationship by strategizing in greater detail their collaborative approach to litigate the Action and oversee counsel, their commitment

to zealously representing the Class, and the benefits their joint representation would provide to the Class. *See id.* ¶¶ 9–10; *see also Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 WL 3093965, at *5 (S.D.N.Y. June 21, 2018) (finding lead plaintiff group involvement in litigation satisfactory based on "conference call to discuss the responsibilities of the role and the benefits they would provide as a group"). Therefore, the members of the Institutional Investor Group have been requisitely involved in the litigation to date, independently sought and retained counsel, and through their own agency determined to seek joint appointment as Lead Plaintiff. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing a group in view of "declarations demonstrating cooperative efforts among" its members).

Accordingly, the appointment of the Institutional Investor Group is not only appropriate, but comports with the intent of the PSLRA.

### III. THE COURT SHOULD APPROVE THE INSTITUTIONAL INVESTOR GROUP'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, the Institutional Investor Group has selected Labaton Sucharow to serve as Lead Counsel for the Class. Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. For example, Labaton Sucharow served

13

as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members. Labaton Sucharow presently serves as lead and co-lead counsel in several significant investor class actions. *See* Labaton Sucharow Firm Resume, Gilden Decl., Ex. E.

Likewise, Cohen Milstein is well-qualified to represent the Class as Liaison Counsel. Cohen Milstein is a nationally known class action firm which has successfully litigated numerous securities class action cases, recovering billions of dollars for investors. Cohen Milstein maintains an office in Chicago, Illinois, and has substantial litigation experience in this District. *See* Cohen Milstein Firm Resume, Gilden Decl., Ex. F. Therefore, the firm is well qualified to represent the Class as Liaison Counsel. *See* ANN. MANUAL COMPLEX LIT. § 10.221 (4th ed. 2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same locality as the court.").

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, the Institutional Investor Group respectfully requests that the Court grant its motion and enter an Order: (i) appointing the Institutional Investor Group as Lead Plaintiff; (ii) approving the Institutional Investor Group's selection of Labaton Sucharow as Lead

Counsel for the Class and Cohen Milstein as Liaison Counsel to the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

DATED: February 14, 2020            Respectfully submitted,

By: */s/ Carol V. Gilden*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Carol V. Gilden (N.D. Ill. #6185530)
190 South LaSalle Street/ Suite 1705
Chicago, Illinois 60603
Telephone: (312) 629-3737
Facsimile: (312) 357-0369
cgilden@cohenmelstein.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant the Institutional Investor Group and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

      I, Carol V. Gilden, certify that on this 14th day of February, 2020 I electronically filed the foregoing with the Clerk of the U.S. District Court using the CM/ECF system which will send notification electronically to the registered participants as identified on the Notice of Electronic Filing.

      /s/ Carol V. Gilden

**COHEN MILSTEIN SELLERS
& TOLL PLLC**
Carol V. Gilden (N.D. Ill. #6185530)
190 South LaSalle Street/ Suite 1705
Chicago, Illinois 60603
Telephone: (312) 629-3737
Facsimile: (312) 357-0369
cgilden@cohenmelstein.com