UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA FLYNN, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.  1:19-cv-08209 |
| Plaintiff, | |
| v. | CLASS ACTION |
| EXELON CORPORATION, CHRISTOPHER M. CRANE, JOSEPH NIGRO, JOSEPH DOMINGUEZ, and JEANNE M. JONES, | Hon. Virginia M. Kendall |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
JOSHUA FLYNN FOR APPOINTMENT AS LEAD PLAINTIFF AND
<u>APPROVAL OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1#

STATEMENT OF FACTS ...................................................................................................... 2#

ARGUMENT .......................................................................................................................... 5#

I.#      FLYNN SHOULD BE APPOINTED LEAD PLAINTIFF ................................................. 5#

        A.#      Flynn is Willing to Serve as a Class Representative ................................................ 6#

        B.#      Flynn Has the "Largest Financial Interest" in the Action ....................................... 6#

        C.#      Flynn Otherwise Satisfies the Requirements of Rule 23 ........................................ 7#

II.#      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ............ 9#

CONCLUSION ....................................................................................................................... 11#

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anarkat v. CVS Health Corporation,*
19-cv-01725 (S.D.N.Y.)..................................................................................................10

*Arreola v. Godinez,*
546 F.3d 788 (7th Cir. 2008) ...........................................................................................8

*Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.,*
No. 12 C 3297, 2012 WL 5471110, 2012 U.S. Dist. LEXIS 161441 (N.D. Ill.
Nov. 9, 2012) ....................................................................................................................8

*Chandler v. Ulta Beauty, Inc.,*
No. 18-cv-1577, 2018 WL 3141763, 2018 U.S. Dist. LEXIS 107340 (N.D. Ill.
June 26, 2018)................................................................................................................7, 9

*City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.,*
No. 11 C 8332, 2012 WL 1339678, 2012 U.S. Dist. LEXIS 54081 (N.D. Ill.
Apr. 18, 2012).................................................................................................................9

*Costas v. Ormat Technologies, Inc.,*
18-cv-271 (D. Nev.).......................................................................................................10

*Flynn v. Exelon Corporation et al,*
1:19-cv-08209 ..................................................................................................................1

*Gumm v. Molinaroli,*
No. 16-CV-1093-PP, 2016 WL 6680462, 2016 U.S. Dist. LEXIS 157155
(E.D. Wis. Nov. 14, 2016) ...............................................................................................7

*In re Allergan PLC Sec. Litig.,*
18-cv-12089 (S.D.N.Y.).................................................................................................10

*In re Comverse Technology, Inc. Securities Litigation,*
No. 06-CV-1825 (E.D.N.Y.)...........................................................................................10

*In re Molson Coors Brewing Co. Sec. Litig.,*
233 F.R.D. 147 (D. Del. 2005) .........................................................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.,*
182 F.R.D. 42 (S.D.N.Y. 1998) .......................................................................................7

*Kaplan v. Gelfond,*
240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................7

ii

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ........................................................................................9

*Lax v. First Merchants Acceptance Corp.*,
    Nos. 97 C 2715 et al., 1997 WL 461036, 1997 U.S. Dist. LEXIS 11866 (N.D.
    Ill. Aug. 6, 1997)..........................................................................................................6, 7

*Maiden v. Merge Techs., Inc.*,
    Nos. 06-C-349, 2006 WL 3404777, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis.
    Nov. 21, 2006) ................................................................................................................9

*Takara Trust v. Molex Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005)........................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)................................................................................9

*Yang v. Nobilis Health Corp.*,
    19-cv-145 (S.D. Tex.) ....................................................................................................10

**Statutes**

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

Securities Exchange Act of 1934................................................................................. *passim*

**Rules and Regulations**

17 C.F.R. § 240.10b-5.............................................................................................................1

Fed. R. Civ. P. 23 .................................................................................................2, 5, 7, 8

Joshua Flynn ("Flynn") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Flynn as Lead Plaintiff on behalf of a class consisting of all persons other than the above-captioned defendants ("Defendants") who purchased or otherwise acquired Exelon Corporation ("Exelon" or the "Company") securities between February 9, 2019 and November 1, 2019, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The initial complaint in the above-captioned action ("Action") alleges a significant fraud perpetrated on the investors in Exelon during the Class Period. Specifically, it is alleged that during the Class Period, Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), by misrepresenting Exelon's business and operations, specifically regarding the extent of unlawful lobbying activities engaged in by Exelon and/or its employees. *See generally Flynn v. Exelon Corporation et al*, 1:19-cv-08209, Dkt. No. 1 (the "Complaint"). Exelon investors, including Flynn, incurred significant losses resulting from the revelation of the foregoing misconduct through a series of corrective disclosures between July and November 2019, revealing that the Federal Bureau of Investigation ("FBI") and the United States ("U.S.") Attorney's Office for the Northern District of Illinois were investigating Exelon, Commonwealth Edison ("ComEd"), and certain high-profile political figures, including former Illinois State Senator Martin Sandoval, with respect to illegal lobbying activities.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Flynn, with losses of approximately $29,451 in connection with his Class Period purchases of Exelon securities, believes that he has the largest financial interest in the relief sought in this action. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

Beyond his considerable financial interest, Flynn also meets the applicable requirements of Rule 23 because his claims are typical of absent class members and because he will fairly and adequately represent the interests of the Class.

