**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>EXELON CORPORATION, et al.<br><br>    Defendants. | Case No. 1:19-cv-08209<br><br>Hon. Virginia M. Kendall |

**MEMORANDUM OF LAW IN SUPPORT OF ANNE PRAMAGGIORE'S
<u>MOTION TO DISMISS LEAD PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT............................................................................................................................. 4

    I.      **Ms. Pramaggiore Did Not Have a Freestanding Duty to Disclose
Alleged Bribery. ................................................................................................ 5**

    II.     **The Complaint Fails to Allege That Ms. Pramaggiore Herself Made
Any False or Misleading Statements During the Class Period. ......................... 6**

          A.     Ms. Pramaggiore Did Not Make Statements in the Form 10-K
Other Than Those Specifically Regarding ComEd (or Other Utility
Registrants), Not Exelon Itself or Exelon Generation. .............................. 7

          B.     Ms. Pramaggiore Did Not Make the Statements in Exelon's Code
of Conduct.................................................................................................. 8

          C.     The Few Class Period Statements Ms. Pramaggiore Is Alleged to
Have Made Were Not False or Misleading................................................. 9

               1.     The Complaint Fails to Plead Facts That Any Statements
Relating to ComEd in the Form 10-K Are False or Misleading. ..... 9

               2.     Plaintiff's Allegations Regarding the August 2019 Earnings
Conference Do Not Satisfy the Requirements of the PSLRA. ..... 11

          D.     Regulation S-K Does Not Render the Statements in the Form 10-K
False or Misleading.................................................................................. 12

    III.    **Plaintiff Fails to Adequately Allege Scienter..................................................... 14**

    IV.    **Plaintiff's Section 20(a) Claim Also Should Be Dismissed. ............................. 14**

CONCLUSION ....................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Alam v. Miller Brewing Co.*,
709 F.3d 662 (7th Cir. 2013) ................................................................................................2

*Anderson v. Abbott Labs.*,
140 F. Supp. 2d 894 (N.D. Ill. 2001) .................................................................4, 5, 10, 12

*Arbitrage Event-Driven Fund v. Tribune Media Co.*,
2020 WL 60186 (N.D. Ill. Jan. 6, 2020) ............................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................4

*In re Banco Bradesco Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ................................................................................11

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ...............................................................................................4

*Brasher v. Broadwind Energy, Inc.*,
2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) .....................................................................12

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ...............................................................................................4

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)..................................................................................................9

*Cornielsen v. Infinium Capital Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ..........................................................................................4, 11

*Desai v. Gen. Growth Props. Inc.*,
654 F. Supp. 2d 836 (N.D. Ill. 2009) .................................................................................15

*Diehl v. Omega Protein Corp.*,
339 F. Supp. 3d 153 (S.D.N.Y. 2018)...........................................................................10, 13

*In re FBR Inc. Sec. Litig.*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008)...............................................................................6, 11

*Fryman v. Atlas Fin. Holdings, Inc.*,
462 F. Supp. 3d 888 (N.D. Ill. 2020) ...................................................................................2

*Gallagher v. Abbott Labs.*,
269 F.3d 806 (7th Cir. 2001) ........................................................................................4, 5, 6

iii

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ................................................................................7, 8, 9

*Harrison v. Dean Witter Reynolds, Inc.*,
974 F.2d 873 (7th Cir. 1992) .......................................................................................15

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) .......................................................................................13

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)............................................................................................ *passim*

*Lopez v. CTPartners Exec. Search, Inc.*,
173 F. Supp. 3d 12 (S.D.N.Y. 2016)............................................................................13

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011).........................................................................................................6

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016)............................................................................6

*Overton v. Todman & Co.*,
478 F.3d 479 (2d. Cir. 2007)..........................................................................................8

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
895 F.3d 933 (7th Cir. 2018) .......................................................................................14

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) ..................................................................................4, 14

*Silverman v. Motorola, Inc.*,
772 F. Supp. 2d 923 (N.D. Ill. 2011) ...........................................................................15

*Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*,
2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ...............................................................5

*Stransky v. Cummins Engine Co.*,
51 F.3d 1329 (7th Cir. 1995) .........................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................................................................................................4, 5

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ..................................................................13

