**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 1:19-cv-08209 |
| vs. | |
| EXELON CORPORATION, et al., | Hon. Virginia M. Kendall |
| Defendants. | |

**<u>MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF</u>**
**<u>THE EXELON AND COMED DEFENDANTS'</u>**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

TABLE OF ABBREVIATIONS ..................................................................................................... v

    INTRODUCTION .............................................................................................................. 1

    BACKGROUND ................................................................................................................ 2

    ARGUMENT ...................................................................................................................... 3

    I.     THE COMPLAINT MUST BE DISMISSED BECAUSE IT CONFLATES
             DEFENDANTS, MAKING IT IMPOSSIBLE TO DETERMINE WHO
             MADE WHICH STATEMENTS AND WHETHER THEY WERE FALSE. ....... 3

    II.    PLAINTIFF'S COMPLAINT ALSO FAILS BECAUSE DEFENDANTS
             WERE UNDER NO DUTY TO DISCLOSE UNCHARGED,
             UNADJUDICATED WRONGDOING. ............................................................... 5

    III.   THE COMPLAINT FAILS TO CREATE A STRONG INFERENCE OF
             SCIENTER, WHICH REQUIRES DISMISSAL. ................................................ 12

    CONCLUSION ................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albert Fadem Tr. v. Am. Elec. Power Co.*,
  334 F. Supp. 2d 985 (S.D. Ohio 2004) ...................................................................13

*Anderson v. Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001), *aff'd sub nom. Gallagher v. Abbott
  Labs.*, 269 F.3d 806 (7th Cir. 2001)...............................................................6, 7, 8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................................6

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996)...................................................................................13

*In re Citigroup Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004).....................................................................9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)....................................................................................6

*Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*,
  114 F. Supp. 3d 633 (N.D. Ill. 2015) ......................................................6, 8, 9, 11

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
  916 F.3d 589 (7th Cir. 2019) .................................................................................14

*Diehl v. Omega Protein Corp.*,
  339 F. Supp. 3d 153 (S.D.N.Y. 2018)......................................................................8

*Dow Corning Corp. v. BB & T Corp.*,
  2010 WL 4860354 (D.N.J. Nov. 23, 2010) .............................................................5

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...................................................................................15

*Eli Lilly & Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998) ......................................................................3, 5

*Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*,
  No. 09-CV-5641, 2012 WL 1068761 (N.D. Ill. Mar. 29, 2012)..............................8

*In re Harley-Davidson, Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wis. 2009).....................................................................8

*Jackson Nat'l Life Ins. Co. v. Ligator*,
   949 F. Supp. 200 (S.D.N.Y. 1996) ........................................................5

*Janus Capital Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011).............................................................................4

*Kriendler v. Chem. Waste Mgmt., Inc.*,
   877 F. Supp. 1140 (N.D. Ill. 1995) ......................................................6

*Lewis v. YRC Worldwide Inc.*,
   2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) ...................................10

*Lindblom v. Mobile Telecomms. Techs. Corp.*,
   985 F. Supp. 161 (D.D.C. 1997) ..........................................................5

*In re Lions Gate Ent. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) ....................................................10

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)...........................................................................3, 6

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993)..................................................................3

*In re Par Pharm., Inc. Sec. Litig.*,
   733 F. Supp. 668 (S.D.N.Y. 1990) .....................................................10

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
   895 F.3d 933 (7th Cir. 2018) ........................................................14, 15

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) ...............................................12, 13, 15

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016)................................................14

*Selbst v. McDonald's Corp.*,
   432 F. Supp. 2d 777 (N.D. Ill. 2006) ............................................12, 14

*Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*,
   2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ...........................6, 10, 12

*Stransky v. Cummins Engine Co.*,
   51 F.3d 1329 (7th Cir. 1995) ................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................12

*In re United Am. Healthcare Corp. Sec. Litig.*,
    2007 WL 313491 (E.D. Mich. Jan. 30, 2007)..........................................................................10

**Statutes**

15 U.S.C. § 78u-4(b)............................................................................................................3

**Regulations**

17 C.F.R. § 229.105.............................................................................................................6

17 C.F.R. § 229.303.............................................................................................................6

