**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> EXELON CORPORATION, et al. <br><br> Defendants. | Case No. 1:19-cv-08209 <br><br> Hon. Virginia M. Kendall |

**REPLY IN SUPPORT OF ANNE PRAMAGGIORE'S
<u>MOTION TO DISMISS LEAD PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

ARGUMENT...................................................................................................................................1

I.  Ms. Pramaggiore Did Not Have a Freestanding Duty to Disclose Alleged Bribery..........1

II.  Plaintiff Has Failed to Allege That Ms. Pramaggiore Herself Made a False Or
Misleading Statement.......................................................................................................1

    A.  The Express Terms of the Relevant Public Filings Make Clear That
Ms. Pramaggiore Did Not Make the Majority of the Challenged
Statements...........................................................................................................2

        1.  In the Form 10-K, Ms. Pramaggiore Only Made Statements About the
Utility Registrants........................................................................................2

        2.  Ms. Pramaggiore Did Not Make the Statements in the Code of
Conduct........................................................................................................7

    B.  The Statements That Ms. Pramaggiore Did Make Were Not False and
Were Not Rendered Misleading by a Failure to Disclose the Alleged
Bribery................................................................................................................8

        1.  Ms. Pramaggiore's Accurate Statement Regarding the Effects of FEJA
Was Not Misleading. ...................................................................................8

        2.  The Statements About ComEd's Risk Were Not Rendered Misleading
for Failure to Disclose the Alleged Bribery...............................................10

        3.  Plaintiff Abandons Its Claim Regarding Ms. Pramaggiore's August
2019 Earnings Call Statement....................................................................14

III.  Plaintiff Fails to Adequately Allege Scienter..................................................................14

IV.  The Complaint Does Not Adequately Allege That Ms. Pramaggiore Was a
Control Person of Exelon.................................................................................................14

CONCLUSION..............................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**       **Page(s)**

*In re Akorn, Inc. Sec. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017).................................................................. 11

*Anderson v. Abbott Labs.*,
    140 F. Supp. 2d 894 (N.D. Ill. 2001).................................................................. 12

*In re Banco Bradesco Sec. Litig.*,
    277 F. Supp. 3d 600 (S.D.N.Y. 2017)..............................................................10, 11

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
    2012 WL 1030474 (N.D. Ill. Mar. 27, 2012)...................................................... 2

*Brasher v. Broadwind Energy, Inc.*,
    2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ...................................................... 12

*In re Braskem S.A. Sec. Litig.*,
    246 F. Supp. 3d 731 (S.D.N.Y. 2017) ............................................................... 8

*Calderon v. Vill. of Bridgeview, Illinois*,
    2020 WL 1139252 (N.D. Ill. Mar. 9, 2020)........................................................ 14

*In re CenturyLink Sales Pracs. and Sec. Litig.*,
    403 F. Supp. 3d 712 (D. Minn. 2019) ................................................................ 13

*City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*,
    2012 WL 607578 (N.D. Ill. Jan. 23, 2012)......................................................... 2

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2020 WL 3026564 (D.N.J. June 5, 2020).........................................................5, 7

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019).........................................................................1, 14

*Desai v. Gen. Growth Props., Inc.*,
    654 F. Supp. 2d 836 (N.D. Ill. 2009)................................................................. 15

*Diehl v. Omega Protein Corp.*,
    339 F. Supp. 3d 153 (S.D.N.Y. 2018).............................................................9, 12, 13

*Donovan v. ABC-NACO Inc.*,
    2002 WL 1553259 (N.D. Ill. July 15, 2002)...................................................... 15

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015).........................................................................4, 5, 6

*In re Grupo Televisa Sec. Litig.*,
   368 F. Supp. 3d 711 (S.D.N.Y. 2019)................................................................................... 4

*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007)................................................................................................ 13

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)......................................................................................................2, 4, 7

*Levy v. Gutierrez*,
   2017 WL 2191592 (D.N.H. May 4, 2017).........................................................................5, 7

*Lopez v. CTPartners Exec. Search, Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016)................................................................................... 12

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   164 F. Supp. 3d 568 (S.D.N.Y. 2016).........................................................................8, 9, 10

*Overton v. Todman & Co.*,
   478 F.3d 479 (2d Cir. 2007)................................................................................................... 4

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008)................................................................................................ 15

*Ross v. Career Educ. Corp.*,
   2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)......................................................................... 2

*Sanders v. JGWPT Holdings, Inc.*,
   2016 WL 4009941 (N.D. Ill. July 26, 2016).......................................................................... 7

*SEC v. e-Smart Techs., Inc.*,
   31 F. Supp. 3d 69 (D.D.C. 2014).......................................................................................... 3

