**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>EXELON CORPORATION, et al.,<br><br>    Defendants. | Case No. 1:19-cv-08209<br><br><br>Hon. Virginia M. Kendall |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**</u>
<u>**THE EXELON AND COMED DEFENDANTS'**</u>
<u>**MOTION TO DISMISS THE COMPLAINT**</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      PLAINTIFF'S FAILURE TO CREATE A STRONG INFERENCE OF
SCIENTER REQUIRES DISMISSAL. ........................................................................ 2

II.     PLAINTIFF'S COMPLAINT FAILS BECAUSE DEFENDANTS WERE
UNDER NO DUTY TO DISCLOSE UNCHARGED, UNADJUDICATED
CONDUCT. .................................................................................................................. 8

III.    THE COMPLAINT MUST BE DISMISSED BECAUSE IT CONFLATES
DEFENDANTS AND FAILS TO CORRECTLY LINK SPECIFIC ALLEGED
FALSE OR MISLEADING STATEMENTS TO SPECIFIC DEFENDANTS. ............. 13

CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Kinder-Morgan, Inc.*,
 340 F.3d 1083 (10th Cir. 2003) ................................................................................................2

*Albert Fadem Tr. v. Am. Elec. Power Co.*,
 334 F. Supp. 2d 985 (S.D. Ohio 2004) .....................................................................................8

*Anderson v. Abbott Labs.*,
 140 F. Supp. 2d 894 (N.D. Ill. 2001), *aff'd sub nom.*
 *Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001) ...................................................9, 11

*In re Bally Total Fitness Sec. Litig.*,
 2006 WL 3714708 (N.D. Ill. July 12, 2006) .............................................................................4

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988).....................................................................................................................8

*In re Baxter Int'l Inc. Sec. Litig.*,
 2021 WL 100457 (N.D. Ill. Jan. 12, 2021) ...............................................................................4

*Brasher v. Broadwind Energy, Inc.*,
 2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) .............................................................................9

*In re Braskem S.A. Sec. Litig.*,
 246 F. Supp. 3d 731 (S.D.N.Y. 2017)..............................................................................7, 9, 11

*Cambridge Ret. Sys. v. JELD-WEN Holding, Inc.*,
 2020 WL 6270482 (E.D. Va. Oct. 26, 2020)...........................................................................11

*Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*,
 2018 WL 1071442 (N.D. Ill. Feb. 27, 2018) ...........................................................................11

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
 403 F. Supp. 3d 712 (D. Minn. 2019).....................................................................................4, 9

*Chill v. Gen. Elec. Co.*,
 101 F. 3d 263 (2d. Cir. 1996)......................................................................................................8

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
 752 F.3d 173 (2d Cir. 2014).....................................................................................................8, 9

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
   2013 WL 566805 (N.D. Ill. Feb. 13, 2013) .....................................................................5, 6

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2018 WL 3772675 (D.N.J. Aug. 8, 2018) ...............................................................................9

*Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*,
   114 F. Supp. 3d 633 (N.D. Ill. 2015) .........................................................................8, 11, 12

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
   916 F.3d 589 (7th Cir. 2019) ....................................................................................1, 6, 13

*Davis v. SPSS, Inc.*,
   385 F. Supp. 2d 697 (N.D. Ill. 2005) .....................................................................................5

*Desai v. Gen. Growth Props., Inc.*,
   654 F. Supp. 2d 836 (N.D. Ill. 2009) ..................................................................................4, 9

*Dow Corning Corp. v. BB & T Corp.*,
   2010 WL 4860354 (D.N.J. Nov. 23, 2010) ......................................................................13, 14

*Eli Lilly & Co. v. Roussel Corp.*,
   23 F. Supp. 2d 460 (D.N.J. 1998) .........................................................................................14

*Gallagher v. Abbott Labs.*,
   269 F.3d 806 (7th Cir. 2001) ..................................................................................................8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ................................................................................................15

*In re Grupo Televisa Sec. Litig.*,
   368 F. Supp. 3d 711 (S.D.N.Y. 2019)............................................................................. *passim*

*Holwill v. AbbVie Inc.*,
   2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) ...........................................................5, 9, 10, 11

*Jackson Nat'l Life Ins. Co. v. Ligator*,
   949 F. Supp. 200 (S.D.N.Y. 1996)........................................................................................14

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)........................................................................................................13, 15

*Kriendler v. Chem. Waste Mgmt., Inc.*,
   877 F. Supp. 1140 (N.D. Ill. 1995) .........................................................................................9

*Lindblom v. Mobile Telecomms. Techs. Corp.*,
   985 F. Supp. 161 (D.D.C. 1997)............................................................................................14

iii

*Lindelow v. Hill*,
   2001 WL 830956 (N.D. Ill. July 20, 2001)................................................................4, 11

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) ...........................................................................................4

*In re Moody's Corp. Sec. Litig.*,
   599 F. Supp. 2d 493 (S.D.N.Y. 2009)..............................................................................10

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..............................................................................................5

*In re Par Pharm., Inc. Sec. Litig.*,
   733 F. Supp. 668 (S.D.N.Y. 1990)...................................................................................12

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
   895 F.3d 933 (7th Cir. 2018) ...........................................................................................4

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
   679 F.3d 952 (7th Cir. 2012) ...........................................................................................4

