**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:19-cv-08209 |
| Plaintiff, | Hon. Virginia M. Kendall |
| v. | |
| EXELON CORPORATION et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE EXELON AND COMED DEFENDANTS'**
**MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**

# **TABLE OF CONTENTS**

                                                                                                    PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL............. 4

    A.    The Order Involves Questions of Law on Which There Are Substantial
         Grounds for Difference of Opinion.......................................................................... 4

    B.    The Questions Are Controlling ................................................................................. 9

         1.    Resolving the Questions in Defendants' Favor Would Impact
             Plaintiff's Entitlement to a Presumption of Reliance at Class
             Certification ................................................................................................ 9

         2.    Resolving the Questions in Defendants' Favor Would Impact
             Plaintiff's Ability to Prove an Actionable Misstatement ......................... 13

    C.    Certification of the Issues Would Materially Advance the Ultimate
         Termination of the Litigation .................................................................................. 14

CONCLUSION .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

<u>CASES</u>

*Affiliated Ute Citizens of Utah v. United States,*
    406 U.S. 128 (1972) ............................................................................2, 10

*Ahrenholz v. Bd. of Trs. of Univ. of Illinois,*
    219 F.3d 674 (7th Cir. 2000) .............................................................4

*Albert Fadem Tr. v. Citigroup, Inc.,*
    165 F. App'x 928 (2d Cir. 2006) .......................................................7

*In re Allstate Corp. Sec. Litig.,*
    966 F.3d 595 (7th Cir. 2020) .............................................................12

*Anderson v. Abbott Lab'ys,*
    140 F. Supp. 2d 894 (N.D. Ill. 2001).................................................3, 6, 7

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ..........................................................................10

*In re Braskem S.A. Sec. Litig.,*
    246 F. Supp. 3d 731 (S.D.N.Y. 2017) ..............................................3, 7

*Calvin v. Sheriff of Will Cty.,*
    2006 WL 1005141 (N.D. Ill. Apr. 14, 2006) .....................................4

*Carvelli v. Ocwen Fin. Corp.,*
    934 F.3d 1307 (11th Cir. 2019) .........................................................5

*In re Citigroup, Inc. Sec. Litig.,*
    330 F. Supp. 2d 367 (S.D.N.Y. 2004) ..............................................7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
    752 F.3d 173 (2d Cir. 2014) .............................................................7, 14

*Cornielsen v. Infinium Capital Mgmt., LLC,*
    916 F.3d 589 (7th Cir. 2019) .............................................................13

*Costello v. BeavEx, Inc.,*
    2014 WL 12775669 (N.D. Ill. Dec. 1, 2014)....................................1, 2, 4, 5, 11, 15

*FDIC v. Mahajan,*
    2013 WL 3771419 (N.D. Ill. July 16, 2013) .....................................9, 11

*Gallagher v. Abbott Lab'ys*,
   269 F.3d 806 (7th Cir. 2001) ..............................................................................6

*Grossman v. Waste Mgmt., Inc.*,
   589 F. Supp. 395 (N.D. Ill. 1984).....................................................................10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) .....................................................................................10, 12

*Handelsman v. Gilford Sec., Inc.*,
   726 F. Supp. 673 (N.D. Ill. 1989)......................................................................13

*Holwill v. AbbVie Inc.*,
   2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) .......................................................7

*Johnson v. Burken*,
   930 F.2d 1202 (7th Cir. 1991) ...........................................................................14

*Kriendler v. Chem. Waste Mgmt., Inc.*,
   877 F. Supp. 1140 (N.D. Ill. 1995)..................................................................3, 6

*In re Lions Gate Ent. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) .....................................................................9

*Lopez v. CTPartners Exec. Search, Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016) ...................................................................8

*Nat. Res. Def. Couns. v. Illinois Power Res., LLC*,
   2016 WL 9650981 (C.D. Ill. Nov. 2, 2016)......................................................14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ..........................................................................9, 15

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) .............................................................................5

*Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
   2021 WL 371401 (S.D.N.Y. Feb. 3, 2021) .........................................................7

