**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>    v.<br><br>EXELON CORPORATION et al.,<br><br>           Defendants. | Case No. 1:19-cv-08209<br><br>Hon. Virginia M. Kendall |

**REPLY IN SUPPORT OF THE EXELON AND COMED DEFENDANTS'**
**MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 2

THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL ............. 2

    A.      The Order Involves Questions of Law on Which There Are Substantial
           Grounds for Difference of Opinion ......................................................................... 3

    B.      The Questions Are Controlling and Their Certification Would Materially
           Advance the Ultimate Termination of the Litigation ............................................. 6

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois,*
219 F.3d 674 (7th Cir. 2000) ...................................................................................... 2, 3, 5

*In re Allstate Corp. Sec. Litig.,*
966 F.3d 595 (7th Cir. 2020) ...................................................................................... 8, 9

*Anderson v. Abbott Lab'ys,*
140 F. Supp. 2d 894 (N.D. Ill. 2001) ........................................................................ 4

*Carvelli v. Ocwen Fin. Corp.,*
934 F.3d 1307 (11th Cir. 2019) ................................................................................. 4

*Costello v. BeavEx, Inc.,*
2014 WL 12775669 (N.D. Ill. Dec. 1, 2014) ............................................................ 3, 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
986 F. Supp. 2d 524 (S.D.N.Y. 2014) ........................................................................ 6

*FDIC v. Mahajan,*
2013 WL 3771419 (N.D. Ill. July 16, 2013) ............................................................. 6

*In re Finisar Corp. Sec. Litig.,*
2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ............................................................. 8

*Gallagher v. Abbott Lab'ys,*
269 F.3d 806 (7th Cir. 2001) ...................................................................................... 4

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.,*
--- S. Ct. ----, 2021 WL 2519035 (June 21, 2021) ................................................... 8, 9

*IBEW Loc. 98 Pension Fund v. Best Buy Co.,*
818 F.3d 775 (8th Cir. 2016) ...................................................................................... 8

*In re NVIDIA Corp. Sec. Litig.,*
768 F.3d 1046 (9th Cir. 2014) .................................................................................... 3

*Oran v. Stafford,*
226 F.3d 275 (3d Cir. 2000) ....................................................................................... 3, 4

*Shah v. Zimmer Biomet Holdings, Inc.,*
2019 WL 762510 (N.D. Ind. Feb. 20, 2019) .............................................................. 4, 7

*In re Sofamor Danek Grp., Inc.*
123 F.3d 394 (6th Cir. 1997) ...................................................................................... 3

*Sterk v. Redbox Automated Retail, LLC,*
   672 F.3d 535 (7th Cir. 2012) ........................................................................ 2, 7, 10

*Stratte-McClure v. Morgan Stanley,*
   776 F.3d 94 (2d Cir. 2015) ................................................................................. 3

*In re Text Messaging Antitrust Litig.,*
   630 F.3d 622 (7th Cir. 2010) ...................................................................... 1, 5, 6

*Twin Master Fund, Ltd. v. Akorn, Inc.,*
   2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ......................................................... 3

*United States v. Kmart Corp.,*
   2015 WL 11181734 (S.D. Ill. Jan. 12, 2015) ..................................................... 3

*Washtenaw Cty. Emps. Ret. Sys. v. Walgreen Co.,*
   2016 WL 5720375 (N.D. Ill. Sept. 30, 2016) .................................................... 3

### STATUTES & RULES

28 U.S.C. § 1292 ...................................................................................... passim

iii

**PRELIMINARY STATEMENT**

The questions raised in defendants' motion present textbook examples of issues appropriate for interlocutory appeal.  In contending otherwise, plaintiff's opposition ignores or misapplies this Court's and the Seventh Circuit's rulings under Section 1292(b).

There are substantial grounds for a difference of opinion as to both questions.  On the first question—whether alleged violations of Items 105 and 303 can give rise to claims under Section 10(b)—plaintiff concedes that there is a clear circuit split, that the Seventh Circuit has yet to weigh in, and that courts within this district have reached different conclusions.  As this Court has explained more than once, this renders the question contestable under Seventh Circuit precedent.  Plaintiff attempts to avoid the relevant standard, instead focusing its opposition on a single Indiana district court opinion that declined to certify the issue.  But that decision failed to apply the Seventh Circuit standard, instead concluding that the question was not contestable because that court believed the Second Circuit's reasoning on the question was more persuasive than then-Judge Alito's opinion for the Third Circuit and the decisive majority of circuits that have followed it.  A single district court's belief that one side of a circuit split is more persuasive than the other is irrelevant to whether the issue is contestable.

