UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.: 1:19-cv-08209 |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) | Honorable Virginia M. Kendall |
| EXELON CORPORATION, et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF THIRD PARTY JOELE FRANK DOCUMENTS BEING WITHHELD OR REDACTED BY DEFENDANT EXELON

**[REDACTED]**

4872-6529-5958.v2

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ..................................................................................................3

    A. Third Party Joele Frank Provided Public and Investor Relations Services to Exelon ...............................................................................................3

    B. Exelon Is Preventing Joele Frank from Disclosing 901 Relevant Documents ...................................................................................................5

III. ARGUMENT .......................................................................................................5

    A. Legal Standards..................................................................................................5

    B. Exelon's Privilege and Work Product Arguments Lack Merit ...............................6

        1. Exelon Waived Privilege over Any Information Within the Documents by Disclosing It to Third Party Joele Frank ............................6

        2. Joele Frank Was Not Necessary for Legal Advice .....................................9

        3. The Documents Were Created for Public Relations Business Reasons, Not Primarily in Anticipation of Litigation................................13

IV. CONCLUSION...................................................................................................15

4872-6529-5958.v2

**TABLE OF AUTHORITIES**

**Page**

CASES

*Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*,
2021 WL 4125084 (N.D. Ill. Sept. 9, 2021) ..............................................................11

*Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*,
2021 WL 4283464 (N.D. Ill. Sept. 21, 2021) ..................................................... *passim*

*Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*,
2022 WL 279277 (N.D. Ill. Jan. 31, 2022)...............................................2, 5, 6, 12

*BSP Software, LLC v. Motio, Inc.*,
2013 WL 3456870 (N.D. Ill. July 9, 2013)....................................................9, 10

*Calvin Klein Trademark Tr. v. Wachner*,
198 F.R.D. 53 (S.D.N.Y. 2000) ...............................................................10, 11, 12

*Cent. States Se. & Sw. Areas Pension Fund v. Temp Excel Props., LLC*,
2010 WL 4735828 (N.D. Ill. Nov. 15, 2010) ...........................................................2, 6

*Doe v. Soc'y of Missionaries of Sacred Heart*,
2014 WL 1715376 (N.D. Ill. May 1, 2014)...........................................................14

*Heriot v. Byrne*,
257 F.R.D. 645 (N.D. Ill. 2009).......................................................................12

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
2011 WL 1136440 (W.D. Mo. Mar. 25, 2011).......................................................10

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
2020 WL 7866172 (N.D. Ill. Mar. 4, 2020)............................................................9

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
335 F.R.D. 510 (N.D. Ill. 2020)..................................................................... *passim*

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
2012 WL 5428648 (N.D. Ill. Nov. 7, 2012) ...........................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
332 F.R.D. 131 (S.D.N.Y. 2019),
*aff'd*, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019) ..............................................10

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2021 WL 3140050 (D.N.J. July 22, 2021)......................................................6, 8, 13

4872-6529-5958.v2

**Page**

*LiveVantage Corp. v. Domingo*,
   2015 WL 5714426 (D. Utah Sept. 29, 2015)................................................................9

*Lynk Labs, Inc. v. Juno Lighting LLC*,
   2016 WL 6135711 (N.D. Ill. Oct. 21, 2016)................................................................15

*Nestler v. Bishop of Charleston*,
   2021 WL 5711279 (D.S.C. Dec. 2, 2021) ...................................................................9

*P&G v. Ultreo, Inc.*,
   574 F. Supp. 2d 334 (S.D.N.Y. 2008)........................................................................14

*Rao v. Bd. of Trs. of the Univ. of Ill.*,
   2016 WL 6124436 (N.D. Ill. Oct. 20, 2016)...............................................................12

*Stafford Trading, Inc. v. Lovely*,
   2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ................................................................12

*Thermapure, Inc. v. Giertsen Co. of Ill.*,
   2013 WL 1222330 (N.D. Ill. Mar. 25, 2013)................................................................5

*Universal Standard Inc. v. Target Corp.*,
   331 F.R.D. 80 (S.D.N.Y. 2019) ................................................................................14

*Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*,
   334 F.R.D. 149 (N.D. Ill. 2020)..............................................................5, 6, 11, 13

*Zimmer, Inc. v. Beamalloy Reconstructive Med. Prods., LLC*,
   2019 WL 1318094 (N.D. Ind. Mar. 22, 2019)............................................................14

4872-6529-5958.v2

## I.      INTRODUCTION

This is a securities fraud class action brought against Exelon Corporation ("Exelon"), Commonwealth Edison Company ("ComEd," and together with Exelon, the "Company"), and four former Company executives (collectively, "Defendants").  Lead Plaintiff ("Plaintiff") alleges that Defendants made false and misleading statements which concealed, *inter alia*, that the Company had been bribing Michael J. Madigan, the former Speaker of the Illinois House of Representatives, to secure favorable legislation for eight years.  The bribery scheme led to a criminal investigation, and, after hiring Jenner & Block LLP ("Jenner") for legal representation, the Company entered into a Deferred Prosecution Agreement ("DPA") with the U.S. government and paid a $200 million criminal penalty.  *See* ECF 78-10.  As the truth about the existence of the bribery scheme began to emerge through a series of public disclosures, Exelon's stock price fell, causing hundreds of millions in investor losses, which this action seeks to recover.  This Court denied Defendants' motions to dismiss Plaintiff's claims (ECF 100), permitting the case to proceed to discovery.

This motion arises because Exelon has directed Joele Frank, Wilkinson Brimmer Katcher ("JF" or "Joele Frank"), a third party public relations firm, to withhold or redact 901 documents subpoenaed by Plaintiff.  The documents include ███████████████████████████████ ███████████████████████████████████████████.  There is no objection, and therefore no dispute, as to the relevance of the documents, and JF is not asserting any privilege or other objections to production.  Rather, Exelon has instructed JF not to produce the documents based on Exelon's claim that all 901 documents contain information that is privileged and that 453 of the documents are also subject to work product protection.  However, Exelon has failed to meet its burden to shield the documents from discovery, and they should be produced for two reasons.

***First***, Exelon waived any privilege by providing the information to third party JF.  It is "black letter law that 'a party waives the attorney-client privilege when the otherwise privileged

- 1 -

documents are disclosed to a third party.'" *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020) ("*DMS III*") (compelling production of purportedly privileged documents shared with third party consultant).[1]  To maintain privilege in such circumstances, "the third-party's presence must be necessary to the obtaining or giving of legal advice." *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, 2022 WL 279277, at *8 (N.D. Ill. Jan. 31, 2022) ("*Breuder III*") (Wood, J.) (overruling objections to Magistrate Judge's order compelling production of documents shared with communications consultant).  Here, Exelon ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████.  Thus, consistent with "black letter law" and the overwhelming authority compelling production of documents shared with such PR firms, any purported privilege has been waived.  *See Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, 2021 WL 4283464, at *6, *9 (N.D. Ill. Sept. 21, 2021) ("*Breuder II*") (compelling production of communications with PR firms that "perform[ed] general public relations work . . . during the [defendant's] period of admitted turmoil, legal and otherwise"); §III.B.1 (citing cases).

**Second**, the 453 documents were created for PR, not litigation, purposes and are therefore not subject to work product protection.  For Exelon to carry its burden of establishing work product, "it must be shown that 'the primary motivating purpose' behind the creation of a document 'must be to aid in possible future litigation.'" *Cent. States Se. & Sw. Areas Pension Fund v. Temp Excel Props., LLC*, 2010 WL 4735828, at *1 (N.D. Ill. Nov. 15, 2010) (Kendall, J.) (granting motion to compel

---

[1] Unless otherwise indicated herein, citations are omitted and emphasis is added.  Citations to "Ex. __" refer to exhibits attached to the accompanying Index of Exhibits.

- 2 -

4872-6529-5958.v2

certain documents). However, the JF documents were created ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

Thus, all of the JF documents should be produced.

