## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSHUA FLYNN, Individually and on Behalf
of All Others Similarly Situated,

                          Plaintiff,

       vs.

EXELON CORPORATION et al.,

                          Defendants.

Case No.: 1:19-cv-08209

Honorable Virginia M. Kendall

### EXELON'S MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF THIRD PARTY JOELE FRANK DOCUMENTS BEING WITHHELD OR REDACTED BY DEFENDANT EXELON

**REDACTED—PROVISIONALLY FILED UNDER SEAL PURSUANT TO LOCAL RULE 26.2(C) AND THE AGREED CONFIDENTIALITY ORDER (ECF NO. 119)**

# TABLE OF CONTENTS

P<span>AGE</span>

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................3

    A.    Jenner's Retention of Joele Frank to Assist Counsel ...............................................3

    B.    Plaintiff's Subpoena and Subsequent Motion to Compel .......................................5

ARGUMENT ..............................................................................................................................5

I.    The Challenged Documents Are Protected As Privileged ...................................................5

    A.    Under This District's Balanced Approach, Sharing Information with Joele Frank Did Not Effect a Privilege Waiver .................................................................6

    B.    The Challenged Documents Also Remained Privileged Because Joele Frank Served as the Functional Equivalent of an Internal Communications Team ........................................................................................................................8

    C.    Plaintiff's Motion Applies an Unduly Rigid and Formalistic Standard, but Even Under That Standard, the Communications at Issue Remain Privileged ..............................................................................................................10

II.    The Challenged Documents Are Protected Work Product .................................................13

CONCLUSION..........................................................................................................................15

**TABLE OF AUTHORITIES**

_____

C<small>ASES</small>

P<small>AGE(S)</small>

*In re ADT Sec. Servs., Inc. v. Swenson*,
   2010 WL 2954545 (D. Minn. July 26, 2010) ........................................................ 13

*Anaya v. Birck*,
   2022 WL 1523640 (N.D. Ill. May 13, 2022) ........................................................ 11

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin.*,
   326 F.R.D. 176 (N.D. Ill. 2018) ................................................................... 2, 6, 8

*In re Bieter Co.*,
   16 F.3d 929 (8th Cir. 1994) ............................................................................ 9

*Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*,
   2021 WL 4125084 (N.D. Ill. Sept. 9, 2021) .................................................. 11, 13

*Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*,
   2021 WL 4283464 (N.D. Ill. Sept. 21, 2021) ......................................... 9, 11, 13

*Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*,
   2022 WL 279277 (N.D. Ill. Jan. 31, 2022) ......................................................... 11

*Caremark, Inc. v. Affiliated Comput. Servs., Inc.*,
   195 F.R.D. 610 (N.D. Ill. 2000) ................................................................ 14, 15

*Cent. States Se. & Sw. Areas Pension Fund v. Temp Excel Props., LLC*,
   2010 WL 4735828 (N.D. Ill. Nov. 15, 2010) ..................................................... 14

*In re Copper Market Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) ..................................................................... 9

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
   2014 WL 1681623 (W.D. Wash. Apr. 28, 2014) .......................................... 12, 13

*Flagstar Bank, FSB v. Freestar Bank, N.A.*,
   2009 WL 2706965 (N.D. Ill. Aug. 25, 2009) .................................................. 2, 10

*Fosbre v. Las Vegas Sands Corp.*,
   2016 WL 183476 (D. Nev. Jan. 14, 2016) ......................................................... 10

*FTC v. GlaxoSmithKline*,
    294 F.3d 141 (D.C. Cir. 2002) ................................................................ 9

*In re Grand Jury Subpoenas Dated Mar. 24, 2003*,
    265 F. Supp. 2d 321 (S.D.N.Y. 2003) ............................................. 12, 13

*Grochocinski v. Mayer Brown Rowe & Maw LLP*,
    251 F.R.D. 316 (N.D. Ill. 2008) ............................................................ 15

*Heriot v. Byrne*,
    257 F.R.D. 645 (N.D. Ill. 2009) ................................................... 6, 11, 12

*Jenkins v. Bartlett*,
    487 F.3d 482 (7th Cir. 2007) ....................................................... 2, 6, 11

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
    237 F.R.D. 176 (N.D. Ill. 2006) ............................................................ 14

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
    244 F.R.D. 412 (N.D. Ill. 2006) ............................................................ 14

*Logan v. Com. Union Ins. Co.*,
    96 F.3d 971 (7th Cir. 1996) .................................................................. 14

