**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>EXELON CORPORATION et al.,<br><br>        Defendants. | Case No. 1:19-cv-08209<br><br>Hon. Virginia M. Kendall |

**DECLARATION OF CARTER CULVER IN SUPPORT OF
EXELON'S OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF THIRD PARTY JOELE FRANK DOCUMENTS BEING
WITHHELD OR REDACTED BY DEFENDANT EXELON**

**REDACTED—PROVISIONALLY FILED UNDER SEAL PURSUANT TO LOCAL
RULE 26.2(C) AND THE AGREED CONFIDENTIALITY
ORDER (ECF NO. 119)**

Pursuant to 28 U.S.C. § 1746, Carter Culver declares as follows:

1. I am Senior Vice President, Deputy General Counsel, and Assistant Secretary at Exelon Corporation ("Exelon") and Assistant Secretary at Commonwealth Edison Company ("ComEd" and, together with Exelon, the "Company"). I have held these roles since 2018.

2. I submit this Declaration in support of Exelon's Memorandum of Law in Opposition to Lead Plaintiff's Motion to Compel Production of Third Party Joele Frank Documents Being Withheld or Redacted by Defendant Exelon. The facts set forth in this Declaration are based upon my personal knowledge.

3. In May 2019, Exelon retained Jenner & Block LLP ("Jenner") as outside counsel to represent the Company in connection with a grand jury subpoena the Company received from the U.S. Attorney's Office for the Northern District of Illinois (the "USAO"). The Company later received a second grand jury subpoena from the USAO, and Jenner represented the Company with respect to that subpoena as well.

4. Jenner conducted an internal investigation in response to the subpoenas and negotiated the Deferred Prosecution Agreement, dated July 17, 2020, between ComEd and the USAO (the "DPA").

5. In order to preserve the confidentiality and integrity of the investigation, and consistent with typical practice in such investigations, the Company and its counsel shared the details of the subpoenas and the investigation with only a limited number of employees at the Company.

6. As a result, most of the Company's internal communications department, with the exception of a small number of high-level employees, were walled off from the investigation. These small number of Company communications employees who were privy to information

2

regarding the investigation did not have the capacity to undertake the amount of work required to prepare the Company's internal and external communications regarding the subpoenas, investigation, and the DPA.

7.     Because it was critical to draft these communications in a way that met the needs of both Exelon's disclosure obligations as a public company and its legal strategy in response to the USAO investigation, ███████████████████████████████████████



███████████████████████████████████████ *See* Ex. C.[1]

8.     ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ Ex. C, ¶ 1.

9.     ███████████████████████████████████

███████████████████████████████████████

and that ███████████████████████████████

███████████████████████████████ Ex. C, ¶ 3.

10.     ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ and that Joele Frank therefore ██████████████████████

██████████████████████████████ Ex. C, ¶ 4.

---

[1] Capitalized terms have the same meaning as in the Memorandum in Support of Lead Plaintiff's Motion to Compel Production of Third Party Joele Frank Documents Being Withheld or Redacted by Defendant Exelon (Dkt. 167, the "Motion"), as well as Exelon's Memorandum of Law in Opposition to the Motion (the "Opposition"). "Pl. Ex. __" refers to exhibits to Plaintiff's Motion, and "Ex." refers to exhibits to Exelon's Opposition.

11. ████████████████████████████████████████████████████

████████ Exelon and its counsel had an expectation of privilege and confidentiality with respect to Joele Frank's work on this particular engagement.

12. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

13. Specifically, Joele Frank assisted lawyers at the Company, such as myself and David Glockner (a former federal prosecutor hired by the Company during the investigation and who, among other things, assisted with the implementation of the DPA), in providing legal advice regarding how to disclose to internal and external stakeholders information relating to the subpoenas, the investigation, and the DPA. Among other things, Joele Frank assisted counsel by drafting internal and external communications regarding these topics based on instructions, guidance, and information provided by the Company's counsel.

14. Joele Frank's involvement was necessary to counsel's provision of legal advice regarding the Company's communications with respect to these topics because counsel lacked the expertise to convert its legal advice and strategy into practicable internal and external communications. Counsel therefore needed Joele Frank to, for example, prepare drafts of such communications according to its instructions, on which counsel could then comment to provide further advice. Without Joele Frank's participation, counsel could not advise the Company on how to implement its legal advice and strategy with respect to the Company's communications regarding the subpoenas, the investigation, and the DPA.

4

15. Joele Frank's assistance also enabled counsel to provide advice regarding the content, timing, tone, and manner in which the Company made disclosures consistent with the Company's legal obligations and in light of the ongoing investigation and communications with the USAO.

16. To enable Joele Frank to perform these duties, it was necessary that counsel share privileged and confidential information regarding the investigation with Joele Frank. For example, counsel shared with Joele Frank information regarding steps taken to comply with the subpoenas and conduct the investigation, impressions of the investigation's progress and related negotiations with the USAO, and how the USAO might view particular disclosures, among other information.

17. I personally worked with Joele Frank on the matters ███████████████. For example, I, along with other Company lawyers and Jenner, worked with Joele Frank to draft and revise various statements and Q&As to internal and external constituents in the context of the investigation, consistent with the Company's legal strategy and obligations.

18. I, along with other in-house counsel and Jenner, also provided guidance as to what statements the Company could and should, and should not, make consistent with its legal strategy and obligations, and instructed Joele Frank to draft certain communications accordingly. We then reviewed, revised, and commented on the communications that Joele Frank drafted to ensure these communications followed that guidance. Joele Frank also asked counsel for specific legal advice and instruction related to particular communications.

19. While counsel at certain times communicated directly with Joele Frank on these matters, including by email and on phone calls, at other times, counsel communicated with Joele Frank through intermediaries, such as the small number of executives from the Company's communications department who were privy to the investigation.

20. Jenner was also involved with Joele Frank's work during the engagement and communicated with Joele Frank both directly and through intermediaries, including myself and other in-house counsel. I most frequently communicated with Chuck Sklarsky and Reid Schar from Jenner in connection with my role supervising Joele Frank's work.

21. Because much of the Company's internal communication team was walled off from the internal investigation, Joele Frank was essentially incorporated into the Company's communications staff. As a result, Joele Frank consultants generally acted as Company employees would with respect to seeking, obtaining, and implementing advice from counsel on the Company's communications regarding the subpoenas, investigation, and DPA.

22. ███████████████████████████████████████ the Company considered all its communications with Joele Frank to be privileged and confidential to the extent they discussed counsel's legal advice, strategy, or impressions in relation to the subpoenas, investigation, and DPA; intended these communications to remain privileged and confidential; and treated their communications as such.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 19, 2023.

Carter Culver

6