UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.: 1:19-cv-08209 |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | Judge Virginia M. Kendall<br>Magistrate Judge Susan E. Cox |
| | ) | |
| EXELON CORPORATION, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

4867-5081-4561.v3

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................2

    A. Procedural History ...................................................................................2

    B. The Parties' Arm's-Length and Informed Negotiations ..........................3

    C. The Terms of the Settlement....................................................................4

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............5

    A. The Settlement Satisfies the Standards for Approval ...............................6

        1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class....................................................................6

        2. The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations.................................................................7

        3. The Proposed Settlement Amount Is Adequate .........................7

        4. The Remaining Settlement Terms are Reasonable and Adequate, and the Settlement Treats Class Members Equitably ................9

    B. The Settlement Class Satisfies the Standards for Class Certification....................10

        1. The Settlement Class Satisfies Rule 23(a)................................11

        2. The Settlement Class Satisfies Rule 23(b)(3) ...........................13

IV. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .......................................14

V. CONCLUSION....................................................................................................15

4867-5081-4561.v3

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abrams v. Van Kampen Funds, Inc.,*
    2002 WL 1989401 (N.D. Ill. Aug. 27, 2002) .............................................................................11

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,*
    2011 WL 3290302 (N.D. Ill. July 26, 2011) ...............................................................................6

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).............................................................................................................11, 13

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.,*
    2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) ...........................................................................13

*In re Allstate Corp. Sec. Litig.,*
    2020 WL 7490280 (N.D. Ill. Dec. 21, 2020)............................................................................13

*In re Bank One Sec. Litig./First Chi. S'holder Claims,*
    2002 WL 989454 (N.D. Ill. May 14, 2002).........................................................................12, 13

*In re Groupon, Inc. Sec. Litig.,*
    2014 WL 5245387 (N.D. Ill. Sept. 23, 2014) ...........................................................................12

*In re Mylan N.V. Sec. Litig.,*
    2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) .......................................................................7, 8

*In re TikTok, Inc. Consumer Priv. Litig.,*
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) .......................................................................................6

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) .....................................................................................................5

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir. 1998) ...................................................................................................12

*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP,*
    2001 WL 1568856 (N.D. Ill. Dec. 10, 2001).........................................................................7, 8

*Schleicher v. Wendt,*
    618 F.3d 679 (7th Cir. 2010) ..............................................................................................10, 13

*Silverman v. Motorola, Inc.,*
    2012 WL 1597388 (N.D. Ill. May 7, 2012)
    *aff'd,* 739 F.3d 956 (7th Cir. 2013).........................................................................................13

4867-5081-4561.v3

**Page**

*Silverman v. Motorola, Inc.*,
259 F.R.D. 163 (N.D. Ill. 2009)..................................................................................12

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ......................................................................................11

*Tatz v. Nanophase Techs. Corp.*,
2003 WL 21372471 (N.D. Ill. June 13, 2003) ...........................................................11

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .............................................................................6, 7, 8

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(7)................................................................................................................14

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................................8, 10
Rule 23(a)........................................................................................................10-11, 13-14
Rule 23(a)(1).............................................................................................................11
Rule 23(a)(2).............................................................................................................11
Rule 23(a)(3).............................................................................................................12
Rule 23(a)(4).............................................................................................................12
Rule 23(b)(3)....................................................................................................10, 13-14
Rule 23(e)..................................................................................................................5-6
Rule 23(e)(1).............................................................................................................14
Rule 23(e)(1)(B)...................................................................................................5, 6, 14
Rule 23(e)(1)(B)(ii)...................................................................................................10
Rule 23(e)(2)...................................................................................................... *passim*
Rule 23(e)(2)(A) ......................................................................................................6, 7
Rule 23(e)(2)(A)-(D) ...................................................................................................6
Rule 23(e)(2)(B)...........................................................................................................7
Rule 23(e)(2)(C)(i).......................................................................................................7
Rule 23(e)(2)(C)-(D)....................................................................................................9

