UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.: 1:19-cv-08209 |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| | ) | Judge Virginia M. Kendall |
| vs. | ) ) | Magistrate Judge Susan E. Cox |
| | ) | |
| EXELON CORPORATION, et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION

4886-8339-6460.v2

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.   SUMMARY OF THE LITIGATION ...................................................................2

III.  LEAD PLAINTIFF HAS PROVIDED NOTICE IN COMPLIANCE WITH
RULE 23 AND DUE PROCESS...........................................................................4

IV.  ARGUMENT ........................................................................................................5

      A.     The Proposed Settlement Warrants Final Approval ..................................5

            1.    Lead Plaintiff and Lead Counsel Adequately Represented the
Settlement Class..........................................................................6

            2.    The Settlement Resulted from Arm's-Length Negotiations .........7

            3.    The Settlement Provides a Favorable Benefit to the Settlement
Class Considering the Costs, Risks, and Delay of Trial and Appeal ...........7

                  a.    Risks to Establishing Liability .........................................8

                  b.    Risks Related to Proving Loss Causation and Damages .................9

                  c.    The Expected Delays and Costs of Trial and Appeal .....................9

            4.    The Settlement Is Fair and Adequate Under the Remaining
Rule 23(e)(2) Factors .................................................................11

                  a.    The Method for Distributing Relief Is Effective............................12

                  b.    Counsel's Fees Are Reasonable.......................................................12

                  c.    Settlement-Related Agreements.......................................................12

                  d.    The Settlement Treats Settlement Class Members Equitably........12

             5.    The Endorsement of Lead Counsel and the Reaction of the
Settlement Class Favor Approval ...............................................13

      B.     The Plan of Allocation Warrants Final Approval.....................................14

      C.     Class Certification Remains Warranted....................................................14

V.   CONCLUSION....................................................................................................15

4886-8339-6460.v2

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Glickenhaus & Co. v. Household Int'l, Inc.,*
   787 F.3d 408 (7th Cir. 2015) ......................................................................................10

*In re Career Educ. Corp. Sec. Litig.,*
   2008 WL 8666579 (N.D. Ill. June 26, 2008) ................................................................7

*In re Goldman Sachs Grp., Inc. Sec. Litig.,*
   579 F. Supp. 3d 520 (S.D.N.Y. 2021) .........................................................................10

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) .........................................................................................5

*Macovski v. Groupon, Inc.,*
   No. 1:20-cv-02581, ECF 110-1 (N.D. Ill. June 27, 2022) ..........................................14

*Macovski v. Groupon, Inc.,*
   2022 WL 17256387 (N.D. Ill. Oct. 28, 2022) ............................................................14

*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP,*
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .......................................................10, 14

*Reynolds v. Ben. Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002) .......................................................................................11

*Rubinstein v. Gonzalez,*
   No. 1:14-cv-09465, ECF 274-1 (N.D. Ill. June 19, 2019) .........................................12

*Rubinstein v. Gonzalez,*
   No. 1:14-cv-09465, ECF 297 (N.D. Ill. Oct. 22, 2019) .............................................13

*Schulte v. Fifth Third Bank,*
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................10, 13

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.,*
   No. 1:15-cv-03187, ECF 527 (N.D. Ill. Oct. 13, 2022) .............................................11

*Wong v. Accretive Health, Inc.,*
   773 F.3d 859 (7th Cir. 2014) ............................................................................... *passim*

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................................4, 5, 14
   Rule 23(a)....................................................................................................................14, 15
   Rule 23(b)(3)................................................................................................................14, 15
   Rule 23(e)(2)..........................................................................................................6, 7, 11, 13

4886-8339-6460.v2

**Page**

Rule 23(e)(2)(A) ........................................................................................................6
Rule 23(e)(2)(A)-(D) ................................................................................................5
Rule 23(e)(2)(B)........................................................................................................7
Rule 23(e)(2)(C)........................................................................................................7
Rule 23(e)(2)(C)(ii)-(iv)..........................................................................................11
Rule 23(e)(2)(D) ......................................................................................................11
Rule 23(e)(3)............................................................................................................11

