UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Case No.: 1:19-cv-08209 |
| Plaintiff, ) ) | CLASS ACTION |
| vs. ) ) ) | Judge Virginia M. Kendall<br>Magistrate Judge Susan E. Cox |
| EXELON CORPORATION, et al., ) ) ) | |
| Defendants. ) ) ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

4854-6263-0252.v2

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   AWARD OF ATTORNEYS' FEES ......................................................................1

      A.    The Percentage Method Should Be Used ..................................................1

      B.    The Percentage Fee Requested Is Reasonable and Appropriate ..............3

            1.    The Request Is Consistent with Fees Awarded in This District ..................4

            2.    Lead Counsel Obtained an Excellent Result................................................7

            3.    The Requested Attorneys' Fees Are Fair and Reasonable in Light
                  of the Contingent Nature of the Representation ........................................10

            4.    The Stakes of the Litigation Support the Requested Award.....................12

            5.    The Reaction of the Settlement Class and Approval of Lead
                  Plaintiff Supports the Fee Request.............................................................12

III.  LEAD COUNSEL'S EXPENSES ARE REASONABLE....................................13

IV.   A LEAD PLAINTIFF AWARD PURSUANT TO THE PSLRA IS
      APPROPRIATE...................................................................................................14

V.    CONCLUSION....................................................................................................15

4854-6263-0252.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbott v. Lockheed Martin Corp.,*
2015 WL 4398475 (S.D. Ill. July 17, 2015) ..............................................................13

*Azar v. Grubhub, Inc.,*
No. 1:19-cv-07665, ECF 118 (N.D. Ill. Jan. 12, 2023) ...............................................5

*Azar v. Grubhub, Inc.,*
No. 1:19-cv-07665, ECF 106 (N.D. Ill. Dec. 8, 2022) ...............................................14

*Bell v. Pension Comm. of ATH Holding Co.,*
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ...............................................................2

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.,*
2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) ...........................................................5, 14

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.,*
2014 WL 4950173 (N.D. Ill. July 8, 2014)................................................................14

*Colman v. Theranos, Inc.,*
No. 5:16-cv-06822, ECF 314 (N.D. Cal. July 20, 2018) ...........................................11

*Gaskill v. Gordon,*
160 F.3d 361 (7th Cir. 1998) ........................................................................................3

*George v. Kraft Foods Global, Inc.,*
2012 WL 13089487 (N.D. Ill. June 26, 2012)...........................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.,*
787 F.3d 408 (7th Cir. 2015) ........................................................................................8

*Gress v. Commonwealth Edison Co.,*
559 F. Supp. 3d 755 (N.D. Ill. 2021),
*aff'd sub nom. South Branch LLC v. Commonwealth Edison Co.,*
46 F.4th 646 (7th Cir. 2022) ........................................................................................9

*Gress v. Commonwealth Edison Co.,*
No. 1:20-cv-4405, ECF 1 (N.D. Ill. July 28, 2020)....................................................9

*In re Akorn, Inc. Sec. Litig.,*
2018 WL 2688877 (N.D. Ill. June 5, 2018)...............................................................15

*In re Akorn, Inc. Sec. Litig.,*
No. 1:15-cv-01944, ECF 174-5, 174-6 (N.D. Ill. Feb. 19, 2018)..............................15

4854-6263-0252.v2

**Page**

*In re Broiler Chicken Antitrust Litig.,*
    2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ....................................................4, 5, 6

*In re Broiler Chicken Antitrust Litig.,*
    2022 WL 6124787 (N.D. Ill. Oct. 7, 2022) ....................................................4, 5, 6

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ....................................................................13, 14

*In re Dairy Farmers of Am., Inc.,*
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ....................................................................3

*In re JDS Uniphase Corp. Sec. Litig.,*
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ......................................................11

*In re Oracle Corp. Sec. Litig.,*
    2009 WL 1709050 (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010) ....................................................................11

*In re Stericycle Sec. Litig.,*
    35 F.4th 555 (7th Cir. 2022) .................................................................................7

*In re Sw. Airlines Voucher Litig.,*
    799 F.3d 701 (7th Cir. 2015) .................................................................................6

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ....................................................................2, 12, 13

*In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.,*
    364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................11

*Internal Imp. Fund Trs. v. Greenough,*
    105 U.S. 527 (1881) ...............................................................................................1

*Jaffe v. Household Int'l, Inc.,*
    2016 WL 10571774 (N.D. Ill. Nov. 10, 2016) .......................................................5

*Jaffe v. Household Int'l, Inc.,*
    No. 1:02-cv-05893, ECF 2267 (N.D. Ill. Nov. 10, 2016) .......................................5

