UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Case No.: 1:19-cv-08209 |
| Plaintiff, ) ) | CLASS ACTION |
| ) | |
| vs. ) ) | Judge Virginia M. Kendall Magistrate Judge Susan E. Cox |
| ) | |
| EXELON CORPORATION, et al., ) ) | |
| Defendants. ) ) ) | |

DECLARATION OF JAMES E. BARZ IN SUPPORT OF: (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

4891-9363-4675.v1

I, James E. Barz, declare as follows:

1.          I am a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"). Robbins Geller serves as Court-approved Lead Counsel for the Court-appointed Lead Plaintiff Local 295 IBT Employer Group Pension Trust Fund.[1] I have been actively involved in prosecuting and resolving the Litigation, am familiar with its proceedings, and have knowledge of the matters set forth herein based upon my participation in this Litigation and my supervision of, or communications with, other lawyers and staff assigned to this matter. This declaration was prepared with the assistance of other lawyers at Robbins Geller, reviewed by me before signing, and the information contained herein is believed to be accurate based on what I know and what I have been told by others.

2.          I submit this declaration in support of: (1) Lead Plaintiff's motion for approval of the $173,000,000 all-cash Settlement and the proposed Plan of Allocation; and (2) Lead Counsel's motion for an award of attorneys' fees and expenses. Both motions have the support of Lead Plaintiff, as set forth in the concurrently filed declaration.

## I.          THE SETTLEMENT

3.          The relevant facts and allegations are set forth in Lead Plaintiff's: (i) Complaint for Violations of the Federal Securities Laws (ECF 65) (the "Complaint"); (ii) concurrently filed Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"); and (iii) concurrently filed Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum").

---

[1]          Capitalized terms used herein that are not otherwise defined shall have the meanings as provided in the Stipulation of Settlement dated May 26, 2023 (ECF 193) (the "Stipulation").

4.      Securities class actions are complex and challenging cases and, given the stakes involved, result in defendants hiring some of the largest law firms and vigorously disputing liability and damages.  This case was no exception.  The legal risks to continued litigation are discussed in the Settlement Memorandum and Fee Memorandum and include Defendants' arguments that: (i) Lead Plaintiff could not attribute the statements and admissions of one Defendant to others; (ii) Defendants had no duty to disclose uncharged and unadjudicated wrongdoing; (iii) the alleged misstatements were too general and vague to be actionable under the federal securities laws; (iv) Lead Plaintiff could not establish that Defendants acted with the requisite scienter; and (v) Lead Plaintiff could not establish loss causation or damages.  Additional risks to a successful prosecution of a securities fraud case, including this case, include defendants' likely challenges to class certification, plaintiffs' damages models, and the admissibility of plaintiffs' experts.

5.      Prior to the Settling Parties ultimately reaching agreement on April 26, 2023, Lead Counsel and Lead Plaintiff had engaged in substantial litigation and negotiations that allowed them to be informed about the benefits of settlement and risks of ongoing litigation.  For example:

(a)      Lead Counsel conducted a comprehensive investigation into the facts, circumstances, and potential claims and defenses that included analysis of SEC filings, media and analyst reports, press releases and call transcripts, relevant case law and authorities, and other publicly-available information;

(b)      Lead Counsel used the materials obtained from its investigation to prepare the detailed, 252-paragraph Complaint, then prepared an extensive brief in opposition to Defendants' motions to dismiss the Complaint, which the Court denied, allowing the claims to proceed;

(c)      Lead Counsel prepared a brief in opposition to Defendants' motion for certification of interlocutory appeal regarding the Court's Order denying Defendants' motions to dismiss, which the Court also denied;

4891-9363-4675.v1

(d)     Lead Counsel drafted document requests and subpoenas that it served on all Defendants and more than 65 non-parties and, as a result, obtained and analyzed more than 500,000 documents, exceeding 2.5 million pages;

(e)     Lead Plaintiff, working with Lead Counsel, responded to interrogatories and produced documents in response to Defendants' discovery requests;

(f)     Lead Counsel issued and secured responses to over 70 interrogatories and more than 350 requests for admission served on Defendants except for Defendant Pramaggiore, whose testimonial obligations were stayed;

