

FILED

AUG 22 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLIONOS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Other Similarly Situated, Plaintiff, Vs. EXELON CORPORATION, et al., Defendants | ) ) ) ) ) ) ) ) |

Case No. 1:19-CV-08209

CLASS ACTION

Judge Virginia M. Kendall

Magistrate Judge Susan E. Cox

**OBJECTION**
**TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND OBJECTION**
**TO PAYMENT OF ANY AWARD PAYABLE TO LEAD PLAINTIFF**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1. Objection Applicant, Larry D. Killion, herein 'Applicant', a Settlement Class Member (Claim ID: EXO-400609-7) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, is not represented by counsel and is a pro se Applicant, request for modification and downward adjustment of any pending or submitted Plaintiff's Motion/Application For Award of Attorneys' Fees and Expenses, and Class Representative Service Award, (herein the 'Motion' or 'Application') because such Motion is unreasonable, unfair and not in the best interest of the Settlement Class Members.

2. a. Dates, prices and number of Exelon (EXC) shares purchased/sold by me during the Class Period, to the best of my knowledge are shown in the attached Exhibit A Trade Confirmation for Exelon Shares between February 8, 2019 and October 31, 2019.
b. This Objection is based on those documents of record in Plaintiff https://www.ExelonSecuritiesLitigation.com/, as of the date of this Objection.
c. Applicant further objects to the unreasonable time period (same day!) in which to file its Objection and per the Notice document received by Applicant by postal mail delivery on our about August 17, 2023 and the Notice citing any Objection must be filed by August 17, 2023, is patently unreasonable and not consistent with due process of law standard of conduct. Applicant has complained of such unreasonable Objection date by recording such via 'info@ExelonSecuritiesLitigation.com' copy to 'settlementinfo@rgrdlaw.com'. Applicant submits that this Court take into account a more honest, fair and reasonable time period in which to file Objections, and that a same day period is unreasonable on its face; and this Court accept and take into account this Objection in its deliberations.
d. Applicant has submitted this Objection by Express Mail.-

Page **1** of **8**

e.  Further, Applicant attaches an Amicus Curaie discussion brief regarding the abuse/misuse of attorney fee claims in regard to Class Action suits.

f.  I have participated to the best of my recollection in making Objections in the following Class Actions:  Circuit Court Of Cook County, Illinois County Department, Chancery Division, Case No. 2021ch05392; In The United States District Court For The Western District Of Missouri Western Division, Mdl No. 3019, Case No. 4:21-Md-03019-Bcw; United States District Court Southern District Of New York, Civil Action No. 1:18-Cv-07143-Jmf; In The United States District Court For The Eastern District Of Michigan Southern Division, Case No. 2:19-Cv-11745; In The United States District Court Southern District Of New York,  Case No. 1:20-cv-04494-GHW-SN; In the United States District Court, Northern District of Illinois, Case No. 1:19-cv-01339 (N.D. Ill.); In the United States District Court, Southern District of New York, Case No. 1:20-cv-10041-PKC;  In The United States District Court, Southern District of Ohio, Eastern Division, Case No. 2:19-cv-03347; Superior Court of the State of California, County of San Mateo, Lead Case No. 18CIV01549.

## OBJECTION

2.      Rationale behind  this Objection, includes...

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the the Application, I do not agree with such approval, and hereby submit this Objection.

3.3  The Motion is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Motion must be thoroughly tested for its reasonableness, and should take into account:

3.3.1    American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o   Traditional fee analysis to determine reasonableness  takes into account...
    - ▪  the time and labor required,
    - ▪  the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    - ▪  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
    - ▪  the fee customarily charged in the locality for similar legal services;
    - ▪  the amount involved and the results obtained;
    - ▪  the time limitations imposed by the client or by the circumstances;
    - ▪  the nature and length of the professional relationship with the client;
    - ▪  the experience, reputation, and ability of the lawyer or lawyers performing the services; and
    - ▪  whether the fee is fixed or contingent

3.3.2    The well thought out reasoning of award of Attorney Fees in similar Federal Court Class Action Ruling rulings, in particular attorney fee reasonableness test criteria described in

- o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - o Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a ***reasonable*** fee in the case.
    - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - Reasonableness takes into account the factors used by the traditional fee *determination.*

