UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JOSHUA FLYNN, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>EXELON CORPORATION, et al., )<br><br>Defendants. ) | Case No.: 1:19-cv-08209<br><br>CLASS ACTION<br><br>Judge Virginia M. Kendall<br>Magistrate Judge Susan E. Cox |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF (I) LEAD PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION, AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT
TO 15 U.S.C. §78u-4(a)(4)

4877-4467-2890.v2

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   THE REACTION OF THE CLASS PROVIDES OVERWHELMING SUPPORT FOR FINAL APPROVAL OF THE MOTIONS..................................................2

III.  THE SOLE OBJECTION IS LATE AND LACKS MERIT ................................4

      A.     The Objection Was Late ...........................................................................5

      B.     Even if Considered, the Objection to the Requested Attorneys' Fees Is Riddled with Errors and Has No Basis .....................................................7

      C.     The Objection to the Lead Plaintiff Award Should Also Be Rejected .................13

IV.  CONCLUSION...............................................................................................14

4877-4467-2890.v2

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Arango v. Landry's, Inc.,*
2015 WL 5673878 (N.D. Ill. Aug. 27, 2015) ............................................................4

*Cheesman v. Switzer,*
2022 WL 17067483 (S.D. Ind. 2022) ......................................................................12

*DeJulius v. New England Health Care Emps. Pension Fund,*
429 F.3d 935 (10th Cir. 2005) ..................................................................................6

*Gress v. Commonwealth Edison Co.,*
559 F. Supp. 3d 755 (N.D. Ill. 2021) ......................................................................11

*In re Broiler Chicken Antitrust Litig.,*
2023 WL 5599636 (7th Cir. Aug. 30, 2023) ...........................................................10

*In re Broiler Chicken Antitrust Litig.,*
2022 WL 6124787 (N.D. Ill. Oct. 7, 2022) .............................................................10

*In re FedEx Ground Package Sys., Inc., Emp. Practices Litig.,*
2017 WL 1735565 (N.D. Ind. Apr. 28, 2017) ...........................................................7

*In re Marsh & McLennan Comps., Inc. Sec. Litig.,*
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...........................................................7

*In re Polyurethane Foam Antitrust Litig.,*
165 F. Supp. 3d 664 (N.D. Ohio 2015) ...................................................................13

*In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.,*
2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ...........................................................2, 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ...........................................................5

*In re TikTok, Inc., Consumer Privacy Litig.,*
617 F. Supp. 3d 904 (N.D. Ill. 2022) ........................................................................4

*In re VMS Ltd. P'ship Sec. Litig.,*
1995 WL 355722 (N.D. Ill. June 12, 1995) ...............................................................6

*Mortimer v. Diplomat Pharmacy Inc.,*
2019 WL 3252221 (N.D. Ill. July 19, 2019) ............................................................13

- ii -

**Page**

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................................5

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994) ........................................................................7

*Silverman v. Motorola Solutions, Inc.,*
    739 F.3d 956 (7th Cir. 2013) ........................................................................2, 4, 9, 10

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ........................................................................2, 4

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23(c)(2)(B)........................................................................6

4877-4467-2890.v2

Lead Plaintiff and Lead Counsel respectfully submit this reply in further support of (i) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (ECF 201) and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (ECF 204) (the "Motions").[1]

## I.    PRELIMINARY STATEMENT

Lead Plaintiff and Lead Counsel previously filed their opening briefs in support of final approval of the $173 million all-cash Settlement, the Plan of Allocation, the Lead Plaintiff award, and attorneys' fees and expenses.  *See* ECF 203 ("Settlement Brief"); ECF 206 ("Fee Brief")*.* Since that time, notice was sent to the Settlement Class, which provided an opportunity for input from Settlement Class Members as to their support for, or opposition to, the requests.  In addition to all the reasons set forth in prior submissions, the notice period has confirmed that the Settlement, Plan of Allocation, Lead Plaintiff award, and attorneys' fee and expense request are fair and reasonable, as they have all received the overwhelming support of the Settlement Class.