In order to fulfill his responsibilities as lead plaintiff and vigorously prosecute this action on behalf of the Class, Flynn has selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, and recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the United States. Based in New York, Pomerantz has offices in Chicago, Los Angeles, and Paris, France.

Accordingly, based on his significant financial interest and his commitment to overseeing this litigation, Flynn respectfully requests that the Court enter an order appointing him as Lead Plaintiff and approving his selection of Pomerantz as Lead Counsel.

## STATEMENT OF FACTS

As alleged in the Complaint, Exelon was incorporated in 1999 and is headquartered in Chicago, Illinois. Exelon is a utility services holding company that engages in energy generation and delivery businesses in the U.S. and Canada.

Exelon owns various "Utility Registrants" that are regulated by State utility commissions, including, among other entities, ComEd. ComEd's parent company is Exelon Utilities.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Exelon and/or its employees were engaged in unlawful lobbying activities; (ii) the foregoing increased the risk of a criminal investigation into Exelon; (iii) ComEd's revenues were in part the product of unlawful conduct and thus unsustainable; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

On July 15, 2019, during pre-market hours, Exelon filed a Current Report on Form 8-K with the SEC, disclosing that both Exelon and ComEd had "received a grand jury subpoena from the U.S. Attorney's Office for the Northern District of Illinois requiring production of information concerning their lobbying activities in the State of Illinois."

Then, on October 9, 2019, during pre-market hours, Exelon filed another Current Report on Form 8-K with the SEC, disclosing that, on October 4, 2019, both Exelon and ComEd "received a second grand jury subpoena from the U.S. Attorney's Office for the Northern District of Illinois that requires production of records of any communications with certain individuals and entities, including Illinois State Senator Martin Sandoval." That Current Report also disclosed that, as far back as "[o]n June 21, 2019, the Exelon Corporation Board formed a Special Oversight Committee, consisting solely of independent directors, to oversee [Exelon and ComEd's] cooperation and compliance with the subpoena, any further action taken by the U.S. Attorney and any resulting actions that may be required or recommended."

On October 15, 2019, shortly before the market closed, Exelon issued a press release announcing the abrupt departure of Anne Pramaggiore ("Pramaggiore"), Chief Executive Officer ("CEO") of Exelon Utilities, and former President/CEO of ComEd. The Company's statement

3

on Pramaggiore's retirement offered no reason for her departure, but analysts following the Company came to the conclusion that the criminal subpoenas and Pramaggiore's abrupt resignation were related.

On this news, Exelon's stock price fell $2.15 per share, or 4.57%, to close at $44.91 per share on October 16, 2019.

Then, on October 31, 2019, during intraday trading, Exelon filed a Quarterly Report on Form 10-Q with the SEC, disclosing that "[o]n October 22, 2019, the SEC notified Exelon and ComEd that it has also opened an investigation into their lobbying activities."

On this news, Exelon's stock price fell $1.17 per share, or 2.51%, to close at $45.49 per share on October 31, 2019.

Finally, on November 1, 2019, after the market opened, the Chicago Tribune reported that "[a] source with knowledge of the case in Chicago" confirmed that "Pramaggiore is one focus of the ongoing federal investigation." According to the same article, "[t]he ComEd lobbying investigation dates to **at least mid-May**, when the FBI executed search warrants at the homes of former lobbyist Mike McClain of Quincy, a longtime confidant of House Speaker Michael Madigan, and of former 23rd Ward Ald. Michael Zalewski" (emphasis added). Additionally, "[t]he information sought by the FBI included records of communications among Madigan, McClain and Zalewski about attempts to obtain ComEd lobbying work for Zalewski."

On this news, Exelon's stock price fell an additional $0.15 per share to close at $45.34 per share on November 1, 2019—a total decline of 2.83% since the initial announcement of the SEC investigation.