*Ulbricht v. Ternium, S.A.*,
2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020) ....................................................5, 6, 11

iv

*Waldock v. M.J. Select Glob., Ltd.*,
2005 WL 3542527 (N.D. Ill. Dec. 27, 2005) ............................................................................15

*Washtenaw Cty. Emps.' Ret. Sys. v. Walgreen Co.*,
2016 WL 5720375 (N.D. Ill Sept. 30, 2016) ..........................................................................12

**Statutes**

15 U.S.C. § 78t(a) ..........................................................................................................................3, 14

15 U.S.C. § 78u-4 ................................................................................................................................4

17 C.F.R. § 229.303(a)(3)(ii) ............................................................................................................12

Defendant Anne Pramaggiore respectfully submits this memorandum in support of her Motion to Dismiss the Lead Plaintiff's Complaint.

## **INTRODUCTION**

Not all alleged misconduct is securities fraud. Instead, Section 10(b) of the Securities Exchange Act of 1934, read with Rule 10b–5 thereunder, proscribes a specific *kind* of misconduct—as relevant here, the making of a false or misleading statement with the intent to defraud investors. Whatever Plaintiff believes Ms. Pramaggiore did—and, to be clear, she denies engaging in wrongdoing of any kind—she did not commit securities fraud.

In late 2019, Exelon Corporation ("Exelon") and its subsidiary, Commonwealth Edison Company ("ComEd"), revealed that they had received inquiries from the U.S. Attorney's Office regarding their lobbying activities. A shareholder promptly brought suit, naming Exelon, ComEd, and certain individuals as defendants—but not Ms. Pramaggiore. In July 2020, ComEd entered into a Deferred Prosecution Agreement ("DPA") with the U.S. Attorney's Office. Lead Plaintiff filed an amended complaint, this time naming Ms. Pramaggiore as a defendant.

Neither the 2019 disclosure nor the 2020 DPA renders Ms. Pramaggiore liable for securities fraud, for a simple reason: The securities laws unequivocally do not impose a freestanding duty to disclose uncharged, unadjudicated misconduct. Instead, a Plaintiff must allege that each defendant herself made a statement that was false or rendered misleading by the omission of a material fact. Plaintiff has not done so. Ms. Pramaggiore was not the "maker" of several of the statements for which the Complaint seeks to hold her liable. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). And those few statements in the Complaint that Ms. Pramaggiore arguably *did* make were undisputedly true. Plaintiff cannot state a claim for securities fraud against Ms. Pramaggiore, and the claims against her should be dismissed accordingly.

1

## FACTUAL BACKGROUND

Exelon is a utility services holding company incorporated in Pennsylvania. (*See* Ex. 1 at 7.)[1] Exelon has two distinct divisions, Exelon Generation Company, LLC ("Exelon Generation"), which operates nuclear plants, and Exelon Utilities, which provides electricity services throughout the country. (*Id.*; *see also* Dkt. 65, Lead Plaintiff's Complaint ("Compl.") ¶ 3.) Exelon Utilities includes seven utility subsidiaries, one of which is ComEd. (Ex. 1 at 7.)

Ms. Pramaggiore never served as the CEO of Exelon or on the Exelon Board of Directors. She never signed a public filing on behalf of Exelon. She never served as an officer of Exelon Generation. Instead, Ms. Pramaggiore served as the President and Chief Executive Officer of ComEd from 2012 through May 2018, then as Senior Executive Vice President of Exelon and CEO of Exelon Utilities until October 2019. (Compl. ¶¶ 3, 25.) Ms. Pramaggiore signed the combined 2018 Form 10-K at issue in this case *only* with respect to ComEd and *only* because of her service on ComEd's Board of Directors. (*See, e.g.*, Ex. 1 at 544, Ex. 24.22.)

Plaintiff alleges that Exelon and ComEd bribed Illinois officials to secure favorable legislation, cribbing from the DPA that ComEd (but not Ms. Pramaggiore) signed in July 2020. Specifically, Plaintiff alleges that ComEd provided jobs and contracts to political allies of "Public Official A" to gain his support in passing legislation favorable to ComEd in 2011 and 2016. (Compl. ¶¶ 52-57.) Plaintiff alleges that Ms. Pramaggiore either participated in or was aware of the bribery. (*See, e.g., id.* ¶¶ 57, 59, 65–67, 71.) Ms. Pramaggiore disputes these allegations.[2]

---

[1] On a motion to dismiss, a court may consider Form 10-K filings and other documents "referenced in the complaint and central to plaintiff's claims." *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 894 (N.D. Ill. 2020). The exhibits referenced herein are those exhibits appended to the motion to dismiss filed by the other Defendants.