## TABLE OF ABBREVIATIONS

| | | |
|---|---|---|
| 2018 10-K | 2018 SEC Form 10-K of Exelon and Affiliates | Ex. 1 |
| 1H 2018 Contributions Report | Political Contributions Report of Exelon and Affiliates for the First Half of 2018 | Ex. 2 |
| 1Q19 10-Q | 1Q19 SEC Form 10-Q of Exelon and Affiliates | Ex. 3 |
| 2H 2018 Contributions Report | Political Contributions Report of Exelon and Affiliates for the Second Half of 2018 | Ex. 4 |
| 2Q19 10-Q | 2Q19 SEC Form 10-Q of Exelon and Affiliates | Ex. 5 |
| 3Q19 10-Q | 3Q19 SEC Form 10-Q of Exelon and Affiliates | Ex. 6 |
| CEPA | Clean Energy Progress Act (bill introduced in 2019) | |
| Code of Conduct | Code of Business Conduct of Exelon and Affiliates | Ex. 7 |
| ComEd | Commonwealth Edison Company | |
| Complaint or Compl. | Lead Plaintiff's Complaint for Violations of the Federal Securities Laws, dated September 16, 2020 (Dkt. 65) | |
| July 12, 2019 8-K | Exelon and ComEd's July 12, 2019 SEC Form 8-K | Ex. 8 |
| July 17, 2020 Press Release | Press Release, dated July 17, 2020, "ComEd Reaches Agreement to Resolve Justice Department Investigation" | Ex. 9 |
| Defendants or Exelon and ComEd Defendants | Exelon Corporation, Commonweath Edison Company, Christopher Crane, William Von Hoene, and Joseph Dominguez | |
| DPA | Deferred Prosecution Agreement, dated July 16, 2020, between and among the United States Attorney for the Northern District of Illinois and Commonwealth Edison Company | Ex. 10 |
| EIMA | 2011 Energy Infrastructure Modernization Act, Public Act 097-0616 (Senate Bill 1652) | |
| Exelon | Exelon Corporation | |

| | | |
|---|---|---|
| FEJA | 2016 Future Energy Jobs Act, Public Act 99-0906 (Senate Bill 2814) | |
| Individual Defendants | Christopher Crane, William Von Hoene, and Joseph Dominguez | |
| Plaintiff | Local 295 IBT Employer Group Pension Trust Fund | |
| Political Contributions Guidelines | Corporate Political Contributions Guidelines of Exelon and Affiliates | Ex. 11 |
| PSLRA | Private Securities Litigation Reform Act, *codified in relevant part at* 15 U.S.C. § 78u-4 | |
| Recoupment (Clawback) Policy | Clawback Policy, *in* Notice of Annual Meeting and 2019 Proxy Statement | Ex. 12 |
| Rule 9(b) | Federal Rule of Civil Procedure 9(b) | |
| Rule 12(b)(6) | Federal Rule of Civil Procedure 12(b)(6) | |
| SEC | U.S. Securities and Exchange Commission | |
| § 10(b) | Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 24 C.F.R. § 240.10b-5 | |
| § 20(a) | Securities Exchange Act, 15 U.S.C. § 78t | |

## INTRODUCTION

Plaintiff's Complaint, while long on rhetoric, plainly lacks the substance necessary to state a claim under the federal securities laws. The Complaint fails to confront the inconvenient fact that statements and admissions made by just one defendant may not be attributed to others. It ignores the well-established rule that companies and their representatives have no duty to disclose misconduct that has never been adjudicated, let alone charged. And it does not come close to pleading scienter because it fails to point to a single contemporaneous fact—from a confidential witness or any other source—that contradicts any of the statements Plaintiff challenges and was known by any Defendant at the time those statements were made.

Plaintiff knows all of this, and it knows that these problems are fatal to its claims. That is why Plaintiff bends over backwards in its Complaint to obscure the facts, conflating "Defendants" in the hopes that the Court does not look too closely at who actually said what and when; Plaintiff does not come clean with the Court, for example, that it was only ComEd, and not Exelon or any of the Individual Defendants, that admitted to any wrongdoing. It is why Plaintiff focuses so heavily on the DPA while ignoring that months or even years earlier, when all the statements that Plaintiff claims were fraudulent were made, not a single lobbying activity by any Defendant had ever been charged. And it is why Plaintiff throws the kitchen sink at the issue of scienter—stringing together a litany of theories that courts routinely have rejected— without presenting any of the facts plaintiffs typically present (like claims from a knowledgeable confidential witness) to suggest that any Defendants knew at the time the statements were made that those statements were false.

Each of these infirmities—Plaintiff's conflation of Defendants, Plaintiff's reliance on a theory of required self-accusation that courts repeatedly have rejected, and Plaintiff's failure to identify any contradictory contemporaneous facts—is fatal to Plaintiff's Complaint.

This case must be dismissed.