*Silverman v. Motorola, Inc.*,
   772 F. Supp. 2d 923 (N.D. Ill. 2011)................................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................................................... 2

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
   2020 WL 564222 (N.D. Ill. Feb. 5, 2020) .......................................................................... 13

*Ulbricht v. Ternium, S.A.*,
   2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020)...................................................................... 8

*In re Van der Moolen Holding N.V. Sec. Litig.*,
   405 F. Supp. 2d 388 (S.D.N.Y. 2005).................................................................................. 11

iv

*Van Noppen v. InnerWorkings, Inc.*,
    136 F. Supp. 3d 922 (N.D. Ill. 2015)................................................................................ 2

*Waldock v. M.J. Select Glob., Ltd.*,
    2005 WL 3542527 (N.D. Ill. Dec. 27, 2005)..................................................... 15

*Washtenaw Cty. Emps.' Ret. Sys. v. Walgreen Co.*,
    2016 WL 5720375 (N.D. Ill. Sept. 30, 2016).................................................... 12

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
    2020 WL 7029134 (S.D.N.Y. Nov. 30, 2020) ................................................5, 15

## Other Authorities

17 C.F.R. § 229.303(a)(3)(ii) .........................................................................12, 13

Ms. Pramaggiore's central argument for dismissal is that Exelon's Form 10-K specifically and repeatedly states that she signed the 10-K as a director of *ComEd*, and not on behalf of *Exelon.* Remarkably, Plaintiff's Response never addresses these statements. Plaintiff instead continues to conflate allegations of *some* wrongdoing with allegations of securities fraud. Plaintiff argues that "[t]he Company admissions, DPA, emails, and other publicly-disclosed information doom [Ms. Pramaggiore's] motion to dismiss." (Dkt. 85, Response to Mot. Dismiss ("Resp.") at 2.) *None* of these "admissions, DPA, emails, and other publicly-disclosed information" is a public statement made by Ms. Pramaggiore. The securities laws do not impose liability on a defendant for alleged wrongdoing untethered to a false or misleading public statement by that defendant. The claims against Ms. Pramaggiore should be dismissed.

## ARGUMENT

## I.      Ms. Pramaggiore Did Not Have a Freestanding Duty to Disclose Alleged Bribery.

Plaintiff concedes that the securities laws do not impose an obligation to disclose alleged bribery. (Resp. at 8 ("the Complaint does not allege a freestanding duty"); *see also* Dkt. 76, Pramaggiore's Memo. in Support of Mot. Dismiss ("Memo.") at 5–6.) Accordingly, all agree that, to survive a motion to dismiss, Plaintiff must allege that Ms. Pramaggiore herself actually made a false or misleading statement.

## II.     Plaintiff Has Failed to Allege That Ms. Pramaggiore Herself Made a False Or Misleading Statement.

A Rule 10b–5 claim must be dismissed if it fails to set forth particularized facts establishing how and why *each* statement was false or misleading. *See Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019). Plaintiff argues that this Court "need not rule on all statements," (Resp. at 10), but Plaintiff cannot satisfy the heightened pleading requirements applicable to securities fraud claims so long as *someone* made *some* statement that

1

is false or misleading. [1]  The plain language of the PSLRA mandates that plaintiff "specify *each* statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (alteration in original) (emphasis added) (quoting 15 U.S.C. § 78u-4(b)(1)).  And a defendant can be held liable for a statement only if she was the maker of that statement.  See *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  Courts therefore undertake a statement-by-statement analysis to determine whether the Complaint meets the PSLRA's stringent pleading standards as to each defendant.  *See*, *e.g.*, *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 932 (N.D. Ill. 2015).  Ms. Pramaggiore is not alleged herself to have made any false or misleading statement.

### A. The Express Terms of the Relevant Public Filings Make Clear That Ms. Pramaggiore Did Not Make the Majority of the Challenged Statements.

#### 1. In the Form 10-K, Ms. Pramaggiore Only Made Statements About the Utility Registrants.

As set forth in Ms. Pramaggiore's motion to dismiss, the express language of the 2018 Form 10-K that is the source of many of Plaintiff's claims makes clear that Ms. Pramaggiore was only the maker of statements regarding ComEd and the other utility registrants, and not of every statement in the 10-K.  The 10-K states, in pertinent part, that:

---

[1] Plaintiff's cases are not to the contrary.  *Ross v. Career Education Corp.*, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012) relies on a statement from *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at *4 (N.D. Ill. Mar. 27, 2012) for the proposition that "one or more deficient allegations will not doom [a] complaint if it is otherwise sufficient." 2012 WL 5363431 at *2.  But *DeVry* only noted that "the PSLRA does not require [plaintiff] to identify a *source* for every *allegation* in the complaint, insofar as one or more deficient *allegations* will not doom the complaint if it is otherwise sufficient." 2012 WL 1030474, at *4 (emphases added) (holding that a complaint must "stand or fall based upon the allegations that comply with the PSLRA").  *City of Lakeland Employees Pension Plan v. Baxter International Inc.*, 2012 WL 607578 (N.D. Ill. Jan. 23, 2012), is equally off point.  The fact that courts sort statements into categories for purposes of evaluating motions to dismiss does not obviate the requirement to allege that each defendant made a false statement.