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v.
   Allscripts-Misys Healthcare Sols., Inc.*,
   778 F. Supp. 2d 858 (N.D. Ill. 2011) ...............................................................................2

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) .......................................................................................1, 2

*Ross v. Career Educ. Corp.*,
   2012 WL 5363431 (N.D. Ill. Oct. 30, 2012)..................................................................5, 6

*Schleicher v. Wendt*,
   529 F. Supp. 2d 959 (S.D. Ind. 2007)...............................................................................6

*Schlifke v. Seafirst Corp.*,
   866 F.2d 935 (7th Cir. 1989) ...........................................................................................11

*In re Sears, Roebuck & Co. Sec. Litig.*,
   291 F. Supp. 2d 722 (N.D. Ill. 2003) ...............................................................................4

*SEC v. e-Smart Techs., Inc.*,
   31 F. Supp. 3d 69 (D.D.C. 2014) .....................................................................................15

*Selbst v. McDonald's Corp.*,
   432 F. Supp. 2d 777 (N.D. Ill. 2006) ...............................................................................3

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)..................................................................10

iv

*Silverman v. Motorola, Inc.*,
  2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) ............................................................................4

*Singer v. Reali*,
  883 F.3d 425 (4th Cir. 2018) ................................................................................................11

*Singh v. Cigna Corp.*,
  277 F. Supp. 3d 291 (D. Conn. 2017)......................................................................................9

*Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*,
  2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ....................................................................2, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................................1, 2

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
  2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ...............................................................................9

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)..........................................................................9

*Washtenaw Cty. Emps.' Ret. Sys. v. Walgreen Co.*,
  2016 WL 5720375 (N.D. Ill. Sept. 30, 2016) ..........................................................................9

## INTRODUCTION

Under the PSLRA—which Congress enacted as "a check against abusive litigation by private parties," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)— Plaintiff must state "with particularity both the facts constituting the alleged violation, and the facts evidencing scienter." *Id.* To survive the Exelon and ComEd Defendants' motion to dismiss, Plaintiff must marshal more than generalized allegations that Defendants' collective statements were false or misleading because they are supposedly inconsistent with statements in the DPA to which only ComEd is a party.[1]

Rather, Plaintiff must allege, *inter alia*, that each Defendant, with the required scienter, made specific false or misleading statements. But Plaintiff's response brief, like the Complaint before it, fails to identify a single fact that would create a "strong inference" that any Defendant was aware of information that contradicted that Defendant's own, specific statements; ignores the settled rule that the securities laws do not impose a duty to disclose uncharged, unadjudicated conduct; and impermissibly treats Exelon, ComEd, and the Individual Defendants interchangeably under the securities laws. Because the Complaint fails to plead with the requisite specificity the "who, what, when, where, and how" of any violation of the securities laws, Plaintiff's claims must be dismissed. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). Because Plaintiff has not adequately pled a primary violation of § 10(b), Plaintiff's § 20(a) claim must also be dismissed. *See Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

---

[1] This reply brief uses the same abbreviations and exhibit numbers set forth in the Table of Abbreviations in the Exelon and ComEd Defendants' opening brief. (*See* Def. Br. [Dkt. #77] at v-vi.) As in the opening brief, "Individual Defendants" refers to Christopher Crane, Joseph Dominguez, and William Von Hoene.

Defendants enclose with this brief an appendix summarizing Defendants' arguments with respect to each of the challenged statements.

## ARGUMENT

### I. PLAINTIFF'S FAILURE TO CREATE A STRONG INFERENCE OF SCIENTER REQUIRES DISMISSAL.

To survive a motion to dismiss, Plaintiff's Complaint must allege, with respect to "*each individual defendant*," *Pugh*, 521 F.3d at 693 (emphasis added), facts giving rise to an inference of scienter that is "at least as compelling as any opposing inference one could draw," *Tellabs*, 551 U.S. at 324. As shown in Defendants' opening brief, Plaintiff fails to meet this threshold requirement. While circumstantial allegations of scienter may be permissible, and the Court must consider Plaintiff's allegations together, Plaintiff's hodgepodge of generic allegations could apply to any corporation or its executives and does not create an inference of scienter that is "strong in light of other explanations." *Id.*; (*see* Def. Br. at 12-15).

Plaintiff does not allege the existence of any reports, correspondence, or witness statements that would indicate that any of the Individual Defendants knew or recklessly disregarded the likelihood that their own class-period statements were false when they were made. *See Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356, at *7-8 (N.D. Ill. Sept. 26, 2018).[2] Nor has Plaintiff identified any other "classic evidence of scienter."

---

[2] The cases Plaintiff cites in ostensible support of its claim that Defendants "ignor[e]" decisions involving "circumstantial allegations" of reckless disregard do not help its argument. (Opp'n at 21.) In *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F. Supp. 2d 858 (N.D. Ill. 2011), the court simply noted that scienter constitutes knowledge or reckless disregard of a statement's falsity, before considering concrete allegations of recklessness based on a confidential witness's reports of a defendant's attendance at monthly conference calls about "implementation difficulties" that contradicted his later positive statements to investors. *See id.* at 883-84. In *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003), the court held only that the PSLRA does not always necessarily require a plaintiff to identify the name of a confidential witness or the title of an internal report relied upon. *Id.* at 1102. It did not address a situation like this one, where the Complaint does not even allege confidential witness knowledge or contradictory information in any internal report.