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ...........................................................................5, 6

*Rowe v. Maremont Corp.*,
   650 F. Supp. 1091 (N.D. Ill. 1986)....................................................................11

*Rowe v. Maremont Corp.*,
   850 F.2d 1226 (7th Cir. 1988) ...........................................................................11

*Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*,
    2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) .................................................................7

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*,
    86 F.3d 656 (7th Cir. 1996) ...............................................................................................9

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) .....................................................................................14, 15

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008) .........................................................................................................10

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) ................................................................................................5

*Thrasher-Lyon v. CCS Com., LLC*,
    2012 WL 5389722 (N.D. Ill. Nov. 2, 2012) ....................................................................11

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
    2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ....................................................................7, 8

*Washtenaw Cty. Emps. Ret. Sys. v. Walgreen Co.*,
    2016 WL 5720375 (N.D. Ill. Sept. 30, 2016) ...................................................................6

*Woodman's Food Mkt., Inc. v. Clorox Co.*,
    2015 WL 13547584 (W.D. Wis. July 17, 2015) ..............................................................14

*Wright v. Heizer Corp.*,
    560 F.2d 236 (7th Cir. 1977) ...........................................................................................10

*In re XP Inc. Sec. Litig.*,
    2021 WL 861917 (E.D.N.Y. Mar. 7, 2021) ......................................................................9

### Statutes & Regulations

17 C.F.R. § 229.105 ...................................................................................................................7

17 C.F.R. § 229.303 ...................................................................................................................8

17 C.F.R. § 229.503 ...................................................................................................................8

28 U.S.C. § 1292 ...........................................................................................................1, 4, 9, 14

### Other Authorities

Exchange Act Release No. 6835, 1989 WL 1092885 (May 18, 1989) .........................................8

Defendants Exelon Corporation ("Exelon"), Commonwealth Edison Company ("ComEd"), Christopher M. Crane, Joseph Dominguez, and William A. Von Hoene, Jr. (together, "defendants") respectfully submit this memorandum of law in support of their motion for certification for an interlocutory appeal of the Court's order denying defendants' motion to dismiss plaintiff's complaint. (Dkt. 100 (the "Order").)

<u>**PRELIMINARY STATEMENT**</u>

Defendants respectfully submit that the Order raises two important, unsettled legal issues that are appropriate—indeed tailor-made—for review by the Seventh Circuit pursuant to 28 U.S.C. § 1292(b). Resolution of these issues now would materially advance ultimate termination of the case because, among other things, "an interlocutory appeal would remove uncertainty about the status of a claim." *Costello v. BeavEx, Inc.*, 2014 WL 12775669, at *1 (N.D. Ill. Dec. 1, 2014) (Kendall, J.).

There are substantial grounds for a difference of opinion as to two key questions of securities law addressed in the Order. The first is whether alleged violations of Items 105 and 303 of Securities and Exchange Commission ("SEC") Regulation S-K can give rise to a private right of action under Section 10(b) of the Securities Exchange Act of 1934. As the Court noted in the Order, the Seventh Circuit has not yet ruled on this issue, and the circuits that have considered it are split. (Order at 16.) Decisions in this district have come down on both sides of the issue. The second question is whether Items 105 and 303 impose an affirmative duty to disclose any and all regulatory noncompliance, even during the course of an open government investigation. (*Id.*) The Seventh Circuit has not ruled on this question either. There is considerable authority that companies are not required to accuse themselves of uncharged, unadjudicated wrongdoing. (*See, e.g.*, *id.* at 15.) But the Order also noted a line of recent cases in this district that would appear "to impose a duty to disclose any regulatory noncompliance in

1

[a company's] SEC forms." (*Id.* at 16.) As to both issues, there are "substantial conflicting decisions" and "the question[s] [are] not settled by controlling authority." *Costello*, 2014 WL 12775669, at *2.