On the second question—whether Items 105 and 303 require disclosure of any and all regulatory noncompliance—plaintiff does not even try to argue that the issue is not contestable.  Rather, the opposition contends that certification is not appropriate because the question is not a "question of law" and would require "the application of facts to law."  (Dkt. 124 ("Opp.") at 5.)  Plaintiff is wrong on both counts, misconstruing the question and misapplying Seventh Circuit precedent.  Contrary to plaintiff's assertion, the second question is purely legal; the Seventh Circuit need not "study the record" to determine whether Items 105 and 303 require a company to disclose any and all regulatory noncompliance.  *In re Text Messaging Antitrust Litig.*, 630

1

F.3d 622, 626 (7th Cir. 2010). And even if the question did require the application of law to facts, the Seventh Circuit has made clear that "the application of a legal standard *is* a controlling question of law within the meaning of section 1292(b)." *Id.* (emphasis added).

Next, plaintiff cannot refute that resolution of either question will affect the further course of the litigation in two ways and, thus, materially advance its ultimate termination. Plaintiff does not dispute that, if defendants prevail on either issue, plaintiff will be categorically unable to rely on the *Affiliated Ute* presumption of reliance at class certification—an issue they thought important enough to plead in the complaint. Nor does plaintiff dispute that, if the Seventh Circuit rules in defendants' favor, plaintiff could no longer prevail on a pure omission theory. Instead, to survive summary judgment and prevail at trial, it would need to meet the steeper burden of proving that specific *affirmative* statements were misleading. That would fundamentally change the nature of the case. Plaintiff argues that resolution of the questions would not advance the litigation because it would not change the scope of discovery or eliminate the case entirely. But that is not the standard. Rather, the Seventh Circuit has made clear that interlocutory appeal is appropriate where it would remove "uncertainty about the status of" a claim that otherwise could "delay settlement" or "further protract the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). An appeal here clearly meets this standard.

<u>**ARGUMENT**</u>

**THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL**

Because defendants have met each of the four requirements under Section 1292(b), the Court should certify the Order for interlocutory appeal. *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000) (stating that it is "the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met").

2

A. **The Order Involves Questions of Law on Which There Are Substantial Grounds for Difference of Opinion**

Both of the questions presented in defendants' motion for interlocutory appeal present questions of law on which there are "substantial ground[s] for difference of opinion." 28 U.S.C. § 1292(b). That is, the questions are "contestable." *Ahrenholz*, 219 F.3d at 675.

***Question 1: Whether an alleged violation of Items 105 or 303 can give rise to a Section 10(b) claim.***

In its opposition, plaintiff all but concedes that this question is contestable. Plaintiff acknowledges (Opp. 3) that there is a circuit split on this question. *Compare Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015), *with In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014); *Oran v. Stafford*, 226 F.3d 275, 287 (3d Cir. 2000) (Alito, J.); *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 403 (6th Cir. 1997). Plaintiff also does not dispute that the Seventh Circuit has yet to weigh in.[1] (*See* Dkt. 100 ("Order") at 16 ("The Seventh Circuit has yet to rule on the issue.").) And plaintiff does not dispute that courts within this district have reached decisions on both sides of the split. *Compare*, *e.g.*, *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222 (N.D. Ill. Feb. 5, 2020), *with Washtenaw Cty. Emps. Ret. Sys. v. Walgreen Co.*, 2016 WL 5720375, at *14 (N.D. Ill. Sept. 30, 2016) ("Within this district . . . it has been recognized that S-K 303(a) does not give rise to a private right of action under Rule 10b."). Because, as this Court has explained, "the circuits are split on the issue" and "the Seventh Circuit has never directly addressed" it, the question is contestable. *Costello v. BeavEx, Inc.*, 2014 WL 12775669, at *2 (N.D. Ill. Dec. 1, 2014) (Kendall, J.); *see United States v. Kmart Corp.*, 2015 WL 11181734, at *3 (S.D. Ill. Jan. 12, 2015) (a question is contestable where "there is an intra-circuit and circuit split . . . [that] has yet to be presented to the Seventh Circuit").