## II. BACKGROUND

### A. Third Party Joele Frank Provided Public and Investor Relations Services to Exelon

███████████████████████████████████████████████████ *See* Ex. 1

at -3187. ██████████████████████████████████████████████████

███████████ Ex. 2 at 6. ████████████████████████████████████

*Id.* ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████. Ex. 3 at -3168, -3170, -3171. ████████████████

████████████████████████████████████████████████████████████

████████ Ex. 4. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████ Ex. 5. ██████████████████████

████████████████████████████████████████████████████████████

██████████████. That is clear based on several facts.

First, JF ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ days before the Company finalized the

DPA on July 16, 2020, ending the government investigation. Ex. 6 at -3944 ████████████████

- 3 -

4872-6529-5958.v2

██████████████████████████████████████████ ). In addition, ████████

███████████████████████████████████████████████████

████████████████████████████████ *See* Ex. 7 at -4047-4048; Ex. 8 at -4424-

4424_0001 █████████████████████ *see also* Ex. 6 at -3945. ██████

███████████████████████████████████████████████████

█████████████████ Ex. 9 at -5118.

Second, the JF ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████ *See* Ex. 10 at -2090; Ex. 4 at -0003. ██████

███████████████████████████████████████████████████

██████████████████████ *See* Ex. 11 (JF website biographies highlighting expertise in

"investor relations," "IR and financial communications," and "corporate communications"). For

example, ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ Ex. 12 at -2655. █████████████████████

███████████████████████████████████████████████████

*Id.* at -2654.[2] ████████████████████████

---

[2] *See also, e.g.,* Ex. 13 ████████████████████████████████████ Ex. 14 ████████████████████████████████████████████████████

**B.** **Exelon Is Preventing Joele Frank from Disclosing 901 Relevant Documents**

Plaintiff issued a subpoena to JF, and JF produced documents in response. Exelon initially required JF to withhold or redact approximately 1,400 documents based on Exelon's assertions of attorney-client privilege and work product protection. Plaintiff argued any privilege was waived by sharing documents or information with JF. Ex. 15 at 2-8. Exelon de-designated nearly 500 documents, but continued to require JF to withhold 901 relevant and otherwise discoverable documents. *See id.* at 1; Ex. 16. The parties exhausted the meet-and-confer process, necessitating this motion.

**III.** **ARGUMENT**

**A.** **Legal Standards**

In ruling on discovery matters, "'courts have consistently adopted a liberal interpretation of the discovery rules'" and "'look unfavorably upon significant restrictions placed upon the discovery process.'" *Thermapure, Inc. v. Giertsen Co. of Ill.*, 2013 WL 1222330, at *2 (N.D. Ill. Mar. 25, 2013). "[T]here is no presumption in favor of finding a document to be immune from discovery under either the attorney-client privilege or the work product doctrine," as both privileges "operate in derogation of the search for truth and run counter to the public's right to every person's evidence." *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 154, 156 (N.D. Ill. 2020) (citing cases and noting that "exaggerated and improper claims of attorney-client privilege . . . impermissibly affect discovery"). Moreover, even if information is privileged, it is "black letter law that 'a party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party.'" *DMS III*, 335 F.R.D. at 514. A narrow exception to waiver exists if the third party was "necessary to the obtaining or giving of legal advice." *Breuder III*, 2022 WL 279277, at *8 (citing cases). It is Exelon's burden to both establish a privilege applies

- 5 -

to the information withheld and to show that its disclosure to the third party was necessary to obtaining or giving legal advice (like an interpreter). *Id.*

As to the work product doctrine, it "was designed to protect documents that involved an attorney's litigation strategy." *Temp Excel Props.*, 2010 WL 4735828, at *1. To be work product, "it must be shown that 'the primary motivating purpose' behind the creation of a document 'must be to aid in possible future litigation.'" *Id.* Like with privilege, Exelon bears the burden of establishing that a document is protected work product. *Urb. 8*, 334 F.R.D. at 155.

### B. Exelon's Privilege and Work Product Arguments Lack Merit

Exelon has failed to carry its burden to establish either attorney-client privilege or work product protection over the JF documents, and all the JF documents should be produced.