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
    600 F.3d 612 (7th Cir. 2010) ............................................................ 3, 14

*Stafford Inc. v. Lovely*,
    2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ....................................... 2, 6, 10

*Stardock Sys, Inc. v. Reiche*,
    2018 WL 6259536 (N.D. Cal. Nov. 30, 2018) ............................... 12, 13, 15

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ............................................................. 14

*United States v. Graf*,
    610 F.3d 1148 (9th Cir. 2010) ............................................................... 9

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ........................................................................ 8, 9

*In re Valeant Pharms. Int'l, Inc. Secs. Litig.*,
    2021 WL 3140050 (D.N.J. July 22, 2021) ............................................ 13

<u>STATUTES & RULES</u>

Fed. R. Civ. P. 26(b)(3) ................................................................................................. 13

## PRELIMINARY STATEMENT

Plaintiff's motion relies on an incomplete description of the facts and an overly restrictive reading of the case law in this District.[1]  Under all of the relevant case law, applied to the *actual* circumstances surrounding the specific Joele Frank documents at issue, this limited collection of communications remains privileged.  Plaintiff's motion should be denied.

In May 2019, Exelon received a grand jury subpoena from the U.S. Attorney's Office for the Northern District of Illinois (the "USAO").  The Company immediately retained Jenner & Block ("Jenner") to represent it in responding to the USAO's subpoena and in the related investigation.  Following prudent investigation practice so as not to interfere in any way with the USAO's investigation, Exelon walled off most employees from the investigation, including most of the Company's internal communications team.  At that time, Joele Frank, a firm specializing in "litigation support," was engaged to provide critical assistance to counsel in navigating the Company's legal disclosure obligations—specifically, to assist counsel in ensuring that the Company appropriately disclosed accurate information about the investigation, internally and externally, consistent with the Company's legal strategy and its cooperation with the USAO.

As set forth in the accompanying declaration from Exelon's in-house counsel, Joele Frank—effectively acting as Exelon's internal communications team—worked intimately with Company counsel to prepare communications in connection with the grand jury subpoenas, the resulting internal investigation and DPA, and related matters.  Counsel and Joele Frank worked closely together on what could and could not be disclosed, as well as on how Exelon could disclose information in a manner consistent with the Company's legal strategy.  Given the privileged nature

---

[1] Capitalized terms have the same meaning as in the Memorandum in Support of Lead Plaintiff's Motion to Compel Production of Third Party Joele Frank Documents Being Withheld or Redacted by Defendant Exelon (Dkt. 167, the "motion" or "Mot."). "Pl. Ex. __" refers to exhibits to Plaintiff's motion (Dkt. 167-1, *et seq.*). "Ex. __" refers to the exhibits to this Opposition.

of the investigation, which was conducted by counsel, Joele Frank necessarily required and received access to certain limited privileged information.

Exelon does not claim privilege or work product over most documents produced by Joele Frank. Nor does Exelon claim that public relations advice is privileged. Instead, Exelon has asserted privilege or work product protection over only the limited subset of documents that reflect Joele Frank's critical role in *assisting counsel* to provide *legal advice*—a total of 901 documents (541 withheld, 360 produced with redactions), compared with the more than 5,000 that Joele Frank produced without objection from Exelon. Plaintiff's motion challenges that subset, contending that Exelon's privilege as to those documents was waived because they included Joele Frank.

As the Seventh Circuit has held, a third party's presence does not waive privilege if the third party "is present *to assist* the attorney in rendering legal services." *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007) (emphasis added). Courts in this District have repeatedly rejected "artificial" and "restrictive" approaches to waiver and have instead recognized the need for attorneys to communicate with third parties "to render adequate legal advice" in the modern marketplace. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin.*, 326 F.R.D. 176, 182 (N.D. Ill. 2018) (quoting *Stafford Inc. v. Lovely*, 2007 WL 611252, at *6 (N.D. Ill. Feb. 22, 2007)). Mindful of this, several courts in this District have applied a "balanced approach," under which a third party's presence does not break privilege if that third party "confidentially communicated with [counsel] for the purpose of obtaining or providing legal advice." *Id.* at 182–83. Consistent with a balanced approach, courts in this District have also followed several federal Courts of Appeals in noting that privilege is not waived when third parties act as functional equivalents of the company's employees, *see, e.g.*, *Flagstar Bank, FSB v. Freestar Bank, N.A.*, 2009 WL 2706965, at *5 (N.D. Ill. Aug. 25, 2009)—as Joele Frank most certainly did here.