4867-5081-4561.v3

## I.      INTRODUCTION

Lead Plaintiff Local 295 IBT Employer Group Pension Trust Fund ("Pension Fund" or "Lead Plaintiff") submits this memorandum in support of preliminary approval of the proposed Settlement of the above-captioned litigation on the terms set forth in the Stipulation of Settlement, dated May 26, 2023 (the "Stipulation"), filed herewith.[1]  The proposed Settlement was reached after more than a year of arm's-length negotiations, including two mediation sessions before an experienced mediator, and provides for the payment of $173,000,000.00 for the benefit of the Settlement Class.

The Settlement is the result of over three years of litigation, which included a thorough investigation, drafting the operative complaint, briefing Defendants' motions to dismiss and motion for certification of interlocutory appeal (all of which were denied), serving and negotiating more than 350 requests for admission and more than 70 interrogatories, obtaining and analyzing more than 2.5 million pages of documents, negotiating discovery and privilege disputes in more than 80 meet and confers, filing a motion to compel, consulting with experts, and engaging in well-informed, arm's-length negotiations between and among highly experienced counsel.  The result is tremendous in both absolute terms and as a percentage of recoverable damages.  If approved, the Settlement will be one of the largest securities class action settlements in this District and Circuit.

Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and therefore asks the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order").  The Notice Order will: (i) preliminarily approve the terms of the Settlement, as set forth in the Stipulation; (ii) preliminarily certify the Settlement Class; (iii) approve the form and method for providing notice of the Settlement to the Settlement Class; and (iv) schedule a settlement hearing (the "Settlement Hearing") at which the

---

[1]     All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation. Internal citations are omitted and emphasis is added throughout unless otherwise noted.

Court will consider the request for final approval of: (a) the Settlement; (b) the Plan of Allocation of settlement proceeds among Settlement Class Members; and (c) an award of attorneys' fees and expenses to Lead Counsel, and an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).

## II.      BACKGROUND

### A.      Procedural History

The initial complaint in this Litigation was filed on December 16, 2019. ECF 1. On July 21, 2020, this Court appointed the Pension Fund as Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and approved Lead Plaintiff's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.  ECF 64.

The operative complaint is Lead Plaintiff's Complaint for Violations of the Federal Securities Laws (the "Complaint"), filed on September 16, 2020. ECF 65. The Complaint alleges violations of §§10(b) and 20(a) of the Exchange Act on behalf of a class of all purchasers of Exelon common stock between February 8, 2019 and October 31, 2019, inclusive.  Among other things, the Complaint alleges violations of the Exchange Act premised on Defendants' allegedly false and misleading statements and omissions that: (i) concealed from investors that ComEd (an Exelon subsidiary) and certain executives engaged in an eight-year scheme to bribe the former speaker of the Illinois House of Representatives, Michael Madigan, to secure favorable legislation; and (ii) misleadingly downplayed the government's investigation of the Company.  The Complaint alleges that the statements and omissions artificially inflated Exelon's stock price and when the truth was disclosed, the stock price declined, resulting in substantial damages to the Settlement Class.

On November 18, 2020, Defendants moved to dismiss the Complaint. ECFs 73, 75. Lead Plaintiff opposed (ECF 85), and on April 21, 2021, this Court denied the motions.  ECF 100. Defendants thereafter moved for certification of interlocutory appeal regarding the Court's Order

- 2 -

denying their motions to dismiss. ECFs 114, 117. Lead Plaintiff again opposed. ECF 124. On January 28, 2022, the Court denied Defendants' motion. ECF 142.