4886-8339-6460.v2

## I. INTRODUCTION

Lead Plaintiff Local 295 IBT Employer Group Pension Trust Fund ("Lead Plaintiff" or the "Pension Fund") respectfully submits this memorandum in support of its motion for final approval of the Settlement of the claims in this Litigation against Defendants.[1] The $173 million all-cash Settlement is the result of Lead Plaintiff's and Lead Counsel's diligent efforts in litigating this matter and the parties' arm's-length settlement negotiations with the assistance of an experienced and well-respected mediator, the Honorable Layn R. Phillips (Ret.) of Phillips ADR Enterprises. It is believed to be the seventh largest securities class action settlement ever in the Seventh Circuit[2] and an exceptional result for the Settlement Class and therefore merits approval.

This case has been vigorously litigated from its commencement, as Defendants have contested the claims throughout. The Settlement is the product of Lead Counsel's substantial efforts, including, having: conducted a thorough investigation that included analysis of SEC filings, media, analyst reports, press releases, shareholder communications, relevant case law and authorities, and publicly-available information; prepared the detailed, 252-paragraph Complaint; prepared an extensive brief in opposition to Defendants' motions to dismiss (which were denied); conducted significant written discovery served on Defendants and more than 65 non-parties, resulting in the production, review, and analysis of over 2.5 million pages of documents; negotiated discovery and privilege disputes in more than 80 meet and confers and filed a motion to compel;

---

[1] The Defendants are Exelon Corporation ("Exelon"), Commonwealth Edison Company ("ComEd," together with Exelon, the "Company"), Christopher M. Crane, William A. Von Hoene, Jr., Anne R. Pramaggiore, and Joseph Dominguez (collectively, "Defendants"). Capitalized terms used herein have the meanings provided in the Stipulation of Settlement dated May 26, 2023 (ECF 193) (the "Stipulation"). Citations are omitted and emphasis is added throughout unless otherwise noted.

[2] *See, e.g.*, Jarett Sena, Esq., *Exelon, ComEd Pay $173 Million Over Illinois Bribery Scandal*, INSTITUTIONAL SHAREHOLDER SERVICES (June 15, 2023), https://insights.issgovernance.com/posts/exelon-comed-pay-173-million-over-illinois-bribery-scandal/.

retained and worked with experts; and prepared for and engaged in arm's-length negotiations between highly-experienced counsel.[3] The $173 million Settlement provides the Settlement Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation. Lead Counsel has concluded that the Settlement is a very good result for the Settlement Class based on its diligent prosecution of the Litigation, as well as the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses, the legal and factual issues presented, the likelihood of obtaining a larger judgment against Defendants after trial, and past experience in litigating similar actions. Even if Lead Plaintiff was successful at trial, any recovery remained uncertain and would have been years down the road. Lead Plaintiff, who was court-appointed and has a significant stake in the Litigation, also believes that the Settlement is in the best interest of the Settlement Class. *See* accompanying Declaration of Linda Kellner on Behalf of Local 295 IBT Employer Group Pension Trust Fund ("Kellner Decl."), ¶4.

Lead Plaintiff respectfully submits that the Settlement is an excellent recovery and the Plan of Allocation, which was developed by Lead Counsel and its damages consultant based on an assessment of the damages theories asserted in the Litigation, is fair, reasonable, and adequate, so both should be approved.

## II.     SUMMARY OF THE LITIGATION

On September 16, 2020, Lead Plaintiff filed the operative Complaint for Violations of the Federal Securities Laws (the "Complaint"). ECF 65. The Complaint alleges violations of §§10(b) and 20(a) of the Exchange Act on behalf of a class of all purchasers of Exelon common stock

---

[3]     *See* accompanying Declaration of James E. Barz in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Barz Decl."), ¶5.

- 2 -

4886-8339-6460.v2

between February 8, 2019 and October 31, 2019, inclusive. Among other things, the claims allege Defendants made false and misleading statements and omissions that: (i) concealed from investors that ComEd (an Exelon subsidiary) and certain executives engaged in an eight-year scheme to bribe the former speaker of the Illinois House of Representatives, Michael Madigan, to secure favorable legislation; and (ii) misleadingly downplayed the government's investigation of the Company. The Complaint alleges that the statements and omissions artificially inflated Exelon's stock price and when the truth was disclosed, the stock price declined, resulting in substantial damages to the Settlement Class.