*Kirchoff v. Flynn,*
    786 F.2d 320 (7th Cir. 1986) ............................................................................2, 4

*Macovski v. Groupon, Inc.,*
    2022 WL 17256417 (N.D. Ill. Oct. 28, 2022) ......................................................13

4854-6263-0252.v2

**Page**

*McKinnie v. JP Morgan Chase Bank, N.A.,*
    678 F. Supp. 2d 806 (E.D. Wis. 2009)............................................................................2

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ..................................................................................5, 6

*Robbins v. Koger Props., Inc.,*
    116 F.3d 1441 (11th Cir. 1997) ..............................................................................11

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................4, 12

*Silverman v. Motorola Sols., Inc.,*
    739 F.3d 956 (7th Cir. 2013) ....................................................................... *passim*

*Silverman v. Motorola, Inc.,*
    2012 WL 1597388 (N.D. Ill. May 7, 2012),
    *aff'd sub nom. Silverman v. Motorola Sols., Inc.,*
    739 F.3d 956 (7th Cir. 2013) ....................................................................... *passim*

*St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.,*
    2020 WL 13614342 (N.D. Ill. May 19, 2020),
    *aff'd in part, vacating in part by In re Stericycle Sec. Litig.,*
    35 F.4th 555 (7th Cir. 2022) ..............................................................................6, 14

*Sutton v. Bernard,*
    504 F.3d 688 (7th Cir. 2007) ..............................................................................2, 11

*Taubenfeld v. AON Corp.,*
    415 F.3d 597 (7th Cir. 2005) ..........................................................................4, 7, 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007)................................................................................................3

*Washtenaw Cty. Emps. Ret. Sys. v. Walgreen Co.,*
    No. 1:15-cv-03187, ECF 526 (N.D. Ill. Oct. 11, 2022) ..........................................5

*Will v. Gen. Dynamics Corp.,*
    2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..........................................................2

*Wolff v. Cash 4 Titles,*
    2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ........................................................2

*Wong v. Accretive Health, Inc.,*
    2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) ........................................................14

4854-6263-0252.v2

**Page**

*Wong v. Accretive Health, Inc.*,
No. 1:12-cv-03102, ECF 85 (N.D. Ill. Apr. 30, 2014)..............................................................14

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)...............................................................................................................13
§78u-4(a)(4) ..........................................................................................................1, 7, 14, 15

4854-6263-0252.v2

## I.  INTRODUCTION

Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), was able to secure a $173 million settlement for the class.  In awarding fees, courts consider several factors, the most important of which is the quality of work as reflected in the result obtained.  The Settlement[1] is the seventh largest securities class action settlement ever in the Seventh Circuit, and it amounts to approximately 38% of recoverable damages, which far exceeds typical recoveries in securities class actions.  *See infra* §II.B.2.  Rarer still, this large settlement was secured prior to Defendants having exhausted all legal challenges, thereby saving time and money for the Settlement Class and avoiding unnecessary burden on the judicial system.  It is a great result.

As compensation for its efforts, Lead Counsel requests an award of attorneys' fees of 26% of the $173 million Settlement Amount, plus expenses/charges ("expenses") incurred in the prosecution of the Litigation in the amount of $325,290.76, plus interest at the same rate and for the same period as that earned by the Settlement Fund.  The 26% fee request is supported and approved by the Court-appointed Lead Plaintiff and it is consistent with fees awarded in comparable class action settlements in this District.  In addition, Lead Plaintiff seeks an award of $5,775 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Settlement Class.  For the reasons set forth herein, the relief sought in this motion should be granted.

## II.  AWARD OF ATTORNEYS' FEES

### A.  The Percentage Method Should Be Used

Under the "equitable" or "common fund" doctrine established more than a century ago in *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 528 (1881), attorneys who create a common

---

[1]  Capitalized terms not defined herein have the same meanings as in the Stipulation of Settlement (ECF 193) ("Stipulation").  Citations are omitted and emphasis is added throughout unless otherwise noted.

4854-6263-0252.v2

fund for a class are entitled to an award of fees and expenses from that fund as compensation for their work.  *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007).

The "percentage" method for awarding fees (awarding a percentage of the settlement amount) incentivizes and rewards attorneys for obtaining the largest possible settlement for the class, which matters most to the clients.  While the "lodestar" method (multiplying hours by rates) has also been used in awarding fees, the lodestar method can create perverse incentives to delay settlements and run up billable hours, and thereby rewards inefficient management and staffing of cases, discourages early settlement talks, and causes unnecessary delay and motion practice instead of resolving disputes.  *See, e.g., In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (stating the lodestar approach creates the "incentive to run up the billable hours").[2]  In contingency cases, like this one, clients typically agree to percentage fees, rather than pay based on hourly rates. *See Kirchoff, 786 F.2d at 324* ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'").  Thus, "[t]he 'percentage of the fee' method is preferable" to the lodestar method "because it more closely replicates the contingency fee market rate for counsel's legal services."  *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009).