(g)     Lead Counsel negotiated discovery and privilege disputes in more than 80 meet and confers, resulting in the production of additional documents and amended answers to interrogatories and requests for admission;

(h)     Lead Counsel moved to compel the production of documents in the possession of a third party public relations firm that were being withheld or redacted by Defendant Exelon, which remained pending at the time the Settling Parties reached agreement to settle the Litigation;

(i)     Lead Counsel retained market efficiency expert Cynthia Jones (CFA), Senior Manager of DLA, LLC, who prepared an expert market efficiency declaration to be submitted with Lead Plaintiff's anticipated motion for class certification;

(j)     Lead Counsel retained damages and market efficiency expert Bjorn Steinholt (CFA), Managing Director of Caliber Advisors, who analyzed the stock price declines and conducted various analyses to estimate potential damages;

(k)     Lead Counsel prepared for mediation, including by consulting with Mr. Steinholt on potential damages and Defendants' arguments concerning loss causation and damages, and the parties exchanged mediation briefs that detailed specific evidence and legal arguments each side would rely upon as the case progressed;

4891-9363-4675.v1

(l)     On March 8, 2022, Lead Counsel participated in an all-day mediation before the mediator, the Honorable Layn R. Phillips (Ret.) of Phillips ADR Enterprises, which ended without an agreement; and

(m)     After the initial mediation, Lead Plaintiff and Lead Counsel continued their litigation efforts, and, more than a year later on April 21, 2023, participated in an additional all-day mediation session with Judge Phillips, which was accompanied by the exchange of supplemental mediation briefing with updated evidence and arguments, and again ended without an agreement.

6.     The litigation and settlement negotiations were hard-fought, as reflected by the motion to dismiss briefing, failed mediation before an experienced mediator, and continued litigation and settlement negotiations thereafter. The Settlement was reached only after the second mediation session ended without agreement, and Judge Phillips issued a mediator's recommendation to settle the action for $173,000,000.

(a)     The $173 million all-cash Settlement confers a substantial benefit to the Settlement Class, and once approved, is believed to be the seventh largest securities class action settlement in the Seventh Circuit. From its analysis, Lead Counsel determined that there were significant risks to continuing the litigation. For example, Defendants have maintained that they had no duty to disclose alleged unadjudicated wrongdoing and that their statements were true or too general to be actionable. Additionally, damages in securities class actions are, and in this case in particular would be, hotly contested throughout expert discovery and at trial, and on appeal.

(b)     Even if Lead Plaintiff and Lead Counsel could establish damages at trial, there were significant risks to the amount of damages that could be recovered. While damages are difficult to calculate and subject to dispute, Lead Counsel's damages consultant, Mr. Steinholt, has preliminarily estimated that the $173 million Settlement results in a recovery of approximately 38% of the preliminary estimated damages, and that amount would have surely been disputed by

- 4 -

Defendants and their experts, as is routine in securities class actions like this one. Assuming defense arguments had succeeded in removing the first two alleged corrective disclosures as not revealing corrective information, and assuming Lead Plaintiff defeated all of Defendants' other liability and loss causation arguments, Mr. Steinholt estimated that the $173 million Settlement would result in a recovery of approximately 50% of the preliminary estimated damages.

7. Lead Counsel expended substantial time and effort to achieve the $173 million all-cash Settlement in this case, which attempts to maximize the amount of the settlement without the costs, expense, and risks of continued litigation. Lead Plaintiff and Lead Counsel could have settled the Litigation even earlier in the case at a substantially lower amount, but instead litigated the case through motions to dismiss, two mediations, and contested document and written discovery. In contrast, continuing to litigate would not guarantee a larger recovery for the Settlement Class but would only guarantee further delay in any recovery and the continued risk of a smaller or no recovery.

8. As set forth herein and more fully in the Settlement Memorandum, the Settlement was reached after three years of litigation, briefing, and negotiations; the Settlement was the result of an arm's-length settlement process between experienced parties and counsel, overseen by Judge Phillips who has substantial experience conducting mediations; and the Settlement was reached only after Lead Plaintiff and Lead Counsel achieved a substantial litigation victory early in the case, analyzed more than 2.5 million pages of documents to identify key "hot" and "critical" documents that would likely represent main exhibits at trial, prepared and filed Lead Plaintiff's motion to compel, and consulted with Lead Counsel's damages expert.