3.3.3   Class Action Fairness Act of 2005;
- o Since the case was brought under CAFA, a federal law, Class Action settlements [damages and attorney's fees] are subject to Court approval which takes into account…
  - o Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

4. The Court is requested to invoke its discretionary powers to modify and reduce the Motion to make it reasonable.

5.  The economics of the requested Motion indicate:

5.1 The proposed total Settlement Fund to all Class Members is $173,000,000.

5.2 Individual Class Member award are estimated to be $0.59 per EXC shares (net, after deduction of attorney's fees and costs. The allegation of trying to establish speculative artificial inflation in Exelon Common Stock, as illustrated in the below charts ranging from approximately 10%+ to less than 1% given 'normal' market variability as being associated with fraud, is consistent with opinionated experts since statistician can 'prove' anything given enough rhetoric and time – the fog index.

Graphic illustration of Exelon Stock price over the period February 8, 2019 thru October 31, 2019
(Traded Low of $31.17; Traded High of $36.22)
Compared against NASDAQ Composite Index
General Observation: Between these periods (the Class Period, EXC Stock Price
generally trended with the index, indicating EXC Stock price movement reacted to market forces in general).



| Purchase/Sale Period | Speculated 'Artificial' Inflation Allegedly Caused By Securities Fraud Allegations |
|---|---|
| February 8, 2019 thru July 18, 2019 | $4.91 |
| July 19, 2019 thru July 23, 2019 | $4.41 |
| July 24, 2019 thru October 15, 2019 | $3.50 |
| October 16, 2019 | $1.25 |
| October 17, 2019 thru October 30, 2019 | $0.30 |

The work product to establish this variability is due to experts whose compensation is most likely buried in the $400,000 dollar expense claim and nothing to do with attorney work product.

5.4  Total Attorney Expenses applied for are  up to $44,980,000 (26% of the Settlement Fund).

5.5  Attorney hours spent on the case and hourly rates are unspecified.

5.6 The disparity between the amount of recover to each Class Member compared to the paycheck each attorney could receive suggests a exorbitant and unreasonable basis of on which to base attorney fees.

6. The proposed Attorney Fee Application/Motion is unreasonable in the following respects:
   - A fee of up to $44,980,000 based on a 26% contingency amount  of the Settlement Amount is outrageous, unreasonable and should shock the conscience of the Court, as it relegates a non-tort law consumer/investor stock claim based on white collar fraud, with one based on tort law, to the same characteristic of ambulance chasing attorney's associated with negligence claims where contingency fees have become the norm and a key incentive factor for tort lawyers (especially those using roadside billboard advertisements to swing their justice sledge hammer at guilty until proven innocent car accident  truck drivers) to advance cases and big attorney pay checks sourced from the real suffering of others, whether they have merit or not, because of the vicissitudes faced by defendant's burdened more so with not defending the merits of a case but the emotions and sympathy of a jury, stirred up by plaintiff counsel rhetoric.  The more honest argument is attorney fee claims should/must

be based on defense of time and hourly rate as the proper measure of 'earned' attorney fee, not negligent type contingency fee claims.