More specifically, more than 231,500 notice packets have been mailed to potential Settlement Class Members or their nominees.  *See* Supplemental Declaration of Ross D. Murray Regarding Notice Dissemination and Requests for Exclusion Received to Date, dated August 30, 2023, ¶¶3-4 ("Supp. Mailing Decl."), filed herewith.  The deadline for objections and requests for exclusions passed on August 17, 2023.  No one has objected to the Settlement, Plan of Allocation, or requested attorneys' expenses.  As to the requested attorneys' fees and Lead Plaintiff award, only one objection was received, after the deadline, from an individual with a recent history of

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as those in the Stipulation of Settlement, dated May 26, 2023, ECF 193 (the "Stipulation").

4877-4467-2890.v2

frequently objecting to attorneys' fees, and always losing. *See* §III. That there has been only one objection to the requested attorneys' fees and Lead Plaintiff award confirms that the requests are fair and reasonable and should be approved. *Cf. In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 772785, at *11 (N.D. Ill. Feb. 29, 2016) (holding that where three class members objected and 59 class members chose to exclude themselves from the settlement, "[t]he small number of class members who objected or opted out further supports the fairness and reasonableness of the settlement").

Moreover, as set out more fully below, the sole objection is meritless. In fact, the objector directs most of his attention to ranting about what he perceives to be an overly litigious society in general, in light of his sympathetic view of corporate defendants and truck drivers, rather than to addressing the particulars of the fee request in this case. *See* §III.B. Thus, for the reasons set forth herein and in the Settlement Brief, Fee Brief, and previously-filed declarations, Lead Plaintiff and Lead Counsel respectfully request that the Court grant the Motions in their entirety.

## II.    THE REACTION OF THE SETTLEMENT CLASS PROVIDES OVERWHELMING SUPPORT FOR FINAL APPROVAL OF THE MOTIONS

The reaction of the Settlement Class is a significant factor in assessing the reasonableness of the Settlement and the fee and expense requests. *See, e.g., Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (instructing district courts to consider "the reaction of members of the class to the settlement"). In particular, the Seventh Circuit has recognized that in securities class actions like this one, the class includes large institutional investors with "fiduciary duties to protect the beneficiaries" and incentive to object to fee awards if the requests are not fair and reasonable. *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) (finding that lack of objection by any institutional investor weighed in favor of reasonableness of fee request).

- 2 -

Here, pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF 198, "Notice Order"), the notice program was extensive. The Claims Administrator mailed more than 231,500 copies of the notice packet to potential Settlement Class Members or their nominees. *See* Supp. Mailing Decl., ¶¶3-4. The Notice informed Settlement Class Members of the terms of the proposed Settlement and Plan of Allocation, and that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 26% of the Settlement Amount, payment of litigation expenses in an amount not to exceed $400,000 (larger than the $325,290.76 amount actually being requested) and a Lead Plaintiff award not to exceed $7,500 (larger than the $5,775 award being sought). *See* ECF 209-2, Ex. A at 1. The Notice also apprised Settlement Class Members of their right to object, by August 17, 2023, to the requests. *See id.* at 2, 10.

In addition, as ordered by the Court and consistent with common notice practice in these cases, copies of the Notice, Proof of Claim, Stipulation, Notice Order, and other case-related documents were posted on www.ExelonSecuritiesLitigation.com on June 30, 2023. *See* ECF 209, ¶14. Further, on July 7, 2023, the Claims Administrator published Summary Notice in *The Wall Street Journal* and released it over the internet via *Business Wire*, informing readers of the proposed Settlement, how to obtain copies of the notice packet, and the deadlines for the submission of claim forms, objections, and exclusion requests. *See id.*, ¶12. On August 3, 2023, pursuant to the schedule approved by the Notice Order, Lead Plaintiff and Lead Counsel filed their opening papers in support of the Motions. Those papers – available on the public docket and the Settlement website – describe Lead Plaintiff's and Lead Counsel's views of the Settlement, work performed in this Litigation, the strengths and weaknesses of the claims, and support for the fee and expense request. *See* ECF 201 through ECF 210.

In response to this extensive notice program, only 17 Members of the Settlement Class requested exclusion. *See* Supp. Mailing Decl., ¶¶5-6. While most of them gave no reason for

- 3 -

requesting exclusion, some indicated they owned only tiny fractions of, or very small numbers of shares, and apparently did not desire to complete the paperwork necessary to receive part of the recovery. *See, e.g.*, ECF 209-2, Ex. D. The small number of requests for exclusion supports final approval. *See Sears, Roebuck & Co.*, 2016 WL 772785, at *11 (finding that only 59 requests for exclusion supported approval).