4

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. FLYNN SHOULD BE APPOINTED LEAD PLAINTIFF

Flynn should be appointed Lead Plaintiff because, to his knowledge, Flynn has the largest financial interest in the Action and otherwise strongly satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Flynn satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

## A. Flynn is Willing to Serve as a Class Representative

On December 16, 2019, the Action was filed. That same day, Pomerantz, counsel for the plaintiff in the Action, caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that litigation had been filed against Defendants and which advised investors in Exelon securities that they had until February 14, 2020—*i.e.*, 60 days—to file a motion to be appointed as lead plaintiff in the securities litigation against Exelon and the other Defendants. *See* Lieberman Decl., Ex. B. Flynn has filed the instant motion pursuant to the Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Flynn satisfies the first requirement to serve as Lead Plaintiff of the Class.

## B. Flynn Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Flynn has the largest financial interest of any Exelon investor seeking to serve as Lead Plaintiff. For the purposes of lead plaintiff appointment pursuant to the PSLRA, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 WL 461036, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997).

During the Class Period, Flynn: (1) purchased three shares of common stock and 611 call option contracts; (2) expended $54,863 on these purchases; (3) retained 424 call option contracts;

6

and (4) incurred losses of approximately $29,451 in connection with his transactions in Exelon securities during the Class Period. *See* Lieberman Decl., Ex. A. To the extent that Flynn possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**C.** **Flynn Otherwise Satisfies the Requirements of Rule 23**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See*, *e.g.*, *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, 2018 U.S. Dist. LEXIS 107340, at *13 (N.D. Ill. June 26, 2018) (finding movant "has satisfied its burden by making a preliminary showing that it satisfies the requirements of Rule 23"); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "in the context of motions for lead plaintiff inquiries, courts . . . do not engage in a 'wide-ranging analysis under Rule 23,' and generally focus on only typicality and adequacy." *Gumm v. Molinaroli*, No. 16-CV-1093-PP, 2016 WL 6680462, 2016 U.S. Dist. LEXIS 157155, at *14 (E.D. Wis. Nov. 14, 2016) (quoting *Lax*, 1997 WL 461036, U.S. Dist. LEXIS 11866, at *6); *see also In re Oxford*

7

*Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

The typicality requirement of Fed. R. Civ. P. 23(a)(3) requires that "'[a] claim . . arises from the same event or practice or course of conduct that gives rise to the claims of other class members' and is 'based on the same legal theory." *Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 12 C 3297, 2012 WL 5471110, 2012 U.S. Dist. LEXIS 161441, at *15-*16 (N.D. Ill. Nov. 9, 2012) (quoting *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)). "A lead plaintiff meets the typicality requirements if its claims or defenses are typical of the claims or defenses of the class." *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005) (quoting Fed. R. Civ. P. 23(a)(3)).

Flynn's claims are typical of those of the Class. Flynn alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Exelon. Flynn, as did all members of the Class, purchased Exelon securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Exelon's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"A lead plaintiff meets the adequacy requirement [of Rule 23(a)(4)] if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced

counsel who be able to prosecute the litigation vigorously." *Chandler*, 2018 WL 3141763, 2018 U.S. Dist. LEXIS 107340, at \*14 (quoting *City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, 2012 U.S. Dist. LEXIS 54081, at \*25 (N.D. Ill. Apr. 18, 2012)).

As set forth in greater detail below, in Pomerantz, Flynn has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits his choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Flynn' interests and the interests of the Class. Flynn has submitted a signed Certification declaring his commitment to protecting the interests of the Class (*see* Lieberman Decl., Ex. C). In addition, the significant losses incurred by Flynn demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous adequacy.

## II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also Maiden v. Merge Techs., Inc.*, Nos. 06-C-349, 2006 WL 3404777, 2006 U.S. Dist. LEXIS 85635, at \*14 (E.D. Wis. Nov. 21, 2006); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

9

Here, Flynn has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. Pomerantz is a premiere firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, and Paris, France. For more than 75 years, Pomerantz has represented defrauded investors. In 2018 alone, Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the U.S., as well as an $80 million recovery on behalf of investors in Yahoo! securities. *See* Lieberman Decl., Ex. D. More recently, Pomerantz announced as Co-Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it had achieved a $110 million settlement on behalf of the class in that action. *See* THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066). The foregoing achievements are part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See* Lieberman Decl., Ex. D. Courts throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *In re Allergan PLC Sec. Litig.*, 18-cv-12089 (S.D.N.Y.); *Anarkat v. CVS Health Corporation*, 19-cv-01725 (S.D.N.Y.); *Yang v. Nobilis Health Corp.*, 19-cv-145 (S.D. Tex.); and *Costas v. Ormat Technologies, Inc.*, 18-cv-271 (D. Nev.).

As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the instant action, Flynn's chosen counsel have the skill, knowledge, expertise,

10

and experience that will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Flynn's selection of Pomerantz as Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Flynn respectfully requests that the Court issue an Order: (1) appointing Flynn as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated:  February 14, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: ahood@pomlaw.com
Email: jalieberman@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*Joshua Flynn*

11