[2] Of course, the Court must accept the Complaint's factual allegations—but not its legal conclusions—as true in considering this motion. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).

In July 2020, in exchange for ComEd's cooperation, $200 million, and imposition of remedial measures, the Government agreed to defer prosecution of any charges against ComEd for a period of three years. ComEd admitted certain facts in the DPA (Compl. ¶ 164), but not that it or any individuals had committed a crime. *See* Order, *United States v. Commonwealth Edison*, No. 20-cr-00368 (N.D. Ill. Aug. 5, 2020), ECF No. 13 (reflecting plea of not guilty). Ms. Pramaggiore has not agreed to the DPA, nor admitted to any of the alleged facts therein.

Exelon shareholders filed suit alleging violations of the securities laws. Following ComEd's entry into the DPA, Plaintiff amended its Complaint, adding Ms. Pramaggiore as a defendant. Plaintiff's federal securities claim against Exelon, ComEd, and individuals (including Ms. Pramaggiore) is *not* that they engaged in bribery, but rather that, between February and October 2019, they made false or misleading public statements by failing to disclose the fact that such alleged bribery might lead to a government investigation that would harm Exelon. (Compl. ¶¶ 244–48.) Plaintiff also seeks to hold Ms. Pramaggiore responsible for false or misleading statements of Exelon or ComEd as a "controlling person[ ]" under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). (*Id.* ¶¶ 249–52.)

To impose liability, the securities laws require a defendant herself to be responsible for a false or misleading statement. Accordingly, it is critical to evaluate what statements Ms. Pramaggiore actually made.[3] Here, they are quite limited. Plaintiff alleges that Ms. Pramaggiore made three types of false or misleading statements:

- Statements in the combined 2018 Form 10-K filed by Exelon, Exelon Generation, and each of the utility subsidiaries, including ComEd. (*Id.* ¶ 104.)

- Statements in the Exelon Code of Business Conduct issued by Exelon's Board of Directors. (*Id.* ¶¶ 97, 103.)

---

[3] An indictment against Ms. Pramaggiore was returned this evening. She denies the charges, and none of the charges impacts whether she made a false or misleading statement in violation of Section 10(b).

3

- Ms. Pramaggiore's statement on an August 1, 2019 earnings call regarding a franchise agreement with the City of Chicago. (*Id.* ¶ 118(d).)

None of these statements can support liability against Ms. Pramaggiore under the securities laws.

## ARGUMENT

As with any case, the Complaint here must plead facts, and not conclusions, to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, because Plaintiff's claims sound in fraud, they are subject to the heighted pleading standard of Rule 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Claims arising under the federal securities laws also must satisfy the "particularly stringent requirements" of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4. *Anderson v. Abbott Labs.,* 140 F. Supp. 2d 894, 901 (N.D. Ill. 2001), *aff'd sub nom. Gallagher v. Abbott Labs.,* 269 F.3d 806 (7th Cir. 2001). The Complaint must adequately allege, among other things, "a material misrepresentation or omission by the defendant." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) (citation omitted). The PSLRA imposes a "heavy burden of pleading" this element. *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 756–57 (7th Cir. 2013). Plaintiff must "'specify each statement alleged to have been misleading' and the 'reason or reasons why the statement is misleading.'" *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) (quoting 15 U.S.C. § 78u-4(b)(1)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (pleading requirement applies to each statement).

The PSLRA also requires that a complaint plead particularized facts giving rise to a "strong inference" that each defendant acted with scienter—that is, "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 318–19 (internal quotation marks omitted). To satisfy this requirement, Plaintiff must plead facts creating an inference of scienter

4

that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id. at 314*. With respect to Ms. Pramaggiore, the Complaint does not meet these stringent standards.