## BACKGROUND

Exelon is a publicly traded utility services company that operates through two distinct groups of subsidiaries: ExGen, which runs power plants, and Exelon Utilities, which includes subsidiaries (including ComEd) that deliver electricity to customers. (Compl. ¶¶ 3, 34.)

Between July and October 2019, Exelon and ComEd disclosed that they had received two grand jury subpoenas from the U.S. Attorney's Office for the Northern District of Illinois and that the SEC was investigating their lobbying activities. (*Id.* ¶¶ 116-119, 144, 154.) On July 16, 2020, ComEd—but not Exelon or any other entity or individual—entered into the DPA. (*Id.* at 1.) In the DPA, ComEd admitted that, from 2011 to 2019, it made certain payments to "political allies" of "Public Official A" in order to "influence" him to "assist" ComEd "with respect to legislation concerning ComEd and its business." (*Id.* ¶ 7.) Based on this, Plaintiff tries to construct a narrative about an alleged "shift in strategy" from "legitimate lobbying," even though the DPA never says that ComEd ever stopped any of its legitimate lobbying activities. (*See, e.g.*, *id.* ¶¶ 9, 186, 205, 214.)

Relying heavily on the DPA, Plaintiff asserts violations by all Defendants of §§ 10(b) and 20(a), not based on the underlying conduct described in the DPA, but based on claims that Defendants' public statements during the class period were false because they did not disclose that underlying conduct and its alleged effects on their businesses. (*Id.* ¶¶ 1-2.) Plaintiff thus relies on an omission theory of liability as to all Defendants.

2

## ARGUMENT

To state a § 10(b) claim, Plaintiff must allege facts that, if true, would establish that Defendants (1) made a material misrepresentation or omission, (2) with scienter, (3) in connection with the purchase or sale of a security, (4) upon which Plaintiff relied, (5) causing Plaintiff economic loss. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). Plaintiff must also meet the heightened pleading requirements of the PSLRA by "specify[ing] each statement alleged to have been misleading" and the "reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). In addition, for each challenged statement, Plaintiff must "state with particularity facts giving rise to a strong inference" of scienter. *Id.* § 78u-4(b)(2). For the three independent reasons set out below, the Complaint does not meet that standard and must be dismissed in full.

## I. THE COMPLAINT MUST BE DISMISSED BECAUSE IT CONFLATES DEFENDANTS, MAKING IT IMPOSSIBLE TO DETERMINE WHO MADE WHICH STATEMENTS AND WHETHER THEY WERE FALSE.

Plaintiff has hopelessly muddled the allegations in its Complaint, attributing supposed misstatements and misconduct to undifferentiated "Defendants" and to a "Company" that is actually two different companies. (*See* Compl. ¶ 1; *see also, e.g.*, *id.* ¶¶ 2, 7-8, 46, 61.) In so doing, Plaintiff has failed to meet the heightened standard for pleading fraudulent conduct, making it impossible for Defendants or the Court to determine what exactly is being alleged and on what basis. For this reason alone, the Complaint must be dismissed. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 492 (D.N.J. 1998) ("[A] plaintiff must plead predicate acts

3

with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud.").[1]

Plaintiff's Complaint is riddled with examples of this improper and misleading pleading tactic. Throughout, Plaintiff identifies statements in SEC reports and earnings calls that had *nothing to do* with ComEd, and then repeatedly cites such statements as though they *concerned* ComEd—by lumping Exelon and ComEd together as "the Company" and treating statements about Exelon or its subsidiaries as though they were made by ComEd. (*See, e.g.*, Compl. ¶ 112(a) (1Q19 10-Q stating that Exelon and ExGen (but not ComEd) were "working with legislators and stakeholders" to pass the CEPA, legislation not even mentioned in the DPA); *id.* ¶ 111(b) (earnings call statement that Exelon was "negotiating" bills that would affect various subsidiaries).) Plaintiff does the same thing with respect to the Individual Defendants, erroneously lumping them together and attempting to attribute all class-period statements to all the Individual Defendants collectively. This is also improper. To hold an individual defendant liable for a statement, a plaintiff must allege that the defendant was the "maker" of the statement—*i.e.*, had "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141-42 (2011). Under that standard, Von Hoene was the maker of just one class-period statement (which is not actionable because it concerned the effect of the subpoenas on legislation *unrelated to* ComEd (Compl. ¶ 118(c))); Crane, who acted on behalf of Exelon, was the maker only of statements about Exelon, not statements about ComEd (*see id.* ¶¶ 102, 104(a), (e), 106,

---

[1]    As explained in Parts II and III below, Plaintiff's disingenuous approach to the pleadings also infects Plaintiff's claims by contributing to Plaintiff's failure both to plead any duty to disclose the unadjudicated wrongdoing and to plead scienter.