- The document "is being filed *separately* by Exelon Corporation, Exelon Generation Company, LLC, Commonwealth Edison Company," and other subsidiaries;

- "Information contained herein relating to any individual Registrant is filed by such Registrant on its own behalf. *No Registrant makes any representation as to information relating to any other Registrant*";

- "[N]one of the Registrants makes any representation as to information *related solely to any of the other Registrants*"; and

- "I, Anne R. Pramaggiore, do hereby appoint Joseph Dominguez … on my behalf to sign the annual Securities and Exchange Commission report on Form 10-K for 2018 of *Commonwealth Edison Company*."

(Memo. at 7–8 (emphases added) (quoting Ex. 1).) Plaintiff's Response *does not even address* any of these clear statements of what Ms. Pramaggiore said and what she did not say.[2] This is a critical omission.

Plaintiff twice cites *SEC v. e-Smart Technologies, Inc.*, 31 F. Supp. 3d 69 (D.D.C. 2014), in support of its position, and twice purports to quote the holding of that case as if it were contained in a single, complete sentence: "Courts have consistently held that the signer of a corporate filing is its maker." (Resp. at 7, 13 (internal quotation marks omitted).) But each time, Plaintiff truncates the quotation from *e-Smart*, omitting a qualification to this statement that is dispositive in the present context. The *e-Smart* case *actually holds* that "[c]ourts have consistently held that the signer of a corporate filing is its maker, *because signing a filing implies ultimate control over its contents*." 31 F. Supp. 3d at 80 (emphasis added; internal quotation marks omitted). Here, Ms. Pramaggiore's signature cannot *imply* that she is the "maker" of all statements in the entire Form 10-K, because it follows language *expressly* stating precisely the opposite—that she only signed the document with respect to ComEd and the utility registrants, which were not making any statements on behalf of Exelon. Where an attribution is

---

[2] Given that each individual's liability turns on the specifics of what he or she said or didn't say, it is puzzling that Plaintiff instead criticizes Ms. Pramaggiore for retaining her own counsel. (*See* Resp. at 2.)

unambiguous, there is no cause to consider what a signature "implies." This fair and complete reading of *e-Smart* follows the Supreme Court's clear holding in *Janus*. A maker is the person with "ultimate authority" over the statement, "including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142. It is true that a signature on a corporate filing *often* indicates that the signer is the maker of the statements contained therein. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426 (7th Cir. 2015). But the Supreme Court instructs that attribution of a statement should be determined from the statement itself and "surrounding circumstances." *Janus*, 564 U.S. at 142–43. Here, the "surrounding circumstances" are explicit, and again Plaintiff simply ignores them.[3]

Plaintiff suggests that there is "no legal authority" for the assertion that a speaker only can be held liable for the statements within a filing that are hers. (Resp. at 7.) Again, Plaintiff is wrong. Several cases hold that, where a document plainly allocates statements to different speakers, a signatory of that document is responsible only for those statements actually attributed to him. And, importantly, Plaintiff provides no cases to the contrary.

Ms. Pramaggiore provided one such case in her opening brief, holding that an accountant can only be liable for those statements set forth within the scope of its opinion. *See Overton v. Todman & Co.*, 478 F.3d 479, 487–88 (2d Cir. 2007). Plaintiff dismisses this case as "irrelevant" but never explains why. (Resp. at 7 n.4.) Nor is there any basis to distinguish between an outside accountant and an executive of a subsidiary business unit. *Glickenhaus*,

---

[3] Instead, perplexingly, Plaintiff cites *In re Grupo Televisa Securities Litigation*, 368 F. Supp. 3d 711, 721 (S.D.N.Y. 2019), for the proposition that a defendant who signed on behalf of one registrant "is accountable for the same statements made in the identical filings" of the other registrants. (Resp. at 8.) *Grupo Televisa* says nothing about combined Form 10-K filings like the one at issue here, nor does it involve distinct registrants submitting "identical filings." Indeed, the Response's specific quote from *Grupo Televisa* comes from an earnings call, not even from an SEC filing at all. 368 F. Supp. 3d at 717, 720. Similarly, the unremarkable fact that a statement can have more than one speaker has no bearing on determining who those speakers were. (Resp. at 7 (citing *Glickenhaus*, 787 F.3d at 427).)