*Selbst v. McDonald's Corp.*, 432 F. Supp. 2d 777, 787 (N.D. Ill. 2006). Individually and collectively, Plaintiff's nonspecific and counterfactual scienter allegations fail.

***Core operations and scope and length of activity.*** Plaintiff alleges that the Individual Defendants must have been aware of information that contradicted their class-period statements because it claims ComEd's lobbying was central to Exelon's business, and corporate officers can be assumed to know facts critical to a business's core operations. (Opp'n at 24.) In support, Plaintiff baldly asserts that the activity admitted by ComEd in the DPA was not "too minor to warrant Defendants' close attention and monitoring." (*Id.* at 25.) But that argument incorrectly assumes, without supporting allegations, (1) that lobbying is one of Exelon's core business operations; and (2) that the specific activity admitted by *ComEd* in the DPA was central to *Exelon's* lobbying efforts. In fact, as the Complaint itself recognizes, "Exelon is one of the largest electric companies in the United States. It is a holding company that operates through two groups of subsidiaries: (i) 'Exelon Generation' operates electric power plants around the country, and (ii) 'Exelon Utilities' is a collection of six regulated utility companies that deliver electricity to homes and businesses in particular regions." (Compl. ¶ 3.) ComEd, accordingly, is just one of numerous Exelon subsidiaries, and the Complaint alleges no relevant, specific facts about the scale or importance of ComEd's lobbying activities relative to Exelon's nationwide operations. (*See id.*)

As the Complaint states, Exelon determined through its own internal investigation that the activity admitted in the DPA was orchestrated by "a small number of senior ComEd employees and outside contractors." (*Id.* ¶ 167.) Plaintiff alleges no facts to contradict that, nor to suggest that this "small number" of ComEd employees included any of the Individual Defendants. (*Id.*) Moreover, the Complaint contains no allegations that would suggest that

3

ComEd's conduct in the DPA was central to Exelon's business.  On the contrary, given Exelon's size, the extent of its and its many subsidiaries' legitimate lobbying activities, and the lack of any allegations demonstrating the Individuals Defendants' knowledge of any of the conduct contained in the DPA, any such allegation would fail.[3]

   ***Motive.***  Plaintiff claims that the Individual Defendants had reason to "conceal" the "bribery scheme" because otherwise they would have failed to "secure" favorable legislation that would have led to additional revenue and greater compensation.  (Compl. ¶¶ 193-94, 197-99.) But it is well established that "a generalized motive common to all corporate executives"—such as a desire to keep executive compensation high or for a corporation to be profitable—"is not enough to establish scienter." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 939-40 (7th Cir. 2018).  Thus, courts have held that allegations about programs tying executive compensation to corporate performance are "'typical of nearly every corporation'" and "do not contribute to a strong inference of scienter." *In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *16 (N.D. Ill. Jan. 12, 2021).[4]

---

[3]    In none of the cases Plaintiff cites did the plaintiffs allege that a scheme carried out by a small number of employees of one subsidiary was central to the business's core operations.  *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. 2008) (statements about company's "most important products" that "were . . . as Windows XP and Vista are to Microsoft"); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 731 (D. Minn. 2019) (statements concerned practice that "accounted for more than one-third of [the company's] revenue"); *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 860 (N.D. Ill. 2009) (defendants' "lack of knowledge" regarding looming debt "would amount to reckless disregard" only because "the company's very survival was at stake"); *Silverman v. Motorola, Inc.*, 2008 WL 4360648, at *14 (N.D. Ill. Sept. 23, 2008) (relevant conduct occurred in "division that accounted for the largest share of sales in the company"); *In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003) (challenged statements concerned Sears's credit division, which "accounted for 58 percent of Sears' operating income"); *Lindelow v. Hill*, 2001 WL 830956, at *8 (N.D. Ill. July 20, 2001) (statements concerned "virtually the only business" of the company).

[4]    *See also, e.g.*, *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 955-56 (7th Cir. 2012) (refusing to infer scienter from allegations that executives had "incentive" to make defendant corporation "look good in order to keep their jobs, improve their bonuses, and increase the value of their stock options" because "the fact that managers benefit from higher stock prices does not imply that any particular manager committed fraud"); *In re Bally Total*

4

Plaintiff cites *Ross v. Career Educ. Corp.*, 2012 WL 5363431, at *11 (N.D. Ill. Oct. 30, 2012) for the undisputed proposition that allegations of motive are not required to establish scienter. But unlike in *Ross*, where the court found that "the complaint's other allegations provide a strong basis to infer intent," *id.*, Plaintiff here relies only on generalized allegations that support no such inference. And while specific allegations of "personal financial gain" may support an inference of motive (Opp'n at 22 (quoting *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *16 (N.D. Ill. Feb. 13, 2013))), Plaintiff has not alleged that Defendants stood to gain in any way not common to all executives.[5]

***Individual Defendants' statements and positions.*** Plaintiff makes vague and conclusory allegations that the Individual Defendants must have acted with scienter because they "participated in fundraisers"; oversaw Exelon's and ComEd's lobbying activities; and (Plaintiff presumes) had access to unspecified "internal corporate documents," had "conversations" with employees, and reviewed unspecified "reports" that would have revealed the conduct of a "small number of senior ComEd employees and outside contractors" described in the DPA. (Opp'n at 23; Compl. ¶ 167.) But "[w]here plaintiffs contend defendants had access to contrary facts" that render defendants' statements false or misleading, "they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

---

*Fitness Sec. Litig.*, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) (allegations about an executive's motivation to qualify for bonuses or other compensation "are too common among corporations and their officers to be considered evidence of scienter"); *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005) ("The desire to increase the value of a company and attain the benefits that result, such as meeting analyst expectations and reaping higher compensation, are basic motivations not only of fraud, but of running a successful corporation.").