Resolution of these questions at this stage would materially affect the further course of the litigation in two ways. First, if defendants prevail on either issue, plaintiff would be categorically unable to rely at the class certification stage on one of the two presumptions of reliance that it invokes in its complaint. In particular, the presumption of reliance in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), applies at most to pure omissions and not to alleged misrepresentations or half-truths. If plaintiff cannot pursue an omissions theory under Items 105 and 303, it will be unable, as a matter of law, to rely on *Affiliated Ute*. This would, at a minimum, streamline class certification and could preclude certification entirely given the hurdles plaintiff will face in establishing reliance. Second, if plaintiff cannot rely on Items 105 and 303, it would need to prove that *actual statements* were false or misleading by omission in order to prevail. This would narrow the scope of the case and materially impact plaintiff's ability to meet its burden on summary judgment or at trial.

For these reasons, appellate guidance on these questions now would speed up the ultimate termination of the litigation. It would remove uncertainty about the status of a key aspect of plaintiff's claim, and it would substantially enhance the likelihood that this case is resolved prior to trial, either at class certification or summary judgment, or through a negotiated settlement.

## **BACKGROUND**

The complaint alleges that, in July 2020, ComEd entered into a Deferred Prosecution Agreement ("DPA") in which ComEd admitted that it made certain payments to "political allies" of "Public Official A" in order to "influence" him to "assist" ComEd "with respect to legislation concerning ComEd and its business." (Dkt. 65 (the "Compl.") ¶ 7.) The complaint largely

2

repeats the conduct described in the DPA—which does not address defendants' public disclosures in any way—and thereby seeks to convert that conduct into a securities law violation. In doing so, plaintiff offers two different theories to support its claims based on alleged omissions of material fact. Plaintiff contends that defendants (1) had a duty to disclose the conduct described in the DPA pursuant to Items 105 and 303 (*id.* ¶¶ 127-30), and (2) made certain otherwise truthful statements that were misleading by omission (*id.* ¶¶ 127-36).

Defendants filed a motion to dismiss the complaint. (Dkts. 73, 77.) A key component of defendants' motion related to the first category of alleged omissions. In particular, defendants argued that Items 105 and 303 do not impose an affirmative duty to disclose the conduct described in the DPA and, as a matter of law, cannot give rise to a cause of action under Section 10(b). (Dkt. 77 at 5, 6 n.2 (citing *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 906 (N.D. Ill. 2001); *Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1157 (N.D. Ill. 1995)); Dkt. No. 90 at 8-9 n.9.) Defendants further argued that, even if Items 105 and 303 could give rise to a claim under Section 10(b), those items do not require disclosure of uncharged, unadjudicated wrongdoing. (Dkt. 77 at 6 n.2; Dkt. 90 at 8 n.9.)

In denying defendants' motion, the Order stated that defendants "did not have a freestanding legal duty to disclose the bribery scandal, no matter how unseemly the scandal was and no matter how significant the scandal would have been to the market." (Order at 15 (quoting *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 752, 759-61 (S.D.N.Y. 2017)). But acknowledging that the "Seventh Circuit has yet to rule on the issue" of whether "Items 105 and 303 of SEC Regulation S-K impose a duty to disclose any regulatory noncompliance" (*id.* at 16), the Order nevertheless adopted such a duty to disclose pursuant to those items and held that plaintiff had sufficiently alleged that defendants failed to comply with it (*id.* at 17).

3

## ARGUMENT

### THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL

Under 28 U.S.C. § 1292, the Court may "certify an order for determination on interlocutory appeal if it finds that the order from which an appeal is sought involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000) ("There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation."). As set forth below, the Order meets each of these requirements.

### A.  The Order Involves Questions of Law on Which There Are Substantial Grounds for Difference of Opinion

The Order presents two questions of law on which there are substantial grounds for difference of opinion—*i.e.*, the questions are "contestable," *Ahrenholz*, 219 F.3d at 675. "In order to be a 'question of law' meriting certification, the question should be a 'reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine' that 'the court of appeals c[an] decide quickly and cleanly without having to study the record.'" *Calvin v. Sheriff of Will Cty.*, 2006 WL 1005141, at *3 (N.D. Ill. Apr. 14, 2006) (Kendall, J.) (quoting *Ahrenholz*, 219 F.3d at 677). "A question of law is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, *or* the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Costello v. BeavEx, Inc.*, 2014 WL 12775669, at *2 (N.D. Ill. Dec. 1, 2014) (Kendall, J.) (citation omitted) (emphasis added).