---

[1] Indeed, in their opposition to defendants' motions to dismiss, plaintiff conceded that "the Seventh Circuit has not decided the issue." (Dkt. 85 at 9.)

Plaintiff instead rests its assertion that the question is not contestable on a single district court decision from outside this district, *Shah v. Zimmer Biomet Holdings, Inc.*, 2019 WL 762510 (N.D. Ind. Feb. 20, 2019). But *Shah* did not apply the correct standard, concluding that despite the presence of a circuit split unanswered by the Seventh Circuit, the question was not contestable because that court believed that the Second Circuit's position was "more persuasive" than the Ninth Circuit's (which had followed then-Judge Alito's decision in *Oran*) and was likely to be adopted by the Seventh Circuit. *Id.* at *6. But a single district court's belief that one side of a circuit split is more persuasive than the other does not mean that a question is not contestable. To the contrary, it is in fact further evidence that there is a "substantial ground for difference of opinion" on the question. 28 U.S.C. § 1292(b).[2] Finally, *Shah* predated the Eleventh Circuit's decision in *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1331 (11th Cir. 2019), which followed the Third, Sixth, and Ninth Circuits—making the circuit split even more lopsided. Plaintiff cannot credibly assert that this question is not contestable simply because one district court has found that the Second Circuit's approach is more persuasive, while multiple courts of appeals and courts within this district disagree.

---

[2] *Shah* concluded that the Seventh Circuit "has already signaled agreement with what has become the Second Circuit's approach" in *Gallagher v. Abbott Labs.*, 269 F.3d 806, 810 (7th Cir. 2001). *Shah*, 2019 WL 762510, at *5. But *Gallagher* merely assumed that Item 303 applied while *granting* the defendant's motion to dismiss for other reasons. Assuming a proposition for the sake of argument is far from deciding it. Moreover, the district court decision that *Gallagher* affirmed held that Item 303 could *not* form the basis of a Section 10(b) violation. *See Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 909 (N.D. Ill. 2001) ("[T]he case law is clear that Item 303(a) does not give rise to private action under Rule 10b."). If the Seventh Circuit believed that the district court was incorrect on this point, it had ample opportunity to say so, and it did not.

4

***Question 2: Whether Items 105 and 303 impose an affirmative duty to disclose any and all regulatory noncompliance, even during the course of an open government investigation.***

Unlike the first question, plaintiff does not dispute that the second question is contestable. Nor could it. As set forth in defendants' motion, several courts—both courts of appeals and district courts—have held that Items 105 and 303 do not impose a duty to disclose regulatory noncompliance. (Dkt. 115 ("Mot.") at 6-9.) Plaintiff does not address this case law at all.

Instead, plaintiff argues that the second question does not satisfy Section 1292(b) because it is not a "question of law." (Opp. 5.) But in doing so plaintiff misapplies Seventh Circuit law. As plaintiff acknowledges, a question is one "of law" where it "has reference to a question of the meaning of a statutory or constitutional provision, *regulation*, or common law doctrine." *Ahrenholz*, 219 F.3d at 676 (emphasis added). That is exactly what the second question asks: Does the language of Items 105 and 303—each, a regulation—"impose [on a company] a duty to disclose any regulatory noncompliance in its SEC Forms"? (Order at 16.) This question does not require "the application of facts to law." (Opp. 5.) Nor would the Seventh Circuit need to "study the record" to answer it. *Ahrenholz*, 219 F.3d at 677. Rather, because this would be an appeal from the denial of a motion under Rule 12(b)(6), the well-pleaded facts alleged in the complaint would be accepted as true for purposes of the appeal. As the Seventh Circuit has made clear, that presents a legal question appropriate for interlocutory appeal. *In re Text Messaging Antitrust Litig.*, 630 F.3d at 625 (holding that defendant raised a question of law where it asked the court to "apply a legal standard . . . to a set of factual allegations taken as true for purposes of the appeal").

In any event, plaintiff is incorrect that a question of law can never require the application of law to fact. Plaintiff's primary support for this proposition is a single district court decision

from another circuit. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524 (S.D.N.Y. 2013). But the Seventh Circuit has recognized the opposite: that "decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." *In re Text Messaging Antitrust Litig.*, 630 F.3d at 626. Thus, even if plaintiff were correct that the second question requires the application of law to fact, the question would still present a question of law appropriate for interlocutory appeal.