#### 1. Exelon Waived Privilege over Any Information Within the Documents by Disclosing It to Third Party Joele Frank

Exelon claims that all 901 withheld or redacted documents in the possession of JF are subject to attorney-client privilege. But any privilege has been waived because JF is a third party, and Exelon cannot show that JF was "'necessary to the obtaining or giving of legal advice.'" *DMS III*, 335 F.R.D. at 517 (compelling production of documents shared with consultant and noting that "[w]hile it may not always be easy to preserve the attorney-client privilege, preserving the privilege is not a matter of whether it would be easier not to protect it against waiver").

First,
*See* §II.A. Rather,
*See id.* That

*See*

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *2, *13 (D.N.J. July 22, 2021)

4872-6529-5958.v2

(rejecting privilege claim for documents shared with PR firm retained by outside counsel and noting that how a PR firm could "actually assist [attorneys] in providing legal advice to [the company] remains a mystery").

Second,

*See, e.g.*, Ex. 16 at 19-20, 68-70. However, JF

*See* Exs. 3-4. Thus,

Finally, the documents produced show that

*See* §II.A.

. *See, e.g.*, §II.A. (citing Exs. 12-14); Ex. 17

Ex. 18

Ex. 19 at -0584-0585

- 7 -

4872-6529-5958.v2



   In this District and throughout the country, "[c]ourts have consistently held that this type of general public relations work" provided by JF, "even when related to ongoing litigation, falls outside the scope of the narrowly construed attorney-client privilege." *See, e.g., Breuder II*, 2021 WL 4283464, at \*6-\*7 (citing cases and compelling production of communications with PR consultants, retained by outside counsel, that assisted in conveying information, "legal and otherwise," to the public regarding a DOJ investigation and multiple grand jury subpoenas); *Valeant*, 2021 WL 3140050, at \*2, \*13 (citing cases and compelling production of documents exchanged with a PR firm retained by outside counsel to "'assist [outside] [c]ounsel's representation of [the defendant] in [DOJ] investigations'" where PR firm worked on "addressing reporters' inquiries, counseling on the effect of ongoing investigations, culling damning stories . . . , providing media analysis of those reports, providing advice as to how to address criticism[]," and "'assist[ing] counsel in advising

---

[3] Additional redacted documents ███████████████████████████ *See, e.g.*, Ex. 23 ████████████████████████████████████████████ ████████ Ex. 24 ████████████████████████████████████ Ex. 25 ████████████████████ Ex. 26 ███████████████████ Ex. 27 ████████

4872-6529-5958.v2

Valeant on its public statements and responses to media inquiries during the course of the [DOJ] investigation'").[4]  Thus, any purported privilege over the JF documents has been waived.

### 2. Joele Frank Was Not Necessary for Legal Advice

In disputing waiver, Exelon has made several arguments.  Each lacks merit.

First, Exelon argues ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████  Ex. 15 at 4, 9.  ██████████  "functional equivalent" test has been applied under unique facts where a corporate function is wholly outsourced to an outside firm or person with decision-making authority.  But it has been repeatedly *rejected* in this District.  *See, e.g.*, *BSP Software, LLC v. Motio, Inc.*, 2013 WL 3456870, at *3 (N.D. Ill. July 9, 2013) (holding that "[w]e are doubtful that the Seventh Circuit would endorse this test, which has the potential to expand the privilege dramatically and thus would run contrary to the Seventh Circuit's frequent admonition that the scope of the privilege must be carefully circumscribed"); *DMS III*, 335 F.R.D. at 517 (rejecting test).  Even if the test were applied, ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████  *See Breuder II*, 2021 WL 4283464, at *5 (rejecting test and holding that even if

---

4        *See also Nestler v. Bishop of Charleston*, 2021 WL 5711279, at *2 (D.S.C. Dec. 2, 2021) (compelling production of "'legal advice, strategic plans, and development of defense themes by in house and outside counsel'" that were shared with media consultant in context of high-profile litigation); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2020 WL 7866172, at *3-*4 (N.D. Ill. Mar. 4, 2020) ("*DMS I*") (holding email from in-house lawyer advising employees "that the legal department [wa]s conducting an investigation and reporting how the investigation [wa]s proceeding" was not privileged because "[t]he inclusion of the third-party [communications] consultant waive[d] any claimed privilege"); *LiveVantage Corp. v. Domingo*, 2015 WL 5714426, at *2 (D. Utah Sept. 29, 2015) (finding "[c]ourts have widely rejected claims of attorney-client privilege or work-product protection over communications with public relations firms" and compelling production of documents shared with PR consultant retained by counsel).