Plaintiff's motion fails even to cite, much less address, most of this case law. Instead, Plaintiff relies largely on language in a single District Court case, contending that a third party must be "necessary" to obtaining or giving legal advice to avoid waiver. Setting aside that Plaintiff is wrong on the facts—Joele Frank *was* in fact necessary to counsel's provision of advice in this limited subset of documents—Plaintiff's proposed standard is inconsistent with the Seventh Circuit's guidance and the less rigid approaches that many courts in this District have applied.

Independent of privilege, over half the challenged documents are protected as attorney work product. Plaintiff does not argue that Joele Frank's presence waived that protection. Nor could it, because disclosing this information to Joele Frank did not substantially increase the opportunity for potential adversaries to obtain this information. Instead, Plaintiff contends that these documents are not protected work product at all. But each document easily satisfies the applicable standard since they were prepared "because of" the prospect of litigation following the USAO subpoena and reflect attorney mental impressions regarding the subpoena and the Company's response. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010).

## BACKGROUND

### A.    Jenner's Retention of Joele Frank to Assist Counsel

In May 2019, Exelon received the first of two grand jury subpoenas from the USAO and retained Jenner to represent it in responding to the subpoena and the related investigation. (Ex. A (Declaration of Carter Culver, Exelon in-house counsel) ("Culver Decl.") ¶¶ 3–4.) To avoid interfering with the USAO's investigation, Exelon walled off most employees from the investigation, including much of its communications team. (*Id.* ¶¶ 5–6.)

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

3

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████  (*Id.*

¶ 3.)  Because Joele Frank required access to certain privileged and confidential information

regarding the investigation to perform its work (Ex. A (Culver Decl.) ¶ 16), ████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████.[2]  ████████████████████████, Company counsel intended their communications

with Joele Frank to be confidential and, where applicable, privileged.  (*Id.* ¶¶ 11, 22.)

████████████████████████████████  based on information and guidance received

from Jenner and in-house Exelon attorneys, Joele Frank assisted counsel by drafting and revising

Q&As, talking points, and scripts related to the subpoenas, the resulting investigation, and the

DPA.[3]  Exelon attorneys—including in-house counsel Carter Culver and David Glockner, a former

federal prosecutor hired by Exelon during the investigation—worked with Joele Frank in preparing

the drafts, which were also reviewed by Jenner.  (*Id.* ¶¶ 13–14.)[4]  Mr. Culver, alongside Mr.

Glockner and other lawyers, worked closely with Joele Frank on what information could and

should be disclosed about the investigation and DPA, in light of Exelon's legal strategy and its

ongoing cooperation with the USAO.  (*Id.* ¶ 17.)  Joele Frank, in turn, assisted counsel in

"convert[ing] [counsel's] legal advice and strategy into practicable internal and external

---

[2] *See, e.g.*, Ex. C ████████████████ ¶¶ 3, 4 ███████████████████████████
████████████████████████████").
[3] *See, e.g.*, Ex. D (JFWBK_00034584) (████████████████████); Ex. E (JFWBK_00034649)
(same); Ex. F (JFWBK_00035194) (same).
[4] *See also, e.g.*, Ex. G (JFWBK_00033968) (████████████████████████████████████); Ex. H
(JFWBK_00032345) ████████████████████████; Ex. E (JFWBK_00034649)
████████████████████████).

communications." (*Id.* ¶ 14.) "Without Joele Frank's participation, counsel could not advise [Exelon] on how to implement its legal advice with respect to [Exelon's] communications regarding the subpoenas, investigation, and the DPA." (*Id.*)

### B. Plaintiff's Subpoena and Subsequent Motion to Compel

On December 3, 2021, Plaintiff subpoenaed Joele Frank for documents concerning the investigation and DPA, among other topics. In response, Joele Frank produced more than 5,000 documents, but withheld certain documents over which Exelon asserted privilege and work product, as identified on a privilege log. After meeting and conferring with Plaintiff, Exelon served an amended privilege log reflecting 541 privileged documents withheld in their entirety and 360 documents produced with redactions. (Pl. Ex. 16 (Amended Log).) The log describes the documents as reflecting legal advice from Jenner and Exelon's internal counsel regarding the subpoenas, the ensuing investigation, the DPA, and Exelon's response to these events. (*Id.*) For 453 of those documents that were prepared because of the USAO investigation, the log also asserts work product. (*Id.*) Exelon did *not* claim privilege or work product over the vast majority of documents deemed responsive by Joele Frank.