On September 9, 2021, the United States of America, through the U.S. Attorney for the Northern District of Illinois, moved to intervene in the Litigation and for a stay of discovery. ECF 127. On September 23, 2021, the Court granted the motion and stayed discovery in the Litigation. ECF 130. Discovery resumed on November 16, 2021, when the Court entered the Amendment to the Agreed Confidentiality Order, which placed restrictions on the scope of permitted discovery. ECF 137; *see also* ECF 152 (amending confidentiality order); ECF 160 (same).

In discovery, Lead Plaintiff served document requests on Defendants and more than 65 third parties which resulted in production of over 2.5 million pages of documents. Lead Plaintiff also served more than 70 interrogatories and more than 350 requests for admission on Defendants, except Defendant Pramaggiore.[2] Those Defendants provided initial answers to the written discovery, and then amended multiple times to respond to arguments by Lead Counsel. On March 23, 2023, Lead Plaintiff moved to compel the production of documents in the possession of a third party public relations firm that were being withheld or redacted by defendant Exelon. ECF 166. On April 20, 2023, Exelon filed its opposition (ECF 182), and the motion remained pending at the time the Settling Parties reached agreement to settle the Litigation.

**B.     The Parties' Arm's-Length and Informed Negotiations**

In March 2022, the parties commenced mediation efforts presided over by the Honorable Layn R. Phillips (ret.) of Phillips ADR Enterprises. The parties participated in an all-day mediation session with Judge Phillips on March 8, 2022, but did not reach an agreement. Thereafter, the

---

[2]     Defendant Pramaggiore moved for a stay of testimonial discovery in the Litigation to "mitigate the substantial prejudice to her Fifth Amendment right against self-incrimination" in the related criminal matter. ECF 111. Because that unopposed motion was granted (ECF 118), Lead Plaintiff did not serve interrogatories or requests for admission on Defendant Pramaggiore.

4867-5081-4561.v3

parties periodically continued informal discussions through the mediator but were unable to reach a resolution and eventually agreed to conduct a second in-person mediation. On April 21, 2023, the parties participated in another all-day mediation session with Judge Phillips, but again did not reach an agreement. On April 22, 2023, Judge Phillips issued a "mediator's recommendation" to settle the Litigation for $173 million, which the parties accepted on April 26, 2023.

At the time the Settling Parties agreed to settle, Lead Plaintiff and Lead Counsel were well-informed about the strengths and weaknesses of their claims based on, for example: (i) a rigorous investigation involving review and analysis of Company regulatory filings, media and analyst reports, press releases and call transcripts, relevant case law and authorities, and other publicly-available information; (ii) drafting the Complaint; (iii) briefing Defendants' motions to dismiss, Defendants' motion for leave to appeal, and Lead Plaintiff's motion to compel; (iv) preparing and serving dozens of interrogatories and hundreds of requests for admission; (v) obtaining and analyzing more than 2.5 million pages of documents from Defendants and third parties; (vi) conducting more than 80 meet and confers resulting in production of documents and information initially withheld; (vii) exchanging mediation briefs that detailed Lead Plaintiff's and Defendants' positions on liability and damages; and (viii) participating in two mediation sessions and multiple conferences with defense counsel and/or Judge Phillips regarding the foregoing information.

### C. The Terms of the Settlement

Following the arm's-length negotiations, Lead Plaintiff and Defendants agreed to settle the claims against Defendants for $173,000,000.00, upon the terms set forth in the Stipulation. Lead Plaintiff and its counsel concluded, after a thorough investigation of the factual and legal issues in the action, as well as consideration of the expense and risks of continued litigation, that the significant monetary recovery for the benefit of the Settlement Class is a highly favorable result and clearly in the best interests of Members of the Settlement Class.