On November 18, 2020, Defendants moved to dismiss. ECFs 73, 75. Lead Plaintiff opposed (ECF 85), and on April 21, 2021, this Court denied the motions. ECF 100. Defendants thereafter moved for certification of interlocutory appeal. ECFs 114, 117. Lead Plaintiff again opposed (ECF 124) and the Court denied Defendants' motion (ECF 142).

On September 9, 2021, the United States of America, through the U.S. Attorney for the Northern District of Illinois, moved to intervene in the Litigation and for a stay of discovery. ECF 127. On September 23, 2021, the Court granted the motion and stayed discovery in the Litigation. ECF 130. Discovery resumed on November 16, 2021, when the Court entered the Amendment to the Agreed Confidentiality Order, which placed restrictions on the scope of permitted discovery, including preventing Lead Plaintiff from obtaining Defendants' communications with the government. ECF 137; *see also* ECF 152 (amending confidentiality order to permit certain additional discovery); ECF 160 (same, including certain communications with the government).

In discovery, Lead Plaintiff served document requests on Defendants and more than 65 non-parties which resulted in the production of over 2.5 million pages of documents. Lead Plaintiff also served more than 70 interrogatories and more than 350 requests for admission on Defendants,

4886-8339-6460.v2

except Defendant Pramaggiore.[4] Those Defendants provided initial answers to the written discovery, and then amended multiple times to respond to arguments by Lead Counsel. On March 23, 2023, Lead Plaintiff moved to compel the production of documents in the possession of a third party public relations firm that were being withheld or redacted by Defendant Exelon. ECF 166. On April 20, 2023, Exelon filed its opposition (ECF 182), and the motion remained pending at the time the Settling Parties reached agreement to settle the Litigation.

In March 2022, the parties commenced mediation efforts presided over by the Honorable Layn R. Phillips (Ret.) of Phillips ADR Enterprises. The parties participated in an all-day mediation session with Judge Phillips on March 8, 2022, but did not reach an agreement. Thereafter, the parties continued informal discussions but were unable to reach agreement and agreed to a second in-person mediation. On April 21, 2023, the parties participated in another all-day mediation session with Judge Phillips, but again did not reach an agreement. On April 22, 2023, Judge Phillips issued a "mediator's recommendation" to settle the Litigation for $173 million, which the parties accepted.

## III. LEAD PLAINTIFF HAS PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved the form and content of the Notice, Proof of Claim, and Summary Notice, as well as Lead Plaintiff's proposed plan for the distribution and mailing of the Notice, which included all the information required by Rule 23 and the PSLRA. *See* ECF 198, ¶6. As detailed in the accompanying declaration of the Claims Administrator, Gilardi & Co. LLC, as of August 2, 2023, more than 220,600 copies of the

---

[4] Defendant Pramaggiore moved for a stay of testimonial discovery in the Litigation due to her status as a defendant in the related criminal matter. ECFs 111, 119.

4886-8339-6460.v2

Notice have been mailed to potential Settlement Class Members, brokers, and nominees.[5] In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire* on July 7, 2023. *Id.*, ¶12. The Claims Administrator has also established a dedicated Settlement website, www.ExelonSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice and other important documents. *Id.*, ¶14. This combination of individual notice by first-class mail to Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## IV. ARGUMENT

### A. The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Under Rule 23, as amended in 2018, a district court may approve a class action settlement upon finding "that it is fair, reasonable, and adequate" after considering whether: (1) the class representatives and counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, among other things, the costs, risks, and delay of trial and appeal; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). Prior to the Rule 23 amendment, the Seventh Circuit provided the following factors for district courts to consider:

> "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation;

---

[5] *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, dated August 2, 2023, ¶11 ("Gilardi Decl."), submitted herewith.

- 5 -

(3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed."

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[6]

The $173 million all-cash recovery satisfies the Rule 23(e)(2) and *Accretive* factors.

### 1.    Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

As detailed herein, in the Barz and Lead Plaintiff declarations, and in the Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), both Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class by diligently prosecuting this Litigation and securing the favorable Settlement, through the extensive litigation efforts detailed herein. *See supra*, §II.