Consistent with the market practice and case law, "[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis."  *Bell v. Pension Comm. of ATH Holding Co.*, 2019 WL 4193376,

---

[2]    *See also, e.g., Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) (noting in fee-shifting case that rewarding lawyers based on hourly fees can create a "conflict of interests"); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (noting that ""hours of time expended" is a nebulous, highly variable standard, of limited significance.  One thousand plodding hours may be far less productive than one imaginative, brilliant hour."").

- 2 -

4854-6263-0252.v2

at *3, *5 (S.D. Ind. Sept. 4, 2019) (noting that while district courts have discretion to use lodestar "the use of a lodestar cross-check is no longer recommended in the Seventh Circuit"); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (stating that "it is commonplace to award the lawyers for the class a percentage of the fund" and affirming award). Indeed, judges in this District routinely use the percentage method without regard to lodestar. *See, e.g.*, *Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) (St. Eve, J.) (awarding 27.5% fee on $200 million securities class action settlement, stating it was unnecessary to consider lodestar), *aff'd sub nom. Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013) (affirming without discussion of lodestar); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844, 849 (N.D. Ill. 2015) (Dow, J.) (finding the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district" and finding "no utility in considering" lodestar). For these reasons, the percentage method should be used.

### B. The Percentage Fee Requested Is Reasonable and Appropriate

The Supreme Court has recognized that private securities actions provide a "'most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 318-19 (2007). It is well known that corporate defendants retain large firms that recruit talented lawyers through very high compensation and get paid hourly rates without regard to risks of losing.[3] Plaintiff fee awards should serve to attract equally talented lawyers to take on the risks of contingent fee representation for plaintiffs in class action cases. *See, e.g.*, *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958

---

[3] Defense rates are often much higher than those used by Robbins Geller. *See, e.g.*, Ex. A (Roy Strom, *Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder*,' BLOOMBERG LAW (June 9, 2022), https://news.bloomberglaw.com/business-and-practice/big-law-rates-topping-2-000-leave-value-in-eye-of-beholder (noting that partners at certain defense firms, including those who help clients "accused of fraud," were charging near or more than $2,000 per hour for their work)).

- 3 -

(7th Cir. 2013) (stating that "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel"); *In re Broiler Chicken Antitrust Litig.,* *2021 WL 5709250, at \*3 (N.D. Ill. Dec. 1, 2021)* (stating "[a] substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment").

Here, the requested 26% fee appropriately compensates Lead Counsel for the quality of services provided, as reflected in the result obtained, and the risks of waiting years to get paid or obtaining no compensation at all. Lead Counsel respectfully requests that the Court approve the 26% fee for the reasons that follow.

### 1. The Request Is Consistent with Fees Awarded in This District

The Seventh Circuit has held that, in awarding fees in common fund cases, district courts should "'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Taubenfeld v. AON* *Corp., 415 F.3d 597, 599 (7th Cir. 2005)*; *Silverman, 739 F.3d at 957, 958* (holding fees should "approximate the market rate" and that "[c]ontingent fees compensate lawyers for the risk of nonpayment"). In terms of market rates, had this case been litigated on an individual rather than class basis, the customary fee would be 33%-40% of the recovery. *See Kirchoff, 786 F.2d at 323* (observing that "40% is the customary fee in tort litigation" and noting contract providing for 33% fee if case settled before trial). Similarly, courts have recognized that in class action cases, "an award of 33.3% of the settlement fund is within the reasonable range." *Schulte v. Fifth Third Bank,* *805 F. Supp. 2d 560, 598 (N.D. Ill. 2011)* (Dow, J.); *see also In re Broiler Chicken Antitrust Litig.,* *2022 WL 6124787, at \*4 (N.D. Ill. Oct. 7, 2022)* (Durkin, J.) (awarding 33% in antitrust class action and noting that "the only available evidence of the 'market rate' is past awards").