9. The Settlement provides immediate recovery without the risks, uncertainties, and delay of continued litigation. Based on its experience in securities class actions and in this case, and

4891-9363-4675.v1

for the reasons set forth in the Settlement Memorandum, Lead Counsel believes that the Settlement is fair, reasonable, and in the best interest of the Settlement Class.

## II.     THE PLAN OF ALLOCATION

10.     Upon approval by the Court, the Plan of Allocation governs the method by which the Net Settlement Fund will be distributed on a *pro rata* basis to Settlement Class Members who submit valid, timely Proof of Claim and Release forms. The proposed Plan of Allocation is set forth in the Notice.

11.     The proposed Plan of Allocation was developed in consultation with Robbins Geller's damages consultant, Mr. Steinholt. It reflects the statutory scheme and damages theory for the claims alleged, and it is similar to plans of allocation used in other settlements resolving Securities Exchange Act of 1934 claims.

12.     Thus, the Plan of Allocation is designed to fairly and reasonably allocate the Net Settlement Fund among eligible Settlement Class Members.

## III.     THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

13.     Lead Counsel respectfully requests that the Court award 26% of the $173,000,000 Settlement Amount for attorneys' fees. For the reasons set forth in the Fee Memorandum, Lead Counsel believes such a fee is reasonable and appropriate. Lead Counsel further requests an award of $325,290.76 in litigation expenses and charges in connection with the prosecution of this Litigation. Arguments and authorities supporting the requested fees and expenses are set forth in more detail in the Fee Memorandum.

14.     Lead Counsel's time and resources in the research, investigation, and prosecution of this Litigation are set forth in the Declaration of James E. Barz Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses

- 6 -

("Robbins Geller Decl."), submitted herewith. Included in that declaration is a summary of the time and expenses incurred by Lead Counsel in this Litigation.

15.     As set forth in the Fee Memorandum, Lead Counsel worked diligently to obtain a favorable result for the Settlement Class. The recovery obtained for the Settlement Class is the direct result of the significant efforts of attorneys who possess substantial experience in the prosecution of complex securities class actions. *See* www.rgrdlaw.com.

16.     On the other side, Defendants were represented by experienced lawyers from Davis Polk & Wardwell LLP, Riley Safer Holmes & Cancila LLP, and Sidley Austin LLP, all of which have a reputation for being leading defense firms in complex civil cases. The ability of Lead Counsel to obtain the Settlement in the face of such opposition confirms the quality of Lead Counsel's representation.

17.     From the outset, Lead Counsel understood that its attorneys and paraprofessionals would have to devote a significant amount of time and effort to the prosecution of this case. The time spent by Lead Counsel on this case could have been devoted to other matters. Lead Counsel undertook this case solely on a contingent fee basis, assuming a risk that the case would yield no recovery and leave Lead Counsel uncompensated. The only way Lead Counsel would be compensated was to achieve a successful result.

18.     Unlike counsel for defendants, who are generally paid an hourly rate and paid for their time and expenses on a monthly or other regular basis, Lead Counsel has not been compensated for any time or expenses since this case was initiated. Instead, when working on a contingent fee basis, Lead Counsel must wait until the very end of the litigation, which typically takes many years, to secure payment for its efforts, if at all. To date, Lead Counsel has not been compensated for the work detailed herein.

4891-9363-4675.v1

19.     Lead Counsel's substantial experience and advocacy was required in presenting the strengths of this case in pleadings, briefing, and at the mediations in an effort to achieve a favorable settlement and convince Defendants, their insurers, defense counsel, and the mediator of the risks Defendants faced from not settling and proceeding to trial.  To that end, Lead Counsel assembled an experienced litigation team, as set forth in the firm's resume.