- The case claim is all about hired gun academic or consultive experts, using the wizardry of statistical analysis – where just about any hypothesis including those associated with security fraud complaints associating published statements with creating a fraud and how it affects decimal place value of stock, whether real or imaginary (especially when the variance of the stock market is what the market is all about or it would not exist) – is defended as being possible, probable or likely. And the vagaries of the fraud law and counsel crafting a case…whether real or fantasy….further insulates plaintiff's from finding the real truth of a claim and a defendant given the honest right to address real issues. What all this means is that the substance of a case is primarily based on the hired gun experts establishing and proving the case with statistical proofs and not the acumen of the lawyers…who are predominantly advancing procedural tasks. Consequently the 'value' of fees and effort of the claim is buried in the $400,000 expense claim, where ostensibly the hired gun expert fee is buried and not in claimed attorney fee and not in claimed attorney fees. How $400,000 real expense is converted to 44,980,000 phantom attorney fee claim is part of the magic (and incentive to bring Class Action lawsuits by attorneys) of the Class Action industry process and why contingency fees should/must be disallowed in favor of defending time and hourly rate attorney fee defenses.
- While Class Actions at times have their place in justice, like all things in life the Class Action process – and associated attorney fee claims - can be used for its intended purpose (seeking real justice – though small as it may be for each 'victim' where there are many victims) or misused or abused. That misuse and abuse option is fertile ground for crafty counsel to formulate a Class Action case (much incentivized by a huge multi-million dollar contingency fee pay check paid for by the 'victims') based on Class Action substantive law causes of action vagaries and uncertainties, resulting in an attack on defendants (most of which are law abiding advocates and publicly traded companies who are duty bound to adhere to a myriad of regulatory standards, who consistently hire their own experts to give them guidance regarding compliance with the law and honestly try to do the right thing) and they then paying out typically huge settlement checks a huge portion of which are paid to attorneys. That is not reasonable. The accompanying Amicus Curiae brief on the Class Action industry and attorney fee abuse further illustrates the misuse and abuse of the Class Action process, which this Claim is alleged to be part of, and what can be advanced to put real justice back into the definition of Class Action, and not a transport vehicle misused or abused to create huge attorney fee paychecks.
- Every day every human in life faces a continuum of events that could arguably be viewed as causing some type of Class Action harm (where harm is not in the best interest of the victim). There is always a certain degree of risk and consequence all us humanoids must absorb as life's destiny…else we all would all be borne in the court house and never leave. An unusual long crossing train at a road intersection that has stopped moving traffic and the stalled driver's time being stolen by the slow moving train; the vending machine stealing our quarter with no product in return because of a mechanical glitch in the machine; lightening induced power outages and the loss of consumer production time;

stock values that constantly go up and down – buy low/sale high strategy does not always work and without that variance the market would not exist; are all just some examples of assumed risk in society. Basing huge Class Action attorney's fees on converting an otherwise assumed risk into a justice claim…is but one of many circumstances courts are charged with assisting with and defining what justice means and to what extent one pays for the claims of another. Consequently, yet more arguments why Class Action attorney fee claims should be based on defending time spent and hourly rate as being reasonable and not gamble on contingency winnings,and not inflated due to crafting a case instead of asserting righteous justice merits.

7 Any reduction in the Motion is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

8. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $44,980,000 attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

9. Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
   o   While it is instructive to take into account attorney work claims of:
       o   Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases (and one of the reasons class counsel is certified to be so by the court) already have in hand the understanding of relevant statutes and case law, and unless a novel area of securities fraud issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

10. The Court is requested to deny any requests for the any payments or bounty fee, the cited $7,500 payment, to any Lead Plaintiff's, since such payment is for all practical purposes in the nature of a bounty paid for winning the race to the courthouse to first file a lawsuit, and such fee merely an inducement for courthouse racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members which is considered to be outrageous, unreasonable and not fair. The Class Members are all victims and to treat some grossly different than others shocks the conscience of justice and should likewise shock the conscience of the Court.

Respectfully submitted

This 18 day of August, 2023.

[Larry D. Killion, Applicant]
Settlement Class Member

713 906-9135, (mobile)
832 203-7695(fax)
11235ldk@comcast.net  email
2114 Oxford Street
Houston, Harris County, Texas 77008

## CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the 18 day of August , 2023, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE MOTION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class priority prepaid postage or by email, to the following recipients:

Clerk of the Court
United States District of Illinois
Everett McKinley Dirksen U.S. Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

PLAINTIFF COUNSEL
Theodore J. Pintar
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, Ca 92101

Counsel for Defendant
Edmund Polubinski III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017

I, Larry D. Killion, further certify I am a Settlement Class Member.
It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

**EXHIBIT A**

**Dates, prices and number of Exelon (EXC) shares purchased/sold during the Class Period.**

<table>
<tr><td>Official<br>Office<br>Use<br>Only</td><td></td></tr>
</table>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*Flynn v. Exelon Corporation, et al.*

Case No.: 1:19-cv-08209

**PROOF OF CLAIM FORM**

**Must Be Postmarked (if Mailed) or
Received (if Submitted Online) No
Later Than September 28, 2023**

# EXO

Please Type or Print in the Boxes Below
Do **NOT** use Red Ink, Pencil, or Staples

**REMEMBER TO ATTACH COPIES OF BROKER CONFIRMATIONS OR OTHER DOCUMENTATION OF YOUR TRANSACTIONS IN EXELON COMMON STOCK. FAILURE TO PROVIDE THIS DOCUMENTATION COULD DELAY VERIFICATION OF YOUR CLAIM OR RESULT IN REJECTION OF YOUR CLAIM.**