Moreover, sophisticated institutional investors often make up large portions of securities classes and generally have the largest stake in the outcome, yet not one institutional investor has requested exclusion or objected to any aspect of the Settlement, Plan of Allocation, the requested attorneys' fees and expenses, or the requested Lead Plaintiff award. *See, e.g.*, *Accretive*, 773 F.3d at 863 (affirming settlement approval over individual objector); *Motorola*, 739 F.3d at 959 (noting lack of objection by sophisticated, institutional investors in affirming fee over objection of individual objector); *Arango v. Landry's, Inc.*, 2015 WL 5673878, at *2 (N.D. Ill. Aug. 27, 2015) ("No objections to the Settlement were made by the Class Members, and this fact likewise supports approval."). Only one objection was received at all (*see* §III), and it is limited to the requested attorneys' fees and Lead Plaintiff award. No one has objected to the Settlement, Plan of Allocation, or attorneys' expense request.

Thus, combined with the support by the Court-appointed Lead Plaintiff (ECF 208), the reaction of the Settlement Class provides overwhelming additional support for approving the Settlement, Plan of Allocation, Lead Plaintiff award, and attorneys' fees and expenses.

## III. THE SOLE OBJECTION IS LATE AND LACKS MERIT

As discussed, the sole objection in this case addresses only the requested attorneys' fees and Lead Plaintiff award. The objection was submitted by Larry D. Killion ("Killion"), a frequent objector whose arguments have been repeatedly rejected, but that objection is late, without merit, and stands alone against the overwhelming support from the Settlement Class. *See In re TikTok,*

- 4 -

*Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 938 (N.D. Ill. 2022) (holding that existence of just four objections weighed in favor of approval, particularly since two of the objections were from "'serial' objectors who 'have unsuccessfully asserted the same or similar objections in other class action settlements'") (citation omitted); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (approving settlement where "only 342 Class Members excluded themselves from the settlement and only 15 Class Members submitted documents that could be considered objections").

### A.    The Objection Was Late

Mr. Killion's objection was received by Lead Counsel, and filed by the Court, on August 22, 2023 (*see* ECF 211 ("Obj.") at 1), after the August 17 deadline for objections (*see* ECF 198, ¶15). A late objection is invalid and need not be considered. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *3 (N.D. Cal. Dec. 27, 2011) (finding that a "'serial objector['s]'" submission was "untimely" and refusing to consider the objection "[o]n that basis alone"). Mr. Killion also submitted an email to the Claims Administrator on August 18, 2023 stating his intent to object (Supp. Mailing Decl., Ex. B), but that email likewise was sent after the August 17, 2023 deadline and did not comply with the Notice Order's requirements that any objections must be sent to the Court, Lead Counsel, and defense counsel "such that they are received on or before" August 17, 2023. *See* ECF 198, ¶15 (stating that objections not meeting these requirements will not be "heard or entitled to contest" any aspect of the Settlement, Plan of Allocation, or requested awards).

To be sure, Mr. Killion claims his objection was late because he received one form of notice, via the mail, "on or about" the same day objections were due. Obj., ¶2(c); Supp. Mailing Decl., Ex. B. However, he does not state the exact date his mailing was received (only stating "on or about"), he does not state whether he received it sooner and only opened his mail late, and he

does not state whether he received notice by way of the other methods (*e.g.*, website and publication) approved by the Court prior to the deadline. *See id.* In any event, notice need only be the "best notice that is practicable under the circumstances," not perfect. Fed R. Civ. P. 23(c)(2)(B). Accordingly, courts have held that notice is not rendered inadequate merely because certain class members did not receive actual notice. *See, e.g.*, *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 941, 945 (10th Cir. 2005) (holding the question is not "whether some individual shareholders got adequate notice, but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement" and finding notice adequate even though objectors received notice two weeks after the objection deadline); *In re VMS Ltd. P'ship Sec. Litig.*, 1995 WL 355722, at *1, *2 (N.D. Ill. June 12, 1995) (holding the proper inquiry is "whether the party providing notice acted reasonably in selecting the means likely to inform persons affected, not whether each person actually received notice" and finding individual was bound by settlement even though he did not receive actual notice).