## I.      Ms. Pramaggiore Did Not Have a Freestanding Duty to Disclose Alleged Bribery.

The crux of Plaintiff's claims is that Ms. Pramaggiore and the other Defendants violated the securities laws not by engaging in alleged bribery, but by failing to *disclose* the alleged bribery and its then-unknown consequences. (*See, e.g.*, Compl. ¶¶ 100, 105.) These claims fail based on the fundamental proposition that, as a general matter, "[m]ere silence about even material information is not fraudulent absent a duty to speak." *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331 (7th Cir. 1995); *see also Gallagher*, 269 F.3d at 808.

In particular, the securities laws do not require disclosure of conduct that might someday lead to a criminal investigation. This specifically includes uncharged bribery allegations: unless a statement falsely attributes a company's "success to a particular cause," the failure to disclose that the success resulted from bribery is not an actionable omission. *Ulbricht v. Ternium, S.A.*, 2020 WL 5517313, at *7 (E.D.N.Y. Sept. 14, 2020). "The securities laws … do not impose a freestanding legal duty to disclose uncharged wrongdoing or an affirmative duty to disclose any and all material information." *Id.* (internal quotation marks omitted); *see also Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356, at *6 (N.D. Ill. Sept. 26, 2018) ("[S]ecurities laws generally do not impose such a duty upon publicly traded corporations to confess to uncharged, unadjudicated claims of wrongdoing."); *Anderson*, 140 F. Supp. 2d at 906 ("SEC rules do not create a duty to confess contested charges."). Regardless of the Complaint's bribery allegations—allegations which, again, Ms. Pramaggiore denies—Ms. Pramaggiore had no freestanding duty to accuse herself or ComEd of wrongdoing in ComEd's public filings.

This authority is consistent with the Supreme Court's mandate that disclosure is required "only when necessary 'to make … statements made, in the light of the circumstances under

which they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (quoting 17 C.F.R. § 240.10b–5(b)). For a statement to create an affirmative duty to disclose uncharged misconduct, "there must be a connection between the illegal conduct and the misleading statements beyond the simple fact that a criminal conviction would have an adverse impact upon the corporation's operations in general or the bottom line." *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016) (internal quotation marks omitted). "This connection is required because companies are not obligated to speculate as to the myriad of consequences … that might have befallen the company if the illegal conduct were discovered, disclosed or terminated." *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 357 (S.D.N.Y. 2008) (internal quotation marks and alterations omitted). For example, a duty to disclose uncharged illegal conduct may arise "when a corporation puts the reasons for its success at issue, but fails to disclose that a material source of its success is the use of improper or illegal business practices." *Menaldi*, 164 F. Supp. 3d at 581 (internal quotation marks omitted). Absent this specific connection between a public statement and the alleged wrongdoing, omissions based on uncharged conduct cannot support liability. *Id.*; *Ulbricht*, 2020 WL 5517313, at *7. Thus, to state a claim under Rule 10b–5, Plaintiff must establish that Ms. Pramaggiore herself made a statement that was rendered specifically false or misleading by omitting to disclose the alleged bribery. *Gallagher*, 269 F.3d at 808. As described below, Plaintiff has not done so.

## II. The Complaint Fails to Allege That Ms. Pramaggiore Herself Made Any False or Misleading Statements During the Class Period.

As a preliminary matter, Plaintiff does not adequately allege that Ms. Pramaggiore is even responsible for most of the class period statements about which it complains. The federal securities laws only impose liability for allegedly false or misleading statements on *the maker* of those statements. *See Janus*, 564 U.S. at 142. "For purposes of Rule 10b–5, the maker of a

6

statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.*; *see also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 424 (7th Cir. 2015) (noting that the Supreme Court "narrowly constru[ed] what it means to 'make' a false statement in violation of Rule 10b–5"). Ordinarily, "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Janus*, 564 U.S at 142–43.

### A. Ms. Pramaggiore Did Not Make Statements in the Form 10-K Other Than Those Specifically Regarding ComEd (or Other Utility Registrants), Not Exelon Itself or Exelon Generation.