111(a)-(c), 112(a)-(c), 116, 118(a)-(b), 119(a)-(b), (e)-(f)); and Dominguez, who signed SEC reports on behalf of ComEd, was the maker only of statements about ComEd, not Exelon (*see id.* ¶¶ 104(d)-(e), 112(c), (f), 116, 119(a)-(b)). Plaintiff's motivation here is clear—it wants to obscure the fact that only one Defendant has made any admissions at all.

Plaintiff's obfuscation of critical facts—misleadingly conflating Defendants and providing no indication of who actually made a challenged statement or engaged in alleged wrongdoing—means that Plaintiff fails to state a viable claim. Securities fraud plaintiffs may not proceed on allegations that "vaguely attribute[]" alleged fraudulent conduct to undifferentiated "defendants." *Eli Lilly*, 23 F. Supp. 2d at 492. Such imprecise allegations violate the pleading standards and require dismissal. *See, e.g.*, *Dow Corning Corp. v. BB & T Corp.*, 2010 WL 4860354, at *8-9 (D.N.J. Nov. 23, 2010) (dismissing claims against parent company where complaint attempted to ascribe subsidiary's conduct to parent by referring to them collectively as "defendants"); *Lindblom v. Mobile Telecomms. Techs. Corp.*, 985 F. Supp. 161, 163-64 (D.D.C. 1997) (dismissing claim against subsidiary where complaint obscured distinction between parent and subsidiary by referring vaguely to statements by "defendants"); *Jackson Nat'l Life Ins. Co. v. Ligator,* 949 F. Supp. 200, 208 (S.D.N.Y. 1996) (failure to distinguish among "Ligator Defendants" was "egregious" example of "group pleading").

## II.    PLAINTIFF'S COMPLAINT ALSO FAILS BECAUSE DEFENDANTS WERE UNDER NO DUTY TO DISCLOSE UNCHARGED, UNADJUDICATED WRONGDOING.

The Complaint's theory of liability—that the securities laws create a duty to disclose wrongdoing before it is even determined to have been wrongdoing—has been rejected repeatedly by courts in this Circuit and elsewhere. Plaintiff's wholesale reliance on this invalid theory is a second independent basis for the Court to dismiss the Complaint.

5

It is well established that an omission is actionable only if there is a duty to disclose the omitted information. *See Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading."); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331 (7th Cir. 1995) ("Mere silence about even material information is not fraudulent absent a duty to speak."). It is also well established that the securities laws do *not* impose a general duty to disclose "uncharged, unadjudicated claims" of wrongdoing, misconduct, or corporate mismanagement. *Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356, at *5 (N.D. Ill. Sept. 26, 2018). In other words, "[d]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014).[2] Instead, a duty to disclose such activity arises only if failure to disclose would render other statements misleading. *See Matrixx*, 563 U.S. at 44; *Stransky*, 51 F.3d at 1331; *Anderson*, 140 F. Supp. 2d at 903. To allege an actionable omission, therefore, a plaintiff must "offer *specific, contradictory information*" that is "sufficient to establish" that the omission rendered another statement misleading. *Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l*

---

[2] Nor do any SEC rules create a duty to "confess contested charges." *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 906 (N.D. Ill. 2001) ("The disclosure rules are probative of what a company is otherwise obliged to disclose, but they do not create an independent duty."), *aff'd sub nom. Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001). Thus, Plaintiff's suggestion (Compl. ¶¶ 128, 130) that such a duty may arise under Items 105 and 303 of SEC Regulation S-K, 17 C.F.R. §§ 229.105, 229.303, is incorrect. *See Anderson*, 140 F. Supp. 2d at 906, 909; *Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1157 (N.D. Ill. 1995) (alleged "violation of an exchange rule will not support a private claim"). In any event, Plaintiff has not alleged that the conduct admitted by ComEd in the DPA was a "known trend or uncertainty" that Defendants "reasonably expect[ed]" would have a "material" "unfavorable impact" on Defendants' "net sales, revenues, or income." 17 C.F.R. § 229.303(a)(3)(ii). Nor has Plaintiff alleged that Defendants' risk disclosures were rendered misleading by omitting to disclose uncharged, unadjudicated wrongdoing. *See* 17 C.F.R. § 229.105.