which Plaintiff cites repeatedly, expressly held that the rule imposing liability only on the "maker" of a particular statement applies equally both to "corporate outsiders" *and* "top executives." 787 F.3d at 425. And this is not the only context in which courts have looked to attribution within a document. For example, Plaintiff repeatedly cites (for other reasons) a 2018 decision in the *Cognizant* litigation, but a later decision in that case squarely rejects Plaintiff's position here, holding that a company's Chief Legal Officer was *not* the "maker" of statements in earnings releases that were attached to a Form 8-K that he did sign because the particular portions of the filings (the attached earnings releases) were not specifically attributed to him. *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *14–15 (D.N.J. June 5, 2020). And in a case cited by *Cognizant*, a company's general counsel similarly was held not to have been the "maker" of press releases attached and filed with a Form 8-K that he signed. *Levy v. Gutierrez*, 2017 WL 2191592, at *12 (D.N.H. May 4, 2017).

A case decided after Defendants filed their motions to dismiss (but before Plaintiff filed its Response) reaches the same result. In *In re Weight Watchers International Inc. Securities Litigation*, a plaintiff sought to hold a shareholder responsible for statements made in the company's public filings. 2020 WL 7029134, at *22 (S.D.N.Y. Nov. 30, 2020). The shareholder's managing director also was the Chairman of the company's board of directors. *Id.* at *1. Plaintiff argued that his signature on the company's registration statement was sufficient to turn the shareholder into the maker of that statement. *Id.* at *23. The court rejected this argument because it "ignore[s] the fact that [the managing director] signed as a director of WW, not as the managing director of [the shareholder]." *Id.* Again, the specific role in which the managing director signed the public filing was critical for determining attribution.

5

All of this is consistent with *Janus* itself. Here, the "surrounding circumstances"—specifically, the 10-K's express disclaimer of Ms. Pramaggiore's authority over any statement not involving ComEd or the other utility subsidiaries—make clear that those statements are not "attributed" to her and she therefore is not the "maker" of such statements. This reading comports with common sense. Ms. Pramaggiore cannot have had "ultimate control," for example, of a line item in the financial statements involving Exelon Generation, even though that, too, is incorporated in the 10-K. Indeed, to hold Ms. Pramaggiore liable here on the basis of her signature also would mean that all of the independent directors of ComEd (who also signed) would be responsible for statements about Exelon, over which they had no authority and about which they had no information.

Plaintiff tries to muddy the waters by referencing Ms. Pramaggiore's position as an "Exelon executive[ ]," suggesting that her title makes her responsible for Exelon's statements. (Resp. at 7.) The law is clear that a defendant's title is not sufficient to turn her into a "maker" for purposes of Section 10(b). *See Glickenhaus*, 787 F.3d at 426–27 ("[The CEO] of course had authority over the press releases in the sense that he *could have* exercised control over their content. But if that were enough to satisfy *Janus*, then CEOs would be liable for *any* statements made by their employees acting within the scope of their employment."). More fundamentally, a general reference to Ms. Pramaggiore's title cannot overcome the plain language of the relevant public filing. Ms. Pramaggiore only signed the 10-K in her capacity as a Board member of the utility registrants, not in her capacity as an Exelon employee.[4] (*See*, *e.g.*, Ex. 1 at 544.)

---

[4] The SEC's rules for filing a Form 10-K indicate that the report must be signed by the registrant and "its principal executive officer or officers, its principal financial officer or officers, its controller or principal accounting officer, and by at least the majority of the board of directors or persons performing similar functions." *See* SEC, Form 10-K General Instructions at D(2)(a), https://www.sec.gov/files/form10-k.pdf (last visited Feb. 17, 2021). There are no allegations that Ms. Pramaggiore served in any of these roles for Exelon or Exelon Generation (nor in fact did she).

6

The statements in the 10-K regarding Exelon and Exelon Utilities are expressly attributed only to the individuals signing on behalf of those entities, and "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—*and only by*—the party to whom it is attributed." *Janus*, 564 U.S. at 142–43 (emphasis added). Ms. Pramaggiore did not "make" those statements.