5  Plaintiff also cites a lone case that found support for an inference of scienter in allegations that defendants had a motive to maximize sales and increase compensation. (Opp'n at 22 (citing *Holwill v. AbbVie Inc.*, 2020 WL 5235005, at *5 (N.D. Ill. Sept. 1, 2020)).) But that case focused on allegations regarding a company's "flagship drug," that "ha[d] accounted for more than half and as much as two-thirds of [the company's] yearly net revenues," and was soon to face competition from products entering the market. *Id.* at *1, *4-5. It is thus inapposite.

5

"[C]onclusory allegations of scienter derived from a defendant's mere access to information" are insufficient to establish a strong inference. *Cornielsen*, 916 F.3d at 602.[6] Critically, Plaintiff has not alleged any *actual contemporaneous information* showing that any of the Individual Defendants were aware of any information contrary to their class-period statements at the time those statements were made. Plaintiff's mere assertion that Defendants must have known does not meet the PSLRA's pleading requirements.

*Individual Defendants.* Plaintiff's separate allegations about Crane, Dominguez, and Von Hoene consist largely of conclusory assumptions that also fail to contribute to a strong inference of scienter for any of the three. For example, Plaintiff deems the appointment of Ochoa to the ComEd Board "suspicious" (Opp'n at 27), but ignores that corporate boards are routinely expanded for all sorts of reasons, and that the DPA states that ComEd "conducted due diligence" on Ochoa and "determined he was qualified for a Board position." (Ex. 10 at A-10.) Plaintiff also speculates that Crane must have "approv[ed]" Pramaggiore's actions because Exelon has not publicly disclosed an attempt to claw back her compensation (Opp'n at 27), but the recoupment policy does not support that inference. (*See* Def. Br. at 15; Ex. 12 at 43.)

Similarly, Plaintiff alleges nothing to suggest that Crane's or Dominguez's alleged involvement in or donations to fundraisers, direction of political contributions, or oversight of ordinary lobbying activity had any connection to any of the activities referenced in the DPA or

---

6   The cases Plaintiff cites do not hold otherwise. In *Schleicher v. Wendt*, 529 F. Supp. 2d 959, 972 (S.D. Ind. 2007), the court simply affirmed that scienter may exist where defendants "knew or had access to information" contradicting their public "[a]ffirmative misrepresentations." Plaintiff has not identified any such information. In *Hospira*, 2013 WL 566805, at *25-26, plaintiffs identified particular contradictory information that defendants were aware of because they attended meetings that discussed such information. In *Ross*, 2012 WL 5363431, at *9-10, plaintiffs alleged facts showing that the CEO was hired specifically to address the issue that his challenged statements concerned, and that he was aware of contradictory information, such as his attendance and remarks at a conference.

6

were in any way improper.  (*See* Opp'n at 26, 28.)  From Pramaggiore's vague statement that she and other current and former ComEd and Exelon executives "received, evaluated and granted many requests to provide appropriate and valuable services to the companies" (Opp'n at 28), Plaintiff leaps to the conclusion that she must have been referring to Crane and Dominguez rather than any number of other current or former executives.  More important, her statement made no reference to any conduct admitted in the DPA.  (*Id.*)

Finally, Plaintiff relies on sensationalized media statements, and statements by Crane and Dominguez expressing disappointment regarding the conduct described in the DPA, as a basis to allege Crane and Dominguez recklessly disregarded that conduct.  (*Id.* at 27-28.)  But those statements do not demonstrate, and Plaintiff does not allege, that Crane or Dominguez "failed to check information they had a duty to monitor" or "knew facts" suggesting their challenged statements were not accurate.  *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 764 (S.D.N.Y. 2017).  As for Von Hoene, Plaintiff describes only routine, legitimate activity that does not support Plaintiff's conclusion that Von Hoene must have known about the activity admitted in the DPA.  (Opp'n at 28-29.)  Because the Complaint lacks any specific factual allegations that the Individual Defendants possessed information that contradicted their statements, it does not create a strong inference of their scienter.

*Corporate scienter.*  Plaintiff falsely claims that Defendants "do not dispute ComEd's scienter."  (Opp'n at 29.)  Yet to the extent Plaintiff made distinct allegations of ComEd's (or Dominguez's) scienter, Defendants have already explained why they are deficient.  (*See* Def. Br. at 13, 14.)[7]  Furthermore, because Plaintiff has not alleged scienter with respect to Crane or Von

---

[7]    Plaintiff argues that ComEd's scienter (assuming it is adequately alleged) "can be attributed to Exelon" (Opp'n at 30), and cites *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711 (S.D.N.Y. 2019), in support.  That case, however, recognized that a subsidiary's scienter may be imputed to the parent where plaintiffs adequately allege the parent company's "awareness, reckless disregard, and

7

Hoene, it has also not alleged scienter with respect to Exelon.[8]

Plaintiff's failure to allege scienter warrants dismissal of the Complaint in full.