4

*First*, the Order presents the question of whether an alleged violation of Items 105 or 303 can give rise to a Section 10(b) claim. As noted in the Order, "the Seventh Circuit has yet to rule on th[is] issue." (Order at 16.) Other circuits are split, and there are conflicting decisions within the Seventh Circuit. This is a textbook example of a contestable question of law. *See Costello*, 2014 WL 12775669, at *2 (question is contestable where "the circuits are split on the issue" and "the Seventh Circuit has never directly addressed" the question).

Consistent with the Order, the Second Circuit in *Stratte-McClure v. Morgan Stanley* held that "a failure to make a required Item 303 disclosure in a 10-Q filing is indeed an omission that can serve as the basis for a Section 10(b) securities fraud claim." 776 F.3d 94, 100 (2d Cir. 2015). But there is also substantial countervailing authority in other circuits. The Ninth Circuit in *In re NVIDIA Corp. Sec. Litig.* held that "Item 303 does *not* create a duty to disclose for purposes of Section 10(b) and Rule 10b-5." 768 F.3d 1046, 1056 (9th Cir. 2014) (emphasis added). Other circuits have come to a similar conclusion. *See Oran v. Stafford*, 226 F.3d 275, 287 (3d Cir. 2000) (rejecting the argument that Item 303 "creates a duty of disclosure that, if violated, constitutes a material omission under . . . Rule 10b-5"); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1331 (11th Cir. 2019) ("On its face, Item 303 imposes a more sweeping disclosure obligation than Rule 10b-5, such that a violation of the former does not *ipso facto* indicate a violation of the latter.").

In support of its conclusion on this issue, the Ninth Circuit explained that "[m]anagement's duty to disclose under Item 303 is much broader than what is required under the standard" for claims under Rule 10b-5. *NVIDIA*, 768 F.3d at 1055. "[Item 303] mandates disclosure of specified forward-looking information, and specifies its own standard for disclosure—*i.e.,* reasonably likely to have a material effect." *Id.* at 1054. Rule 10b-5, on the

5

other hand, requires disclosure "only when necessary 'to make . . . statements made, in the [sic] light of the circumstances under which they were made, not misleading.'" *Id.* Therefore, "the 'demonstration of a violation of the disclosure requirements of Item 303 does not lead inevitably to the conclusion that such disclosure would be required under Rule 10b-5. Such a duty to disclose must be separately shown.'" *Id.* at 1055 (quoting *Oran*, 226 F.3d at 288).

Courts in this district have also chosen different paths on this issue, with some following the Second Circuit's position (*see* Order at 16) and others following the Ninth Circuit, *see, e.g.*, *Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, 2016 WL 5720375, at *14 (N.D. Ill. Sept. 30, 2016) ("Within this district . . . it has been recognized that S-K 303(a) does not give rise to a private right of action under Rule 10b."); *Anderson*, 140 F. Supp. 2d at 909 ("[T]he caselaw is clear that Item 303(a) does not give rise to private action under Rule 10b."), *aff'd sub nom. Gallagher v. Abbott Lab'ys*, 269 F.3d 806 (7th Cir. 2001); *Kriendler*, 877 F. Supp. at 1157 ("[W]e find the Ninth Circuit's analysis persuasive and therefore adopt it as the rule in this case."). This intra-district split confirms that there are substantial grounds for difference of opinion on this question.

*Second*, the Order presents the separate question of whether Items 105 and 303 "impose a duty [on a company] to disclose *any* regulatory noncompliance in its SEC Forms"—specifically, whether they impose a duty to disclose where such noncompliance was, at the relevant time, uncharged and unadjudicated. (Order at 16 (emphasis added).) Again, although the Order concluded that some courts in this district have answered this question in the affirmative, the Seventh Circuit has not ruled on this issue (*id.*), and there is considerable authority to the contrary.