### B. The Questions Are Controlling and Their Certification Would Materially Advance the Ultimate Termination of the Litigation

Both questions presented by the motion are also "controlling" and will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see* Mot. 9-15.

In its opposition, plaintiff does not dispute that the first question raised by defendants' motion is controlling. Indeed, plaintiff makes no argument on this point at all. For the second question, plaintiff states only that the issue "cannot be a controlling question of law" because "it is not a question of law." (Opp. 5 n.3.) But as explained above (*see* Section A), the second question is a question of law; this argument therefore fails.

By failing to dispute that both questions are controlling—and therefore, through silence, conceding that the questions satisfy this element of Section 1292(b)—plaintiff also does not dispute that resolving either question for defendants would be "quite likely to affect the further course of litigation." *FDIC v. Mahajan*, 2013 WL 3771419, at *3 (N.D. Ill. July 16, 2013) (Kendall, J.). That is not surprising, given the impact that a decision in defendants' favor would have on plaintiff's ability to meet its burden on class certification, at summary judgment, or at trial.

Nevertheless, plaintiff contends that certification should be denied because an appeal would not change the scope of discovery or result in a complete dismissal. But that disregards

6

the standard, as applied by the Court of Appeals. The Seventh Circuit has made clear that Section 1292(b) does not require that resolution of an interlocutory appeal end the litigation "then and there." *Sterk*, 672 F.3d at 536. Nor has the Seventh Circuit held that it must have an impact on discovery.[3] Rather, "all that section 1292(b) requires . . . is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Id.* (emphasis in original); *cf. Costello*, 2014 WL 12775669, at *2 (explaining that the last element of Section 1292(b) is met where interlocutory appeal "has the *potential* to speed up the litigation" (emphasis added)). There is no question that an appeal would do so here.

### *Resolving the Questions in Defendants' Favor Would Impact Plaintiff's Entitlement to a Presumption of Reliance at Class Certification*

Plaintiff concedes that a favorable interlocutory ruling for defendants on either of the questions raised in defendants' motion will preclude plaintiff from relying on the *Affiliated Ute* presumption of reliance at class certification. For that reason alone, as explained in the motion, resolution of these questions "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also* Mot. 9-14.

Plaintiff does not dispute that it plans to rely on *Affiliated Ute* if it is available, but instead tries to downplay the impact of eliminating *Affiliated Ute* by claiming that it will prevail on class certification under the more onerous *Basic* presumption, which plaintiff contends—entirely generically and without reference to the allegations here—"routinely leads to certification." (Opp. 8 n.4.) Apart from ignoring its own complaint, which alleged the *Affiliated Ute* presumption (Compl. ¶ 235), plaintiff's generalized observation about the frequency with which

---

[3] Plaintiff again relies on *Shah* to support its assertion that resolution of the questions here will not materially advance the litigation because it will not narrow the scope of discovery. (Opp. 9.) Yet, plaintiff fails to identify a single case in this district mandating such a requirement. And, indeed, *Shah* cites nothing to support this conclusion. 2019 WL 762510, at *6-7.

7

it believes classes are certified in securities litigations as a general matter says nothing about the specific circumstances here. Plaintiff does not and cannot dispute that the Seventh Circuit has made clear that defendants *can* rebut the *Basic* presumption by establishing a lack of price impact at the class certification stage. (Mot. 12 (citing *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 605 (7th Cir. 2020)).) And, of course, courts do deny class certification, even in cases where plaintiffs rely on *Basic*. *See, e.g.*, *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 783 (8th Cir. 2016) (reversing class certification where defendant had provided evidence sufficient to rebut *Basic* presumption); *In re Finisar Corp. Sec. Litig.*, 2017 WL 6026244, at *9 (N.D. Cal. Dec. 5, 2017) (denying class certification where defendant rebutted *Basic* presumption by demonstrating absence of price impact).

Indeed, just yesterday, the Supreme Court issued its decision in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, --- S. Ct. ----, 2021 WL 2519035 (June 21, 2021), which highlights the difficulties that plaintiff will face in obtaining class certification here. In *Goldman*, the Supreme Court vacated the Second Circuit's decision affirming the certification of a class. The Supreme Court reaffirmed that "defendants may rebut the *Basic* presumption at class certification by showing that an alleged misrepresentation did not actually affect the market price of the stock." *Id.* at *3 (internal quotation marks omitted). And it concluded that "the generic nature of an alleged misrepresentation"—such as those alleged by plaintiff here (*see* Mot. 12-13)—"often will be important evidence of price impact because, as a rule of thumb, a more-general statement will affect a security's price less than a more-specific statement on the same question." *Goldman*, 2021 WL 2519035, at *5 (internal quotation marks omitted). Indeed, the Supreme Court explained that any inference of price impact "starts to break down when there

is a mismatch between the contents of the misrepresentation and the corrective disclosure"—just as there is here.  *Id.* at *6.