4872-6529-5958.v2

applied, PR consultant would not satisfy three-factor test); *BSP*, 2013 WL 3456870, at \*3-\*4 (same as to advisors that provided advice "for business and financial matters," had "no decision making authority," and did not possess unique information).  As noted, ███████████████

███████████████████████████████████████

██████████████████████████████

Second, Exelon claims that ███████████████████████████████

████████████████████████████████████████

████████████████████████████ Ex. 15 at 4.  But

there is no PR privilege, only a legal privilege. *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (finding waiver and holding that "'[n]othing in the policy of the privilege suggests that attorneys, simply by placing [a PR firm] on their payrolls . . . should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam'").[5]  In other words, privilege only attaches if

████████████████████████████████████████

████████████.  *See DMS III*, 335 F.R.D. at 518 (rejecting argument that it would have been "'impractical'" to exclude consultant in attorney-client communications because "communications with the consultant must be essential for the provision of legal advice, not the other way around"); *Breuder II*, 2021 WL 4283464, at \*7 (holding that "the fact that [the PR firms] may have been

---

[5]      *See also, e.g.*, *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2011 WL 1136440, at \*3 (W.D. Mo. Mar. 25, 2011) (holding that advice regarding "public relations [and] dealing with the media . . . is not privileged, even if the advice comes from an attorney"); *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136-37 (S.D.N.Y. 2019) (finding emails with in-house and outside counsel, as well has draft "'talking points,'" not privileged because they "contain[ed] public relations-related communications," "concern[ed] how to respond to a media inquiry," and "relate[d] to 'messaging'"), *aff'd*, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2012 WL 5428648, at \*1 (N.D. Ill. Nov. 7, 2012) (compelling production of "'draft set of key messages for an upcoming investor conference'" because getting "all the potential players on the same page as to how to respond to inquiries at the upcoming investor conference" was "primarily a business purpose").

4872-6529-5958.v2

'inserted into the legal decision making process does nothing to explain' why their involvement was necessary to the [client]'s obtaining legal advice from its counsel"). █████████████

███████████████████████████████████

█████████████████████████████████████e.

See *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502,* 2021 WL 4125084, at *7 (N.D. Ill. Sept. 9, 2021) ("*Breuder I*") ("[A]ny suggestion that [consultant] was necessary to enable counsel to provide legal advice . . . is dispelled by the fact that [consultant] is included on only twenty-four out of hundreds of [defendants'] attorney-client communications.").

Third, Exelon claims that █████████████████████████

██████████████████████████████ Ex. 15 at 4, 9; *see also*

Ex. 16 ██████████████████████████████████

█████████████████ 6 █████████████████████ the standard is "necessary," and courts have repeatedly held that even if a third party is "useful to the attorneys and the [client] during [a] tumultuous time . . . this too is insufficient to avoid a waiver of privilege over communications disclosed to third parties not necessary to facilitate legal advice." *Breuder II,* 2021 WL 4283464, at *8; *Calvin Klein,* 198 F.R.D. at 54-55 (holding that "[t]he possibility that such activity [by PR firm] may also have been helpful to [counsel] in formulating legal strategy is neither here nor there if [the PR firm's] work and advice simply serves to assist counsel in assessing the probable public reaction to various strategic alternatives, as opposed to enabling counsel to

---

6 ████████
█████ *ee, e.g.,* Ex. 16 at 78

████████ Ex. 16 at 79

█████████ ourts have found that baseless claims over even one document "inspires a healthy degree of skepticism toward any other claims the defendants make." *Urb. 8,* 334 F.R.D. at 162.

4872-6529-5958.v2

understand aspects of the client's own communications that could not otherwise be appreciated in the rendering of legal advice").