## ARGUMENT

## I. THE CHALLENGED DOCUMENTS ARE PROTECTED AS PRIVILEGED

Plaintiff's motion does not dispute that the documents at issue reflect privileged attorney-client communications. Rather, Plaintiff contends that Joele Frank's presence waived attorney-client privilege over these communications. This is not so. Given the context in which Joele Frank was retained, and applying the standards recognized by courts in this Circuit, there has been no waiver of privilege over the narrow set of documents that Plaintiff is challenging.

A.     **Under This District's Balanced Approach, Sharing Information with Joele Frank Did Not Effect a Privilege Waiver**

The attorney-client privilege protects confidential communications between a client and its attorney "for the purpose of obtaining legal advice." *Jenkins*, 487 F.3d at 490.  Although a third party's presence generally waives privilege, the Seventh Circuit has recognized an exception "when that third party is present *to assist* the attorney in rendering legal services." *Id.* at 491 (emphasis added) (no waiver where police liaison was present "to facilitate" attorney's representation of his client).   Interpreting *Jenkins*, courts in this District have similarly recognized the need for attorneys to communicate with third parties in order "to render adequate legal advice" in the modern marketplace without "artificial" restrictions. *BankDirect*, 326 F.R.D. at 182 (quoting *Stafford*, 2007 WL 611252, at *6); *see also Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009) (same).  Accordingly, these courts have applied a "balanced approach" to waiver, in which a third party's presence does not break privilege where that third party "confidentially communicated with [counsel] for the purpose of obtaining or providing legal advice." *BankDirect*, 326 F.R.D. at 182, 184; *see also Stafford*, 2007 WL 611252, at *7 (adopting balanced approach); *Heriot*, 257 F.R.D. at 666 (same).  Plaintiff's motion fails to even mention this approach.

As Exelon explained during the meet and confer process (Pl. Ex. 15 at 4), communications with Joele Frank are privileged under this District's "balanced approach" because Joele Frank "confidentially communicated with [counsel] for the purpose of obtaining or providing legal advice." *BankDirect*, 326 F.R.D. at 184 (quoting *Stafford*, 2007 WL 611252, at *7).   The challenged communications easily satisfy this test, and Plaintiff's motion does not argue otherwise.

As explained above (*supra* at 4), Joele Frank communicated confidentially with counsel to assist counsel in providing legal advice to Exelon with respect to an ongoing investigation (Ex. A

(Culver Decl.) ¶¶ 13–22; Ex. C ███████████████ ¶ 1).[5]  Among other things, counsel and Joele Frank worked closely together to draft and revise talking points, Q&As, press releases, and other materials concerning events related to the investigation and DPA.  *Supra* at 4.  Joele Frank was instrumental to translating counsel's legal advice as to what Exelon could and should say regarding these matters into concrete disclosures.  *Supra* at 4–5.  While counsel could advise Exelon on *what* it could say in light of the USAO's pending investigation—and how potential statements might impact legal strategy with respect to the USAO—counsel needed Joele Frank's specialized experience in drafting corporate communications, including the form such communications should take in practice.  (Ex. A (Culver Decl.) ¶ 14.)  Joele Frank's work in this respect was not mere "PR advice" (Mot. at 10), but rather closely coordinated work with counsel on what information to disclose regarding the investigation and how to disclose that information, consistent with Exelon's legal strategy and ongoing cooperation with the USAO.

Plaintiff claims that Joele Frank "had minimal interactions with Jenner during the investigation" (Mot. at 3), but Jenner attorneys appear throughout the privilege log and the documents produced to Plaintiff.[6]  Moreover, Plaintiff does not dispute that Joele Frank *did* interact extensively with Exelon's internal counsel, including Carter Culver, who worked with Joele Frank and is frequently copied on the privileged communications.  (Ex. A (Culver Decl.) ¶¶

---

[5] Plaintiff argues that the existence of a separate engagement letter between Joele Frank and *Exelon* from around the same time shows that Joele Frank was not assisting *counsel* in providing legal advice.  (Mot. at 3.)  But Plaintiff has it backwards.  If Joele Frank was merely performing the same general public relations work for Exelon that it was performing under its non-privileged engagement with Exelon, there would have been no need for the separate, distinct engagement to assist counsel.  Indeed, Exelon has not withheld any documents related to this separate engagement between Joele Frank and the Company to provide standard public relations assistance.