In exchange for the benefits provided under the Stipulation, Settlement Class Members will release any and all claims against Defendants that have been or could have been alleged in this action which arise out of, are based on, or relate to both: (i) the allegations, acts, transactions, facts, events, matters, occurrences, disclosures, statements, filings, representations, or omissions that have been or could have been alleged or asserted in the Litigation; and (ii) a Settlement Class Member's purchase or acquisition of Exelon common stock during the Settlement Class Period. The release does not include any derivative or ERISA claims or claims to enforce the terms of the Settlement. Stipulation, ¶1.25.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a strongly favored method for resolving class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). Federal Rule of Civil Procedure 23(e) requires judicial approval of the settlement of class actions. Such approval involves a two-step process: first, a "preliminary approval" order authorizing notice of the proposed settlement to be provided to the class; and second, after notice has been provided and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment. *See* David F. Herr, *Manual for Complex Litigation*, at §13.14 (4th ed. 2019).

The question at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, the Settlement for $173 million satisfies the Rule 23(e) standards for approval, and the Settlement Class satisfies the standards for class certification. Thus, the proposed Settlement should be preliminarily approved and notice of the proposed Settlement should be sent to the Settlement Class in advance of a final Settlement Hearing.

- 5 -

### A. The Settlement Satisfies the Standards for Approval

Rule 23(e)(2) provides that a settlement should be approved if it is "fair, reasonable, and adequate," considering whether: (i) Lead Plaintiff and Lead Counsel adequately represented the Settlement Class; (ii) the Settlement was negotiated at arm's length; (iii) the amount of the Settlement is adequate; and (iv) the remaining Settlement terms are reasonable and adequate, and the Settlement treats Settlement Class Members equitably.[3]  Fed. R. Civ. P. 23(e)(2)(A)-(D).  At this preliminary approval stage, the Court's task is merely to determine whether the Settlement will "likely" satisfy the standard for final approval.  *See* Fed. R. Civ. P. 23(e)(1)(B).  In other words, the court need only "'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (Gettleman, J.) (approving settlement); *accord In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (Lee, J.) (granting preliminary approval).

### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) instructs courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  As set forth herein, Lead Counsel is highly experienced in securities class action litigation, and both Lead Plaintiff and Lead Counsel have diligently prosecuted this action.  *See, e.g.*, §II.A.-B. (detailing extensive litigation efforts from investigation and Complaint through motions to dismiss, discovery, consultation with experts, and mediation).  Lead Plaintiff and Lead Counsel have carefully

---

[3]   The Rule 23(e)(2) factors, as amended in 2018, overlap with the Seventh Circuit's previously-determined final approval factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quotation omitted).

4867-5081-4561.v3

considered the benefits of the Settlement, and costs and risks of ongoing litigation, and believe the Settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(A); *see also Accretive*, 773 F.3d at 863-64 (stating "'the opinion of competent counsel'" is a relevant factor for settlement approval and affirming settlement where counsel – Robbins Geller – was "highly experienced").

### 2. The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations

Rule 23(e)(2)(B) requires courts to consider a procedural factor – whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As explained above in §II.B., the proposed Settlement was achieved only after extensive arm's-length negotiations among highly-experienced and informed counsel, two mediation sessions before an experienced and well-respected mediator, and arm's-length negotiations surrounding the mediation sessions. This arm's-length process supports approval. *See Accretive*, 773 F.3d at 864 (approving settlement in light of "extensive arm's-length negotiations with an experienced third-party mediator").

### 3. The Proposed Settlement Amount Is Adequate

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Relatedly, the Seventh Circuit has instructed courts to consider "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement'" and "'the complexity, length, and expense of further litigation.'" *Accretive*, 773 F.3d at 863-64. Courts have recognized that "[s]ecurities fraud litigation is long, complex and uncertain." *Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.) (collecting cases); *see also Accretive*, 773 F.3d at 863 (detailing the significant delays and costs associated with litigating damages alone).