Further, in actively overseeing and participating in this Litigation, Lead Plaintiff communicated with Lead Counsel about case developments and litigation strategy, reviewed pleadings and briefs, and gathered and reviewed documents and information in response to Defendants' discovery requests. Kellner Decl., ¶3. This diligent and adequate representation of the Settlement Class resulted in an exceptional result and strongly supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

---

[6]    The Advisory Committee Notes to the 2018 amendments indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

- 6 -

### 2. The Settlement Resulted from Arm's-Length Negotiations

Rule 23(e)(2) next advises district courts to consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

Here, the Settling Parties reached the Settlement only after protracted, arm's-length negotiations between experienced counsel, including two mediation sessions with Judge Phillips, an experienced mediator. *See* Barz Decl., ¶¶5-6. At the time of the mediations, Lead Plaintiff and Lead Counsel had achieved substantial litigation victories, were well into discovery, and were therefore well-informed of the strengths and weaknesses of the claims.

The mediations involved the further exchange of three briefs and additional correspondence regarding the parties' respective views on the strength of the claims and defenses, class certification, potentially available insurance coverage, and issues related to loss causation and damages. The negotiations were hard-fought, as reflected by the contested litigation and inability to settle for over 13 months between mediations. *Id.* The parties were only able to reach an agreement after a "mediator's recommendation" by Judge Phillips to settle for $173 million. *See id.*, ¶6. This contentious, well-informed, arm's-length negotiation process supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of securities class action settlement where "[t]he settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator"); *In re Career Educ. Corp. Sec. Litig.*, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (Lefkow, J.) (same).

### 3. The Settlement Provides a Favorable Benefit to the Settlement Class Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2) next advises district courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). The Seventh Circuit has likewise instructed courts to consider: (1) the strength

of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; and (3) the stage of the proceedings and the amount of discovery completed. *See Accretive*, 773 F.3d at 863-64. Each of these factors supports approval.

### a. Risks to Establishing Liability

While Lead Plaintiff believes that it had assembled a strong case regarding Defendants' liability, a finding in favor of the Settlement Class at trial was never assured. Lead Plaintiff would need to prove to the satisfaction of the Court and jury that Defendants made material false and misleading statements or omissions to investors with scienter – *e.g.*, the intent to defraud. Defendants have adamantly denied liability. *See* ECFs 73, 75, 76, 77 (Defendants' motions to dismiss).

Defendants argued, among other things, that even though ComEd entered into a Deferred Prosecution Agreement ("DPA") with the U.S. government, any alleged bribery scheme by ComEd in the DPA was independent of and insufficient to establish securities fraud against ComEd or any other Defendant. For example, Defendants argued that the securities laws imposed no duty to disclose "uncharged, unadjudicated wrongdoing" and that the alleged misstatements were too "general" to be misleading. ECF 77 at 6-12. Defendants also emphasized that "it was only ComEd, and not Exelon or any of the Individual Defendants, that admitted to any wrongdoing," arguing that the Complaint failed "to confront the inconvenient fact that statements and admissions made by just one defendant may not be attributed to others." *Id.* at 1. Finally, Defendants argued that the Complaint did not sufficiently allege Defendants acted with scienter because, for example, "[w]hether a subsidiary violated §10(b) and whether its parent did so 'are different questions,' and 'it is insufficient to infer a parent's *scienter* merely from its subsidiary's bad conduct.'" *Id.* at 13 (emphasis in original); *see also id.* at 12-15.

4886-8339-6460.v2

Although the Court denied Defendants' motions to dismiss, that did not assure that liability would be established at trial. Defendants no doubt would continue to assert that the involvement in a bribery scheme by some employees was insufficient to establish liability under the securities laws at summary judgment and trial against these Defendants.[7]

### b. Risks Related to Proving Loss Causation and Damages

Lead Plaintiff faced further risks and uncertainty in proving loss causation and damages. Loss causation is challenging to prove as Defendants likely would have argued: (i) the corrective information was already publicly known at the time of the alleged disclosures because the government's investigation had been widely publicized in the media; and (ii) the announcement of Defendant Pramaggiore's retirement, which was followed by a substantial stock decline, did not reveal any bribery scheme or the falsity of any prior misstatements. *See* Complaint, ¶¶145-148. This would have resulted in a battle of the experts, the outcome of which is difficult to predict and uncertain. *See Accretive*, 773 F.3d at 863 (approving settlement over objection and noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling").