4854-6263-0252.v2

Given the reputation of defense counsel, it was appropriate that Lead Plaintiff selected Robbins Geller, as it is a leading firm in this area, for example, having obtained the largest securities class action settlement in the history of the Seventh Circuit. *See* Ex. B (*Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-05893, ECF 2267 (N.D. Ill. Nov. 10, 2016) (approving $1.575 billion settlement)). The percentage sought here, 26% of the $173 million Settlement Amount, is similar to and even lower than some fees awarded to Robbins Geller in other cases in this District. *See, e.g.*, *Silverman, 739 F.3d at 959* (affirming fee award to Robbins Geller of 27.5% on $200 million settlement); *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-05893, 2016 WL 10571774, at *1 (N.D. Ill. Nov. 10, 2016) (Alonso, J.) (awarding Robbins Geller 24.68% on $1.575 billion settlement); Ex. C (*Azar v. Grubhub, Inc.*, No. 1:19-cv-07665, ECF 118 at 1-2 (N.D. Ill. Jan. 12, 2023) (Kennelly, J.) (awarding Robbins Geller 30% on $42 million settlement)); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 12767763, at *1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) (awarding Robbins Geller and co-counsel 30% on $60 million settlement).

The 26% fee request is also consistent with fees awarded in this District to other law firms in securities and other complex class actions. *See, e.g.*, Ex. D (*Washtenaw Cty. Emps. Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-03187, ECF 526 (N.D. Ill. Oct. 11, 2022) (awarding 27.5% of $105 million securities settlement to Lead Counsel where Robbins Geller served only as local counsel)); *Broiler Chicken Antitrust*, 2022 WL 6124787, at *3 (awarding 33% of $181 million antitrust settlement, net of expenses, and rejecting "declining fee scale award structures" for large settlements); *Broiler Chicken Antitrust*, 2021 WL 5709250, at *1, *5 (awarding 33% of $169.6 million antitrust settlement, net of expenses).[4]

---

[4]   Note that the 33% fee awards in these antitrust cases were based off the net settlement amount after deducting expenses and reflect roughly 32% of the gross settlement. Historically, securities class action fees have been awarded on the gross settlement amount, as in the Robbins Geller cases cited herein. However, one court recently held that, under *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir.

- 5 -

Notably, if the 26% fee is awarded in this case, the class will recover a larger portion of the settlement proceeds than in comparable cases, even when expenses are included, as reflected in the following chart:[5]



<hr />

2014), expenses and notice and administration costs should be deducted from the gross settlement amount and the fee awarded as a percentage of the remainder, or the net recovery, in a securities case. *See, e.g.*, *St. Lucie Fire Dist. Firefighters Pen. Tr. Fund v. Stericycle, Inc.*, 2020 WL 13614342, at *4 (N.D. Ill. May 19, 2020) (Wood, J.), *aff'd in part, vacating in part by In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 n.1 (7th Cir. 2022) (stating the district court's decision to deduct costs before awarding percentage fee was "not at issue on appeal"). But the court was relying on *Redman* which was a consumer class action involving a coupon settlement, and the Seventh Circuit has repeatedly noted concerns regarding assessing the actual recovery in coupon settlements because such cases can have a low claims rate and might provide for any unclaimed funds to revert back to the defendants. *See Redman*, 768 F.3d at 629-37; *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015) (stating "[a]s applied to coupon settlements," calculating attorneys' fees as a percentage of the value of the coupons issued "invites abuse"). In contrast, the Seventh Circuit has affirmed fees awarded as a percentage of the gross settlement in securities class actions. *See Silverman*, 739 F.3d at 959 (affirming award of 27.5% of $200 million settlement).

[5]     *See Broiler Chicken Antitrust*, 2021 WL 5709250, at *1, *5 (awarding 34.7% of gross settlement for attorneys' fees and expenses); *Broiler Chicken Antitrust*, 2022 WL 6124787, at *1, *5 (awarding 36.8% of gross settlement for attorneys' fees and expenses); *Silverman*, 2012 WL 1597388, at *4 (awarding 29.9% of gross settlement as attorneys' fees and expenses); Ex. D (*Walgreen Co.*, ECF 526 (awarding 29.64% of gross settlement for attorneys' fees and expenses)).

Thus, if awarded, the 26% fee will still result in a greater percentage of the settlement going to the Settlement Class in this case than in those noted, as it is fair, reasonable, and consistent with prior fee awards in this District.[6]

### 2. Lead Counsel Obtained an Excellent Result

Clients care most about results, and in awarding fees, courts should consider the "quality of legal services rendered." _Taubenfeld_, 415 F.3d at 600; _see also Silverman_, 2012 WL 1597388, at *3 (noting that counsel's representation "was significant, both in terms of quality and quantity"). Here, the quality is reflected both in the work done and the result obtained.