20.     The undersigned was the lead trial attorney assigned to this matter from Robbins Geller and is an experienced trial attorney, former Assistant United States Attorney, registered CPA, and adjunct professor of law at Northwestern University Pritzker School of Law for over ten years (teaching courses on trial advocacy and class action litigation), and has previously been a partner in a large national defense firm that, among other things, defended securities class action cases.  Since joining Robbins Geller in 2011, the undersigned has been lead trial counsel in several securities class actions that resulted in substantial and favorable recoveries, including those that proceeded to within days or weeks of trial prior to settling, and including a settlement approved in 2021 for $1.21 billion that is reportedly the ninth largest securities class action settlement in history.

21.     If the case had not settled, Lead Counsel was fully prepared to litigate this case through the complex stages of pre-trial litigation, trial, and appeal.  Lead Counsel only recommended settlement after extensive efforts to obtain the best possible result for the Settlement Class.

22.     For the reasons detailed in the Fee Memorandum, including the favorable recovery obtained, the complexity of the issues presented, the effort and skill exhibited by Lead Counsel, the contingent nature of Lead Counsel's representation, the fee awards in comparable class actions, and Lead Plaintiff's negotiation and endorsement of the requested fee, Lead Counsel believes the requested fee and litigation expense awards are reasonable and appropriate, particularly when considering the policy of incentivizing counsel to take on and diligently pursue meritorious securities class actions.

- 8 -

4891-9363-4675.v1

- 9 -

## IV.      CONCLUSION

23.      In view of the immediate, certain, and favorable recovery to the Settlement Class and the challenges presented by the claims against the Defendants and facts of this case, as described above and in the accompanying Settlement Memorandum, Lead Counsel submits that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should likewise be approved as fair, reasonable, and adequate.  In view of the recovery achieved and the quality of work performed, among other things, as described above and in the accompanying Fee Memorandum, Lead Counsel submits that the fee and expense application should be approved.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 3rd day of August, 2023, at Chicago, Illinois.

s/ James E. Barz
_____
JAMES E. BARZ

4891-9363-4675.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 3, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ James E. Barz
JAMES E. BARZ

ROBBINS GELLER RUDMAN
    & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
Email: jbarz@rgrdlaw.com

# Mailing Information for a Case 1:19-cv-08209 Flynn v. Exelon Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amy C. Andrews**
  aandrews@rshc-law.com,docketdept@rshc-law.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mari Byrne**
  mari.byrne@davispolk.com,paige.whitaker@davispolk.com,ecf.ct.papers@davispolk.com,julian.hernandez@davispolk.com,nicole.intrieri@davispolk.com,kennedi.wilibert@davispolk.com,erin.hill@davispolk.com,matthew.garry@davispolk.com,melissa.english@davispolk.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Charles Crowl**
  mcrowl@rshc-law.com,docketdept@rshc-law.com,ssluch@rshc-law.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com,efilings_cmst@ecf.courtdrive.com,lhoeksema@cohenmilstein.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **David Andrew Gordon**
  dgordon@sidley.com,efilingnotice@sidley.com,david-gordon-4155@ecf.pacerpro.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Laurie Largent**
  LLargent@rgrdlaw.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com,scott-lassar-4695@ecf.pacerpro.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tsayre@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Louis Carey Ludwig**
  lcludwig@pomlaw.com,kgutierrez@labaton.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Francis P. Mcconville**
  fmcconville@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Edmund Polubinski , III**
  Edmund.polubinski@davispolk.com,ecf.ct.papers@davispolk.com,allie.rutter@davispolk.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,ppuerto@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James P Rouhandeh**
  rouhandeh@davispolk.com,ecf.ct.papers@davispolk.com

- **Jared Matthew Schneider**
  jared@jaredschneider.com

- **Julia Kathryn Schwartz**
  julia.schwartz@usdoj.gov,caseview.ecf@usdoj.gov,alexandra.dumitriu@usdoj.gov

- **Heather Benzmiller Sultanian**
  hsultanian@sidley.com,dvelkovich@sidley.com,efilingnotice@sidley.com,heather-sultanian-3303@ecf.pacerpro.com

- **United States of America**
  julia.schwartz@usdoj.gov

- **Brian O'Connor Watson**
  bwatson@rshc-law.com,docketdept@rshc-law.com

- **Jennifer Martin Wheeler**
  jwheeler@sidley.com,jennifer-4277@ecf.pacerpro.com,efilingnotice@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jeanne M. Jones
,

Joseph Nigro
,
```