## PART I. CLAIMANT IDENTIFICATION

Last Name: KILLION

M.I.: D   First Name: LARRY

Last Name (Co-Beneficial Owner):

M.I.   First Name (Co-Beneficial Owner):

[X] IRA    ☐ Joint Tenancy    ☐ Employee    ☐ Individual    ☐ Other _____

Company Name (Beneficial Owner - If Claimant is not an Individual) or Custodian Name if an IRA   (specify)

Trustee/Asset Manager/Nominee/Record Owner's Name (If Different from Beneficial Owner Listed Above)

Account#/Fund# (Not Necessary for Individual Filers): 497-303505

Last Four Digits of Social Security Number: 8818   or   Taxpayer Identification Number: —

Telephone Number (Primary Daytime): 713-906-9135   Telephone Number (Alternate): 713-906-9135

Email Address: 11235ldk@comcast.net

### MAILING INFORMATION

Address: 2114 OXFORD STREET

Address (cont.):

City: HOUSTON   State: TX   ZIP Code: 77008

Foreign Province:   Foreign Postal Code:   Foreign Country Name/Abbreviation:

<table>
<tr><td>FOR CLAIMS PROCESSING ONLY</td><td>OB</td><td>CB</td><td>ATP<br>KE<br>ICI</td><td>BE<br>DR<br>EM</td><td>FL<br>ME<br>ND</td><td>OP<br>RE<br>SH</td><td>/ /</td><td>FOR CLAIMS PROCESSING ONLY</td></tr>
</table>



## PART II: SCHEDULE OF TRANSACTIONS IN EXELON COMMON STOCK

A. Number of shares of Exelon common stock held at the close of trading on February 7, 2019: **83**  Proof Enclosed? **X** Y  N

B. Purchases or acquisitions of Exelon common stock (February 8, 2019 – January 28, 2020, inclusive):

PURCHASES

| | Trade Date(s) (List Chronologically) MM DD YYYY | Number of Shares Purchased or Acquired | Total Purchase or Acquisition Price (Excluding commissions, taxes and fees) | Proof of Purchase Enclosed? |
|---|---|---|---|---|
| 1. | 03/27/2019 | 43 | $ 2172.00 | Y N |
| 2. | / / | | $ .00 | Y N |
| 3. | / / | | $ .00 | Y N |
| 4. | / / | | $ .00 | Y N |
| 5. | / / | | $ .00 | Y N |

IMPORTANT: (i) If any purchase listed covered a "short sale," please mark Yes:   Yes

(ii) If you received shares through an acquisition or merger, please identify the date, the share amount and the company acquired:

MM DD YYYY   / /   Merger Shares:   Company: _____

C. Sales of Exelon common stock (February 8, 2019 – January 28, 2020, inclusive):

SALES

| | Trade Date(s) (List Chronologically) MM DD YYYY | Number of Shares Sold | Total Sales Price (Excluding commissions, taxes and fees) | Proof of Sales Enclosed? |
|---|---|---|---|---|
| 1. | 10/31/2019 | 3 | $ 139.00 | Y N |
| 2. | / / | | $ .00 | Y N |
| 3. | / / | | $ .00 | Y N |
| 4. | / / | | $ .00 | Y N |
| 5. | / / | | $ .00 | Y N |

D. Number of shares of Exelon common stock held at the close of trading on October 31, 2019: **126**  Proof Enclosed? **X** Y  N

E. Number of shares of Exelon common stock held at the close of trading on January 28, 2020: **123**  Proof Enclosed? **X** Y  N

If you require additional space, attach extra schedules in the same format as above.
Sign and print your name on each additional page.

**YOU MUST READ AND SIGN THE RELEASE ON PAGE 8. FAILURE TO SIGN THE RELEASE
MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**



6

## IV. SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I (We) submit this Proof of Claim under the terms of the Stipulation, described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Northern District of Illinois, with respect to my (our) claim as a Settlement Class Member (as defined in the Notice) and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Litigation. I (We) agree to furnish additional information to Lead Counsel to support this claim if required to do so. I (We) have not submitted any other claim covering the same purchases or acquisitions of Exelon common stock during the Settlement Class Period and know of no other Person having done so on my (our) behalf.