Here, the notice program utilized a combination of direct mailing, publishing information through national platforms, and posting materials on the internet. *See* §II; Supp. Mailing Decl., ¶¶3-4. On June 30, 2023, the Claims Administrator mailed notice directly to more than 56,000 potential Settlement Class Members for whom contact information was available through Exelon's transfer agent. ECF 209, ¶5. For investors that held stock in "street name" through brokerages, as it appears Mr. Killion did, the Claims administrator "mailed, by First-Class Mail, Claim Packages and cover letters to 279 brokerages, custodial banks, and other institutions" on June 30, 2023, which was 48 days before the objection deadline. ECF 209, ¶6. The cover letters, in accordance with the Notice Order, informed the entities that they must either send the notice to the beneficial owners or provide a list of the names and addresses for the beneficial owners to the Claims Administrator within 10 days. *See* ECF 209-2, Ex. B. The Claims Administrator then sent

- 6 -

follow up mailings once it received further information from those entities as to individual account holders. ECF 209, ¶10. From June 30, 2023 through August 2, 2023, the Claims Administrator mailed more than 220,000 notice packets. *Id.*, ¶11.

This notice program constituted the best notice practicable under the circumstances, and is consistent with the programs utilized and approved in other securities class actions. *See* ECF 192 at 14-15; *see also Azar v. Grubhub Inc.*, No. 1:19-cv-07665, ECF 99, ¶¶6-8 (N.D. Ill. Oct. 14, 2022) (previously filed at ECF 192-4, approving essentially same notice program); *In re Marsh & McLennan Comps., Inc. Sec. Litig.*, 2009 WL 5178546, at *23 (S.D.N.Y. Dec. 23, 2009) (overruling objections from six people who claimed notice "was not 'timely received'" and approving similar notice program that mailed initial notice just 30 days before objection deadline); *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (finding similar notice program adequate where 1,000 beneficial owners, making up approximately 20% of the potential class members, received notice from brokerages after the objection deadline). Thus, Mr. Killion's vague and unsubstantiated claim that he received one form of notice late does not excuse his untimely objection, and it can be denied on that ground alone. *See, e.g., In re FedEx Ground Package Sys., Inc., Emp. Practices Litig.*, 2017 WL 1735565, at *3 (N.D. Ind. Apr. 28, 2017) (holding that late objection to class action settlement "must [be] denied because it was untimely").

### B. Even if Considered, the Objection to the Requested Attorneys' Fees Is Riddled with Errors and Has No Basis

Mr. Killion is a Texas attorney with no apparent experience or background in securities or class action litigation. *See* Ex. A (State Bar of Texas website listing Mr. Killion's "Practice Areas" without including class actions or securities). By his count this is at least the tenth objection he has submitted in just over one year. Obj., ¶2(f). Given that he is an attorney, the fact that his objections appear to be largely cut-and-paste objections with typographical and other errors, based

off a form he has posted on his website, is inexcusable.[2]  To the extent this Court considers the objection, it should be overruled for several reasons.

First, Mr. Killion appears to agree with Lead Counsel that "the results obtained" is a critical factor to awarding fees (Obj., ¶3.3.1), but he fails to address the fact that this was an excellent result (*see* Fee Brief at 5-10).  The $173 million Settlement is believed to be the seventh largest securities class action settlement in the Seventh Circuit and it represents an exceptional percentage of estimated aggregate damages – between 38% and 50%.  *See* Settlement Brief at 11; Fee Brief at 8.  In addition to the cases previously cited in the Fee Brief, just earlier this month, the lead plaintiffs in *In re The Allstate Corp. Sec. Litig.*, No. 16-cv-10510, ECF 540 (N.D. Ill.) sought preliminary approval of a $90 million settlement, representing 16% of damages, which the lead plaintiffs touted as "far greater" than other securities class action settlements.  *See* Ex. I at 11.  As reflected in the following chart, the "results obtained" by Lead Counsel in this case are exceptional, and the fee request is clearly reasonable, when compared to both *Allstate* and the recently approved $105 million securities class action settlement in *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-03187, ECF 526 (N.D. Ill. 2023) (*see also* Settlement Brief at 11 n.9):