Plaintiff alleges that Ms. Pramaggiore is responsible for the combined 2018 Form 10-K because she is a signatory to that document. (Compl. ¶ 93 & n.10.) Although a signature on a document often indicates that a statement may be attributed to the signatory, *see Glickenhaus*, 787 F.3d at 426, the Form 10-K itself makes clear that Ms. Pramaggiore is only the maker of a particular subset of the relevant statements in the combined annual report—those related to ComEd. The opening pages of the Form 10-K explain that the document "is being filed *separately* by Exelon Corporation, Exelon Generation Company, LLC, Commonwealth Edison Company," and the other utility subsidiaries (the "Registrants"). (Ex. 1 at 6 (emphasis added).) The Form 10-K explicitly provides that each Registrant is only responsible for the statements about itself: "Information contained herein relating to any individual Registrant is filed by such Registrant on his own behalf. *No Registrant makes any representation as to information relating to any other Registrant.*" (*Id.* (emphasis added); *see also id.* at 72 ("[N]one of the Registrants makes any representation as to information related solely to any of the other Registrants.").) And Ms. Pramaggiore's signature and the related power-of-attorney document reflect that she only signed the 2018 Form 10-K on behalf of the utility registrants. (*See*, *e.g.*, *id.* at 544, Ex. 24.22 ("I, Anne R. Pramaggiore, do hereby appoint Joseph Dominguez … on my behalf to

7

sign the annual Securities and Exchange Commission report on Form 10-K for 2018 of *Commonwealth Edison Company*….") (emphasis added).) Based on the plain text of the Form 10-K, Ms. Pramaggiore is, at most, only the "maker" of statements pertaining to ComEd and the other utility subsidiaries.[4] *See Janus*, 564 U.S at 142–43. She is not responsible for statements made by Exelon, or with respect to non-utility portions of Exelon's business.

This is a critical distinction, because many of the statements in the Form 10-K that Plaintiff alleges were false or misleading pertain to Exelon or Exelon Generation—entities about which Ms. Pramaggiore did not speak. (*See*, *e.g.*, Compl. ¶ 104(a)–(c) (describing the impact of legislation on Exelon Generation's nuclear plants).) Based on the language of the Form 10-K, Ms. Pramaggiore did not have ultimate authority over statements regarding Exelon or Exelon Generation. *See Janus*, 564 U.S. at 142. And the Complaint includes no particularized allegations to suggest that Ms. Pramaggiore had authority over statements regarding Exelon Generation—a separate business unit—or Exelon. Ms. Pramaggiore therefore cannot be held liable for those statements under Section 10(b) and Rule 10b–5.[5] *Id.*; *Glickenhaus*, 787 F.3d at 427.

**B.      Ms. Pramaggiore Did Not Make the Statements in Exelon's Code of Conduct.**

Plaintiff also seeks to impose liability on Ms. Pramaggiore based on the Exelon Code of Conduct, both as incorporated as an exhibit to the 2018 Form 10-K and as presented on Exelon's

---

[4] It is not unusual for a particular speaker only to be responsible for part of an SEC filing. *Cf. Overton v. Todman & Co.,* 478 F.3d 479, 487–88 (2d. Cir. 2007) (accountant's liability extends "to only those statements that the accountant actually prepared and certified") (citing *IIT v. Cornfeld*, 619 F.2d 909, 927 (2d Cir. 1980)).

[5] Moreover, the factual descriptions about Exelon Generation's nuclear plants are not false or misleading for the reasons stated in the motion to dismiss filed by the other Defendants, which Ms. Pramaggiore adopts and incorporates herein.

8

website.[6] (Compl. ¶¶ 97, 103.) But the Code of Conduct is explicitly attributed to the Exelon Board of Directors. (Ex. 7 at 1 ("Approved by the Exelon Board of Directors").) The members of the Exelon Board of Directors are therefore the makers of the statements contained in the Code of Conduct. *See Janus*, 564 U.S. at 142; *Glickenhaus*, 787 F.3d at 427. Ms. Pramaggiore was never a member of the Exelon Board of Directors, and the Complaint includes no allegations that Ms. Pramaggiore had the ultimate (or any) authority over the Code of Conduct so as to transform her into a "maker" of the statements therein. The Code of Conduct thus cannot support Plaintiff's claims against Ms. Pramaggiore.[7]

> **C.      The Few Class Period Statements Ms. Pramaggiore Is Alleged to Have Made Were Not False or Misleading.**

The Complaint thus identifies only three statements attributable to Ms. Pramaggiore— two in the 2018 Form 10-K and one at an August 2019 earnings conference. None of these statements is false or rendered misleading by the failure to disclose the alleged bribery.