*Corp.*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015) (emphasis added).  A review of the various

categories of challenged statements makes clear that Plaintiff has not done that.

>    ***Statements about lobbying activity and related risk factors.***  Plaintiff challenges

statements made in SEC reports and conference calls that summarized, in very general terms,

efforts by Exelon and certain subsidiaries to lobby for new favorable legislation.  (Compl.

¶¶ 101-02, 104(a), (e), 111, 112(a)-(c), 118(b)-(d), 119(b), (e)-(f), 124-25.)  Accompanying those

statements were disclosures about "risk factors" that warned investors that Exelon and its

subsidiaries have "large consumer customer bases" and could be subject to "public criticism,"

which could in turn affect the various companies' ability to secure "favorable legislative and

regulatory outcomes."  (*Id.* ¶ 104(e).)  In addition, Exelon and its subsidiaries warned that each

"operates in a market and regulatory environment that poses significant risks," and that while

each had "disclosed the known material risks," there could be "further risks and uncertainties

that are not presently known."  (Ex. 1 at 31.)

>    Those statements were not rendered misleading by omitting to disclose uncharged,

unadjudicated wrongdoing.  As an initial matter, many of those statements had nothing to do

with ComEd, or else concerned Exelon and its subsidiaries generally, although Plaintiff's effort

to obscure who said what makes it almost impossible to notice that defect.  (*See* Compl. ¶¶ 102,

104, 112, 116, 117-19.)  Even setting that problem to the side, the law is clear that reasonable

investors are not misled by general warnings about operational or regulatory risks because no

reasonable investor "would infer anything about the state of [the company's] compliance" from

such warnings.  *Anderson*, 140 F. Supp. 2d at 905.  Here, no reasonable investor would have

believed that general statements about pending legislation and possible risk factors—some that

did not even concern ComEd, and others that concerned Exelon and its subsidiaries at a high

7

level—indicated that ComEd was exposed to no potential risks.  *See, e.g.*, *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 165 (S.D.N.Y. 2018) ("No reasonable investor would have construed these generic risk disclosures as representations that [defendant's s]ubsidiary had conducted itself in a manner that negated the risk of future adverse action, including a claim that it had violated the terms of its probation.").  The challenged statements were not misleading by virtue of the alleged failure to disclose unadjudicated wrongdoing later admitted by ComEd.

Furthermore, Plaintiff does not allege that Defendants' general statements about lobbying activities and "risk factors" were themselves inaccurate or allege any contradictory facts known at the time those descriptions and warnings were made.  *See Navistar*, 114 F. Supp. 3d at 651 (plaintiff must offer "contradictory" information to allege a misleading omission); *Garden City Emps.' Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-CV-5641, 2012 WL 1068761, at *5 (N.D. Ill. Mar. 29, 2012) (same); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 1000 (E.D. Wis. 2009) (complaint deficient because it lacked "fact-based connections between a speaker, a statement, and specific, contradictory information presumably known to that speaker at the time the statement was made" where plaintiffs "rel[ied] on general cross references to 'press releases' and 'conference calls' containing 'false information'").  Instead, Plaintiff argues that because ComEd *later* admitted certain activity in the DPA, all Defendants were required, *months or years earlier*, to accuse themselves of wrongdoing that had not yet been determined to be wrongdoing.  But a company faced with unresolved regulatory or legal compliance issues is not required to admit to wrongdoing where (as here) the company does not "claim to have any particular regulatory prowess," "represent itself as having an abnormally strong compliance record," or "specifically attribute its past success to outstanding quality control."  *Anderson*, 140 F. Supp. 2d at 906.  Because Defendants described the lobbying activity and associated risk factors of Exelon

8

and its subsidiaries in general terms that could not be understood to deny the existence of *any* possible wrongdoing as to ComEd, Defendants had no duty to disclose unadjudicated conduct.