### 2. Ms. Pramaggiore Did Not Make the Statements in the Code of Conduct.

Plaintiff also asserts that Ms. Pramaggiore is the maker of the statements in Exelon's Code of Conduct, but that document explicitly is attributed to Exelon and its Board of Directors.[5] Again, Plaintiff falls back on Ms. Pramaggiore's signature on the 10-K, arguing that the incorporation of the Code of Conduct as an exhibit and a statement directing investors to Exelon's website transforms the Code into a statement by Ms. Pramaggiore. (Resp. at 13.) But the signatory of one document is *not* the "maker" of the attachments to that document. *See Cognizant*, 2020 WL 3026564, at *14–15; *Levy*, 2017 WL 2191592, at *12. Indeed, the 2018 10-K incorporates dozens of documents as exhibits—including years-old credit agreements, asset purchase agreements, and registration statements. (Ex. 1 at 511–40.) No one would contend that a signatory to the 10-K is the "maker" of statements in a years-old loan agreement attached as an exhibit merely by reason of their signature. Ms. Pramaggiore's signature on the 10-K is expressly limited to statements regarding the utility subsidiaries, and, as discussed above, the

---

[5] Plaintiff asserts that Ms. Pramaggiore "waived" any challenge to the Code of Conduct statements. (Resp. at 10.) She did not. Ms. Pramaggiore both asserted that she was not the maker of these statements, (Memo. at 8–9), *and* incorporated the arguments of the actual makers of those statements regarding their alleged falsity. (*Id*. at 9 n.7.) This is entirely appropriate. *See*, *e.g.*, *Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at *5 (N.D. Ill. July 26, 2016) (considering arguments advanced by other defendants and incorporated by reference).

uniform caselaw respects those limits. [6]  As a ComEd Board member, she made no representation "as to information relating to any other Registrant," including Exelon.  (*Id*. at 6.)

### B. The Statements That Ms. Pramaggiore Did Make Were Not False and Were Not Rendered Misleading by a Failure to Disclose the Alleged Bribery.

The remaining statements that Ms. Pramaggiore made are few and far between—and not actionable. [7]  Plaintiff asserts that these statements were rendered misleading for failing also to disclose the unrelated alleged bribery.  (Resp. at 8–19.)  But again, as Plaintiff concedes, the securities laws do not impose a freestanding duty to disclose uncharged conduct, "no matter how unseemly the scandal was and no matter how significant the scandal would have been to the market." *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 752 (S.D.N.Y. 2017); *see also Ulbricht v. Ternium, S.A.*, 2020 WL 5517313, at *7 (E.D.N.Y. Sept. 14, 2020).  Rather, to allege that a statement was rendered misleading by the failure to disclose some unadjudicated alleged wrongdoing, Plaintiff must plead "a connection between the illegal conduct and the misleading statements 'beyond the simple fact that a criminal conviction would have an adverse impact upon the corporation's operations in general or the bottom line.'" *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016).  Plaintiff fails to supply this connection.

### 1. Ms. Pramaggiore's Accurate Statement Regarding the Effects of FEJA Was Not Misleading.

Lumping multiple distinct statements into a single category, Plaintiff argues that statements about the impact of FEJA on ComEd's, Exelon's, and Exelon Generation's business

---

[6] Plaintiff's argument that the Code of Conduct *applies* to Ms. Pramaggiore is beside the point.  (Resp. at 13.)  Imposing liability on all to whom a code applied would mean no limit to the securities laws' reach.

[7] As Appendix A to the other Defendants' Reply makes clear, ComEd itself was not even the maker of many statements alleged to be false or misleading.  And the majority of the statements made by ComEd were made in filings that Ms. Pramaggiore did not sign (*e.g.*, 10-Qs and 8-Ks).  Accordingly, of the 43 statements alleged to be false or misleading, Ms. Pramaggiore is at most the maker of only three of them: two statements in the 10-K, identified as numbers 3 and 18 in Appendix A, and an oral statement on an earnings call, identified as number 12 in Appendix A.  None of those three statements was false.

8

are misleading because they attribute "revenues and legislative benefits" to "legitimate lobbying and legislative victories" rather than to the alleged bribery. (Resp. at 18.) But Plaintiff does not engage with the substance of the particular statement Ms. Pramaggiore actually made in its Response. And the statement Ms. Pramaggiore made does no such thing. To be clear, the statement at issue for Ms. Pramaggiore, made more than two years after FEJA's passage, simply provides that "FEJA allows ComEd to defer energy efficiency costs … as a separate regulatory asset that is recovered through the energy efficiency formula rate over the weighted average useful life." (Dkt. 65, Lead Plaintiff's Complaint ("Compl.") ¶ 104(d) (alteration in original).) That is an accurate description, and it says nothing about the manner in which FEJA was passed two years earlier. It does not attribute FEJA's passage to any cause, let alone mention "legitimate lobbying" efforts or other methods of securing a "legislative victor[y]." A statement may be misleading if it falsely attributes success to a particular cause, *see Menaldi*, 164 F. Supp. 3d at 581, but this statement does not do so. Plaintiff's Response says nothing to the contrary.