**II.     PLAINTIFF'S COMPLAINT FAILS BECAUSE DEFENDANTS WERE UNDER NO DUTY TO DISCLOSE UNCHARGED, UNADJUDICATED CONDUCT.**

Despite Plaintiff's assertion that the securities laws require "full disclosure" (Opp'n at 5), there is no freestanding duty to disclose uncharged, unadjudicated conduct. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (disclosure is "not a rite of confession"). Defendants do *not* have a legal "duty to disclose all information material to stock prices" and are "entitled to keep silent (about good news as well as bad news) unless positive law creates a duty to disclose." *Gallagher v. Abbott Labs.*, 269 F.3d 806, 808 (7th Cir. 2001). An omission is actionable only if there is a duty to disclose the omitted information, and such a duty arises only if failure to disclose would render other statements misleading. *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).

To allege an actionable omission, Plaintiff must "offer specific, contradictory information" that is "sufficient to establish" that the omission rendered a statement misleading. *Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 651-52 (N.D. Ill. 2015).[9] Plaintiff has not done so, and this failure requires dismissal.

---

complicity in" the subsidiary's misbehavior based on documents and trial testimony that specifically demonstrated the parent "knew about the bribes." *Id.* at 722. But here, Plaintiff has not adequately alleged any such awareness on the part of Exelon. Instead, Plaintiff impermissibly attempts to use the activity of a subsidiary to establish the parent company's scienter. (*See* Opp'n at 30 n.18.) *But see Chill v. Gen. Elec. Co.*, 101 F.3d 263, 265, 268 (2d. Cir. 1996); *Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1012 (S.D. Ohio 2004).

[8]  For corporate scienter, Plaintiff also relies on allegations of Pramaggiore's scienter, imputing it to both companies. (Opp'n at 29-30.) For the reasons explained in Pramaggiore's opening and reply briefs (*see* Pramaggiore Br. at 14; Pramaggiore Reply Br. at 14), however, Plaintiff has not alleged scienter with respect to Pramaggiore (who in any event did not sign any of the challenged disclosures on behalf of Exelon), so Plaintiff cannot rely on those allegations to support corporate scienter.

[9]  Plaintiff contends that Items 105 and 303 of Regulation S-K gave rise to an independent duty to disclose and accuses Defendants of citing stale case law to the contrary. (Opp'n at 9.) This is wrong.

8

***Statements about standards of conduct and political contributions.***  Contrary to

Plaintiff's arguments, Exelon's Code of Conduct and Guidelines provide guidance but do not

make actionable representations.  (Def. Br. at 10-12.)[10]  Courts routinely dismiss claims that

generalized statements of "adherence to ethical and legal standards" were false or misleading.  *In*

*re UBS AG Sec. Litig.*, 2012 WL 4471265, at *34 (S.D.N.Y. Sept. 28, 2012).[11]  *Grupo Televisa*

---

As Plaintiff acknowledges, the Seventh Circuit has not decided whether those SEC rules give rise to a private right of action under § 10(b), but the published decisions in this district have held that they do not, *see Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 909 (N.D. Ill. 2001), *aff'd sub nom. Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001) ("[T]he caselaw is clear that Item 303(a) does not give rise to private action under Rule 10b."); *Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1157 (N.D. Ill. 1995), and more recent unpublished decisions have agreed, *see Washtenaw Cty. Emps.' Ret. Sys. v. Walgreen Co.*, 2016 WL 5720375, at *14 (N.D. Ill. Sept. 30, 2016); *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *13 (N.D. Ill. Apr. 19, 2012). Furthermore, the two unpublished decisions Plaintiff cites do not lend authoritative support to Plaintiff's position.  In *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222 (N.D. Ill. Feb. 5, 2020), although the court thought Item 303 could give rise to a duty to disclose, the court *agreed* that "a violation of Item 303's duty to disclose is not automatically actionable as securities fraud." *Id.* at *7.  In *AbbVie*, the court did not analyze whether Regulation S-K can give rise to a private action under § 10(b), so it is not persuasive.  *See* 2020 WL 5235005, at *4; *cf. supra* n.5.  In any event, Plaintiff's Complaint does not allege violations of Items 105 and 303.  (*See* Def. Br. at 6 n.2; Pramaggiore Br. at 12-13.)

[10]  Plaintiff oddly devotes an entire page of its brief to the claim that Defendants "waived" argument on these statements.  (Opp'n at 10.)  Yet Defendants laid out the standard for pleading an actionable omission (*see* Def. Br. at 6-7) and then explained why Plaintiff failed to meet that standard as to each category of statement (*see* Def. Br. at 7-11).