As the Order explained, it is settled law that "Defendants 'did not have a freestanding legal duty to disclose the bribery scandal, no matter how unseemly the scandal was and no matter how significant the scandal would have been to the market.'" (*Id.* at 15 (quoting *In re Braskem*, 246 F. Supp. 3d at 752, 759-61).) Thus, companies do not have a duty to "disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *see also In re Citigroup*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("[T]he federal securities laws do not require a company to accuse itself of wrongdoing") (internal quotation marks omitted), *aff'd sub nom. Albert Fadem Tr. v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006). This rule has been followed by courts in this district. *See, e.g.*, *Société Générale Sec. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356, at *5 (N.D. Ill. Sept. 26, 2018) ("What [plaintiff] is really asking is that [defendant] be required to admit liability for uncharged, unadjudicated claims while the investigation into its tax position was ongoing. That sort of confession of guilt is not required."); *Anderson*, 140 F. Supp. 2d at 906 ("SEC rules do not create a duty to confess contested charges.").

Notwithstanding this general rule, the Order held that Items 105 and 303 nevertheless *do* impose an affirmative duty to disclose *any* regulatory noncompliance. (*See* Order at 16 (citing *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222 (N.D. Ill. Feb. 5, 2020) & *Holwill v. AbbVie Inc.*, 2020 WL 5235005 (N.D. Ill. Sept. 1, 2020).)

Other courts, however, have concluded that Items 105 and 303 do not require such disclosure. In *City of Pontiac*, for example, the Second Circuit rejected the argument that Item 105 (at the time codified as Item 503)[1] required a company to disclose that it was "engaged in an

---

[1] "Effective May 2, 2019, the SEC relocated former Item 503(c), then-codified at 17 C.F.R. § 229.503(c), to Item 105, now codified at 17 C.F.R. § 229.105." *Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, (….continued)

ongoing tax evasion scheme." 752 F.3d at 184. Although Item 105 requires "a discussion of the most significant factors that make the offering speculative or risky," the court held that "[d]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *Id.* (internal quotation marks omitted).

Courts have reached similar conclusions regarding Item 303. During the relevant period, Item 303 required disclosure only of "any known trends or uncertainties that have had or that the registrant *reasonably expects will have* a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."[2] 17 C.F.R. § 229.303(a)(3)(ii) (emphasis added). As the SEC has explained, disclosures "anticipating a future trend or event or anticipating a less predictable impact of a known event, trend, or uncertainty" are not required. Exchange Act Release No. 6835, 1989 WL 1092885, at *4 (May 18, 1989) (describing this type of disclosure as an "optional forward-looking disclosure"). Courts have therefore concluded that wrongdoing that "would one day be publicly revealed is the sort of 'future trend or event' whose disclosure, while certainly permitted, was not required under Item 303." *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 36 (S.D.N.Y. 2016). Courts have also concluded that companies do not have a duty to disclose investigations of wrongdoing under Item 303 because the rule does not require companies to anticipate the results of the investigation.[3] *See, e.g.*, *In re*

---

(continued....)

2021 WL 371401, at *8 n.3 (S.D.N.Y. Feb. 3, 2021). "The underlying disclosure requirements, however, remain the same." *Id.*

[2] The language of Item 303 was amended effective February 10, 2021. *See* Management's Discussion and Analysis, Selected Financial Data, and Supplementary Financial Information, 86 FR 2080-01, 2021 WL 75951 (Jan. 11, 2021). It now requires disclosure of "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii).

[3] Consistent with this approach, in *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222 (N.D. Ill. Feb. 5, 2020), in which plaintiffs alleged a Section 10(b) claim based on Item 303, the court held that the (....continued)

*XP Inc. Sec. Litig.*, 2021 WL 861917, at *11 (E.D.N.Y. Mar. 8, 2021) (no duty to disclose "regulatory investigations"); *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 20 (S.D.N.Y. 2016) ("An SEC investigation could not be characterized as a 'known trend' or 'uncertainty' under Item 303.").