Plaintiff disregards all of the reasons why application of the *Basic* presumption in this case would be particularly tenuous under the Seventh Circuit's analysis in *Allstate* and now the Supreme Court's decision in *Goldman*.  Plaintiff will face unique and significant barriers to establishing its entitlement to the *Basic* presumption, given the obstacles it will face in demonstrating price impact. (Mot. 12-13.)  As detailed in the motion, the stock price declines that occurred after the alleged corrective disclosures were modest, raising serious questions as to whether some or all were statistically significant.  (*Id.* at 12.)  Further, given the generic statements at issue—*e.g.*, that the companies "operate[] in a market and regulatory environment that poses significant risks" and there could be "further risks and uncertainties that are not presently known" (Dkt. 78-1 at 31)—plaintiff will face unusually steep hurdles in demonstrating that the statements had any actual impact on the stock price for all of the reasons addressed in *Goldman* (Mot. 12).  Given the challenges plaintiff faces in establishing its ability to rely on the *Basic* presumption, a decision that would preclude plaintiff from relying on *Affiliated Ute* may prevent class certification and not only advance the litigation, but be dispositive.  (*Id.* at 12-13.)

### *Resolving the Questions in Defendants' Favor Would Impact Plaintiff's Ability to Prove an Actionable Misstatement*

In addition to and independent of the impact of an appeal on class certification, a favorable resolution for defendants on appeal would also fundamentally change the nature of the case and the burden plaintiff would face.  There is no dispute that, if either of the questions raised are resolved in defendants' favor, it would no longer be able to prevail on a pure omissions theory—*i.e.*, by simply proving that some alleged fact that constituted a known trend or uncertainty had not been disclosed.  (Mot. 13-14.)  Instead, plaintiff would have to prove that

9

defendants made *actual* statements that were false or misleading. (*Id.*) Plaintiff effectively concedes as much, but still asserts that interlocutory appeal is not warranted because this would not eliminate the case entirely or narrow discovery. (*See, e.g.*, Opp. 6, 8.) But that is not required. Rather, the Seventh Circuit has made clear that it is enough that the appeal could result in the elimination of a "ground for relief." *Sterk*, 672 F.3d at 536.

Plaintiff seeks to avoid this conclusion by essentially ignoring the Seventh Circuit's decision in *Sterk*, which it relegates to a footnote at the end of its brief. But, on this point, *Sterk* is indistinguishable from this case. As detailed in the motion, *Sterk* determined that even where plaintiffs had "pleaded another ground for relief" that was not subject to defendant's motion, an immediate appeal could still materially advance the ultimate termination of the litigation, especially where uncertainty about the status of the claim "may delay settlement" and "further protract the litigation." (Mot. 14-15 (quoting *Sterk*, 672 F.3d at 536).) The same is true here—a successful interlocutory appeal would materially advance the litigation by streamlining the issues and increasing the likelihood that this case is resolved prior to trial, including either at the class certification or summary judgment stage, or through settlement.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court certify the Order for interlocutory appeal under Section 1292(b).

DATED: June 22, 2021

Respectfully submitted,

RILEY SAFER HOLMES & CANCILA LLP

*/s/ Matthew C. Crowl*
Matthew C. Crowl, #6201018
Brian O. Watson, #6304248
Amy C. Andrews #6226692
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: (312) 471-8700
Facsimile: (312) 471-8701
mcrowl@rshc-law.com
bwatson@rshc-law.com

DAVIS POLK & WARDWELL LLP
James P. Rouhandeh
Edmund Polubinski III
Mari Byrne
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5835
rouhandeh@davispolk.com
edmund.polubinski@davispolk.com
mari.byrne@davispolk.com

*Attorneys for Defendants Exelon Corporation,
Commonwealth Edison Company, Christopher
M. Crane, William A. Von Hoene, Jr., and
Joseph Dominguez*