In support, Exelon relies on *Jenkins v. Bartlett*, which referred to individuals such as a police procedures expert, interpreters, and polygraph examiners that may be necessary to assist in providing legal advice, but that case did not involve or mention PR firms. 487 F.3d 482, 490 (7th Cir. 2007). In *Jenkins*, the Seventh Circuit affirmed that "***ordinarily***, statements made by a client to his attorney in the presence of a third person ***do not fall within the privilege*** . . . because the presence of the third person ***is normally unnecessary*** for the communication between the client and his attorney." *Id.* Here, ██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ *See also Breuder III*, 2022 WL 279277, at \*8 (holding that, in applying *Jenkins*, "courts consistently have held that the third-party's presence must be necessary to the obtaining or giving of legal advice" and finding affidavit that "fail[ed] to explain how [third party's] work as an independent consultant aided its attorneys in rendering legal advice" was insufficient to establish exception to third party waiver, "particularly given that the attorney-client privilege is to be construed narrowly"); *Rao v. Bd. of Trs. of the Univ. of Ill.*, 2016 WL 6124436, at \*4 (N.D. Ill. Oct. 20, 2016) (distinguishing *Jenkins* and holding that "[t]he Court accepts that [the third party] was important to the litigation, but that alone is not enough to preserve the privilege").[7]

---

[7] *See also Calvin Klein*, 198 F.R.D. 54-55 (distinguishing PR firm from accountant that served "'translator'" function). The cases cited by Exelon involving accountants are distinguishable because the lawyers needed to understand accounting to provide legal advice regarding accounting claims. *See Heriot v. Byrne*, 257 F.R.D. 645, 666-67 (N.D. Ill. 2009) (holding that privilege should be restricted to "'where the third party's participation was required to enable the attorney to render legal advice'" and finding that "'attorneys need[ed] to be able to have confidential communications with [accountants] . . . to render adequate legal advice'"); *see also Stafford Trading, Inc. v. Lovely*, 2007 WL 611252, at \*6-\*7 (N.D. Ill. Feb. 22, 2007) (same as to financial advisors in context of complex transactions). Here, ████████████████████████ ██████████████████████████

- 12 -

Thus, Exelon has failed to refute that disclosure to JF resulted in waiver of any purported attorney-client privilege.

### 3. The Documents Were Created for Public Relations Business Reasons, Not Primarily in Anticipation of Litigation

For 453 of the 901 JF documents, Exelon also claims "work product" protection. But "'saying so doesn't make it so,'" and Exelon cannot meet its burden to establish that the documents were created with the "primary motivating purpose" of litigation. *See Urb. 8*, 334 F.R.D. at 156, 159, 161 (compelling production of documents because even if they "may have the incidental effect of being helpful in litigation" that does not satisfy "the work product doctrine").

All available evidence shows



not with the "primary" purpose of forming its litigation strategy.[9] *See Valeant*, 2021 WL 3140050, at *13-*14 (compelling production of communications exchanged among PR firm, company, and lawyers regarding "troublesome articles," "questions posed and answers given as how to address or combat negative media," "communications regarding Valeant's public perception" and "messaging to the public, the media

---

[8]

[9] *See, e.g.*, Ex. 17 at -8439 (

Ex. 20

see also supra n.3 (citing Exs. 23-26,

- 13 -

4872-6529-5958.v2

and investors" because "[t]he purpose of the work product doctrine is to provide a zone of privacy for strategizing on the conduct of the litigation itself, not about the effects of the litigation on the client's customers, the media or the public generally"); *Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *4 (N.D. Ill. May 1, 2014) (compelling production of purported work product documents because "the communications deal only with the [PR] firm's strategy to 'generate media coverage'").