[6] *See, e.g.*, Pl. Ex. 16 (Amended Log) Nos. 228, 230, 237, 374–76, 443; Ex. F (JFWBK_00035194) (███████████████████████████████████████); Ex. I (JFWBK_00034330) (██████████████████████████████████); Ex. J (JFWBK_00033826) (████████████████████████████████████ ██████); Ex. K (JFWBK_00034298) (same); Ex. L (JFWBK_00034336) (same).

17, 20.)  As Mr. Culver explains in his Declaration, it was common for him to communicate directly with Jenner and then pass on Jenner's guidance to Joele Frank.  (*Id.* ¶ 20.)

The iterative nature of the communications between Joele Frank and counsel also supports a finding that no waiver occurred, contrary to Plaintiff's assertion that privileged information can only flow one way in the provision of legal advice.  (*See* Mot. at 10.)  In *BankDirect,* the court found there was no waiver, in part, because "[t]ypically, [the advisor] or [company's executive], or both, would make suggestions for inclusion" and "[c]omments and changes went both ways." 326 F.R.D. at 183.  Just as in *BankDirect*, the withheld communications here:

> reveal, or tend to reveal, confidential information and the thoughts of both [Joele Frank] and attorneys throughout the back and forth of the drafting of the [documents] and their negotiation. . . . They are not the idle and independent musings of independent actors unrelated to the input from lawyers.

*Id.* at 184 (finding withheld communications were privileged).

Finally, the specific context here strongly supports a finding of privilege.  Exelon followed best practices by walling off from the investigation most of its employees, including much of its internal communications team, to maintain close control of sensitive and privileged information and to avoid interfering with the USAO's ongoing investigation.  Jenner engaged Joele Frank in this context to assist with preparing communications relating to the investigation, which necessarily required sharing certain privileged information with Joele Frank so it could provide that assistance.  Finding waiver would effectively punish Exelon for taking these prudent steps— precisely the "artificial" approach to privilege that the balanced approach was intended to prevent.

## B. The Challenged Documents Also Remained Privileged Because Joele Frank Served as the Functional Equivalent of an Internal Communications Team

Reasoning that *Upjohn* should "cover communications between corporate counsel and outside consultants," courts have recognized that privilege extends to nonemployees who, "due to their relationship to the client, possess the very sort of information that the privilege envisions

flowing most freely." *United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010) (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)) (quoting *In re Bieter Co.*, 16 F.3d. 929, 937–38 (8th Cir. 1994)); *accord FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001). Accordingly, sharing information with a third party does not effect waiver where that third party (i) had "primary responsibility for a key corporate job"; (ii) was "critical to the company's position in litigation"; and (iii) "possess[ed] information possessed by no one else at the company." *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, 2021 WL 4283464, at *5 (N.D. Ill. Sept. 21, 2021).

Because Joele Frank effectively stepped into the role of Exelon's internal communications team with respect to the investigation, that test is clearly satisfied here. Like the public relations consultants whose communications the D.C. Circuit held privileged in *GlaxoKlineSmith*, Joele Frank "acted as part of a team with full-time employees regarding their particular assignments" and "became integral members of the team assigned to deal with issues that were completely intertwined with [Exelon's] litigation and legal strategies." 294 F.3d at 148; *see also* Ex. A (Culver Decl.) ¶ 21. And like the public relations firm in *Copper Market*, Joele Frank "was, essentially, incorporated into [Exelon's] staff to perform a corporate function that was necessary in the context of the government investigation, actual and anticipated private litigation, and heavy press scrutiny obtaining at the time" and "sought advice from [Exelon's] counsel and was privy to advice concerning the scandal and attendant litigation." 200 F.R.D. 213, 219 (S.D.N.Y 2001). Indeed, Exelon and its counsel worked with Joele Frank "as they did with full-time employees," and Joele Frank "possess[ed] the very sort of information that the privilege envisions flowing most freely"—information regarding Exelon's response to an ongoing investigation. *GlaxoKlineSmith*, 294 F.3d at 148; *Graf*, 610 F.3d at 1158.