Here, while Lead Plaintiff remains confident in its ability to ultimately prove its claims, further litigation and trial is always a costly and risky proposition. *See, e.g.*, *In re Mylan N.V. Sec.*

4867-5081-4561.v3

*Litig.*, 2023 WL 2711552 (S.D.N.Y. Mar. 30, 2023) (granting summary judgment and dismissing securities class action five years after initially surviving motion to dismiss).  In their motions to dismiss, Defendants argued, among other things, that any alleged bribery was independent of and insufficient to establish securities fraud and that they had no duty to disclose "uncharged, unadjudicated wrongdoing." ECF 77 at 6-12.  Defendants also claimed that their statements were factually true or too "general" to be misleading, and that Lead Plaintiff could not pursue fraud claims based violations of Items 105 or 303 of SEC Regulation S-K. *Id.*  Finally, Defendants argued that the Complaint did not sufficiently allege Defendants acted with scienter. *Id.* at 12-15.

Although Lead Plaintiff is past Defendants' motions to dismiss, Defendants would no doubt continue to pursue these and additional arguments, and the costs, risks, and delays of continued litigation only increase as the parties continue to engage in fact discovery and then turn to expert discovery, class certification, summary judgment briefing, pre-trial litigation, trial, and appeal. *See Accretive*, 773 F.3d at 864 (noting that "[f]urther litigation almost certainly would have involved complex and lengthy discovery and expert testimony").  Absent settlement, this Litigation would have become a costly and time consuming battle of competing experts and credibility determinations, particularly with respect to loss causation and damages issues, to be decided by a jury.  Indeed, proving damages in securities cases can be very complicated, and Defendants would have vigorously contested loss causation and damages in this case.  Defendants have denied, for example, that any of the stock declines were caused by information correcting any alleged false and misleading statements.  *E.g.*, Stipulation, §II.B.; ECF 123 at 60-69, 103-104.

While each of the Rule 23(e)(2) factors supports preliminary approval of the Settlement, of central importance, the $173 million recovery achieved by the Settlement is an exceptional result for the Settlement Class. 2018 Advisory Committee Notes to Fed. R. Civ. P. 23 ("The relief that the settlement is expected to provide to class members is a central concern.").  The Settlement recovers

- 8 -

4867-5081-4561.v3

at least 38% of the estimated aggregate damages as calculated by Lead Plaintiff's damages consultant. This result stands in sharp contrast to the 1.8% median ratio of settlements to investor losses in securities cases in 2022 as calculated and reported upon by an economic consulting firm. *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 18, Figure 19 (NERA Economic Consulting Jan. 24, 2023); *see also Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-03187, ECF 526 (N.D. Ill. Oct. 11, 2022) (attached as Ex. 1 hereto) (approving $105 million settlement, which briefing (ECF 515-1 at 9) estimated as approximately 9.5% of damages). Accordingly, the benefits conferred far outweigh the costs, risks, and delay of further litigation and strongly support approval.

### 4. The Remaining Settlement Terms are Reasonable and Adequate, and the Settlement Treats Class Members Equitably

Rule 23(e)(2) further instructs courts to consider: (i) the effectiveness of the proposed method of distribution to the class; (ii) the terms and timing of any proposed attorney's fees; (iii) any other agreements between the parties; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). Each of these factors further supports approval of the proposed Settlement.

First, as demonstrated below in §IV, the proposed notice program is effective. The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a Claimant's claim amount pursuant to the Plan of Allocation, which will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was developed with the assistance of Lead Plaintiff's damages consultant and is based on each Claimant's purchases, acquisitions, and sales of Exelon common stock during the Settlement Class Period.

4867-5081-4561.v3

Second, Lead Counsel will request an award of attorneys' fees not to exceed 26% of the Settlement Amount, and expenses not to exceed $400,000, plus interest, all to be paid from the Settlement Fund. The application will be made at the time Lead Counsel moves for final approval of the Settlement, and the awarded fees and expenses shall be paid from the Settlement Fund, not Defendants, upon entry of the order awarding such fees and expenses.