### c. The Expected Delays and Costs of Trial and Appeal

The "'complexity, length, and expense of further litigation'" through summary judgment, trial, and appeals on all of these complicated issues would have been substantial, which weighs in favor of settling the claims. *Id.* Courts have recognized that "[s]ecurities fraud litigation is long,

---

[7] Indeed, the Seventh Circuit has affirmed dismissal of another class action relating to the conduct in the DPA, holding that an action brought on behalf of a class of ComEd customers that claimed to have paid too much as a result of the bribery scheme failed to establish damages. *See* Fee Memorandum at 9.

- 9 -

complex and uncertain" (*Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.)), and this case is no exception.

First, the parties had a massive amount of documents to analyze and both sides would be engaged in numerous fact and expert depositions. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("'The costs associated with discovery in complex class actions can be significant.'"). Lead Plaintiff would move for class certification, which can be subject to elongated litigation and appeals. *See, e.g.*, *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 579 F. Supp. 3d 520 (S.D.N.Y. 2021) (granting class certification for a second time after original order entered six years earlier was appealed to the Second Circuit and then the Supreme Court, which remanded). Even if Lead Plaintiff was able to win on every issue, the process could span many years, with costs reducing available insurance to fund a settlement.

Second, any trial would be highly complex, lengthy, and costly. For example, the criminal bribery case against Defendant Pramaggiore and certain former ComEd lobbyists resulted in a six-week trial followed by four days of deliberation. *United States of America v. Michael McClain, et al.*, 1:20-cr-00812 (N.D. Ill.). But that case focused only on the bribery allegations in this case as it did not involve securities fraud or evidence relevant to this case, such as the preparation and dissemination of the alleged misstatements, and highly technical evidence related to loss causation and damages. Moreover, Defendants Exelon, Crane, Dominguez, and Von Hoene, were not Defendants in *U.S. v. McClain*, and therefore the evidence did not focus on their conduct. Thus, the delays and costs of continued litigation support the Settlement. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (ordering new trial on loss causation and damages 13 years after case was commenced).

In contrast to those delays and risks, the $173 million Settlement, which was obtained a week before the guilty verdicts in *U.S. v. McClain*, results in a certain and outstanding recovery. *See*

- 10 -

4886-8339-6460.v2

*Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").[8]  This Settlement is believed to be the seventh largest ever in the Seventh Circuit, and based on damage estimates by Lead Plaintiff's expert, the Settlement represents approximately 38% of the estimated aggregate damages, and could also reflect as much as 50% of recoverable damages.  *See* Barz Decl., ¶6(b).  This percentage recovery compares favorably to the median settlement recovery of 1.8% of investor losses in securities cases in 2022 as calculated and reported upon by an economic consulting firm.[9]

In short, the $173 million Settlement is a highly-favorable result, and it avoids the considerable risk, expense, and delay of further litigation.

### 4.    The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors

Rule 23(e)(2) also advises district courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class"; (ii) "the terms of any proposed award of attorney's fees, including timing of payment"; (iii) "any agreement required to be identified under Rule 23(e)(3)"; and (iv) whether the settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D).  Each of these factors supports approval.

---

[8]    *See also Accretive*, 773 F.3d at 864 (affirming approval of $14 million settlement where the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses[,] [defendant]'s motion to dismiss was fully briefed and argued before the district court[,] [f]urther litigation almost certainly would have involved complex and lengthy discovery and expert testimony[, and] [i]nsurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds").

[9]    Ex. A (Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA ECONOMIC CONSULTING (Jan. 24, 2023), at 18, Fig. 19); *see also* Ex. B (*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-03187, ECF 527 (N.D. Ill. Oct. 13, 2022) (approving $105 million settlement, which briefing (ECF 515-1 at 9) estimated as approximately 9.5% of damages)).