First, a lot of work went into securing this result. From the outset, this case required a determined investigation and the skill to respond to a host of complex legal and factual defenses raised by Defendants in their motions. _See_ ECFs 73, 75, 114. Lead Counsel spent over 31,600 hours of attorney and paraprofessional time investigating the claims, drafting the detailed Complaint, preparing an extensive brief in opposition to Defendants' motions to dismiss and for interlocutory appeal (which were denied), conducting substantial discovery (including obtaining and analyzing more than 2.5 million pages of documents), and preparing for and participating in two mediation sessions that included the exchange of detailed mediation statements regarding the parties' respective positions on the claims, defenses, and damages.[7] Lead Counsel demonstrated

---

[6]    Note that the Seventh Circuit recently remanded a 25% fee award in a securities class action that was clearly distinguishable. _See In re Stericycle Sec. Litig._, 35 F.4th 555, 568 (7th Cir. 2022). Specifically, that case settled prior to a ruling on a motion to dismiss, the Seventh Circuit was "not as convinced the settlement was a good outcome," the settlement followed the defendants' settlements with other parties in related litigation, and the lead plaintiff had apparently negotiated a lower fee at the outset. _Id._ at 561-67. In contrast, this case settled after the motion to dismiss and substantial discovery, it is an excellent result, there had been no other settlements at the outset of the case, and the Lead Plaintiff supports the fee request.

[7]    _See_ accompanying Declaration of James E. Barz in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Barz Decl."), ¶¶5(a)-(m).

its willingness to continue to litigate the claims rather than accept a settlement that was not in the best interest of the Settlement Class by refusing to settle at the first mediation. *See id.*, ¶5(l). The case did not even settle at the second mediation, rather Lead Counsel pressed forward and only settled after a mediator's recommendation. *See id.*, ¶6.

Second, Lead Counsel was able to secure a (relatively) prompt resolution that benefits the class and preserves judicial resources. Since the amount at stake is so high, it is very rare and difficult to settle these cases at a high amount prior to defendants exhausting their legal challenges through summary judgment or even appeals. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (securities class action prosecuted by Robbins Geller filed in 2002 settled in 2016 after trial and appeal). Lead Counsel, based on its reputation and willingness to litigate as long as necessary (for example, the 14 years it took in *Household*), was able to convince Defendants to settle at a high amount at a reasonable stage of Litigation.

Third, the Settlement is the seventh largest securities class action settlement in the history of the Seventh Circuit. *See, e.g.*, Jarett Sena, Esq., *Exelon, ComEd Pay $173 Million Over Illinois Bribery Scandal*, INSTITUTIONAL SHAREHOLDER SERVICES (June 15, 2023), https://insights.issgovernance.com/posts/exelon-comed-pay-173-million-over-illinois-bribery-scandal/. Not only is it a large settlement, but it is more remarkable relative to the maximum estimated damages. The $173 million recovery is approximately 38% of estimated damages, and in considering arguments that were likely to have been advanced concerning damages, could also reflect as much as 50% of damages. *See* Barz Decl., ¶6(b). This is much higher than typical settlements in securities class actions. *See* Settlement Memorandum, §IV.A.3.c (noting settlements estimated and calculated at 1.8% to 9.5% of damages).

Fourth, a favorable recovery was not guaranteed in this case. While the government prevailed in recent criminal trials concerning the underlying bribery scheme, at the time the

- 8 -

4854-6263-0252.v2

Pension Fund and Lead Counsel sought to be appointed to lead this action in February 2020, neither Exelon, ComEd, nor any of their employees or lobbyists had publicly admitted to any wrongdoing. Additionally, there were no pending indictments, much less criminal convictions, related to the bribery scheme and no assurance that there would be any. Moreover, as Defendants argued in this case, even after ComEd entered into a Deferred Prosecution Agreement ("DPA"), the mere existence of a bribery scheme was insufficient to establish liability under the securities laws, as this case involved different defendants and elements of the claims.[8] *See, e.g.*, ECF 77 at 1, 3-11(moving to dismiss this case and arguing the Defendants had no knowledge of and no duty to disclose an "uncharged, unadjudicated" bribery scheme).

Indeed, although Lead Counsel succeeded in defeating the motions to dismiss in this case, a consumer class action alleging that the bribery scheme described in the DPA caused consumers to overpay for electricity rates was dismissed. *See* Ex. E (*Gress v. Commonwealth Edison Co.*, No. 1:20-cv-4405, ECF 1 at 9 (N.D. Ill. July 28, 2020)* (alleging RICO violations against ComEd and claiming over $150 million in damages)); *Gress v. Commonwealth Edison Co.*, 559 F. Supp. 3d 755 (N.D. Ill. 2021)* (granting ComEd's motion to dismiss), *aff'd sub nom. South Branch LLC v. Commonwealth Edison Co.*, 46 F.4th 646 (7th Cir. 2022)*. Similarly, even the SEC, which opened an investigation into the Company after the DPA was entered nearly four years ago, has yet to even file a case much less obtain a settlement.