## V. RELEASE

1.          I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever settle, release, relinquish, and discharge, all of the Released Claims against each and all of the Defendants and each and all of their respective "Related Parties." The term "Related Parties" as defined herein means each of a Defendant's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, members, agents, administrators, attorneys, accountants, auditors, bankers, underwriters, investment advisors, personal or legal representatives, predecessors, successors, direct and/or indirect parents, subsidiaries, divisions, joint ventures, partnerships, limited liability companies, affiliates, assigns, spouses, heirs, estates, related or affiliated entities, any entity in which a Defendant has a controlling interest, any member of a Defendant's immediate family, any trust of which a Defendant is the settlor or which is for the benefit of a Defendant and/or any member of a Defendant's immediate family, and any entity in which a Defendant and/or any member of a Defendant's immediate family has or had a controlling interest (directly or indirectly).

2.          "Released Claims" means any and all claims (including Unknown Claims as defined below), rights, demands, losses, suits, debts, obligations, damages, judgments, controversies, liabilities, or causes of action of every nature and description whatsoever, in law, equity, or otherwise (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether asserted or unasserted, accrued or unaccrued, fixed or contingent, whether arising under federal, state, local, common, or foreign law, or any other law, rule, or regulation, whether class or individual in nature, to the fullest extent that the law permits their release in this Litigation against any of the Released Parties, which arise out of, are based on, or relate to both: (i) the allegations, acts, transactions, facts, events, matters, occurrences, disclosures, statements, filings, representations, or omissions involved, set forth, alleged or referred to in the Complaint or the Litigation, or which could have been alleged in the Litigation; and (ii) the purchase or acquisition of Exelon common stock by any Members of the Settlement Class during the Settlement Class Period. Released Claims do not include any derivative or ERISA claims or claims to enforce the Settlement.

3.          "Unknown Claims" means collectively any Released Claims that Lead Plaintiff or Settlement Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected such Settlement Class Member's settlement or decisions with respect to the Settlement, including, but not limited to, the release of the Released Parties or the decision not to object to or opt out of this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by the law of any state or territory or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiff and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff and Defendants acknowledge, and Settlement Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.



7

4.      This release shall be of no force or effect unless and until the Court approves the Stipulation and it becomes effective on the Effective Date.

5.      I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

6.      I (We) hereby warrant and represent that I (we) have included information about all of my (our) transactions in Exelon common stock that occurred during the Settlement Class Period as well as the number of shares of Exelon common stock held by me (us) at the close of trading on February 7, 2019, October 31, 2019, and January 28, 2020.

7.      I (We) hereby warrant and represent that I am (we are) not excluded from the Settlement Class, as defined in the Notice.

I (We) declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

Executed this _____18_____ day of _____August 2023_____ in _____Houston, Tx, USA_____
                                                    (Month/Year)                              (City/State/Country)

_____Larry D Killian_____                              _____
(Sign your name here)                                  (Sign your name here)

_____Larry D Killian_____                              _____
(Type or print your name here)                         (Type or print your name here)

_____Beneficial Purchaser/Acquirer_____                _____
(Capacity of person(s) signing, e.g.,                  (Capacity of person(s) signing, e.g.,
Beneficial Purchaser or Acquirer, Executor or Administrator)   Beneficial Purchaser or Acquirer, Executor or Administrator)

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign the above release and acknowledgment.

2. Remember to attach supporting documentation, if available.

3. Do not send original stock certificates.

4. Keep a copy of your Claim Form for your records.

5. If you desire an acknowledgment of receipt of your Claim Form, please send it Certified Mail, Return Receipt Requested.

6. If you move, please send us your new address.

**THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED
NO LATER THAN SEPTEMBER 28, 2023, ADDRESSED AS FOLLOWS:**

*Exelon Securities Litigation*
Claims Administrator
c/o Gilardi & Co. LLC
P.O. Box 301171
Los Angeles, CA 90030-1171
www.ExelonSecuritiesLitigation.com