---

[2]    Mr. Killion lists *In re Wells Fargo & Co. Sec. Litig.*, 20-cv-04494 (S.D.N.Y.) and *In re T-Mobile Customer Data Security Breach Litigation*, 21-md-03109 (E.D. Mo.) as cases in which he has objected, but there are no such objections listed on the dockets.  The remaining objections are attached here as support for the arguments herein about the errors and duplicative nature of each objection.  *See* Ex. B (*In re Kraft Heinz Sec. Litig.*, No. 19-cv-01339 (N.D. Ill.)); Ex. C (*La. Sheriff's Pension & Relief Fund v. Cardinal Health, Inc.*, No. 19-cv-03347 (S.D. Ohio)); Ex. D (*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, No. 20-cv-10041 (S.D.N.Y.)); Ex. E (*In re Micro Focus Int'l. PLC Sec. Litig.*, No. 18CIV01549 (San Mateo Cty. Cal. Superior Ct.)); Ex. F (*Reynolds v. FCA US LLC*, No. 19-cv-11745 (E.D. Mich.)); Ex. G (*In re Nielsen Holdings PLC Sec. Litig.*, No. 18-cv-07143 (S.D.N.Y.)); Ex. H (*Richardson v. IKEA North Am. Services*, No. 2021CH05392 (Cook Cty. Ill. Chancery Ct.)).



| | Exelon | Allstate | Walgreen |
|---|---|---|---|
| ■ Recovery as % of Damages | 38% | 16% | 9.5% |
| ■ Fee Requested or Approved | 26% | 25% | 27.5% |

Although conceding the result obtained should be considered, Mr. Killion fails to address the specific facts relevant to the fee request in this case.

Second, the objection to the requested fee award is based on Mr. Killion's personal opinions and contrary to prevailing case law. Mr. Killion states his opinion that the "lodestar" method should be applied, but he does not address (much less rebut) any of the Seventh Circuit cases cited by Lead Counsel demonstrating that the percentage method is the appropriate method of awarding fees in contingent fee common fund cases, like this one, and discussing the negative incentives created by awarding fees based on lodestar. *See* Fee Brief at 2-3 (citing, *e.g.*, *Motorola, 739 F.3d 956*, where the Seventh Circuit affirmed a 27.5% fee on a $200 million securities class action settlement with no discussion of lodestar). Mr. Killion only asks that the fee be lowered, without suggesting by how much or offering support for an alternative fee award, and he ignores the many cases from within the Seventh Circuit that awarded comparable percentage fees. *See* Fee Brief at 4-6 (citing fee awards of 25% to 33% in complex class actions).

Mr. Killion does not cite any authority from within the Seventh Circuit. *See* Obj., ¶3.3.2. Instead, the only case cited by Mr. Killion is *Stalnaker v. DLC, Ltd.*, 376 F.3d 819, 825 (8th Cir.

2004), which he misspells as "Stabraker" and which he claims is an example of "well thought out reasoning of award [sic] of Attorney Fees in similar Federal Court Class Action Ruling rulings [sic]." Obj., ¶3.3.2. Aside from his spelling error, Mr. Killion's assertion is wrong because *Stalnaker* affirmed fees to a bankruptcy trustee pursuant to 11 U.S.C. §330(a), which is not a "Class Action Ruling" and has nothing to do with common fund class action settlements. *See Stalnaker, 376 F.3d at 825.*[3]

Third, Mr. Killion's objection reflects a complete ignorance of the risks associated with contingent fee litigation as he suggests the case was easy to allege "due to experts" who confuse courts by converting "normal market variability" into "fraud." Obj., ¶¶5.2-5.3. Mr. Killion's argument reflects a complete misunderstanding of the elements necessary to plead securities fraud, the heightened pleading standards under the PSLRA, the fact that 45% of securities fraud cases filed in 2019 were dismissed, and that a consumer class action based on the bribery scheme at issue in this case was dismissed for failing to state a claim. *See* ECF 100 at 6 (Order denying motions to dismiss, setting out six elements to securities fraud claims, and holding that Lead Plaintiff was required to meet a "heightened pleading standard"); ECF 203-2 at 10, fig. 9 (reporting 45%