> **1.      The Complaint Fails to Plead Facts That Any Statements Relating to ComEd in the Form 10-K Are False or Misleading.**

The first statement is one piece of a factual description of the FEJA legislation contained in the 2018 Form 10-K: "FEJA allows ComEd to defer energy efficiency costs … as a separate regulatory asset that is recovered through the energy efficiency formula rate over the weighted average useful life." (Compl. ¶ 104(d) (alteration in original).) This statement is an accurate explanation of the impact of FEJA on ComEd. Plaintiff does not allege otherwise.

---

[6] To the extent that the Code of Conduct is incorporated into the Form 10-K, it related specifically to Exelon—a Registrant on behalf of which Ms. Pramaggiore did not speak.

[7] For the reasons stated in the other Defendants' motion to dismiss, which Ms. Pramaggiore adopts and incorporates herein, the statements in the Code of Conduct separately are precisely the type of aspirational puffery that courts have concluded cannot support a Rule 10b–5 claim. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014).

Instead, Plaintiff asserts that this otherwise accurate statement is misleading because Defendants "omitted to disclose that [the] benefits [derived from FEJA] were not obtained through legitimate lobbying activities." (*Id.* ¶ 105(b).) But the 10-K's description of FEJA—enacted more than two years before the class period—makes no comment on *how* the legislation was passed or on ComEd's lobbying efforts. This statement accurately describing the effects of the as-enacted legislation years after its passage is not rendered misleading by a failure to disclose the alleged methods by which the passage of the legislation was secured. *See supra* at 5–6; *see also Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 163–64 (S.D.N.Y. 2018) (statements describing the terms of a plea agreement were not rendered false or misleading by a failure to disclose that the company was not complying with the terms of the agreement). This statement is true, and it cannot form the basis of a claim under Rule 10b–5. *See Anderson*, 140 F. Supp. 2d at 909; *Arbitrage Event-Driven Fund v. Tribune Media Co.*, 2020 WL 60186, at *7 (N.D. Ill. Jan. 6, 2020) (holding statements accurately describing a merger agreement were not misleading for failing to disclose parties' intentions regarding merger obligations).

The second allegedly false statement appears in the section of the Form 10-K describing the "Risk Factors" applicable to the registrants. It states that Exelon and ComEd "have large consumer customer bases and as a result could be the subject of public criticism focused on the operability of their assets and infrastructure and quality of their service." (Compl. ¶ 104(e).) The 10-K discloses that such "[a]dverse publicity" could render legislatures and other government officials "less likely to view … Exelon and its subsidiaries in a favorable light," resulting in negative legislative or regulatory outcomes. (*Id.*) Plaintiff urges that the disclosure of these risks—which is accurate—is rendered misleading by the failure to also disclose the risks of penalties or adverse outcomes that could arise due to the alleged bribery. (*Id.* ¶ 105(c).) But

10

again, "absent an express prior disclosure, a corporation has no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoing or mismanagement." *In re Banco Bradesco Sec. Litig.*, 277 F. Supp. 3d 600, 657 (S.D.N.Y. 2017) (internal quotation marks and citation omitted); *see also Ulbricht*, 2020 WL 5517313, at *9–10. "That well-established principle would be entirely meaningless if every reporting company were required to disclose uncharged, unadjudicated conduct in the risk-factors sections of its filings." *Banco Bradesco*, 277 F. Supp. 3d at 651. The Complaint does not allege that, at the time the Form 10-K was filed, the risk of adverse consequences had materialized. *See, e.g.*, *In re FBR.*, 544 F. Supp. 2d at 362 (no disclosure was required where "the risk that [the company's] noncompliance … would actually cause a loss to the company or its shareholders had neither 'transpired' nor become a 'near certainty.'"). And when Exelon and ComEd learned of government investigations, they were disclosed. (*See, e.g.*, Compl. ¶¶ 116, 144, 154.) Plaintiff fails to allege that the omission of the alleged misconduct rendered the accurate risk disclosures false or misleading.

### 2. Plaintiff's Allegations Regarding the August 2019 Earnings Conference Do Not Satisfy the Requirements of the PSLRA.