**Statements about the FEJA.**  Plaintiff challenges statements about the financial effects of the FEJA, asserting that they were misleading because they failed to disclose that the law was passed in 2016 allegedly as a result of unlawful lobbying activity.  (Compl. ¶¶ 104(b)-(d), 112(d)-(e), 119(c)-(d).)  The statements noted that ExGen's nuclear generators had recognized revenue by producing zero-emission credits under the FEJA and that ExGen had consequently reversed its decision to cease operations at two plants.  Those statements were not rendered misleading by Defendants' failure to disclose ComEd's unadjudicated wrongdoing.  Even assuming that Plaintiff has adequately alleged that the passage of the FEJA resulted in part from a "bribery scheme" (*id.* ¶ 105), that allegation has no bearing on the accuracy of Defendants' disclosure of the subsequent effects of the legislation on ExGen, which is an Exelon business division *distinct from ComEd.*  Plaintiff nowhere alleges that Defendants inaccurately reported the revenue and improved operations that were attributable to the FEJA, and Plaintiff otherwise fails to connect Defendants' statements about the FEJA to ComEd's alleged undisclosed wrongdoing during the class period.  Plaintiff's claim again boils down to an allegation that Defendants had a duty to disclose misconduct because the "reporting of revenue figures implicitly represented that such results would continue."  *In re Citigroup Sec. Litig.*, 330 F. Supp. 2d 367, 378 (S.D.N.Y. 2004) (dismissing § 10(b) claim based on failure to disclose that revenues were obtained through illegal conduct and thus unsustainable).  That fails to state a claim, because Plaintiff has not offered any "specific, contradictory information" that Defendants omitted about the way the FEJA affected ExGen's business.  *Navistar*, 114 F. Supp. 3d at 651.

9

***Statements about government investigations.*** Plaintiff challenges statements disclosing that Exelon and ComEd had received a grand jury subpoena requiring production of information about their lobbying activities and indicating that Defendants were cooperating with the investigation. (Compl. ¶¶ 116, 118(a), 119(a).) Plaintiff does not allege that those statements were inaccurate. Instead, Plaintiff asserts that the statements were misleading because they suggested that Exelon and ComEd were "merely subpoenaed as witnesses" and omitted to disclose a "substantial risk of criminal penalties." (*Id.* ¶ 121(a).) In other words, Plaintiff argues that Defendants "should have admitted" to a legal violation "while the investigations were ongoing." *Societe Generale*, 2018 WL 4616356, at *6. But companies are not obligated to treat "every investigation" as "evidence of wrongdoing," *id.*, or "speculate as to the myriad of consequences, ranging from minor setbacks to complete ruin," that might result. *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 678 (S.D.N.Y. 1990); *see also In re United Am. Healthcare Corp. Sec. Litig.*, 2007 WL 313491, at *13 (E.D. Mich. Jan. 30, 2007). Defendants' disclosures were accurate when made, and they triggered no duty to accuse themselves of uncharged and unproven wrongdoing prior to the resolution of those investigations.[3]

***Statements about political contributions.*** Plaintiff challenges statements about Exelon's political contributions made in the 1H 2018 Contributions Report (Compl. ¶ 99) and 2H 2018 Contributions Report (*id.* ¶ 113). Both reports stated that "Exelon's political contributions

---

[3] Plaintiff alleges that the 2Q19 10-Q failed to comply with ASC 450, which requires the disclosure of "[r]easonably possible" loss contingencies and "pending or threatened litigation." (Compl. ¶¶ 134-45.) But the Complaint alleges no particularized facts to show that the possibility of penalties was "more than remote." ASC 450, *Contingencies*. The investigation was in its early stages, and Plaintiff only speculates that it made penalties "more than remote." *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *12 (N.D.N.Y. Mar. 27, 2020). Plaintiff also fails to allege that the supposed failure to comply with ASC 450 rendered the 2Q19 10-Q materially misleading under § 10(b). (*See* Compl. ¶ 126.) Anyway, a government investigation is "not pending or threatened litigation." *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 21 (S.D.N.Y. 2016).

during the reporting period were all made in accordance with its Corporate Political Contributions Guidelines" and included a "listing of Exelon's political contributions," broken down into contributions by each of Exelon's subsidiaries, for the reporting period. (*Id.* ¶ 99; *see id.* ¶ 113.) Plaintiff asserts that the Contributions Reports were misleading in light of the activity ComEd later admitted in the DPA. (*Id.* ¶¶ 100, 114.) But Plaintiff fails to distinguish between reporting about contributions by ComEd and by Exelon's other subsidiaries, and fails to identify any item related to ComEd that was inaccurate. Here again, Plaintiff's careless drafting leaves Defendants unable to ascertain Plaintiff's basis for the alleged wrongdoing, requiring dismissal.