The allegations here are similar to those recently dismissed in *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153 (S.D.N.Y. 2018). In *Diehl*, a company's public filing described, in factual terms, the provisions of a plea agreement. The plaintiff argued that those disclosures were rendered misleading for failing to disclose that the Company was not complying with the terms of the plea agreement. *Id.* at 163. As Plaintiff argues here, the plaintiff in *Diehl* claimed that such disclosures were required to make the statement "complete and accurate." *Id*. The court rejected this argument because "Defendants stated exactly what the [ ] Plea Agreement required." *Id.* at 164. The plaintiff's "attempt to pull a duty to disclose information concerning a different topic ... from the principle that a disclosure must be complete and accurate stretches this principle past its logical breaking point." *Id*. (internal quotation marks and alterations omitted).

9

Here, as in *Diehl*, the 10-K accurately described the effects of FEJA on ComEd.  That factual statement did not generate a duty to disclose information about an entirely separate topic.

### 2. The Statements About ComEd's Risk Were Not Rendered Misleading for Failure to Disclose the Alleged Bribery.

Similarly, Plaintiff alleges that the risk statement in the 2018 10-K about ComEd's operations is rendered misleading because ComEd "purported to identify the specific risks to … legislative outcomes" but "concealed the most significant risk," which was the undisclosed alleged bribery.[8]  (Resp. at 17.)  But again, as Plaintiff concedes, the securities laws do not impose a duty to disclose unadjudicated misconduct.  This principle applies in equal force to the risk factors disclosed in public filings.  The well-established principle that a corporation has "no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoing" would be "entirely meaningless if every reporting company were required to disclose [such] conduct in the risk-factors sections of its filings." *In re Banco Bradesco Sec. Litig.*, 277 F. Supp. 3d 600, 650– 51, 656 (S.D.N.Y. 2017).  Instead, to support liability for the failure to disclose the alleged (and then uncharged) bribery, Plaintiff must allege with particularity a connection between the statement about ComEd's risks and the alleged wrongdoing.  *Menaldi*, 164 F. Supp. 3d at 581. Plaintiff again has failed to make the necessary connection.

The relevant statement in the 10-K explains that Exelon and ComEd "have large consumer customer bases and as a result could be the subject of public criticism focused on the operability of their assets and infrastructure and quality of their service."  (Compl. ¶ 104(e).) The statement discloses that such "[a]dverse publicity" could render legislatures and other

---

[8] Plaintiff's Response states that Ms. Pramaggiore attempts to "disavow[ ]" the risk statements in the 10-K related to ComEd.  (Resp. at 17.)  To the contrary, Ms. Pramaggiore's motion to dismiss squarely addresses the risk statement applicable to ComEd.  (Memo. at 10–11.)

government officials "less likely to view … Exelon and its subsidiaries in a favorable light," resulting in negative outcomes. (*Id*.) Plaintiff claims that this accurate statement was rendered misleading because it disclosed one potential risk, but not a different risk that Plaintiff believes to be more significant—the risk of negative outcomes from the eventual disclosure of the alleged bribery. (Resp. at 17.) In an attempt to link these unrelated subjects, Plaintiff points to statements ComEd or Exelon made elsewhere about the importance of legislation to their operations. (*Id*. (citing Compl. ¶¶ 36–41).) But the fact that ComEd or Exelon elsewhere stated that favorable legislation was important to their business does not render the otherwise accurate disclosure attributed to Ms. Pramaggiore about a separate set of risks misleading. Plaintiff fails to allege how a disclosure about the risks of adverse public criticism based on the quality of ComEd's service put alleged bribery at issue. *See Banco Bradesco*, 277 F. Supp. 3d at 656. The authority cited by Plaintiff highlights the absence of this connection: the risks disclosed in *In re Van der Moolen Holding N.V. Securities Litigation*, were directly related to the conduct that the plaintiff alleges the company failed to disclose.[9] 405 F. Supp. 2d 388, 400, 415–16 (S.D.N.Y. 2005) (describing detailed risks of failure to comply with NYSE rules while not disclosing violations of those same laws). By contrast, the risk of public criticism described in the 2018 10-K was not directly related to the risks of uncharged, unadjudicated wrongdoing.