[11]  *See also, e.g.*, *City of Pontiac*, 752 F.3d at 183 ("It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are too general to cause a reasonable investor to rely upon them."); *Braskem*, 246 F. Supp. 3d at 755-56 ("Because a code of ethics is inherently aspirational, it simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all."); *Desai v. Gen. Growth Properties, Inc.*, 654 F. Supp. 2d 836, 859 (N.D. Ill. 2009) ("Plaintiffs can cite no case that has held that publication of an ethics code on a website is equivalent to a representation that the code is not being violated."); *Singh v. Cigna Corp.*, 277 F. Supp. 3d 291, 311-12 (D. Conn. 2017).  Plaintiff's cases do not lead to a different conclusion.  In *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2018 WL 3772675, at *18 (D.N.J. Aug. 8, 2018), the court recognized that "[a]llowing claims to proceed on the basis of code of conduct violations would be overbroad; any instance of corporate misconduct would violate a company's compliance policy," and distinguished the case from a situation in which a corporation "facing extensive press inquiries about alleged corruption" responded by emphasizing its commitment to ethical conduct.  In *In re CenturyLink Sales Practices & Sec. Litig.*, 403 F. Supp. 3d 712, 728 (D. Minn. 2019), the court found a code of conduct more than aspirational, but (unlike here) violations of the code were systemic, actively tolerated, and even "honored."  *AbbVie* found one provision in a code of conduct not inherently aspirational, but again, unlike here, violations of that provision were pervasive and concerned the company's flagship

(Opp'n at 11) does not hold otherwise. That case did not concern generalized statements of adherence to guidelines, but rather "numerous statements" proclaiming the "concrete steps" the defendant was taking to "ensure" compliance with its prohibition on bribery. *See* 368 F. Supp. 3d at 722. Furthermore, while Plaintiff contends that the Code made representations to investors (Opp'n at 11-12), Plaintiff ignores that the Code warned investors of the possibility that individuals could violate the guidelines (Ex. 7 at 15).

 *Statements about lobbying and risk warning.* Plaintiff points to statements about Exelon's legitimate lobbying activity and general business risk factors, but alleges no facts showing that these statements were inaccurate. Nor does Plaintiff cite any law showing that Defendants were under a duty to disclose uncharged, unadjudicated conduct in connection with these statements. Moreover, many of the statements did not even concern lobbying activity *by ComEd*, which (again) is the only entity that made admissions in the DPA. (Def. Br. at 7-9.)

 Plaintiff's claim that the statements about lobbying were misleading depends on its argument, made without any supporting factual allegations, that the conduct admitted in the DPA was "the most critical aspect" of Exelon's and ComEd's efforts to pass favorable legislation. (Opp'n at 14-17.) Nothing in the DPA supports that conclusion. To the contrary, the DPA concerns the unauthorized conduct of a few employees at ComEd alone, and it states only that those employees *attempted to influence* Public Official A to support legislation. (Ex. 10 at A-3, A-5, A-12.) It says nothing about a *quid pro quo* or that there was ever an agreement to exchange anything. Further, the DPA does not say anything at all about how "critical" (or not)

---

drug. 2020 WL 5235005, at *1, *4. The court also noted that language in a code prohibiting certain conduct by officers and directors "did not imply that all directors and officers were in fact in compliance with that prohibition." *Id.* at *4; *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *5 (S.D.N.Y. Nov. 26, 2018) (noting "allegations of widespread" misconduct); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493 (S.D.N.Y. 2009) (noting extensive misconduct by CEO and COO).

the admitted conduct was to ComEd's efforts to pass legislation—let alone Exelon's or any other subsidiary's. As the DPA and Plaintiff's Complaint recount, the EIMA and FEJA (the only legislation discussed in the DPA) passed with broad support. (Ex. 10 at A-2; Compl. ¶ 74.) Plaintiff's claim that the conduct admitted in the DPA was "critical" to legislative success is thus pure speculation.[12] The disclosures accurately described each respective entity's legitimate business activity and did not "represent [them] as having an abnormally strong compliance record." *Anderson*, 140 F. Supp. 2d at 906.[13] Under such circumstances, Exelon and ComEd were not required to accuse themselves of unadjudicated conduct in order to avoid making these accurate disclosures misleading.

As for the risk statements, Plaintiff does not contest that they were accurate and ignores that Defendants warned about the possibility of "further risks and uncertainties that are not presently known." (Ex. 1 at 31.) Plaintiff identifies no "specific, contradictory information" that

---

[12] Plaintiff's cases do not help its argument. In *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944 (7th Cir. 1989), the court *rejected* the argument that "the alleged misleading loan documents describing the structure and nature of the securities transaction created a duty to disclose the other material facts regarding the transaction." In *Lindelow*, 2001 WL 830956, at *2-3, the challenged statements were misleading because they announced the rollout of a product that the company knew it could not possibly roll out that year—not analogous to the accurate statements here about legitimate lobbying activity. In *Braskem*, the challenged statements were misleading because they omitted that a bribery scheme was a "central determinant" that "secretly assured" pricing—again, not analogous to the case here, where Plaintiff has alleged zero facts to support its claim that the activity admitted in the DPA was "critical" to any company's legislative success. 246 F. Supp. 3d at 759, 761. The other cases cited by Plaintiff similarly involved statements that were misleading because they omitted to disclose misconduct that was central to the business. *See Singer v. Reali*, 883 F.3d 425, 429 (4th Cir. 2018) (company derived revenue "almost entirely from" relevant product); *Abbvie*, 2020 WL 5235005, at *5 (sales of relevant drug constituted "majority or even supermajority" of yearly net revenue).

[13] *Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442, at *6 (N.D. Ill. Feb. 27, 2018), is inapposite because the CEO there "affirmatively ruled out" any impact of the alleged conduct that ultimately came to light. Likewise, in *Cambridge Ret. Sys. v. JELD-WEN Holding, Inc.*, 2020 WL 6270482, at *5 (E.D. Va. Oct. 26, 2020), the firm specifically "credit[ed] its market success to its pricing strategy and quality products, not its anticompetitive conduct"—not the case here. Plaintiff's effort to distinguish Defendants' cases is also unavailing. (*See* Opp'n at 16 & n.9.) *Navistar* correctly states that a securities plaintiff must "offer *specific, contradictory* information" to allege a misleading omission. 114 F. Supp. 3d at 651 (emphasis added). Plaintiff has not done so.