At a minimum, this question too is contestable.

## B. The Questions Are Controlling

The two questions presented in this motion are also "controlling." 28 U.S.C. § 1292(b). "A question of law is controlling 'if its resolution is quite likely to affect the further course of litigation, even if not certain to do so.'" *FDIC v. Mahajan*, 2013 WL 3771419, at *3 (N.D. Ill. July 16, 2013) (Kendall, J.) (quoting *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)). Resolving either or both of the questions raised in defendants' favor will be "quite likely to affect the further course of litigation" for two reasons: (1) because their resolution will significantly impact plaintiff's entitlement to a presumption of reliance at class certification; and (2) because, if unable to rely on Items 105 and 303, plaintiff will be left to prove that *actual* statements by defendants were false or misleading.

### 1. Resolving the Questions in Defendants' Favor Would Impact Plaintiff's Entitlement to a Presumption of Reliance at Class Certification

Class certification will be a key inflection point in this case. "[D]enying or granting class certification is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs, or create unwarranted pressure to settle nonmeritorious claims on the part of defendants)." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162 (3d Cir. 2001). To certify a class, plaintiff must establish its entitlement to a

---

(continued….)

purported noncompliance should have been disclosed, but the relevant regulator "had *already found* noncompliance with its standards at one of [the defendant's] facilit[ies]." *Id.* at *8 (emphasis added).

presumption of reliance. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008). "[W]ithout the presumption of reliance, a Rule 10b-5 suit cannot proceed as a class action: Each plaintiff would have to prove reliance individually, so common issues would not 'predominate' over individual ones." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281-82 (2014).

Here, plaintiff claims in the complaint that it is entitled to two different presumptions of reliance: (1) the fraud-on-the-market presumption under *Basic Inc. v. Levinson,* 485 U.S. 224, 247 (1988) (*see* Compl. ¶¶ 233-34), and (2) the presumption for omissions under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) (*see* Compl. ¶ 235). A favorable interlocutory ruling for defendants on either of the questions raised in this motion will, however, categorically eliminate plaintiff's ability to rely on the *Affiliated Ute* presumption, which will streamline and simplify class certification.

In *Affiliated Ute*, the Supreme Court held that in securities cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute,* 406 U.S. at 153. Instead, in certain cases, reliance may be "presumed if the omitted information" is proved by the plaintiff to be material. *Wright v. Heizer Corp.*, 560 F.2d 236, 249 (7th Cir. 1977) (citing *Affiliated Ute,* 406 U.S. 128 at 153). But the circumstances under which a plaintiff can rely on the *Affiliated Ute* presumption of reliance are highly limited. "Since the *Affiliated Ute* presumption of reliance exists primarily because of the practical impossibility of proving reliance where no statements are made, its underlying rationale does not logically apply in a case in which the 'omissions' are the type that can be said to exist only because of other, positive statements that the company has made." *Grossman v. Waste Mgmt., Inc.*, 589 F. Supp. 395, 409

10

(N.D. Ill. 1984). Thus, the presumption can never apply to "misstatements and half-truths" but at most only to "pure omissions." *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 n.4 (7th Cir. 1988). Put another way, "when alleged omissions are really in the nature of misrepresentations (misleading statements, half-truths)," the *Affiliated Ute* presumption is inapplicable. *Rowe v. Maremont Corp.*, 650 F. Supp. 1091, 1105 (N.D. Ill. 1986) (internal quotation marks omitted).

The complaint makes clear that plaintiff intends to argue that Items 105 and 303 create an independent duty to disclose the alleged bribery scheme, such that the failure to do so is a pure omission warranting the *Affiliated Ute* presumption of reliance. (*See* Compl. ¶ 235.) Thus, if defendants are successful on an interlocutory appeal, plaintiff would be foreclosed entirely from relying on the *Affiliated Ute* presumption at class certification.