In response, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ n. *See* Ex. 16. Instead, ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ Ex. 15 at 5 (emphasis in original). But not every document created by the Company and its service providers after the receipt of a government subpoena or the "specter" of litigation arises is protected work product. *See, e.g.*, *P&G v. Ultreo, Inc.*, 574 F. Supp. 2d 334, 338 (S.D.N.Y. 2008) (holding that "the looming specter of litigation, does not, by itself, clothe [documents] with protection" and rejecting work product claims for studies that were "conducted at the request of counsel" and "undertaken in consultation with outside counsel" because they also served a business purpose); *Zimmer, Inc. v. Beamalloy Reconstructive Med. Prods., LLC*, 2019 WL 1318094, at *9-*10 (N.D. Ind. Mar. 22, 2019) (compelling production of "work product" documents where company claimed they were created "'to help [the attorney] develop [the company's] legal strategy'" or contained "'[company] initiatives to counteract [the opponent's] legal strategy,'" because "[t]here is no evidence . . . that [the documents] informed [the company's] legal strategy").[10] Here, the 453 documents were not created primarily for litigation, and are not protected work product.

---

[10] As a large corporation, Exelon is perpetually under the specter of litigation and such a broad holding would render all of its documents protected work product at all times. *Cf. Universal Standard Inc. v. Target*

- 14 -

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion, and compel production of all documents, in un-redacted form, listed on the JF privilege log.

DATED:  March 23, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN GILLIAM (IL Bar # 6332723)


                          /s/ Frank A. Richter
                        FRANK A. RICHTER

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bcochran@rgrdlaw.com

Lead Counsel for Lead Plaintiff

---

*Corp.*, 331 F.R.D. 80, 93 (S.D.N.Y. 2019) (holding documents regarding PR strategy were not work product, and rejecting defendants' "conclusory recital of the governing test" because "[i]t does nothing to show that the test applies"); *Lynk Labs, Inc. v. Juno Lighting LLC*, 2016 WL 6135711, at \*2 (N.D. Ill. Oct. 21, 2016) (rejecting work product claim because defendants only asserted the document "'was prepared in *view* of the current litigation'" rather than with "the primary motivating purpose" of "aid[ing] in this litigation") (emphasis in original).

- 15 -

4872-6529-5958.v2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 23, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Frank A. Richter
FRANK A. RICHTER

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
Email: frichter@rgrdlaw.com

4872-6529-5958.v2

# Mailing Information for a Case 1:19-cv-08209 Flynn v. Exelon Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amy C. Andrews**
  aandrews@rshc-law.com,docketdept@rshc-law.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mari Byrne**
  mari.byrne@davispolk.com,ecf.ct.papers@davispolk.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Charles Crowl**
  mcrowl@rshc-law.com,docketdept@rshc-law.com,ssluch@rshc-law.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com,efilings_cmst@ecf.courtdrive.com,lhoeksema@cohenmilstein.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **David Andrew Gordon**
  dgordon@sidley.com,efilingnotice@sidley.com,david-gordon-4155@ecf.pacerpro.com,jwheeler@Sidley.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Laurie Largent**
  LLargent@rgrdlaw.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com,scott-lassar-4695@ecf.pacerpro.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tsayre@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Louis Carey Ludwig**
  lcludwig@pomlaw.com,kgutierrez@labaton.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Francis P. Mcconville**
  fmcconville@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Edmund Polubinski , III**
  Edmund.polubinski@davispolk.com,ecf.ct.papers@davispolk.com

- **Matthew Alexander Richard**
  mrichard@rgrdlaw.com,evanyi@rgrdlaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James P Rouhandeh**
  rouhandeh@davispolk.com,ecf.ct.papers@davispolk.com

- **Jared Matthew Schneider**
  jared@jaredschneider.com

- **Julia Kathryn Schwartz**
  julia.schwartz@usdoj.gov,alexandra.dumitriu@usdoj.gov

- **Heather Benzmiller Sultanian**
  hsultanian@sidley.com,dvelkovich@sidley.com,efilingnotice@sidley.com,heather-sultanian-3303@ecf.pacerpro.com

- **United States of America**
  julia.schwartz@usdoj.gov

- **Brian O'Connor Watson**
  bwatson@rshc-law.com,docketdept@rshc-law.com

- **Jennifer Martin Wheeler**
  jwheeler@sidley.com,jennifer-4277@ecf.pacerpro.com,efilingnotice@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Jeanne M. Jones
,

Joseph Nigro
,