Plaintiff argues that courts in this District have rejected the functional equivalent test (Mot. at 9) but ignores that others have *endorsed* it and even derived the balanced approach from its principles. For example, in *Flagstar Bank, FSB*, then-Magistrate Judge Keys explained that, "[i]n limited circumstances, the disclosure of privileged communications to independent contractors and other third parties who are *functional equivalents of employees*, will not waive the attorney-client privilege." 2009 WL 2706965, at *5 (emphasis added). In fact, some courts "rejecting" the test have done so because they considered it too *restrictive*. *Stafford*, 2007 WL 611252, at *6.[7] And since three federal Circuits have adopted the test—none have rejected it—there is little reason to conclude that the Seventh Circuit would not adopt it as well.

Plaintiff also argues that the functional equivalent test does not apply because Joele Frank lacked "primary responsibility" for communications regarding the investigation, or played no role in the investigation at all. (Mot. at 10.) That is wrong. As discussed above, with Exelon's communications team largely walled off from the investigation, Joele Frank took "primary responsibility" for working with counsel on corporate communications regarding the investigation and DPA, consistent with Exelon's disclosure obligations and legal strategy. *Supra* at 3–5. And while Plaintiff argues that Joele Frank did not "possess information possessed by no one else at the company" (Mot. at 9–10), Joele Frank *did* possess information regarding the investigation that others in the Company's communications department did not, as well as unique *communications expertise* among those privy to the investigation (*see* Ex. A (Culver Decl.) ¶¶ 6, 14, 21).

### C.      Plaintiff's Motion Applies an Unduly Rigid and Formalistic Standard, but Even Under That Standard, the Communications at Issue Remain Privileged

Largely ignoring the above authority, Plaintiff instead asserts that a third party must be

---

[7] *See also Fosbre v. Las Vegas Sands Corp.*, 2016 WL 183476, at *3 (D. Nev. Jan. 14, 2016) (noting *Stafford* "adopted a broader approach in applying the functional equivalent doctrine").

"necessary" to obtaining or giving legal advice, relying heavily on phrasing used in a single case. (Mot. at 5, 6, 11 (citing *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, 2021 WL 4125084 (N.D. Ill. Sept. 9, 2021) ("*Breuder I*"); *Breuder*, 2021 WL 4283464 ("*Breuder II*"); *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, 2022 WL 279277 (N.D. Ill. Jan. 31, 2022) ("*Breuder III*")).) But Plaintiff's proposed standard is more restrictive than the Seventh Circuit's rule from *Jenkins*, which requires only that a third party be present to "assist" counsel in rendering legal advice. Indeed, Plaintiff's standard would have led to a different result on the facts of *Jenkins*, in which a police liaison was present "to assist [an attorney] by gathering information and by providing expert advice on the rules and procedures of the department to facilitate [the attorney's] representation of [his client]." 487 F.3d at 490. There is no suggestion that the liaison's presence in *Jenkins* was "necessary," as opposed to merely helpful, to the provision of legal advice.

Similarly, even courts that have subsequently relied on *Breuder*'s language have applied a less formalistic analysis, consistent with the balanced approach. For example, a recent decision by the same magistrate judge who issued *Breuder I* and *Breuder II* did not analyze whether the third party was, in fact, "necessary" to the provision of legal advice, and instead held there was no waiver because the third party's engagement letter indicated that she was hired by counsel "in order to assist [counsel] in providing legal advice to [the client] and/or in anticipation of potential future claims or litigation." *Anaya v. Birck*, 2022 WL 1523640, at *3 (N.D. Ill. May 13, 2022). That is the case here. Similarly, in *Heriot*, which *Breuder I* cited in support of the standard, the court recognized an exception to waiver where a third party merely is "highly useful" to the provision of legal advice. 257 F.R.D. at 666. The court then found that third-party consultants who were the defendants' "agents" (with one "treated in many instances as . . . Defendants' trusted employee") did not waive privilege. *Id.* at 652–53, 665. Again, that is the case here.