Third, the Settling Parties have not entered into any other agreements other than a standard Supplemental Agreement Regarding Requests for Exclusion, which provides that if the number of shares of Exelon common stock purchased by Settlement Class Members who request exclusion equals or exceeds a certain amount (the "Termination Threshold"), Exelon has the option to terminate the Settlement. Stipulation, ¶8.4.[4] And fourth, the Settlement treats Settlement Class Members equitably because the proposed Plan of Allocation subjects all Members of the Settlement Class – including Lead Plaintiff – to the same formulas for distribution of the Settlement.

In sum, the proposed Settlement satisfies each of the Rule 23(e)(2) factors and should be preliminarily approved so the Notice can be sent to potential Members of the Settlement Class.

### B.      The Settlement Class Satisfies the Standards for Class Certification

The second part of the settlement approval process is to determine whether the action may be maintained as a class action for settlement purposes under Rule 23. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). The Seventh Circuit has acknowledged that in securities actions, "class certification is routine." *Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010). This case is no exception, as the proposed Settlement Class is "likely to" and does meet the requirements of both Rule 23(a) and Rule 23(b)(3) for class certification.

---

[4]   As is standard in securities class actions, such agreements are not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Termination Threshold to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

- 10 -

### 1.    The Settlement Class Satisfies Rule 23(a)

Rule 23(a) establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy of representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The proposed Settlement Class satisfies each one.

First, as to "numerosity," Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Throughout the Settlement Class Period, Exelon common stock was actively traded on the New York Stock Exchange and NASDAQ and, according to the Company's 1Q 2019 10-Q, the Company had more than 960 million shares of common stock outstanding as of March 31, 2019 (*see* Complaint, ¶239), likely resulting in hundreds or thousands of potential class members, which is more than sufficient to establish numerosity. *See Tatz v. Nanophase Techs. Corp.*, 2003 WL 21372471, at *6 (N.D. Ill. June 13, 2003) (Andersen, J.) (certifying class where 13 million company shares were outstanding and "were likely owned by hundreds of persons or entities throughout the United States").

Second, Rule 23(a)(2) requires that there be "questions of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)), but this "'is not a demanding requirement,'" as just "'one issue of fact or law common to all class members will suffice.'" *Abrams v. Van Kampen Funds, Inc.*, 2002 WL 1989401, at *3 (N.D. Ill. Aug. 27, 2002) (Hart, J.). In this case, the central questions – whether Defendants' public statements during the Settlement Class Period misrepresented or omitted material facts regarding an eight-year scheme to bribe the former speaker of the Illinois House of Representatives, Michael Madigan, and a related federal investigation – are the same for all Settlement Class Members. Similarly, the issues of whether Defendants acted with the requisite mental state and whether the prices of Exelon common stock were artificially inflated are the same for all Settlement Class Members. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of

- 11 -

claims from all class members, there is a common question."); *see also In re Groupon, Inc. Sec. Litig.*, 2014 WL 5245387, at \*1 (N.D. Ill. Sept. 23, 2014) (finding commonality where, "at the heart of Lead Plaintiff's claims, and common to the class, are whether Defendants materially misrepresented or omitted [material] information in [the Company's] Registration Statement[s]").

Third, the "typicality" requirement of Rule 23(a)(3) is satisfied because Lead Plaintiff's claims arise from the same "'event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory.'" *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Specifically, Lead Plaintiff and Members of the Settlement Class purchased shares of Exelon common stock during the Settlement Class Period pursuant to alleged false and misleading statements concealing the bribery scheme and downplaying the federal investigation, suffered damages as a result of the subsequent decline in the price of Exelon common stock, and "will use the same evidence to prove their case." *In re Bank One Sec. Litig./First Chi. S'holder Claims*, 2002 WL 989454, at \*4 (N.D. Ill. May 14, 2002).