4886-8339-6460.v2

### a. The Method for Distributing Relief Is Effective

As explained in §III above and §IV.B. below, the methods used in the notice and claims administration process are effective and they provide Settlement Class Members with the necessary information to receive their *pro rata* share of the Settlement. *See* Gilardi Decl., Ex. A (Notice at 5-7). The claims process provides for straightforward cash payments based on the trading information provided, and it provides claimants with an opportunity to cure any deficiencies or request review by the Court of any denial of their claims. *Id.*; Stipulation, ¶6.8.

### b. Counsel's Fees Are Reasonable

As detailed in the Fee Memorandum, the proposed attorneys' fees of 26% of the Settlement Amount plus litigation expenses and charges, are reasonable in light of the result obtained, the efforts of Lead Counsel, the contingent nature of its representation, and the risks in the Litigation.

### c. Settlement-Related Agreements

The Settling Parties entered into a confidential Supplemental Agreement that establishes the conditions under which Exelon would be able to terminate the Settlement based on whether requests for exclusion from the Settlement Class reach a specified threshold. *See* Stipulation, ¶8.4. This type of agreement is standard in securities class actions. *See, e.g.*, Ex. C (*Rubinstein v. Gonzalez*, No. 1:14-cv-09465, ECF 274-1, ¶8.3 (N.D. Ill. June 19, 2019) (Dow, J.)). Lead Plaintiff and Defendants have no other agreements with each other.

### d. The Settlement Treats Settlement Class Members Equitably

Under the Plan of Allocation, eligible claimants will receive their *pro rata* share of the recovery based on, among other things, the number of shares purchased, when the shares were purchased, and whether they were sold or held. Gilardi Decl., Ex. A (Notice at 5-6). Lead Plaintiff

will receive the same type of *pro rata* recovery as all other similarly situated Exelon share purchasers. Thus, the Settlement treats Settlement Class Members equitably.

### 5. The Endorsement of Lead Counsel and the Reaction of the Settlement Class Favor Approval

In addition to the Rule 23(e)(2) factors, the Seventh Circuit has noted that the "'opinion of competent counsel,'" the "'amount of opposition to the settlement,'" and "'the reaction of members of the class to the settlement'" are also relevant considerations. *See Accretive*, 773 F.3d at 863.

Here, the claims have been litigated and settled by experienced and competent counsel. *See* Barz Decl., ¶¶5, 7, 15; *see also* http://rgrdlaw.com. Based on its extensive experience in securities class actions, Lead Counsel has determined that the Settlement is in the best interest of the Settlement Class after weighing its benefits against the risks of continued litigation. *See* Barz Decl., ¶9. This endorsement favors final approval. *See Schulte*, 805 F. Supp. 2d at 586-87 (holding opinion of counsel with "extensive experience" supports "approval of the Settlement").

Moreover, as discussed in §III above, the Claims Administrator has sent notice to tens of thousands of potential Settlement Class Members in accordance with the Preliminary Approval Order. While the deadline for the Settlement Class Members to exclude themselves or object is August 17, 2023, to date no objections and few requests for exclusion, representing a tiny fraction of outstanding shares, have been received.[10] Gilardi Decl., ¶16. The Lead Plaintiff Pension Fund is a Settlement Class Member with significant losses who participated in and oversaw the

---

[10] Of course, the mere existence of objections or requests for exclusion does not preclude approval of the agreement. *Accretive*, 773 F.3d 859 (affirming settlement approval over objection); *Schulte*, 805 F. Supp. 2d 560 (approving settlement over 10 objections); Ex. D (*Rubinstein v. Gonzalez*, No. 1:14-cv-09465, ECF 297 (N.D. Ill. Oct. 22, 2019) (Dow, J.) (approving settlement with 10 requests for exclusion)). Lead Plaintiff will file reply papers on August 31, 2023 that will address all requests for exclusion or objections received.

4886-8339-6460.v2

Litigation, and it endorses the Settlement. *See* Kellner Decl., ¶¶2-4. This favorable reaction by the Settlement Class also supports final approval.