And fifth, the $173 million result is all the more impressive given Lead Counsel was opposed by, not one, but three large law firms (Davis Polk & Wardwell LLP, Riley Safer Holmes

---

[8]    Defendants also repeatedly argued that the conduct or admissions of ComEd could not be attributed to Exelon, whose publicly-traded stock forms the basis of this securities action, or the other Defendants. *See, e.g.*, *id.* at 8 (arguing that the Complaint failed "to confront the inconvenient fact that statements and admissions made by just one defendant may not be attributed to others" and "that it was only ComEd, and not Exelon or any of the Individual Defendants, that admitted to any wrongdoing").

4854-6263-0252.v2

& Cancila LLP, and Sidley Austin LLP).  In the face of this formidable opposition, there can be no doubt that Lead Counsel provided quality legal services that persuaded Defendants to settle the Litigation on such favorable terms.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Nature of the Representation

"Contingent fees compensate lawyers for the risk of nonpayment.  The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958; *see also Taubenfeld*, 415 F.3d at 600 (stating courts should consider the fact "that lead counsel was taking on a significant degree of risk of nonpayment").  Lead Counsel undertook this Litigation on a contingent fee basis, assuming significant risk that defense counsel does not face.

Unlike counsel for Defendants, who are paid an hourly rate and paid for their time and expenses on a regular (*e.g.*, monthly) basis, regardless of whether they win or lose, Lead Counsel had no such guarantee that it would ever be paid and only knew that it would have to wait several years for any payment while incurring substantial expenses.  While the outcome here was favorable, there was no guarantee it would be at the time counsel agreed to take the case.  In fact, the dismissal rate in securities cases is relatively high as they are well known to be complex and difficult due to the heightened pleading standards.  *See, e.g.*, Settlement Memorandum, Ex. A at 11, Fig. 11 (report from NERA Economic Consulting noting that 61% of securities class actions filed between January 2013 and December 2022 had motions to dismiss granted, some without prejudice).  As noted, Lead Counsel had to overcome in this case both motions to dismiss and a motion for certification for interlocutory appeal.  ECFs 73, 75, 144.

Next, securities class actions continue to be risky even after surviving a motion to dismiss because they take so many years to resolve and are not infrequently dismissed even at later stages

4854-6263-0252.v2

of the case.[9] Although Lead Plaintiff successfully opposed Defendants' motions to dismiss, Lead Plaintiff faced risks in certifying a class, defeating Defendants' motion for summary judgment, defeating inevitable *Daubert* challenges to Lead Plaintiff's experts, and prevailing at trial and on appeal. *See* Settlement Memorandum, §IV.A.3. Moreover, apart from proving liability, proving damages in securities cases is particularly complex and requires expert testimony to establish the amount – and indeed the existence – of actual damages. *See id.*

Finally, even in cases with successful outcomes, Lead Counsel has to wait years to be compensated. As noted, in *Household*, No. 1:02-cv-05893 (N.D. Ill.), Lead Counsel litigated for 14 years before reaching a settlement. Because the fee in this matter was entirely contingent, the only certainty was that Lead Counsel would have to commit to years of work without pay, knowing that there would be no fee without a successful result and that such a result would be realized only after considerable effort and expense. Thus, the risks and contingent nature of counsel's representation strongly favors approval of the requested fee. *See, e.g.*, *Sutton, 504 F.3d at 694* (reversing reduced fee award "[b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated").

---

[9] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after Robbins Geller spent eight years litigating with an approximate lodestar of $40 million and over $6 million in unreimbursed expenses), *aff'd, 627 F.3d 376 (9th Cir. 2010)*; *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict); Ex. F (*Colman v. Theranos, Inc.*, No. 5:16-cv-06822, ECF 314 (N.D. Cal. July 20, 2018) (stipulating to dismissal of securities class action following financial collapse of defendant corporation after litigation by Robbins Geller)); *see also In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) (noting that "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy").

4854-6263-0252.v2

**4.    The Stakes of the Litigation Support the Requested Award**

The Court should also consider the "stakes of the case" in assessing a reasonable attorneys' fee. *Synthroid*, 264 F.3d at 721. As in other commercial class actions, the stakes here were high "given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved." *Schulte*, 805 F. Supp. 2d at 598. Securities cases are expensive to litigate, as they typically involve years of complicated litigation and require retention of expensive experts. At the time Lead Counsel was appointed here, it committed itself to represent the class for an unknown length of years and to advance substantial expenses and retained experts to navigate the complex issues. Thus, the stakes of the case support the fee award.