8



**Transaction Confirmation**
**Confirm Date: January 10, 2019**          Page 1 of 5

Brokerage Account Number
*****3505 IRA - ROLLOVER

**LARRY D KILLION**

0100001756

FMT CO CUST IRA ROLLOVER
FBO LARRY D KILLION
2114 OXFORD ST
HOUSTON TX 77008-2649

| | |
|---|---|
| Online | Fidelity.com/pas |
| FAST(sm)-Automated Telephone | 800-544-5555 |
| Premium Services | 800-544-4442 |
| 8am - 11pm ET, Mon - Fri | |
| Portfolio Advisory Services | 800-544-3455 |

| REFERENCE NO. | TYPE | REG REP | TRADE DATE | SETTLEMENT DATE | CUSIP NO | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 19086-0B8BVV | 1* | 000 | 03-27-19 | 03-29-19 | 30161N101 | 19086-JJVLRB | | |

DESCRIPTION and DISCLOSURES

You Bought      EXELON CORP COM NPV     Principal Amount    2,172.09
        43     WE HAVE ACTED AS AGENT.     Settlement Amount    2,172.09
    at   50.5137
Symbol:
EXC

| REFERENCE NO. | TYPE | REG REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 19304-1BV6WL | 1* | 000 | 10-31-19 | 11-04-19 | 30161N101 | 19304-JKBPVB | | |

DESCRIPTION and DISCLOSURES

You Sold      EXELON CORP COM NPV     Principal Amount     139.12
       3     WE HAVE ACTED AS AGENT     Activity Assessment Fee    0.01
   at   46.3744     LOTS WITHOUT SPECIFIC SHARES     Settlement Amount    139.11
Symbol:     INSTRUCTIONS WILL BE DEPLETED USING
EXC      HIGH COST IN, FIRST OUT METHOD.
     AVERAGE PRICE TRADE DETAILS ON REQUEST

Exelon Corporation shares (EXC) held on or about February 7, 2019



FIDELITY PRIVATE
CLIENT GROUP®

INVESTMENT REPORT
February 1, 2019 - February 28, 2019

## Holdings

Account # Y97-303505
LARRY D KILLION - ROLLOVER IRA

Stocks (continued)

| Description | Percent of Holdings | Beginning Market Value Feb 1, 2019 | Quantity Feb 28, 2019 | Price Per Unit Feb 28, 2019 | Ending Market Value Feb 28, 2019 | Cost | Unrealized Gain/Loss Feb 28, 2019 | EAI ($) / EY (%) |
|---|---|---|---|---|---|---|---|---|
| (cont'y) **EXELON CORP COM NPV** (EXC) | 0.83 | 3,964.08 | 83.000 | 48.5900 | 4,032.97 | 3,156.36 | 876.61 | 120.3 2.96 |

Exelon Corporation shares (EXC) held on or about October 31, 2019



FIDELITY PRIVATE
CLIENT GROUP®

INVESTMENT REPORT
October 1, 2019 - October 31, 2019

## Holdings

Account # Y97-303505
LARRY D KILLION - ROLLOVER IRA

### Stocks (continued)

| Description | Percent of Holdings | Beginning Market Value Oct 1, 2019 | Quantity Oct 31, 2019 | Price Per Unit Oct 31, 2019 | Ending Market Value Oct 31, 2019 | Cost | Unrealized Gain/Loss Oct 31, 2019 | EAI ($) / EY (%) |
|---|---|---|---|---|---|---|---|---|
| EXELON CORP COM NPV (EXC) | 0.70 | 6,087.06 | 126.000 | 45.4900 | 5,731.74 | 5,328.45 | 403.29 | 182.70 3.190 |

Exelon Corporation shares (EXC) held on or about January 28, 2020



FIDELITY PRIVATE
CLIENT GROUP®

INVESTMENT REPORT
January 1, 2020 - January 31, 2020

## Holdings

Account # Y97-303505
LARRY D KILLION - ROLLOVER IRA

### Exchange Traded Products
Includes exchange-traded funds (ETFs), exchange-traded notes (ETNs), and other exchange-traded vehicles.

| Description | Percent of Holdings | Beginning Market Value Jan 1, 2020 | Quantity Jan 31, 2020 | Price Per Unit Jan 31, 2020 | Ending Market Value Jan 31, 2020 | Cost | Unrealized Gain/Loss Jan 31, 2020 | EAI ($) / EY (%) |
|---|---|---|---|---|---|---|---|---|
| EXELON CORP COM NPV (EXC) | 0.71 | 5,607.57 | 123.000 | 47.5900 | 5,853.57 | 5,176.91 | 676.66 | 188.19 3.210 |