---

[3]     The 33.3% fee award in one of the cases cited by Lead Counsel, *In re Broiler Chicken Antitrust Litig., 2022 WL 6124787 (N.D. Ill. Oct. 7, 2022)* (cited in Fee Brief at 4-5), was recently vacated by the Seventh Circuit. *See In re Broiler Chicken Antitrust Litig., 2023 WL 5599636 (7th Cir. Aug. 30, 2023).* Notably, the Seventh Circuit did not hold that the fee was too high or that the same fee could not be awarded on remand, but instead held that the district court should have considered certain *ex ante* fee bids by, and Ninth Circuit fee awards to, lead counsel firms in that case that were submitted by an objector. *See id. at *4-*5.* Here, Mr. Killion has not presented any such matters to consider, as Mr. Killion has offered no alternative fee or case law other than citing a lodestar decision that is distinguishable and contrary to law. Moreover, the 26% fee sought here is much lower than the *Broiler Chicken* fee and is consistent both with awards to Lead Counsel in this District (*see* Fee Brief at 5; *Motorola*, 739 F.3d at 959 (affirming 27.5% fee on $200 million settlement)) and the most recent fee award to Lead Counsel from a court in the Ninth Circuit on a much larger settlement (*see* Ex. J (transcript in *Purple Mountain Trust v. Wells Fargo & Co.*, No. 18-cv-03948 (N.D. Cal. Aug. 17, 2023) at 5 (stating court would award 25% fee on $300 million securities class action settlement)). Thus, the decision in *Broiler Chicken* does not alter the reasonableness of the lower fee award sought in this case.

4877-4467-2890.v2

dismissal rate); *Gress v. Commonwealth Edison Co.*, 559 F. Supp. 3d 755 (N.D. Ill. 2021) (dismissing related consumer case).[4]

Fourth, Mr. Killion's lack of understanding of the extraordinary result in this case and the risks associated with obtaining it, underscores that his objection is driven by his overall contempt for the plaintiffs' bar, rather than the merits of this particular fee request. For example, Mr. Killion rants that securities and class action lawyers bring claims based on "opinionated experts since statistician [sic] can 'prove' anything given enough rhetoric and time – the fog index" (Obj., ¶5.2) and manufacture lawsuits that "result[] in an attack on defendants (most of which are law abiding advocates and publicly traded companies who . . . honestly try do to the right thing)" (*id.*, ¶6). Mr. Killion's sympathy for "law abiding" corporate defendants and disdain for plaintiffs' lawyers is not confined to securities law, as he directs much of his attack at "tort lawyers (especially those using roadside billboard advertisements to swing their justice sledge hammer at guilty until proven innocent car accident truck drivers)." *Id.* In defending corporate wrongdoers and accident-causing truck drivers, Mr. Killion protests that "[t]here is always a certain degree of risk and consequence all us humanoids must absorb as life's destiny" or "else we all would all [sic] be borne [sic] in the court house and never leave." *Id.* Mr. Killion's attached "Amicus Curiae discussion brief regarding the abuse/misuse of attorney fee claims" is just a blog from his own website, which compares plaintiffs' lawyers to "carnival barker[s]" that "craft a case, whether real or illusionary" based on the "speculative nature" of our laws. ECF 211-1 at 3-4; *see also* Ex. K (website listing "Larry Killion" as author of and linking to Ex. L, *available at* https://ino-consumerhelp.com/wp-

---

[4]   Further proving that Mr. Killion did not even bother to read the Fee Brief or supporting papers before submitting his cut-and-paste objection, he claims the "[a]ttorney hours spent on the case and hourly rates are unspecified" (Obj., ¶5.5), but that is false (*see* Fee Brief at 7; ECF 210-2). Mr. Killion also appears completely unaware of the extensive efforts (and over 31,000 hours) expended to achieve the Settlement. *See* Fee Brief at 7-11; Settlement Brief at 1-4.

content/uploads/2023/03/ClassActionLawsuitAttyFeeReform.pdf, which is largely the same "Amicus Curiae" brief attached to Mr. Killion's objection here).