Lastly, Plaintiff alleges that Ms. Pramaggiore's statement in an August 2019 earnings call regarding a franchise agreement with the City of Chicago was false or misleading. (Compl. ¶ 118(d).) The statement itself merely says that ComEd had "started to have discussions around [the franchise agreement]" and believed the City's "priorities are very much aligned" with those of ComEd. (*Id.*) Critically, the Complaint never even *attempts* to allege *why* this statement is false or misleading. And there are no allegations of any bribery with respect to the City of Chicago or otherwise connecting the franchise agreement to the alleged bribery of Public Official A. This does not come close to satisfying the rigorous standard of the PSLRA. *See Cornielsen*, 916 F.3d at 599 (explaining that the PSLRA requires plaintiffs to specify the "reason

11

or reasons why [each] statement is misleading").  In the absence of any allegations explaining

why this innocuous statement (not about state legislation) is misleading, there is no claim.

**D.**   **Regulation S-K Does Not Render the Statements in the Form 10-K False or Misleading.**

In an attempt to manufacture a duty to disclose the alleged misconduct, Plaintiff asserts

that the 2018 10-K was rendered misleading because it failed to disclose alleged bribery in

violation of Item 303 of Regulation S–K.[8]  (Compl. ¶¶ 128–29.)  Item 303 requires issuers to

"[d]escribe any known trends or uncertainties that have had or that the registrant reasonably

expects will have a material favorable or unfavorable impact on net sales or revenues or income

from continuing operations."  17 C.F.R. § 229.303(a)(3)(ii).  Item 303 does not support

Plaintiff's claims.

Item 303 of Regulation S–K generally "does not give rise to [a] private action under Rule

10b."  *Anderson*, 140 F. Supp. 2d at 909; *see also Washtenaw Cty. Emps.' Ret. Sys. v. Walgreen

Co.*, 2016 WL 5720375, at *14 (N.D. Ill. Sept. 30, 2016); *Brasher v. Broadwind Energy, Inc.*,

2012 WL 1357699, at *13 (N.D. Ill. Apr. 19, 2012).  Therefore, "[a]bsent some other basis for

the duty [to disclose], plaintiffs cannot rely solely on Item 303(a)" to state a claim.  *Anderson*,

140 F. Supp. 2d at 909.

More fundamentally, Plaintiff has not adequately alleged that the uncharged alleged

bribery was a "known trend[] or uncertaint[y]" that ComEd "reasonably expect[ed] [would] have

a material … unfavorable impact" on ComEd's operations.  17 C.F.R. § 229.303(a)(3)(ii).  This

is for two separate, fundamental reasons.  *First*, there is no alleged "trend."  A single risk of

---

[8] Plaintiff also alleges a violation of Item 105 of Regulation S-K based on the risk disclosures identified in paragraph 104(e) of the Complaint.  (Compl. ¶¶ 130–31.)  As discussed above, these risk disclosures were not rendered misleading by omitting discussion of the uncharged alleged wrongdoing.  *See supra at* 10–11.

government action against Exelon is not a trend. *Second*, the government action that ultimately came was not "known" at the time. Put together, although Plaintiff alleges that the alleged bribery was ongoing, it has pleaded no particularized facts to suggest that Defendants expected, much less that there was any "known trend" of, any impact on sales, revenues, or income at the time the Form 10-K was filed. *See Lopez v. CTPartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 35–36 (S.D.N.Y. 2016) (Item 303 did not require disclosure when "[i]t was entirely speculative that disclosure of the executives' bad behavior would ever come to light, let alone that this revelation would be revealed in a forum and manner that would badly damage [the company's] earnings or revenue"); *Diehl*, 339 F. Supp. 3d at 167 (no Item 303 claim because "for the [illegal] conduct to impact [the Company's] operating results or financial condition materially, an attenuated chain of contingencies would have to occur"). That the conduct later resulted in an agreed-upon payment in a DPA resolving a potential matter *without* criminal liability does not mean that the alleged bribery was a "known trend or uncertainty" that required disclosure.[9] Item 303 does not "impose a duty to disclose uncharged, unadjudicated wrongdoing, in particular when that wrongdoing has only, at best, a tangential relationship to the defendant's financial conduction and operating results." *Diehl*, 339 F. Supp. 3d at 168 (internal quotation marks and alterations omitted). Securities laws do not punish "fraud by hindsight." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759–60 (7th Cir. 2007) (quoting *Tellabs*, 551 U.S. at 320).