  ***Statements about Ochoa.*** Plaintiff challenges ComEd's announcement that "[o]n April 26, 2019, the Board of Directors of ComEd appointed Mr. Juan Ochoa to the Board to fill a vacancy created by an expansion of the size of the Board." (Compl. ¶ 112(f).) Plaintiff claims that Defendants should have also disclosed that "the board was expanded, and a vacancy created, in order to appoint Ochoa to the ComEd Board at the request of and in order to influence Public Official A." (*Id.* ¶ 114(e).) The DPA does not support Plaintiff's contention: it does not state that ComEd expanded the board in order to appoint Ochoa, and it further indicates that ComEd and Exelon "conducted due diligence" on Ochoa and "determined he was qualified for a Board position." (Ex. 10 at A-10.) Furthermore, Plaintiff offers no "specific, *contradictory* information" that Defendants failed to disclose. *Navistar*, 114 F. Supp. 3d at 651 (emphasis added). Plaintiff thus fails to allege that the alleged omission rendered the statement misleading.

  ***Statements about standards of legal and ethical conduct.*** Plaintiff also challenges general statements about standards of conduct contained in the Code of Conduct and the Political Contributions Guidelines. (Compl. ¶¶ 94-97, 103, 106-09.) Yet Plaintiff ignores that the Code and Guidelines did not make representations about the actual state of Exelon's and ComEd's

internal operations, but rather provided guidance to employees on best practices. (*Compare* Ex. 7 at 15 *with* Compl. ¶ 100(a).) Moreover, the Code *did* disclose that "[e]thical and legal lapses can harm any number of Exelon stakeholders—from employees and customers, to investors and the communities we serve," accurately describing a risk that certain individuals could violate Exelon's guidelines and bring harm to the company and its stakeholders. (Ex. 7 at 15.) The Code and Guidelines therefore cannot provide the basis of a misrepresentation claim.

## III.   THE COMPLAINT FAILS TO CREATE A STRONG INFERENCE OF SCIENTER, WHICH REQUIRES DISMISSAL.

The Complaint should be dismissed for a third independent reason: it fails to allege specific facts that create a strong inference of scienter—*i.e.*, that Defendants knew, or were reckless in not knowing, that the class-period statements were false at the time they were made. *See Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). To be strong, an inference must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Plaintiff also "must create a strong inference of scienter with respect to *each individual* defendant" and cannot rely on "group pleading" to attribute "statements in group-published documents" to "officers who have daily involvement in company operations." *Pugh*, 521 F.3d at 693 (emphasis added). To create the required inference, Plaintiff must allege, for example, contemporaneous "internal documents or communications" that contradicted Defendants' public disclosures about that activity. *Societe Generale*, 2018 WL 4616356, at *8 (case dismissed at pleadings stage on scienter grounds); *see also Selbst v. McDonald's Corp.*, 432 F. Supp. 2d 777, 786-87 (N.D. Ill. 2006) (same). The Complaint comes nowhere close to meeting those standards.

To start, the sheer volume of weak and cobbled-together facts that Plaintiff alleges in attempting to show scienter is telling. Plaintiff repeats a litany of allegations from elsewhere in

the Complaint in an effort to claim that those facts (if true) show that Defendants must have known the class-period statements were false. (*See* Compl. ¶¶ 180-91, 210-12, 213-20.) But piling on broad-brush allegations cannot, without more, "create a strong inference of scienter with respect to each individual defendant," *Pugh*, 521 F.3d at 693, and cannot disguise the fact that Plaintiff fails to allege any Defendant's knowledge of contemporaneous information that contradicted the challenged statements when they were made. This is fatal to Plaintiff's claims.

     ***Improper conflation of Defendants.*** As discussed, Plaintiff repeatedly conflates Exelon and ComEd, referring to the entities collectively as "the Company," and failing to tie allegations about scienter to either entity distinctly. (*See* Compl. ¶¶ 176, 179, 184-85, 200.) This is inadequate. Whether a subsidiary violated §10(b) and whether its parent did so "are different questions," *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996), and "it is insufficient to infer a parent's *scienter* merely from its subsidiary's bad conduct," *Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1012 (S.D. Ohio 2004).

     Plaintiff makes similarly deficient allegations about the Individual Defendants. For example, Plaintiff purports to show the "Individual Defendants'" fraudulent intent through allegations of their "direct involvement" in "hosting and participating in events directly with Official A." (Compl. ¶ 187.) But Plaintiff alleges nothing about Von Hoene's or Dominguez's supposed "direct involvement" in such events. Because Plaintiff's allegations do not specify which entity or individual supposedly acted with scienter, the Complaint fails to create "a strong inference of scienter" with respect to *each* Defendant, as it must do in order to avoid dismissal. *Pugh*, 521 F.3d at 693; *see also, e.g.*, *Chill*, 101 F.3d at 268 (refusing to conflate allegations of parent and subsidiary motive); *Fadem*, 334 F. Supp. 2d at 1011-12 (refusing to make "inferential leap" from allegations of subsidiary activity to "conclusory" allegations of parent scienter).