Perhaps recognizing that the actual risk disclosures are not misleading, Plaintiff alleges that Item 303 of Regulation S-K separately imposes liability for failure to disclose the risk of the alleged bribery. Item 303 requires issuers to "[d]escribe any known trends or uncertainties that

---

[9] In *In re Akorn, Inc. Securities Litigation*, the court evaluated whether risk disclosures concerning a company's inadequate internal controls over financial reporting "provided warnings sufficient to lead reasonable investors to disbelieve Defendants' inaccurate financial reporting." 240 F. Supp. 3d 802, 815 (N.D. Ill. 2017). It did not evaluate whether those risk disclosures themselves were materially misleading.

11

have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). Plaintiff's cursory treatment of this issue in its Response fails to address Ms. Pramaggiore's arguments, instead relying on a string of distinguishable cases and conclusory assertions. Item 303 does not support Plaintiff's claims. [10]

Plaintiff has failed to allege that the potential disclosure of the alleged bribery was a "known trend[ ] or uncertaint[y]" that required disclosure under Item 303. As described in Ms. Pramaggiore's motion to dismiss, the Complaint includes no particularized facts to suggest that government action following potential discovery of the alleged bribery was a "known trend" that would impact sales, revenues, or income. (Memo. at 12–13.) Courts have rejected similar attempts to manufacture a freestanding duty to disclose uncharged conduct—which Plaintiff concedes does not exist—from the requirements of Item 303. For example, in *Lopez v. CTPartners Executive Search, Inc.*, the plaintiff sought to impose liability based on Item 303 for an issuer's failure to disclose pervasive sexual harassment at the company. 173 F. Supp. 3d 12, 33 (S.D.N.Y. 2016). The court rejected the plaintiff's "speculative" argument because the contention that the company's hostile work environment "would ultimately impact the bottom line" required "one to have foreseen, essentially, that this behavior would be scandalously revealed ... and provoke such executive suite turbulence so as to impair the Company's financial condition or operational results." *Id.* at 33–34; *see also Diehl*, 339 F. Supp. 3d at 167 ("[F]or the

---

[10] As a preliminary matter, there is ample authority in this district that Item 303 of Regulation S-K generally "does not give rise to [a] private action under Rule 10b." *See Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 909 (N.D. Ill. 2001); *Washtenaw Cty. Emps.' Ret. Sys. v. Walgreen Co.*, 2016 WL 5720375, at *14 (N.D. Ill. Sept. 30, 2016); *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *13 (N.D. Ill. Apr. 19, 2012). Thus, "[a]bsent some other basis for the duty [to disclose], plaintiffs cannot rely solely on Item 303(a)" to state a claim. *Anderson*, 140 F. Supp. 2d at 909.

[illegal] conduct to impact [the company's] operating results or financial condition materially, an attenuated chain of contingencies would have to occur.").

So too here. Plaintiff's core argument relies on an "attenuated chain of contingencies"— that the alleged bribery ultimately would be uncovered and result in regulatory or other action that then might have a material impact on Exelon's sales, revenue, or income. But Item 303 "is not so broad as to require defendants to disclose uncertainties as speculative as whether [a subsidiary's] conduct was reasonably likely to have material effects on [the company's] financial condition or on the results of [the company's] operations." *Diehl*, 339 F. Supp. 3d at 167. There are no allegations that authorities or regulators had already taken action that could be reasonably expected to materially impact revenues. *Cf. Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222, at *7 (N.D. Ill. Feb. 5, 2020). Nor is the alleged misconduct of the type that would impact "*net sales or revenues or income from continuing operations*." [11] 17 C.F.R. § 229.303(a)(3)(ii) (emphasis added); *cf. In re CenturyLink Sales Pracs. and Sec. Litig.*, 403 F. Supp. 3d 712, 726 (D. Minn. 2019) (imposing liability based on a failure to disclose "illegal sales practices" that were "a material driver of its reported revenue"). Plaintiff contends that the impact of the potential discovery of the alleged bribery was not speculative because it eventually led to a fine. (Resp. at 9–10 n.7.) But Plaintiff's argument is three times wrong: a fine is not a "trend"; a fine is not sales, revenue, or income; and hindsight is not a sufficient basis for securities fraud. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759–60 (7th Cir. 2007). [12]

---

[11] Item 303 is intended to compel disclosure of events with more predictable impacts on operating results, such as "[a] reduction in the registrant's product prices; erosion in the registrant's market share; changes in insurance coverage; or the likely non-renewal of a material contract." *Diehl*, 339 F. Supp. 3d at 167 (quoting SEC Interpretive Release, 1989 WL 1092885, at *4 (May 18, 1989)).

[12] Plaintiff's allegations that Defendants violated Item 105 of Regulation S-K based on risk disclosures fail on the same basis.