11

renders those statements misleading, *Navistar*, 114 F. Supp. 3d at 651, so its challenge fails.

***Statements about the FEJA.*** Plaintiff asserts that Defendants' accurate statements about the effects of the FEJA were nonetheless misleading because Defendants failed to also state that the conduct in the DPA was "a significant cause" of the law's enactment years ago. (Opp'n at 18.) Plaintiff alleges no facts to support this theory. But, in any event, Defendants' accurate statements about the present-day effects of past legislation are not rendered misleading by failing to discuss actions that Plaintiff alleges contributed to the legislation's enactment years earlier. The cases Plaintiff cites (*see* Opp'n at 18-19) concerned benefits that were generated directly by underlying misconduct, not (as here) benefits of legislation that would accrue regardless.

***Statements about government investigations.*** Plaintiff has no response to the points that the subpoena disclosures were accurate and that the law did not require Defendants to treat the investigations as "evidence of wrongdoing," *Societe Generale*, 2018 WL 4616356, at *6, or to "speculate as to the myriad of consequences" that might result. *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 678 (S.D.N.Y. 1990). Instead, Plaintiff asserts that Defendants misrepresented the effect of the subpoenas on Exelon's and ComEd's ongoing *legitimate* lobbying activity—focusing in particular on Von Hoene's statement that the subpoenas "had no impact on" the "level" or "intensity" of such activity, including "meeting regularly," "doing the stakeholder outreach," and "trying to craft a package and educate members of [the] legislature." (Opp'n at 20 (quoting Compl. ¶ 118(c)).) But while Plaintiff declares that Von Hoene's statement must have been inaccurate, it alleges no facts contradicting that statement.[14]

---

[14] Plaintiff also continues incorrectly to portray Von Hoene's statement as being about ComEd (Opp'n at 20 n.11), when it concerned the CEPA, which (as other statements in the Complaint indicate) was the target of lobbying efforts by Exelon and ExGen, not ComEd (*see* Compl. ¶¶ 112(a), 119(f)).

12

**III.  THE COMPLAINT MUST BE DISMISSED BECAUSE IT CONFLATES DEFENDANTS AND FAILS TO CORRECTLY LINK SPECIFIC ALLEGED FALSE OR MISLEADING STATEMENTS TO SPECIFIC DEFENDANTS.**

The PSLRA's heightened pleading standard requires particularity with regard to the "who, what, when, where, and how" of the alleged fraud.  *Cornielsen*, 916 F.3d at 598. Importantly, Plaintiff must allege that each Defendant actually exercised "ultimate authority over," and therefore made, each challenged statement.  *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141-42 (2011).  The Complaint fails this test, consistently conflating Exelon and ComEd (two distinct corporate entities), failing to explain who said what or who knew what, and failing to identify which statements specifically concerned ComEd, which again (as the Complaint conveniently ignores) is the only Defendant that made admissions in the DPA. As a result, the Complaint does not allege with particularity that any Defendant made any statement that was false or misleading, based on information *that Defendant* is alleged to have known at the time.  These flaws are fatal and require dismissal.

Plaintiff repeatedly refers to Exelon and ComEd as "the Company" (Def. Br. at 3-5), and argues (without authority) that the relationship between the two entities justifies treating them interchangeably under the securities laws.  (*See* Opp'n at 7.)  But as the Complaint and the SEC filings it incorporates make plain, Exelon and ComEd are distinct corporate entities, and ComEd is one of many Exelon subsidiaries.  (*See* Compl. ¶¶ 3, 34; Ex. 1 at 7.)  "[I]n the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed."  *Janus*, 564 U.S. at 142-43.  The caselaw rejects conflation of defendants based solely on a parent-subsidiary relationship.  *See, e.g.*, *Dow Corning Corp. v. BB & T Corp.*, 2010 WL 4860354 (D.N.J. Nov.

13

23, 2010).[15]  Here, Exelon's and ComEd's SEC filings state expressly that each company reports information only as to itself, and not as to any other company.  Although Exelon and its subsidiaries separately file combined yearly and quarterly reports with the SEC, as a factual matter, the reports make clear to investors that the information they contain relating to any individual company is filed by that company on its own behalf only, and no company makes any representation as to information relating to any other company.  (Ex. 1 at 6; Ex. 3 at 8; Ex. 5 at 8; Ex. 6 at 8.)  Exelon makes representations about Exelon, ComEd about ComEd, and so on.  And the Individual Defendants who signed the filings did so on behalf of their own distinct corporate entities, not all Exelon companies.[16]

This matters because Plaintiff's entire theory of liability is that the challenged statements were misleading because they did not disclose the conduct admitted in the DPA—but *only ComEd* made admissions in the DPA.  Plaintiff's conflation of the entities is an attempt to implicate Exelon, whose stock it allegedly owned, and the Individual Defendants.  But neither