Because resolving either or both of the questions raised in this motion would impact plaintiff's entitlement to a presumption of reliance at class certification, resolution of the questions would be "quite likely to affect the further course of litigation." *Mahajan*, 2013 WL 3771419, at *3; *see, e.g.*, *Thrasher-Lyon v. CCS Com., LLC*, 2012 WL 5389722, at *2 (N.D. Ill. Nov. 2, 2012) (concluding that an issue was controlling because it would "color how the remainder of the case will proceed as it now enters the class-certification stage"); *cf. Costello*, 2014 WL 12775669, at *3 ("Because a denial of class certification often dooms the suit . . . [or] because a grant of certification may place enormous pressure on the defendant to settle . . . [a]nd because class actions are cumbersome and protracted, an early appellate decision on whether a suit can be maintained as a class action can speed the way to termination of the litigation by abandonment, summary judgment, or settlement." (internal quotation marks omitted)).

A decision that categorically eliminated plaintiff's ability to rely on *Affiliated Ute* at class certification would, by itself, be sufficient to support certification under Section 1292(b). But

here, such a decision would be even more significant as it could well be dispositive at class certification. Without the *Affiliated Ute* presumption, plaintiff will be limited to relying on the fraud-on-the-market presumption and will face significant barriers to establishing its entitlement to that presumption at class certification. The fraud-on-the-market presumption is "based on the efficient market hypothesis: the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 605 (7th Cir. 2020) (internal quotation marks omitted). As the Seventh Circuit has recently reiterated, defendants can rebut this presumption by establishing a lack of price impact, which can be done through "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Id.* (internal quotation marks omitted).

Here, plaintiff will face substantial obstacles in demonstrating price impact. For example, defendants will show that the stock price declines after the alleged "truth was revealed" were modest, and expect to present expert analysis that likely will demonstrate that many or all were not statistically significant. *See Allstate*, 966 F.3d at 613 ("[T]he best way to determine the impact of a false statement is to observe what happens when the truth is finally disclosed and use that to work backward."). In addition, to show price impact, plaintiff will need to disaggregate the effect of the alleged misrepresentations from other confounding information. *See Allstate*, 966 F.3d at 606 (stating that "causation is demonstrated only when no alternate causes have intervened" that may have "disrupted the connection between a false statement and a trade"). Plaintiff will also need to demonstrate that the generic statements at issue in this case had an actual impact on the stock price. *See Halliburton*, 573 U.S. at 279 (price impact must be attributable to "the particular misrepresentation at issue"). In summary, without the *Affiliated*

*Ute* presumption, plaintiff will face several, significant evidentiary hurdles that it must clear to establish reliance on a classwide basis and meet its burden on class certification.  A decision on appeal that definitively removes *Affiliated Ute* from the picture may therefore be dispositive.

2.  *Resolving the Questions in Defendants' Favor Would Impact Plaintiff's Ability to Prove an Actionable Misstatement*

Independently, the questions raised in this motion are also controlling within the meaning of Section 1292(b) because—without the ability to rely on Items 105 and 303—plaintiff would need to establish that defendants made *actual* statements that were either false or misleading. (*See, e.g.*, Compl. ¶ 100 (alleging that affirmative statements in Exelon's Code of Conduct were misleading because they "omitted to disclose" the bribery scheme).)  For example, plaintiff would need to prove that general statements—*e.g.*, warnings that the companies "operate[] in a market and regulatory environment that poses significant risks" and there could be "further risks and uncertainties that are not presently known" (Dkt. No. 78-1 at 31)—were *both* materially misleading for not also disclosing the conduct at issue in the DPA *and* that defendants acted with scienter in making those general statements.

Although the Order concluded that plaintiff had satisfied its *pleading* burden as to these statements, plaintiff will face a steep burden at summary judgment and ultimately *proving* both of these elements at trial.  *See, e.g.*, *Handelsman v. Gilford Sec. Inc.*, 726 F. Supp. 673, 681 (N.D. Ill. 1989) (granting summary judgment where the plaintiffs failed to meet their "burden to produce affirmative evidence" that the defendants made misleading statements with scienter); *see also Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019) (no scienter for alleged omission where the plaintiff showed only the "defendant's mere access to information" purportedly contradicting the statement but not knowledge that the information was

false); *City of Pontiac*, 752 F.3d at 182-83, 186 (statements that bank "complie[s] with all applicable laws" are "too general to cause a reasonable investor to rely on them").