11

Plaintiff is therefore incorrect that its preferred standard is "black-letter law." (Mot. at 2.) Nevertheless, even under Plaintiff's rigid proposed standard, the limited set of communications here remain privileged. Joele Frank *was* providing necessary (or at least "highly useful") expertise to assist counsel in rendering legal advice regarding the disclosure of information related to the subpoenas, investigation, and DPA. *Heriot*, 257 F.R.D. at 666. As set forth above and in the Culver Declaration, Exelon's "counsel lacked the expertise to convert its legal advice and strategy into practicable internal and external communications" regarding the subpoenas, investigation, and DPA, which impeded counsel's ability to advise Exelon as to how its disclosures should be framed. (Ex. A (Culver Decl.) ¶ 14; *supra* at 4–5.) Particularly in the absence of the Company's internal communications team, counsel needed Joele Frank in order to advise the Company on its disclosures.[8]

Though Plaintiff attempts to categorically dismiss *all* communications-related work as non-legal "PR advice" (Mot. at 7), courts have found that "the ability of lawyers to perform some of their most fundamental client functions . . . would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants." *In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003) (PR firm did not waive privilege because counsel "needed outside help, as they presumably were not skilled at public relations").[9] The same is true here: Unable to adequately

---

[8] Plaintiff argues that Joele Frank could not have been "necessary to any attorney's ability to provide legal advice" because Exelon claimed privilege over tens of thousands of documents not involving Joele Frank on the Company's privilege log. (Mot. at 11.) That argument is illogical. The fact that Joele Frank was necessary to provide legal advice in certain circumstances does not mean that Joele Frank was necessary in *all* circumstances.

[9] *See also Stardock Sys., Inc. v. Reiche*, 2018 WL 6259536, at *6 (N.D. Cal. Nov. 30, 2018) (communications with PR firm privileged because attorney-client privilege "extend[s] to a consultant, or a PR firm working directly with the attorneys for the purposes of assisting them in providing the soundest legal advice to their client and employing the optimal publicity strategy to win the case"); *Eagle Harbor* (….continued)

assist a client "confront[ing] the broad power of the government" and "potential legal ramifications" for any public statements, *id.* at 330, Jenner "(and not Defendants themselves) hired [Joele Frank]" to fill the gap, *Stardock*, 2018 WL 6259536, at *6. Plaintiff's cases are distinguishable. In *Breuder I*, a board member retained a public relations consultant "for crisis management to protect her good reputation." 2021 WL 4125084, at *6. Here, Exelon did not engage Joele Frank for "crisis management"; rather *its counsel* retained Joele Frank to assist *counsel* in connection with an ongoing investigation. Similarly, in *Breuder II*, a PR firm engaged by a college's counsel was only "retained . . . to perform general public relations work." 2021 WL 4283464, at *6. Again, Jenner did not retain Joele Frank "to perform general public relations work," and to the extent that *Exelon* did, those documents have not been withheld as privileged.[10]

## II. THE CHALLENGED DOCUMENTS ARE PROTECTED WORK PRODUCT

A significant portion of the documents at issue are also protected work product. The work product doctrine protects documents "prepared in anticipation of litigation" by a party, including its non-attorney agents, and expressly forbids disclosing the "mental impressions, conclusions, opinions, or legal theories of a party's attorney." Fed. R. Civ. P. 26(b)(3). Plaintiff does not challenge that Exelon may assert work product over documents prepared in response to the USAO

---

*Holdings, LLC v. Ford Motor Co.*, 2014 WL 1681623, at *1 (W.D. Wash. Apr. 28, 2014) (communications with PR firm privileged under *In re Grand Jury Subpoenas* analysis); *In re ADT Sec. Servs., Inc. v. Swenson*, 2010 WL 2954545, at *5 (D. Minn. July 26, 2010) (communications with PR firm privileged because they "relay[ed] and discuss[ed] legal advice under the circumstances" or "contain[ed] an implicit request for legal advice regarding the content of the [media] response").

[10] *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050 (D.N.J. July 22, 2021), is distinguishable for the same reason. There, a public relations firm was engaged to assist a company "excoriated in the press." *Id.* at *1. In finding that the firm's presence waived privilege, the special master relied on an employee's testimony that the firm merely performed "general public relations services." *Id.* at *12. *Valeant* is further distinguishable because the firm was engaged *after* the company had already been "subject to governmental investigations, prosecutorial investigations, [and] civil suits (class actions)," *id.* at *11, making it unlikely that the consultant was engaged for the purpose of assisting in the provision of legal advice in connection with those proceedings.

subpoena.  Nor does Plaintiff claim that Exelon waived work product.[11]  Rather, Plaintiff contends that the documents are not work product in the first place because they were not created with the "primary motivating purpose" of litigation.  (Mot. at 13.)  But the small number of documents Exelon designated as work product exist only "because of" the USAO investigation and resulting DPA, *Sandra T.E., 600 F.3d at 622*, and are therefore properly protected as work product.[12]