And fourth, the "adequacy" requirement of Rule 23(a)(4) is met where: (i) the claims of the class representatives and other members of the class are not antagonistic; (ii) the class representatives are sufficiently interested in the outcome of the case; and (iii) experienced, competent counsel represent them. *See Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 173 (N.D. Ill. 2009) (St. Eve, J.). Here, Lead Plaintiff does not have interests antagonistic to the Settlement Class and has sufficient interest in the outcome of the case, as it purchased shares of Exelon stock during the Settlement Class Period and suffered the same type of alleged economic damages as the other Settlement Class Members. Further, as set forth above, Lead Plaintiff has demonstrated its vigorous prosecution of the claims in this Litigation and has retained Lead Counsel with extensive experience

4867-5081-4561.v3

and skill in litigating securities class actions, including some of the largest securities class action recoveries in this District. *See* §§II.A.-B., III.A.[5] Adequacy is satisfied.

### 2. The Settlement Class Satisfies Rule 23(b)(3)

In addition to satisfying Rule 23(a), the Settlement Class satisfies Rule 23(b)(3)'s additional requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

First, as the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." 521 U.S. at 625. In this case, as in most cases alleging violations of the federal securities laws, "[w]hether [Defendants'] statements are false . . . [w]hether the falsehoods affected the stock's price . . . [and] [w]hether the magnitude of any effect shows that the false information was 'material'" are common questions which predominate over any individual issues. *Schleicher*, 618 F.3d at 681; *see also In re Allstate Corp. Sec. Litig.*, 2020 WL 7490280, at *7 (N.D. Ill. Dec. 21, 2020) (Gettleman, J.) (finding predominance established and certifying a securities class action); *Gupta v. Power Sols. Int'l Inc.*, No. 1:16-cv-08253, ECF 139 at ¶2 (N.D. Ill. Jan. 24, 2019) (same) (Kendall, J.) (attached as Ex. 2 hereto).

Second, resolution of this case through a class action is far superior to litigating hundreds or thousands of individual claims where the expense for a single investor could exceed the individual's loss. *See Bank One*, 2002 WL 989454, at *8 ("A class action is a superior means to adjudicate claims of class members who would be overwhelmed . . . if they attempted to prosecute their

---

[5]    *See also, e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion settlement obtained by Robbins Geller as lead counsel); *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (St. Eve, J.) ($200 million settlement obtained by Robbins Geller as lead counsel), *aff'd*, 739 F.3d 956 (7th Cir. 2013); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at *1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) ($60 million settlement obtained by Robbins Geller as co-lead counsel).

- 13 -

individual claims."). In sum, the Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and should be certified in conjunction with the Settlement.

## IV. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, the parties negotiated the form of the Notice to be disseminated to Settlement Class Members whose names and addresses can be identified through Exelon's transfer records. In addition, the Claims Administrator will engage in a standard and extensive outreach to entities that commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. The parties further propose to supplement the mailed Notice with a Summary Notice published once in a national news publication and once over a national newswire service. The notice plan here is very similar to that approved by this Court in *Gupta*, ECF 139 at ¶¶7-8 and other courts in this District. *E.g.*, *Azar v. Grubhub Inc.*, No. 1:19-cv-07665, ECF 99 at ¶¶6-8 (N.D. Ill. Oct. 14, 2022) (Kennelly, J.) (attached as Ex. 3 hereto). The Notice and Summary Notice are attached to the Notice Order as Exhibits 1 and 3, respectively.

Furthermore, the Notice includes all of the information required by the PSLRA,[6] as well as additional relevant information in securities class actions. It describes the Settlement, the Settlement Amount, and the average recovery per potentially damaged share if claims for 100% of such shares

---

[6] The PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7).

are made ($0.80); states the parties' disagreement over damages and liability; and describes the Plan of Allocation. In addition, the Notice briefly explains the nature, history, and status of the Litigation; sets forth the definition of the Settlement Class; states the Settlement Class' claims and issues; discusses the rights of persons who fall within the definition of the Settlement Class; summarizes the reasons the parties are proposing the Settlement; and describes counsel's fee and expense application. Further, the Notice includes detailed information about the process for requesting exclusion from the Settlement Class or objecting. For those Settlement Class Members who wish to participate in the Settlement, the Notice provides instructions for completing and submitting the Claim Form that accompanies the Notice. The Summary Notice also informs Settlement Class Members that copies of the Notice and Claim Form may be obtained by contacting the Claims Administrator, or by downloading them from the case specific website. Finally, the Notice sets forth the date, time, and place of the Settlement Hearing.