### B.     The Plan of Allocation Warrants Final Approval

Lead Plaintiff also seeks approval of the Plan of Allocation, which is set forth in full in the Notice. *See* Gilardi Decl., Ex. A. Assessment of a plan of allocation under Rule 23 is governed by the same standard of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 WL 1568856, at *3. Here, the Plan of Allocation was developed by Lead Counsel in conjunction with its damages expert and is an equitable method of distributing the Net Settlement Fund to Authorized Claimants. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that an Authorized Claimant's Recognized Loss Amount bears to the total Recognized Loss Amount of all Authorized Claimants. *See* Gilardi Decl., Ex. A (Notice at 5-7). Calculation of an Authorized Claimant's Recognized Loss Amount will depend upon several factors, including when the shares were held, purchased, or sold. *See id*. This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, Ex. E (*Macovski v. Groupon, Inc.*, No. 1:20-cv-02581, ECF 110-1 (N.D. Ill. June 27, 2022) (setting forth similar plan of allocation)); *Macovski v. Groupon, Inc.*, 2022 WL 17256387 (N.D. Ill. Oct. 28, 2022) (Kennelly, J.) (approving plan of allocation).

### C.     Class Certification Remains Warranted

The Court previously, for settlement purposes only, preliminarily approved this Litigation as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF 198, ¶¶4-5. None of the facts regarding certification of the Settlement Class have changed since then and there has been no objection to certification. Accordingly, Lead Plaintiff respectfully requests that the Court grant final certification of the Settlement Class and appoint Lead Plaintiff

- 14 -

as class representative and Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

## V. CONCLUSION

For the reasons stated in this memorandum, in the accompanying declarations, and in the Fee Memorandum, Lead Plaintiff respectfully requests that the Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class.

DATED:  August 3, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN GILLIAM (IL Bar # 6332723)


s/ James E. Barz
JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 15 -

4886-8339-6460.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 3, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ James E. Barz
JAMES E. BARZ

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
Email: jbarz@rgrdlaw.com

## Mailing Information for a Case 1:19-cv-08209 Flynn v. Exelon Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amy C. Andrews**
  aandrews@rshc-law.com,docketdept@rshc-law.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mari Byrne**
  mari.byrne@davispolk.com,paige.whitaker@davispolk.com,ecf.ct.papers@davispolk.com,julian.hernandez@davispolk.com,nicole.intrieri@davispolk.com,kennedi.wilibert@davispolk.com,erin.hill@davispolk.com,matthew.garry@davispolk.com,melissa.english@davispolk.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Charles Crowl**
  mcrowl@rshc-law.com,docketdept@rshc-law.com,ssluch@rshc-law.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com,efilings_cmst@ecf.courtdrive.com,lhoeksema@cohenmilstein.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **David Andrew Gordon**
  dgordon@sidley.com,efilingnotice@sidley.com,david-gordon-4155@ecf.pacerpro.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Laurie Largent**
  LLargent@rgrdlaw.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com,scott-lassar-4695@ecf.pacerpro.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tsayre@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Louis Carey Ludwig**
  lcludwig@pomlaw.com,kgutierrez@labaton.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Francis P. Mcconville**
  fmcconville@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Edmund Polubinski , III**
  Edmund.polubinski@davispolk.com,ecf.ct.papers@davispolk.com,allie.rutter@davispolk.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,ppuerto@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James P Rouhandeh**
  rouhandeh@davispolk.com,ecf.ct.papers@davispolk.com

- **Jared Matthew Schneider**
  jared@jaredschneider.com

- **Julia Kathryn Schwartz**
  julia.schwartz@usdoj.gov,caseview.ecf@usdoj.gov,alexandra.dumitriu@usdoj.gov

- **Heather Benzmiller Sultanian**
  hsultanian@sidley.com,dvelkovich@sidley.com,efilingnotice@sidley.com,heather-sultanian-3303@ecf.pacerpro.com

- **United States of America**
  julia.schwartz@usdoj.gov

- **Brian O'Connor Watson**
  bwatson@rshc-law.com,docketdept@rshc-law.com

- **Jennifer Martin Wheeler**
  jwheeler@sidley.com,jennifer-4277@ecf.pacerpro.com,efilingnotice@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jeanne M. Jones
,

Joseph Nigro
,
```