**5.    The Reaction of the Settlement Class and Approval of Lead Plaintiff Supports the Fee Request**

Pursuant to this Court's June 9, 2023 Preliminary Approval Order (ECF 198), more than 220,600 copies of the Notice have been mailed to potential Settlement Class Members and nominees. Settlement Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees not to exceed 26% of the Settlement Amount, plus expenses in an amount not to exceed $400,000, plus interest earned on both amounts. Settlement Class Members were also advised of their right to object to Lead Counsel's fee and expense request. While the deadline to file objections – August 17, 2023 – has not yet passed, to date, no objection has been received. Lead Counsel will address any objections received in its reply brief to be filed on August 31, 2023.

Moreover, Lead Plaintiff, who worked with counsel throughout the Litigation, has approved the 26% fee request. *See* Kellner Decl., ¶5. Unlike consumer and other class action cases where lead plaintiffs may have little or no stake in the litigation, securities fraud cases have unique procedures wherein the court appoints as lead plaintiff the movant with the largest financial interest, which serves to protect class members. *See Silverman*, 739 F.3d at 959 (stating it is "a

- 12 -

premise of several rules in the Private Securities Litigation Reform Act" that investors with a large stake in the settlement fund, in "looking out for themselves, help to protect the interests of class members with smaller stakes"); 15 U.S.C. §78u-4(a)(3)(B). Thus, the support of the Court-appointed Lead Plaintiff, a sophisticated institutional investor, combined with the absence of objection by any other sophisticated institutional investor, weighs significantly in favor of its reasonableness. *See Macovski v. Groupon, Inc.*, 2022 WL 17256417, at *2 (N.D. Ill. Oct. 28, 2022) ("The fee sought by Lead Counsel has been reviewed and approved as reasonable by the Lead Plaintiff, who oversaw the prosecution and resolution of the Action.").

Accordingly, all of the factors discussed above support the fee award requested by Lead Counsel, and the Court should grant Lead Counsel's application.

## III.     LEAD COUNSEL'S EXPENSES ARE REASONABLE

Attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses from the fund. *See Synthroid*, 264 F.3d at 722; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

Lead Counsel is requesting payment of expenses in the amount of $325,290.76. As set forth in the accompanying declaration, these expenses were reasonably incurred in the prosecution of this Litigation and are adequately described. *See* Declaration of James E. Barz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶6-7; *see also Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) ("It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile

expenses and mediation.").[10]   Thus, Lead Counsel respectfully requests payment of these reasonable litigation expenses from the Settlement Fund.

## IV.   A LEAD PLAINTIFF AWARD PURSUANT TO THE PSLRA IS APPROPRIATE

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of [the] class."   15 U.S.C. §78u-4(a)(4). Pursuant to these provisions, courts in this District have granted awards, for example, reflecting time spent on the litigation based on customary rates.  *See, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2014 WL 4950173 (N.D. Ill. July 8, 2014) (requesting award for estimated employee time and customary rate); *Hospira*, 2014 WL 12767763, at *1 (St. Eve., J.) (awarding more than $25,000 to four institutional representatives).  Also pursuant to these provisions, courts in this District have granted awards reflecting time spent on the litigation that

---

[10]   Note that judges in this District have split on whether electronic legal research expenses should be awarded or should be considered part of the attorneys' fee award.  *Compare Silverman*, 2012 WL 1597388, at *4 (declining to approve legal research expenses), *with George v. Kraft Foods Global, Inc.*, 2012 WL 13089487, at *4 (N.D. Ill. June 26, 2012) (allowing recovery of such expenses).  While historically, legal research costs may have been considered to be absorbed by the significant rate increases for attorney time in the transition from paper to electronic legal research, more recently cases appear to have recognized that electronic legal research expenses are passed on to clients in the marketplace.  *See* Ex. G (*Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102, ECF 85 at 4-5 (N.D. Ill. Apr. 30, 2014) (discussing split)); *Wong v. Accretive Health, Inc.*, 2014 WL 7717579 (N.D. Ill. Apr. 30, 2014) (awarding legal research expenses); Ex. H (*Azar v. Grubhub, Inc.*, No. 1:19-cv-07665, ECF 106 at 14 n.8 (N.D. Ill. Dec. 8, 2022) (memorandum discussing split)); Ex. C (*Grubhub*, ECF 118 at 1-2 (awarding legal research expenses)).  *But see Stericycle*, 2020 WL 13614342, at *4 (declining to approve legal research expenses).  Allowing recovery of these expenses separate from the fee award is consistent with the Seventh Circuit's directive that fee awards should mimic the market.  *See, e.g.*, *Cont'l Ill.*, 962 F.2d at 570 ("[T]he paying, arms' length market . . . reimburses lawyers' LEXIS and WESTLAW expenses.").  In this case, legal research expenses amount to $18,501.75 of the total $325,290.76 in expenses for which an award is being sought.