That this misguided animus, rather than informed concern, drives Mr. Killion's objection is clear from the fact that all of his objections mirror his "Example Form Objection to Attorney's Fees," and each contain the same typographical errors and lack of detailed analysis of the particular cases. *Compare* Ex. L at 29-33 (Killion's "Example Form Objection" from website erroneously citing to "*Stabraker v. DLC Ltd.*," and containing typographical errors such as "Individual Class Member award are [sic] estimated" and "the amount of recover [sic] to each Class Member"), *with*, *e.g.*, Obj. (following same form with same typographical errors) *and* Ex. D (same). Despite Mr. Killion being an attorney, he compounds the careless errors throughout his objection in this case. *See also, e.g.*, Obj., ¶3.3.2, ¶6 (referring to "Federal Court Class Action Ruling rulings [sic]" and to "ambulance chasing attorney's [sic] associated with negligence claims").[5] Courts have recognized that such "lack of care evinces disrespect to the Court, opposing counsel . . . and the legal profession." *Cheesman v. Switzer*, 2022 WL 17067483, at *2 (S.D. Ind. 2022) (finding there was "simply no excuse" for brief that was "replete with typographical errors and fragmented sentences").

Finally, Mr. Killion's prior boilerplate objections to fee requests, parroting the same "arguments" presented here, have repeatedly been overruled. *See* Ex. M (Order in *Reckitt Benckiser*, stating, "The Court has considered the objection to the fee application filed by Larry D. Killion . . . and finds it to be without merit. The objection is overruled in its entirety."); Ex. N

---

[5]   *See also, e.g.*, Obj., ¶5.2-6 (containing typographical errors such as "consistent with opinionated experts since statistician [sic] can 'prove' anything," "vicissitudes faced by defendant's [sic] burdened," "insulates plaintiff's [sic] from finding the real truth," "not in claimed attorney fee and not in claimed attorney fees [sic]," "lightening [sic] induced power outages," "buy low/sale [sic] high strategy").

(Order in *Micro Focus* overruling Killion objection); Ex. O (Order in *FCA*, stating, "The Killion Objection's challenge to the contingent nature of the requested attorneys' fees is not well taken and inconsistent with the law of this Circuit."); Ex. P (Transcript in *Nielsen Holdings* reflecting court holding that, "I find that the one objection from Mr. Killion is flawed both as a matter of law and a matter of fact . . . ."). Mr. Killion's submission of basically the same undeveloped and misguided objection in this case, despite those prior orders, should likewise be rejected and overruled. *See also In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp. 3d 664, 671 (N.D. Ohio 2015) (finding objector had needlessly delayed proceedings and demonstrated a "blatant disregard of the rulings of other district courts by filing the same boiler-plate, form objection in this case that he filed in other cases").

### C. The Objection to the Lead Plaintiff Award Should Also Be Rejected

Mr. Killion's objection to the Lead Plaintiff award (Obj., ¶10) is also based on a fundamental misunderstanding of how lead plaintiffs are court appointed in securities class actions under the PSLRA. Mr. Killion claims that the requested award is a "bounty paid for winning the race to the courthouse to first file a lawsuit." Obj., ¶10. But the PSLRA prohibits lead plaintiff appointments based on a "race to the courthouse," and instead created a lead plaintiff process designed to appoint the lead plaintiff with the most significant financial interest in the case who could best supervise counsel. *See Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 3252221, at *1 (N.D. Ill. July 19, 2019) (Kendall, J.) (describing PSLRA's lead plaintiff process and appointing movant with largest losses). Accordingly, the Lead Plaintiff in this case did not win any race to the courthouse by filing the first complaint, but moved for appointment with the other movants 60 days after notice of the lawsuit was published, arguing for appointment based on the size of its losses, with no preference to who filed first. *See* ECF 30 at 3-5. Rather than being

- 13 -

"unconscionable" (Obj., ¶10), the requested $5,775 Lead Plaintiff award is supported by and lower than similar awards granted in other securities class actions (*see* Fee Brief at 14-15).