---

[9] The Complaint does not allege, for example, that regulators already had taken action that could reasonably be expected to materially impact revenues, but that such action was undisclosed; to the contrary, the Complaint alleges that Exelon disclosed the criminal investigation upon becoming aware of it. *Cf. Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222, at *7 (N.D. Ill. Feb. 5, 2020).

13

**III.    Plaintiff Fails to Adequately Allege Scienter.**

The Complaint also fails to plausibly allege that Ms. Pramaggiore acted with fraudulent intent when making her few public statements.  Scienter may be "demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018) (internal quotation marks omitted).  As described above, the Complaint fails to adequately allege that the few statements that Ms. Pramaggiore made—which were accurate factual descriptions of legislation, risks to ComEd, and negotiations with the City of Chicago—were false or misleading.  *See supra* at 9–12.  Even more importantly, no matter how Plaintiff will try to characterize those statements, there is no allegation that Ms. Pramaggiore knew (or was reckless in not knowing) that her *statements* were false at the time she made them.

**IV.    Plaintiff's Section 20(a) Claim Also Should Be Dismissed.**

The Complaint also seeks to hold Ms. Pramaggiore liable for the allegedly false and misleading statements of others as a "controlling person[ ]" of both Exelon and ComEd under Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a).  (Compl. ¶¶ 250–51.)  To state a claim under Section 20(a), "a plaintiff must first adequately plead a primary violation of securities laws." *Pugh*, 521 F.3d at 693.  For the reasons stated above and in the other Defendants' motion to dismiss, which are fully adopted and incorporated herein, Plaintiff has failed to state a claim under Section 10(b).  Because the Complaint does not adequately allege a primary violation of the securities laws, the Section 20(a) claim against Ms. Pramaggiore must be dismissed. *Id.*

Separately, the Complaint fails to allege any facts supporting the allegation that Ms. Pramaggiore was a controlling person over Exelon.  To establish control-person liability, the Complaint must plead (1) "the alleged control-person actually participated in, that is, exercised

14

control over, the operations of the [primary violator] in general"; and (2) "the alleged control-person possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). The Complaint includes no particularized facts supporting its allegation that Ms. Pramaggiore—as the CEO of Exelon Utilities, a subordinate business unit—controlled the operations of the parent company, Exelon. *See Silverman v. Motorola, Inc.*, 772 F. Supp. 2d 923, 927–34 (N.D. Ill. 2011) (leaders of business units of Motorola, "each of which reported revenue and operating earnings separately," were not control persons of Motorola for purposes of Section 20(a)). Nor are there any particularized allegations that Ms. Pramaggiore had the power to control Exelon's public statements. *Id.*

Indeed, the Complaint's only allegations touching on Ms. Pramaggiore's control over Exelon are generalized allegations that all of the Individual Defendants "were able to, and did, determine the content of the various SEC filings and other public statements pertaining to Exelon." (*See, e.g.*, Compl. ¶¶ 176–77, 251.) The Court need not credit the Complaint's conclusory allegations that all of the Individual Defendants exercised control over Exelon. *See Desai v. Gen. Growth Props. Inc.*, 654 F. Supp. 2d 836, 863 (N.D. Ill. 2009); *Waldock v. M.J. Select Glob., Ltd.*, 2005 WL 3542527, at *7 (N.D. Ill. Dec. 27, 2005). The Complaint has not adequately alleged that Ms. Pramaggiore is a control person over Exelon, and the Section 20(a) claim must be dismissed to the extent it seeks to hold Ms. Pramaggiore liable for Exelon's statements.

## CONCLUSION

For the foregoing reasons, Defendant Anne Pramaggiore respectfully requests that this Court enter an order dismissing Lead Plaintiff's Complaint against her with prejudice.

15

Dated:  November 18, 2020

Respectfully submitted,

SIDLEY AUSTIN LLP

*/s/ David A. Gordon*
Scott R. Lassar
David A. Gordon
Jennifer M. Wheeler
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
dgordon@sidley.com
jwheeler@sidley.com

*Attorneys for Defendant Anne Pramaggiore*

16

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on November 18, 2020, a true and accurate copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which sends notice to counsel of record via e-mail.

*/s/ David A. Gordon*
David A. Gordon