13

***Improper conclusory allegations.*** Plaintiff also makes claims that amount to "conclusory allegations of scienter derived from a defendant's mere access to information." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019). Plaintiff asserts, for example, that the Individual Defendants must have acted with scienter because they must have had access to "internal corporate documents" and "were required to monitor and keep themselves informed on Exelon and ComEd's business and operations." (Compl. ¶¶ 178, 200.) Yet scienter "cannot be inferred solely from the fact that, due to the defendants' . . . executive managerial position, they had access to the company's internal documentation as well as any adverse information." *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016); *see also Selbst*, 432 F. Supp. 2d at 786-87 ("[P]laintiffs' attempt to establish scienter based upon [CEO's and CFO's] high-level positions within [the company]" is "inadequate."). Instead, a complaint must "specifically identify" "reports or statements" that *contradicted* the defendants' class-period statements. *Sanofi*, 155 F. Supp. 3d at 406. Plaintiff here identifies no such reports or statements (and no confidential witnesses); it thus fails to plead scienter sufficiently.

***Lack of motive or fraudulent intent.*** Plaintiff also fails to create a strong inference of scienter through allegations of motive. Plaintiff alleges "a generalized motive common to all corporate executives," which "is not enough to establish scienter." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 939-40 (7th Cir. 2018). Specifically, Plaintiff asserts that "disclosure of the [alleged] bribery scheme" would have deprived Defendants of the benefits of favorable legislation and that the Individual Defendants' compensation was "tied to the passage of favorable legislation." (Compl. ¶¶ 193, 197.) But "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for

14

purposes of this inquiry." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *see also Kohl's Corp.*, 895 F.3d at 939-40 (generalized "motive to pretend nothing was amiss" insufficient to establish scienter).

   ***Exelon's claw back policy does not support an inference of fraudulent intent.*** Plaintiff alleges that Defendants' scienter can be inferred because Exelon has not disclosed any attempt to claw back compensation from two ComEd executives identified in the DPA. (Compl. ¶¶ 208-09.) Plaintiff asserts that the purported involvement of these executives must have been known by Crane, Von Hoene, and Dominguez, but provides no facts to support that contention. Plaintiff also alleges that ComEd's presumed failure to recoup this compensation supports an inference that "the Company" and Crane were aware of the alleged misconduct. Under the law, however, any such inference of scienter is meaningful only if it is "strong" and "at least as compelling as any opposing inference." *Pugh*, 521 F.3d at 693. Plaintiff's claim is neither. Pursuant to the policy in question, the decision whether "to recoup incentive compensation" is within the "sole discretion" of the "Board or Compensation Committee," and any claw back will occur only if "recoupment is not precluded by applicable law or employment agreements." (Ex. 12 at 43.) Plaintiff has not even tried to allege that recoupment was permissible under the applicable law and/or employment agreements. These facts, omitted from the Complaint, create competing inferences as to why any claw back has not been disclosed, defeating Plaintiff's allegations that this lack of decision creates a strong inference of fraudulent intent.[4]

## CONCLUSION

   This Court should dismiss the Complaint in full.

---

[4] Because Plaintiff has not adequately pled a primary violation of § 10(b), Plaintiff's § 20(a) claim must also be dismissed. *See Pugh*, 521 F.3d at 693; *Kohl's Corp.*, 895 F.3d at 936.

Dated:  November 18, 2020

Respectfully submitted,

/s/ Mark E. Schneider
KIRKLAND & ELLIS LLP
Mark E. Schneider
Jaran R. Moten
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
mark.schneider@kirkland.com
jaran.moten@kirkland.com

Sandra C. Goldstein (admitted *pro hac vice*)
Stefan Atkinson (admitted *pro hac vice*)
Kyla Jackson (admitted *pro hac vice*)
Evelyn Blacklock (admitted *pro hac vice*)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
kyla.jackson@kirkland.com
evelyn.blacklock@kirkland.com

*Attorneys for Defendants Exelon*
*Corporation, Commonwealth Edison*
*Company, Christopher M. Crane, Joseph*
*Dominguez, and William A. Von Hoene, Jr.*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 18, 2020, a true and accurate copy of

the foregoing was electronically filed with the CM/ECF system of the United States District Court

for the Northern District of Illinois, which sends notice to counsel of record via e-mail.




*/s/ Mark E. Schneider*
Mark E. Schneider