### 3. Plaintiff Abandons Its Claim Regarding Ms. Pramaggiore's August 2019 Earnings Call Statement.

As described in Ms. Pramaggiore's motion to dismiss, the Complaint says nothing about why Ms. Pramaggiore's statement in the August 2019 earnings call about a franchise agreement with the City of Chicago was rendered false or misleading for failing to disclose the alleged bribery. (Memo. at 11–12.) Plaintiff makes no attempt to respond to this argument, and it is thus conceded.[13] *See Calderon v. Vill. of Bridgeview, Illinois*, 2020 WL 1139252, at \*3 (N.D. Ill. Mar. 9, 2020). This leaves no explanation as to how Ms. Pramaggiore's statement about a franchise agreement with the City could be rendered misleading for failing to disclose the alleged bribery of a state-level official. This does not meet the heightened standards of the PSLRA.

### III. Plaintiff Fails to Adequately Allege Scienter.

Plaintiff's Response misunderstands and fails to address Ms. Pramaggiore's argument on scienter. As described in Ms. Pramaggiore's motion to dismiss, the Complaint fails to adequately allege that the few statements that Ms. Pramaggiore made—which were accurate factual descriptions of legislation, risks to ComEd, and negotiations with the City of Chicago all unrelated to the alleged bribery—were false or misleading. (Memo. at 9–12.) Consequently, there is no allegation that Ms. Pramaggiore knew (or was reckless in not knowing) that her *statements* were false at the time she made them.

### IV. The Complaint Does Not Adequately Allege That Ms. Pramaggiore Was a Control Person of Exelon.

Plaintiff makes a perfunctory argument that Ms. Pramaggiore was a control person over Exelon based on "her senior position." (Resp. at 30 (citing Compl. ¶¶ 25, 218, 251.) But bare

---

[13] Plaintiff includes this statement in its table of false or misleading statements attached to its brief as Exhibit A, but it makes no attempt to explain how this statement was false or misleading. And the Complaint includes no allegations explaining how the statement was false or misleading, let alone the particularized factual allegations required by the PSLRA. *See Cornielsen*, 916 F.3d at 599.

14

allegations of a senior position, particularly one confined to a subordinate business unit, are insufficient to allege that Ms. Pramaggiore could exercise control over the parent company's public statements. *See*, *e.g.*, *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 863 (N.D. Ill. 2009); *Donovan v. ABC-NACO Inc.*, 2002 WL 1553259, at \*6 (N.D. Ill. July 15, 2002). Nothing about Ms. Pramaggiore's "senior position" would suggest that she controlled Exelon's public statements. There are no factual allegations that, in her position as CEO of Exelon Utilities, she was in a position to influence Exelon's public statements at all. The very paragraph of the Complaint that Plaintiff cites acknowledges that Ms. Pramaggiore's responsibilities were limited to Exelon Utilities and alleges only that she had "oversight authority over *ComEd's* operations." (Compl. ¶ 218 (emphasis added).) There are no factual allegations whatsoever that she could or did exercise control over *Exelon. See Silverman v. Motorola, Inc.*, 772 F. Supp. 2d 923, 927–34 (N.D. Ill. 2011). The Section 20(a) claim must be dismissed to the extent it seeks to hold Ms. Pramaggiore liable for Exelon's statements.

In a parenthetical, Plaintiff also argues that control is a question of fact that cannot be decided on a motion to dismiss. (Resp. at 30 (citing *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1029 (N.D. Ill. 2004)).) But courts often dismiss control person claims based on conclusory allegations like those alleged here. *See*, *e.g.*, *Weight Watchers*, 2020 WL 7029134, at \*24; *Desai*, 654 F. Supp. 2d at 863; *Waldock v. M.J. Select Glob., Ltd.*, 2005 WL 3542527, at \*7 (N.D. Ill. Dec. 27, 2005). And, as explained in Ms. Pramaggiore's motion to dismiss, the control person claims also fail because Plaintiff has failed to allege an underlying securities violation. *See Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

## CONCLUSION

For the foregoing reasons, Defendant Anne Pramaggiore respectfully requests that this Court enter an order dismissing Lead Plaintiff's Complaint against her with prejudice.

15

Dated:  February 17, 2021

Respectfully submitted,

SIDLEY AUSTIN LLP

*/s/ David A. Gordon*

Scott R. Lassar
David A. Gordon
Jennifer M. Wheeler
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
dgordon@sidley.com
jwheeler@sidley.com

*Attorneys for Defendant Anne Pramaggiore*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 17, 2021, a true and accurate copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which sends notice to counsel of record via e-mail.

*/s/ David A. Gordon*
David A. Gordon