[15]  Plaintiff's efforts to distinguish authority showing the impropriety of conflating Exelon and ComEd is unavailing.  (*See* Opp'n at 8 n.6.)  In *Dow Corning Corp.*, 2010 WL 4860354, the court dismissed the parent company from the case because the complaint ascribed conduct to the parent and subsidiary as undifferentiated "defendants," yet alleged no facts whatsoever showing that the parent company was involved in the underlying conduct.  *Id.* at *8-9.  Here, similarly, Plaintiff attempts to treat Exelon and ComEd as a unit, yet the DPA ascribes the underlying conduct only to ComEd.  In *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998), the complaint "jointly attribute[d]" the allegedly fraudulent statements to the defendants and "fail[ed] to inform each defendant of the nature of its alleged participation in the fraud."  *Id.* at 492.  Here, Plaintiff makes a similar error.  In *Lindblom v. Mobile Telecomms. Techs. Corp.*, 985 F. Supp. 161 (D.D.C. 1997), both corporate entities made statements, but only one made statements relevant to the plaintiffs' fraud claim.  *Id.* at 164.  Here, similarly, Plaintiff fails to distinguish statements about ComEd in the DPA from statements in the disclosures about other Exelon entities.  Finally, in *Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200 (S.D.N.Y. 1996), the court faulted the plaintiffs for treating the defendants as an undifferentiated group.  *Id.* at 208.  Plaintiff does the same.

[16]  Thus, Crane (but not Dominguez) signed the 2018 10-K on behalf of Exelon, and Crane and Dominguez signed on behalf of ComEd.  (Ex. 1 at 542, 544.)  Crane (but not Dominguez) signed the 1Q19 10-Q, 2Q19 10-Q, and 3Q19 10-Q on behalf of Exelon, and Dominguez (but not Crane) signed on behalf of ComEd.  (Ex. 3 at 192, 194; Ex. 5 at 194, 196; Ex. 6 at 194, 196.)  Moreover, Plaintiff has not adequately alleged that any of the disclosures signed by Crane or Dominguez were false or misleading, *see supra* at 10-12, or that either had the requisite scienter, *see supra* at 6-7.

14

Exelon nor any Individual Defendant made any admission, and Plaintiff has made no specific allegation that Exelon or any Individual Defendant had any involvement in the conduct set forth in the DPA. As Defendants' appendix demonstrates, many of the statements Plaintiff attributes to "the Company" were neither made *by* ComEd nor *about* ComEd. Statements regarding Exelon cannot be rendered false by statements in the DPA that concern only ComEd.

While the Complaint occasionally specifies which Individual Defendant made a statement (Opp'n at 6-7), it also improperly attributes statements in SEC filings to Crane and Dominguez collectively, even though only Crane signed on behalf of Exelon, and (with the exception of the 2018 10-K) only Dominguez signed on behalf of ComEd. *See supra* n.16 (*contra* Opp'n at 7). Defendants do not dispute that corporations are liable for "statements by employees who have apparent authority to make them" or that a single statement may have "multiple makers." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426-27 (7th Cir. 2015). The fatal flaw in the Complaint, however, is that Plaintiff impermissibly attributes statements to Defendants who the filings make plain did not make them.[17]

## CONCLUSION

This Court should dismiss the Complaint in full.

---

[17] The cases Plaintiff cites do not support its argument that Exelon and ComEd should be treated interchangeably or that an Individual Defendant who signed on behalf of one entity is responsible for information reported by the other entity. *Glickenhaus*, 787 F.3d at 426-27, is inapplicable because it concerned only one corporate entity, and the corporation, its CEO, and its CFO all conceded that they had made the statements in the corporation's filings. Notably, the court refused to find that a vice-chairman "was also a 'maker' of the false statements in the SEC filings" merely "because as a high-ranking officer, he reviewed and approved them." *Id.* at 428. Similarly, in *Janus*, 564 U.S. 135, only one corporate entity filed with the SEC, and the Court held that the other non-filing entity did not "make" the statements in the filing. *Id.* at 146-48. In *SEC v. e-Smart Techs., Inc.*, 31 F. Supp. 3d 69 (D.D.C. 2014), the court simply held that the CEO and CTO, who had both signed SEC filings on behalf of one company, were makers of the fraudulent statements in those filings. *Id.* at 75, 80. Finally, *Grupo Televisa* held a CEO and CFO liable for false statements about one parent company's internal controls and did not involve two entities each making statements about itself only. *See* 368 F. Supp. 3d at 716-17, 720-21.

15

Dated:  February 17, 2021

Respectfully submitted,

*/s/ Mark E. Schneider*
KIRKLAND & ELLIS LLP
Mark E. Schneider
Jaran R. Moten
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
mark.schneider@kirkland.com
jaran.moten@kirkland.com

Sandra C. Goldstein (admitted *pro hac vice*)
Stefan Atkinson (admitted *pro hac vice*)
Kyla Jackson (admitted *pro hac vice*)
Evelyn Blacklock (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
kyla.jackson@kirkland.com
evelyn.blacklock@kirkland.com

*Attorneys for Defendants Exelon*
*Corporation, Commonwealth Edison*
*Company, Christopher M. Crane, Joseph*
*Dominguez, and William A. Von Hoene, Jr.*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 17, 2021, a true and accurate copy of the foregoing was electronically filed with the CM/ECF system of the United States District Court for the Northern District of Illinois, which sends notice to counsel of record via e-mail.

*/s/ Mark E. Schneider*
Mark E. Schneider

17