Accordingly, the questions presented here are also controlling because a decision on them will streamline the issues to be litigated and increase the likelihood that the case will be resolved prior to trial. *See Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) ("[A] growing number of decisions have accepted the rule that a question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants."); *Woodman's Food Mkt., Inc. v. Clorox Co.*, 2015 WL 13547584, at *2 (W.D. Wis. July 17, 2015) (issue was controlling where its resolution "would save time and expense for the court and the parties by demarcating—and likely narrowing—the playing field for the court and the parties").

### C.  Certification of the Issues Would Materially Advance the Ultimate Termination of the Litigation

Finally, an immediate appeal of the Order "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Satisfying this element "does not require that the interlocutory appeal end the litigation at the district court." *Nat. Res. Def. Couns. v. Illinois Power Res., LLC*, 2016 WL 9650981, at *4 (C.D. Ill. Nov. 2, 2016); *see Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("[N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court."). Rather, "all that section 1292(b) requires . . . is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk*, 672 F.3d at 536 (emphasis in original).

In *Sterk*, the plaintiffs brought a class action asserting claims under two different subsections of a statute. The defendant sought to certify a question that related to only one of the two subsections. The plaintiffs argued that an interlocutory appeal was not appropriate because

14

they had "pleaded another ground for relief" that would not be at issue in the appeal. *Id.* The Seventh Circuit disagreed. It held that the appeal could still materially advance the ultimate termination of the litigation because "[i]f the appeal is not allowed, and the suit proceeds in the district court on both . . . claims, the completion of the litigation will take longer than if" the issue the defendant was seeking to appeal was "out of the case." *Id.* The court also recognized that uncertainty about the status of a claim "may delay settlement," which would "further protract the litigation." *Id.*

Certification of the Order for interlocutory appeal would materially advance the ultimate termination of this action for the same reasons. Resolving these questions in defendants' favor, and thereby removing plaintiff's Items 105 and 303 claims from the case, would preclude plaintiff from relying on the *Affiliated Ute* presumption of reliance to obtain class certification. If plaintiff must rely only on the more onerous fraud-on-the-market presumption, it will be less likely to have a class certified, in whole or in part. Denial of class certification would all but end the litigation. *See Newton*, 259 F.3d at 162; *Costello*, 2014 WL 12775669, at *3. In addition, without being able to rely on Items 105 and 303, plaintiff would face substantial hurdles in proving any actionable misstatement or omission to support its claim under Section 10(b). A successful interlocutory appeal would therefore remove uncertainty regarding the status of plaintiff's claims and speed up the litigation by increasing the likelihood that this case is resolved prior to trial, including either at the class certification or summary judgment stage, or through settlement. *Sterk*, 672 F.3d at 536.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court certify the Order for interlocutory appeal under Section 1292(b).

15

DATED: May 26, 2021     Respectfully submitted,

           RILEY SAFER HOLMES & CANCILA LLP

           */s/ Matthew C. Crowl*
           Matthew C. Crowl, #6201018
           Brian O. Watson, #6304248
           70 W. Madison Street, Suite 2900
           Chicago, Illinois 60602
           Telephone: (312) 471-8700
           Facsimile: (312) 471-8701
           mcrowl@rshc-law.com
           bwatson@rshc-law.com

           DAVIS POLK & WARDWELL LLP
           James P. Rouhandeh
           Edmund Polubinski III
           Mari Byrne
           450 Lexington Avenue
           New York, New York 10017
           Telephone: (212) 450-4000
           Facsimile: (212) 701-5835
           rouhandeh@davispolk.com
           edmund.polubinski@davispolk.com
           mari.byrne@davispolk.com

           *Attorneys for Defendants Exelon*
           *Corporation, Commonwealth Edison*
           *Company, Christopher M. Crane, William A.*
           *Von Hoene, Jr., and Joseph Dominguez*