As an initial matter, Plaintiff again overstates the legal standard, attempting to substitute the more stringent "primary motivating purpose" test for the long-standing "because of" standard applied in this Circuit.[13]  As the Seventh Circuit has held repeatedly, work product applies to documents that "can fairly be said to have been prepared or obtained *because of* the prospect of litigation."  *Id.* (emphasis added) (quoting *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996)).[14]  Though some courts in this District have applied the "primary purpose" standard, they have recognized that work product extends to documents with a mixed business purpose that are prepared "because of the prospect of litigation."  *Caremark, Inc. v. Affiliated Comput. Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000) ("[W]here a document is prepared because of the prospect of litigation . . . it does not lose protection merely because it is also created

---

[11] A party waives work product protection only if the disclosure "substantially increases the opportunity for potential adversaries to obtain the information."  *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 419 (N.D. Ill. 2006).  There is no argument that the disclosure to Joele Frank here satisfies this standard.

[12] Over 80% of the documents designated as work product were created in June and July 2020, reflecting the period immediately before and after the DPA, which was signed by the Company on July 16, 2020.

[13] Though some courts in this District have quoted language from both tests, the "primary motivating purpose" and "because of" standards are two distinct inquiries.  *See United States v. Deloitte LLP*, 610 F.3d 129, 136–37 (D.C. Cir. 2010) (noting that "most circuits," including the Seventh Circuit, apply the "because of" test, but that others require "that anticipation of litigation be the primary motivating purpose behind the document's creation"); *see also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 181 (N.D. Ill. 2006) (rejecting "primary motivating purpose test" as inconsistent with Seventh Circuit's "because of" standard).

[14] *See also Cent. States Se. & Sw. Areas Pension Fund v. Temp Excel Props., LLC*, 2010 WL 4735828, at *2 (N.D. Ill. Nov. 15, 2010) ("[T]he test of work product protection requires a showing that defendant prepared these documents specifically 'because of the prospect of litigation.'").

in order to assist with a business decision.").  Work product also extends to documents like draft press releases, where they "contain 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation'" and were "'prepared in anticipation of litigation or for trial.'" *Stardock*, 2018 WL 6659536, at *6.

The challenged documents are work product because they were created "because of" the USAO investigation and the DPA.  Indeed, they would not *exist* otherwise: Joele Frank worked with counsel to prepare various statements regarding the investigation and the DPA for an audience that included the USAO (Ex. A (Culver Decl.) ¶¶14–15), which required a consistent legal strategy to address the possibility of future litigation.  Consequently, the documents are work product, even accepting Plaintiff's argument that they also served a public relations purpose. *See Caremark*, 195 F.R.D. at 614; *Jaffe*, 237 F.R.D. at 182 (document is work product even if "it is also created in order to assist with a business decision"); *Stardock*, 2018 WL 6259536, at *6.

Moreover, many of the documents designated as work product reflect counsel's opinions and impressions regarding, for instance, "steps taken to comply with the subpoenas and conduct the investigation, impressions of the investigation's progress and related negotiations with the USAO, and how the USAO might view particular disclosures." (Ex. A (Culver Decl.) ¶ 16.)  It is well-established that "courts give a heightened protection to an attorney's mental impressions and opinions," and such documents "are nearly, without exception, protected under the work product doctrine." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 330 (N.D. Ill. 2008).

## CONCLUSION

For these reasons, Exelon respectfully requests that the Court deny Plaintiff's motion to compel in its entirety.

Dated:   New York, New York
       April 20, 2023

                        RILEY SAFER HOLMES & CANCILA LLP

                        By:   /s/  *Matthew C. Crowl*

MATTHEW C. CROWL (IL Bar # 6201018)
BRIAN O. WATSON (IL Bar # 6304248)
AMY C. ANDREWS (IL BAR # 6226692)
70 W. Madison Street, Suite 2900
Chicago, IL 60602
Telephone: (312) 471-8700
Fax: (312) 471-8701
mcrowl@rshc-law.com
bwatson@rshc-law.com
aandrews@rshc-law.com

DAVIS POLK & WARDWELL LLP
JAMES P. ROUHANDEH (#2211837)
EDMUND POLUBINSKI III (#3022332)
MARI GRACE BYRNE (#5074893)
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
rouhandeh@davispolk.com
edmund.polubinski@davispolk.com
mari.grace@davispolk.com

*Attorneys for Defendant Exelon Corporation*

16