The contents of the Notice and Summary Notice satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA. Accordingly, in granting preliminary approval of the proposed Settlement, Lead Plaintiff respectfully requests that the Court also approve the parties' proposed form and method of giving notice to the Settlement Class.

## V.     CONCLUSION

For all of the foregoing reasons, the proposed Settlement warrants the Court's preliminary approval, and Lead Plaintiff respectfully requests that the Notice Order be entered.[7]

---

[7]    Pursuant to this Court's case procedures, a Word version of the proposed Notice Order is being concurrently submitted to the Court's proposed orders inbox. For the dates that need to be added to the proposed Notice Order, Lead Plaintiff proposes the schedule attached as Appendix A. This schedule aligns with schedules routinely entered in securities class actions and allows time for mailing of notice and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715, et seq.

4867-5081-4561.v3

DATED:  May 26, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN GILLIAM (IL Bar # 6332723)


                    s/ James E. Barz
                 JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 16 -

4867-5081-4561.v3

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 26, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ James E. Barz
JAMES E. BARZ

ROBBINS GELLER RUDMAN
& DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
Email:  jbarz@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-08209 Flynn v. Exelon Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amy C. Andrews**
  aandrews@rshc-law.com,docketdept@rshc-law.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mari Byrne**
  mari.byrne@davispolk.com,paige.whitaker@davispolk.com,ecf.ct.papers@davispolk.com,julian.hernandez@davispolk.com,nicole.intrieri@davispolk.com,kennedi.willibert@davispolk.com,erin.hill@davispolk.com,matthew.garry@davispolk.com,melissa.english@davispolk.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Charles Crowl**
  mcrowl@rshc-law.com,docketdept@rshc-law.com,ssluch@rshc-law.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com,efilings_cmst@ecf.courtdrive.com,lhoeksema@cohenmilstein.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **David Andrew Gordon**
  dgordon@sidley.com,efilingnotice@sidley.com,david-gordon-4155@ecf.pacerpro.com,jwheeler@Sidley.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Laurie Largent**
  LLargent@rgrdlaw.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com,scott-lassar-4695@ecf.pacerpro.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tsayre@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Louis Carey Ludwig**
  lcludwig@pomlaw.com,kgutierrez@labaton.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Francis P. Mcconville**
  fmcconville@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Edmund Polubinski , III**
  Edmund.polubinski@davispolk.com,ecf.ct.papers@davispolk.com,allie.rutter@davispolk.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,ppuerto@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James P Rouhandeh**
  rouhandeh@davispolk.com,ecf.ct.papers@davispolk.com

- **Jared Matthew Schneider**
  jared@jaredschneider.com

- **Julia Kathryn Schwartz**
  julia.schwartz@usdoj.gov,alexandra.dumitriu@usdoj.gov

- **Heather Benzmiller Sultanian**
  hsultanian@sidley.com,dvelkovich@sidley.com,efilingnotice@sidley.com,heather-sultanian-3303@ecf.pacerpro.com

- **United States of America**
  julia.schwartz@usdoj.gov

- **Brian O'Connor Watson**
  bwatson@rshc-law.com,docketdept@rshc-law.com

- **Jennifer Martin Wheeler**
  jwheeler@sidley.com,jennifer-4277@ecf.pacerpro.com,efilingnotice@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Jeanne M. Jones
,

Joseph Nigro
,