4854-6263-0252.v2

could have been spent on other matters without consideration of an hourly rate or the exact time spent. *See, e.g.*, Ex. I (*In re Akorn, Inc. Sec. Litig.*, No. 1:15-cv-01944, ECFs 174-5, 174-6, ¶7 (N.D. Ill. Feb. 19, 2018) (requesting awards under 15 U.S.C. §78u-4(a)(4) for time devoted to the "representation of the Settlement Class" that could have otherwise been dedicated to tennis instructor business (ECF 174-5) and power outage business (ECF 174-6))); *In re Akorn, Inc. Sec. Litig.*, 2018 WL 2688877, at *4-*5 (N.D. Ill. June 5, 2018) (Feinerman, J.) (awarding $10,000 each to three individual class representatives, $30,000 total).

Here, the Pension Fund has submitted an accompanying declaration seeking an award of $5,775 for the time the Pension Fund, through its Third Party Administrator ("TPA"), dedicated to pursuing the claims. *See* Kellner Decl., ¶6. The time spent on this Litigation by the TPA could have otherwise been dedicated to the administration of the Pension Fund. This request is below the $7,500 maximum award amount set forth in the Notice, below the amounts awarded in some cases cited herein, and there has been no objection to date.

## V.   CONCLUSION

For all the reasons stated herein, and in the accompanying Settlement Memorandum and declarations, Lead Counsel submits that the Court should approve the fee and expense application. Lead Counsel also submits that Lead Plaintiff's request for an award of $5,775 for the Pension Fund, is reasonable and should be awarded pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  August 3, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN GILLIAM (IL Bar # 6332723)

s/ James E. Barz
JAMES E. BARZ

- 15 -

4854-6263-0252.v2

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 16 -

4854-6263-0252.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 3, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ James E. Barz
JAMES E. BARZ

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
Email: jbarz@rgrdlaw.com

## Mailing Information for a Case 1:19-cv-08209 Flynn v. Exelon Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amy C. Andrews**
  aandrews@rshc-law.com,docketdept@rshc-law.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mari Byrne**
  mari.byrne@davispolk.com,paige.whitaker@davispolk.com,ecf.ct.papers@davispolk.com,julian.hernandez@davispolk.com,nicole.intrieri@davispolk.com,kennedi.wilibert@davispolk.com,erin.hill@davispolk.com,matthew.garry@davispolk.com,melissa.english@davispolk.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Charles Crowl**
  mcrowl@rshc-law.com,docketdept@rshc-law.com,ssluch@rshc-law.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com,efilings_cmst@ecf.courtdrive.com,lhoeksema@cohenmilstein.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **David Andrew Gordon**
  dgordon@sidley.com,efilingnotice@sidley.com,david-gordon-4155@ecf.pacerpro.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Laurie Largent**
  LLargent@rgrdlaw.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com,scott-lassar-4695@ecf.pacerpro.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tsayre@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Louis Carey Ludwig**
  lcludwig@pomlaw.com,kgutierrez@labaton.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Francis P. Mcconville**
  fmcconville@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Edmund Polubinski , III**
  Edmund.polubinski@davispolk.com,ecf.ct.papers@davispolk.com,allie.rutter@davispolk.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,ppuerto@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James P Rouhandeh**
  rouhandeh@davispolk.com,ecf.ct.papers@davispolk.com

- **Jared Matthew Schneider**
  jared@jaredschneider.com

- **Julia Kathryn Schwartz**
  julia.schwartz@usdoj.gov,caseview.ecf@usdoj.gov,alexandra.dumitriu@usdoj.gov

- **Heather Benzmiller Sultanian**
  hsultanian@sidley.com,dvelkovich@sidley.com,efilingnotice@sidley.com,heather-sultanian-3303@ecf.pacerpro.com

- **United States of America**
  julia.schwartz@usdoj.gov

- **Brian O'Connor Watson**
  bwatson@rshc-law.com,docketdept@rshc-law.com

- **Jennifer Martin Wheeler**
  jwheeler@sidley.com,jennifer-4277@ecf.pacerpro.com,efilingnotice@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jeanne M. Jones
,

Joseph Nigro
,
```