## IV.    CONCLUSION

For the reasons set forth above and in the August 3, 2023 submissions, Lead Plaintiff and Lead Counsel respectfully request that the Court enter the (i) proposed Final Judgment Approving Settlement; (ii) proposed Order Approving Plan of Allocation; and (iii) proposed Order Awarding Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4).[6]

DATED:  August 31, 2023                      Respectfully submitted,

                                                        ROBBINS GELLER RUDMAN
                                                          & DOWD LLP
                                                        JAMES E. BARZ (IL Bar # 6255605)
                                                        FRANK A. RICHTER (IL Bar # 6310011)
                                                        CAMERAN GILLIAM (IL Bar # 6332723)


                                                                    s/ James E. Barz
                                                        JAMES E. BARZ

                                                        200 South Wacker Drive, 31st Floor
                                                        Chicago, IL  60606
                                                        Telephone:  630/696-4107
                                                        jbarz@rgrdlaw.com
                                                        frichter@rgrdlaw.com
                                                        cgilliam@rgrdlaw.com

                                                        ROBBINS GELLER RUDMAN
                                                          & DOWD LLP
                                                        THEODORE J. PINTAR
                                                        655 West Broadway, Suite 1900
                                                        San Diego, CA  92101
                                                        Telephone:  619/231-1058
                                                        619/231-7423 (fax)
                                                        tedp@rgrdlaw.com

                                                        Lead Counsel for Lead Plaintiff

---

[6]    Pursuant to this Court's case procedures, Word versions of the proposed orders are being submitted to the Court via email (Proposed_Order_Kendall@ilnd.uscourts.gov).

- 14 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 31, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ James E. Barz
JAMES E. BARZ

ROBBINS GELLER RUDMAN
   & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
Email: jbarz@rgrdlaw.com

## Mailing Information for a Case 1:19-cv-08209 Flynn v. Exelon Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amy C. Andrews**
  aandrews@rshc-law.com,docketdept@rshc-law.com

- **James E Barz**
  jbarz@rgrdlaw.com,cbarrett@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Mari Byrne**
  mari.byrne@davispolk.com,paige.whitaker@davispolk.com,ecf.ct.papers@davispolk.com,julian.hernandez@davispolk.com,nicole.intrieri@davispolk.com,kennedi.wilibert@davispolk.com,erin.hill@davispolk.com,matthew.garry@davispolk.com,melissa.english@davispolk.com

- **Brian E. Cochran**
  BCochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Charles Crowl**
  mcrowl@rshc-law.com,docketdept@rshc-law.com,ssluch@rshc-law.com

- **Carol V Gilden**
  cgilden@cohenmilstein.com,efilings_cmst@ecf.courtdrive.com,lhoeksema@cohenmilstein.com

- **Cameran Gilliam**
  cgilliam@rgrdlaw.com

- **David Andrew Gordon**
  dgordon@sidley.com,efilingnotice@sidley.com,david-gordon-4155@ecf.pacerpro.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Laurie Largent**
  LLargent@rgrdlaw.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com,scott-lassar-4695@ecf.pacerpro.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tsayre@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Louis Carey Ludwig**
  lcludwig@pomlaw.com,kgutierrez@labaton.com

- **Carl V. Malmstrom**
  malmstrom@whafh.com

- **Francis P. Mcconville**
  fmcconville@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com

- **Edmund Polubinski , III**
  Edmund.polubinski@davispolk.com,ecf.ct.papers@davispolk.com,allie.rutter@davispolk.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com,E_File_SD@rgrdlaw.com,susanw@rgrdlaw.com

- **Robert J. Robbins**
  rrobbins@rgrdlaw.com,ppuerto@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **James P Rouhandeh**
  rouhandeh@davispolk.com,ecf.ct.papers@davispolk.com

- **Jared Matthew Schneider**
  jared@jaredschneider.com

- **Julia Kathryn Schwartz**
  julia.schwartz@usdoj.gov,caseview.ecf@usdoj.gov,alexandra.dumitriu@usdoj.gov

- **Heather Benzmiller Sultanian**
  hsultanian@sidley.com,dvelkovich@sidley.com,efilingnotice@sidley.com,heather-sultanian-3303@ecf.pacerpro.com

- **United States of America**
  julia.schwartz@usdoj.gov

- **Brian O'Connor Watson**
  bwatson@rshc-law.com,docketdept@rshc-law.com

- **Jennifer Martin Wheeler**
  jwheeler@sidley.com,jennifer-4277@ecf.pacerpro.com,efilingnotice@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Jeanne M. Jones
,

Larry D. Killion
,

Joseph Nigro
,

Objector:
Larry D. Killion
2114 Oxford Street
Houston, TX  77008