# EXHIBIT A

**STATE BAR of TEXAS**



## MR. LARRY DALE 'LARRY' KILLION

**Eligible to Practice in Texas**

### SOLO

*Bar Card Number:* 11409200
*TX License Date:* 11/11/1977

*Primary Practice Location:* Houston , Texas

*2114 Oxford Street*
*Houston, TX 77008-2649*

### CONTACT INFORMATION

**Tel: 713-906-9135** 📞

---

*Practice Areas:* Consumer, International, Oil, Gas and Energy Resources, Real Estate, Other, Construction, Contracts

---

*Statutory Profile Last Certified On:* 05/05/2022

### PRACTICE INFORMATION

*Firm:* Solo

*Firm Size:* Solo

*Occupation:* Private Law Practice

*Practice Areas: Consumer, International, Oil, Gas and Energy Resources, Real Estate, Other, Construction, Contracts*

**Services Provided:**
Deaf/Hard of Hearing Translation: Not Specified
ADA-accessible client service: Not Specified
Language translation: Not Specified

**Fee Options Provided:** ❓
None Reported By Attorney

*Please note: Not all payment options are available for all cases, and any payment arrangement must be agreed upon by the attorney and his/her*

### COURTS OF ADMITTANCE

*Federal:*
None Reported By Attorney

*Other Courts:*
None Reported By Attorney

*Other States Licensed:*
None Reported By Attorney

*Please note: This information is self-reported by Texas attorneys. Current license or admittance status can only be certified by the appropriate court or licensing entity.*

*client. The State Bar of Texas is not responsible for payment arrangements*

***Foreign Language Assistance:***

Spanish

## LAW SCHOOL

| *School* *Degree earned* |
|---|
| South Texas College of Law |
| ***Graduation Date*** 05/1978 |

## PUBLIC DISCIPLINARY HISTORY

**State Bar of Texas**

No Public Disciplinary History

**Other States**

None Reported By Attorney

Sanctions that indicate a judgment is on appeal are still in effect but are not final and subject to change. To request a copy of a disciplinary judgment that is not available online or for more information about a specific disciplinary sanction listed above, please contact the Office of the chief Disciplinary Counsel at (877) 953-5535.

The Texas Attorney Profile provides basic information about Attorneys licensed to practice in Texas. Attorney profile information is provided as a public service by the State Bar of Texas as outlined in Section 81.115 of the Texas Government Code. The information contained herein is provided "as is" with no warranty of any kind, express or implied. Neither the State Bar of Texas, nor its Board of Directors, nor any employee thereof may be held responsible for the accuracy of the data. Much of the information has been provided by the attorney and is required to be reviewed and updated by the attorney annually. The information noted with an asterisk (*) is provided by the State Bar of Texas. Access to this site is authorized for public use only. Any unauthorized use of this system is subject to both civil and criminal penalties. This does not constitute a certified lawyer referral service.

# EXHIBIT B

Case 1:19-cv-01339 Document #: 242 Filed: 07/25/23 Page 15 of 394 PageID #:19286

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | ) ) ) ) ) | Case No. 1:19-cv-01339 (N.D. Ill.) Honorable Jorge L. Alonso |

**OBJECTION**
**TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES,**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1. Objection Applicant, Larry D. Killion, herein 'Applicant', a Settlement Class Member (Claim ID: PYMTA-VH4ZB) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, is not represented by counsel and is a pro se Applicant, request for modification and downward adjustment of any pending or submitted Plaintiff's Motion/Application For Award of Attorneys' Fees and Expenses, and Class Representative Service Award, IF ANY, (herein the 'Motion' or 'Application') because such Motion is unreasonable, unfair and not in the best interest of the Settlement Class Members.
2. Dates, prices and number of KraftHeinz shares purchased/sold by me during the Class Period, to the best of my knowledge are shown in the attached Exhibit A Trade Confirmation for KraftHeinz KHC Shares between November 6, 2015 and August 7, 2019.
3. *This Objection is based on those documents of record in Plaintiff* https://www.kraftheinzsecuritieslitigation.com/, *as of the date of this Objection.*

**OBJECTION**

3. Rationale behind this Objection, includes...

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the the Application, I do not agree with such approval, and hereby submit this Objection.

3.3 The Motion is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Motion must be thoroughly tested for its reasonableness, and should take into account:
3.3.1 American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o Traditional fee analysis to determine reasonableness takes into account...
  - the time and labor required,

Page 1 of 9

- the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
- the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
- the fee customarily charged in the locality for similar legal services;
- the amount involved and the results obtained;
- the time limitations imposed by the client or by the circumstances;
- the nature and length of the professional relationship with the client;
- the experience, reputation, and ability of the lawyer or lawyers performing the services; and
- whether the fee is fixed or contingent

3.3.2 The well thought out reasoning of award of Attorney Fees in similar Federal Court Class Action Ruling rulings, in particular attorney fee reasonableness test criteria described in
   o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
      o Determining reasonable fees under the **lodestar method** is a two-step process.
         - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
         - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a **reasonable** fee in the case.
         - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
         - Reasonableness takes into account the factors used by the traditional fee *determination*.

3.3.3 Class Action Fairness Act of 2005;
   o Since the case was brought under CAFA, a federal law, Class Action settlements [damages and attorney's fees] are subject to Court approval which takes into account…
      o Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

4. The Court is requested to invoke its discretionary powers to modify and reduce the Motion to make it reasonable.

5. The economics of the requested Motion indicate:

> 5.1 The proposed total Settlement Fund to all Class Members is $450,000,000.

> 5.2 Individual Class Member award are estimated to be $0.62 per KHC shares (gross, before deduction of attorneys fees and costs. The allegation of trying to establish approximately less than 0.8% to 2% of the stock (using a stock value range over the Class Period of $30 to $70) value of KHC as being associated with fraud, is consistent with opinionated experts since statistician can 'prove' anything given enough rhetoric and time – the fog index.

> 5.4 Total Attorney Expenses applied for are upt to $3.2 million.

> 5.5 Attorney Fees applied for up to 20% (but prior Class Action cases suggest the full percentage is always awarded) of $450,000,000 or $$90,000,000 plus expense.

> 5.6 Attorney hours spent on the case and hourly rates are unspecified.

> 5.7 The disparity between the amount of recover to each Class Member compared to the paycheck each attorney could receive suggests a exorbitant and unreasonable basis of on which to base attorney fees.

6. The proposed Attorney Fee Application/Motion is unreasonable in the following respects:
   - A fee of $90,000,000 based on a 20% contingency amount of the Settlement Amount is outrageous, unreasonable and should shock the conscience of the Court, as it relegates a non-tort law consumer/investor stock claim based on white collar fraud, with one based on tort law, to the same characteristic of ambulance chasing attorney's associated with negligence claims where contingency fees have become the norm and a key incentive factor for tort lawyers (especially those using roadside billboard advertisements to swing their justice sledge hammer at guilty until proven innocent car accident truck drivers) to advance cases and big attorney pay checks sourced from the real suffering of others, whether they have merit or not, because of the vicissitudes faced by defendant's burdened more so with not defending the merits of a case but the emotions and sympathy of a jury, stirred up by plaintiff counsel rhetoric. The more honest argument is attorney fee claims should/must be based on defense of time and hourly rate as the proper measure of 'earned' attorney fee, not negligent type contingency fee claims.
   - The case claim is all about hired gun academic or consultive experts, using the wizardry of statistical analysis – where just about any hypothesis including those associated with security fraud complaints associating published statements with creating a fraud and how it affects decimal place value of stock, whether real or imaginary (especially when the variance of the stock market is what the market is all about or it would not exist) – is defended as being possible, probable or likely. And the vagaries of the fraud law and counsel crafting a case…whether real or fantasy….further insulates plaintiff's from finding the real truth of a claim and a defendant given the honest right to address real issues. What

all this means is that the substance of a case is primarily based on the hired gun experts establishing and proving the case with statistical proofs and not the acumen of the lawyers…who are predominantly advancing procedural tasks. Consequently the 'value' of fees and effort of the claim is buried in the $3.2 million expense claim, where ostensibly the hired gun expert fee is buried and not in claimed attorney fee and not in claimed attorney fees. How $3.2 million real expense is converted to $90,000,000 phantom attorney fee claim is part of the magic (and incentive to bring Class Action lawsuits by attorneys) of the Class Action industry process and why contingency fees should/must be disallowed in favor of defending time and hourly rate attorney fee defenses.

- While Class Actions at times have their place in justice, like all things in life the Class Action process – and associated attorney fee claims - can be used for its intended purpose (seeking real justice – though small as it may be for each 'victim' where there are many victims) or misused or abused. That misuse and abuse option is fertile ground for crafty counsel to formulate a Class Action case (much incentivized by a huge multi-million dollar contingency fee pay check paid for by the 'victims') based on Class Action substantive law causes of action vagaries and uncertainties, resulting in an attack on defendants (most of which are law abiding advocates and publicly traded companies who are duty bound to adhere to a myriad of regulatory standards, who consistently hire their own experts to give them guidance regarding compliance with the law and honestly try to do the right thing) and they then paying out typically huge settlement checks a huge portion of which are paid to attorneys. That is not reasonable. The accompanying Amicus Curiae brief on the Class Action industry and attorney fee abuse further illustrates the misuse and abuse of the Class Action process, which this Claim is alleged to be part of, and what can be advanced to put real justice back into the definition of Class Action, and not a transport vehicle misused or abused to create huge attorney fee paychecks.

- Every day every human in life faces a continuum of events that could arguably be viewed as causing some type of Class Action harm (where harm is not in the best interest of the victim). There is always a certain degree of risk and consequence all us humanoids must absorb as life's destiny…else we all would all be borne in the court house and never leave. An unusual long crossing train at a road intersection that has stopped moving traffic and the stalled driver's time being stolen by the slow moving train; the vending machine stealing our quarter with no product in return because of a mechanical glitch in the machine; lightening induced power outages and the loss of consumer production time; stock values that constantly go up and down – buy low/sale high strategy does not always work and without that variance the market would not exist; are all just some examples of assumed risk in society. Basing huge Class Action attorney's fees on converting an otherwise assumed risk into a justice claim…is but one of many circumstances courts are charged with assisting with and defining what justice means and to what extent one pays for the claims of another. Consequently, yet more arguments why Class Action attorney fee claims should be based on defending time spent and hourly rate as being reasonable and not inflated due to crafting a case instead of asserting righteous justice merits.

7 Any reduction in the Motion is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

8. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $90,000,000 attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

9. Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.

- o While it is instructive to take into account attorney work claims of:
  - o Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases (and one of the reasons class counsel is certified to be so by the court) already have in hand the understanding of relevant statutes and case law, and unless a novel area of securities fraud issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

Respectfully submitted

This 21 day of July, 2023.

_Larry D. Killion_

_[Larry D. Killion, Applicant]_
Settlement Class Member

713 906-9135, (mobile)
832 203-7695(fax)
11235ldk@comcast.net email
2114 Oxford Street
Houston, Harris County, Texas 77008

## CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the21 day of July , 2023, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE MOTION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

United States District Court
Northern District of Illinois
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604


LEAD COUNSEL
Sharan Nirmul
Kessler Topaz Meltzer
& Check, LLP
280 King of Prussia Road
Radnor, PA 19087
and
Katherine M. Sinderson
Bernstein Litowitz Berger
& Grossmann LLP
1251 Avenue of the Americas
New York, NY 10020

Defendant
Andrew J. Ehrlich
Paul, Weiss, Rifkind,
Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
And
Sandra C. Goldstein
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

I, Larry D. Killion, further certify I am a Settlement Class Member.

_____
[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

## EXHIBIT A

## Dates, prices and number of Kraft Heinz (KHC) shares purchased/sold during the Class Period.



<table>
<tr><td></td><td>Transaction Confirmation<br>Confirm Date: September 19, 2018</td><td>Page 1 of 5</td></tr>
</table>

Brokerage Account Number
████████505 IRA - ROLLOVER

**LARRY D KILLION**

0100001909

FMT CO CUST IRA ROLLOVER
FBO LARRY D KILLION
2114 OXFORD ST
HOUSTON TX 77008-2649

| | |
|---|---|
| Online | Fidelity.com/pas |
| FAST(sm)-Automated Telephone | 800-544-5555 |
| Premium Services | 800-544-4442 |
| 8am - 11pm ET, Mon - Fri | |
| Portfolio Advisory Services | 800-544-3455 |

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18262-XBDQKJ | 1* | 000 | 09-19-18 | 09-21-18 | 500754106 | 00321-83578B | | |

You Bought

at 19

Symbol:
KHC

57.1534

DESCRIPTION and DISCLOSURES
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.
EXEC ON MULT EXCHG DETAILS ON REQUEST
AVERAGE PRICE TRADE DETAILS ON REQUEST

Principal Amount 1,085.91
Settlement Amount 1,085.91

| REFERENCE NO. | TYPE | REG REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18305-0D25RW | 1* | 000 | 11-01-18 | 11-05-18 | 500754106 | 18305-JLMZHB | | |

You Sold

at 1

Symbol:
KHC

55.7301

DESCRIPTION and DISCLOSURES
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN, FIRST OUT METHOD.

Principal Amount 55.73
Activity Assessment Fee 0.01
Settlement Amount 55.72

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 19004-XB774X | 1* | 000 | 01-04-19 | 01-08-19 | 500754106 | 03262-07245B | | |

You Sold

at 3

Symbol:
KHC

43.6100

DESCRIPTION and DISCLOSURES
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN, FIRST OUT METHOD.

Principal Amount 130.83
Activity Assessment Fee 0.01
Settlement Amount 130.82

| REFERENCE NO.<br>19080-0B02VT | TYPE<br>1* | REG.REP.<br>000 | TRADE DATE<br>03-21-19 | SETTLEMENT DATE<br>03-25-19 | CUSIP NO.<br>500754106 | ORDER NO.<br>19080-JJKQXB | | |
|---|---|---|---|---|---|---|---|---|

You Bought

      4

at    32.0400

Symbol:

KHC

**DESCRIPTION and DISCLOSURES**
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.

Principal Amount    128.16
Settlement Amount   128.16

| REFERENCE NO.<br>19086-0B85XT | TYPE<br>1* | REG.REP.<br>000 | TRADE DATE<br>03-27-19 | SETTLEMENT DATE<br>03-29-19 | CUSIP NO.<br>500754106 | ORDER NO.<br>19086-JJVTZB | | |
|---|---|---|---|---|---|---|---|---|

You Bought

      7

at    32.6337

Symbol:

KHC

**DESCRIPTION and DISCLOSURES**
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.

Principal Amount    228.44
Settlement Amount   228.44

| REFERENCE NO.<br>19101-XBDJQC | TYPE<br>1* | REG.REP.<br>000 | TRADE DATE<br>04-11-19 | SETTLEMENT DATE<br>04-15-19 | CUSIP NO.<br>500754106 | ORDER NO.<br>29015-54433B | | |
|---|---|---|---|---|---|---|---|---|

You Sold

     26

at    32.8977

Symbol:

KHC

**DESCRIPTION and DISCLOSURES**
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN. FIRST OUT METHOD.
EXEC ON MULT EXCHG DETAILS ON REQUEST
AVERAGE PRICE TRADE DETAILS ON REQUEST

Principal Amount    855.34
Activity Assessment Fee   0.02
Settlement Amount   855.32

| REFERENCE NO.<br>19164-XBCLGN | TYPE<br>1* | REG.REP.<br>000 | TRADE DATE<br>06-13-19 | SETTLEMENT DATE<br>06-17-19 | CUSIP NO.<br>500754106 | ORDER NO.<br>05128-83684B | | |
|---|---|---|---|---|---|---|---|---|

You Bought

     45

at    30.5850

Symbol:

KHC

**DESCRIPTION and DISCLOSURES**
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.
EXEC ON MULT EXCHG DETAILS ON REQUEST
AVERAGE PRICE TRADE DETAILS ON REQUEST

Principal Amount   1,376.33
Settlement Amount  1,376.33

| REFERENCE NO.<br>19171-XBJVNG | TYPE<br>1* | REG.REP.<br>000 | TRADE DATE<br>06-20-19 | SETTLEMENT DATE<br>06-24-19 | CUSIP NO.<br>500754106 | ORDER NO.<br>27268-30778B | | |
|---|---|---|---|---|---|---|---|---|

You Bought

     41

at    31.0974

Symbol:

KHC

**DESCRIPTION and DISCLOSURES**
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.
EXEC ON MULT EXCHG DETAILS ON REQUEST
AVERAGE PRICE TRADE DETAILS ON REQUEST

Principal Amount   1,274.99
Settlement Amount  1,274.99

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 19227-XBBBQK | 1* | 000 | 08-15-19 | 08-19-19 | 500754106 | 35383-08148B | | |

|  | | | DESCRIPTION and DISCLOSURES | | | | | |
|---|---|---|---|---|---|---|---|---|

You Sold

        86

    at    25.0823

Symbol:

KHC

DESCRIPTION and DISCLOSURES
KRAFT HEINZ CO COM
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN, FIRST OUT METHOD.
EXEC ON MULT EXCHG DETAILS ON REQUEST
AVERAGE PRICE TRADE DETAILS ON REQUEST
EX-DIV DATE 08/20/19
RECORD DATE 08/21/19
PAYABLE DTE 09/13/19

Principal Amount       2,157.08
Activity Assessment Fee    0.05
Settlement Amount      2,157.03

Case 1:19-cv-08289 Document # 242 Filed 07/25/23 Page 14 of 394 PageID 192025

## ATTORNEY'S FEES

## IN CLASS ACTION LAWSUITS

## WHAT TO DO ABOUT HUGE (UNREASONABLE?) LAWYER PAYCHECKS



# Table of Contents

**Class Action Lawsuit Industry**   3

**Incentive Factors**   4

**How To Control Award Of Huge Attorney Fees**   5

**First - Attorney Fee Reduction Action Plans**   5

**Why These Plans?**   7

**Short Lesson:  Class Action Lawsuit Boot Camp**   11

**Advantages of a Class Action Lawsuit, includes:**   12

**Disadvantage of a Class Action Lawsuit, includes:**   12

**Attorney's Fees**   15

**Advantages of Contingency Fee Structure Includes:**   16

**Disadvantages of Contingency Fee Structure Includes:**   17

**Attorney Fees Reasonableness Test**   18

**Use, Misuse and Abuse – Standards of Proof and Other Reforms**   20

**Justice and Class Action Lawsuits**   23

Appendix A –   28

**Class Action Lawsuits – Huge Attorney Fee Illustrations**   28

**Appendix B**   30

**Example Form Objection To Attorney's Fees**   30

**Appendix C**   35

**Example Op=Out Form**   35

**Appendix D**   37

**Class Action Lawsuits – Attorney Fee Legislation**   37

**Appendix E**   41

**Class Action Lawsuit Postcard Claim Form**   41

## Class Action Lawsuit Industry

The Class Action Lawsuit Industry ("**CALI**") is alive and well (some law firms even publicizing their '*Class Action Lawsuit of the Month*', merchandising (carnival barker?) Class Action justice as if it is a used car,



- As post card Class Action Lawsuit mailed notices to victims ('**Class Members**') (now managed by third party non-lawyer administrators, part of the industry) arrive more frequent than holiday season sales catalogues,
- Accompanied by Class Action representing attorneys demanding huge multi-million dollar fees using the Class Action Lawsuit as a vehicle to secure such fees,
- While Class Members typically each receive a token amount, as Class Action compensation (the so-called Settlement Fund), the vast majority of which do not even know they were victims, and most unaware of the huge attorney fee claim[1].

The smell test of all this does not look or sound right.



Attorney's fee awards in the CALI appear to have settled in on a 'standard' 'rubber-stamp' court approved fee based on 30% to 40% of the Class Action claimed harm – sounds similar to roadside billboard justice using a sledgehammer to crush guilty until proven innocent truck drivers associated with negligence claims while conveniently **NOT** advertising contingency fee subtractions by attorneys from the victims damages, in the 30%? to 40%? range (plus expenses) – feels like the victim has suffered twice. Yet attorney's fees for each Class Action case (whether based on billable hours or contingency fee demands) are supposed to be tested on a standalone reasonableness standard and not a 'one-size-fits-all' demand[2].

---

[1] Rare is the Class Member who will take the time to study court documents to educate themselves about the attorney fee over-reach, and instead, as tactfully understood by representing counsel, lured into the sense of some easy money sourced from the Class Action lawsuit nominal compensation award, sort of like being a surprised winner in a raffle not knowing you were even entered to participate.

[2] Most Class Action lawsuit attorney fee demands are accompanied by voluminous pages (sometimes rivaling the number of pages about the merits of the case) explaining why huge fees are relevant, as well as comparing the current case with prior cases as additional justification why the size of the award is prudent. Both of these arguments

## Incentive Factors

Incentive factors causing this Class Action Lawsuit industry growth, especially the award of huge attorney fees (leaving the real victims – if in fact they are victims - of a case with only a nominal award), includes:

- **Incentive No. 1: Huge Lawyer Fees**. A review of randomly selected Class Action federal court files[3], illustrates the magnitude of huge attorney fee award incentives, accompanied by small nominal claim awards to individual Class Members. The example cases cited in Appendix A indicate typical individual award to Class Members of less than $20 and many in the few $100s, while multi-million dollar awarded attorney's fees representing 25%[+] of **TOTAL** award claim for a minimum average range of **per attorney** fee of $222,000 to $287,000. The per attorney fee is understated, since the average calculation assumes the estimated number of assigned attorneys to a case, work full time on the case, which is not realistic, and consequently dramatically understates the real average attorney fee take;
- **Incentive No. 2: 'Deep-Pocket' Defendants**. Many/Most [corporate] defendants in Class Action Lawsuits who honestly try to comply with applicable consumer and investor laws, are well known, established and trusted, and highly regulated, publicly stock traded companies: (Appendix A publicly traded companies include: Nielsen-NYSE, T-Mobile-NASDAQ, American Airlines-NASDAQ, Oracle Corporation-NYSE), are financially sound with 'deep-pockets' and capable of paying huge attorney fees, thus 'easy-worth-the-effort' litigation incentive targets. These businesses routinely retain experts to give them advice in regard to compliance with relevant consumer and investor laws and regulations. These compliance characteristics are indicative of a company NOT out-to-cheat its customers or investors.
- **Incentive No. 3: Speculative Law Compliance – Use, Misuse, Abuse**. Consumer and investor laws on which most Class Action lawsuits are based, are not 'black-and-white' and easily interpreted as to what is right and what is wrong, but are complex and subject to wide ambiguous interpretations – for example security fraud and consumer protection laws – making compliance with these laws challenging even for the most compliant minded company – especially for honest defendants. Because of the speculative nature of these laws, this is fertile ground for litigation minded lawyers having the incentive to craft a case, whether real or illusionary, that places doubt in jury's and Jurist's minds whether or not such speculative laws have been violated. As in all things in life, stuff (in this case laws) can be **used** for their intended public protection purposes, or **misused** or **abused,** for whatever reason, such as an over-reaching grant of attorney fees.

Awareness of these Class Action Lawsuit litigation incentives is nothing new, as there is a history of studies, reports and papers (see the Bibliography of examples of such), discussing and analyzing the pros and cons of Class Action lawsuits, many focusing on and criticizing what justice is all

---

are inconsistent with a one-size-does-not-fit-all lawyer fee claim. The harder one has to argue for something is all the more reason to instill a sense of suspicion especially where the weight (and not the quality) of the justifying argument is not in the merits of the argument but in the volume of paper being used to cover up fictional proof.

[3] Appendix A is a summary of recent Class Action lawsuits illustrating applications for huge attorney's fees coupled with nominal awards to Class Member victims.

about and the disparity between huge plaintiff's attorney's fees paid by honorable defendants coupled with nominal award claims paid to the real victims. While many of these reports are scholarly and well researched, they have had little impact on reducing – so-far, or at least shifting, huge attorney fee awards and filtering out unjustified Class Action Lawsuit claims or putting more justified compensation into the pockets of the real victims and less in the pockets of representing attorneys.

*Many of these reports ask the question:*

# Have Class Action lawsuits merely been used as a vehicle for attorneys to secure huge fees with justice a secondary objective[4]?

## How To Control Award of Huge Attorney Fees

This paper does not repeat the arguments cited in historical writings…***BUT SUPPLEMENTS*** some new dimensions to the topic.

- **First**: By suggesting **self-help** and **law-help** action plans the public can adopt to (i) influence the adjustment to huge attorney fee paychecks in Class Action Lawsuits by (ii) honestly assessing the merits of a Class Action claim and whether or not Justice is being served - and not attorney fee greed AND any attorney fee award claim based on 'honest' reasonableness tests.
- **Second**: By providing this summary discussion of why such self-help and law-help plans make sense.

### First - Attorney Fee Reduction Action Plans

- **Self-Help**
  - **If attorney fees are viewed as being unreasonably huge (does not pass the smell test[5]), Class Action members should file written Objections with the Court, challenging the unreasonableness of such fees. (Example objection form provided in Appendix B).**
  - **Class members electing *NOT TO PARTICIPATE* ("Opt-Out")[6] in the Class Action lawsuit. (Example opt-out form provided in Appendix C).**

---

[4] Not uncommon, a huge number of pages filed in Class Action lawsuits are dedicated to defending huge attorney fee applications compared to defending the merits of the actual Class Action Claim.

[5] Like pornography, often you know it when you see it.

[6] The United States litigation centric legal system and State and Federal Class Action laws, have opted for the "opt-out" form of Class Action Lawsuit claims. This means the unaware public are 'automatically' ("opted-in") as a Class Member participant and only by pro-actively filing an "opt-out" written notice with the Court will such Member NOT be part of the Class Action Lawsuit result. As later recommended, the laws should be changed such that the public are NOT automatic members of a class, and only by affirmatively filing an "opt-in" statement with the Court will they then be Class Member participants. This "opt-in" standard will go a long way toward eliminating non-merit-based Class Action cases (let the affected public decide) as well as substantially reduce the misuse/abuse tactics associated with award of unreasonable legal fees.

Class Action Lawsuits – Attorney's Fee Problem - Mar 2023                                    Page **5** of **42**

- **Law-Help**
  - o **The public contact their elected government Representatives requesting they pass new laws...**
    - Laws designed to promote reasonableness tests of the award of attorney's fees in Class Action Lawsuits such as a realistic fee formula or caps on awards. (Example contact form provided in Appendix D).
    - Laws or rules governing the standard of proof for any Class Action Lawsuit claim to be based on the more stringent Clear and Convincing Evidence standard (and not Preponderance of the Evidence).
    - Laws designed to simplify, easy to understand, postcard Class Action lawsuit notices, clearly and conspicuously describing (1) what potential claim is being sought, (2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled, (3) how the size of the Class Action Claim and attorney's fees are effected if Class Members op-out of participating in the lawsuit, and (4) how attorney fees are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer. (Example notice form provided in Appendix E).
    - Independent Commissions (including non-lawyer participants) be used by the Court to determine if a case should be classified as a Class Action Lawsuit and a similar independent Commission used to assess reasonableness of attorney fee claims.
    - Laws regarding the prohibition of contingency legal fees in regard to Class Action Lawsuits, requiring attorneys to justify their fee as being reasonable in regard to hourly rate and time spent on a case.
    - Laws requiring prior to a lawsuit being certified as a Class Action Lawsuit, the defendant shall be given a mandatory prior notice (the "Class Action Pre-Certification Notice" or "CAPCN" letter), of such planned certification request, and an opportunity for defendant to resolve the case, avoiding the racking up attorney's fees by Plaintiff's counsel.
    - Require any Class Member to act proactively and opt-in to participate in a Class Action lawsuit (with the default being the public are NOT automatically opted-in to a Class Action Lawsuit), unlike the current model where Class Member default is opted -in and to opt-out, the Member must proactively file an opt-out document with the Court.
    - Prohibit the payment of Incentive Payments to Representing Plaintiff's, since such payment is in the nature of a bounty paid for winning the race to the Court house to first file a lawsuit, is merely an incentive for Court house racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members. The Class Members are all victims and to treat some grossly different than others shocks the

conscience of justice and should likewise shock the conscience of the Court.

## Why These Plans?

- <u>Objection</u>: The law requires prior to the Court's approving of a Class Action Claim that it be tested for being just, fair and reasonable and requested attorney's fees, be tested for 'reasonableness'. Each test is on a case-by-case basis, no one-size-fits-all (at least that's the objective test –yet awards regularly migrate to a 30% to 40% 'standard' of recovery and reasonableness test arguments citing as one of the primary arguments for justifying a fee request based on other cases as a consistent basis of award).

  o Attorneys regularly cite as a part of their reasoning why their [huge] fee request is reasonable because it is consistent with other Class Action Lawsuits (30%-40% contingency fee rationale?) which is contrary to the one-size-does-not-fit all reasonableness test reasoning.

  o Counsel argues why they should be certified as Class Action Lawsuit Class Representing Counsel based on their skills and experience, then argues why a [huge] fee is required because of the complexity (speculative nature?) of a case. It is inconsistent on one hand Counsel will argue it is skilled ostensibly requiring less time/effort to handle a case, yet when it comes to their fee, such fee should be [huge] regardless of the skill factor. *Rare is the worker who argues for a cut in pay.*

  o Class Action Member attorney fee Objections filed with the Court, helps remind the Court of its reasonableness test obligations – especially since the Class Member is the victim and for every dollar paid attorney's is often one less dollar paid to the real victim (at least in contingency fee cases). If the victims don't complain, it would be natural for a Court to *assume* victims are ok with the requested fee, which naturally dampens the Court's enthusiasm, with a busy Court docket, to pursue a deep dive test of reasonableness. It's not that victim's don't have an interest in the case and reasonable attorney's fees, the complexity of filing Objections with the Court as well as studying Court filed documents, deters many well intentioned victims to themselves committing to a deep-dive analysis – and astute Plaintiff's counsel are aware of this lethargic tactic that Class Members don't have the time or initiative or understanding to file a cumbersome objection associated with a few buck claim result.

- <u>Opt-Out</u>: If many/most Class Action Members collectively elected not to participate in a Class Action Lawsuit (*opt-out*), then the Claim amount should be automatically reduced (since there are less 'victims'), and if there is a request for [huge] attorney's fees, typically based on a contingency fee (attorney's being paid a percentage of the Claim awarded to the real victims), then the fee would be less. And even if a fee is not based on a contingency payment, a huge attorney fee and trivial victim award compared to that fee, will expose the unreasonableness of the fee claim.

- For example, a 30% fee of $100 million Claim for 100,000 Class Members means $30 million to lawyers and $700.00 to each Class Member, is a lot less than 30% of $500,000 Claim for 500 Class Members means $150,000 to lawyers and $700.00 to each Class Member. Still a disparity between attorney fee and Class Member award, but tempers lawyer's appetite to promote a questionable suit given their fee is much reduced (tension between values associated with earned fee and justice incentives). Or in the alternative, an attorney fee claims for $30million, regardless if the victim remedy is $100million or $0.5million. That smell test thing again.
  - In many Class Action lawsuits, the amount awarded to victims is small and nominal in amount (a few 100 dollars or less, or a discount coupon), while attorney's fee paychecks can potentially exceed $200,000 per lawyer (most likely an understatement since it depends on how many attorneys worked on a case and how long and hourly rate).
  - Class Action members 'giving up' a small nominal award in exchange for stopping, over the top [huge] lawyer fees, is a powerful consumer weapon.
  - While Class Action Lawsuits are designed to punish illegal business practices that harms a large number of the public, always be mindful that payment of Class Action nominal claims and [huge] attorney's fees, can result in the business adding that cost back into the price of the business goods or services which means consumers and investors will in the future end up paying for the illusion of a victorious Class Action win.
  - While a business reputation may suffer a little at first, if at all, generally after the lawsuit combat is over, all is forgiven and the dust settles, it's back to business as usual – except lawyer's fat paychecks have been cashed and deposited, and consumers and investors get stuck with funding the 'hidden' bill.
- <u>Attorney Fee Law</u>: Request for attorney's fees in a Class Action lawsuit, is often based on a business alleged to have violated some law adversely affecting many parties (such as a consumer protection or securities fraud law), and that law including the statutory right to plaintiff's attorney's fees to be paid as part of the claim by a losing defendant (in contrast to the general 'American Rule' where parties pay for their own attorney's fee regardless of who wins or loses).
  - Laws are not written for Class Action Lawsuits, but to seek justice for individual victims for a particular cause of action including compensating the victim for its incurred attorney's fees as part of the award against bad business practices.
  - Lawyers favor taking cases and bringing lawsuits based on a law that includes award of attorney's fees, especially where the defendant has 'deep pockets' (financially strong) and can afford to pay [huge] fees.
  - There needs to be a Class Action attorney fee law designed to ensure any award of attorney's fee to be based on a statutory and not discretionary 'reasonableness standard', that comes into play any time there is a Class

Action Lawsuit. Ideally, award of attorney fee would be influenced by the amount EACH victim is awarded – low victim award, low attorney fee – especially since justice is blind to the magnitude of awarded attorney fees.

o In many Class Action Lawsuits, attorney's fees are determined as a percentage of the victim's Claim amount (so called contingency fee). Consequently, the 'losing' defendant in a case, either as a result of a trial judgment or settlement, is somewhat indifferent[7] about the size of the attorney fee since it is deducted from the Claim amount. Even so, such a deduction may not be in the best interest of the Class Members for not receiving fair, reasonable and adequate compensation for such victim's Class Action losses due to such legal fee deduction.

o It is more prudent regarding Class Action Lawsuits, for Class Action laws to prohibit contingency attorney fees (similar to criminal or domestic relation cases), leaving the attorney to honestly defend its time spent on the case and hourly rate, separate and apart to any Claim award paid to Class Members. Such hourly rate attorney fee defense will attract a more systematic and objective assessment of the fee, since (1) if the fee is paid by the victims, the Court will have a much clearer understanding of the details and basis of the hourly rate based fee request, and (2) if the fee is paid by the defendant, the defendant will be in a more realistic and efficient tester of the reasonableness of an hourly rate based fee claim, since the defendant is the one paying the fee.

• <u>Standard of Proof</u>: Because of the unique nature of Class Action Lawsuit, that in the context of Justice for ALL[8], places excessive defense burdens on a defendant, justice should demand a Clear and Convincing Evidence standard of proof (and not Preponderance of the Evidence standard) associated with certifying a case as a Class Action lawsuit as well as the same standard of proof to be used in the trial of the matter. This higher burden of proof properly places an incentive on plaintiff's, Class Members and Class Counsel, to honestly pursue a case that has merit and one suited for Class Action and based on the objective of seeking justice for ALL, and not merely an 'easy' Class Action Lawsuit case brought for revenge or a vehicle to secure huge attorney's fees, with justice for harmed citizens as a secondary objective.

• <u>Class Action Notice</u>: Postcard claim notices alerting Class Members to a Class Action Lawsuit, are difficult to understand and often require the reader to go online through the internet (or retain their own counsel at their expense), to obtain better informed detail information (if they know how to request online information as well as where to locate information of interest and interpret it).

o The postcard claim notice needs to be much more user-friendly, easy to read and understand, and clearly advise the reader what the Class Action lawsuit is all about, how much is being demanded from the defendant, how much each Class Member will be entitled and full disclosure of how attorney fees are

---

[7] Unless the settlement is artificially pumped up to include attorney's fees as additional compensation instead of the resolve being based on what harm has been incurred by Class Members absent attorney fee claims.

[8] Justice for All, is in the context of the Nation's founding documents (U.S. Constitution, Bill of Rights, Declaration of Independence, etc.), asserting justice to prevail for both plaintiffs AND defendants.

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023                    Page **9** of **42**

being determined, what the total attorney fee could be and the average paycheck of how much each lawyer working on the case will receive.

- **Class Action Pre-Certification Notice or "CAPCN" letter**: A practical remedy to help deter unreasonable attorney fee demands, prior to a Court certifying a case as a Class Action lawsuit, the plaintiff and plaintiff's counsel in such case shall be obligated, to give defendant prior notice (the "CAPCN" letter) which provides clear and unambiguous information concerning:
  - o The legal rationale on what the Class Action complaint is all about (a 'show cause' testament);
  - o How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee;
  - o The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action Lawsuit;
  - o Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action Lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.

- **Opt-In Class Action Participation**: Class Action laws should be modified that require Class Members to affirmatively by written notice to the Court, to "opt-in", in order to participate in the Class Action Lawsuit. Most non-USA legal systems require an 'opt-in' standard in order to participate in a Class Action Lawsuit. The history of this opt-in standard illustrates that Class Action Lawsuit filings are few in number and not abused by plaintiff's counsel BUT more important, has NOT resulted in numerous lawsuits by non-Class members bringing their own action – which deters USA plaintiff's counsel opt-out justification arguments that an opt-in standard will cause an explosion of small cases...not true. An opt-in standard is a great tool to modulate the acceleration of the USA Class Action Lawsuit industry growth...driven much by attorney fee greed.

## Background:   Class Action Lawsuit Boot Camp

**Class Actions** (also known as a **Class-Action Lawsuit, Class Suit, or Representative Action**) are most common where the allegations usually involve at least 40 people who the same defendant has allegedly been injured in the same way. Instead of each damaged person bringing one's own lawsuit, the Class Action allows all the claims of all Class Members—whether they know they have been damaged or not—to be consolidated and resolved in a single proceeding through the efforts of **Representative Plaintiff(s)** and Representative Plaintiff's lawyers appointed as **Class Counsel**. The Class Action binds (by default) all Class Members (victims) of the Class (including being bound by the attorney fee arrangement agreed with the initial Representative Plaintiffs in a Class Action Lawsuit – a huge exception to the general rule where attorneys and their individual clients mutually agree to fee arrangements), unless a Class Member gives timely notice to opt-out and not be represented by such Class Action.   Depending on the Class Action details, any victim that opts-out, may or may not preserve its right to bring its own separate lawsuit (and individual attorney fee arrangement).

There is a familiar saying about "strength in numbers." For example, a single person who was misled into paying 50 cents too much for an illegally overpriced stick of deodorant doesn't have enough incentive to go to the trouble and expense of litigation just to recover that small amount of money.  Even-so, because the United States has had a culture of being litigious (billboard justice has become the norm), regardless of the merits or size of a claim (perhaps on occasion Caveat Emptor- buyer beware -  is the better and more honest remedy), U.S. centric attorneys are quick on the lawsuit panic button, because the fabric of U.S. justice promotes win-lose sledge hammer litigation mindedness accompanied with huge attorney fee awards  and not mature hand-shake win-win resolve. (Restitution is better placed in the Board Room and not the Court Room).

It's when many people—often tens of thousands, or more—are honestly harmed a similar way by the same problem, that a Class Action lawsuit *__may__* be worth bringing. (*__May__* in the sense every little wrong does not justify a remedy – as some assumption of risk and impact is the more honorable and logical thing to do – just like bringing up a child, until a boundary is known and not to be broken, punishing a first-time innocent offender does nothing to promote the development of a child into healthy adolescence).  Uniting all similarly affected parties into a plaintiff's Class (Class Members) has the effect of raising the stakes significantly for [corporate] defendants. That's part of the law of the jungle.  It's more likely that an honorable Class payoff will be worth fighting for, and companies that face the prospect of Class Action liability, have a strong incentive to settle a merit based claim and correct their behavior (even though many have acted innocently and without intent to do wrong) and implement better (learn from their unintentional mistakes) business practices, designed to prevent bad (whether intentional or unintentional) practices – which illustrates a merit based circumstance, and not one based on astute plaintiff's legal counsel crafting a claim (and sugar plum vision of huge attorney fee award) because of the uncertainty and speculative nature of the underlying law.

Even-so, small claim litigation revenge tactics should [must?] always be tempered (rejected?) with what justice is all about.  All small claim infractions do not justify seeking combat lawsuit justice, more times than not premised on seeking revenge – where in many cases, attorney's stir the

emotions pot of the 'victims' to use the litigation hammer and unjustifiably beat up the alleged wrongdoing but honest defendant. In whose best interest are Class Action Lawsuits brought? For alleged victims? Huge fee greedy attorneys? Correcting a real wrong? Correcting an illusionary wrong? Justice for ALL?

## Advantages[9] of a Class Action Lawsuit, includes:

- **Efficiency**. Combining meritorious cases in a Class Action can increase the efficiency of the legal process and lower the costs of litigation. In cases with common questions of law and fact, aggregation of claims into a Class Action may avoid the necessity of repeating days of the same witnesses, exhibits and issues from trial to trial. That's the theoretical argument…but in reality, the likelihood of a plethora of case filings is highly unlikely.
- **Meaningful**. A Class Action may overcome the problem that meaningful small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A Class Action ensures that a defendant who engages in widespread harm (whether intentional or not) – but does so minimally against each individual plaintiff – must compensate all affected individuals for their injuries. But in all cases, is that justice? (Every little wrong may have a remedy but that remedy may be a mature assumption of risk attitude and get on with life and not revenge or a course of conduct to create a vehicle to justify an award of large attorney fees way out of proportion of victim awards).
- **Behaviour Incentive**. Class-Action cases may be brought to purposely and honorably change behaviour (whether by intentional or unintentional acts) of a class of which the defendant is a member.
- **Race To the Bank**. In "limited fund" cases (which means the defendant(s) do not have 'deep pockets' and not financially strong), a Class Action ensures that all plaintiffs (victims) receive some relief and that early filing plaintiffs (they win the race to the bank) do not raid the common fund (owned by the shallow pockets of the defendant) of all its assets before other plaintiffs may be compensated.
- **Confusion**. A Class Action avoids the situation where different court rulings could create incompatible standards of conduct for the defendant to follow.

## Disadvantage of a Class Action Lawsuit, includes:

- **Caveat Emptor (Buyer Beware – Victim Liable for Certain Consequences)**. Class Action procedures are arguably inconsistent with due process mandates and unnecessarily promote litigation of otherwise small, trivial claims, and challenges what Justice is all about. A certain amount of risk is expected to be assumed by the public without recourse for someone else to pay in all circumstances. There needs to be a rational balance between seeking justice and seeking revenge or a vehicle to achieve an award of large attorney fees. What is honorable and what is greed?

---

[9] While these advantages in a theoretical sense make for good ideological arguments…and justification behind plaintiff's and their counsel promoting Class Action Lawsuit cases, the reality of life is that it is highly unlikely a plethora of individual cases will flood the courts with nominal claims, nor inconsistent rulings influence the cause of Justice.

- **Abuse.** The preamble to the (Federal) Class Action Fairness Act of 2005, implies that some Class Actions are abusive, harm Class Members with legitimate claims, especially where most defendants have tried to honestly act responsibly, and such abuse, adversely affecting interstate commerce (legitimate businesses stops providing useful consumer goods or services in fear of defending costly abusive Class Actions), and undermined public respect for the country's judicial system and what Justice for ALL means (the Court's permitting abusive Class Actions to be pursued – sometimes as a vehicle for Class Counsel to secure huge fees while the real victim's receive nominal value).
  - o More times than not, Class Action Lawsuit defendants are reputable companies. These companies utilize their own legal and business experts who give advice and counseling and what to do to comply with relevant State and Federal laws. Rare is the reputable company that intentionally violates a law but in contrast, acts responsibly for law compliance. Even-so, many laws are written so broadly and many ambiguous as to what is right or wrong, and because of business complexity and broad interpretations of the law, stealthy plaintiff's litigation counsel are capable of crafting an argument (with or without merit) that often creates an illusionary environment of uncertainty (the 'fog index') whether or not a reputable company violated a law. An attorney's job is to represent the best interest of their client and earn a fee (legal representation is a vocation and profession) AND comply with professional standards of conduct – the ethics of law – Justice for ALL mandates. Because of law interpretation uncertainty and speculation, reputable companies will, without any admission of liability, often settle a case, to avoid unnecessary defense expenses, wasted time, and unwanted bad publicity – since rare is the opportunity for the defendant to honestly present the more honest defense facts, as the consuming public do not have the time or inclination to listen to such (that's human nature that plaintiff's counsel understand and use to their benefit). (Not unlike the quick message broadcast in roadside billboard lawyer advertisements, advising that the 'hammer' goes after truck drivers involved in accidents – automatic guilt and remedy – so much for due process. The ugly side of Justice).
- **Victims Are Secondary.** Class Members often receive little or nominal benefit from Class Actions.
  - o Examples
    - ▪ Huge fees for the attorneys, while leaving Class Members with token coupons or other awards of little or nominal value;
    - ▪ Unjustified awards are made to certain plaintiffs at the expense of other Class Members (such as Representative Plaintiff's requesting priority payments for them having started the lawsuit or acting as Representative Plaintiffs); or such Representative Plaintiff's being paid a 'bounty' fee for having initiated a case that prompted the Class Action certification, and hence an 'entitlement' to a bounty that other Class Members, who merely missed out on being the initial claimant, is not entitled to such bounty. This

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023    Page **13** of **42**

bounty is an unreasonable win-fall for such plaintiff's and contrary to ALL Class Members being treated the same;

- Confusing published and mailed Class Action postcard claim notices, that interfere with Class Members being able to fully understand and effectively exercise their rights;

- Laws require the Court's approval of all Class-Action settlements, and in most cases, Class Members are given a chance to opt-out (not participate) in Class Action settlements. Even so, though Class Members, despite being given opt-out post card claim notices, may be unaware of their right to opt-out because they did not receive the notice, did not read it or did not understand it.

  - The Class Action Fairness Act of 2005 attempts to address some of these concerns…

    o An independent expert may scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.

    o Since many Class Members do not use or spend their coupons (many are trashed or forgotten), the award of contingency attorney's fees includes the value of unused coupons which means such fees should be lowered in regard to unused coupons. Even so, coupons are not customarily part of Class Action lawsuit settlements.

- **Who Is the Victim?** Various studies of Class Actions in federal court found that many plaintiffs (victims) received only a tiny fraction of the money awarded while plaintiff lawyers frequently secured a huge, highly disparate share of the settlement than their clients – the real victims in the lawsuit. Many Class Action lawsuits can be viewed as merely a vehicle or conduit through which attorneys can secure huge fees and not an honest mechanism of seeking Justice for real victims.

State and Federal laws provide for the bringing of Class Action Lawsuits. Most of the time a Class Action lawsuit is brought in federal court and not a State court, because:

- The victims (plaintiffs) in the lawsuit are resident in many States (diversity of citizenship), consequently, federal court is viewed as being fairer to all plaintiff's instead of those residing in any one particular State;
- Federal Courts are more experienced with hearing Class Action Lawsuits;
- Class Action Fairness Act of 2005, is a federal law that makes it easier for Class Action Lawsuits to be heard in federal courts.

An individual lawsuit often starts out with one or more initial plaintiffs (victims), claiming some business or entity violated a Federal (or State) law. Coincident with that case, the underlying complaint indicates there are many more similarly and adversely affected victims.

Attorneys who accept such a 'small' case, recognizing there are many potential victims with similar claims, will petition a [federal] court to *certify* the case as a Class Action lawsuit (thereby turning a small case into a big case on which to base large attorney fees), naming the initial plaintiff's as 'Representative Plaintiff's' (or lead plaintiff's) in the Class Action claim and the attorneys requesting the Court (because of counsel's Class Action skills) to also name (certify) them as Class Counsel, thereby representing all victims. By such Representative Plaintiff winning the race to the courthouse and advancing a Class Action certification claim, that initial plaintiff filing and certification filings has automatically resulted in many rights of other potential Class Member plaintiff's being denied: such as (1) the right to select counsel and agree an attorney fee arrangement, (2) the right to pursue a claim or not, and (3) the right not to be forced into a lawsuit as a participant since State and Federal Class Action laws default to an automatic opt-in standard of participation.

After the Class Action Lawsuit is well advanced – sometimes many months or years (where Class Counsel has reached a tentative settlement agreement with defendants for both victim's damages and attorney's fees or resolved a case at trial), Class Member's for the first time become aware of the Class Action Lawsuit, by receiving a postcard claim notice in the mail:

- Advising them of the lawsuit (most not even aware they were a party to a lawsuit),
- Awareness that they are an identified Class Member victim,
- Guidance on where to obtain information (usually on-line through the internet), that includes guidance on what the suit is about and what remedy Class Members may be entitled and how to file a claim as well as some general reference to filing objections (regarding adequacy of the claim settlement or reasonableness of requested attorney fees).
- The notice will also cite unless the Class Member timely opts-out (elects not to participate in the Class Action lawsuit) of the suit, they will automatically be included, generally at no cost, and will be bound by any outcome of the suit or settlement.

When plaintiff's Class Counsel wins a Class Action lawsuit, or when they secure a pre-trial settlement with the defendant, legal fees and court costs are typically demanded in the award or Claim. This Total award or Claim is often referred to as the "Common Fund," from which legal fees, as well as recovery for Class Members damages, are paid, unless a separate claim is made for attorney's fees on top of total Claim to be awarded Class Members.

### Attorney's Fees

While the practice of law seeks Justice, it's still a business, and unless an attorney has agreed to work pro bono (free of charge, a public service), an attorney can expect [reasonable] compensation in exchange for their legal services.

Federal and State Courts in the United States in regard to attorney's fees, follow what is called the 'American Rule'. What this rule means is that each party (both plaintiffs and defendants) in a lawsuit are responsible for funding and paying their own attorney's fees, no matter who wins the case.

However, this Rule can be modified by either...

- **Contract**: Parties to a contract can agree under certain circumstances, one of the parties will pay the legal fees of the other in regard to a particular dispute,  or
- **Statute**: If there is a law (a statute) that specifically provides as part of its remedies, award of attorney's fees to a successful party – normally the plaintiff (i.e., a defendant is ordered to pay plaintiff's attorney fees).  Many times, such statute-based award of attorney's fees can be many times greater than the value of actual damages suffered by a successful plaintiff, or
- **Settlement**: Plaintiff's attorney fees could also be paid by defendant, as a result of the defendant settling a case and volunteers to include payment of plaintiff's attorney fees as part of the settlement.  (Theoretically, attorney's fees agreed by defendant as part of the settlement, is a form of a contract whereby, the attorney's client acquiesces in that fee arrangement as if the attorney and their client negotiated such fee arrangement).

The details of how attorney fees are typically determined and calculated is a matter of negotiated contract between an attorney and their client, and can be:

- An agreed hourly rate billed by the attorney and paid by the client (a 'fixed fee' arrangement), or
- A contingency fee, where the attorney does not charge a separate fee, but will take a percentage (25% to 40% as examples) out of a successful award (hence the attorney fee is contingent on winning a case).  If the attorney is not successful in winning a case (either by going to trial or securing a pre-trial settlement), then it will not receive a fee, or
- A combination of fixed fee and contingency fee.

In a Class Action Lawsuit, the Representative Plaintiff is the _**only**_ plaintiff who negotiates attorney fee arrangements for the Class Action.  All other Class Members do not participate in such negotiations, and as a consequence, if they participate in the Class Action (and not opting out), then those Class Members have impliedly and automatically agreed with the attorney fee arrangement established between Class Counsel and Representative Plaintiffs.  Typically, Representative Plaintiffs will agree with Class Counsel to a contingency fee (and not a separate out-of-pocket 'fixed fee' hourly rate – unless the claim is based on a statute that provides for award of attorney fees), which means Class Counsel will deduct its contingency fee from any Class Action successful award (either determined by trial or pre-trial settlement).

*Even so, any attorney fee arrangement must still be tested by the Court for reasonableness.  This reasonableness test applies even with "clear sailing" agreements which are cases in which the defendant agrees to a noticeably large award of attorney fees and agrees not to object to that amount (perhaps a defendant quick dispute resolution tactic whereby Class Counsel are incentivized with a quick paycheck while the victims award may be lacking – which may challenge the ethics of representative counsel giving priority to representing  the client's best interest and not preference to the attorney's paycheck).*

**Advantages of Contingency Fee Structure Includes:**

- No Up-front Fees. Helps give those lower-income clients better access to legal assistance and the court system.
- Incentive. If attorneys don't get paid unless client gets paid (win's its case), the attorney will be highly motivated to do everything in their power in order to get their client the best possible result. A performance-based agreement.
- No Costs for Losses. Lawyers are willing to risk not collecting a fee for the work they put into things.
- Contingency fees are helpful in cases where a client is short on funds and has an otherwise costly or complicated case.

## Disadvantages of Contingency Fee Structure Includes:

- Encourages attorney to pursue non-merit case as nothing to lose but their time and foregoing other clients, and in a slow work environment, not much may be given up, or the pot of gold huge attorney fee incentive is worth the gamble to pursue a case[10].
- A contingency fee arrangement can and often does cost a client more than a regular hourly fee.
- Once the parties agree on the contingency fee, the client owes the agreed upon percentage no matter how long the case will take–whether it takes a year or a week or two hours. This is especially true in the rare 'clear-cut' cases that may only require a few phone calls and a couple of hours of work in order to settle.
- Incentivized contingent fee lawyers may settle too soon and for too little to acquire a quick paycheck, and the client suffers.
- Contingent fees are usually too high relative to the risks that attorneys bear in a particular case, especially where they control whether or not to take a case and have already run their own risk of winning assessment analysis not shared with the client. (Is this insider knowledge and not in the best interest of the client?)

Since Class Counsel represents all Class Members and not just the Representative Plaintiffs, the Court must approve any settlement award for all Class Members including attorney fees.

Approval is conditioned on the ***settlement*** amount being ***fair, reasonable and adequate***, and ***attorney's fees*** are ***reasonable***.

Whether a Class Action settlement agreement is fair, reasonable and adequate, has been a bone of contention for companies who have pushed for **tort reform**, particularly as it concerns awards of huge attorney fees in Class Action litigation. These companies often complain about the huge awards of attorney fees that often change hands in Class Action settlements the amount of which are often extremely greater than actual damages claimed by plaintiffs, and they argue that **damage caps** and limits on attorney fees are necessary for the sake of justice, reasonableness and fairness.

---

[10] While there is a risk in a contingency fee structured case of losing and not receiving a fee, attorneys who accept contingency cases are normally skilled at assessing the risk of recovery, and consequently are comfortable when they take on such cases that they more than likely will receive a fee. Not unlike the contingency fee-based billboard litigation hammer attorney seeking justice from truck driver accident bad guy defendants (and their insurers). Such sound bit messaging masks over the more honest concepts of justice, due process, unintentional accident, factual circumstances and a few other miscellaneous tid-bits that populist minded ears don't have time to listen to.

## Attorney Fees Reasonableness Test

Court's look to a variety of resources to assist them in determining if requested attorney's fees in a Class Action lawsuit are reasonable. If the court finds that the attorney fee agreement is unreasonable or unfair, the court may step in using its discretionary powers and either invalidate the agreement or amend it to make it reasonable.

Four significant resources used by the Court to test for reasonableness include:

1. American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees (many State Bar Association Rules of Professional Conduct are patterned after the ABA Model, and an attorney is duty bound to adhere to the Rules of Conduct else suffer consequences which could include disbarment from practicing law);
   - A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
   - Traditional fee analysis to determine reasonableness takes into account…
     - the time and labor required,
     - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
     - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
     - the fee customarily charged in the locality for similar legal services;
     - the amount involved and the results obtained;
     - the time limitations imposed by the client or by the circumstances;
     - the nature and length of the professional relationship with the client;
     - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
     - whether the fee is fixed or contingent
   - The traditional approach to proving attorneys' fees is for an attorney—sometimes the same attorney representing the party seeking fees—to testify as an expert on what are reasonable fees for the case (a little self-serving but them's the rules).

2. Federal Rules of Civil Procedure, Class Action Rule 23;
   - The Court '*may*' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3. Class Action Fairness Act of 2005;
   - Class Action settlements [damages and attorney's fees] are subject to Court approval,
   - Reports are to be filed with the House of representatives and the Senate containing
     - Recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit;
     - Recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action

settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation;

- Recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement.

4. Court rulings, in particular attorney fee reasonableness test criteria described in

- o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
- o Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
- o Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
- o Reasonableness takes into account the factors used by the traditional fee determination.
- o Lodestar, presumably refers to a number that provides a guiding point-or lodestar-in the determination of an appropriate attorney fee award.

What is evident from assessing the resources used to determine what is or is not a reasonable attorney fee, is fraught with many subjective elements and not much independent deterministic[11] tests.

Class Counsel submit copious documents defending its request for attorney's fees. The extent of this documentation can be voluminous and taxes the limited resources and busy dockets Courts have to study in detail all documents, consequently a challenged circumstance to fully assess all allegations and supporting documents. At times the sheer weight of filed documents can be a substitute for believed validity and justification. Elegant simplicity is more beneficial and honorable than intellectual complexity. The observation is that better guidance is needed in resolving what is or is not reasonable in regard to attorney's fees and perhaps time for updated legislation to provide clarity and reduce the fog.

Consequently because of this absence of certainty, or at least a more determined method of attorney fee computation in Class Action lawsuits, astute counsel is free to argue for just about any fee they wish and paint it with broad strokes of reasonableness and justification whether in fact or

---

[11] As in physics, deterministic refers to a cause-and-effect result which means if the same input to a situation is used again, then the same result will occur. A consistent and expected result. In contrast, a probabilistic result means if the same input is used again in a situation the outcome can be different. An inconsistent and uncertain result such as a 50% chance of such and such happening. Chaos is the extreme of the two which refers to a circumstance that is totally unpredictable regardless of the input.

illusionary. Just how long is a piece of string? Where is justice in all this, other than the rubber stamp embossed with '**APPROVED**'?

## Use, Misuse and Abuse – Standards of Proof and Other Reforms

As in most things in life, we humans can use a tool or seek justice, in the spirit of what was honestly intended – a proper use, or take a less honest path of misusing or abusing the circumstance.

The more honest argument of the extent the Class Action industry and the participants in that syndicate have often wandered from the righteous path of intended honorable use to less honest misuse or abuse paths are illustrated in the following examples…

**Certification Reform**. Original or Representative Plaintiffs seeking to certify a case as a Class Action lawsuit under Federal Rules of Civil Procedure, Rule 23 must plead and prove: (1) an adequate class definition (precise and unambiguous, identity of class members is reasonably determined excluding remote and unlikely victims) (2) ascertainability (fairly easy process to identify class members), (3) numerosity (a showing that joining and naming all Class Members in a common lawsuit is impractical) , (4) commonality (questions of common fact and law), (5) typicality (claims of the Representative Plaintiffs are typical of the claims of Class Members), (6) adequacy (Representative Plaintiffs will fairly and adequately protect the interests of the class – no conflict of interests) and (7) at least one of the requirements in Rule 23(b), namely: (a) separate adjudications will create a risk of decisions that are inconsistent with or dispositive of other class members' claims, (b) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (c) common questions predominate and a class action is superior to individual actions.

Not unusual, expert testimony (often from compensated academia professors – hired guns, invoking often complex and little understood statistical analyses and arguments of why the ingredients exist for justifying a case as a Class Action lawsuit – who are also governed by use, misuse and abuse standards of conduct) are used by attorney's as a resource to establish enough 'doubt' in the mind of the judiciary, that the easy course is to certify a case as a Class Action lawsuit. The adage there are liars, damn liars and statisticians, is still in vogue. Given enough complex equations, PowerPoint slides and laser pointers, an expert can argue just about any side of a case and sound pretty convincing – especially when it's paid for testimony and the basis of a decision is foggy, not deterministic and dependent on subjective feelings. And to think all of this insightful assessment of class certification takes place in a few minutes or a few hours at a court room hearing (the court docket of which is always busy and a court's objective to move things along – justice to is dependent on the sweep of a ticking clock) in which participants in that hearing claim some sort of justified immediate understanding and acceptance of what the truth is and make an on the spot decision – yay or nay to certification. It takes a university student often many hours if not days just to solve one calculus or differential equation math problem – not including the study and prep time…yet the complexity of class action certification decisions happens in the twinkle or an eye.

The Representative Plaintiffs bear the burden of proving that the prerequisites to class certification have been met by a *preponderance of the evidence*. Theoretically this standard is supposed to be based on evidence and not speculation.

A certification decision can be challenged, and an appeal made to a higher court. An appeal may be accepted when: (1) the decision is questionable and the certification order represents the death knell for a defendant who will be compelled to settle even if the plaintiff's claims are not meritorious, (2) the decision raises an unsettled, fundamental and generally applicable issue of law that will likely evade end-of-the-case review, or (3) the decision is manifestly erroneous.

Reform is needed in the law or Rules, to cause the courts to be more pragmatic and reflective in a class certification decision. Some potential reforms might include:

- A separate Commission is relevant, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)
  - o Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct;
- A separate and specially trained or class action certification expert judge or magistrate independent from the court a case is filed in, rules on a certification argument.
- If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter. A statutory form of attorney fee but paid by the losing plaintiff.

**Standards of Proof Reform.** The standard of proof in a court, listed in order of the degree of persuasive arguments (highest and most intense listed first) include:

- Beyond a reasonable doubt in criminal law.
- Clear and convincing evidence
  - o Present evidence that leaves the listener with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.
- Preponderance of the evidence in most civil cases.
  - o Prove that something is more likely than not.
- Probable cause in the acquisition of a warrant or arrest proceeding.
- Reasonable belief as part of establishing probable cause.
- Reasonable suspicion in cases involving police stop and searches.
- Some credible evidence in cases necessitating immediate intervention, like child protective services disputes.
- Some evidence in cases involving inmate discipline.
- Substantial evidence in many appellate cases.
  - o Degree of relevant evidence which a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.

Class Action certification and other proofs in a Class Action lawsuit are governed by the Preponderance of the Evidence standard of proof, as is most civil lawsuits. Because of the unique nature of a Class Action lawsuit, and the heightened unique exposure to claims of a defendant to

many plaintiffs and defendant's expanded defense burdens, the standard of proof in a Class Action lawsuit should be based on Clear and Convincing Evidence. Such a standard will go a long way towards self-governing promotion of the honesty of a case in regard to hired gun expert Class Certification complex testimony and Class Action attorney specialists promoting the Class Action industry. Justice can still prevail even with a Clear and Convincing Evidence standard of proof, but the burden shifts to the plaintiff to present a more honest case.

**Self-Serving Reform**. Class Counsel representing a Class Action lawsuit, is obligated to demonstrate Class Member (victim) remedies are tested to a standard of being **fair, reasonable and adequate** and any claim for attorney's fees be tested to a standard of **reasonableness**.

In many cases Class Counsel unnecessarily strains the honesty standard of argument, that the case is shoe-horned to fit within the standards of reasonableness, fairness or adequacy. The more honest arguments include:

- Argument: Class Members have not objected to the size of the remedy or attorney's fees so therefore they must by default be reasonable.
    - Reform: Most Class Members only became aware they were entitled to a claim when they received postcard notice from Class Counsel the claim exists, and typically the claim amount is so small, the Class Member may or may not file a claim (assuming they spend time to study the notice), and spend no time challenging the suit given the small nature of the event. Hence arguing the absence of objection as part of the rationale of a claim and attorney fee being reasonable is a rather salty circular self-serving argument, and one hopefully a court will disregard (ignore?).
- Argument: Attorney's fee claims are comparable to other Class Action lawsuit awards, citing common percentage take regarding contingency fee awarded attorney's fee in other cases.
    - Reform: This one-size-fits-all attorney fee reasonableness standard is contrary to the obligation of attorneys to determine their fee on the merits and effort involved in each individual case. Reasonable attorney's fee justification is not like earning a fixed real estate agent sales commission (the 6% 'standard' shared between buyer and seller agents). Then again, justifying a fee based on other case 'standards', is another admission of the observation that Class Action lawsuits have become a commoditized industry and vehicle to rack up huge attorney's fees and not a forum for justice.
- Argument: Expert testimony (often university professor experts – hired guns) demonstrate with subjective little understood complex statistical stealth, that the basis of a case is sounded as evidence and proof of the bad conduct of a defendant.
    - Reform: An expert arguing in a security fraud case for example, that defendant's alleged bad conduct caused an inappropriate one penny swing in a defendant's stock price…is a pretty far-fetched argument to make, given stock price swings happen on a daily basis and to pin-point specific conduct of a defendant why the swing happened, especially when a nominal amount, is often a bridge to far…and all the more reason to have a Clear and Convincing Evidence standard of proof.
- Argument: Class Counsel base their attorney fee on a contingency basis, a percentage of the Claim award to Class Members, citing Class Action 'victims' are seeking justice and

Class Counsel graciously accepting a case to advance that justice and willing to do so on a contingency basis relieving the Class Members of bearing the legal costs of a case, and usually such fees are paid by a losing defendant if an underlying statute on which a case is brought provides for attorney fees as part of the remedy.

- o Reform: How often does Class Counsel seek to orchestrate a case as a Class Action lawsuit, driven by the objective of increasing the size of a Claim because of Class Member participation, and the size of the percentage take from a large Class Action Claim as attorney's fees, is hugely more valuable than a percentage take from an individual plaintiff claim? Thus, an observation that contingency attorney's fees should not be permitted in Class Action lawsuits, leaving the attorney to justify their fee based on reasonableness standard tests associated with time and hourly rates.

- Argument: Class Counsel justify the merits of a Class Action case (either as certification as a Class Action or violation of a law) and their right to attorney's fees, based on a plethora of cited cases, mountains of self-serving justification documentation and other resources heaped upon a court's already busy docket. The weight of the argument is based on the paper weight of the documents filed and not on the quality and weight of evidence of the argument.

  - o Reform: Similar to discovery proceedings, perhaps attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.

## Justice and Class Action Lawsuits

The Class Action lawsuit industry seems to have wrinkled the path of what justice (or injustice) is all about.

The Declaration of Independence, the Constitution of the United States of America, and the Bill of Rights, the "founding documents" of the nation, speak directly to the ideals of freedom from oppression, equality, and justice *for all*. Justice is fairness and equal treatment and applies to both the plaintiff AND the defendant since that simple '*all*' word is rather encompassing.

Class Action Lawsuits seem to treat defendants as tyrants and oppressors of the public. That is not justice for *all*.

What is just remains a matter for debate. Observing the same outcome of a situation, one person may say justice was done. Another may declare the outcome an injustice and great wrong. Is the porridge too hot or just, right? Is the attorney fee too huge or just, right?

Justice may be viewed as a subjective process of assessing the fairness of relations between individuals and groups of people, such as...

- Getting what one deserves.

- Equitable sharing of civic burdens.
  - We all get car door ding marks, and we all give them. While such is normally an accidental 'wrong', to seek a $50 door ding damage repair bill and charge a $10,000 attorney fee is not what justice is *all* about. Revenge maybe. Assumption of a certain amount of risk is a constant balancing act in anything us humans do. (Maybe the door ding issue can be resolved by car makers installing soft bumper guards on door edges or wider parking lanes.)
- Individual virtue and ethical conduct (especially attorney's whose law license demands they honor Bar Association ethics and code of professional conduct and act responsibly and always seek justice for *all* and not revenge).

Is it unreasonable/unethical for plaintiff's attorney to pursue a Class Action lawsuit, knowing their fee will be many many magnitudes greater than any nominal recovery of victims, where such huge fee is paid to the attorney instead of compensation to the victims? Is that justice?

Are huge attorney fee awards seen as a substitute for punitive ('punishment') damages above and beyond actual damages, of a Class Action lawsuit defendant? Justice would suppose punishment is by way of compensation paid to victims, and where applicable, award of punitive damages (also paid to victims above and beyond actual damages) as a punishment for unacceptable intentional egregious acts of defendants. Attorney fees are in relation to reasonable honest legal services provided on behalf of the plaintiff/victims and NOT a means of punitive punishment of defendants.

Who does justice define as the victim? The Class Member victims? Plaintiff's lawyers as victims? Defendant victims being exposed to paying huge legal fees and lawyers misusing or abusing what justice is *all* about?

It's time for a change.

## Bibliography

Baker, Lynn A., Perino, Michael A., Silver, Charles, "Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions", Columbia Law Review, vol. 115, no. 6, (2015).

Boatright, Jason, "The History, Meaning, and Use of the Words Justice and Judge", *St. Mary's Law Journal*, vol. 49, no. 4, Article 1, 727 (2018).

Carter, Jimmy, "Law Day Address at the University of Georgia in Athens, Georgia", *The American Presidency Project*, https://www.presidency.ucsb.edu, (1974).

"Class Action", Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/we/class_action, Dec 2022.

"Class Action", *Wikipedia*, December 22, 2022

"Class Action Fairness Act of 2005, *28 USC, Public Law 109-2*, Feb 18, 2005.

"Class Action Fairness Act of 2005, Wikipedia, December 22, 2022.

Connolly, Neil, "Extreme Couponing: Reforming the Method of Calculating Attorney's Fees in Class Action Coupon Settlements", *102 Iowa Law Review 1335* (2017)

Douglas, Frederick, "What, To The Slave, Is the Fourth of July (1852)", *Blackpast*, (2007)

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: 1993-2008", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2010).

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: Empirical Study", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2004).

"Federal Rules of Civil Procedure", *Title IV. Parties, Rule 23, Class Actions*.

"Fees and Expenses", American Bar Association, https://www.americanbar.org/ groups/legal_services/milvets/aba_home_front/information_center/working_with_lawyer /fees_and_expenses/, Dec. 2022.

Frankel, Alison, "In biggest cases, class action lawyers are low-balling fee requests – and that's a good thing", *Reuters*, November 2, 2016.

Gentry, Caroline H., "*A Primer on Class Certification Under Federal Rule 23*", Corporate Counsel CLE Seminar, Rancho Mirage/CA (https://www.classactiondeclassified.com/wp-content/uploads/sites/26/2017/08/a_primer_class_certification_under_federal_rule.pdf, 2017)

Hartmann, Michelle, Miller, Ralph I., Zambrano, Angela C.. "Attorneys' Fees", *SMU Law Review*, vol. 57, Issue 3 Annual Survey of Texas Law, Article 4, 2004.

Ibrahim, Melissa, "Bills, Bills, Bills: The Effect of a Rejected Settlement on Attorney's Fees Under the Civil Rights Attorney's Fees Award Act of 1976", *Cardozo Law Review*, vol. 36, p. 1987, 1988.

Johnson, Charles T. et al v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020).

King, Martin Luther Jr., "Letter from Birmingham Jail", *Atlantic Monthly*, vol. 212, no. 2, p. 78 (1963).

Klonoff, Robert H., "Why Most Nations Do Not Have U.S.-Style Class Actions", Bloomberg Law, https://news.bloomberglaw.com/class-action/why-most-nations-do-not-have-us-style-class-actions.

Lender, David J. et al, "Class Action Fairness Act of 2005 (DAFA): Overview", *Practical Law Company.com*, (2013).

"Opinion #17. Negotiation of Attorney's Fees in Class Actions", *Professional Ethics Commission, Board of Overseers of the Bar*, (January 15, 1981).

Ratner, Morris, "Civil Procedure: Class Action Fee and Cost Awards", *The Judges Book*, vol. 1, art. 9, http://repository.uchastings.edu/judgesbook (2017).

"Rule 1.5 Fees- Comment", *American Bar Association Model Rules of Professional Conduct*, Client-Lawyer Relationship (2018).

Shepherd, Joanna, "An Empirical Survey of No-Injury Class Actions", Emory University School of Law, Legal Research Paper Series, Research Paper No. 16-402, http://ssrn.com/abstract=2726905 (2016).

Sohoni, Mila, "The Idea of "Too Much Law", *Fordham Law Review*, vol. 80, Issue 4, Article 3, 2012.

Tribe, Lawrence H., "Too Much Law, Too Little Justice: An Argument for Delegalizing America", The Atlantic, July 1979.

"What Is Justice", *School of Criminal Justice, University of Albany*, Module 1, https://www.albany.edu/justiceinstitute/33471.php, (2022).

## Appendix A –

## Class Action Lawsuits – Huge Attorney Fee Illustrations

### Example Class Action Case 1 (https://www.nielsensecuritiessettlement.com/)

In Re Nielsen Holdings PLC Securities Litigation
Civil Action No. 1:18-cv-07143-JMF
United States District Court
Southern District of New York

| | | |
|---|---|---|
| Proposed Settlement Fund | $73,000,000 | ($0.19 per share) |
| Proposed Contingency Attorney's Fees (25%) | $18,250,000 | ($0.05 per share) |
| Plus Attorney Expenses | $ 1,110,000 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 17,206 | |
| Total Class Member (Victims) | 384,000,000 ($73,000,000/$0.19) | |
| Attorney Hourly Rate Disclosure Ranges | | |
|     Paralegals | $315 to $505 | |
|     Associate Attorneys | $895 to $2,017 | |
|     Of Counsel | $975 to $1,560 | |
|     Partners | $1,250 to $1,983 | |
| | | |
| Average Attorney hourly rate | $1,060 | ($18,250,000/17,206) |
| Attorney Fee Per Lawyer (assuming 82 lawyers) | $222,561 | ($18,250,000/82) |
| Range of Victim Award (depends on shares owned) | | |
|     500 shares | $70 | (500*$0.14) |
|     10,000 shares | $1,400 | (10,000*$0.14) |
|     100,000 shares | $14,500 | (100,000*0.14) |

### Example Class Action Case 2 (https://www.t-mobilesettlement.com/

In Re T-Mobile Customer Data
Security Breach Litigation
Civil Action No. 4:21-md-03019-BCW
United States District Court
Western District of Missouri

| | | |
|---|---|---|
| Proposed Settlement Fund | $350,000,000 | |
| Plus Future Data Security Upgrades | $150,000,000 | |
| Proposed Contingency Attorney's Fees (22.5%) | $78,750,000 | (reduced from 30%) |
| Plus Attorney Expenses | $ 147,982 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 8,225 | |
| Total Class Member (Victims) | 79,150,000 | |
| Attorney Hourly Rate Disclosure Ranges | $270 to $1275 | |

Average Attorney hourly rate             $9,574        ($78,750,000/8,225)
Attorney Fee Per Lawyer (assuming 100 lawyers)  $787,500     ($78,750,000/100)
Range of Victim Award (depends on shares owned) $3.42       ($271,250,000/79,150,000)

## Example Class Action Case 3 (https://www.baggagefeeclassaction.com/)

Cleary v. American Airlines Inc.
Baggage Claim
Civil Action No. 4:21-cv-00184-O
United States District Court
Northern District of Texas

Proposed Settlement Fund              $7,500,000 (min.)
Proposed Fixed Fee Attorney's Fees      $2,850,000 (27.5% total award)
Attorney Expenses                  $1,142,945
Claimed Attorney Hours             3,641
Total Class Member (Victims)         588,654
Average Attorney hourly rate          $782        ($2,850,000/3,641)
Attorney Fee Per Lawyer (assuming 10 lawyers)  $285,000     ($2,850,000/10)
Victim Award                     $12.74       ($7,500,000/588,654)

## Example Class Action Case 4 (https://www.OracleSecuritiesLitigation.com)

In re Oracle Corporation Securities Litigation
Securities Fraud
Civil Action No. 18-cv-04844-BLF
United States District Court
Northern District of California, San Jose Division

Proposed Settlement Fund              $17,500,000
Proposed Fixed Fee Attorney's Fees      $3,500,000 (20% total award)
Attorney Expenses                  $900,000
Claimed Attorney Hours             17,900
Total Class Member (Victims)         979,000
Average Attorney hourly rate          $195        ($3,500,000/17,900)
Attorney Fee Per Lawyer (assuming 10 lawyers)  $350,000     ($3,500,000/10)
Victim Award                     $0.01/share (~2.7 bn shares)
                                           (~1800 shares per shareholder avg)
                                           $18 avg share of claim

A self-serving assertion: The small number of objections in comparison to the size of the Class supports a finding that the Settlement is fair, reasonable, and adequate. The reason folks did not opt-out have nothing to do with a fair, reasonable and adequacy test. Case cites false statements illegally inflated Oracles stock value – then trading between $43 and $47. Jan 2023 trade value is over $85, and a peak end of 2022 at over $100. The casual observer would cite business as usual and a good year for Oracle investors…justifying a 1 cent swing in stock value because of excessive puffing – craftily disguised as security fraud (with a lot of academic experts pontificating on their crystal ball insightfulness and naval gazing) is poppycock. Liars, damn liars and statisticians come to mind.

## Appendix B

### Example Form Objection to Attorney's Fees

**IN THE UNITED STATES DISTRICT COURT FOR THE**

_____ **DISTRICT OF** _____ *(State)*

_____ **DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | )<br>)       Case No. _____ |

_____

### OBJECTION[12] TO PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT

1.  Objection Applicant, _____ *(your name)* (pro se[13]), a Settlement Class Member (Class Member ID[14] _____, claim number[15] _____) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, has not objected to any class action settlement within the past three years, and request for modification and downward adjustment of any pending or submitted Attorney Fee and Expense Application (herein the 'Application') because such Application is unreasonable, unfair and not in the best interest of the Settlement Class Members.

    *[Cross through or delete Option 1 or Option 2 that does not apply]*

2.  *Option (1) Since as of the filing of this Objection, Lead Counsel has not filed in https://www[16]._____, copy of the Application, nor sent a copy to Objection Applicant, this Objection is based on those documents of record in the cited website so filed as of the date of this Objection.*

---

[12] Read the post card claim notice and follow any specific instructions regarding filing of an objection, such as timing, address to send the Objection to, and any conditions. This Appendix B form contains typical conditions but may not be complete.

[13] Pro se means you are representing yourself.

[14] Class member ID is usually cited in the post card claim notice received in the mail concerning the Class Action

[15] If you have filed a claim after receiving the post card claim notice, you usually will be issued a claim number.

[16] The Class Action lawsuit will be found on the internet which will allow you to have access to all case documents and other information about the case. Insert the internet website. Often times an Objection is filed before all relevant documents are filed online. Final attorney fee applications are often filed late.

*Option (2) This Objection is based on those documents of record in https://www*_____*, as of the date of this Objection.*

## OBJECTION

3. Rationale behind this Objection, includes...

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the Application, I do not agree with such approval, and hereby submit this Objection.

3.3 The Application is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

3.3.1 American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o Traditional fee analysis to determine reasonableness takes into account...
    - the time and labor required,
    - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
    - the fee customarily charged in the locality for similar legal services;
    - the amount involved and the results obtained;
    - the time limitations imposed by the client or by the circumstances;
    - the nature and length of the professional relationship with the client;
    - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
    - whether the fee is fixed or contingent

3.3.2 Federal Rules of Civil Procedure, Class Action Rule 23;
- o The Court '*may*' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3.3.3 Class Action Fairness Act of 2005;
- o Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account...
    - o Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the

litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3.3.4    Court rulings, in particular attorney fee reasonableness test criteria described in

- o   Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - o   Determining reasonable fees under the **lodestar method** is a two-step process.
    - ▪   First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work.  By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - ▪   The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
    - ▪   Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - ▪   Reasonableness takes into account the factors used by the traditional fee *determination*.

4. The Court is requested to invoke its discretionary powers to modify and reduce the Attorney Fee Expense Application to make it reasonable.

5.  The economics of the requested Application indicate:

5.1 The proposed Settlement Common Fund to all Class Members is $_____. (Total indicated settlement to be paid to victims)

5.2 Total Class Members are _____ (total number of victims)

5.3  Individual Class Member award are estimated to be $ _____ (cite how much each victim may receive or at least a range)

5.4  Total Attorney Fees and Expenses applied for are $ _____

5.5  The total legal hours expended on the case are _____

5.6  The average hourly rate charged for legal services is $ _____ (paragraph 5.4 divided by paragraph 5.5)

5.7  The average paycheck for each attorney working on the case is $ _____

(paragraph 5.4 divided by the total number of attorneys estimated to be working on the case, small cases may be up to 5, big cases may be 75 or more)

5.8  The disparity between the amount of recovery to each Class Member compared to the paycheck each attorney could receive suggests an exorbitant and unreasonable basis on which to base attorney fees.

6. Any reduction in the Application is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

7. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $_____[*insert amount of claimed fee*] attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

8 Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
   o While it is instructive to take into account attorney work claims of:
      o Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

9. [*Add any other information that is unique to the case that illustrates why you think the requested attorney fee and expense application is unreasonable] At your discretion you might also include a copy of the above paper that might give the Court some additional information to think about*].


Respectfully submitted.

This _____ day of _____, 20__.


_____
[*name, printed and sign document*]
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address


**CERTIFICATE OF SERVICE**

I, _____, hereby certify that on the _____ day of
_____, 20____, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____DISTRICT OF _____**
**_____ DIVISION**
Clerk of the Court
[address/email]


CLASS COUNSEL
[name]
[address/email]


Defendant
[address/email]


I, _____, further certify I am a Settlement Class Member.


_____

[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

## Appendix C

### Example Op-Out Form

### IN THE UNITED STATES DISTRICT COURT FOR THE
### _____ DISTRICT OF _____ (*State*)
### _____ DIVISION

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | ) <br> )      Case No. _____ <br> ) |

_____

### ELECTION TO OPT-OUT OF THE CAPTIONED CLASS ACTION LAWSUIT

1.     Opt-out Applicant, _____ (*your name*) (pro se[17]), a Settlement Class Member (Class Member ID[18] _____) submits this **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, and without prejudice, reserve any and all of my rights to pursue a separate claim**

Respectfully submitted.

This _____ day of _____, 20__ .

_____
*[name, printed and sign document]*
Settlement Class Member

_____, (mobil)
_____ (fax)
_____ email
_____ address
_____ address

### CERTIFICATE OF SERVICE

_____

[17] Pro se means you are representing yourself in the objection.
[18] Class member ID is usually cited in the post card notice you received about the Class Action

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023            Page **35** of **42**

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, was** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____DISTRICT OF _____**
**_____ DIVISION**
Clerk of the Court
[address/email]


**CLASS COUNSEL**
[name]
[address/email]


Defendant
[address/email]


I, _____, further certify I am a Settlement Class Member.


_____
[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

*[This is a general form. The postcard notice received about the Class Action lawsuit may contain other information of what to do to opt-out of the case. Please refer to that detail as required].*

## Appendix D

### Class Action Lawsuits – Attorney Fee Legislation

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re:  Class Action Lawsuit – Attorney Fee Legislation*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and Attorney Fee Legislation.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding huge attorney's fees granted in many Class Action cases and what action plans can be advanced to provide some control over run-away fees.*

*While the judicial Court system has oversight to assess the reasonableness of such fees, there seems to be a consistent 'one-size-fits-all' demeanor advanced when such fees are defended by Class Counsel.  This demeanor is contrary to the reasoning that one-size-does-not-fit- all where each case and its fee structure are to be assessed on their own merits and tested against a standard of fairness, reasonableness and adequacy.  Most Class Counsel argue that their claimed attorney's fees (a self-serving argument) are consistent in the formula used to determine fees among all other cases.*

*The attached paper and my own experience suggest legislation may well be required to provide the necessary control over excessive fee awards.*

*I am writing to seek your counseling and perhaps leadership in advancing relevant legislation that can address the run-away legal fee paycheck issues and problems outlined in the attached paper.*

*While I don't have the answers, I do have some ideas.*

### **Contingency Fee Prohibition**

*Perhaps, similar to prohibition of the use of contingency legal fees (where the fee is based on the attorney taking a percentage of the case outcome) in regard to domestic relation and criminal cases, Class Action lawsuit may well be added to the prohibited list, thereby leaving attorneys to argue and defend a fee based on 'fixed fee' reasonable hours and reasonable billing rate arguments.*

*As you know, the legal profession has almost unanimously determined for years that allowing attorneys to base their contingency fee on the outcome of a divorce or child custody case would create a risk of the attorney having a financial interest in the outcome as well as being against public policy and therefor unreasonable by default. This could potentially lead unscrupulous attorneys to take actions that could be against the interests of children, or it could encourage attorneys to do things to make sure clients actually divorce. On the contrary, a skilled and ethical divorce attorney should always consider reconciliation, resolution, and fairness to be part of the goal and avoidance of the destruction of family relationships. There can be no financial interest in seeing to it that clients get divorced.*

*Likewise, contingency fees are prohibited in regard to criminal cases also based on public policy reasons.*

*Shouldn't Class Action counsel likewise ethically consider resolution and fairness to be the goal of such actions.*

### **Reasonableness Tests Codification**

*As outlined in the attached paper, the groundwork for attorney fee codification has been laid out in the various resources currently consulted to assess attorney fee reasonableness.*

*Those resources include: American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees; Federal Rules of Civil Procedure, Class Action Rule 23; Class Action Fairness Act of 2005; court rulings, in particular attorney fee reasonableness test criteria described in Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.*

*Should legislation be passed to codify the various methods used to test for reasonableness of attorney's fees, thereby removing much of the subjective uncertainty and differences without a distinction confusion?*

*Should a codified formula (which may also include a cap) be determined that provides guidance what is considered a reasonable attorney fee, with an opportunity for attorneys to challenge the formula if they can demonstrate why their fee structure is the better reasonable structure?*

## *Independent Committee*

*Currently, attorney fee reasonableness tests are assessed by other attorneys. I have included the Court system in this testing network since most jurists are attorneys. Should there be some form of independent committee, commission or panel used to test the reasonableness of attorney fees, the participants of which also includes non-lawyers? Professions that come to mind that might be part of such panel includes Insurance (risk management), Accountants, Professional Engineers, Military Officer, Police Officer, Day Care Management, Clergy, Local Union Leadership.*

*An independent committee, commission or panel is not unlike the independent expert appointed under the Class Action Fairness Act of 2005, who is instructed to scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.*

*Class Action Counsel might argue that the complexity of defending why legal fees are reasonable, is not readily understood by the lay person. Quite the contrary, if attorneys cannot argue their defense of why their fee is reasonable in plain understood English, then the fog index is in full force...and that corrupts the concept that a little bit of sunshine is a great disinfectant.*

## *Class Action Certification Reform*

*A separate Class Action certification Commission should be created, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)*

*Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue a highly questionable course of conduct.*

*If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter.*

## *Plaintiff Filing Reform*

*Similar to discovery proceedings, Class Counsel attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.*

## Standard of Proof Reform

*The standard of proof used to either certify a case as a Class Action or evidence presented in a trial of the matter, should be based on Clear and Convincing Evidence and not Preponderance of the Evidence. A higher standard of proof makes sense, since such standard will have a self-governing incentive for plaintiff's and Class Counsel to advance an honest case as well as promoting the nation's founding documents objective of Justice for ALL, especially since a defendant is confronted with the unique and unusual aspects defending a Class Action claim.*

## Pre-Certification Notice

*The honest merits of a lawsuit certified as a Class Action, should first be tested, that prior to such certification, Plaintiff's should first submit a mandatory notice letter (the Class Action Pre-Certification Notice Letter, or CAPCN) to the defendant giving them clear and unambiguous information concerning: (i) The legal rationale on what the Class Action complaint is all about; (ii) How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee; and (iii) The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action lawsuit;*

*Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

**Appendix E**

## Class Action Lawsuit Postcard Claim Form

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re: Class Action Lawsuit – Postcard Claim Form*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and the content of postcard claim forms used to notify potential Class Members of their claim rights.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding user friendly notification and information contained in postcard claim forms and what action plans can be advanced to provide improved user-friendly better-informed awareness of important issues associated with such forms.*

*I believe legislation is needed to simplify, make easier to understand, postcard Class Action lawsuit claim notices, designed to clearly and conspicuously describe:*

*(1) what potential claim is being sought,*

*(2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled,*

(3) how the size of the Class Action Claim and attorney's fees are effected if Class Members opt-out of participating in the lawsuit and

(4) how attorney fees and expenses are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer and average hourly rate being charged.

Such postcard claim form legislation could be an amendment to the Class Action Fairness Act of 2005.

It is not uncommon when a Class Member receives a postcard claim form in the mail, short of hiring their own attorney, they need to have a reasonable understanding of how to navigate through online internet systems in order to obtain additional relevant information. The internet navigation process as well as interpreting much of the 'legal mumbo gumbo' cited in important documents, gets lost in translation, leaving Class Members with little insight of their rights and significance of important issues.

One issue of importance is the user friendly opportunity to make the postcard claim form easy to understand on which a Class Member can then be able to clearly judge the merits of receiving a small nominal value in a Class Action lawsuit, while attorney's receive huge paychecks, using the Class Action Lawsuit as a vehicle to secure such fee (and justice taking back seat peanut gallery priority), thus allowing Class Members to make a much better informed decision of opting out (not participating) in the Claim or staying in.

I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.

Regards,


Name

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOUISIANA SHERIFF'S PENSION & RELIEF FUND, Individually and on Behalf of All Others Similarly Situated Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH, INC., et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:19-cv-03347<br><br>CLASS ACTION<br><br>District Judge Edmund A. Sargus Jr.<br><br>Magistrate Judge<br><br>    Elizabeth A. Preston Deavers |

**OBJECTION**
**TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND CLASS**
**REPRESENTATIVE SERVICE AWARD**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1. Objection Applicant, Larry D. Killion, herein 'Applicant', a Settlement Class Member (Claim ID: CHSS-400701-8) submits this **OBJECTION, to apply to the entire class,** the Applicant does not plan to attend the Final Approval Hearing, is not represented by counsel and is a pro se Applicant, and respectfully requests modification and downward adjustment of any pending or submitted Plaintiff's Motion/Application For Award of Attorneys' Fees and Expenses, and denial of any Class Representative Service Award (herein the 'Motion' or 'Application') because such Motions are unreasonable, unfair and not in the best interest of the Settlement Class Members.

2. Dates, prices and number of Cardinal Health, Inc. (stock symbol 'CAH") purchased/sold by me during the Class Period, to the best of my knowledge are shown in the attached Exhibit A Fidelity Investments Trade Confirmation for CAH Shares between March 2, 2015 and May 2, 2018.

3. I have participated to the best of my recollection in making objections in the following Class Actions: Circuit Court Of Cook County, Illinois County Department, Chancery Division, Case No. 2021ch05392; In The United States District Court For The Western District Of Missouri Western Division, Mdl No. 3019, Case No. 4:21-Md-03019-Bcw; United States District Court Southeren District Of New York, Civil Action No. 1:18-Cv-07143-Jmf; In The United States District Court For The Eastern District Of Michigan Southern Division, Case No. 2:19-Cv-

11745; In The United States District Court For The Western District Of Missouri Western Division, Mdl No. 3019, Case No. 4:21-Md-03019-Bcw; In the United States District Court Southern District of New York, Case No. 1:20-cv-10041-PKC

*This Objection is based on those documents of record in PlaintiffhttPs://www.CardinalHealthSecuritiesSettlement.com,, as of the date of this Objection.*

## OBJECTION

3.    Rationale behind this Objection, includes...

3.1 Although Representative Plaintiffs and Defendants in this Class Action Lawsuit have ostensibly approved the Application, I, a class member, do not agree with such approval, and hereby submit this Objection.

3.2 An up to 30% contingency attorney fee and payment representative plaintiff's are not in the best interest of Settlement Class Members and are not reasonable.

3.3 Any request for attorney fees must be thoroughly tested for its reasonableness, and should take into account:

3.3.1    American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees

- o    A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o    Traditional fee analysis to determine reasonableness takes into account...
  - ▪    the time and labor required,
  - ▪    the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - ▪    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - ▪    the fee customarily charged in the locality for similar legal services;
  - ▪    the amount involved and the results obtained;
  - ▪    the time limitations imposed by the client or by the circumstances;
  - ▪    the nature and length of the professional relationship with the client;
  - ▪    the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - ▪    whether the fee is fixed or contingent

3.3.2    The well thought out reasoning of award of Attorney Fees in similar Federal Court Class Action Ruling rulings, in particular attorney fee reasonableness test criteria described in

- o    Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard.**
  - o    Determining reasonable fees under the **lodestar method** is a two-step process.
    - ▪    First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.

- The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a **reasonable** fee in the case.
- Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
- Reasonableness takes into account the factors used by the traditional fee *determination.*

3.3.3   Class Action Fairness Act of 2005;

  o   Since the case was brought under CAFA, a federal law, Class Action settlements [damages and attorney's fees] are subject to Court approval which takes into account...

    o   Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

4. The Court is requested to invoke its discretionary powers to modify and reduce the Motion to make it reasonable.

5. The economics of the requested Motion indicate:

5.1 The advertised proposed total (gross before attorney fee, expense deductions) Settlement to all Class Members is $109,000,000.

5.2 Individual Class Member award are estimated to be $0.21 per share (gross, before deduction of attorneys fees and costs) or in my case for 79 shares, $16.59 or net after attorneys fees and expenses of about $11.75 (less 30%). A simple calculation of dividing the $109,000,000 settlement amount by estimated outstanding CAH shares (approximately 320,000,000 during the period of interest) indicates a $0.34 per share back of the envelope result, in the ballpark with the cited $0.21 per share The allegation of trying to establish approximately 0.4% to 0.2%  ($0.21/$55 and $0.21/$91, range of indicative stock value during the period of interest) of the stock value of CAH  as being associated with fraud (with the stock price during the period of interest ranging from about $55 to $91), is consistent with opinionated experts finding a tempest in a teapot since statisticians who for hire can 'prove' anything given enough rhetoric and time – the fog index.  To cite a swing of $0.21 in a stock price hovering between $55 to $91  per share as fraud related would indeed take a keen expert eye  to define that volatility in 'natural' non-fraud related free

market stock swings as being definitively associated with fraud. That as it may be, the economic expert is the one making the case not astute legal acumen, using the counting of reviewed pages (most of which are irrelevant) as a big part of an 'argument' to defend huge fees – thus clearly a need to review the reasonableness of a an up to 30% contingency attorney fee claim as being unreasonable.[1]

5.4 Total Attorney Expenses applied for are $ 850,000, and no doubt the consulting fee of economic experts, the real workers in the case, buried in that number.

5.5 Attorney Fees applied for up to 30% of $109,000,000 or $32,700,000!

5.6 Attorney hours spent on the case and hourly rates are unspecified.

5.7 The Court is requested to deny any requests for the any payments or bounty fee, the cited $35,000 payment, to any Representing Plaintiff's, since such payment is for all practical purposes in the nature of a bounty paid for winning the race to the courthouse to first file a lawsuit, and such fee merely an inducement for courthouse racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members which is considered to be outrageous, unreasonable and not fair. The Class Members are all victims and to treat some grossly different than others shocks the conscience of justice and should likewise shock the conscience of the Court.

5.8 The disparity between the expert statistics determined yet speculative amount of recovery, to each Class Member, compared to the 'firm' paycheck each attorney would receive points to an exorbitant and unreasonable basis of on which to base attorney fees.

6. The proposed Attorney Fee Application/Motion is unreasonable in the following respects:
- A fee of up to $32,700,000 based on a 30% contingency amount of the Settlement is outrageous, unreasonable and should shock the conscience of the Court, as it relegates a non-tort law consumer/investor stock claim based on white collar fraud allegations, with one based on tort law, to the same characteristic of ambulance chasing attorney's associated with negligence claims where contingency fees have become the norm and a key incentive factor for tort lawyers (especially those using roadside billboard advertisements to swing their justice sledge hammer at guilty until proven innocent car accident truck drivers) to

---

[1] An outrageous unreasonable request for an up to 30% contingency attorney fee (and if 'up to', how about landing on something like say '5%'? as a reasonable based guess?) is comparable to the Russian parable where a Russian Admiral was defending the loss of a Russian submarine and in that argument concentrated on 'saving' 10,000 forks, 10,000 spoons, 10,000 plates, 10,000 cups...etc., yet 'lost' only one submarine, is a comical example of outrageous defense for being justified in one's request for putting forth an effort. This parable is no less applicable to economic experts citing less than 0.5% stock price swing as being associated with fraud yet the related market price swing exceeding 50% as not being fraud related, would even to the most casual observer, resonate as being statistical wizardry and has nothing to with expended attorney fee hours. As the attached discussion paper advises, another example of the Class Action lawsuit industry primarily being used as a transport vehicle for asserting huge and outrageous and unnecessary attorney fee reimbursement. The Court has a chance to put justice right by honorably using its absolute discretionary powers and finding an attorney contingency fee of 30% to be outrageous and unreasonable, and landing on a much more reasonable result...maybe 5%?

advance cases and big attorney pay checks sourced from the real suffering of others, whether they have merit or not, because of the vicissitudes faced by defendant's burdened more so with not defending the merits of a case but the emotions and sympathy of a jury (or the Court), stirred up by plaintiff counsel rhetoric. The more honest argument is attorney fee claims should/must be based on defense of time and hourly rate as the proper measure of 'earned' attorney fee, not convenient negligent type contingency fee claims. Using an argument that other Courts have permitted high contingency fee as a basis of defending such a fee, is no less hollow an argument than a small child arguing why he or she should also get a cookie since his sibling received one.

- The case claim is all about hired gun academic or consultive experts, using the wizardry of statistical analysis – where just about any hypothesis including those associated with security fraud complaints associating published statements with creating a fraud and how it affects decimal place value of stock, whether real or imaginary (especially when the natural variance of the stock market is what the market is all about or it would not exist) – is defended as being possible, probable or likely. And the vagaries of security fraud law coupled with counsel crafting a case…whether real or fantasy….further insulates plaintiff's from finding the real truth of a claim and a defendant deprived of being given the honest right to address and defend real issues. What all this means is that the substance of a case is primarily based on the hired gun statistical driven experts establishing and 'proving' the case with statistical proofs and not the acumen of the lawyers…who are predominantly advancing procedural tasks. Consequently the real and honest 'value' of fees and effort of the claim is buried in the $850,000 expense claim, where ostensibly the hired gun expert fee is buried and not in ancillary claimed 30% contingency attorney fee. How $850,000 real expense is converted to a justified and shamelessly defined as a reasonable $32,700,000 phantom attorney fee claim is part of the magic (and an incentive to craft and advance Class Action lawsuits by attorneys) of the Class Action industry process and why contingency fees should/must be disallowed in favor of defending time and hourly rate attorney fee defenses so long as that defense is reasonable, realistic and not pumped up like a circus barker.

- While Class Actions at times have their place in justice, like all things in life the Class Action process – and associated attorney fee claims - can be **used** for its intended purpose (seeking real justice – though small as it may be for each 'victim' where there are many victims and real bad guys) or otherwise **misused** or **abused**, by incentives other than justice such as a vehicle for securing huge attorney fees. That misuse and abuse option is fertile ground for crafty counsel to formulate a Class Action case much based on the vagaries of security law (incentivized by a huge multi-million dollar contingency fee pay check paid for by the 'victims') based on Class Action causes of action vagaries and uncertainties, resulting in an attack on well meaning defendants (most of which are law abiding advocates and publicly traded companies who are duty bound to adhere to a myriad of regulatory standards, who consistently hire their own experts to give them guidance regarding compliance with the law and honestly try to do the right thing) and they then paying out huge (and generally unreasonable) settlement checks a huge portion of which are paid to attorneys. That is not reasonable. The accompanying Amicus Curiae brief on the Class

Action industry and attorney fee abuse further illustrates the misuse and abuse of the Class Action industry process, which this Claim is alleged to be part of, and what can be advanced to put real justice back into the definition of Class Action, and not a transport vehicle misused or abused to create huge attorney fee paychecks.

- Every day every human in life faces a continuum of events that could arguably be viewed as causing some type of Class Action harm (where harm is not in the best interest of the victim). There is always a certain degree of risk and consequence all us humanoids must absorb as life's destiny…else we all would all be borne in the courthouse and never leave. An unusual long crossing train at a road intersection that has stopped moving traffic and the stalled driver's time being 'stolen' by the slow moving train; the vending machine stealing our quarter with no product in return because of a mechanical glitch in the machine; lightening induced power outages affecting utility operators and the loss of consumer production time; stock values that naturally and constantly go up and down – buy low/sale high strategy does not always work and without that variance the market would not exist; are all just some examples of assumed risk in society. Basing huge Class Action attorney's fees on converting an otherwise assumed risk into a justice claim…is but one of many circumstances courts are charged with assisting with and defining what justice means and to what extent one pays for the claims of another. Consequently, yet more arguments why Class Action attorney fee claims should be based on defending time spent and hourly rate as being reasonable, not based on the tort industry contingency fee arena, and not inflated due to crafting a case – then citing copious pages of reviewed case documents - instead of asserting righteous justice merits.

7 Any reduction in the Motion is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to unreasonable attorney fees.

8. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $32,700,000 attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate. The weight and justification of an argument should not be based on the weight of the case document pages but on the weight of the evidence, merits of the case and what justice is all about…righting a wrong but not at the unreasonable expense of victims and defendants paying outrageous and unreasonable attorney fees.

9. Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.

- While it is instructive to take into account attorney work claims of:

- o Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of security fraud issues, are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.
- o The merits of the case are determined by the expert fee buried in the $850,000 expense claim and NOT in an up to 30% contingency fee payment to attorneys. Just like the loss of the Russian submarine, the alleged stock fraud loss is defined by the hands of the expert statisticians and not in the attorney rhetoric citing the weight of case documents as the basis of a fee – the saved spoons if you will…

10,    It is hoped that the Court considers this Objection in the context of how it affects all Class members and not in the confines of the small number of shares this Applicants owns, and not ignored as yet another small irrelevant squeaky wheel.  Justice for ALL sort of thing…

Respectfully submitted

This _____ day of _____ June _____, 2023.

_____

[Larry D. Killion, Applicant]
Settlement Class Member

713 906-9135, (mobile)
11235ldk@comcast.net  email
2114 Oxford Street
Houston, Harris County, Texas 77008

### CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the ___ day of ___ June ___, 2023, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE MOTION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

**OFFICE OF THE CLERK
UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO
Joseph P. Kinneary U.S.
Courthouse
Room 121
85 Marconi Boulevard**

Columbus, OH 43215


LEAD COUNSEL
ROBBINS GELLER
RUDMAN & DOWD LLP
Ellen Gusikoff Stewart
655 West Broadway,
Suite 1900
San Diego, CA 92101


DEFENDANT'S COUNSEL
WACHTELL, LIPTON, ROSEN & KATZ
Lauren M. Kofke
51 West 52nd Street
New York, NY 10019

I, Larry D. Killion, further certify I am a Settlement Class Member.

_____
[name]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

**EXHIBIT A**

Dates, prices and number of CAH purchased/sold during the Class Period.

Cardinal Health Inc. Class Action

Single transaction between Mar 2, 2015 and May 2, 2018 confirmed below.  To the best of my knowledge, I did not own any  CAH stock before February 2018.



| | **Transaction Confirmation**<br>**Confirm Date: February 26, 2018** | Page 1 of 20 |
|---|---|---|

Brokerage Account Number
Y▮▮▮▮505 IRA - ROLLOVER

**LARRY D KILLION**

0300000059

FMT CO CUST IRA ROLLOVER
FBO LARRY D KILLION
2114 OXFORD ST
HOUSTON TX 77008-2649

| Online | Fidelity.com/pas |
|---|---|
| FAST(sm)-Automated Telephone | 800-544-5555 |
| Premium Services | 800-544-4442 |
| 8am - 11pm ET, Mon - Fri | |
| Portfolio Advisory Services | 800-544-3455 |

| REFERENCE NO. | TYPE | REG REP | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18057-0B9LKC | 1* | 000 | 02-26-18 | 02-28-18 | 14149Y108 | 18057-JJMQXB | | |

| | | DESCRIPTION and DISCLOSURES | | |
|---|---|---|---|---|
| You Bought | | CARDINAL HEALTH INC | Principal Amount | 5,485.37 |
| | 79 | WE HAVE ACTED AS AGENT | Settlement Amount | 5,485.37 |
| at | 69.4350 | AVERAGE PRICE TRADE DETAILS ON REQUEST | | |
| Symbol: | | | | |
| CAH | | | | |

My Fidelity account summary for July 2018 showing 79 shares of CAH stock owned by me.



**Fidelity** | FIDELITY PRIVATE
CLIENT GROUP®

INVESTMENT REPORT
July 1, 2018 - July 31, 2018

Envelope # BFWQLKBBBDXDM

Your Portfolio Value:

LARRY D KILLION
2114 OXFORD ST
HOUSTON TX 77008-2649

Portfolio Change from Last Period:

|  | This Period | Year-to-Date |
| --- | --- | --- |
| Beginning Portfolio Value |  |  |
| Additions |  |  |
| Subtractions |  |  |
| Transaction Costs, Fees & Charges |  |  |
| Fidelity Managed Account Fees |  |  |
| Change in Investment Value * |  |  |
| Ending Portfolio Value ** |  |  |
| Accrued Interest (AI) |  |  |
| Ending Portfolio Value incl. AI |  |  |

Your Financial Consultant

David Immler          Phone: (713) 622-6358
                                      ext. 53542

* Reflects appreciation or depreciation of your holdings due to price changes, transactions from Other Activity In or Out and Multi-currency transactions, plus any distribution and income earned during the statement period.
** Excludes unpriced securities.

Contact Information

| Online | Fidelity.com/pas |
| --- | --- |
| FAST℠-Automated Telephone | (800) 544-5555 |
| Portfolio Advisory Services 8am - 7pm ET, Mon - Fri | (800) 544-3455 |
| Private Client Group | (800) 544-5704 |

Brokerage services provided by Fidelity Brokerage Services LLC (FBS), Member NYSE, SIPC (800) 544-6666. Brokerage accounts carried by National Financial Services LLC (NFS). Member NYSE, SIPC.

1 of 36

---

**Fidelity** | FIDELITY PRIVATE
CLIENT GROUP®

INVESTMENT REPORT
July 1, 2018 - July 31, 2018

## Holdings

Account # ____505
LARRY D KILLION - ROLLOVER IRA

Stocks (continued)

| Description | Percent of Holdings | Beginning Market Value Jul 1, 2018 | Quantity Jul 31, 2018 | Price Per Unit Jul 31, 2018 | Ending Market Value Jul 31, 2018 | Cost | Unrealized Gain/Loss Jul 31, 2018 | EAI ($) / EY (%) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| CARDINAL HEALTH INC (CAH) | 0.77 | 3,857.57 | 79.000 | 49.9500 | 3,946.05 | 5,485.37 | -1,539.32 | 150.51 3.810 |

Page **10** of **10**

# EXHIBIT D

10 June 2023

Clerk of the Court
United States District Court
Southern District of New York
Daniel Patrick Moynihan United
States Courthouse
500 Pearl Street
New York, NY 10007

**RECEIVED JUN 1 6 2023**

Re:    Civil Action No. 1:20-cv-10041-PKC

Please file the attached Objection among the Court's records for the captioned cause.

Please include in that filing the attached Amicus Curiae discussion paper and summary presentation deck as further support of the Objection.

Regards,

Larry D. Killion
Class Member

11235ldk@comcast.net
713 906-9135
2114 Oxford Street
Houston, Texas 77008

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>RECKITT BENCKISER GROUP PLC, RAKESH KPOOR, AND SHAUN THAXTER<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:20-cv-10041-PKC

CLASS ACTION

**OBJECTION**
**TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND CLASS**
**REPRESENTATIVE SERVICE AWARD**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1. Objection Applicant, Larry D. Killion, herein 'Applicant', a Settlement Class Member (Claim ID: REK-400204-0) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, is not represented by counsel and is a pro se Applicant, request for modification and downward adjustment of any pending or submitted Plaintiff's Motion/Application For Award of Attorneys' Fees and Expenses, and Class Representative Service Award (herein the 'Motion' or 'Application') because such Motion is unreasonable, unfair and not in the best interest of the Settlement Class Members.

2. Dates, prices and number of Reckitt ADS purchased/sold by me during the Class Period, to the best of my knowledge are shown in the attached Exhibit A Trade Confirmation for Reckitt (RBGLY ADS) Shares between July 28, 2014 and April 9, 2019.

3. I have participated to the best of my recollection in making objections in the following Class Actions: Circuit Court Of Cook County, Illinois County Department, Chancery Division, Case No. 2021ch05392; In The United States District Court For The Western District Of Missouri Western Division, Mdl No. 3019, Case No. 4:21-Md-03019-Bcw; United States District Court Southeren District Of New York, Civil Action No. 1:18-Cv-07143-Jmf; In The United States District Court For The Eastern District Of Michigan Southern Division, Case No. 2:19-Cv-11745; In The United States District Court For The Western District Of Missouri Western Division, Mdl No. 3019, Case No. 4:21-Md-03019-Bcw.

Page **1** of **9**

*This Objection is based on those documents of record in Plaintiff* https://www.ReckittSecuritiesSettlement.com, *as of the date of this Objection.*

## OBJECTION

3.    Rationale behind this Objection, includes...

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the the Application, I do not agree with such approval, and hereby submit this Objection.

3.3  The Motion is not in the best interest of Settlement Class Members and is not reasonable.


3.3 The Motion must be thoroughly tested for its reasonableness, and should take into account:
3.3.1    American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o   Traditional fee analysis to determine reasonableness takes into account...
     - the time and labor required,
     - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
     - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
     - the fee customarily charged in the locality for similar legal services;
     - the amount involved and the results obtained;
     - the time limitations imposed by the client or by the circumstances;
     - the nature and length of the professional relationship with the client;
     - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
     - whether the fee is fixed or contingent
3.3.2    The well thought out reasoning of award of Attorney Fees in similar Federal Court Class Action Ruling rulings, in particular attorney fee reasonableness test criteria described in
- o   Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
     - o   Determining reasonable fees under the **lodestar method** is a two-step process.
          - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
          - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a ***reasonable*** fee in the case.
          - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.

- Reasonableness takes into account the factors used by the traditional fee *determination.*

3.3.3  Class Action Fairness Act of 2005;
- o Since the case was brought under CAFA, a federal law, Class Action settlements [damages and attorney's fees] are subject to Court approval which takes into account...
  - o Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

4. The Court is requested to invoke its discretionary powers to modify and reduce the Motion to make it reasonable.

5.  The economics of the requested Motion indicate:

5.1 The proposed total Settlement Fund to all Class Members is $19,600,000.

5.2  Individual Class Member award are estimated to be· $0.38 per ADS shares (gross, before deduction of attorneys fees and costs) or in my case for 163 shares, or $61.94 or net after attorneys fees and expenses of about $41.  The allegation of trying to establish approximately 2% of the stock value of RBGLY as being associated with fraud, is consistent with opinionated experts finding a tempest in a teapot since statistician can 'prove' anything given enough rhetoric and time – the fog index.

5.4  Total Attorney Expenses applied for are $ $601,000

5.5  Attorney Fees applied for up to 33% (but prior Class Action cases suggest the full percentage is always awarded) of $19,600,000 or $6,533,333.

5.6  Attorney hours spent on the case and hourly rates are unspecified.

5.7 The Court is requested to deny any requests for the Incentive Payments or bounty fee to any Representing Plaintiff's, since such payment is for all practical purposes in the nature of a bounty paid for winning the race to the Court house to first file a lawsuit, merely is an inducement for Court house racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members which is considered to be outrageous, unreasonable and not fair.  The Class

Members are all victims and to treat some grossly different than others shocks the conscience of justice and should likewise shock the conscience of the Court.

5.8 The disparity between the amount of recover to each Class Member compared to the paycheck each attorney could receive suggests a exorbitant and unreasonable basis of on which to base attorney fees.

6. The proposed Attorney Fee Application/Motion is unreasonable in the following respects:
   - A fee of $6,533,333, based on a 33% contingency amount of the Settlement Amount is outrageous, unreasonable and should shock the conscience of the Court, as it relegates a non-tort law consumer/investor stock claim based on white collar fraud, with one based on tort law, to the same characteristic of ambulance chasing attorney's associated with negligence claims where contingency fees have become the norm and a key incentive factor for tort lawyers (especially those using roadside billboard advertisements to swing their justice sledge hammer at guilty until proven innocent car accident truck drivers) to advance cases and big attorney pay checks sourced from the real suffering of others, whether they have merit or not, because of the vicissitudes faced by defendant's burdened more so with not defending the merits of a case but the emotions and sympathy of a jury, stirred up by plaintiff counsel rhetoric. The more honest argument is attorney fee claims should/must be based on defense of time and hourly rate as the proper measure of 'earned' attorney fee, not negligent type contingency fee claims.
   - The case claim is all about hired gun academic or consultive experts, using the wizardry of statistical analysis – where just about any hypothesis including those associated with security fraud complaints associating published statements with creating a fraud and how it affects decimal place value of stock, whether real or imaginary (especially when the variance of the stock market is what the market is all about or it would not exist) – is defended as being possible, probable or likely. And the vagaries of the fraud law and counsel crafting a case...whether real or fantasy....further insulates plaintiff's from finding the real truth of a claim and a defendant given the honest right to address real issues. What all this means is that the substance of a case is primarily based on the hired gun experts establishing and proving the case with statistical proofs and not the acumen of the lawyers...who are predominantly advancing procedural tasks. Consequently the 'value' of fees and effort of the claim is buried in the $601,000 expense claim, where ostensibly the hired gun expert fee is buried and not in claimed attorney fee and not in claimed attorney fees. How $600,000 real expense is converted to $6,000,000 phantom attorney fee claim is part of the magic (and incentive to bring Class Action lawsuits by attorneys) of the Class Action industry process and why contingency fees should/must be disallowed in favor of defending time and hourly rate attorney fee defenses.
   - While Class Actions at times have their place in justice, like all things in life the Class Action process – and associated attorney fee claims - can be used for its intended purpose (seeking real justice – though small as it may be for each 'victim' where there are many victims) or misused or abused. That misuse and abuse option is fertile ground for crafty counsel to formulate a Class Action case (much incentivized by a huge multi-million dollar contingency fee pay check paid for by the 'victims') based on Class Action causes of

**Page 4 of 9**

action vagaries and uncertainties, resulting in an attack on defendants (most of which are law abiding advocates and publicly traded companies who are duty bound to adhere to a myriad of regulatory standards, who consistently hire their own experts to give them guidance regarding compliance with the law and honestly try to do the right thing) and they then paying out typically huge settlement checks a huge portion of which are paid to attorneys. That is not reasonable. The accompanying Amicus Curiae brief on the Class Action industry and attorney fee abuse further illustrates the misuse and abuse of the Class Action process, which this Claim is alleged to be part of, and what can be advanced to put real justice back into the definition of Class Action, and not a transport vehicle misused or abused to create huge attorney fee paychecks.

- Every day every human in life faces a continuum of events that could arguably be viewed as causing some type of Class Action harm (where harm is not in the best interest of the victim). There is always a certain degree of risk and consequence all us humanoids must absorb as life's destiny…else we all would all be borne in the court house and never leave. An unusual long crossing train at a road intersection that has stopped moving traffic and the stalled driver's time being stolen by the slow moving train; the vending machine stealing our quarter with no product in return because of a mechanical glitch in the machine; lightening induced power outages and the loss of consumer production time; stock values that constantly go up and down – buy low/sale high strategy does not always work and without that variance the market would not exist; are all just some examples of assumed risk in society. Basing huge Class Action attorney's fees on converting an otherwise assumed risk into a justice claim…is but one of many circumstances courts are charged with assisting with and defining what justice means and to what extent one pays for the claims of another. Consequently, yet more arguments why Class Action attorney fee claims should be based on defending time spent and hourly rate as being reasonable and not inflated due to crafting a case instead of asserting righteous justice merits.

7 Any reduction in the Motion is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

8. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $6,533,333 attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

9. Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
   o While it is instructive to take into account attorney work claims of:

o Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

Respectfully submitted

This 10 day of June, 2023.

_____
[Larry D. Killion, Applicant]
Settlement Class Member

713 906-9135, (mobile)
832 203-7695(fax)
11235ldk@comcast.net  email
2114 Oxford Street
Houston, Harris County, Texas 77008

## CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the 10 day of June , 2023, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE MOTION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
Daniel Patrick Moynihan United
States Courthouse
500 Pearl Street
New York, NY 10007

**LEAD COUNSEL**
**ROBBINS GELLER RUDMAN & DOWD LLP**
**ELLEN GUSIKOFF STEWART**
655 West Broadway
Suite 1900
San Diego, CA 92101

Page **6** of **9**

Defendant
WILMER CUTLER PICKERING HALE AND DORR LLP
AND DORR LLP TIMOTHY J. PERLA
60 State Street
Boston, Ma 02109

KING & SPALDING LLP
RICHARD T. MAROONEY
PAUL A. STRAUS
1185 Avenue of the Americas
34th Floor
New York, NY 10036

I, Larry D. Killion, further certify I am a Settlement Class Member.

_____
[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

**EXHIBIT A**

**Dates, prices and number of Reckitt (RBGLY ADS) purchased/sold during the Class Period.**



Transaction Confirmation      Page 1 of 20
Confirm Date: February 26, 2018

Brokerage Account Number
Y97-303505 IRA - ROLLOVER

**LARRY D KILLION**

0300000059

FMT CO CUST IRA ROLLOVER
FBO LARRY D KILLION
2114 OXFORD ST
HOUSTON TX 77008-2649

| Online | Fidelity.com/pas |
| FAST(sm)-Automated Telephone | 800-544-5555 |
| Premium Services | 800-544-4442 |
| 8am - 11pm ET, Mon - Fri | |
| Portfolio Advisory Services | 800-544-3455 |

Transaction Confirmation      Page 15 of 20
Confirm Date: February 26, 2018

Brokerage Account Number
Y97-303505 IRA - ROLLOVER

**LARRY D KILLION**

| REFERENCE NO. | TYPE | REG. REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18057-0B9VNL | 1* | 000 | 02-26-18 | 02-28-18 | 756255204 | 18057-JJNTCB | | |

| | | | DESCRIPTION and DISCLOSURES | | | |
|---|---|---|---|---|---|---|
| You Bought | | | RECKITT BENCKISER GROUP PLC SPON ADR | | Principal Amount | 2,774.26 |
| | 163 | | EACH REP 0.20 ORD SHS | | Settlement Amount | 2,774.26 |
| at | 17.0200 | | WE HAVE ACTED AS AGENT. | | | |
| Symbol: | | | AVERAGE PRICE TRADE DETAILS ON REQUEST | | | |
| RBGLY | | | | | | |

| REFERENCE NO. | TYPE | REG. REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18116-XBQ4NH | 1* | 000 | 04-26-18 | 04-30-18 | 756255204 | 39120-17652B | | |

| | | | DESCRIPTION and DISCLOSURES | | | |
|---|---|---|---|---|---|---|
| You Sold | | | RECKITT BENCKISER GROUP PLC SPON ADR | | Principal Amount | 508.35 |
| | 33 | | EACH REP 0.20 ORD SHS | | Activity Assessment Fee | 0.02 |
| at | 15.4045 | | WE HAVE ACTED AS AGENT. | | Settlement Amount | 508.33 |
| Symbol: | | | LOTS WITHOUT SPECIFIC SHARES | | | |
| RBGLY | | | INSTRUCTIONS WILL BE DEPLETED USING | | | |
| | | | HIGH COST IN, FIRST OUT METHOD. | | | |
| | | | AVERAGE PRICE TRADE DETAILS ON REQUEST | | | |

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18165-XBF4WD | 1* | 000 | 06-14-18 | 06-18-18 | 756255204 | 31190-95430B | | |

You Sold
16
at 16.3370
Symbol:
RBGLY

DESCRIPTION and DISCLOSURES
RECKITT BENCKISER GROUP PLC SPON ADR
EACH REP 0.20 ORD SHS
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN, FIRST OUT METHOD.
AVERAGE PRICE TRADE DETAILS ON REQUEST

| | |
|---|---|
| Principal Amount | 261.39 |
| Activity Assessment Fee | 0.01 |
| Settlement Amount | 261.38 |

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18172-XBDMFH | 1* | 000 | 06-21-18 | 06-25-18 | 756255204 | 58159-10247B | | |

You Sold
27
at 16.3589
Symbol:
RBGLY

DESCRIPTION and DISCLOSURES
RECKITT BENCKISER GROUP PLC SPON ADR
EACH REP 0.20 ORD SHS
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN, FIRST OUT METHOD.
AVERAGE PRICE TRADE DETAILS ON REQUEST

| | |
|---|---|
| Principal Amount | 441.69 |
| Activity Assessment Fee | 0.01 |
| Settlement Amount | 441.68 |

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18193-XBJ9CX | 1* | 000 | 07-12-18 | 07-16-18 | 756255204 | 47208-05732B | | |

You Sold
33
at 17.0993
Symbol:
RBGLY

DESCRIPTION and DISCLOSURES
RECKITT BENCKISER GROUP PLC SPON ADR
EACH REP 0.20 ORD SHS
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN, FIRST OUT METHOD.
AVERAGE PRICE TRADE DETAILS ON REQUEST

| | |
|---|---|
| Principal Amount | 564.28 |
| Activity Assessment Fee | 0.01 |
| Settlement Amount | 564.27 |

| REFERENCE NO. | TYPE | REG.REP. | TRADE DATE | SETTLEMENT DATE | CUSIP NO. | ORDER NO. | | |
|---|---|---|---|---|---|---|---|---|
| 18207-XBGCFH | 1* | 000 | 07-26-18 | 07-30-18 | 756255204 | 15359-59351B | | |

You Sold
54
at 16.5234
Symbol:
RBGLY

DESCRIPTION and DISCLOSURES
RECKITT BENCKISER GROUP PLC SPON ADR
EACH REP 0.20 ORD SHS
WE HAVE ACTED AS AGENT.
LOTS WITHOUT SPECIFIC SHARES
INSTRUCTIONS WILL BE DEPLETED USING
HIGH COST IN, FIRST OUT METHOD.
AVERAGE PRICE TRADE DETAILS ON REQUEST

| | |
|---|---|
| Principal Amount | 892.26 |
| Activity Assessment Fee | 0.02 |
| Settlement Amount | 892.24 |

# ATTORNEY'S FEES

## IN CLASS ACTION LAWSUITS

## WHAT TO DO ABOUT HUGE (UNREASONABLE?) LAWYER PAYCHECKS



# Table of Contents

| | |
|---|---|
| **Class Action Lawsuit Industry** | 3 |
| **Incentive Factors** | 4 |
| **How To Control Award Of Huge Attorney Fees** | 5 |
| **First - Attorney Fee Reduction Action Plans** | 5 |
| **Why These Plans?** | 7 |
| **Short Lesson:  Class Action Lawsuit Boot Camp** | 11 |
| **Advantages of a Class Action Lawsuit, includes:** | 12 |
| **Disadvantage of a Class Action Lawsuit, includes:** | 12 |
| **Attorney's Fees** | 15 |
| **Advantages of Contingency Fee Structure Includes:** | 16 |
| **Disadvantages of Contingency Fee Structure Includes:** | 17 |
| **Attorney Fees Reasonableness Test** | 18 |
| **Use, Misuse and Abuse – Standards of Proof and Other Reforms** | 20 |
| **Justice and Class Action Lawsuits** | 23 |
| **Appendix A –** | 28 |
| **Class Action Lawsuits – Huge Attorney Fee Illustrations** | 28 |
| **Appendix B** | 30 |
| **Example Form Objection To Attorney's Fees** | 30 |
| **Appendix C** | 35 |
| **Example Op=Out Form** | 35 |
| **Appendix D** | 37 |
| **Class Action Lawsuits – Attorney Fee Legislation** | 37 |
| **Appendix E** | 41 |
| **Class Action Lawsuit Postcard Claim Form** | 41 |

## Class Action Lawsuit Industry

The Class Action Lawsuit Industry ("*CALI*") is alive and well (some law firms even publicizing their *'Class Action Lawsuit of the Month'*, merchandising (carnival barker?) Class Action justice as if it is a used car,



- As post card Class Action Lawsuit mailed notices to victims (*'Class Members'*) (now managed by third party non-lawyer administrators, part of the industry) arrive more frequent than holiday season sales catalogues,
- Accompanied by Class Action representing attorneys demanding huge multi-million dollar fees using the Class Action Lawsuit as a vehicle to secure such fees,
- While Class Members typically each receive a token amount, as Class Action compensation (the so-called Settlement Fund), the vast majority of which do not even know they were victims, and most unaware of the huge attorney fee claim[1].

The smell test of all this does not look or sound right.



Attorney's fee awards in the CALI appear to have settled in on a 'standard' 'rubber-stamp' court approved fee based on 30% to 40% of the Class Action claimed harm – sounds similar to roadside billboard justice using a sledgehammer to crush guilty until proven innocent truck drivers associated with negligence claims while conveniently **NOT** advertising contingency fee subtractions by attorneys from the victims damages, in the 30%? to 40%? range (plus expenses) – feels like the victim has suffered twice. Yet attorney's fees for each Class Action case (whether based on billable hours or contingency fee demands) are supposed to be tested on a standalone reasonableness standard and not a 'one-size-fits-all' demand[2].

---

[1] Rare is the Class Member who will take the time to study court documents to educate themselves about the attorney fee over-reach, and instead, as tactfully understood by representing counsel, lured into the sense of some easy money sourced from the Class Action lawsuit nominal compensation award, sort of like being a surprised winner in a raffle not knowing you were even entered to participate.

[2] Most Class Action lawsuit attorney fee demands are accompanied by voluminous pages (sometimes rivaling the number of pages about the merits of the case) explaining why huge fees are relevant, as well as comparing the current case with prior cases as additional justification why the size of the award is prudent. Both of these arguments

## Incentive Factors

Incentive factors causing this Class Action Lawsuit industry growth, especially the award of huge attorney fees (leaving the real victims – if in fact they are victims - of a case with only a nominal award), includes:

- **Incentive No. 1: Huge Lawyer Fees.** A review of randomly selected Class Action federal court files[3], illustrates the magnitude of huge attorney fee award incentives, accompanied by small nominal claim awards to individual Class Members. The example cases cited in Appendix A indicate typical individual award to Class Members of less than $20 and many in the few $100s, while multi-million dollar awarded attorney's fees representing 25%[+] of **TOTAL** award claim for a minimum average range of **per attorney** fee of $222,000 to $287,000. The per attorney fee is understated, since the average calculation assumes the estimated number of assigned attorneys to a case, work full time on the case, which is not realistic, and consequently dramatically understates the real average attorney fee take;

- **Incentive No. 2: 'Deep-Pocket' Defendants.** Many/Most [corporate] defendants in Class Action Lawsuits who honestly try to comply with applicable consumer and investor laws, are well known, established and trusted, and highly regulated, publicly stock traded companies: (Appendix A publicly traded companies include: Nielsen-NYSE, T-Mobile-NASDAQ, American Airlines-NASDAQ, Oracle Corporation-NYSE), are financially sound with 'deep-pockets' and capable of paying huge attorney fees, thus 'easy-worth-the-effort' litigation incentive targets. These businesses routinely retain experts to give them advice in regard to compliance with relevant consumer and investor laws and regulations. These compliance characteristics are indicative of a company NOT out-to-cheat its customers or investors.

- **Incentive No. 3: Speculative Law Compliance – Use, Misuse, Abuse.** Consumer and investor laws on which most Class Action lawsuits are based, are not 'black-and-white' and easily interpreted as to what is right and what is wrong, but are complex and subject to wide ambiguous interpretations – for example security fraud and consumer protection laws – making compliance with these laws challenging even for the most compliant minded company – especially for honest defendants. Because of the speculative nature of these laws, this is fertile ground for litigation minded lawyers having the incentive to craft a case, whether real or illusionary, that places doubt in jury's and Jurist's minds whether or not such speculative laws have been violated. As in all things in life, stuff (in this case laws) can be **used** for their intended public protection purposes, or **misused** or **abused,** for whatever reason, such as an over-reaching grant of attorney fees.

Awareness of these Class Action Lawsuit litigation incentives is nothing new, as there is a history of studies, reports and papers (see the Bibliography of examples of such), discussing and analyzing the pros and cons of Class Action lawsuits, many focusing on and criticizing what justice is all

---

are inconsistent with a one-size-does-not-fit-all lawyer fee claim. The harder one has to argue for something is all the more reason to instill a sense of suspicion especially where the weight (and not the quality) of the justifying argument is not in the merits of the argument but in the volume of paper being used to cover up fictional proof.

[3] Appendix A is a summary of recent Class Action lawsuits illustrating applications for huge attorney's fees coupled with nominal awards to Class Member victims.

about and the disparity between huge plaintiff's attorney's fees paid by honorable defendants coupled with nominal award claims paid to the real victims. While many of these reports are scholarly and well researched, they have had little impact on reducing – so-far, or at least shifting, huge attorney fee awards and filtering out unjustified Class Action Lawsuit claims or putting more justified compensation into the pockets of the real victims and less in the pockets of representing attorneys.

*Many of these reports ask the question:*

## *Have Class Action lawsuits merely been used as a vehicle for attorneys to secure huge fees with justice a secondary objective[4]?*

## How To Control Award of Huge Attorney Fees

This paper does not repeat the arguments cited in historical writings…***BUT SUPPLEMENTS*** some new dimensions to the topic.

- **First**: By suggesting **self-help** and **law-help** action plans the public can adopt to (i) influence the adjustment to huge attorney fee paychecks in Class Action Lawsuits by (ii) honestly assessing the merits of a Class Action claim and whether or not Justice is being served - and not attorney fee greed AND any attorney fee award claim based on 'honest' reasonableness tests.
- **Second**: By providing this summary discussion of why such self-help and law-help plans make sense.

### First - Attorney Fee Reduction Action Plans

- **Self-Help**
  - **If attorney fees are viewed as being unreasonably huge (does not pass the smell test[5]), Class Action members should file written Objections with the Court, challenging the unreasonableness of such fees. (Example objection form provided in Appendix B).**
  - **Class members electing *NOT TO PARTICIPATE* ("Opt-Out")[6] in the Class Action lawsuit. (Example opt-out form provided in Appendix C).**

---

[4] Not uncommon, a huge number of pages filed in Class Action lawsuits are dedicated to defending huge attorney fee applications compared to defending the merits of the actual Class Action Claim.

[5] Like pornography, often you know it when you see it.

[6] The United States litigation centric legal system and State and Federal Class Action laws, have opted for the "opt-out" form of Class Action Lawsuit claims. This means the unaware public are 'automatically' ("opted-in") as a Class Member participant and only by pro-actively filing an "opt-out" written notice with the Court will such Member NOT be part of the Class Action Lawsuit result. As later recommended, the laws should be changed such that the public are NOT automatic members of a class, and only by affirmatively filing an "opt-in" statement with the Court will they then be Class Member participants. This "opt-in" standard will go a long way toward eliminating non-merit-based Class Action cases (let the affected public decide) as well as substantially reduce the misuse/abuse tactics associated with award of unreasonable legal fees.

- **Law-Help**
  - **The public contact their elected government Representatives requesting they pass new laws...**
    - **Laws designed to promote reasonableness tests of the award of attorney's fees in Class Action Lawsuits such as a realistic fee formula or caps on awards. (Example contact form provided in Appendix D).**
    - **Laws or rules governing the standard of proof for any Class Action Lawsuit claim to be based on the more stringent Clear and Convincing Evidence standard (and not Preponderance of the Evidence).**
    - **Laws designed to simplify, easy to understand, postcard Class Action lawsuit notices, clearly and conspicuously describing (1) what potential claim is being sought, (2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled, (3) how the size of the Class Action Claim and attorney's fees are effected if Class Members op-out of participating in the lawsuit, and (4) how attorney fees are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer. (Example notice form provided in Appendix E).**
    - **Independent Commissions (including non-lawyer participants) be used by the Court to determine if a case should be classified as a Class Action Lawsuit and a similar independent Commission used to assess reasonableness of attorney fee claims.**
    - **Laws regarding the prohibition of contingency legal fees in regard to Class Action Lawsuits, requiring attorneys to justify their fee as being reasonable in regard to hourly rate and time spent on a case.**
    - **Laws requiring prior to a lawsuit being certified as a Class Action Lawsuit, the defendant shall be given a mandatory prior notice (the "Class Action Pre-Certification Notice" or "CAPCN" letter), of such planned certification request, and an opportunity for defendant to resolve the case, avoiding the racking up attorney's fees by Plaintiff's counsel.**
    - **Require any Class Member to act proactively and opt-in to participate in a Class Action lawsuit (with the default being the public are NOT automatically opted-in to a Class Action Lawsuit), unlike the current model where Class Member default is opted -in and to opt-out, the Member must proactively file an opt-out document with the Court.**
    - **Prohibit the payment of Incentive Payments to Representing Plaintiff's, since such payment is in the nature of a bounty paid for winning the race to the Court house to first file a lawsuit, is merely an incentive for Court house racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members. The Class Members are all victims and to treat some grossly different than others shocks the**

conscience of justice and should likewise shock the conscience of the Court.

## Why These Plans?

- <u>Objection</u>: The law requires prior to the Court's approving of a Class Action Claim that it be tested for being just, fair and reasonable and requested attorney's fees, be tested for 'reasonableness'. Each test is on a case-by-case basis, no one-size-fits-all (at least that's the objective test –yet awards regularly migrate to a 30% to 40% 'standard' of recovery and reasonableness test arguments citing as one of the primary arguments for justifying a fee request based on other cases as a consistent basis of award).

    o Attorneys regularly cite as a part of their reasoning why their [huge] fee request is reasonable because it is consistent with other Class Action Lawsuits (30%-40% contingency fee rationale?) which is contrary to the one-size-does-not-fit all reasonableness test reasoning.

    o Counsel argues why they should be certified as Class Action Lawsuit Class Representing Counsel based on their skills and experience, then argues why a [huge] fee is required because of the complexity (speculative nature?) of a case. It is inconsistent on one hand Counsel will argue it is skilled ostensibly requiring less time/effort to handle a case, yet when it comes to their fee, such fee should be [huge] regardless of the skill factor. *Rare is the worker who argues for a cut in pay.*

    o Class Action Member attorney fee Objections filed with the Court, helps remind the Court of its reasonableness test obligations – especially since the Class Member is the victim and for every dollar paid attorney's is often one less dollar paid to the real victim (at least in contingency fee cases). If the victims don't complain, it would be natural for a Court to *assume* victims are ok with the requested fee, which naturally dampens the Court's enthusiasm, with a busy Court docket, to pursue a deep dive test of reasonableness. It's not that victim's don't have an interest in the case and reasonable attorney's fees, the complexity of filing Objections with the Court as well as studying Court filed documents, deters many well intentioned victims to themselves committing to a deep-dive analysis – and astute Plaintiff's counsel are aware of this lethargic tactic that Class Members don't have the time or initiative or understanding to file a cumbersome objection associated with a few buck claim result.

- <u>Opt-Out</u>: If many/most Class Action Members collectively elected not to participate in a Class Action Lawsuit (*opt-out*), then the Claim amount should be automatically reduced (since there are less 'victims'), and if there is a request for [huge] attorney's fees, typically based on a contingency fee (attorney's being paid a percentage of the Claim awarded to the real victims), then the fee would be less. And even if a fee is not based on a contingency payment, a huge attorney fee and trivial victim award compared to that fee, will expose the unreasonableness of the fee claim.

- o For example, a 30% fee of $100 million Claim for 100,000 Class Members means $30 million to lawyers and $700.00 to each Class Member, is a lot less than 30% of $500,000 Claim for 500 Class Members means $150,000 to lawyers and $700.00 to each Class Member. Still a disparity between attorney fee and Class Member award, but tempers lawyer's appetite to promote a questionable suit given their fee is much reduced (tension between values associated with earned fee and justice incentives). Or in the alternative, an attorney fee claims for $30million, regardless if the victim remedy is $100million or $0.5million. That smell test thing again.
- o In many Class Action lawsuits, the amount awarded to victims is small and nominal in amount (a few 100 dollars or less, or a discount coupon), while attorney's fee paychecks can potentially exceed $200,000 per lawyer (most likely an understatement since it depends on how many attorneys worked on a case and how long and hourly rate).
- ⊖ Class Action members 'giving up' a small nominal award in exchange for stopping, over the top [huge] lawyer fees, is a powerful consumer weapon.
- o While Class Action Lawsuits are designed to punish illegal business practices that harms a large number of the public, always be mindful that payment of Class Action nominal claims and [huge] attorney's fees, can result in the business adding that cost back into the price of the business goods or services which means consumers and investors will in the future end up paying for the illusion of a victorious Class Action win.
- o While a business reputation may suffer a little at first, if at all, generally after the lawsuit combat is over, all is forgiven and the dust settles, it's back to business as usual – except lawyer's fat paychecks have been cashed and deposited, and consumers and investors get stuck with funding the 'hidden' bill.
- **Attorney Fee Law:** Request for attorney's fees in a Class Action lawsuit, is often based on a business alleged to have violated some law adversely affecting many parties (such as a consumer protection or securities fraud law), and that law including the statutory right to plaintiff's attorney's fees to be paid as part of the claim by a losing defendant (in contrast to the general 'American Rule' where parties pay for their own attorney's fee regardless of who wins or loses).
  - o Laws are not written for Class Action Lawsuits, but to seek justice for individual victims for a particular cause of action including compensating the victim for its incurred attorney's fees as part of the award against bad business practices.
  - o Lawyers favor taking cases and bringing lawsuits based on a law that includes award of attorney's fees, especially where the defendant has 'deep pockets' (financially strong) and can afford to pay [huge] fees.
  - o There needs to be a Class Action attorney fee law designed to ensure any award of attorney's fee to be based on a statutory and not discretionary 'reasonableness standard', that comes into play any time there is a Class

Action Lawsuit. Ideally, award of attorney fee would be influenced by the amount EACH victim is awarded – low victim award, low attorney fee – especially since justice is blind to the magnitude of awarded attorney fees.

o In many Class Action Lawsuits, attorney's fees are determined as a percentage of the victim's Claim amount (so called contingency fee). Consequently, the 'losing' defendant in a case, either as a result of a trial judgment or settlement, is somewhat indifferent[7] about the size of the attorney fee since it is deducted from the Claim amount. Even so, such a deduction may not be in the best interest of the Class Members for not receiving fair, reasonable and adequate compensation for such victim's Class Action losses due to such legal fee deduction.

o It is more prudent regarding Class Action Lawsuits, for Class Action laws to prohibit contingency attorney fees (similar to criminal or domestic relation cases), leaving the attorney to honestly defend its time spent on the case and hourly rate, separate and apart to any Claim award paid to Class Members. Such hourly rate attorney fee defense will attract a more systematic and objective assessment of the fee, since (1) if the fee is paid by the victims, the Court will have a much clearer understanding of the details and basis of the hourly rate based fee request, and (2) if the fee is paid by the defendant, the defendant will be in a more realistic and efficient tester of the reasonableness of an hourly rate based fee claim, since the defendant is the one paying the fee.

- **Standard of Proof**: Because of the unique nature of Class Action Lawsuit, that in the context of Justice for ALL[8], places excessive defense burdens on a defendant, justice should demand a Clear and Convincing Evidence standard of proof (and not Preponderance of the Evidence standard) associated with certifying a case as a Class Action lawsuit as well as the same standard of proof to be used in the trial of the matter. This higher burden of proof properly places an incentive on plaintiff's, Class Members and Class Counsel, to honestly pursue a case that has merit and one suited for Class Action and based on the objective of seeking justice for ALL, and not merely an 'easy' Class Action Lawsuit case brought for revenge or a vehicle to secure huge attorney's fees, with justice for harmed citizens as a secondary objective.

- **Class Action Notice**: Postcard claim notices alerting Class Members to a Class Action Lawsuit, are difficult to understand and often require the reader to go online through the internet (or retain their own counsel at their expense), to obtain better informed detail information (if they know how to request online information as well as where to locate information of interest and interpret it).

o The postcard claim notice needs to be much more user-friendly, easy to read and understand, and clearly advise the reader what the Class Action lawsuit is all about, how much is being demanded from the defendant, how much each Class Member will be entitled and full disclosure of how attorney fees are

---

[7] Unless the settlement is artificially pumped up to include attorney's fees as additional compensation instead of the resolve being based on what harm has been incurred by Class Members absent attorney fee claims.
[8] Justice for All, is in the context of the Nation's founding documents (U.S. Constitution, Bill of Rights, Declaration of Independence, etc.), asserting justice to prevail for both plaintiffs AND defendants.

being determined, what the total attorney fee could be and the average paycheck of how much each lawyer working on the case will receive.

- **Class Action Pre-Certification Notice or "CAPCN" letter**: A practical remedy to help deter unreasonable attorney fee demands, prior to a Court certifying a case as a Class Action lawsuit, the plaintiff and plaintiff's counsel in such case shall be obligated, to give defendant prior notice (the "CAPCN" letter) which provides clear and unambiguous information concerning:
    o The legal rationale on what the Class Action complaint is all about (a 'show cause' testament);
    o How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee;
    o The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action Lawsuit;
    o Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action Lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.
- **Opt-In Class Action Participation**: Class Action laws should be modified that require Class Members to affirmatively by written notice to the Court, to "opt-in", in order to participate in the Class Action Lawsuit. Most non-USA legal systems require an 'opt-in' standard in order to participate in a Class Action Lawsuit. The history of this opt-in standard illustrates that Class Action Lawsuit filings are few in number and not abused by plaintiff's counsel BUT more important, has NOT resulted in numerous lawsuits by non-Class members bringing their own action – which deters USA plaintiff's counsel opt-out justification arguments that an opt-in standard will cause an explosion of small cases...not true. An opt-in standard is a great tool to modulate the acceleration of the USA Class Action Lawsuit industry growth...driven much by attorney fee greed.

## Background:   Class Action Lawsuit Boot Camp

**Class Actions** (also known as a **Class-Action Lawsuit, Class Suit, or Representative Action**) are most common where the allegations usually involve at least 40 people who the same defendant has allegedly been injured in the same way. Instead of each damaged person bringing one's own lawsuit, the Class Action allows all the claims of all Class Members—whether they know they have been damaged or not—to be consolidated and resolved in a single proceeding through the efforts of **Representative Plaintiff(s)** and Representative Plaintiff's lawyers appointed as **Class Counsel**. The Class Action binds (by default) all Class Members (victims) of the Class (including being bound by the attorney fee arrangement agreed with the initial Representative Plaintiffs in a Class Action Lawsuit – a huge exception to the general rule where attorneys and their individual clients mutually agree to fee arrangements), unless a Class Member gives timely notice to opt-out and not be represented by such Class Action.   Depending on the Class Action details, any victim that opts-out, may or may not preserve its right to bring its own separate lawsuit (and individual attorney fee arrangement).

There is a familiar saying about "strength in numbers." For example, a single person who was misled into paying 50 cents too much for an illegally overpriced stick of deodorant doesn't have enough incentive to go to the trouble and expense of litigation just to recover that small amount of money.  Even-so, because the United States has had a culture of being litigious (billboard justice has become the norm), regardless of the merits or size of a claim (perhaps on occasion Caveat Emptor- buyer beware -  is the better and more honest remedy), U.S. centric attorneys are quick on the lawsuit panic button, because the fabric of U.S. justice promotes win-lose sledge hammer litigation mindedness accompanied with huge attorney fee awards  and not mature hand-shake win-win resolve. (Restitution is better placed in the Board Room and not the Court Room).

It's when many people—often tens of thousands, or more—are honestly harmed a similar way by the same problem, that a Class Action lawsuit *__may__* be worth bringing. (*__May__* in the sense every little wrong does not justify a remedy – as some assumption of risk and impact is the more honorable and logical thing to do – just like bringing up a child, until a boundary is known and not to be broken, punishing a first-time innocent offender does nothing to promote the development of a child into healthy adolescence).  Uniting all similarly affected parties into a plaintiff's Class (Class Members) has the effect of raising the stakes significantly for [corporate] defendants. That's part of the law of the jungle.  It's more likely that an honorable Class payoff will be worth fighting for, and companies that face the prospect of Class Action liability, have a strong incentive to settle a merit based claim and correct their behavior (even though many have acted innocently and without intent to do wrong) and implement better (learn from their unintentional mistakes) business practices, designed to prevent bad (whether intentional or unintentional) practices – which illustrates a merit based circumstance, and not one based on astute plaintiff's legal counsel crafting a claim (and sugar plum vision of huge attorney fee award) because of the uncertainty and speculative nature of the underlying law.

Even-so, small claim litigation revenge tactics should [must?] always be tempered (rejected?) with what justice is all about.  All small claim infractions do not justify seeking combat lawsuit justice, more times than not premised on seeking revenge – where in many cases, attorney's stir the

emotions pot of the 'victims' to use the litigation hammer and unjustifiably beat up the alleged wrongdoing but honest defendant. In whose best interest are Class Action Lawsuits brought? For alleged victims? Huge fee greedy attorneys? Correcting a real wrong? Correcting an illusionary wrong? Justice for ALL?

### Advantages[9] of a Class Action Lawsuit, includes:

- **Efficiency**. Combining meritorious cases in a Class Action can increase the efficiency of the legal process and lower the costs of litigation. In cases with common questions of law and fact, aggregation of claims into a Class Action may avoid the necessity of repeating days of the same witnesses, exhibits and issues from trial to trial. That's the theoretical argument…but in reality, the likelihood of a plethora of case filings is highly unlikely.

- **Meaningful**. A Class Action may overcome the problem that meaningful small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A Class Action ensures that a defendant who engages in widespread harm (whether intentional or not) – but does so minimally against each individual plaintiff – must compensate all affected individuals for their injuries. But in all cases, is that justice? (Every little wrong may have a remedy but that remedy may be a mature assumption of risk attitude and get on with life and not revenge or a course of conduct to create a vehicle to justify an award of large attorney fees way out of proportion of victim awards).

- **Behaviour Incentive**. Class-Action cases may be brought to purposely and honorably change behaviour (whether by intentional or unintentional acts) of a class of which the defendant is a member.

- **Race To the Bank**. In "limited fund" cases (which means the defendant(s) do not have 'deep pockets' and not financially strong), a Class Action ensures that all plaintiffs (victims) receive some relief and that early filing plaintiffs (they win the race to the bank) do not raid the common fund (owned by the shallow pockets of the defendant) of all its assets before other plaintiffs may be compensated.

- **Confusion**. A Class Action avoids the situation where different court rulings could create incompatible standards of conduct for the defendant to follow.

### Disadvantage of a Class Action Lawsuit, includes:

- **Caveat Emptor (Buyer Beware – Victim Liable for Certain Consequences)**. Class Action procedures are arguably inconsistent with due process mandates and unnecessarily promote litigation of otherwise small, trivial claims, and challenges what Justice is all about. A certain amount of risk is expected to be assumed by the public without recourse for someone else to pay in all circumstances. There needs to be a rational balance between seeking justice and seeking revenge or a vehicle to achieve an award of large attorney fees. What is honorable and what is greed?

---

[9] While these advantages in a theoretical sense make for good ideological arguments…and justification behind plaintiff's and their counsel promoting Class Action Lawsuit cases, the reality of life is that it is highly unlikely a plethora of individual cases will flood the courts with nominal claims, nor inconsistent rulings influence the cause of Justice.

- **Abuse**. The preamble to the (Federal) Class Action Fairness Act of 2005, implies that some Class Actions are abusive, harm Class Members with legitimate claims, especially where most defendants have tried to honestly act responsibly, and such abuse, adversely affecting interstate commerce (legitimate businesses stops providing useful consumer goods or services in fear of defending costly abusive Class Actions), and undermined public respect for the country's judicial system and what Justice for ALL means (the Court's permitting abusive Class Actions to be pursued – sometimes as a vehicle for Class Counsel to secure huge fees while the real victim's receive nominal value).

  o More times than not, Class Action Lawsuit defendants are reputable companies. These companies utilize their own legal and business experts who give advice and counseling and what to do to comply with relevant State and Federal laws. Rare is the reputable company that intentionally violates a law but in contrast, acts responsibly for law compliance. Even-so, many laws are written so broadly and many ambiguous as to what is right or wrong, and because of business complexity and broad interpretations of the law, stealthy plaintiff's litigation counsel are capable of crafting an argument (with or without merit) that often creates an illusionary environment of uncertainty (the 'fog index') whether or not a reputable company violated a law. An attorney's job is to represent the best interest of their client and earn a fee (legal representation is a vocation and profession) AND comply with professional standards of conduct – the ethics of law – Justice for ALL mandates. Because of law interpretation uncertainty and speculation, reputable companies will, without any admission of liability, often settle a case, to avoid unnecessary defense expenses, wasted time, and unwanted bad publicity – since rare is the opportunity for the defendant to honestly present the more honest defense facts, as the consuming public do not have the time or inclination to listen to such (that's human nature that plaintiff's counsel understand and use to their benefit). (Not unlike the quick message broadcast in roadside billboard lawyer advertisements, advising that the 'hammer' goes after truck drivers involved in accidents – automatic guilt and remedy – so much for due process. The ugly side of Justice).

- **Victims Are Secondary**. Class Members often receive little or nominal benefit from Class Actions.

  o Examples
    - Huge fees for the attorneys, while leaving Class Members with token coupons or other awards of little or nominal value;
    - Unjustified awards are made to certain plaintiffs at the expense of other Class Members (such as Representative Plaintiff's requesting priority payments for them having started the lawsuit or acting as Representative Plaintiffs); or such Representative Plaintiff's being paid a 'bounty' fee for having initiated a case that prompted the Class Action certification, and hence an 'entitlement' to a bounty that other Class Members, who merely missed out on being the initial claimant, is not entitled to such bounty. This

bounty is an unreasonable win-fall for such plaintiff's and contrary to ALL Class Members being treated the same;

- Confusing published and mailed Class Action postcard claim notices, that interfere with Class Members being able to fully understand and effectively exercise their rights;
- Laws require the Court's approval of all Class-Action settlements, and in most cases, Class Members are given a chance to opt-out (not participate) in Class Action settlements. Even so, though Class Members, despite being given opt-out post card claim notices, may be unaware of their right to opt-out because they did not receive the notice, did not read it or did not understand it.

  - The Class Action Fairness Act of 2005 attempts to address some of these concerns…
    - An independent expert may scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.
    - Since many Class Members do not use or spend their coupons (many are trashed or forgotten), the award of contingency attorney's fees includes the value of unused coupons which means such fees should be lowered in regard to unused coupons. Even so, coupons are not customarily part of Class Action lawsuit settlements.

- **Who Is the Victim?** Various studies of Class Actions in federal court found that many plaintiffs (victims) received only a tiny fraction of the money awarded while plaintiff lawyers frequently secured a huge, highly disparate share of the settlement than their clients – the real victims in the lawsuit. Many Class Action lawsuits can be viewed as merely a vehicle or conduit through which attorneys can secure huge fees and not an honest mechanism of seeking Justice for real victims.

State and Federal laws provide for the bringing of Class Action Lawsuits. Most of the time a Class Action lawsuit is brought in federal court and not a State court, because:

- The victims (plaintiffs) in the lawsuit are resident in many States (diversity of citizenship), consequently, federal court is viewed as being fairer to all plaintiff's instead of those residing in any one particular State;
- Federal Courts are more experienced with hearing Class Action Lawsuits;
- Class Action Fairness Act of 2005, is a federal law that makes it easier for Class Action Lawsuits to be heard in federal courts.

An individual lawsuit often starts out with one or more initial plaintiffs (victims), claiming some business or entity violated a Federal (or State) law. Coincident with that case, the underlying complaint indicates there are many more similarly and adversely affected victims.

Attorneys who accept such a 'small' case, recognizing there are many potential victims with similar claims, will petition a [federal] court to *certify* the case as a Class Action lawsuit (thereby turning a small case into a big case on which to base large attorney fees), naming the initial plaintiff's as 'Representative Plaintiff's' (or lead plaintiff's) in the Class Action claim and the attorneys requesting the Court (because of counsel's Class Action skills) to also name (certify) them as Class Counsel, thereby representing all victims. By such Representative Plaintiff winning the race to the courthouse and advancing a Class Action certification claim, that initial plaintiff filing and certification filings has automatically resulted in many rights of other potential Class Member plaintiff's being denied: such as (1) the right to select counsel and agree an attorney fee arrangement, (2) the right to pursue a claim or not, and (3) the right not to be forced into a lawsuit as a participant since State and Federal Class Action laws default to an automatic opt-in standard of participation.

After the Class Action Lawsuit is well advanced – sometimes many months or years (where Class Counsel has reached a tentative settlement agreement with defendants for both victim's damages and attorney's fees or resolved a case at trial), Class Member's for the first time become aware of the Class Action Lawsuit, by receiving a postcard claim notice in the mail:

- Advising them of the lawsuit (most not even aware they were a party to a lawsuit),
- Awareness that they are an identified Class Member victim,
- Guidance on where to obtain information (usually on-line through the internet), that includes guidance on what the suit is about and what remedy Class Members may be entitled and how to file a claim as well as some general reference to filing objections (regarding adequacy of the claim settlement or reasonableness of requested attorney fees).
- The notice will also cite unless the Class Member timely opts-out (elects not to participate in the Class Action lawsuit) of the suit, they will automatically be included, generally at no cost, and will be bound by any outcome of the suit or settlement.

When plaintiff's Class Counsel wins a Class Action lawsuit, or when they secure a pre-trial settlement with the defendant, legal fees and court costs are typically demanded in the award or Claim. This Total award or Claim is often referred to as the "Common Fund," from which legal fees, as well as recovery for Class Members damages, are paid, unless a separate claim is made for attorney's fees on top of total Claim to be awarded Class Members.

## Attorney's Fees

While the practice of law seeks Justice, it's still a business, and unless an attorney has agreed to work pro bono (free of charge, a public service), an attorney can expect [reasonable] compensation in exchange for their legal services.

Federal and State Courts in the United States in regard to attorney's fees, follow what is called the 'American Rule'. What this rule means is that each party (both plaintiffs and defendants) in a lawsuit are responsible for funding and paying their own attorney's fees, no matter who wins the case.

However, this Rule can be modified by either…

- **Contract**:  Parties to a contract can agree under certain circumstances, one of the parties will pay the legal fees of the other in regard to a particular dispute,  or
- **Statute**: If there is a law (a statute) that specifically provides as part of its remedies, award of attorney's fees to a successful party – normally the plaintiff (i.e., a defendant is ordered to pay plaintiff's attorney fees).  Many times, such statute-based award of attorney's fees can be many times greater than the value of actual damages suffered by a successful plaintiff, or
- **Settlement**: Plaintiff's attorney fees could also be paid by defendant, as a result of the defendant settling a case and volunteers to include payment of plaintiff's attorney fees as part of the settlement.  (Theoretically, attorney's fees agreed by defendant as part of the settlement, is a form of a contract whereby, the attorney's client acquiesces in that fee arrangement as if the attorney and their client negotiated such fee arrangement).

The details of how attorney fees are typically determined and calculated is a matter of negotiated contract between an attorney and their client, and can be:

- An agreed hourly rate billed by the attorney and paid by the client (a 'fixed fee' arrangement), or
- A contingency fee, where the attorney does not charge a separate fee, but will take a percentage (25% to 40% as examples) out of a successful award (hence the attorney fee is contingent on winning a case).  If the attorney is not successful in winning a case (either by going to trial or securing a pre-trial settlement), then it will not receive a fee, or
- A combination of fixed fee and contingency fee.

In a Class Action Lawsuit, the Representative Plaintiff is the *__only__* plaintiff who negotiates attorney fee arrangements for the Class Action.  All other Class Members do not participate in such negotiations, and as a consequence, if they participate in the Class Action (and not opting out), then those Class Members have impliedly and automatically agreed with the attorney fee arrangement established between Class Counsel and Representative Plaintiffs.  Typically, Representative Plaintiffs will agree with Class Counsel to a contingency fee (and not a separate out-of-pocket 'fixed fee' hourly rate – unless the claim is based on a statute that provides for award of attorney fees), which means Class Counsel will deduct its contingency fee from any Class Action successful award (either determined by trial or pre-trial settlement).

*Even so, any attorney fee arrangement must still be tested by the Court for reasonableness.  This reasonableness test applies even with "clear sailing" agreements which are cases in which the defendant agrees to a noticeably large award of attorney fees and agrees not to object to that amount (perhaps a defendant quick dispute resolution tactic whereby Class Counsel are incentivized with a quick paycheck while the victims award may be lacking – which may challenge the ethics of representative counsel giving priority to representing  the client's best interest and not preference to the attorney's paycheck).*

**Advantages of Contingency Fee Structure Includes:**

- No Up-front Fees. Helps give those lower-income clients better access to legal assistance and the court system.
- Incentive. If attorneys don't get paid unless client gets paid (win's its case), the attorney will be highly motivated to do everything in their power in order to get their client the best possible result. A performance-based agreement.
- No Costs for Losses. Lawyers are willing to risk not collecting a fee for the work they put into things.
- Contingency fees are helpful in cases where a client is short on funds and has an otherwise costly or complicated case.

**Disadvantages of Contingency Fee Structure Includes:**

- Encourages attorney to pursue non-merit case as nothing to lose but their time and foregoing other clients, and in a slow work environment, not much may be given up, or the pot of gold huge attorney fee incentive is worth the gamble to pursue a case[10].
- A contingency fee arrangement can and often does cost a client more than a regular hourly fee.
- Once the parties agree on the contingency fee, the client owes the agreed upon percentage no matter how long the case will take–whether it takes a year or a week or two hours. This is especially true in the rare 'clear-cut' cases that may only require a few phone calls and a couple of hours of work in order to settle.
- Incentivized contingent fee lawyers may settle too soon and for too little to acquire a quick paycheck, and the client suffers.
- Contingent fees are usually too high relative to the risks that attorneys bear in a particular case, especially where they control whether or not to take a case and have already run their own risk of winning assessment analysis not shared with the client. (Is this insider knowledge and not in the best interest of the client?)

Since Class Counsel represents all Class Members and not just the Representative Plaintiffs, the Court must approve any settlement award for all Class Members including attorney fees.

Approval is conditioned on the ***settlement*** amount being ***fair, reasonable and adequate***, and ***attorney's fees*** are ***reasonable***.

Whether a Class Action settlement agreement is fair, reasonable and adequate, has been a bone of contention for companies who have pushed for **tort reform**, particularly as it concerns awards of huge attorney fees in Class Action litigation. These companies often complain about the huge awards of attorney fees that often change hands in Class Action settlements the amount of which are often extremely greater than actual damages claimed by plaintiffs, and they argue that **damage caps** and limits on attorney fees are necessary for the sake of justice, reasonableness and fairness.

---

[10] While there is a risk in a contingency fee structured case of losing and not receiving a fee, attorneys who accept contingency cases are normally skilled at assessing the risk of recovery, and consequently are comfortable when they take on such cases that they more than likely will receive a fee. Not unlike the contingency fee-based billboard litigation hammer attorney seeking justice from truck driver accident bad guy defendants (and their insurers). Such sound bit messaging masks over the more honest concepts of justice, due process, unintentional accident, factual circumstances and a few other miscellaneous tid-bits that populist minded ears don't have time to listen to.

## Attorney Fees Reasonableness Test

Court's look to a variety of resources to assist them in determining if requested attorney's fees in a Class Action lawsuit are reasonable. If the court finds that the attorney fee agreement is unreasonable or unfair, the court may step in using its discretionary powers and either invalidate the agreement or amend it to make it reasonable.

Four significant resources used by the Court to test for reasonableness include:

1. American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees (many State Bar Association Rules of Professional Conduct are patterned after the ABA Model, and an attorney is duty bound to adhere to the Rules of Conduct else suffer consequences which could include disbarment from practicing law);
   o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
   o Traditional fee analysis to determine reasonableness takes into account...
      ▪ the time and labor required,
      ▪ the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
      ▪ the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
      ▪ the fee customarily charged in the locality for similar legal services;
      ▪ the amount involved and the results obtained;
      ▪ the time limitations imposed by the client or by the circumstances;
      ▪ the nature and length of the professional relationship with the client;
      ▪ the experience, reputation, and ability of the lawyer or lawyers performing the services; and
      ▪ whether the fee is fixed or contingent
   o The traditional approach to proving attorneys' fees is for an attorney—sometimes the same attorney representing the party seeking fees—to testify as an expert on what are reasonable fees for the case (a little self-serving but them's the rules).

2. Federal Rules of Civil Procedure, Class Action Rule 23;
   o The Court '***may***' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3. Class Action Fairness Act of 2005;
   o Class Action settlements [damages and attorney's fees] are subject to Court approval,
   o Reports are to be filed with the House of representatives and the Senate containing
      ▪ Recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit;
      ▪ Recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action

settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation;

- Recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement.

4. Court rulings, in particular attorney fee reasonableness test criteria described in
   o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard.**
   o Determining reasonable fees under the **lodestar method** is a two-step process.
     - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
     - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
   o Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
   o Reasonableness takes into account the factors used by the traditional fee determination.
   o Lodestar, presumably refers to a number that provides a guiding point-or lodestar-in the determination of an appropriate attorney fee award.

What is evident from assessing the resources used to determine what is or is not a reasonable attorney fee, is fraught with many subjective elements and not much independent deterministic[11] tests.

Class Counsel submit copious documents defending its request for attorney's fees. The extent of this documentation can be voluminous and taxes the limited resources and busy dockets Courts have to study in detail all documents, consequently a challenged circumstance to fully assess all allegations and supporting documents. At times the sheer weight of filed documents can be a substitute for believed validity and justification. Elegant simplicity is more beneficial and honorable than intellectual complexity. The observation is that better guidance is needed in resolving what is or is not reasonable in regard to attorney's fees and perhaps time for updated legislation to provide clarity and reduce the fog.

Consequently because of this absence of certainty, or at least a more determined method of attorney fee computation in Class Action lawsuits, astute counsel is free to argue for just about any fee they wish and paint it with broad strokes of reasonableness and justification whether in fact or

---

[11] As in physics, deterministic refers to a cause-and-effect result which means if the same input to a situation is used again, then the same result will occur. A consistent and expected result. In contrast, a probabilistic result means if the same input is used again in a situation the outcome can be different. An inconsistent and uncertain result such as a 50% chance of such and such happening. Chaos is the extreme of the two which refers to a circumstance that is totally unpredictable regardless of the input.

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023                     Page **19** of **42**

illusionary.   Just how long is a piece of string?  Where is justice in all this, other than the rubber stamp embossed with '**APPROVED**'?

## Use, Misuse and Abuse – Standards of Proof and Other Reforms

As in most things in life, we humans can use a tool or seek justice, in the spirit of what was honestly intended – a proper use, or take a less honest path of misusing or abusing the circumstance.

The more honest argument of the extent the Class Action industry and the participants in that syndicate have often wandered from the righteous path of intended honorable use to less honest misuse or abuse paths are illustrated in the following examples…

**Certification Reform**.  Original or Representative Plaintiffs seeking to certify a case as a Class Action lawsuit under Federal Rules of Civil Procedure, Rule 23 must plead and prove: (1) an adequate class definition (precise and unambiguous, identity of class members is reasonably determined excluding remote and unlikely victims) (2) ascertainability (fairly easy process to identify class members), (3) numerosity (a showing that joining and naming all Class Members in a common lawsuit is impractical) , (4) commonality (questions of common fact and law), (5) typicality (claims of the Representative Plaintiffs are typical of the claims of Class Members), (6) adequacy (Representative Plaintiffs will fairly and adequately protect the interests of the class – no conflict of interests) and (7) at least one of the requirements in Rule 23(b), namely: (a) separate adjudications will create a risk of decisions that are inconsistent with or dispositive of other class members' claims, (b) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (c) common questions predominate and a class action is superior to individual actions.

Not unusual, expert testimony (often from compensated academia professors – hired guns, invoking often complex and little understood statistical analyses and arguments of why the ingredients exist for justifying a case as a Class Action lawsuit – who are also governed by use, misuse and abuse standards of conduct) are used by attorney's as a resource to establish enough 'doubt' in the mind of the judiciary, that the easy course is to certify a case as a Class Action lawsuit.  The adage there are liars, damn liars and statisticians, is still in vogue.  Given enough complex equations, PowerPoint slides and laser pointers, an expert can argue just about any side of a case and sound pretty convincing – especially when it's paid for testimony and the basis of a decision is foggy, not deterministic and dependent on subjective feelings.  And to think all of this insightful assessment of class certification takes place in a few minutes or a few hours at a court room hearing (the court docket of which is always busy and a court's objective to move things along – justice to is dependent on the sweep of a ticking clock) in which participants in that hearing claim some sort of justified immediate understanding and acceptance of what the truth is and make an on the spot decision – yay or nay to certification.  It takes a university student often many hours if not days just to solve one calculus or differential equation math problem – not including the study and prep time…yet the complexity of class action certification decisions happens in the twinkle or an eye.

The Representative Plaintiffs bear the burden of proving that the prerequisites to class certification have been met by a *preponderance of the evidence*.  Theoretically this standard is supposed to be based on evidence and not speculation.

A certification decision can be challenged, and an appeal made to a higher court. An appeal may be accepted when: (1) the decision is questionable and the certification order represents the death knell for a defendant who will be compelled to settle even if the plaintiff's claims are not meritorious, (2) the decision raises an unsettled, fundamental and generally applicable issue of law that will likely evade end-of-the-case review, or (3) the decision is manifestly erroneous.

Reform is needed in the law or Rules, to cause the courts to be more pragmatic and reflective in a class certification decision. Some potential reforms might include:

- A separate Commission is relevant, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)
    - Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct;
- A separate and specially trained or class action certification expert judge or magistrate independent from the court a case is filed in, rules on a certification argument.
- If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter. A statutory form of attorney fee but paid by the losing plaintiff.

**Standards of Proof Reform.** The standard of proof in a court, listed in order of the degree of persuasive arguments (highest and most intense listed first) include:

- Beyond a reasonable doubt in criminal law.
- Clear and convincing evidence
    - Present evidence that leaves the listener with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.
- Preponderance of the evidence in most civil cases.
    - Prove that something is more likely than not.
- Probable cause in the acquisition of a warrant or arrest proceeding.
- Reasonable belief as part of establishing probable cause.
- Reasonable suspicion in cases involving police stop and searches.
- Some credible evidence in cases necessitating immediate intervention, like child protective services disputes.
- Some evidence in cases involving inmate discipline.
- Substantial evidence in many appellate cases.
    - Degree of relevant evidence which a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.

Class Action certification and other proofs in a Class Action lawsuit are governed by the Preponderance of the Evidence standard of proof, as is most civil lawsuits. Because of the unique nature of a Class Action lawsuit, and the heightened unique exposure to claims of a defendant to

many plaintiffs and defendant's expanded defense burdens, the standard of proof in a Class Action lawsuit should be based on Clear and Convincing Evidence. Such a standard will go a long way towards self-governing promotion of the honesty of a case in regard to hired gun expert Class Certification complex testimony and Class Action attorney specialists promoting the Class Action industry. Justice can still prevail even with a Clear and Convincing Evidence standard of proof, but the burden shifts to the plaintiff to present a more honest case.

**Self-Serving Reform**. Class Counsel representing a Class Action lawsuit, is obligated to demonstrate Class Member (victim) remedies are tested to a standard of being **fair, reasonable and adequate** and any claim for attorney's fees be tested to a standard of **reasonableness**.

In many cases Class Counsel unnecessarily strains the honesty standard of argument, that the case is shoe-horned to fit within the standards of reasonableness, fairness or adequacy. The more honest arguments include:

- Argument: Class Members have not objected to the size of the remedy or attorney's fees so therefore they must by default be reasonable.
    - o Reform: Most Class Members only became aware they were entitled to a claim when they received postcard notice from Class Counsel the claim exists, and typically the claim amount is so small, the Class Member may or may not file a claim (assuming they spend time to study the notice), and spend no time challenging the suit given the small nature of the event. Hence arguing the absence of objection as part of the rationale of a claim and attorney fee being reasonable is a rather salty circular self-serving argument, and one hopefully a court will disregard (ignore?).
- Argument: Attorney's fee claims are comparable to other Class Action lawsuit awards, citing common percentage take regarding contingency fee awarded attorney's fee in other cases.
    - o Reform: This one-size-fits-all attorney fee reasonableness standard is contrary to the obligation of attorneys to determine their fee on the merits and effort involved in each individual case. Reasonable attorney's fee justification is not like earning a fixed real estate agent sales commission (the 6% 'standard' shared between buyer and seller agents). Then again, justifying a fee based on other case 'standards', is another admission of the observation that Class Action lawsuits have become a commoditized industry and vehicle to rack up huge attorney's fees and not a forum for justice.
- Argument: Expert testimony (often university professor experts – hired guns) demonstrate with subjective little understood complex statistical stealth, that the basis of a case is sounded as evidence and proof of the bad conduct of a defendant.
    - o Reform: An expert arguing in a security fraud case for example, that defendant's alleged bad conduct caused an inappropriate one penny swing in a defendant's stock price…is a pretty far-fetched argument to make, given stock price swings happen on a daily basis and to pin-point specific conduct of a defendant why the swing happened, especially when a nominal amount, is often a bridge to far…and all the more reason to have a Clear and Convincing Evidence standard of proof.
- Argument: Class Counsel base their attorney fee on a contingency basis, a percentage of the Claim award to Class Members, citing Class Action 'victims' are seeking justice and

Class Counsel graciously accepting a case to advance that justice and willing to do so on a contingency basis relieving the Class Members of bearing the legal costs of a case, and usually such fees are paid by a losing defendant if an underlying statute on which a case is brought provides for attorney fees as part of the remedy.

- o Reform: How often does Class Counsel seek to orchestrate a case as a Class Action lawsuit, driven by the objective of increasing the size of a Claim because of Class Member participation, and the size of the percentage take from a large Class Action Claim as attorney's fees, is hugely more valuable than a percentage take from an individual plaintiff claim? Thus, an observation that contingency attorney's fees should not be permitted in Class Action lawsuits, leaving the attorney to justify their fee based on reasonableness standard tests associated with time and hourly rates.

- Argument: Class Counsel justify the merits of a Class Action case (either as certification as a Class Action or violation of a law) and their right to attorney's fees, based on a plethora of cited cases, mountains of self-serving justification documentation and other resources heaped upon a court's already busy docket. The weight of the argument is based on the paper weight of the documents filed and not on the quality and weight of evidence of the argument.

  - o Reform: Similar to discovery proceedings, perhaps attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.

## Justice and Class Action Lawsuits

The Class Action lawsuit industry seems to have wrinkled the path of what justice (or injustice) is all about.

The Declaration of Independence, the Constitution of the United States of America, and the Bill of Rights, the "founding documents" of the nation, speak directly to the ideals of freedom from oppression, equality, and justice _for all_. Justice is fairness and equal treatment and applies to both the plaintiff AND the defendant since that simple '_all_' word is rather encompassing.

Class Action Lawsuits seem to treat defendants as tyrants and oppressors of the public. That is not justice for _all_.

What is just remains a matter for debate. Observing the same outcome of a situation, one person may say justice was done. Another may declare the outcome an injustice and great wrong. Is the porridge too hot or just, right? Is the attorney fee too huge or just, right?

Justice may be viewed as a subjective process of assessing the fairness of relations between individuals and groups of people, such as...

- Getting what one deserves.

- Equitable sharing of civic burdens.
  - We all get car door ding marks, and we all give them. While such is normally an accidental 'wrong', to seek a $50 door ding damage repair bill and charge a $10,000 attorney fee is not what justice is *all* about. Revenge maybe. Assumption of a certain amount of risk is a constant balancing act in anything us humans do. (Maybe the door ding issue can be resolved by car makers installing soft bumper guards on door edges or wider parking lanes.)
- Individual virtue and ethical conduct (especially attorney's whose law license demands they honor Bar Association ethics and code of professional conduct and act responsibly and always seek justice for *all* and not revenge).

Is it unreasonable/unethical for plaintiff's attorney to pursue a Class Action lawsuit, knowing their fee will be many many magnitudes greater than any nominal recovery of victims, where such huge fee is paid to the attorney instead of compensation to the victims? Is that justice?

Are huge attorney fee awards seen as a substitute for punitive ('punishment') damages above and beyond actual damages, of a Class Action lawsuit defendant? Justice would suppose punishment is by way of compensation paid to victims, and where applicable, award of punitive damages (also paid to victims above and beyond actual damages) as a punishment for unacceptable intentional egregious acts of defendants. Attorney fees are in relation to reasonable honest legal services provided on behalf of the plaintiff/victims and NOT a means of punitive punishment of defendants.

Who does justice define as the victim? The Class Member victims? Plaintiff's lawyers as victims? Defendant victims being exposed to paying huge legal fees and lawyers misusing or abusing what justice is *all* about?

It's time for a change.

### Bibliography

Baker, Lynn A., Perino, Michael A., Silver, Charles, "Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions", Columbia Law Review, vol. 115, no. 6, (2015).

Boatright, Jason, "The History, Meaning, and Use of the Words Justice and Judge", *St. Mary's Law Journal*, vol. 49, no. 4, Article 1, 727 (2018).

Carter, Jimmy, "Law Day Address at the University of Georgia in Athens, Georgia", *The American Presidency Project*, https://www.presidency,ucsb.edu, (1974).

"Class Action", Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/we/class_action, Dec 2022.

"Class Action", *Wikipedia*, December 22, 2022

"Class Action Fairness Act of 2005, *28 USC, Public Law 109-2*, Feb 18, 2005.

"Class Action Fairness Act of 2005, Wikipedia, December 22, 2022.

Connolly, Neil, "Extreme Couponing: Reforming the Method of Calculating Attorney's Fees in Class Action Coupon Settlements", *102 Iowa Law Review 1335* (2017)

Douglas, Frederick, "What, To The Slave, Is the Fourth of July (1852)", *Blackpast*, (2007)

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: 1993-2008", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2010).

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: Empirical Study", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2004).

"Federal Rules of Civil Procedure", *Title IV. Parties, Rule 23, Class Actions*.

"Fees and Expenses", American Bar Association, https://www.americanbar.org/ groups/legal_services/milvets/aba_home_front/information_center/working_with_lawyer /fees_and_expenses/, Dec. 2022.

Frankel, Alison, "In biggest cases, class action lawyers are low-balling fee requests – and that's a good thing", *Reuters*, November 2, 2016.

Gentry, Caroline H., *"A Primer on Class Certification Under Federal Rule 23"*, Corporate Counsel CLE Seminar, Rancho Mirage/CA (https://www.classactiondeclassified.com/wp-content/uploads/sites/26/2017/08/a_primer_class_certification_under_federal_rule.pdf, 2017)

Hartmann, Michelle, Miller, Ralph I., Zambrano, Angela C.. "Attorneys' Fees", *SMU Law Review*, vol. 57, Issue 3 Annual Survey of Texas Law, Article 4, 2004.

Ibrahim, Melissa, "Bills, Bills, Bills: The Effect of a Rejected Settlement on Attorney's Fees Under the Civil Rights Attorney's Fees Award Act of 1976", *Cardozo Law Review*, vol. 36, p. 1987, 1988.

Johnson, Charles T. et al v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020).

King, Martin Luther Jr., "Letter from Birmingham Jail", *Atlantic Monthly*, vol. 212, no. 2, p. 78 (1963).

Klonoff, Robert H., "Why Most Nations Do Not Have U.S.-Style Class Actions", Bloomberg Law, https://news.bloomberglaw.com/class-action/why-most-nations-do-not-have-us-style-class-actions.

Lender, David J. et al, "Class Action Fairness Act of 2005 (DAFA): Overview", *Practical Law Company.com*, (2013).

"Opinion #17. Negotiation of Attorney's Fees in Class Actions", *Professional Ethics Commission, Board of Overseers of the Bar*, (January 15, 1981).

Ratner, Morris, "Civil Procedure: Class Action Fee and Cost Awards", *The Judges Book*, vol. 1, art. 9, http://repository.uchastings.edu/judgesbook (2017).

"Rule 1.5 Fees- Comment", *American Bar Association Model Rules of Professional Conduct*, Client-Lawyer Relationship (2018).

Shepherd, Joanna, "An Empirical Survey of No-Injury Class Actions", Emory University School of Law, Legal Research Paper Series, Research Paper No. 16-402, http://ssrn.com/abstract=2726905 (2016).

Sohoni, Mila, "The Idea of "Too Much Law", *Fordham Law Review*, vol. 80, Issue 4, Article 3, 2012.

Tribe, Lawrence H., "Too Much Law, Too Little Justice: An Argument for Delegalizing America", The Atlantic, July 1979.

"What Is Justice", *School of Criminal Justice, University of Albany*, Module 1, https://www.albany.edu/justiceinstitute/33471.php, (2022).

Appendix A –

## Class Action Lawsuits – Huge Attorney Fee Illustrations

### Example Class Action Case 1 (https://www.nielsensecuritiessettlement.com/)

In Re Nielsen Holdings PLC Securities Litigation
Civil Action No. 1:18-cv-07143-JMF
United States District Court
Southern District of New York

| | | |
|---|---|---|
| Proposed Settlement Fund | $73,000,000 | ($0.19 per share) |
| Proposed Contingency Attorney's Fees (25%) | $18,250,000 | ($0.05 per share) |
| Plus Attorney Expenses | $ 1,110,000 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 17,206 | |
| Total Class Member (Victims) | 384,000,000 ($73,000,000/$0.19) | |
| Attorney Hourly Rate Disclosure Ranges | | |
|     Paralegals | $315 to $505 | |
|     Associate Attorneys | $895 to $2,017 | |
|     Of Counsel | $975 to $1,560 | |
|     Partners | $1,250 to $1,983 | |
| | | |
| Average Attorney hourly rate | $1,060 | ($18,250,000/17,206) |
| Attorney Fee Per Lawyer (assuming 82 lawyers) | $222,561 | ($18,250,000/82) |
| Range of Victim Award (depends on shares owned) | | |
|     500 shares | $70 | (500*$0.14) |
|     10,000 shares | $1,400 | (10,000*$0.14) |
|     100,000 shares | $14,500 | (100,000*0.14) |

### Example Class Action Case 2 (https://www.t-mobilesettlement.com/

In Re T-Mobile Customer Data
Security Breach Litigation
Civil Action No. 4:21-md-03019-BCW
United States District Court
Western District of Missouri

| | | |
|---|---|---|
| Proposed Settlement Fund | $350,000,000 | |
| Plus Future Data Security Upgrades | $150,000,000 | |
| Proposed Contingency Attorney's Fees (22.5%) | $78,750,000 | (reduced from 30%) |
| Plus Attorney Expenses | $ 147,982 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 8,225 | |
| Total Class Member (Victims) | 79,150,000 | |
| Attorney Hourly Rate Disclosure Ranges | $270 to $1275 | |

| | | |
|---|---|---|
| Average Attorney hourly rate | $9,574 | ($78,750,000/8,225) |
| Attorney Fee Per Lawyer (assuming 100 lawyers) | $787,500 | ($78,750,000/100) |
| Range of Victim Award (depends on shares owned) | $3.42 | ($271,250,000/79,150,000) |

## Example Class Action Case 3 (https://www.baggagefeeclassaction.com/)

Cleary v. American Airlines Inc.
Baggage Claim
Civil Action No. 4:21-cv-00184-O
United States District Court
Northern District of Texas

| | | |
|---|---|---|
| Proposed Settlement Fund | $7,500,000 | (min.) |
| Proposed Fixed Fee Attorney's Fees | $2,850,000 | (27.5% total award) |
| Attorney Expenses | $1,142,945 | |
| Claimed Attorney Hours | 3,641 | |
| Total Class Member (Victims) | 588,654 | |
| Average Attorney hourly rate | $782 | ($2,850,000/3,641) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $285,000 | ($2,850,000/10) |
| Victim Award | $12.74 | ($7,500,000/588,654) |

## Example Class Action Case 4 (https://www.OracleSecuritiesLitigation.com)

In re Oracle Corporation Securities Litigation
Securities Fraud
Civil Action No. 18-cv-04844-BLF
United States District Court
Northern District of California, San Jose Division

| | | |
|---|---|---|
| Proposed Settlement Fund | $17,500,000 | |
| Proposed Fixed Fee Attorney's Fees | $3,500,000 | (20% total award) |
| Attorney Expenses | $900,000 | |
| Claimed Attorney Hours | 17,900 | |
| Total Class Member (Victims) | 979,000 | |
| Average Attorney hourly rate | $195 | ($3,500,000/17,900) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $350,000 | ($3,500,000/10) |
| Victim Award | $0.01/share (~2.7 bn shares) | |
| | (~1800 shares per shareholder avg) | |
| | $18 avg share of claim | |

A self-serving assertion: The small number of objections in comparison to the size of the Class supports a finding that the Settlement is fair, reasonable, and adequate. The reason folks did not opt-out have nothing to do with a fair, reasonable and adequacy test. Case cites false statements illegally inflated Oracles stock value – then trading between $43 and $47. Jan 2023 trade value is over $85, and a peak end of 2022 at over $100. The casual observer would cite business as usual and a good year for Oracle investors…justifying a 1 cent swing in stock value because of excessive puffing – craftily disguised as security fraud (with a lot of academic experts pontificating on their crystal ball insightfulness and naval gazing) is poppycock. Liars, damn liars and statisticians come to mind.

## Appendix B

### Example Form Objection to Attorney's Fees

**IN THE UNITED STATES DISTRICT COURT FOR THE**

_____ **DISTRICT OF** _____ (*State*)

_____ **DIVISION**

| | | |
|---|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | )<br>) | Case No. _____ |

_____

### OBJECTION[12] TO PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT

1.  Objection Applicant, _____ (*your name*) (pro se[13]), a Settlement Class Member (Class Member ID[14] _____, claim number[15] _____) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, has not objected to any class action settlement within the past three years, and request for modification and downward adjustment of any pending or submitted Attorney Fee and Expense Application (herein the 'Application') because such Application is unreasonable, unfair and not in the best interest of the Settlement Class Members.

    *[Cross through or delete Option 1 or Option 2 that does not apply]*

2.  *Option (1) Since as of the filing of this Objection, Lead Counsel has not filed in https://www[16]._____, copy of the Application, nor sent a copy to Objection Applicant, this Objection is based on those documents of record in the cited website so filed as of the date of this Objection.*

---

[12] Read the post card claim notice and follow any specific instructions regarding filing of an objection, such as timing, address to send the Objection to, and any conditions. This Appendix B form contains typical conditions but may not be complete.

[13] Pro se means you are representing yourself.

[14] Class member ID is usually cited in the post card claim notice received in the mail concerning the Class Action

[15] If you have filed a claim after receiving the post card claim notice, you usually will be issued a claim number.

[16] The Class Action lawsuit will be found on the internet which will allow you to have access to all case documents and other information about the case. Insert the internet website. Often times an Objection is filed before all relevant documents are filed online. Final attorney fee applications are often filed late.

*Option (2) This Objection is based on those documents of record in https://www _____, as of the date of this Objection.*

**OBJECTION**

3.      Rationale behind this Objection, includes...

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the Application, I do not agree with such approval, and hereby submit this Objection.

3.3  The Application is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

3.3.1   American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
   o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
   o   Traditional fee analysis to determine reasonableness takes into account...
      ▪   the time and labor required,
      ▪   the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
      ▪   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
      ▪   the fee customarily charged in the locality for similar legal services;
      ▪   the amount involved and the results obtained;
      ▪   the time limitations imposed by the client or by the circumstances;
      ▪   the nature and length of the professional relationship with the client;
      ▪   the experience, reputation, and ability of the lawyer or lawyers performing the services; and
      ▪   whether the fee is fixed or contingent

3.3.2   Federal Rules of Civil Procedure, Class Action Rule 23;
   o   The Court '***may***' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3.3.3   Class Action Fairness Act of 2005;
   o   Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account...
      o   Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the

litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3.3.4 Court rulings, in particular attorney fee reasonableness test criteria described in

- Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard.**

  - Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
    - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - Reasonableness takes into account the factors used by the traditional fee *determination.*

4. The Court is requested to invoke its discretionary powers to modify and reduce the Attorney Fee Expense Application to make it reasonable.

5. The economics of the requested Application indicate:

5.1 The proposed Settlement Common Fund to all Class Members is $_____. (Total indicated settlement to be paid to victims)

5.2 Total Class Members are _____ (total number of victims)

5.3 Individual Class Member award are estimated to be $_____ (cite how much each victim may receive or at least a range)

5.4 Total Attorney Fees and Expenses applied for are $_____

5.5 The total legal hours expended on the case are _____

5.6 The average hourly rate charged for legal services is $_____ (paragraph 5.4 divided by paragraph 5.5)

5.7 The average paycheck for each attorney working on the case is $_____

(paragraph 5.4 divided by the total number of attorneys estimated to be working on the case, small cases may be up to 5, big cases may be 75 or more)

5.8 The disparity between the amount of recovery to each Class Member compared to the paycheck each attorney could receive suggests an exorbitant and unreasonable basis on which to base attorney fees.

6. Any reduction in the Application is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

7. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $_____[insert amount of claimed fee] attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

8 Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
   o While it is instructive to take into account attorney work claims of:
      o Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

9. [Add any other information that is unique to the case that illustrates why you think the requested attorney fee and expense application is unreasonable] At your discretion you might also include a copy of the above paper that might give the Court some additional information to think about].

Respectfully submitted.

This _____ day of _____, 20__ .

_____
[name, printed and sign document]
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

**CERTIFICATE OF SERVICE**

I, _____, hereby certify that on the _____ day of
_____, 20____, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE
AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT,
WERE** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE
_____DISTRICT OF _____**

**_____ DIVISION**

Clerk of the Court
[address/email]

CLASS COUNSEL
[name]
[address/email]

Defendant
[address/email]

I, _____, further certify I am a Settlement Class Member.

_____

*[name]*

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet
posting cite.

## Appendix C

### Example Op-Out Form

### IN THE UNITED STATES DISTRICT COURT FOR THE
_____ DISTRICT OF _____ (*State*)
_____ DIVISION

| IN RE [NAME USED IN COURT DOCUMENTS] | ) ) | Case No. _____ |

_____

### ELECTION TO OPT-OUT OF THE CAPTIONED CLASS ACTION LAWSUIT

1.  Opt-out Applicant, _____ (*your name*) (pro se[17]), a Settlement Class Member (Class Member ID[18] _____) submits this **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, and without prejudice, reserve any and all of my rights to pursue a separate claim**

Respectfully submitted.

This _____ day of _____, 20__.

_____
*[name, printed and sign document]*
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

### CERTIFICATE OF SERVICE

_____

[17] Pro se means you are representing yourself in the objection.
[18] Class member ID is usually cited in the post card notice you received about the Class Action

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, was** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE _____DISTRICT OF _____**
**_____ DIVISION**
Clerk of the Court
[address/email]


CLASS COUNSEL
[name]
[address/email]


Defendant
[address/email]


I, _____, further certify I am a Settlement Class Member.


_____

*[name]*

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

*[This is a general form. The postcard notice received about the Class Action lawsuit may contain other information of what to do to opt-out of the case. Please refer to that detail as required].*

## Appendix D

## Class Action Lawsuits – Attorney Fee Legislation

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re: Class Action Lawsuit – Attorney Fee Legislation*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and Attorney Fee Legislation.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding huge attorney's fees granted in many Class Action cases and what action plans can be advanced to provide some control over run-away fees.*

*While the judicial Court system has oversight to assess the reasonableness of such fees, there seems to be a consistent 'one-size-fits-all' demeanor advanced when such fees are defended by Class Counsel. This demeanor is contrary to the reasoning that one-size-does-not-fit- all where each case and its fee structure are to be assessed on their own merits and tested against a standard of fairness, reasonableness and adequacy. Most Class Counsel argue that their claimed attorney's fees (a self-serving argument) are consistent in the formula used to determine fees among all other cases.*

*The attached paper and my own experience suggest legislation may well be required to provide the necessary control over excessive fee awards.*

*I am writing to seek your counseling and perhaps leadership in advancing relevant legislation that can address the run-away legal fee paycheck issues and problems outlined in the attached paper.*

*While I don't have the answers, I do have some ideas.*

## Contingency Fee Prohibition

*Perhaps, similar to prohibition of the use of contingency legal fees (where the fee is based on the attorney taking a percentage of the case outcome) in regard to domestic relation and criminal cases, Class Action lawsuit may well be added to the prohibited list, thereby leaving attorneys to argue and defend a fee based on 'fixed fee' reasonable hours and reasonable billing rate arguments.*

*As you know, the legal profession has almost unanimously determined for years that allowing attorneys to base their contingency fee on the outcome of a divorce or child custody case would create a risk of the attorney having a financial interest in the outcome as well as being against public policy and therefor unreasonable by default. This could potentially lead unscrupulous attorneys to take actions that could be against the interests of children, or it could encourage attorneys to do things to make sure clients actually divorce. On the contrary, a skilled and ethical divorce attorney should always consider reconciliation, resolution, and fairness to be part of the goal and avoidance of the destruction of family relationships. There can be no financial interest in seeing to it that clients get divorced.*

*Likewise, contingency fees are prohibited in regard to criminal cases also based on public policy reasons.*

*Shouldn't Class Action counsel likewise ethically consider resolution and fairness to be the goal of such actions.*

## Reasonableness Tests Codification

*As outlined in the attached paper, the groundwork for attorney fee codification has been laid out in the various resources currently consulted to assess attorney fee reasonableness.*

*Those resources include: American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees; Federal Rules of Civil Procedure, Class Action Rule 23; Class Action Fairness Act of 2005; court rulings, in particular attorney fee reasonableness test criteria described in Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the* **lodestar standard.**

*Should legislation be passed to codify the various methods used to test for reasonableness of attorney's fees, thereby removing much of the subjective uncertainty and differences without a distinction confusion?*

*Should a codified formula (which may also include a cap) be determined that provides guidance what is considered a reasonable attorney fee, with an opportunity for attorneys to challenge the formula if they can demonstrate why their fee structure is the better reasonable structure?*

### *Independent Committee*

*Currently, attorney fee reasonableness tests are assessed by other attorneys. I have included the Court system in this testing network since most jurists are attorneys. Should there be some form of independent committee, commission or panel used to test the reasonableness of attorney fees, the participants of which also includes non-lawyers? Professions that come to mind that might be part of such panel includes Insurance (risk management), Accountants, Professional Engineers, Military Officer, Police Officer, Day Care Management, Clergy, Local Union Leadership.*

*An independent committee, commission or panel is not unlike the independent expert appointed under the Class Action Fairness Act of 2005, who is instructed to scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.*

*Class Action Counsel might argue that the complexity of defending why legal fees are reasonable, is not readily understood by the lay person. Quite the contrary, if attorneys cannot argue their defense of why their fee is reasonable in plain understood English, then the fog index is in full force...and that corrupts the concept that a little bit of sunshine is a great disinfectant.*

### *Class Action Certification Reform*

*A separate Class Action certification Commission should be created, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)*

*Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue a highly questionable course of conduct.*

*If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter.*

### *Plaintiff Filing Reform*

*Similar to discovery proceedings, Class Counsel attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.*

## *Standard of Proof Reform*

*The standard of proof used to either certify a case as a Class Action or evidence presented in a trial of the matter, should be based on Clear and Convincing Evidence and not Preponderance of the Evidence. A higher standard of proof makes sense, since such standard will have a self-governing incentive for plaintiff's and Class Counsel to advance an honest case as well as promoting the nation's founding documents objective of Justice for ALL, especially since a defendant is confronted with the unique and unusual aspects defending a Class Action claim.*

## *Pre-Certification Notice*

*The honest merits of a lawsuit certified as a Class Action, should first be tested, that prior to such certification, Plaintiff's should first submit a mandatory notice letter (the Class Action Pre-Certification Notice Letter, or CAPCN) to the defendant giving them clear and unambiguous information concerning: (i) The legal rationale on what the Class Action complaint is all about; (ii) How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee; and (iii) The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action lawsuit;*

*Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

Appendix E

**Class Action Lawsuit Postcard Claim Form**

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re:  Class Action Lawsuit – Postcard Claim Form*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and the content of postcard claim forms used to notify potential Class Members of their claim rights.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding user friendly notification and information contained in postcard claim forms and what action plans can be advanced to provide improved user-friendly better-informed awareness of important issues associated with such forms.*

*I believe legislation is needed to simplify, make easier to understand, postcard Class Action lawsuit claim notices, designed to clearly and conspicuously describe:*

*(1) what potential claim is being sought,*

*(2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled,*

*(3) how the size of the Class Action Claim and attorney's fees are effected if Class Members opt-out of participating in the lawsuit and*

*(4) how attorney fees and expenses are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer and average hourly rate being charged.*

*Such postcard claim form legislation could be an amendment to the Class Action Fairness Act of 2005.*

*It is not uncommon when a Class Member receives a postcard claim form in the mail, short of hiring their own attorney, they need to have a reasonable understanding of how to navigate through online internet systems in order to obtain additional relevant information. The internet navigation process as well as interpreting much of the 'legal mumbo gumbo' cited in important documents, gets lost in translation, leaving Class Members with little insight of their rights and significance of important issues.*

*One issue of importance is the user friendly opportunity to make the postcard claim form easy to understand on which a Class Member can then be able to clearly judge the merits of receiving a small nominal value in a Class Action lawsuit, while attorney's receive huge paychecks, using the Class Action Lawsuit as a vehicle to secure such fee (and justice taking back seat peanut gallery priority), thus allowing Class Members to make a much better informed decision of opting out (not participating) in the Claim or staying in.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*


*Name*

# EXHIBIT E

SUPERIOR COURT OF THE STATE OF CALIFONIA

COUNTY OF SAN MATEO

**FILED**
SAN MATEO COUNTY

MAY 1 5 2023

Clerk of the Superior Court
By_____
DEPUTY CLERK

| In re MICRO FOCUS INTERNATIONAL PLC SECURITIES LITIGATION | ) ) ) ) ) | Lead Case No. 18CIV01549 CLASS ACTION Hon. Marie S. Weiner, Dept. 2 |

## OBJECTION TO PROPOSED OR FILED MOTION
## FOR AWARD OF ATTORNEY FEE AND EXPENSE APPLICATION
## AND REQUEST FOR DOWNWARD ADJUSTMENT

1.      Objection Applicant, Larry D. Killion, (pro se), a Settlement Class Member (Proof of Claim Receipt No. IEAORVKL, filed online, May 7. 2023) submits this **OBJECTION to award of attorney's fees in the captioned cause, to apply to the entire class (and not just to Applicant personally),** the Applicant does not plan to attend the Settlement Fairness Hearing,. and request for modification and downward adjustment of any  pending or submitted motion or other relevant document regarding request for award of Attorney's Fee and expenses (herein the 'Motion') because such Motion is unreasonable, unfair and not in the best interest of the Settlement Class Members.

2.      *Since as of the filing of this Objection, Plaintiff Counsel has not filed online in https://www.microfocusclassaction.com/Home/Documents, copy of the Motion, nor sent a copy to Objection Applicant, this Objection  is based on those documents of record in the cited website so filed as of the date of this Objection.*

## OBJECTION

3.      Rationale behind this Objection, includes...

3.1 Although participants in this Class Action Lawsuit have ostensibly approved the Settlement including the Motion, I do not agree with such approval, and hereby submit this Objection.

3.3  The Application is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

3.3.1    American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees

RECEIVED

MAY 15 2023

CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

- o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o Traditional fee analysis to determine reasonableness takes into account...
  - the time and labor required,
  - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - the fee customarily charged in the locality for similar legal services;
  - the amount involved and the results obtained;
  - the time limitations imposed by the client or by the circumstances;
  - the nature and length of the professional relationship with the client;
  - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - whether the fee is fixed or contingent

3.3.2   Federal Rules of Civil Procedure, Class Action Rule 23;
- o The Court '_**may**_' [_emphasis added, a discretionary power_] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3.3.3   Class Action Fairness Act of 2005;
- o Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account...
  - o Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3.3.4   Court rulings, in particular attorney fee reasonableness test criteria described in
- o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - o Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a _**reasonable**_ fee in the case.

- Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
- Reasonableness takes into account the factors used by the traditional fee *determination.*

4. The Court is requested to invoke its discretionary powers to modify and reduce the Motion to make it reasonable.

5. The economics of the requested Indicate indicate:

5.1 The proposed Settlement Fund to all Class Members is $107.5 Million. (Total indicated settlement to be paid to victims)

5.2 Total Class Members are unknown by Applicant (total number of victims)

5.3 Total Attorney Fees and Expenses applied for are $1.5million in expenses plus "up to" one third of the Settlement Fund amount equivalent to approximately $35.3million. It is speculated the full one-third claim will be requested, as it is rare for an entity to argue against their own paycheck amount.

5.4 The total legal hours expended on the case are unknown by Applicant.

5.5 The average hourly rate charged for legal services is unknown by Applicant.

5.6 The average paycheck for each attorney working on the case is unknown by Applicant.

6. Any reduction in the Motion is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

7. A review of class action settlements in other jurisdictions suggests attorneys typically are awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when up to one third of $107.5 million attorney fee award paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

7.1 Reasonableness of the fee can be gauged to some extent by comparing what each of the Class victims will receive (unknown to Applicant but estimated how much each lawyer working on the case will receive. Assuming 150 lawyers, the average indicated fee is $236,000 each on avg. How much is each victim receiving on average?

7.2 Reasonableness of the fee can be gauged against the analysis of the case which is not about unique legal principles, but about commercial issues, evaluated by experts and statisticians forming an analysis how stock price volatility can be attributed to wrong doing, which even in the most insightful set of circumstances, is always subject to some aspect of speculation, hence large legal fee is misplaced in regard to the keen substantive work otherwise provided by non-lawyer experts and stasticians. Plus per Plaintiff's counsel own comments, extensive effort in the case was about procedural, non-substantive issues...indicating the merits of the case as having some

degree of speculation based on procedural grounds and nothing to do with Class Action damages. Even-so, a $33million+ claim for attorney's fees is outrageous in its demand and distracts that sum away from the real victims of the case, the Class Members.

7.3   Legal fees are generally allowed by statute (reasonable hourly rate based tests) or agreed with clients.   Class Action suits have the unfortunate characteristic that legal fees are determined by a very small subset of affected lead plaintiff 'clients', hence a one third contingency fee request is premised on Class Members not having the opportunity with participating in a reasonable fee setting.

7.4   What is the per Settlement Class take compared to attorney fee take?   The court is requested to assess these ratios and factor in any disparity in the numbers.

8   Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial.   Consequently, the extent and reasonableness of claimed earned legal fees are in question.   Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
  o   While it is instructive to take into account attorney work claims of:
    o   Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

9.   Awarding $15,000 each 'lawsuit incentive payment' to representing Plaintiff's is really just a bounty for an award regarding being the first to race to the court house to file a case.   Such bounty fees are unreasonable and prejudices Settlement Fund Allocation rights and privileges for those claimants that did not race to the court house.   Such incentive fee is requested to be denied.   A plaintiff should be compensated for justice and their damages, not a bounty for filing a lawsuit.

10.     As an aide to the Court, please find attached a discussion paper regarding the trend in Class Action lawsuits, toward unreasonable attorney fee awards, and what can be advanced legislatively and procedurally to curtail such practice, as well as a discussion of the issues affected unreasonable attorney fee awards in class action suits.

Respectfully submitted.

This 8 day of May, 2023.

_Larry D. Killion, Pro Se_
Settlement Class Member

713 906-9135, (mobil)
832 203-7695(fax)
11235ldk@oomcast.net (email )
2114 Oxford Street
Houston, Texas 77008 address

## CERTIFICATE OF SERVICE

I, Larry D Killion, hereby certify that on the 8 day of May, 2023, copies of the **OBJECTION TO PROPOSED OR FILED MOTION FOR AWARD OF ATTORNEY FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

Superior Court of San Mateo
Hall of Justice and Records
400 County Center
Redwood City, CA 94063
Priority Mail

**Plaintiff's Counsel:**
Robbins Geller Rudman & Down LLP
58 South Service Road
Suite 200
Melville, NY 11747
c/o Joseph Russello
First Class Postage

Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road
Suite 200
Burlingame, CA 94010
c/o Mark C. Molumphy
First Class Postage

**Defendant's Counsel:**
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
c/o Timothy G. Cameron
First Class Postage

### ATTORNEY'S FEES

### IN CLASS ACTION LAWSUITS

### WHAT TO DO ABOUT HUGE (UNREASONABLE?) LAWYER PAYCHECKS



## Table of Contents

| | |
|---|---|
| **Class Action Lawsuit Industry** | 3 |
| **Incentive Factors** | 4 |
| **How To Control Award Of Huge Attorney Fees** | 5 |
| **First - Attorney Fee Reduction Action Plans** | 5 |
| **Why These Plans?** | 7 |
| **Short Lesson:  Class Action Lawsuit Boot Camp** | 11 |
| **Advantages of a Class Action Lawsuit, includes:** | 12 |
| **Disadvantage of a Class Action Lawsuit, includes:** | 12 |
| **Attorney's Fees** | 15 |
| **Advantages of Contingency Fee Structure Includes:** | 16 |
| **Disadvantages of Contingency Fee Structure Includes:** | 17 |
| **Attorney Fees Reasonableness Test** | 18 |
| **Use, Misuse and Abuse – Standards of Proof and Other Reforms** | 20 |
| **Justice and Class Action Lawsuits** | 23 |
| **Appendix A –** | 28 |
| **Class Action Lawsuits – Huge Attorney Fee Illustrations** | 28 |
| **Appendix B** | 30 |
| **Example Form Objection To Attorney's Fees** | 30 |
| **Appendix C** | 35 |
| **Example Op=Out Form** | 35 |
| **Appendix D** | 37 |
| **Class Action Lawsuits – Attorney Fee Legislation** | 37 |
| **Appendix E** | 41 |
| **Class Action Lawsuit Postcard Claim Form** | 41 |

RECEIVED

MAY 1 5 2023

CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

## Class Action Lawsuit Industry

The Class Action Lawsuit Industry ("**CALI**") is alive and well (some law firms even publicizing their *'Class Action Lawsuit of the Month'*, merchandising (carnival barker?) Class Action justice as if it is a used car,



- As post card Class Action Lawsuit mailed notices to victims (*'Class Members'*) (now managed by third party non-lawyer administrators, part of the industry) arrive more frequent than holiday season sales catalogues,
- Accompanied by Class Action representing attorneys demanding huge multi-million dollar fees using the Class Action Lawsuit as a vehicle to secure such fees,
- While Class Members typically each receive a token amount, as Class Action compensation (the so-called Settlement Fund), the vast majority of which do not even know they were victims, and most unaware of the huge attorney fee claim[1].

The smell test of all this does not look or sound right.



Attorney's fee awards in the CALI appear to have settled in on a 'standard' 'rubber-stamp' court approved fee based on 30% to 40% of the Class Action claimed harm – sounds similar to roadside billboard justice using a sledgehammer to crush guilty until proven innocent truck drivers associated with negligence claims while conveniently **NOT** advertising contingency fee subtractions by attorneys from the victims damages, in the 30%? to 40%? range (plus expenses) – feels like the victim has suffered twice. Yet attorney's fees for each Class Action case (whether based on billable hours or contingency fee demands) are supposed to be tested on a standalone reasonableness standard and not a 'one-size-fits-all' demand[2].

---

[1] Rare is the Class Member who will take the time to study court documents to educate themselves about the attorney fee over-reach, and instead, as tactfully understood by representing counsel, lured into the sense of some easy money sourced from the Class Action lawsuit nominal compensation award, sort of like being a surprised winner in a raffle not knowing you were even entered to participate.

[2] Most Class Action lawsuit attorney fee demands are accompanied by voluminous pages (sometimes rivaling the number of pages about the merits of the case) explaining why huge fees are relevant, as well as comparing the current case with prior cases as additional justification why the size of the award is prudent. Both of these arguments

## Incentive Factors

Incentive factors causing this Class Action Lawsuit industry growth, especially the award of huge attorney fees (leaving the real victims – if in fact they are victims - of a case with only a nominal award), includes:

- **Incentive No. 1: Huge Lawyer Fees.** A review of randomly selected Class Action federal court files[3], illustrates the magnitude of huge attorney fee award incentives, accompanied by small nominal claim awards to individual Class Members. The example cases cited in Appendix A indicate typical individual award to Class Members of less than $20 and many in the few $100s, while multi-million dollar awarded attorney's fees representing 25%+ of **TOTAL** award claim for a minimum average range of **per attorney** fee of $222,000 to $287,000. The per attorney fee is understated, since the average calculation assumes the estimated number of assigned attorneys to a case, work full time on the case, which is not realistic, and consequently dramatically understates the real average attorney fee take;

- **Incentive No. 2: 'Deep-Pocket' Defendants.** Many/Most [corporate] defendants in Class Action Lawsuits who honestly try to comply with applicable consumer and investor laws, are well known, established and trusted, and highly regulated, publicly stock traded companies: (Appendix A publicly traded companies include: Nielsen-NYSE, T-Mobile-NASDAQ, American Airlines-NASDAQ, Oracle Corporation-NYSE), are financially sound with 'deep-pockets' and capable of paying huge attorney fees, thus 'easy-worth-the-effort' litigation incentive targets. These businesses routinely retain experts to give them advice in regard to compliance with relevant consumer and investor laws and regulations. These compliance characteristics are indicative of a company NOT out-to-cheat its customers or investors.

- **Incentive No. 3: Speculative Law Compliance – Use, Misuse, Abuse.** Consumer and investor laws on which most Class Action lawsuits are based, are not 'black-and-white' and easily interpreted as to what is right and what is wrong, but are complex and subject to wide ambiguous interpretations – for example security fraud and consumer protection laws – making compliance with these laws challenging even for the most compliant minded company – especially for honest defendants. Because of the speculative nature of these laws, this is fertile ground for litigation minded lawyers having the incentive to craft a case, whether real or illusionary, that places doubt in jury's and Jurist's minds whether or not such speculative laws have been violated. As in all things in life, stuff (in this case laws) can be **used** for their intended public protection purposes, or **misused** or **abused,** for whatever reason, such as an over-reaching grant of attorney fees.

Awareness of these Class Action Lawsuit litigation incentives is nothing new, as there is a history of studies, reports and papers (see the Bibliography of examples of such), discussing and analyzing the pros and cons of Class Action lawsuits, many focusing on and criticizing what justice is all

---

are inconsistent with a one-size-does-not-fit-all lawyer fee claim. The harder one has to argue for something is all the more reason to instill a sense of suspicion especially where the weight (and not the quality) of the justifying argument is not in the merits of the argument but in the volume of paper being used to cover up fictional proof.

[3] Appendix A is a summary of recent Class Action lawsuits illustrating applications for huge attorney's fees coupled with nominal awards to Class Member victims.

about and the disparity between huge plaintiff's attorney's fees paid by honorable defendants coupled with nominal award claims paid to the real victims. While many of these reports are scholarly and well researched, they have had little impact on reducing – so-far, or at least shifting, huge attorney fee awards and filtering out unjustified Class Action Lawsuit claims or putting more justified compensation into the pockets of the real victims and less in the pockets of representing attorneys.

*Many of these reports ask the question:*

## Have Class Action lawsuits merely been used as a vehicle for attorneys to secure huge fees with justice a secondary objective[4]?

### How To Control Award of Huge Attorney Fees

This paper does not repeat the arguments cited in historical writings…***BUT SUPPLEMENTS*** some new dimensions to the topic.

- **First**: By suggesting **self-help** and **law-help** action plans the public can adopt to (i) influence the adjustment to huge attorney fee paychecks in Class Action Lawsuits by (ii) honestly assessing the merits of a Class Action claim and whether or not Justice is being served - and not attorney fee greed AND any attorney fee award claim based on 'honest' reasonableness tests.

- **Second**: By providing this summary discussion of why such self-help and law-help plans make sense.

#### First - Attorney Fee Reduction Action Plans

- **Self-Help**
  - **If attorney fees are viewed as being unreasonably huge (does not pass the smell test[5]), Class Action members should file written Objections with the Court, challenging the unreasonableness of such fees. (Example objection form provided in Appendix B).**
  - **Class members electing *NOT TO PARTICIPATE* ("Opt-Out")[6] in the Class Action lawsuit. (Example opt-out form provided in Appendix C).**

---

[4] Not uncommon, a huge number of pages filed in Class Action lawsuits are dedicated to defending huge attorney fee applications compared to defending the merits of the actual Class Action Claim.

[5] Like pornography, often you know it when you see it.

[6] The United States litigation centric legal system and State and Federal Class Action laws, have opted for the "opt-out" form of Class Action Lawsuit claims. This means the unaware public are 'automatically' ("opted-in") as a Class Member participant and only by pro-actively filing an "opt-out" written notice with the Court will such Member NOT be part of the Class Action Lawsuit result. As later recommended, the laws should be changed such that the public are NOT automatic members of a class, and only by affirmatively filing an "opt-in" statement with the Court will they then be Class Member participants. This "opt-in" standard will go a long way toward eliminating non-merit-based Class Action cases (let the affected public decide) as well as substantially reduce the misuse/abuse tactics associated with award of unreasonable legal fees.

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023                                        **Page 5 of 42**

- **Law-Help**
  - ○ **The public contact their elected government Representatives requesting they pass new laws…**
    - ▪ **Laws designed to promote reasonableness tests of the award of attorney's fees in Class Action Lawsuits such as a realistic fee formula or caps on awards. (Example contact form provided in Appendix D).**
    - ▪ **Laws or rules governing the standard of proof for any Class Action Lawsuit claim to be based on the more stringent Clear and Convincing Evidence standard (and not Preponderance of the Evidence).**
    - ▪ **Laws designed to simplify, easy to understand, postcard Class Action lawsuit notices, clearly and conspicuously describing (1) what potential claim is being sought, (2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled, (3) how the size of the Class Action Claim and attorney's fees are effected if Class Members op-out of participating in the lawsuit, and (4) how attorney fees are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer. (Example notice form provided in Appendix E).**
    - ▪ **Independent Commissions (including non-lawyer participants) be used by the Court to determine if a case should be classified as a Class Action Lawsuit and a similar independent Commission used to assess reasonableness of attorney fee claims.**
    - ▪ **Laws regarding the prohibition of contingency legal fees in regard to Class Action Lawsuits, requiring attorneys to justify their fee as being reasonable in regard to hourly rate and time spent on a case.**
    - ▪ **Laws requiring prior to a lawsuit being certified as a Class Action Lawsuit, the defendant shall be given a mandatory prior notice (the "Class Action Pre-Certification Notice" or "CAPCN" letter), of such planned certification request, and an opportunity for defendant to resolve the case, avoiding the racking up attorney's fees by Plaintiff's counsel.**
    - ▪ **Require any Class Member to act proactively and opt-in to participate in a Class Action lawsuit (with the default being the public are NOT automatically opted-in to a Class Action Lawsuit), unlike the current model where Class Member default is opted -in and to opt-out, the Member must proactively file an opt-out document with the Court.**
    - ▪ **Prohibit the payment of Incentive Payments to Representing Plaintiff's, since such payment is in the nature of a bounty paid for winning the race to the Court house to first file a lawsuit, is merely an incentive for Court house racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members. The Class Members are all victims and to treat some grossly different than others shocks the**

conscience of justice and should likewise shock the conscience of the Court.

## Why These Plans?

- **Objection**: The law requires prior to the Court's approving of a Class Action Claim that it be tested for being just, fair and reasonable and requested attorney's fees, be tested for 'reasonableness'. Each test is on a case-by-case basis, no one-size-fits-all (at least that's the objective test –yet awards regularly migrate to a 30% to 40% 'standard' of recovery and reasonableness test arguments citing as one of the primary arguments for justifying a fee request based on other cases as a consistent basis of award).

  o Attorneys regularly cite as a part of their reasoning why their [huge] fee request is reasonable because it is consistent with other Class Action Lawsuits (30%-40% contingency fee rationale?) which is contrary to the one-size-does-not-fit all reasonableness test reasoning.

  o Counsel argues why they should be certified as Class Action Lawsuit Class Representing Counsel based on their skills and experience, then argues why a [huge] fee is required because of the complexity (speculative nature?) of a case. It is inconsistent on one hand Counsel will argue it is skilled ostensibly requiring less time/effort to handle a case, yet when it comes to their fee, such fee should be [huge] regardless of the skill factor. *Rare is the worker who argues for a cut in pay.*

  o Class Action Member attorney fee Objections filed with the Court, helps remind the Court of its reasonableness test obligations – especially since the Class Member is the victim and for every dollar paid attorney's is often one less dollar paid to the real victim (at least in contingency fee cases). If the victims don't complain, it would be natural for a Court to *assume* victims are ok with the requested fee, which naturally dampens the Court's enthusiasm, with a busy Court docket, to pursue a deep dive test of reasonableness. It's not that victim's don't have an interest in the case and reasonable attorney's fees, the complexity of filing Objections with the Court as well as studying Court filed documents, deters many well intentioned victims to themselves committing to a deep-dive analysis – and astute Plaintiff's counsel are aware of this lethargic tactic that Class Members don't have the time or initiative or understanding to file a cumbersome objection associated with a few buck claim result.

- **Opt-Out**: If many/most Class Action Members collectively elected not to participate in a Class Action Lawsuit (*opt-out*), then the Claim amount should be automatically reduced (since there are less 'victims'), and if there is a request for [huge] attorney's fees, typically based on a contingency fee (attorney's being paid a percentage of the Claim awarded to the real victims), then the fee would be less. And even if a fee is not based on a contingency payment, a huge attorney fee and trivial victim award compared to that fee, will expose the unreasonableness of the fee claim.

- o For example, a 30% fee of $100 million Claim for 100,000 Class Members means $30 million to lawyers and $700.00 to each Class Member, is a lot less than 30% of $500,000 Claim for 500 Class Members means $150,000 to lawyers and $700.00 to each Class Member. Still a disparity between attorney fee and Class Member award, but tempers lawyer's appetite to promote a questionable suit given their fee is much reduced (tension between values associated with earned fee and justice incentives). Or in the alternative, an attorney fee claims for $30million, regardless if the victim remedy is $100million or $0.5million. That smell test thing again.
- o In many Class Action lawsuits, the amount awarded to victims is small and nominal in amount (a few 100 dollars or less, or a discount coupon), while attorney's fee paychecks can potentially exceed $200,000 per lawyer (most likely an understatement since it depends on how many attorneys worked on a case and how long and hourly rate).
- o Class Action members 'giving up' a small nominal award in exchange for stopping, over the top [huge] lawyer fees, is a powerful consumer weapon.
- o While Class Action Lawsuits are designed to punish illegal business practices that harms a large number of the public, always be mindful that payment of Class Action nominal claims and [huge] attorney's fees, can result in the business adding that cost back into the price of the business goods or services which means consumers and investors will in the future end up paying for the illusion of a victorious Class Action win.
- o While a business reputation may suffer a little at first, if at all, generally after the lawsuit combat is over, all is forgiven and the dust settles, it's back to business as usual – except lawyer's fat paychecks have been cashed and deposited, and consumers and investors get stuck with funding the 'hidden' bill.
- **Attorney Fee Law:** Request for attorney's fees in a Class Action lawsuit, is often based on a business alleged to have violated some law adversely affecting many parties (such as a consumer protection or securities fraud law), and that law including the statutory right to plaintiff's attorney's fees to be paid as part of the claim by a losing defendant (in contrast to the general 'American Rule' where parties pay for their own attorney's fee regardless of who wins or loses).
  - o Laws are not written for Class Action Lawsuits, but to seek justice for individual victims for a particular cause of action including compensating the victim for its incurred attorney's fees as part of the award against bad business practices.
  - o Lawyers favor taking cases and bringing lawsuits based on a law that includes award of attorney's fees, especially where the defendant has 'deep pockets' (financially strong) and can afford to pay [huge] fees.
  - o There needs to be a Class Action attorney fee law designed to ensure any award of attorney's fee to be based on a statutory and not discretionary 'reasonableness standard', that comes into play any time there is a Class

Action Lawsuit. Ideally, award of attorney fee would be influenced by the amount EACH victim is awarded – low victim award, low attorney fee – especially since justice is blind to the magnitude of awarded attorney fees.

- o In many Class Action Lawsuits, attorney's fees are determined as a percentage of the victim's Claim amount (so called contingency fee). Consequently, the 'losing' defendant in a case, either as a result of a trial judgment or settlement, is somewhat indifferent[7] about the size of the attorney fee since it is deducted from the Claim amount. Even so, such a deduction may not be in the best interest of the Class Members for not receiving fair, reasonable and adequate compensation for such victim's Class Action losses due to such legal fee deduction.

- o It is more prudent regarding Class Action Lawsuits, for Class Action laws to prohibit contingency attorney fees (similar to criminal or domestic relation cases), leaving the attorney to honestly defend its time spent on the case and hourly rate, separate and apart to any Claim award paid to Class Members. Such hourly rate attorney fee defense will attract a more systematic and objective assessment of the fee, since (1) if the fee is paid by the victims, the Court will have a much clearer understanding of the details and basis of the hourly rate based fee request, and (2) if the fee is paid by the defendant, the defendant will be in a more realistic and efficient tester of the reasonableness of an hourly rate based fee claim, since the defendant is the one paying the fee.

- **Standard of Proof**: Because of the unique nature of Class Action Lawsuit, that in the context of Justice for ALL[8], places excessive defense burdens on a defendant, justice should demand a Clear and Convincing Evidence standard of proof (and not Preponderance of the Evidence standard) associated with certifying a case as a Class Action lawsuit as well as the same standard of proof to be used in the trial of the matter. This higher burden of proof properly places an incentive on plaintiff's, Class Members and Class Counsel, to honestly pursue a case that has merit and one suited for Class Action and based on the objective of seeking justice for ALL, and not merely an 'easy' Class Action Lawsuit case brought for revenge or a vehicle to secure huge attorney's fees, with justice for harmed citizens as a secondary objective.

- **Class Action Notice**: Postcard claim notices alerting Class Members to a Class Action Lawsuit, are difficult to understand and often require the reader to go online through the internet (or retain their own counsel at their expense), to obtain better informed detail information (if they know how to request online information as well as where to locate information of interest and interpret it).

- o The postcard claim notice needs to be much more user-friendly, easy to read and understand, and clearly advise the reader what the Class Action lawsuit is all about, how much is being demanded from the defendant, how much each Class Member will be entitled and full disclosure of how attorney fees are

---

[7] Unless the settlement is artificially pumped up to include attorney's fees as additional compensation instead of the resolve being based on what harm has been incurred by Class Members absent attorney fee claims.

[8] Justice for All, is in the context of the Nation's founding documents (U.S. Constitution, Bill of Rights, Declaration of Independence, etc.), asserting justice to prevail for both plaintiffs AND defendants.

being determined, what the total attorney fee could be and the average paycheck of how much each lawyer working on the case will receive.

- **Class Action Pre-Certification Notice or "CAPCN" letter:** A practical remedy to help deter unreasonable attorney fee demands, prior to a Court certifying a case as a Class Action lawsuit, the plaintiff and plaintiff's counsel in such case shall be obligated, to give defendant prior notice (the "CAPCN" letter) which provides clear and unambiguous information concerning:
    - o The legal rationale on what the Class Action complaint is all about (a 'show cause' testament);
    - o How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee;
    - o The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action Lawsuit;
    - o Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action Lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.

- **Opt-In Class Action Participation:** Class Action laws should be modified that require Class Members to affirmatively by written notice to the Court, to "opt-in", in order to participate in the Class Action Lawsuit. Most non-USA legal systems require an 'opt-in' standard in order to participate in a Class Action Lawsuit. The history of this opt-in standard illustrates that Class Action Lawsuit filings are few in number and not abused by plaintiff's counsel BUT more important, has NOT resulted in numerous lawsuits by non-Class members bringing their own action – which deters USA plaintiff's counsel opt-out justification arguments that an opt-in standard will cause an explosion of small cases...not true. An opt-in standard is a great tool to modulate the acceleration of the USA Class Action Lawsuit industry growth...driven much by attorney fee greed.

### Background:   Class Action Lawsuit Boot Camp

**Class Actions** (also known as a **Class-Action Lawsuit, Class Suit, or Representative Action**) are most common where the allegations usually involve at least 40 people who the same defendant has allegedly been injured in the same way. Instead of each damaged person bringing one's own lawsuit, the Class Action allows all the claims of all Class Members—whether they know they have been damaged or not—to be consolidated and resolved in a single proceeding through the efforts of **Representative Plaintiff(s)** and Representative Plaintiff's lawyers appointed as **Class Counsel**. The Class Action binds (by default) all Class Members (victims) of the Class (including being bound by the attorney fee arrangement agreed with the initial Representative Plaintiffs in a Class Action Lawsuit – a huge exception to the general rule where attorneys and their individual clients mutually agree to fee arrangements), unless a Class Member gives timely notice to opt-out and not be represented by such Class Action.   Depending on the Class Action details, any victim that opts-out, may or may not preserve its right to bring its own separate lawsuit (and individual attorney fee arrangement).

There is a familiar saying about "strength in numbers." For example, a single person who was misled into paying 50 cents too much for an illegally overpriced stick of deodorant doesn't have enough incentive to go to the trouble and expense of litigation just to recover that small amount of money.  Even-so, because the United States has had a culture of being litigious (billboard justice has become the norm), regardless of the merits or size of a claim (perhaps on occasion Caveat Emptor- buyer beware -  is the better and more honest remedy), U.S. centric attorneys are quick on the lawsuit panic button, because the fabric of U.S. justice promotes win-lose sledge hammer litigation mindedness accompanied with huge attorney fee awards  and not mature hand-shake win-win resolve. (Restitution is better placed in the Board Room and not the Court Room).

It's when many people—often tens of thousands, or more—are honestly harmed a similar way by the same problem, that a Class Action lawsuit *may* be worth bringing. (*May* in the sense every little wrong does not justify a remedy – as some assumption of risk and impact is the more honorable and logical thing to do – just like bringing up a child, until a boundary is known and not to be broken, punishing a first-time innocent offender does nothing to promote the development of a child into healthy adolescence).  Uniting all similarly affected parties into a plaintiff's Class (Class Members) has the effect of raising the stakes significantly for [corporate] defendants. That's part of the law of the jungle.  It's more likely that an honorable Class payoff will be worth fighting for, and companies that face the prospect of Class Action liability, have a strong incentive to settle a merit based claim and correct their behavior (even though many have acted innocently and without intent to do wrong) and implement better (learn from their unintentional mistakes) business practices, designed to prevent bad (whether intentional or unintentional) practices – which illustrates a merit based circumstance, and not one based on astute plaintiff's legal counsel crafting a claim (and sugar plum vision of huge attorney fee award) because of the uncertainty and speculative nature of the underlying law.

Even-so, small claim litigation revenge tactics should [must?] always be tempered (rejected?) with what justice is all about.  All small claim infractions do not justify seeking combat lawsuit justice, more times than not premised on seeking revenge – where in many cases, attorney's stir the

emotions pot of the 'victims' to use the litigation hammer and unjustifiably beat up the alleged wrongdoing but honest defendant. In whose best interest are Class Action Lawsuits brought? For alleged victims? Huge fee greedy attorneys? Correcting a real wrong? Correcting an illusionary wrong? Justice for ALL?

**Advantages[9] of a Class Action Lawsuit, includes**:

- **Efficiency**. Combining meritorious cases in a Class Action can increase the efficiency of the legal process and lower the costs of litigation. In cases with common questions of law and fact, aggregation of claims into a Class Action may avoid the necessity of repeating days of the same witnesses, exhibits and issues from trial to trial. That's the theoretical argument…but in reality, the likelihood of a plethora of case filings is highly unlikely.
- **Meaningful**. A Class Action may overcome the problem that meaningful small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A Class Action ensures that a defendant who engages in widespread harm (whether intentional or not) – but does so minimally against each individual plaintiff – must compensate all affected individuals for their injuries. But in all cases, is that justice? (Every little wrong may have a remedy but that remedy may be a mature assumption of risk attitude and get on with life and not revenge or a course of conduct to create a vehicle to justify an award of large attorney fees way out of proportion of victim awards).
- **Behaviour Incentive**. Class-Action cases may be brought to purposely and honorably change behaviour (whether by intentional or unintentional acts) of a class of which the defendant is a member.
- **Race To the Bank**. In "limited fund" cases (which means the defendant(s) do not have 'deep pockets' and not financially strong), a Class Action ensures that all plaintiffs (victims) receive some relief and that early filing plaintiffs (they win the race to the bank) do not raid the common fund (owned by the shallow pockets of the defendant) of all its assets before other plaintiffs may be compensated.
- **Confusion**. A Class Action avoids the situation where different court rulings could create incompatible standards of conduct for the defendant to follow.

**Disadvantage of a Class Action Lawsuit, includes:**

- **Caveat Emptor (Buyer Beware – Victim Liable for Certain Consequences)**. Class Action procedures are arguably inconsistent with due process mandates and unnecessarily promote litigation of otherwise small, trivial claims, and challenges what Justice is all about. A certain amount of risk is expected to be assumed by the public without recourse for someone else to pay in all circumstances. There needs to be a rational balance between seeking justice and seeking revenge or a vehicle to achieve an award of large attorney fees. What is honorable and what is greed?

---

[9] While these advantages in a theoretical sense make for good ideological arguments…and justification behind plaintiff's and their counsel promoting Class Action Lawsuit cases, the reality of life is that it is highly unlikely a plethora of individual cases will flood the courts with nominal claims, nor inconsistent rulings influence the cause of Justice.

- **Abuse**. The preamble to the (Federal) Class Action Fairness Act of 2005, implies that some Class Actions are abusive, harm Class Members with legitimate claims, especially where most defendants have tried to honestly act responsibly, and such abuse, adversely affecting interstate commerce (legitimate businesses stops providing useful consumer goods or services in fear of defending costly abusive Class Actions), and undermined public respect for the country's judicial system and what Justice for ALL means (the Court's permitting abusive Class Actions to be pursued – sometimes as a vehicle for Class Counsel to secure huge fees while the real victim's receive nominal value).

  o More times than not, Class Action Lawsuit defendants are reputable companies. These companies utilize their own legal and business experts who give advice and counseling and what to do to comply with relevant State and Federal laws. Rare is the reputable company that intentionally violates a law but in contrast, acts responsibly for law compliance. Even-so, many laws are written so broadly and many ambiguous as to what is right or wrong, and because of business complexity and broad interpretations of the law, stealthy plaintiff's litigation counsel are capable of crafting an argument (with or without merit) that often creates an illusionary environment of uncertainty (the 'fog index') whether or not a reputable company violated a law. An attorney's job is to represent the best interest of their client and earn a fee (legal representation is a vocation and profession) AND comply with professional standards of conduct – the ethics of law – Justice for ALL mandates. Because of law interpretation uncertainty and speculation, reputable companies will, without any admission of liability, often settle a case, to avoid unnecessary defense expenses, wasted time, and unwanted bad publicity – since rare is the opportunity for the defendant to honestly present the more honest defense facts, as the consuming public do not have the time or inclination to listen to such (that's human nature that plaintiff's counsel understand and use to their benefit). (Not unlike the quick message broadcast in roadside billboard lawyer advertisements, advising that the 'hammer' goes after truck drivers involved in accidents – automatic guilt and remedy – so much for due process. The ugly side of Justice).

- **Victims Are Secondary**. Class Members often receive little or nominal benefit from Class Actions.

  o Examples
    - Huge fees for the attorneys, while leaving Class Members with token coupons or other awards of little or nominal value;
    - Unjustified awards are made to certain plaintiffs at the expense of other Class Members (such as Representative Plaintiff's requesting priority payments for them having started the lawsuit or acting as Representative Plaintiffs); or such Representative Plaintiff's being paid a 'bounty' fee for having initiated a case that prompted the Class Action certification, and hence an 'entitlement' to a bounty that other Class Members, who merely missed out on being the initial claimant, is not entitled to such bounty. This

bounty is an unreasonable win-fall for such plaintiff's and contrary to ALL Class Members being treated the same;

- Confusing published and mailed Class Action postcard claim notices, that interfere with Class Members being able to fully understand and effectively exercise their rights;

- Laws require the Court's approval of all Class-Action settlements, and in most cases, Class Members are given a chance to opt-out (not participate) in Class Action settlements. Even so, though Class Members, despite being given opt-out post card claim notices, may be unaware of their right to opt-out because they did not receive the notice, did not read it or did not understand it.

  - The Class Action Fairness Act of 2005 attempts to address some of these concerns…

    o An independent expert may scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.

    o Since many Class Members do not use or spend their coupons (many are trashed or forgotten), the award of contingency attorney's fees includes the value of unused coupons which means such fees should be lowered in regard to unused coupons. Even so, coupons are not customarily part of Class Action lawsuit settlements.

- **Who Is the Victim?** Various studies of Class Actions in federal court found that many plaintiffs (victims) received only a tiny fraction of the money awarded while plaintiff lawyers frequently secured a huge, highly disparate share of the settlement than their clients – the real victims in the lawsuit. Many Class Action lawsuits can be viewed as merely a vehicle or conduit through which attorneys can secure huge fees and not an honest mechanism of seeking Justice for real victims.

State and Federal laws provide for the bringing of Class Action Lawsuits. Most of the time a Class Action lawsuit is brought in federal court and not a State court, because:

- The victims (plaintiffs) in the lawsuit are resident in many States (diversity of citizenship), consequently, federal court is viewed as being fairer to all plaintiff's instead of those residing in any one particular State;
- Federal Courts are more experienced with hearing Class Action Lawsuits;
- Class Action Fairness Act of 2005, is a federal law that makes it easier for Class Action Lawsuits to be heard in federal courts.

An individual lawsuit often starts out with one or more initial plaintiffs (victims), claiming some business or entity violated a Federal (or State) law. Coincident with that case, the underlying complaint indicates there are many more similarly and adversely affected victims.

Attorneys who accept such a 'small' case, recognizing there are many potential victims with similar claims, will petition a [federal] court to *certify* the case as a Class Action lawsuit (thereby turning a small case into a big case on which to base large attorney fees), naming the initial plaintiff's as 'Representative Plaintiff's' (or lead plaintiff's) in the Class Action claim and the attorneys requesting the Court (because of counsel's Class Action skills) to also name (certify) them as Class Counsel, thereby representing all victims. By such Representative Plaintiff winning the race to the courthouse and advancing a Class Action certification claim, that initial plaintiff filing and certification filings has automatically resulted in many rights of other potential Class Member plaintiff's being denied: such as (1) the right to select counsel and agree an attorney fee arrangement, (2) the right to pursue a claim or not, and (3) the right not to be forced into a lawsuit as a participant since State and Federal Class Action laws default to an automatic opt-in standard of participation.

After the Class Action Lawsuit is well advanced – sometimes many months or years (where Class Counsel has reached a tentative settlement agreement with defendants for both victim's damages and attorney's fees or resolved a case at trial), Class Member's for the first time become aware of the Class Action Lawsuit, by receiving a postcard claim notice in the mail:

- Advising them of the lawsuit (most not even aware they were a party to a lawsuit),
- Awareness that they are an identified Class Member victim,
- Guidance on where to obtain information (usually on-line through the internet), that includes guidance on what the suit is about and what remedy Class Members may be entitled and how to file a claim as well as some general reference to filing objections (regarding adequacy of the claim settlement or reasonableness of requested attorney fees).
- The notice will also cite unless the Class Member timely opts-out (elects not to participate in the Class Action lawsuit) of the suit, they will automatically be included, generally at no cost, and will be bound by any outcome of the suit or settlement.

When plaintiff's Class Counsel wins a Class Action lawsuit, or when they secure a pre-trial settlement with the defendant, legal fees and court costs are typically demanded in the award or Claim. This Total award or Claim is often referred to as the "Common Fund," from which legal fees, as well as recovery for Class Members damages, are paid, unless a separate claim is made for attorney's fees on top of total Claim to be awarded Class Members.

### Attorney's Fees

While the practice of law seeks Justice, it's still a business, and unless an attorney has agreed to work pro bono (free of charge, a public service), an attorney can expect [reasonable] compensation in exchange for their legal services.

Federal and State Courts in the United States in regard to attorney's fees, follow what is called the 'American Rule'. What this rule means is that each party (both plaintiffs and defendants) in a lawsuit are responsible for funding and paying their own attorney's fees, no matter who wins the case.

However, this Rule can be modified by either…

- **Contract**: Parties to a contract can agree under certain circumstances, one of the parties will pay the legal fees of the other in regard to a particular dispute, or
- **Statute**: If there is a law (a statute) that specifically provides as part of its remedies, award of attorney's fees to a successful party – normally the plaintiff (i.e., a defendant is ordered to pay plaintiff's attorney fees). Many times, such statute-based award of attorney's fees can be many times greater than the value of actual damages suffered by a successful plaintiff, or
- **Settlement**: Plaintiff's attorney fees could also be paid by defendant, as a result of the defendant settling a case and volunteers to include payment of plaintiff's attorney fees as part of the settlement. (Theoretically, attorney's fees agreed by defendant as part of the settlement, is a form of a contract whereby, the attorney's client acquiesces in that fee arrangement as if the attorney and their client negotiated such fee arrangement).

The details of how attorney fees are typically determined and calculated is a matter of negotiated contract between an attorney and their client, and can be:

- An agreed hourly rate billed by the attorney and paid by the client (a 'fixed fee' arrangement), or
- A contingency fee, where the attorney does not charge a separate fee, but will take a percentage (25% to 40% as examples) out of a successful award (hence the attorney fee is contingent on winning a case). If the attorney is not successful in winning a case (either by going to trial or securing a pre-trial settlement), then it will not receive a fee, or
- A combination of fixed fee and contingency fee.

In a Class Action Lawsuit, the Representative Plaintiff is the _**only**_ plaintiff who negotiates attorney fee arrangements for the Class Action. All other Class Members do not participate in such negotiations, and as a consequence, if they participate in the Class Action (and not opting out), then those Class Members have impliedly and automatically agreed with the attorney fee arrangement established between Class Counsel and Representative Plaintiffs. Typically, Representative Plaintiffs will agree with Class Counsel to a contingency fee (and not a separate out-of-pocket 'fixed fee' hourly rate – unless the claim is based on a statute that provides for award of attorney fees), which means Class Counsel will deduct its contingency fee from any Class Action successful award (either determined by trial or pre-trial settlement).

*Even so, any attorney fee arrangement must still be tested by the Court for reasonableness. This reasonableness test applies even with "clear sailing" agreements which are cases in which the defendant agrees to a noticeably large award of attorney fees and agrees not to object to that amount (perhaps a defendant quick dispute resolution tactic whereby Class Counsel are incentivized with a quick paycheck while the victims award may be lacking – which may challenge the ethics of representative counsel giving priority to representing the client's best interest and not preference to the attorney's paycheck).*

**Advantages of Contingency Fee Structure Includes:**

- No Up-front Fees. Helps give those lower-income clients better access to legal assistance and the court system.
- Incentive. If attorneys don't get paid unless client gets paid (win's its case), the attorney will be highly motivated to do everything in their power in order to get their client the best possible result. A performance-based agreement.
- No Costs for Losses. Lawyers are willing to risk not collecting a fee for the work they put into things.
- Contingency fees are helpful in cases where a client is short on funds and has an otherwise costly or complicated case.

**Disadvantages of Contingency Fee Structure Includes:**

- Encourages attorney to pursue non-merit case as nothing to lose but their time and foregoing other clients, and in a slow work environment, not much may be given up, or the pot of gold huge attorney fee incentive is worth the gamble to pursue a case[10].
- A contingency fee arrangement can and often does cost a client more than a regular hourly fee.
- Once the parties agree on the contingency fee, the client owes the agreed upon percentage no matter how long the case will take–whether it takes a year or a week or two hours. This is especially true in the rare 'clear-cut' cases that may only require a few phone calls and a couple of hours of work in order to settle.
- Incentivized contingent fee lawyers may settle too soon and for too little to acquire a quick paycheck, and the client suffers.
- Contingent fees are usually too high relative to the risks that attorneys bear in a particular case, especially where they control whether or not to take a case and have already run their own risk of winning assessment analysis not shared with the client. (Is this insider knowledge and not in the best interest of the client?)

Since Class Counsel represents all Class Members and not just the Representative Plaintiffs, the Court must approve any settlement award for all Class Members including attorney fees.

Approval is conditioned on the **_settlement_** amount being **_fair, reasonable and adequate_**, and **_attorney's fees_** are **_reasonable_**.

Whether a Class Action settlement agreement is fair, reasonable and adequate, has been a bone of contention for companies who have pushed for **tort reform**, particularly as it concerns awards of huge attorney fees in Class Action litigation. These companies often complain about the huge awards of attorney fees that often change hands in Class Action settlements the amount of which are often extremely greater than actual damages claimed by plaintiffs, and they argue that **damage caps** and limits on attorney fees are necessary for the sake of justice, reasonableness and fairness.

---

[10] While there is a risk in a contingency fee structured case of losing and not receiving a fee, attorneys who accept contingency cases are normally skilled at assessing the risk of recovery, and consequently are comfortable when they take on such cases that they more than likely will receive a fee. Not unlike the contingency fee-based billboard litigation hammer attorney seeking justice from truck driver accident bad guy defendants (and their insurers). Such sound bit messaging masks over the more honest concepts of justice, due process, unintentional accident, factual circumstances and a few other miscellaneous tid-bits that populist minded ears don't have time to listen to.

## Attorney Fees Reasonableness Test

Court's look to a variety of resources to assist them in determining if requested attorney's fees in a Class Action lawsuit are reasonable. If the court finds that the attorney fee agreement is unreasonable or unfair, the court may step in using its discretionary powers and either invalidate the agreement or amend it to make it reasonable.

Four significant resources used by the Court to test for reasonableness include:

1. American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees (many State Bar Association Rules of Professional Conduct are patterned after the ABA Model, and an attorney is duty bound to adhere to the Rules of Conduct else suffer consequences which could include disbarment from practicing law);
    o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
    o Traditional fee analysis to determine reasonableness takes into account...
        ▪ the time and labor required,
        ▪ the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
        ▪ the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
        ▪ the fee customarily charged in the locality for similar legal services;
        ▪ the amount involved and the results obtained;
        ▪ the time limitations imposed by the client or by the circumstances;
        ▪ the nature and length of the professional relationship with the client;
        ▪ the experience, reputation, and ability of the lawyer or lawyers performing the services; and
        ▪ whether the fee is fixed or contingent
    o The traditional approach to proving attorneys' fees is for an attorney—sometimes the same attorney representing the party seeking fees—to testify as an expert on what are reasonable fees for the case (a little self-serving but them's the rules).

2. Federal Rules of Civil Procedure, Class Action Rule 23;
    o The Court '***may***' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.
3. Class Action Fairness Act of 2005;
    o Class Action settlements [damages and attorney's fees] are subject to Court approval,
    o Reports are to be filed with the House of representatives and the Senate containing
        ▪ Recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit;
        ▪ Recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action

settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation;

- Recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement.

4. Court rulings, in particular attorney fee reasonableness test criteria described in

   o  Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.

   o  Determining reasonable fees under the **lodestar method** is a two-step process.

      - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.

      - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.

   o  Under the lodestar method, the most heavily weighted multipliers are the time and labor required.

   o  Reasonableness takes into account the factors used by the traditional fee determination.

   o  Lodestar, presumably refers to a number that provides a guiding point-or lodestar- in the determination of an appropriate attorney fee award.

What is evident from assessing the resources used to determine what is or is not a reasonable attorney fee, is fraught with many subjective elements and not much independent deterministic[11] tests.

Class Counsel submit copious documents defending its request for attorney's fees. The extent of this documentation can be voluminous and taxes the limited resources and busy dockets Courts have to study in detail all documents, consequently a challenged circumstance to fully assess all allegations and supporting documents. At times the sheer weight of filed documents can be a substitute for believed validity and justification. Elegant simplicity is more beneficial and honorable than intellectual complexity. The observation is that better guidance is needed in resolving what is or is not reasonable in regard to attorney's fees and perhaps time for updated legislation to provide clarity and reduce the fog.

Consequently because of this absence of certainty, or at least a more determined method of attorney fee computation in Class Action lawsuits, astute counsel is free to argue for just about any fee they wish and paint it with broad strokes of reasonableness and justification whether in fact or

---

[11] As in physics, deterministic refers to a cause-and-effect result which means if the same input to a situation is used again, then the same result will occur. A consistent and expected result. In contrast, a probabilistic result means if the same input is used again in a situation the outcome can be different. An inconsistent and uncertain result such as a 50% chance of such and such happening. Chaos is the extreme of the two which refers to a circumstance that is totally unpredictable regardless of the input.

illusionary. Just how long is a piece of string? Where is justice in all this, other than the rubber stamp embossed with '**APPROVED**'?

## Use, Misuse and Abuse – Standards of Proof and Other Reforms

As in most things in life, we humans can use a tool or seek justice, in the spirit of what was honestly intended – a proper use, or take a less honest path of misusing or abusing the circumstance.

The more honest argument of the extent the Class Action industry and the participants in that syndicate have often wandered from the righteous path of intended honorable use to less honest misuse or abuse paths are illustrated in the following examples…

**Certification Reform**. Original or Representative Plaintiffs seeking to certify a case as a Class Action lawsuit under Federal Rules of Civil Procedure, Rule 23 must plead and prove: (1) an adequate class definition (precise and unambiguous, identity of class members is reasonably determined excluding remote and unlikely victims) (2) ascertainability (fairly easy process to identify class members), (3) numerosity (a showing that joining and naming all Class Members in a common lawsuit is impractical) , (4) commonality (questions of common fact and law), (5) typicality (claims of the Representative Plaintiffs are typical of the claims of Class Members), (6) adequacy (Representative Plaintiffs will fairly and adequately protect the interests of the class – no conflict of interests) and (7) at least one of the requirements in Rule 23(b), namely: (a) separate adjudications will create a risk of decisions that are inconsistent with or dispositive of other class members' claims, (b) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (c) common questions predominate and a class action is superior to individual actions.

Not unusual, expert testimony (often from compensated academia professors – hired guns, invoking often complex and little understood statistical analyses and arguments of why the ingredients exist for justifying a case as a Class Action lawsuit – who are also governed by use, misuse and abuse standards of conduct) are used by attorney's as a resource to establish enough 'doubt' in the mind of the judiciary, that the easy course is to certify a case as a Class Action lawsuit. The adage there are liars, damn liars and statisticians, is still in vogue. Given enough complex equations, PowerPoint slides and laser pointers, an expert can argue just about any side of a case and sound pretty convincing – especially when it's paid for testimony and the basis of a decision is foggy, not deterministic and dependent on subjective feelings. And to think all of this insightful assessment of class certification takes place in a few minutes or a few hours at a court room hearing (the court docket of which is always busy and a court's objective to move things along – justice to is dependent on the sweep of a ticking clock) in which participants in that hearing claim some sort of justified immediate understanding and acceptance of what the truth is and make an on the spot decision – yay or nay to certification. It takes a university student often many hours if not days just to solve one calculus or differential equation math problem – not including the study and prep time…yet the complexity of class action certification decisions happens in the twinkle or an eye.

The Representative Plaintiffs bear the burden of proving that the prerequisites to class certification have been met by a *preponderance of the evidence*. Theoretically this standard is supposed to be based on evidence and not speculation.

A certification decision can be challenged, and an appeal made to a higher court. An appeal may be accepted when: (1) the decision is questionable and the certification order represents the death knell for a defendant who will be compelled to settle even if the plaintiff's claims are not meritorious, (2) the decision raises an unsettled, fundamental and generally applicable issue of law that will likely evade end-of-the-case review, or (3) the decision is manifestly erroneous.

Reform is needed in the law or Rules, to cause the courts to be more pragmatic and reflective in a class certification decision. Some potential reforms might include:

- A separate Commission is relevant, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)
  - Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct;
- A separate and specially trained or class action certification expert judge or magistrate independent from the court a case is filed in, rules on a certification argument.
- If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter. A statutory form of attorney fee but paid by the losing plaintiff.

**Standards of Proof Reform**. The standard of proof in a court, listed in order of the degree of persuasive arguments (highest and most intense listed first) include:

- Beyond a reasonable doubt in criminal law.
- Clear and convincing evidence
  - Present evidence that leaves the listener with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.
- Preponderance of the evidence in most civil cases.
  - Prove that something is more likely than not.
- Probable cause in the acquisition of a warrant or arrest proceeding.
- Reasonable belief as part of establishing probable cause.
- Reasonable suspicion in cases involving police stop and searches.
- Some credible evidence in cases necessitating immediate intervention, like child protective services disputes.
- Some evidence in cases involving inmate discipline.
- Substantial evidence in many appellate cases.
  - Degree of relevant evidence which a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.

Class Action certification and other proofs in a Class Action lawsuit are governed by the Preponderance of the Evidence standard of proof, as is most civil lawsuits. Because of the unique nature of a Class Action lawsuit, and the heightened unique exposure to claims of a defendant to

many plaintiffs and defendant's expanded defense burdens, the standard of proof in a Class Action lawsuit should be based on Clear and Convincing Evidence. Such a standard will go a long way towards self-governing promotion of the honesty of a case in regard to hired gun expert Class Certification complex testimony and Class Action attorney specialists promoting the Class Action industry. Justice can still prevail even with a Clear and Convincing Evidence standard of proof, but the burden shifts to the plaintiff to present a more honest case.

**Self-Serving Reform.** Class Counsel representing a Class Action lawsuit, is obligated to demonstrate Class Member (victim) remedies are tested to a standard of being **fair, reasonable and adequate** and any claim for attorney's fees be tested to a standard of **reasonableness**.

In many cases Class Counsel unnecessarily strains the honesty standard of argument, that the case is shoe-horned to fit within the standards of reasonableness, fairness or adequacy. The more honest arguments include:

- Argument: Class Members have not objected to the size of the remedy or attorney's fees so therefore they must by default be reasonable.
  - Reform: Most Class Members only became aware they were entitled to a claim when they received postcard notice from Class Counsel the claim exists, and typically the claim amount is so small, the Class Member may or may not file a claim (assuming they spend time to study the notice), and spend no time challenging the suit given the small nature of the event. Hence arguing the absence of objection as part of the rationale of a claim and attorney fee being reasonable is a rather salty circular self-serving argument, and one hopefully a court will disregard (ignore?).
- Argument: Attorney's fee claims are comparable to other Class Action lawsuit awards, citing common percentage take regarding contingency fee awarded attorney's fee in other cases.
  - Reform: This one-size-fits-all attorney fee reasonableness standard is contrary to the obligation of attorneys to determine their fee on the merits and effort involved in each individual case. Reasonable attorney's fee justification is not like earning a fixed real estate agent sales commission (the 6% 'standard' shared between buyer and seller agents). Then again, justifying a fee based on other case 'standards', is another admission of the observation that Class Action lawsuits have become a commoditized industry and vehicle to rack up huge attorney's fees and not a forum for justice.
- Argument: Expert testimony (often university professor experts – hired guns) demonstrate with subjective little understood complex statistical stealth, that the basis of a case is sounded as evidence and proof of the bad conduct of a defendant.
  - Reform: An expert arguing in a security fraud case for example, that defendant's alleged bad conduct caused an inappropriate one penny swing in a defendant's stock price…is a pretty far-fetched argument to make, given stock price swings happen on a daily basis and to pin-point specific conduct of a defendant why the swing happened, especially when a nominal amount, is often a bridge to far…and all the more reason to have a Clear and Convincing Evidence standard of proof.
- Argument: Class Counsel base their attorney fee on a contingency basis, a percentage of the Claim award to Class Members, citing Class Action 'victims' are seeking justice and

Class Counsel graciously accepting a case to advance that justice and willing to do so on a contingency basis relieving the Class Members of bearing the legal costs of a case, and usually such fees are paid by a losing defendant if an underlying statute on which a case is brought provides for attorney fees as part of the remedy.

- o Reform: How often does Class Counsel seek to orchestrate a case as a Class Action lawsuit, driven by the objective of increasing the size of a Claim because of Class Member participation, and the size of the percentage take from a large Class Action Claim as attorney's fees, is hugely more valuable than a percentage take from an individual plaintiff claim? Thus, an observation that contingency attorney's fees should not be permitted in Class Action lawsuits, leaving the attorney to justify their fee based on reasonableness standard tests associated with time and hourly rates.

- Argument: Class Counsel justify the merits of a Class Action case (either as certification as a Class Action or violation of a law) and their right to attorney's fees, based on a plethora of cited cases, mountains of self-serving justification documentation and other resources heaped upon a court's already busy docket. The weight of the argument is based on the paper weight of the documents filed and not on the quality and weight of evidence of the argument.

- o Reform: Similar to discovery proceedings, perhaps attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.

## Justice and Class Action Lawsuits

The Class Action lawsuit industry seems to have wrinkled the path of what justice (or injustice) is all about.

The Declaration of Independence, the Constitution of the United States of America, and the Bill of Rights, the "founding documents" of the nation, speak directly to the ideals of freedom from oppression, equality, and justice *for all*. Justice is fairness and equal treatment and applies to both the plaintiff AND the defendant since that simple 'all' word is rather encompassing.

Class Action Lawsuits seem to treat defendants as tyrants and oppressors of the public. That is not justice for *all*.

What is just remains a matter for debate. Observing the same outcome of a situation, one person may say justice was done. Another may declare the outcome an injustice and great wrong. Is the porridge too hot or just, right? Is the attorney fee too huge or just, right?

Justice may be viewed as a subjective process of assessing the fairness of relations between individuals and groups of people, such as...

- Getting what one deserves.

- Equitable sharing of civic burdens.
  - We all get car door ding marks, and we all give them. While such is normally an accidental 'wrong', to seek a $50 door ding damage repair bill and charge a $10,000 attorney fee is not what justice is *all* about. Revenge maybe. Assumption of a certain amount of risk is a constant balancing act in anything us humans do. (Maybe the door ding issue can be resolved by car makers installing soft bumper guards on door edges or wider parking lanes.)
- Individual virtue and ethical conduct (especially attorney's whose law license demands they honor Bar Association ethics and code of professional conduct and act responsibly and always seek justice for *all* and not revenge).

Is it unreasonable/unethical for plaintiff's attorney to pursue a Class Action lawsuit, knowing their fee will be many many magnitudes greater than any nominal recovery of victims, where such huge fee is paid to the attorney instead of compensation to the victims? Is that justice?

Are huge attorney fee awards seen as a substitute for punitive ('punishment') damages above and beyond actual damages, of a Class Action lawsuit defendant? Justice would suppose punishment is by way of compensation paid to victims, and where applicable, award of punitive damages (also paid to victims above and beyond actual damages) as a punishment for unacceptable intentional egregious acts of defendants. Attorney fees are in relation to reasonable honest legal services provided on behalf of the plaintiff/victims and NOT a means of punitive punishment of defendants.

Who does justice define as the victim? The Class Member victims? Plaintiff's lawyers as victims? Defendant victims being exposed to paying huge legal fees and lawyers misusing or abusing what justice is *all* about?

It's time for a change.

## Bibliography

Baker, Lynn A., Perino, Michael A., Silver, Charles, "Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions", Columbia Law Review, vol. 115, no. 6, (2015).

Boatright, Jason, "The History, Meaning, and Use of the Words Justice and Judge", *St. Mary's Law Journal*, vol. 49, no. 4, Article 1, 727 (2018).

Carter, Jimmy, "Law Day Address at the University of Georgia in Athens, Georgia", *The American Presidency Project*, https://www.presidency,ucsb.edu, (1974).

"Class Action", Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/we/class_action, Dec 2022.

"Class Action", *Wikipedia*, December 22, 2022

"Class Action Fairness Act of 2005, *28 USC, Public Law 109-2*, Feb 18, 2005.

"Class Action Fairness Act of 2005, Wikipedia, December 22, 2022.

Connolly, Neil, "Extreme Couponing: Reforming the Method of Calculating Attorney's Fees in Class Action Coupon Settlements", *102 Iowa Law Review 1335* (2017)

Douglas, Frederick, "What, To The Slave, Is the Fourth of July (1852)", *Blackpast*, (2007)

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: 1993-2008", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2010).

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: Empirical Study", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2004).

"Federal Rules of Civil Procedure", *Title IV. Parties, Rule 23, Class Actions.*

"Fees and Expenses", American Bar Association, https://www.americanbar.org/

groups/legal_services/milvets/aba_home_front/information_center/working_with_lawyer

/fees_and_expenses/, Dec. 2022.

Frankel, Alison, "In biggest cases, class action lawyers are low-balling fee requests – and that's a

good thing", *Reuters*, November 2, 2016.

Gentry, Caroline H., "*A Primer on Class Certification Under Federal Rule 23*", Corporate

Counsel CLE Seminar, Rancho Mirage/CA (https://www.classactiondeclassified.com/wp-

content/uploads/sites/26/2017/08/a_primer_class_certification_under_federal_rule.pdf,

2017)

Hartmann, Michelle, Miller, Ralph I., Zambrano, Angela C.. "Attorneys' Fees", *SMU Law

Review*, vol. 57, Issue 3 Annual Survey of Texas Law, Article 4, 2004.

Ibrahim, Melissa, "Bills, Bills, Bills: The Effect of a Rejected Settlement on Attorney's Fees Under

the Civil Rights Attorney's Fees Award Act of 1976", *Cardozo Law Review*, vol. 36, p.

1987, 1988.

Johnson, Charles T. et al v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020).

King, Martin Luther Jr., "Letter from Birmingham Jail", *Atlantic Monthly*, vol. 212, no. 2, p. 78

(1963).

Klonoff, Robert H., "Why Most Nations Do Not Have U.S.-Style Class Actions", Bloomberg

Law, https://news.bloomberglaw.com/class-action/why-most-nations-do-not-have-us-

style-class-actions.

Lender, David J. et al, "Class Action Fairness Act of 2005 (DAFA): Overview", *Practical Law Company.com*, (2013).

"Opinion #17. Negotiation of Attorney's Fees in Class Actions", *Professional Ethics Commission, Board of Overseers of the Bar*, (January 15, 1981).

Ratner, Morris, "Civil Procedure: Class Action Fee and Cost Awards", *The Judges Book*, vol. 1, art. 9, http://repository.uchastings.edu/judgesbook (2017).

"Rule 1.5 Fees- Comment", *American Bar Association Model Rules of Professional Conduct, Client-Lawyer Relationship* (2018).

Shepherd, Joanna, "An Empirical Survey of No-Injury Class Actions", Emory University School of Law, Legal Research Paper Series, Research Paper No. 16-402, http://ssrn.com/abstract=2726905 (2016).

Sohoni, Mila, "The Idea of "Too Much Law", *Fordham Law Review*, vol. 80, Issue 4, Article 3, 2012.

Tribe, Lawrence H., "Too Much Law, Too Little Justice: An Argument for Delegalizing America", The Atlantic, July 1979.

"What Is Justice", *School of Criminal Justice, University of Albany*, Module 1, https://www.albany.edu/justiceinstitute/33471.php, (2022).

## Appendix A –

### Class Action Lawsuits – Huge Attorney Fee Illustrations

#### Example Class Action Case 1 (https://www.nielsensecuritiessettlement.com/)

In Re Nielsen Holdings PLC Securities Litigation
Civil Action No. 1:18-cv-07143-JMF
United States District Court
Southern District of New York

| | | |
|---|---|---|
| Proposed Settlement Fund | $73,000,000 | ($0.19 per share) |
| Proposed Contingency Attorney's Fees (25%) | $18,250,000 | ($0.05 per share) |
| Plus Attorney Expenses | $ 1,110,000 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 17,206 | |
| Total Class Member (Victims) | 384,000,000 ($73,000,000/$0.19) | |
| Attorney Hourly Rate Disclosure Ranges | | |
|     Paralegals | $315 to $505 | |
|     Associate Attorneys | $895 to $2,017 | |
|     Of Counsel | $975 to $1,560 | |
|     Partners | $1,250 to $1,983 | |
| | | |
| Average Attorney hourly rate | $1,060 | ($18,250,000/17,206) |
| Attorney Fee Per Lawyer (assuming 82 lawyers) | $222,561 | ($18,250,000/82) |
| Range of Victim Award (depends on shares owned) | | |
|     500 shares | $70 | (500*$0.14) |
|     10,000 shares | $1,400 | (10,000*$0.14) |
|     100,000 shares | $14,500 | (100,000*0.14) |

#### Example Class Action Case 2 (https://www.t-mobilesettlement.com/

In Re T-Mobile Customer Data
Security Breach Litigation
Civil Action No. 4:21-md-03019-BCW
United States District Court
Western District of Missouri

| | | |
|---|---|---|
| Proposed Settlement Fund | $350,000,000 | |
| Plus Future Data Security Upgrades | $150,000,000 | |
| Proposed Contingency Attorney's Fees (22.5%) | $78,750,000 | (reduced from 30%) |
| Plus Attorney Expenses | $ 147,982 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 8,225 | |
| Total Class Member (Victims) | 79,150,000 | |
| Attorney Hourly Rate Disclosure Ranges | $270 to $1275 | |

| | | |
|---|---|---|
| Average Attorney hourly rate | $9,574 | ($78,750,000/8,225) |
| Attorney Fee Per Lawyer (assuming 100 lawyers) | $787,500 | ($78,750,000/100) |
| Range of Victim Award (depends on shares owned) | $3.42 | ($271,250,000/79,150,000) |

## Example Class Action Case 3 (https://www.baggagefeeclassaction.com/)

Cleary v. American Airlines Inc.
Baggage Claim
Civil Action No. 4:21-cv-00184-O
United States District Court
Northern District of Texas

| | | |
|---|---|---|
| Proposed Settlement Fund | $7,500,000 (min.) | |
| Proposed Fixed Fee Attorney's Fees | $2,850,000 (27.5% total award) | |
| Attorney Expenses | $1,142,945 | |
| Claimed Attorney Hours | 3,641 | |
| Total Class Member (Victims) | 588,654 | |
| Average Attorney hourly rate | $782 | ($2,850,000/3,641) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $285,000 | ($2,850,000/10) |
| Victim Award | $12.74 | ($7,500,000/588,654) |

## Example Class Action Case 4 (https://www.OracleSecuritiesLitigation.com)

In re Oracle Corporation Securities Litigation
Securities Fraud
Civil Action No. 18-cv-04844-BLF
United States District Court
Northern District of California, San Jose Division

| | | |
|---|---|---|
| Proposed Settlement Fund | $17,500,000 | |
| Proposed Fixed Fee Attorney's Fees | $3,500,000 (20% total award) | |
| Attorney Expenses | $900,000 | |
| Claimed Attorney Hours | 17,900 | |
| Total Class Member (Victims) | 979,000 | |
| Average Attorney hourly rate | $195 | ($3,500,000/17,900) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $350,000 | ($3,500,000/10) |
| Victim Award | $0.01/share (~2.7 bn shares) | |
| | (~1800 shares per shareholder avg) | |
| | $18 avg share of claim | |

A self-serving assertion: The small number of objections in comparison to the size of the Class supports a finding that the Settlement is fair, reasonable, and adequate. The reason folks did not opt-out have nothing to do with a fair, reasonable and adequacy test. Case cites false statements illegally inflated Oracles stock value – then trading between $43 and $47. Jan 2023 trade value is over $85, and a peak end of 2022 at over $100. The casual observer would cite business as usual and a good year for Oracle investors…justifying a 1 cent swing in stock value because of excessive puffing – craftily disguised as security fraud (with a lot of academic experts pontificating on their crystal ball insightfulness and naval gazing) is poppycock. Liars, damn liars and statisticians come to mind.

## Appendix B

### Example Form Objection to Attorney's Fees

**IN THE UNITED STATES DISTRICT COURT FOR THE**
_____ **DISTRICT OF** _____ (*State*)
_____ **DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | )  )  )  Case No. _____ |

_____

## OBJECTION[12] TO PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT

1. Objection Applicant, _____ (*your name*) (pro se[13]), a Settlement Class Member (Class Member ID[14] _____, claim number[15] _____) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, has not objected to any class action settlement within the past three years, and request for modification and downward adjustment of any pending or submitted Attorney Fee and Expense Application (herein the 'Application') because such Application is unreasonable, unfair and not in the best interest of the Settlement Class Members.

   *[Cross through or delete Option 1 or Option 2 that does not apply]*
2. *Option (1) Since as of the filing of this Objection, Lead Counsel has not filed in https://www[16]._____, copy of the Application, nor sent a copy to Objection Applicant, this Objection is based on those documents of record in the cited website so filed as of the date of this Objection.*

---

[12] Read the post card claim notice and follow any specific instructions regarding filing of an objection, such as timing, address to send the Objection to, and any conditions. This Appendix B form contains typical conditions but may not be complete.

[13] Pro se means you are representing yourself.

[14] Class member ID is usually cited in the post card claim notice received in the mail concerning the Class Action

[15] If you have filed a claim after receiving the post card claim notice, you usually will be issued a claim number.

[16] The Class Action lawsuit will be found on the internet which will allow you to have access to all case documents and other information about the case. Insert the internet website. Often times an Objection is filed before all relevant documents are filed online. Final attorney fee applications are often filed late.

*Option (2) This Objection is based on those documents of record in https://www_____, as of the date of this Objection.*

## OBJECTION

3.    Rationale behind this Objection, includes...

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the Application, I do not agree with such approval, and hereby submit this Objection.

3.3  The Application is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

3.3.1   American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o   Traditional fee analysis to determine reasonableness takes into account...
  - the time and labor required,
  - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - the fee customarily charged in the locality for similar legal services;
  - the amount involved and the results obtained;
  - the time limitations imposed by the client or by the circumstances;
  - the nature and length of the professional relationship with the client;
  - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - whether the fee is fixed or contingent

3.3.2   Federal Rules of Civil Procedure, Class Action Rule 23;
- o   The Court '*may*' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3.3.3   Class Action Fairness Act of 2005;
- o   Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account...
  - o   Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the

litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3.3.4 Court rulings, in particular attorney fee reasonableness test criteria described in

- o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
- o Determining reasonable fees under the **lodestar method** is a two-step process.
  - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
  - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a **reasonable** fee in the case.
  - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
  - Reasonableness takes into account the factors used by the traditional fee *determination.*

4. The Court is requested to invoke its discretionary powers to modify and reduce the Attorney Fee Expense Application to make it reasonable.

5. The economics of the requested Application indicate:

5.1 The proposed Settlement Common Fund to all Class Members is $_____. (Total indicated settlement to be paid to victims)

5.2 Total Class Members are _____ (total number of victims)

5.3 Individual Class Member award are estimated to be $_____ (cite how much each victim may receive or at least a range)

5.4 Total Attorney Fees and Expenses applied for are $_____

5.5 The total legal hours expended on the case are _____

5.6 The average hourly rate charged for legal services is $_____ (paragraph 5.4 divided by paragraph 5.5)

5.7 The average paycheck for each attorney working on the case is $_____

(paragraph 5.4 divided by the total number of attorneys estimated to be working on the case, small cases may be up to 5, big cases may be 75 or more)

5.8 The disparity between the amount of recovery to each Class Member compared to the paycheck each attorney could receive suggests an exorbitant and unreasonable basis on which to base attorney fees.

6. Any reduction in the Application is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

7. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $_____[insert amount of claimed fee] attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

8 Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.

    o  While it is instructive to take into account attorney work claims of:
        o  Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

9. [Add any other information that is unique to the case that illustrates why you think the requested attorney fee and expense application is unreasonable] At your discretion you might also include a copy of the above paper that might give the Court some additional information to think about].


Respectfully submitted.

This _____ day of _____, 20__.


_____
[name, printed and sign document]
Settlement Class Member


_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

**CERTIFICATE OF SERVICE**

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT,** WERE mailed by first class prepaid postage or by email, to the following recipients:

### IN THE UNITED STATES DISTRICT COURT FOR THE
### _____DISTRICT OF _____
### _____ DIVISION

Clerk of the Court
[address/email]


CLASS COUNSEL
[name]
[address/email]


Defendant
[address/email]


I, _____, further certify I am a Settlement Class Member.


_____
[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

**Appendix C**

**Example Op-Out Form**

**IN THE UNITED STATES DISTRICT COURT FOR THE
_____ DISTRICT OF _____ (*State*)
_____ DIVISION**

IN RE [NAME USED IN
COURT DOCUMENTS]

)
)

Case No. _____

_____

**ELECTION TO OPT-OUT OF THE CAPTIONED CLASS ACTION LAWSUIT**

1.    Opt-out Applicant, _____ (*your name*) (pro se[17]), a Settlement Class Member (Class Member ID[18] _____ ) submits this **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, and without prejudice, reserve any and all of my rights to pursue a separate claim**

Respectfully submitted.

This _____ day of _____, 20__.

_____
*[name, printed and sign document]*
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

**CERTIFICATE OF SERVICE**

_____

[17] Pro se means you are representing yourself in the objection.
[18] Class member ID is usually cited in the post card notice you received about the Class Action

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023            Page **35** of **42**

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, was** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
_____**DISTRICT OF** _____
_____ **DIVISION**
Clerk of the Court
[address/email]

**CLASS COUNSEL**
[name]
[address/email]

Defendant
[address/email]

I, _____, further certify I am a Settlement Class Member.

_____

[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

*[This is a general form. The postcard notice received about the Class Action lawsuit may contain other information of what to do to opt-out of the case. Please refer to that detail as required].*

## Appendix D

### Class Action Lawsuits – Attorney Fee Legislation

*[Date]*

*To:*

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

*From*

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re: Class Action Lawsuit – Attorney Fee Legislation*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and Attorney Fee Legislation.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding huge attorney's fees granted in many Class Action cases and what action plans can be advanced to provide some control over run-away fees.*

*While the judicial Court system has oversight to assess the reasonableness of such fees, there seems to be a consistent 'one-size-fits-all' demeanor advanced when such fees are defended by Class Counsel. This demeanor is contrary to the reasoning that one-size-does-not-fit- all where each case and its fee structure are to be assessed on their own merits and tested against a standard of fairness, reasonableness and adequacy. Most Class Counsel argue that their claimed attorney's fees (a self-serving argument) are consistent in the formula used to determine fees among all other cases.*

*The attached paper and my own experience suggest legislation may well be required to provide the necessary control over excessive fee awards.*

*I am writing to seek your counseling and perhaps leadership in advancing relevant legislation that can address the run-away legal fee paycheck issues and problems outlined in the attached paper.*

*While I don't have the answers, I do have some ideas.*

### Contingency Fee Prohibition

*Perhaps, similar to prohibition of the use of contingency legal fees (where the fee is based on the attorney taking a percentage of the case outcome) in regard to domestic relation and criminal cases, Class Action lawsuit may well be added to the prohibited list, thereby leaving attorneys to argue and defend a fee based on 'fixed fee' reasonable hours and reasonable billing rate arguments.*

*As you know, the legal profession has almost unanimously determined for years that allowing attorneys to base their contingency fee on the outcome of a divorce or child custody case would create a risk of the attorney having a financial interest in the outcome as well as being against public policy and therefor unreasonable by default. This could potentially lead unscrupulous attorneys to take actions that could be against the interests of children, or it could encourage attorneys to do things to make sure clients actually divorce. On the contrary, a skilled and ethical divorce attorney should always consider reconciliation, resolution, and fairness to be part of the goal and avoidance of the destruction of family relationships. There can be no financial interest in seeing to it that clients get divorced.*

*Likewise, contingency fees are prohibited in regard to criminal cases also based on public policy reasons.*

*Shouldn't Class Action counsel likewise ethically consider resolution and fairness to be the goal of such actions.*

### Reasonableness Tests Codification

*As outlined in the attached paper, the groundwork for attorney fee codification has been laid out in the various resources currently consulted to assess attorney fee reasonableness.*

*Those resources include: American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees; Federal Rules of Civil Procedure, Class Action Rule 23; Class Action Fairness Act of 2005; court rulings, in particular attorney fee reasonableness test criteria described in Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.*

*Should legislation be passed to codify the various methods used to test for reasonableness of attorney's fees, thereby removing much of the subjective uncertainty and differences without a distinction confusion?*

*Should a codified formula (which may also include a cap) be determined that provides guidance what is considered a reasonable attorney fee, with an opportunity for attorneys to challenge the formula if they can demonstrate why their fee structure is the better reasonable structure?*

## Independent Committee

Currently, attorney fee reasonableness tests are assessed by other attorneys. I have included the Court system in this testing network since most jurists are attorneys. Should there be some form of independent committee, commission or panel used to test the reasonableness of attorney fees, the participants of which also includes non-lawyers? Professions that come to mind that might be part of such panel includes Insurance (risk management), Accountants, Professional Engineers, Military Officer, Police Officer, Day Care Management, Clergy, Local Union Leadership.

An independent committee, commission or panel is not unlike the independent expert appointed under the Class Action Fairness Act of 2005, who is instructed to scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.

Class Action Counsel might argue that the complexity of defending why legal fees are reasonable, is not readily understood by the lay person. Quite the contrary, if attorneys cannot argue their defense of why their fee is reasonable in plain understood English, then the fog index is in full force...and that corrupts the concept that a little bit of sunshine is a great disinfectant.

## Class Action Certification Reform

A separate Class Action certification Commission should be created, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)

Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue a highly questionable course of conduct.

If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter.

## Plaintiff Filing Reform

Similar to discovery proceedings, Class Counsel attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.

## *Standard of Proof Reform*

*The standard of proof used to either certify a case as a Class Action or evidence presented in a trial of the matter, should be based on Clear and Convincing Evidence and not Preponderance of the Evidence. A higher standard of proof makes sense, since such standard will have a self-governing incentive for plaintiff's and Class Counsel to advance an honest case as well as promoting the nation's founding documents objective of Justice for ALL, especially since a defendant is confronted with the unique and unusual aspects defending a Class Action claim.*

## *Pre-Certification Notice*

*The honest merits of a lawsuit certified as a Class Action, should first be tested, that prior to such certification, Plaintiff's should first submit a mandatory notice letter (the Class Action Pre-Certification Notice Letter, or CAPCN) to the defendant giving them clear and unambiguous information concerning: (i) The legal rationale on what the Class Action complaint is all about; (ii) How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee; and (iii) The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action lawsuit;*

*Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

**Appendix E**

**Class Action Lawsuit Postcard Claim Form**

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re: Class Action Lawsuit – Postcard Claim Form*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and the content of postcard claim forms used to notify potential Class Members of their claim rights.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding user friendly notification and information contained in postcard claim forms and what action plans can be advanced to provide improved user-friendly better-informed awareness of important issues associated with such forms.*

*I believe legislation is needed to simplify, make easier to understand, postcard Class Action lawsuit claim notices, designed to clearly and conspicuously describe:*

*(1) what potential claim is being sought,*

*(2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled,*

*(3) how the size of the Class Action Claim and attorney's fees are effected if Class Members opt-out of participating in the lawsuit and*

*(4) how attorney fees and expenses are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer and average hourly rate being charged.*

*Such postcard claim form legislation could be an amendment to the Class Action Fairness Act of 2005.*

*It is not uncommon when a Class Member receives a postcard claim form in the mail, short of hiring their own attorney, they need to have a reasonable understanding of how to navigate through online internet systems in order to obtain additional relevant information. The internet navigation process as well as interpreting much of the 'legal mumbo gumbo' cited in important documents, gets lost in translation, leaving Class Members with little insight of their rights and significance of important issues.*

*One issue of importance is the user friendly opportunity to make the postcard claim form easy to understand on which a Class Member can then be able to clearly judge the merits of receiving a small nominal value in a Class Action lawsuit, while attorney's receive huge paychecks, using the Class Action Lawsuit as a vehicle to secure such fee (and justice taking back seat peanut gallery priority), thus allowing Class Members to make a much better informed decision of opting out (not participating) in the Claim or staying in.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

# EXHIBIT F

43

# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| CLAIR REYNOLDS, et al, | ) |
| | ) Case No. 2:19-cv-11745 |
| Plaintiffs, | ) |
| | |
| v. | District Judge Mark A. Goldsmith |
| | |
| FCA US LLC, | Magistrate Judge Elizabeth A. Stafford |
| | |
| Defendant | |

**F I L E D**

**FEB - 8 2023**

**CLERK'S OFFICE**
**DETROIT**

### AMICUS CURAIE MEMORANDUM
### OF PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION
### AND REQUEST FOR REASONED REASONABLENESS TEST ASSESSMENT

Applicant, Larry D. Killion (pro se), a Settlement Class Member, owner of a 2018 Jeep Wrangler, VIN 1C4HJXEG6JW192098, in receipt of a postcard Notice of Proposed Class Settlement for the captioned cause submits the attached **AMICUS CURAIE MEMORANDUM  OF PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION AND REQUEST FOR REASONED REASONABLENESS TEST ASSESSMENT,**

1. **to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, and request that the Court take into account the attached Class Action attorney fee memorandum when deliberating the reasonableness of requested fee and expenses.

2. **This submission is based on those document of record in https://**

   2. *Option (2) This Objection is based on those documents of record in https://www  https://www.cptgroupcaseinfo.com/FCAUSSettlement/, as of the date of this Submission.*

### RATIONALE OF THE MEMORANDUM

1. Rationale behind  this memorandum, includes...

1.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the the Application, the Application must still pass the Court's reasonableness test.

1.2 Is the Application in the best interest of Settlement Class Members and is it reasonable.

1.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

1.3.1 American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o Traditional fee analysis to determine reasonableness takes into account...
  - the time and labor required,
  - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - the fee customarily charged in the locality for similar legal services;
  - the amount involved and the results obtained;
  - the time limitations imposed by the client or by the circumstances;
  - the nature and length of the professional relationship with the client;
  - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - whether the fee is fixed or contingent

1.3.2 Federal Rules of Civil Procedure, Class Action Rule 23;
- o The Court '*may*' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

1.3.3 Class Action Fairness Act of 2005;
- o Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account...
  - o Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

1.3.4 Court rulings, in particular attorney fee reasonableness test criteria described in
- o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - o Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.

- The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
- Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
- Reasonableness takes into account the factors used by the traditional fee *determination.*

4. The Court is requested to consider the attached Amicus Curaie Memorandum in its deliberations.

Respectfully submitted

This ___30___ day of January, 2023.

_____
[Larry D. Killion]
Settlement Class Member

713 90-9135, (mobil)
832 203-7695 (fax)
11235ldk@comcast.net email
2114 Oxford Street
Houston, Texas 77008

## CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the ___30___ day of January, 2023, copies of the **AMICUS CURAIE MEMORANDUM OF PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION AND REQUEST FOR REASONED REASONABLENESS TEST ASSESSMENT**, WERE mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**
Clerk's Office
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 599
Detroit, MI 48226

CLASS COUNSEL
Simon Paris
SALTZ MONGELUZZI & BENDESKY P.C.
120 Gibraltar Road, Suite 218
Horsham, PA 19044

Defendant
Stephen D'Aunoy
THOMPSON COBURN LLP
One U.S. Bank Plaza, 26th Floor
St. Louis, Missouri 63101

Settlement Administrator:
Reynolds, et al. v. FCA US LLC
c/o CPT Group Inc.
50 Corporate Park
Irvine, CA 92606
Toll Free: 1-888-318-0175
Website: www.cptgroupcaseinfo.com/FCAUSSettlement

I, Larry D Killion , further certify I am a Settlement Class Member.

Larry D. Killion

It is presumed Lead Counsel will post this filiing as a relevant document in this case online internet posting cite.

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| |
|---|
| CLAIR REYNOLDS, et al, |
| |
| Plaintiffs, |
| |
| v. |
| |
| FCA US LLC, |
| |
| Defendant |

)
)                    Case No. 2:19-cv-11745
)

District Judge Mark A. Goldsmith

Magistrate Judge Elizabeth A. Stafford

## <u>AMICUS CURAIE MEMORANDUM OF PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION AND REQUEST FOR REASONED REASONABLENESS TEST ASSESSMENT</u>

# Table of Contents

| | |
|---|---|
| Class Action Lawsuit Industry | 3 |
| Incentive Factors | 3 |
| How To Control Award Of Huge Attorney Fees | 4 |
| First - Attorney Fee Reduction Action Plans | 4 |
| Why These Plans? | 5 |
| Short Lesson:   Class Action Lawsuit Boot Camp | 8 |
| Advantages of a Class Action Lawsuit, includes: | 8 |
| Disadvantage of a Class Action Lawsuit, includes: | 9 |
| Attorney's Fees | 11 |
| Advantages of Contingency Fee Structure Includes: | 12 |
| Disadvantages of Contingency Fee Structure Includes: | 12 |
| Attorney Fees Reasonableness Test | 13 |
| Use, Misuse and Abuse – Standards of Proof and Other Reforms | 15 |
| Justice and Class Action Lawsuits | 19 |
| Appendix A – | 24 |
| Class Action Lawsuits – Huge Attorney Fee Illustrations | 24 |
| Appendix B | 26 |
| Example Form Objection To Attorney's Fees | 26 |
| Appendix C | 31 |
| Example Op=Out Form | 31 |
| Appendix D | 33 |
| Class Action Lawsuits – Attorney Fee Legislation | 33 |
| Appendix E | 37 |
| Class Action Lawsuit Postcard Claim Form | 37 |

## Class Action Lawsuit Industry

It seems like these days, the Class Action lawsuit industry is alive and well. Receipt of postcard Class Action claim form notices (now managed by non-lawyer specialist administrative businesses – part of the thriving industrial growth), snail mailed to Class Action Victims known as Class Members, arrive about as frequent as Christmas holiday consumer catalogues.

## Incentive Factors

Incentive factors influencing this Class Action industry growth, especially the award of huge attorney fees (leaving the real victims of a case often with only a nominal award), includes:

- **Incentive No. 1: Huge Lawyer Fees**. A review of randomly selected Class Action federal court files[1], illustrates the magnitude of huge attorney fee award incentives, typically accompanied by small nominal claim awards to individual Class Members. The three example cases cited in Appendix A indicate typical individual award to Class Members of less than $20 to perhaps $20,000 (in the optimum extreme case) while awarded attorney's fees represented ~25% of **TOTAL** award claim for an average range of **per attorney** fee of $222,000 to $287,000;

- **Incentive No. 2: 'Deep-Pocket' Defendants**. Many defendants in Class Action lawsuits who honestly try to comply with applicable laws, are well known established (Appendix A example Class Action cases are well respected publicly traded companies: Nielsen-NYSE, T-Mobile-NASDAQ and American Airlines-NASDAQ), Oracle Corporation-NYSE, highly regulated public businesses, financially sound with 'deep-pockets' and capable of paying huge attorney fees, thus 'easy-worth-the-effort' litigation incentive targets. These businesses routinely retain experts to give them advice in regard to compliance with relevant laws and regulations. None of these characteristics are indicative of a company out-to-cheat its customers or investors.

- **Incentive No. 3: Speculative Law Compliance – Use, Misuse, Abuse**. Laws on which many Class Action lawsuits are based, are not 'black-and-white' and easily interpreted as to what is right and what is wrong, are complex and subject to wide interpretations – for example security fraud and consumer protection laws – making compliance with these laws challenging – especially for honest defendants. Because of the speculative nature of these laws, litigation minded lawyers have the incentive to craft a case, whether real or illusionary, that places doubt in jury's and Judges's minds whether or not such speculative laws have been violated. As in all things in life, laws can be **used** for their intended public protection purpose, **misused** or **abused**.

Awareness of these incentives is nothing new, as there are a multitude of studies, reports and papers (see the Bibliography of examples of such papers), discussing the pros and cons of Class Action

---

[1] Appendix A is a summary of recent Class Action lawsuits illustrating applications for huge attorney's fees coupled with nominal awards to Class Member victims.

lawsuits, many focusing on and criticizing what justice is all about and the disparity between huge plaintiff's attorney's fees paid by defendants coupled with nominal award claims paid to the real victims. While many of these reports are scholarly and well researched, they have had little impact on reducing, or at least shifting, huge attorney fee awards and putting more justified compensation into the pockets of the real victims.

***Many of these papers ask the question:***

## ***Have Class Action lawsuits merely been used as a vehicle for attorney's to secure huge fees with justice a secondary objective[2]?***

## <u>How To Control Award Of Huge Attorney Fees</u>

This paper does not repeat the arguments cited in historical writings…***<u>BUT SUPPLEMENTS</u>*** a new dimension to the topic.

- **First**: By suggesting **self-help** and **law-help** action plans the public can easily adopt to influence the reduction of huge attorney fee paychecks in Class Action lawsuits.
- **Second**: By providing a summary discussion of why such plans make sense.

### First - Attorney Fee Reduction Action Plans

- **Self-Help**
  - **If attorney fees are viewed as being unreasonably huge (does not pass the small test[3]), Class Action members should file written Objections with the Court, challenging the unreasonableness of such fees. (Example objection form provided in Appendix B).**
  - **Class members electing *<u>NOT TO PARTICIPATE</u>* ("Opt Out") in the Class Action lawsuit. (Example opt-out form provided in Appendix C).**
- **Law-Help**
  - **The public contact their elected government Representatives and Senators requesting they pass new laws…**
    - **Laws designed to promote reasonableness tests of the award of attorney's fees in Class Action lawsuits such as a realistic fee formula or caps on awards. (Example contact form provided in Appendix D).**
    - **Laws or rules governing the standard of proof to Clear and Convincing Evidence.**
    - **Laws designed to simplify, easy to understand, postcard Class Action lawsuit notices, clearly and conspicuously describing (1) what potential claim is being sought, (2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled, (3) how the**

---

[2] A huge number of documents filed in Class Action lawsuits are dedicated to defending huge attorney fee applications compared to defending the merits of the actual Claim.

[3] Like pornography, you know it when you see it.

size of the Class Action Claim and attorney's fees are effected if Class Members op-out of participating in the lawsuit, and (4) how attorney fees are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer. (Example notice form provided in Appendix E).

## Why These Plans?

- <u>Objection</u>: The law requires prior to Court's approving a Class Action Claim and requested attorney's fees, such fees be tested for 'reasonableness'. Each test is on a case-by-case basis, no one-size-fits-all.
    - o Attorney's regularly cite as a part of their reasoning why their [huge] fee request is reasonable is because it is consistent with other Class Action lawsuits (25%-35% contingency fee?) which is contrary to the one-size-does-not-fit all reasoning.
    - o Counsel argues why they should be certified as Class Action lawsuit Class Counsel based on their skills and experience, then argue why a [huge] fee is required because of the complexity (speculative?) of a case. Seems odd that on one hand Counsel will argue it is skilled requiring less time/effort to handle a case, yet when it comes to their fee, such fee should be [huge] regardless of the skill factor. *Rare is the worker who argues for a cut in pay.*
    - o Court's seem to 'rubber-stamp approval' of attorney fee requests. Judges are normally attorneys, and while justice is blind to prejudice – natural human instincts still influence behaviour.
    - o Class Action Member attorney fee Objections helps remind the Court of its reasonableness test obligations – especially since the Class Member is the victim and for every dollar paid attorney's is one less dollar paid to the real victim. If the victim's don't complain, it would be natural for a Court to assume victim's are ok with the requested fee, which naturally dampens the enthusiasm, with a busy Court docket, to pursue a deep dive test of reasonableness.
- <u>Opt-Out</u>: If many/most Class Action Members collectively elected not to participate in a Class Action lawsuit (*opt-out*), then the Claim amount would be automatically reduced (since there are less 'victims'), and if there is a request for [huge] attorney's fees, typically based on a contingency fee (attorney's being paid a percentage of the Claim awarded to the real victims), then the fee would be less.
    - o For example, 30% fee of $100 million Claim for 100,000 Class Members means $30 million to lawyers and $700.00 to each Class Member, is a lot less than 30% of $500,000 Claim for 500 Class Members means $150,000 to lawyers and $700.00 to each Class Member. Still a disparity between attorney fee and Class Member award, but tempers lawyer's appetite to promote a questionable suit given their fee is much reduced (tension between values associated with earned fee and justice incentives).

- o In many Class Action lawsuits, the amount awarded to victims is small and nominal in amount (a few 100 dollars, or a discount coupon), while attorney's fee paychecks can potentially exceed $200,000 per lawyer.
- o Class Action members 'giving up' a small nominal award in exchange for stopping, over the top [huge] lawyer fees, is a powerful consumer weapon.
- o While Class Action lawsuits are designed to punish illegal business practices that harms the public, always be mindful that payment of Class Action nominal claims and [huge] attorney's fees, can result in the business adding that cost back into the price of the business goods or services which means consumers and investors will in the future end up paying for the illusion of a victorious award.
- o While a business reputation may suffer a little at first, if at all, generally after the lawsuit combat is over, all is forgiven and the dust settles, it's back to business as usual – except lawyer's fat paychecks have been cashed and deposited.

- **Attorney Fee Law:** Request for attorney's fees in a Class Action lawsuit, is often based on a business alleged to have violated some law adversely affecting many parties (such as a consumer protection or securities fraud law), and that law including the statutory right to plaintiff's attorney's fees to be paid as part of the claim by a losing defendant.
    - o Laws are not written for Class Action lawsuits, but to seek justice for individual victims for a particular cause of action including compensating the victim for its incurred attorney's fees as part of the award against bad business practices.
    - o Lawyers favor taking cases and bringing lawsuits based on a law that includes award of attorney's fees, especially where the defendant has 'deep pockets' (financially strong) and can afford to pay [huge] fees.
    - o There needs to be a Class Action attorney fee law designed to promote any award of attorney's fee to a 'reasonableness standard', that comes into play any time there is a Class Action lawsuit. Ideally, award of attorney fee would be influenced by the amount EACH victim is awarded – low victim award, low attorney fee – especially since justice is blind to the magnitude of awarded attorney fee.
    - o In most Class Action Lawsuits, attorney's fees are determined as a percentage of the victim's Claim amount (so called contingency fee). Consequently, the 'losing' defendant in a case, either as a result of a trial judgment or settlement, is indifferent about the size of the attorney fee since it is deducted from the Claim amount. Even-so, such deduction may not in the best interest of the attorney's Class Member clients for not receiving a fair, reasonable and adequate compensation for such victim's losses due to such deduction.
    - o It might be more prudent for Class Action lawsuits, to prohibit contingency attorney fees (similar to criminal or domestic relation cases), leaving the attorney to honestly defend its time spent on the case and hourly rate, separate and apart to any Claim award paid to Class victims. Such attorney fee defense

will attract a more systematic and objective assessment of the fee, since (1) if the fee is paid by the victims, the Court will have a much clearer understanding of the details and basis of the fee request, and (2) if the fee is paid by the defendant, the defendant will be in a more realistic and efficient tester of the reasonableness of a fee claim, since the defendant is the one paying the fee.

- <u>Standard of Proof</u>: Because of the unique nature of Class Action lawsuit, that in the context of Justice for ALL, places excessive defense burdens on a defendant, justice should entail a Clear and Convincing Evidence standard of proof (and not Preponderance of the Evidence standard) associated with certifying a case as a Class Action lawsuit or the standard of proof used in the trial of the matter. This higher burden of proof properly places an incentive on plaintiff's, Class Members and Class Counsel to honestly pursue a case that has merit and one suited for Class Action and based on the objective of seeking justice for ALL, and not merely a case brought for revenge or a vehicle to secure huge attorney's fees.

- <u>Class Action Notice</u>: Postcard claim notices alerting Class Members to a Class Action lawsuit, are difficult to understand and often require the reader to go online through the internet, to obtain more detail information (if they know how to request online information as well as where to locate information of interest).
    - o The postcard claim notice needs to be user-friendly, easy to read and understand, and clearly advise the reader what the Class Action lawsuit is all about, how much is being demanded from the defendant, how much each Class Member will be entitled and full disclosure of how attorney fees are being determined, what the total attorney fee could be and the average paycheck of how much each lawyer working on the case will receive.

**<u>Short Lesson:   Class Action Lawsuit Boot Camp</u>**

Class Actions (also known as a Class-Action Lawsuit, Class Suit, or Representative Action) are most common where the allegations usually involve at least 40 people who the same defendant has allegedly injured in the same way. Instead of each damaged person bringing one's own lawsuit, the Class Action allows all the claims of all Class Members—whether they know they have been damaged or not—to be resolved in a single proceeding through the efforts of Representative Plaintiff(s) and Representative Plaintiff's lawyers appointed as Class Counsel. The  Class Action binds (by default) all Class Members (victims) of the Class, unless a Class Member had given timely notice to opt-out and not be represented by such Class Action.   Depending on the Class Action details, any victim that opts-out, may or may not preserve its right to bring its own separate lawsuit.

There is a familiar saying about "strength in numbers." For example, a single person who was misled into paying 50 cents too much for an illegally overpriced tube of toothpaste doesn't have enough incentive to go to the trouble and expense of litigation just to recover that small amount of money.

It's when many people—often tens of thousands, or more—are harmed a similar way by the same problem that a Class Action lawsuit may be worth bringing. Uniting all these affected parties into a plaintiff's Class (Class Members) raises the stakes significantly for [corporate] defendants. It's more likely that the Class payoff will be worth fighting for, and companies that face the prospect of Class Action liability, have a strong incentive to settle a claim and correct their behavior and implement business practices, designed to prevent bad practices.

But small claim litigation revenge tactics must always be tempered with what justice is all about. All small claim infractions do not justify seeking combat lawsuit justice, more times than not premised on seeking revenge – where in many cases, attorney's stir the emotions pot of the 'victims' to use the litigation hammer and beat up the alleged wrongdoing defendant.  In whose best interest are Class Action lawsuits brought?  For alleged victims?  Huge fee greedy attorneys?

**Advantages of a Class Action Lawsuit, includes**:
- **Efficiency**.  Combining cases in a Class Action can increase the efficiency of the legal process, and lower the costs of litigation.  In cases with common questions of law and fact, aggregation of claims into a Class Action may avoid the necessity of repeating days of the same witnesses, exhibits and issues from trial to trial.
- **Meaningful**. A Class Action may overcome the problem that meaningful small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A Class Action ensures that a defendant who engages in widespread harm (whether intentional or not) – but does so minimally against each individual plaintiff – must compensate all affected individuals for their injuries.
- **Behaviour Incentive**. Class-Action cases may be brought to purposely change behavior of a class of which the defendant is a member.

Class Action Lawsuits – Attorney's Fee Problem  - Jan 2023                    <span>Page **8** of **38**</span>

- **Race To The Bank**. In "limited fund" cases (which means the defendant(s) do not have 'deep pockets' and not financially strong), a Class Action ensures that all plaintiffs (victims) receive some relief and that early filing plaintiffs (they win the race to the bank) do not raid the common fund (owned by the defendant) of all its assets before other plaintiffs may be compensated.
- **Confusion**. A Class Action avoids the situation where different court rulings could create incompatible standards of conduct for the defendant to follow.

**Disadvantage of a Class Action Lawsuit, includes:**

- **Caveat Emptor (Buyer Beware – Victim Liable For Certain Consequences)**. Class Action procedures are arguably inconsistent with due process mandates and unnecessarily promotes litigation of otherwise small, trivial claims, and challenges what Justice is all about. A certain amount of risk is expected to be assumed by the public without recourse for someone else to pay. There needs to be a balance between seeking justice and seeking revenge.
- **Abuse**. The preamble to the (Federal) Class Action Fairness Act of 2005, implies that some Class Actions are abusive, harm Class Members with legitimate claims, especially where defendants have tried to honestly act responsibly, and such abuse, adversely affecting interstate commerce (legitimate businesses stops providing useful consumer goods or services in fear of defending costly abusive Class Actions), and undermined public respect for the country's judicial system (the Court's permitting abusive Class Actions to be pursued – sometimes as a vehicle for Class Counsel to secure huge fees while the real victim's receive nominal value).
  - More times than not, Class Action lawsuit defendant's are reputable companies. These companies utilize their own legal and business experts who give advice and counseling and what to do to comply with relevant State and Federal laws. Rare is the reputable company that intentionally violates a law but in contrast, acts responsibly for law compliance. Even-so, many laws are written broadly, and because of business complexity and broad interpretations of the law, stealthy litigation counsel can craft an argument that often creates an environment of uncertainty (the 'fog index') whether or not a reputable company violated a law. That's the attorney's job, representing the best interest of their client, and earn a fee. Because of this law interpretation uncertainty and speculation, reputable companies will, without any admission of liability, often settle a case, to avoid unnecessary defense expenses, wasted time, and unwanted bad publicity – since rare is the opportunity for the defendant to honestly present the more honest facts as the consuming public do not have the time to listen to such. (Not unlike the quick message broadcast in roadside billboard lawyer advertisements, advising that the 'hammer' goes after truck drivers involved in accidents – automatic guilt and remedy – so much for due process. The ugly side of justice).
- **Victims Are Secondary**. Class Members often receive little or nominal benefit from Class Actions.
  - Examples

- Huge fees for the attorneys, while leaving Class Members with coupons or other awards of little or nominal value;
- Unjustified awards are made to certain plaintiffs at the expense of other Class Members (such as Representative Plaintiff's requesting priority payments for them having started the lawsuit or acting as Representative Plaintiffs);
- Confusing published and mailed Class Action postcard claim notices, that interfere with Class Members being able to fully understand and effectively exercise their rights;
- Laws require the Court's approval of all Class-Action settlements, and in most cases, Class Members given a chance to opt-out (not participate) in Class Action settlements. Even-so, though Class Members, despite being given opt-out post card claim notices, may be unaware of their right to opt-out because they did not receive the notice, did not read it or did not understand it.
  - The Class Action Fairness Act of 2005 attempts to address some of these concerns…
    - An independent expert may scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.
    - Since many Class Members do not use or spend their coupons (many are trashed or forgotten), award of contingency attorney's fees will take into account the value of unused coupons which means such fees are to be lowered. Even-so, coupons are not customarily part of Class Action lawsuit settlements.
- **Who Is The Victim?** Various studies of Class Actions in federal court found that many plaintiffs (victims) received only a tiny fraction of the money awarded while plaintiff lawyers frequently secured a huge, highly disparate share of the settlement than their clients – the real victims in the lawsuit. Many Class Action Lawsuits can be viewed as merely a vehicle or conduit through which attorney's can secure huge fees and not an honest mechanism of seeking justice for real victims.

State and Federal laws provide for the bringing of Class Action lawsuits. Most of the time a Class Action lawsuit is brought in federal court and not a State court, because:

- The victims (plaintiffs) in the lawsuit are resident in many States (diversity of citizenship), consequently, federal court is viewed as being more fair to all plaintiff's instead of those residing in any one particular State;
- Federal Courts are more experienced with hearing Class Action Lawsuits;
- Class Action Fairness Act of 2005, is a federal law that makes it easier for Class Action lawsuits to be heard in federal courts.

An individual lawsuit often starts out with one or more initial plaintiffs (victims), claiming some business or entity violated a Federal (or State) law. Coincident with that case, the underlying complaint indicates there are many more similarly and adversely affected victims.

Attorney's who accept such a case, recognizes there are many victims with similar claims, and petition a [federal] court to *certify* the case as a Class Action lawsuit, naming the initial plaintiff's as 'Representative Plaintiff's' (or lead plaintiff's) in the Class Action claim and the attorneys requesting the Court to also name (certify) them as Class Counsel, thereby representing all victims.

After the Class Action Lawsuit is well advanced – sometimes many months or years (where Class Counsel has reached a tentative settlement agreement with defendants for both victim's damages and attorney's fees), Class Member's for the first time become aware of the Class Action Lawsuit, by receiving a postcard claim notice in the mail:

- Advising them of the lawsuit,
- Awareness that they are an identified victim,
- Guidance on where to obtain information (usually on-line through the internet), that includes guidance on what the suit is about and what remedy Class Members may be entitled and how to file a claim.
- The notice will also cite unless the Class Member timely opts-out (elects not to participate in the Class Action lawsuit) of the suit, they will automatically be included, generally at no cost, and will be bound by any outcome of the suit.


When plaintiff's (Class Members or victims) Class Counsel win a Class Action lawsuit, or when they secure a pre-trial settlement with the defendant, legal fees and court costs are typically included in the award or Claim. This award or Claim is often referred to as the "Common Fund," from which legal fees, as well as recovery for Class Members damages, are paid.


**Attorney's Fees**
While the practice of law seeks justice, it's still a business, and unless an attorney has agreed to work pro bono (free of charge), an attorney can expect [reasonable] compensation in exchange for their legal services.

Federal and State Courts in the United States in regard to attorney's fees, follow what is called the 'American Rule'. What this rule means is that each party (both plaintiffs and defendants) in a lawsuit are responsible for funding and paying their own attorney's fees, no matter who wins the case.

However, this Rule can be modified by either…

- **Contract**: Parties to a contract can agree under certain circumstances, one of the parties will pay the legal fees of the other in regard to a particular dispute, or
- **Statute**: If there is a law (a statute) that specifically provides as part of its remedies, award of attorney's fees to a successful party – normally the plaintiff (i.e. a defendant is ordered to pay plaintiff's attorney fees). Many times, such statute based award of attorney's fees

can be many times greater than the value of actual damages suffered by a successful plaintiff, or
- **Settlement**: Plaintiff's attorney fees could also be paid by defendant, as a result of the defendant setting a case and volunteers to include payment of plaintiff's attorney fees as part of the settlement.

The details of how attorney fees are determined and calculated is a matter of negotiated contract between an attorney and their client, and can be:

- An agreed hourly rate billed by the attorney and paid by the client (a 'fixed fee' arrangement), or
- A contingency fee, where the attorney does not charge a separate fee, but will take a percentage (25% to 40% as examples) out of a successful award (hence the attorney fee is contingent on winning a case).  If the attorney is not successful in winning a case (either by going to trial or securing a pre-trial settlement), then it will not receive a fee, or
- A combination of fixed fee and contingency fee.

In a Class Action lawsuit, the Representative Plaintiff is the _only_ plaintiff who negotiates attorney fee arrangements for the Class Action.  All other Class Members do not participate in such negotiations, and as a consequence, if they participate in the Class Action (and not opting out), then those Class Members have impliedly and automatically agreed with the attorney fee arrangement established between Class Counsel and Representative Plaintiffs.  Typically, Representative Plaintiffs will agree with Class Counsel to a contingency fee (and not a separate out-of-pocket 'fixed fee' hourly rate), which means Class Counsel will deduct its contingency fee from any Class Action successful award (either determined by trial or pre-trial settlement).

*Even-so, any attorney fee arrangement must still be tested by the Court for reasonableness. This reasonableness test applies even with "clear sailing" agreements which are cases in which the defendant agrees to a noticeably large award of attorney fees and agrees not to object to that amount (perhaps a defendant quick dispute resolution tactic whereby Class Counsel are incentivized with a quick paycheck while the victims award may be lacking).*

### Advantages of Contingency Fee Structure Includes:

- No Up-front Fees. Helps give those lower income clients better access to legal assistance and the court system.
- Incentive.  If attorneys don't get paid unless client gets paid (win's its case), the attorney will be highly motivated to do everything in their power in order to get their client the best possible result.  A performance based agreement.
- No Costs for Losses. Lawyer is willing to risk not collecting a fee for the work they put into things.
- Contingency fees are helpful in cases where a client is short on funds, and has an otherwise costly or complicated case.

### Disadvantages of Contingency Fee Structure Includes:

Class Action Lawsuits – Attorney's Fee Problem  - Jan 2023

- Encourages attorney to pursue non-merit case as nothing to lose but their time and foregoing other clients, and in a slow work environment, not much may be given up, or the pot of gold huge attorney fee incentive is worth the gamble to pursue a case[4].
- A contingency fee arrangement can and often does cost a client more than a regular hourly fee.
- Once the parties agree on the contingency fee, the client owes the agreed upon percentage no matter how long the case will take–whether it takes a year or a week or two hours. This is especially true in the rare 'clear-cut' cases that may only require a few phone calls and a couple of hours of work in order to settle.
- Incentivized contingent fee lawyers may settle too soon and for too little to acquire a quick paycheck, and the client suffers.
- Contingent fees are usually too high relative to the risks that attorneys bear in a particular case, especially where they control whether or not to take a case and have already run their own risk of winning assessment analysis not shared with the client. (Is this insider knowledge and not in the best interest of the client?)

Since Class Counsel represents all Class Members and not just the Representative Plaintiffs, the Court must approve any settlement award for all Class Members including attorney fees.

Approval is conditioned on the **_settlement_** amount being **_fair, reasonable and adequate_**, and **_attorney's fees_** are **_reasonable_**.

Whether a Class Action settlement agreement is fair, reasonable and adequate, has been a bone of contention for companies who have pushed for **tort reform**, particularly as it concerns awards of huge attorney fees in Class Action litigation. These companies often complain about the huge awards of attorney fees that often change hands in Class Action settlements the amount of which are often extremely greater than actual damages claimed by plaintiffs, and they argue that **damage caps** and limits on attorney fees are necessary for the sake of justice, reasonableness and fairness.

### Attorney Fees Reasonableness Test

Court's look to a variety of resources to assist them in determining if requested attorney's fees in a Class Action lawsuit are reasonable. If the court finds that the attorney fee agreement is unreasonable or unfair, the court may step in using its discretionary powers and either invalidate the agreement or amend it to make it reasonable.

Four significant resources used by the Court to test for reasonableness include:

1. American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees (many State Bar Association Rules of Professional Conduct are patterned after the ABA Model,

---

[4] While there is a risk in a contingency fee structured case of losing and not receiving a fee, attorney's who accept contingency cases are normally skilled at assessing the risk of recovery, and consequently are comfortable when they take on such cases that they more than likely will receive a fee. Not unlike the contingency fee based billboard litigation hammer attorney seeking justice from truck driver accident bad guy defendants (and their insurers). Such sound bit messaging masks over the more honest concepts of justice, due process, unintentional accident, factual circumstances and a few other miscellaneous tid-bits that populist minded ears don't have time to listen to.

and an attorney is duty bound to adhere to the Rules of Conduct else suffer consequences which could include disbarment from practicing law);

- o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o Traditional fee analysis to determine reasonableness takes into account...
  - the time and labor required,
  - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - the fee customarily charged in the locality for similar legal services;
  - the amount involved and the results obtained;
  - the time limitations imposed by the client or by the circumstances;
  - the nature and length of the professional relationship with the client;
  - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - whether the fee is fixed or contingent
- o The traditional approach to proving attorneys' fees is for an attorney—sometimes the same attorney representing the party seeking fees—to testify as an expert on what are reasonable fees for the case (a little self-serving but them's the rules).

2. Federal Rules of Civil Procedure, Class Action Rule 23;
   - o The Court '**_may_**' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.
3. Class Action Fairness Act of 2005;
   - o Class Action settlements [damages and attorney's fees] are subject to Court approval,
   - o Reports are to be filed with the House of representatives and the Senate containing
     - Recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit;
     - Recommendations on the best practices that courts can use to ensure that—the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation;
     - Recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement
4. Court rulings, in particular attorney fee reasonableness test criteria described in
   - o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
   - o Determining reasonable fees under the **lodestar method** is a two-step process.
     - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number

- of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
  - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
    - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - Reasonableness takes into account the factors used by the traditional fee determination.
    - Lodestar, presumably refers to a number that provides a guiding point-or lodestar-in the determination of an appropriate attorney fee award.

What is evident from assessing the resources used to determine what is or is not a reasonable attorney fee, is fraught with many subjective elements and not much independent deterministic[5] tests.

Class Counsel submit copious documents defending its request for attorneys fees. The extent of this documentation can be voluminous and taxes the limited resources and busy dockets Courts have to study in detail all documents, consequently a challenged circumstance to fully assess all allegations and supporting documents. At times the shear weight of filed documents can be a substitute for believed validity and justification. Elegant simplicity is more beneficial than intellectual complexity. The observation is that better guidance is needed in resolving what is or is not reasonable in regard to attorney's fees and perhaps time for updated legislation to provide clarity and reduce the fog.

Consequently because of this absence of certainty, or at least a more determined method of attorney fee computation in Class Action lawsuits, astute counsel are free to argue for just about any fee they wish and paint it with broad strokes of reasonableness and justification whether in fact or illusionary. Just how long is a piece of string? Where is justice in all this, other than the rubber stamp embossed with '**APPROVED**'?

## Use, Misuse and Abuse – Standards of Proof and Other Reforms

As in most things in life, us human's can use a tool or seek justice, in the spirit of what was honestly intended – a proper use, or take a less honest path of misusing or abusing the circumstance.

The more honest argument of the extent the Class Action industry and the participants in that syndicate have wandered from the righteous path of intended use to less honest misuse or abuse paths are illustrated in the following examples…

---

[5] As in physics, deterministic refers to a cause and effect result which means if the same input to a situation is used again, then the same result will occur. A consistent and expected result. In contrast, a probabilistic result means if the same input is used again in a situation the outcome can be different. An inconsistent and uncertain result such as a 50% chance of such and such happening.. Chaos is the extreme of the two which refers to a circumstance that is totally unpredictable regardless of the input.

**Certification Reform**. Original or Representative Plaintiffs seeking to certify a case as a Class Action lawsuit under Federal Rules of Civil Procedure, Rule 23 must plead and prove: (1) an adequate class definition (precise and unambiguous, identity of class members is reasonably determined excluding remote and unlikely victims) (2) ascertainability (fairly easy process to identify class members), (3) numerosity (a showing that joining and naming all Class Members in a common lawsuit is impractical) , (4) commonality (questions of common fact and law), (5) typicality (claims of the Representative Plaintiffs are typical of the claims of Class Members), (6) adequacy (Representative Plaintiffs will fairly and adequately protect the interests of the class – no conflict of interests) and (7) at least one of the requirements in Rule 23(b), namely: (a) separate adjudications will create a risk of decisions that are inconsistent with or dispositive of other class members' claims, (b) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (c) common questions predominate and a class action is superior to individual actions.

Not unusual, expert testimony (often from compensated academia professors – hired guns, invoking often complex and little understood statistical analyses and arguments of why the ingredients exist for justifying a case as a Class Action lawsuit – who theoretically are also governed by use, misuse and misuse standards of conduct) are used by attorney's as a resource to establish enough 'doubt' in the mind of the judiciary, that the easy course is to certify a case as a Class Action lawsuit. The adage there are liars, damn liars and statisticians, is still in vogue. Given enough complex equations, powerpoint slides and laser pointers, an expert can argue just about any side of a case and sound pretty convincing – especially when its paid for testimony and the basis of a decision is foggy, not deterministic and dependent on subjective feelings. And to think all of this insightful assessment of class certification takes place in a few minutes or a few hours at a court room hearing (the court docket of which is always busy and a court's objective to move things along – justice to is dependent on the sweep of a ticking clock) in which participants in that hearing claim some sort of justified immediate understanding and acceptance of what the truth is and make an on the spot decision – yay or nay to certification. It takes a university student often many hours if not days just to solve one calculus or differential equation math problem – not including the study and prep time…yet the complexity of class action certification decisions happens in the twinkle or an eye.

The Representative Plaintiffs bear the burden of proving that the prerequisites to class certification have been met by a *preponderance of the evidence*. Theoretically this standard is supposed to be based on evidence and not speculation.

A certification decision can be challenged and an appeal made to a higher court. An appeal may be accepted when: (1) the decision is questionable and the certification order represents the death knell for a defendant who will be compelled to settle even if the plaintiff's claims are not meritorious, (2) the decision raises an unsettled, fundamental and generally applicable issue of law that will likely evade end-of-the-case review, or (3) the decision is manifestly erroneous.

Reform is needed in the law or Rules, to cause the courts to be more pragmatic and reflective in a class certification decision. Some potential reforms might include:
- A separate Commission is relevant, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion

to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)

- o Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct;
- A separate and specially trained or class action certification expert judge or magistrate independent from the court a case is filed in, rules on a certification arguments.
- If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter.

**Standards of Proof Reform.** The standard of proof in a court, listed in order of the degree of persuasive arguments (highest and most intense listed first) include:

- Beyond a reasonable doubt in criminal law.
- Clear and convincing evidence
  - o Present evidence that leaves the listener with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.
- Preponderance of the evidence in most civil cases.
  - o Prove that something is more likely than not.
- Probable cause in the acquisition of a warrant or arrest proceeding.
- Reasonable belief as part of establishing probable cause.
- Reasonable suspicion in cases involving police stop and searches.
- Some credible evidence in cases necessitating immediate intervention, like child protective services disputes.
- Some evidence in cases involving inmate discipline.
- Substantial evidence in many appellate cases.
  - o Degree of relevant evidence which a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree

Class Action certification and other proofs in a Class Action lawsuit are governed by the preponderance of the evidence standard of proof, as is most civil lawsuits. Because of the unique nature of a Class Action lawsuit, and the heightened unique exposure to claims of a defendant to many plaintiffs and defendant's expanded defense burdens, the standard of proof in a Class Action lawsuit should be based on Clear and Convincing Evidence. Such a standard will go a long way towards self-governing promotion of the honesty of a case in regard to hired gun expert complex testimony and Class Action attorney specialists promoting the Class Action industry. Justice can still prevail even with a Clear and Convincing Evidence standard of proof, but the burden shifts to the plaintiff to present an honest case.

**Self-Serving Reform.** Class Counsel representing a Class Action lawsuit, is obligated to demonstrate Class Member (victim) remedies are tested to a standard of being **fair, reasonable and adequate** and any claim for attorney's fees be tested to a standard of **reasonableness**.

In many cases Class Counsel unnecessarily strain the honesty standard of argument, that the case is shoe-horned to fit within the standards of reasonableness, fairness or adequacy. The more honest arguments include:

- **Argument:** Class Members have not objected to the size of the remedy or attorney's fees so therefore they must by default be reasonable.
  - **Reform:** Most Class Members only became aware they were entitled to a claim when they received notice from Class Counsel the claim exists, and typically the claim amount is so small, the Class Member may or may not file a claim (assuming they spend time to study the notice), and spend no time challenging the suit given the small nature of the event. Hence arguing the absence of objection as part of the rationale of a claim and attorney fee being reasonable is a rather salty circular self-serving argument, and one hopefully a court will disregard.
- **Argument:** Attorney's fee claims are comparable to other Class Action lawsuit awards, citing common percentage take regarding contingency fee awarded attorney's fee in other cases.
  - **Reform:** This one-size-fits-all attorney fee reasonableness standard is contrary to the obligation of attorney's to determine their fee on the merits and effort involved in each individual case. Reasonable attorney's fee justification is not like earning a fixed real estate agent sales commission (the 6% 'standard' shared between buyer and seller agents). Then again, justifying a fee based on other case 'standards', is another admission of the observation that Class Action lawsuits have become a commoditized industry and vehicle to rack up huge attorney's fees and not a forum for justice.
- **Argument:** Expert testimony (often university professor experts – hired guns) demonstrate with subjective little understood complex statistical stealth, that the basis of a case is sounded as evidence and proof of the bad conduct of a defendant.
  - **Reform:** An expert arguing in a security fraud case for example, that defendant's alleged bad conduct caused an inappropriate one penny swing in a defendant's stock price…is a pretty far-fetched argument to make, given stock price swings happen on a daily basis and to pin-point specific conduct of a defendant why the swing happened, especially when a nominal amount, is often a bridge to far…and all the more reason to have a Clear and Convincing Evidence standard of proof.
- **Argument:** Class Counsel base their attorney fee on a contingency basis, a percentage of the Claim award to Class Members, citing Class Action 'victims' are seeking justice and Class Counsel graciously accepting a case to advance that justice and willing to do so on a contingency basis relieving the Class Members of bearing the legal costs of a case, and usually such fees are paid by a losing defendant if an underlying statute on which a case is brought provides for attorney fees as part of the remedy.
  - **Reform:** How often does Class Counsel seek to orchestrate a case as a Class Action lawsuit, driven by the objective of increasing the size of a Claim because of Class Member participation, and the size of the percentage take from a large Class Action Claim as attorney's fees, is hugely more valuable than a percentage take from an individual plaintiff claim? Thus an observation that contingency attorney's fees should not be permitted in Class Action lawsuits, leaving the attorney to justify their fee based on reasonableness standard tests associated with time and hourly rates.

- Argument: Class Counsel justify the merits of a Class Action case (either as certification as a Class Action or violation of a law) and their right to attorney's fees, based on a plethora of cited cases, mountains of self-serving justification documentation and other resources heaped upon a court's already busy docket. The weight of the argument is based on the paper weight of the documents filed and not on the quality and weight of evidence of the argument.
  - Reform: Similar to discovery proceedings, perhaps attorney's should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.

## Justice and Class Action Lawsuits

The Class Action lawsuit industry seems to have wrinkled the path of what justice (or injustice) is all about.

The Declaration of Independence, the Constitution of the United States of America, and the Bill of Rights, the "founding documents" of the nation, speak directly to the ideals of freedom from oppression, equality, and justice *for all*.   Justice is fairness and equal treatment, and applies to both the plaintiff AND the defendant since that simple '*all*' word is rather encompassing.

Class Action lawsuits seem to treat  defendants as tyrants and oppressors of the public.  That is not justice for *all*.

What is just remains a matter for debate. Observing the same outcome of a situation, one person may say justice was done. Another may declare the outcome an injustice and great wrong.  Is the porridge too hot or just right?  Is the attorney fee too huge or just right?

Justice may be viewed as a subjective process of assessing the fairness of relations between individuals and groups of people, such as...

- Getting what one deserves.
- Equitable sharing of civic burdens.
  - We all get car door ding marks and we all give them.  While such  is normally an accidental 'wrong', to seek a $50 door ding damage repair bill and charge a $10,000 attorney fee is not what justice is *all* about.  Revenge maybe.  Assumption  of a certain amount of risk is a constant balancing act in anything us humans do.  (Maybe the door ding issue can be resolved by car makers installing soft bumper guards on door edges.)
- Individual virtue and ethical conduct (especially attorney's whose law license demands they honor Bar Association ethics and code of professional conduct and act responsibly and always seek justice for *all* and not revenge).

Is it unreasonable/unethical for plaintiff's attorney to pursue a Class Action lawsuit, knowing their fee will be many many magnitudes greater than any nominal recovery of victims, where such huge fee is paid to the attorney instead of compensation to the victims? Is that justice?

Are huge attorney fee awards seen as a substitute for punitive ('punishment') damages above and beyond actual damages, of a Class Action lawsuit defendant? Justice would suppose punishment is by way of compensation paid to victims, and where applicable, award of punitive damages (also paid to victims above and beyond actual damages) as a punishment for unacceptable intentional egregious acts of defendants. Attorney fees are in relation to reasonable honest legal services provided on behalf of the plaintiff/victims and NOT a means of punitive punishment of defendants.

Who does justice define as the victim? The Class Member victims? Plaintiff's lawyers as victims? Defendant victims being exposed to paying huge legal fees and lawyers misusing or abusing what justice is *all* about?

It's time for a change.

## Bibliography

Baker, Lynn A., Perino, Michael A., Silver, Charles, "Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions", Columbia Law Review, vol. 115, no. 6, (2015).

Boatright, Jason, "The History, Meaning, and Use of the Words Justice and Judge", *St. Mary's Law Journal*, vol. 49, no. 4, Article 1, 727 (2018).

Carter, Jimmy, "Law Day Address at the University of Georgia in Athens, Georgia", *The American Presidency Project*, https://www.presidency.ucsb.edu, (1974).

"Class Action", Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/we/class_action, Dec 2022.

"Class Action", *Wikipedia*, December 22, 2022

"Class Action Fairness Act of 2005, *28 USC, Public Law 109-2*, Feb 18, 2005.

"Class Action Fairness Act of 2005, Wikipedia, December 22, 2022.

Connolly, Neil, "Extreme Couponing: Reforming the Method of Calculating Attorney's Fees in Class Action Coupon Settlements", *102 Iowa Law Review 1335* (2017)

Douglas, Frederick, "What, To The Slave, Is the Fourth of July (1852)", *Blackpast*, (2007)

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: 1993-2008", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2010).

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: Empirical Study", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2004).

"Federal Rules of Civil Procedure", *Title IV. Parties, Rule 23, Class Actions*.

"Fees and Expenses", American Bar Association, https://www.americanbar.org/

groups/legal_services/milvets/aba_home_front/information_center/working_with_lawyer

/fees_and_expenses/, Dec. 2022.

Frankel, Alison, "In biggest cases, class action lawyers are low-balling fee requests – and that's a

good thing", *Reuters*, November 2, 2016.

Gentry, Caroline H., *"A Primer on Class Certification Under Federal Rule 23"*, Corporate

Counsel CLE Seminar, Rancho Mirage/CA (https://www.classactiondeclassified.com/wp-

content/uploads/sites/26/2017/08/a_primer_class_certification_under_federal_rule.pdf,

2017)

Hartmann, Michelle, Miller, Ralph I., Zambrano, Angela C.. "Attorneys' Fees", *SMU Law

Review*, vol. 57, Issue 3 Annual Survey of Texas Law, Article 4, 2004.

Ibrahim, Melissa, "Bills, Bills, Bills: The Effect of a Rejected Settlement on Attorney's Fees Under

the Civil Rights Attorney's Fees Award Act of 1976", *Cardozo Law Review*, vol. 36, p.

1987, 1988.

Johnson, Charles T. et al v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020).

King, Martin Luther Jr., "Letter from Birmingham Jail", *Atlantic Monthly*, vol. 212, no. 2, p. 78

(1963).

Lender, David J. et al, "Class Action Fairness Act of 2005 (DAFA): Overview", *Practical Law

Company.com*, (2013).

"Opinion #17. Negotiation of Attorney's Fees in Class Actions", *Professional Ethics Commission, Board of Overseers of the Bar*, (January 15, 1981).

Ratner, Morris, "Civil Procedure: Class Action Fee and Cost Awards", *The Judges Book*, vol. 1, art. 9, http://repository.uchastings.edu/judgesbook (2017).

"Rule 1.5 Fees- Comment", *American Bar Association Model Rules of Professional Conduct*, Client-Lawyer Relaionship (2018).

Shepherd, Joanna, "An Empirical Survey of No-Injury Class Actions", Emory University School of Law, Legal Research Paper Series, Research Paper No. 16-402, http://ssrn.com/abstract=2726905 (2016).

Sohoni, Mila, "The Idea of "Too Much Law", *Fordham Law Review*, vol. 80, Issue 4, Article 3, 2012.

Tribe, Lawrence H., "Too Much Law, Too Little Justice: An Argument for Delegalizing America", The Atlantic, July 1979.

"What Is Justice", *School of Criminal Justice, University of Albany*, Module 1, https://www.albany.edu/justiceinstitute/33471.php, (2022).

# Appendix A –
## Class Action Lawsuits – Huge Attorney Fee Illustrations

**Example Class Action Case 1 (https://www.nielsensecuritiessettlement.com/)**

In Re Nielsen Holdings PLC Securities Litigation
Civil Action No. 1:18-cv-07143-JMF
United States District Court
Southern District of New York

| | | |
|---|---|---|
| Proposed Settlement Fund | $73,000,000 | ($0.19 per share) |
| Proposed Contingency Attorney's Fees (25%) | $18,250,000 | ($0.05 per share) |
| Plus Attorney Expenses | $ 1,110,000 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 17,206 | |
| Total Class Member (Victims) | 384,000,000 ($73,000,000/$0.19) | |
| Attorney Hourly Rate Disclosure Ranges | | |
| Paralegals | $315 to $505 | |
| Associate Attorneys | $895 to $2,017 | |
| Of Counsel | $975 to $1,560 | |
| Partners | $1,250 to $1,983 | |
| Average Attorney hourly rate | $1,060 | ($18,250,000/17,206) |
| Attorney Fee Per Lawyer (assuming 82 lawyers) | $222,561 | ($18,250,000/82) |
| Range of Victim Award (depends on shares owned) | | |
| 500 shares | $70 | (500*$0.14) |
| 10,000 shares | $1,400 | (10,000*$0.14) |
| 100,000 shares | $14,500 | (100,000*0.14) |

**Example Class Action Case 2 (https://www.t-mobilesettlement.com/**

In Re T-Mobile Customer Data
Security Breach Litigation
Civil Action No. 4:21-md-03019-BCW
United States District Court
Western District of Missouri

| | | |
|---|---|---|
| Proposed Settlement Fund | $350,000,000 | |
| Plus Future Data Security Upgrades | $150,000,000 | |
| Proposed Contingency Attorney's Fees (22.5%) | $78,750,000 | (reduced from 30%) |
| Plus Attorney Expenses | $ 147,982 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 8,225 | |
| Total Class Member (Victims) | 79,150,000 | |
| Attorney Hourly Rate Disclosure Ranges | $270 to $1275 | |

Class Action Lawsuits – Attorney's Fee Problem  - Jan 2023

| | | |
|---|---|---|
| Average Attorney hourly rate | $9,574 | ($78,750,000/8,225) |
| Attorney Fee Per Lawyer (assuming 100 lawyers) | $787,500 | ($78,750,000/100) |
| Range of Victim Award (depends on shares owned) | $3.42 | ($271,250,000/79,150,000) |

## Example Class Action Case 3 (https://www.baggagefeeclassaction.com/)

Cleary v. American Airlines Inc.
Baggage Claim
Civil Action No. 4:21-cv-00184-O
United States District Court
Northern District of Texas

| | | |
|---|---|---|
| Proposed Settlement Fund | $7,500,000 | (min.) |
| Proposed Fixed Fee Attorney's Fees | $2,850,000 | (27.5% total award) |
| Attorney Expenses | $1,142,945 | |
| Claimed Attorney Hours | 3,641 | |
| Total Class Member (Victims) | 588,654 | |
| Average Attorney hourly rate | $782 | ($2,850,000/3,641) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $285,000 | ($2,850,000/10) |
| Victim Award | $12.74 | ($7,500,000/588,654) |

## Example Class Action Case 4 (https://www.OracleSecuritiesLitigation.com)

In re Oracle Corporation Securities Litigation
Securities Fraud
Civil Action No. 18-cv-04844-BLF
United States District Court
Northern District of California, San Jose Division

| | | |
|---|---|---|
| Proposed Settlement Fund | $17,500,000 | |
| Proposed Fixed Fee Attorney's Fees | $3,500,000 | (20% total award) |
| Attorney Expenses | $900,000 | |
| Claimed Attorney Hours | 17,900 | |
| Total Class Member (Victims) | 979,000 | |
| Average Attorney hourly rate | $195 | ($3,500,000/17,900) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $350,000 | ($3,500,000/10) |
| Victim Award | $0.01/share (~2.7 bn shares) | |
| | (~1800 shares per shareholder avg) | |
| | $18 avg share of claim | |

A self-serving assertion: The small number of objections in comparison to the size of the Class supports a finding that the Settlement is fair, reasonable, and adequate. The reason folks did not opt-out had nothing to do with a fair, reasonable and adequacy test. Case cites false statements illegally inflated Oracles stock value – then trading between $43 and $47. Jan 2023 trade value is over $85, and a peak end of 2022 at over $100. The casual observer would cite business as usual and a good year for Oracle investors…justifying a 1 cent swing in stock value because of excessive puffing – craftily disguised as security fraud (with a lot of academic experts pontificating on their crystal ball insightfulness and naval gazing) is poppy-cock. Liars, damn liars and statisticians come to mind.

## Appendix B

### Example Form Objection To Attorney's Fees

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____ DISTRICT OF _____ (State)**
**_____ DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] ) ) | Case No. _____ |

**OBJECTION[6] TO PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1. Objection Applicant, _____ (*your name*) (pro se[7]), a Settlement Class Member (Class Member ID[8] _____, claim number[9] _____) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, has not objected to any class action settlement within the past three years, and request for modification and downward adjustment of any pending or submitted Attorney Fee and Expense Application (herein the 'Application') because such Application is unreasonable, unfair and not in the best interest of the Settlement Class Members.

   *[Cross through or delete Option 1 or Option 2 that does not apply]*

2. Option (1) *Since as of the filing of this Objection, Lead Counsel has not filed in https://www[10]._____, copy of the Application, nor sent a copy to Objection Applicant, this Objection is based on those documents of record in the cited website so filed as of the date of this Objection.*

---

[6] Read the post card claim notice and follow any specific instructions regarding filing of an objection, such as timing, address to send the Objection to, and any conditions. This Appendix B form contains typical conditions but may not be complete.

[7] Pro se means you are representing yourself.

[8] Class member ID is usually cited in the post card claim notice received in the mail concerning the Class Action

[9] If you have filed a claim after receiving the post card claim notice, you usually will be issued a claim number.

[10] The Class Action lawsuit will be found on the internet which will allow you to have access to all case documents and other information about the case. Insert the internet website. Often times an Objection is filed before all relevant documents are filed online. Final attorney fee applications are often filed late.

*Option (2) This Objection is based on those documents of record in https://www_____, as of the date of this Objection.*

## OBJECTION

3.  Rationale behind this Objection, includes...

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the the Application, I do not agree with such approval, and hereby submit this Objection.

3.3  The Application is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

3.3.1    American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o   Traditional fee analysis to determine reasonableness takes into account...
  - ▪   the time and labor required,
  - ▪   the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - ▪   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - ▪   the fee customarily charged in the locality for similar legal services;
  - ▪   the amount involved and the results obtained;
  - ▪   the time limitations imposed by the client or by the circumstances;
  - ▪   the nature and length of the professional relationship with the client;
  - ▪   the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - ▪   whether the fee is fixed or contingent

3.3.2    Federal Rules of Civil Procedure, Class Action Rule 23;
- o   The Court '***may***' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3.3.3    Class Action Fairness Act of 2005;
- o   Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account...
  - o   Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the

litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3.3.4 Court rulings, in particular attorney fee reasonableness test criteria described in
- Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
    - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - Reasonableness takes into account the factors used by the traditional fee *determination.*

4. The Court is requested to invoke its discretionary powers to modify and reduce the Attorney Fee Expense Application to make it reasonable.

5. The economics of the requested Application indicate:

5.1 The proposed Settlement Common Fund to all Class Members is $_____. (total indicated settlement to be paid to victims)

5.2 Total Class Members are _____ (total number of victims)

5.3 Individual Class Member award are estimated to be $ _____ (cite how much each victim may receive or at least a range)

5.4 Total Attorney Fees and Expenses applied for are $ _____

5.5 The total legal hours expended on the case are _____

5.6 The average hourly rate charged for legal services is $ _____ (paragraph 5.4 divided by paragraph 5.5)

5.7 The average paycheck for each attorney working on the case is $ _____

(paragraph 5.4 divided by the total number of attorneys estimated to be working on the case, small cases may be up to 5, big cases may be 75 or more)

5.8 The disparity between the amount of recover to each Class Member compared to the paycheck each attorney could receive suggests a exorbitant and unreasonable basis of on which to base attorney fees.

6. Any reduction in the Application is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

7. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $_____[*insert amount of claimed fee*] attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

8 Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
- While it is instructive to take into account attorney work claims of:
  - Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

9. [*Add any other information that is unique to the case that illustrates why you think the requested attorney fee and expense application is unreasonable*] *At your discretion you might also include a copy of the above paper that might give the Court some additional information to think about*].

Respectfully submitted

This _____ day of _____, 20__.

_____

[*name, printed and sign document*]
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

## CERTIFICATE OF SERVICE

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

### IN THE UNITED STATES DISTRICT COURT FOR THE _____ DISTRICT OF _____
### _____ DIVISION

Clerk of the Court
[address/email]


CLASS COUNSEL
[name]
[address/email]


Defendant
[address/email]


I, _____, further certify I am a Settlement Class Member.


_____
[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

**Appendix C**

**Example Op=Out Form**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
_____ **DISTRICT OF** _____ *(State)*
_____ **DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] ) ) | Case No. _____ |

_____

**ELECTION TO OPT-OUT OF THE CAPTIONED CLASS ACTION LAWSUIT**

1.     Opt-out Applicant, _____ (*your name*) (pro se[11]), a Settlement Class Member (Class Member ID[12] _____) submits this **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, and without prejudice, reserve any and all of my rights to pursue a separate claim**

Respectfully submitted

This _____ day of _____, 20__.

_____
*[name, printed and sign document]*
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

**CERTIFICATE OF SERVICE**

---

[11] Pro se means you are representing yourself in the objection.
[12] Class member ID is usually cited in the post card notice you received about the Class Action

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, was** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____DISTRICT OF _____**
**_____ DIVISION**

Clerk of the Court
[address/email]

CLASS COUNSEL
[name]
[address/email]

Defendant
[address/email]

I, _____, further certify I am a Settlement Class Member.

_____

[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

*[This is a general form. The post card notice received about the Class Action lawsuit may contain other information of what to do to opt-out of the case. Please refer to that detail as required].*

**Appendix D**

**Class Action Lawsuits – Attorney Fee Legislation**

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re: Class Action Lawsuit – Attorney Fee Legislation*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and Attorney Fee Legislation.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding huge attorney's fees granted in many Class Action cases and what action plans can be advanced to provide some control over run-away fees.*

*While the judicial Court system has oversight to assess the reasonableness of such fees, there seems to be a consistent 'one-size-fits-all' demeanor advanced when such fees are defended by Class Counsel. This demeanor is contrary to the reasoning that one-size-does-not-fit- all where each case and its fee structure are to be assessed on their own merits and tested against a standard of fairness, reasonableness and adequacy. Most Class Counsel argue that their claimed attorney's fees (a self-serving argument) are consistent in the formula used to determine fees among all other cases.*

*The attached paper and my own experience suggests legislation may well be required to provide the necessary control over excessive fee awards.*

*I am writing to seek your counseling and perhaps leadership in advancing relevant legislation that can address the run-away legal fee paycheck issues and problems outlined in the attached paper.*

*While I don't have the answers I do have some ideas.*

### Contingency Fee Prohibition

*Perhaps, similar to prohibition of the use of contingency legal fees (where the fee is based on the attorney taking a percentage of the case outcome) in regard to domestic relation and criminal cases, Class Action lawsuit may well be added to the prohibited list, thereby leaving attorney's to argue and defend a fee based on 'fixed fee' reasonable hours and reasonable billing rate arguments.*

*As you know, the legal profession has almost unanimously determined for years that allowing attorneys to base their contingency fee on the outcome of a divorce or child custody case would create a risk of the attorney having a financial interest in the outcome as well as being against public policy and therefor unreasonable by default. This could potentially lead unscrupulous attorneys to take actions that could be against the interests of children or it could encourage attorneys to do things to make sure clients actually divorce. On the contrary, a skilled and ethical divorce attorney should always consider reconciliation, resolution, and fairness to be part of the goal and avoidance of the destruction of family relationships. There can be no financial interest in seeing to it that clients get divorced.*

*Likewise, contingency fees are prohibited in regard to criminal cases also based on public policy reasons.*

*Shouldn't Class Action counsel likewise ethically consider resolution and fairness to be the goal of such actions.*

### Reasonableness Tests Codification

*As outlined in the attached paper, the ground work for attorney fee codification has been laid out in the various resources currently consulted to assess attorney fee reasonableness.*

*Those resources include: American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees; Federal Rules of Civil Procedure, Class Action Rule 23; Class Action Fairness Act of 2005; court rulings, in particular attorney fee reasonableness test criteria described in Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the* **lodestar standard**.

*Should legislation be passed to codify the various methods used to test for reasonableness of attorney's fees, thereby removing much of the subjective uncertainty and differences without a distinction confusion?*

*Should a codified formula (which may also include a cap) be determined that provides guidance what is considered a reasonable attorney fee, with an opportunity for attorney's to challenge the formula if they can demonstrate why their fee structure is the better reasonable structure?*

*An illustration of an attorney fee formula patterned after a contingency fee formula, might include:*

| CASE TIMELINE | EXAMPLE STRUCTURE OF AGREED ATTORNEY CONTINGENCY FEE ARRANGEMENT PLUS DIRECT OUT OF POCKET EXPENSES (subject to client approval of any settlement arrangement); Assumes settlement during the particular timeline phase; no unexpected novel legal or factual issues arise). |
|---|---|
| Pre-suit settlement negotiation | Greater of: <br> • Hourly-rate/billable hours/costs or <br> • 5% of Settlement Offer |
| Filing of lawsuit; preliminary discovery; offers of settlement | • Sliding scale contingency fee based on Settlement Offer (20% first $25MM; 15% next $25MM; 10% anything over $50MM) |
| Alternative Dispute Resolution (mediation) | • Sliding scale contingency fee based on Settlement Offer (20% first $50MM; 15% next $75MM; 10% anything over $125MM) |
| Completion of pre-trial discovery; settlement negotiations | • Sliding scale contingency fee based on Settlement Offer (20% first $75MM; 15% next $100MM; 10% anything over $175MM) |
| Trial (by jury) | • Sliding scale contingency fee based on Settlement Offer (25% first $100MM; 20% next $50MM; 15% anything over $150MM) |
| New Trial | • Sliding scale contingency fee based on Settlement Offer (30% first $100MM; 25% next $50MM; 20% anything over $150MM) |
| Appeal | • Sliding scale contingency fee based on Settlement Offer (35% first $100MM; 30% next $50MM; 25% anything over $150MM) |

## **_Independent Committee_**

*Currently, attorney fee reasonableness tests are assessed by other attorneys. I have included the Court system in this testing network since most jurists are attorneys. Should there be some form of independent committee, commission or panel used to test for reasonableness of attorney fees, the participants of which also includes non-lawyers? Professions that come to mind that might be part of such panel includes Insurance (risk management), Accountants, Professional Engineers, Military Officer, Police Officer, Day Care Management, Clergy, Local Union Leadership.*

*An independent committee, commission or panel is not unlike the independent expert appointed under the Class Action Fairness Act of 2005, who is instructed to scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.*

*Class Action Counsel might argue, that the complexity of defending why legal fees are reasonable, is not readily understood by the lay person. Quite the contrary, if attorney's cannot argue their defense of why their fee is reasonable in plain understood English, then the fog index is in full force...and that corrupts the concept that a little bit of sunshine is a great disinfectant.*

## Class Action Certification Reform

*A separate Class Action certification Commission should be created, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)*

*Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct.*

*If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter.*

## Plaintiff Filing Reform

*Similar to discovery proceedings, Class Counsel attorney's should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.*

## Standard of Proof Reform

*The standard of proof used to either certify a case as a Class Action or evidence presented in a trial of the matter, should be based on Clear and Convincing Evidence and not Preponderance of the Evidence. A higher standard of proof makes sense, since such standard will have a self-governing incentive for plaintiff's and Class Counsel to advance an honest case as well as promoting the nation's founding documents objective of Justice for ALL, especially since a defendant is confronted with the unique and unusual aspects defending a Class Action claim.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

Class Action Lawsuits – Attorney's Fee Problem  - Jan 2023                          Page **36** of **38**

**Appendix E**

**Class Action Lawsuit Postcard Claim Form**

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re: Class Action Lawsuit – Postcard Claim Form*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and the content of postcard claim forms used to notify potential Class Members of their claim rights.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding user friendly notification and information contained in postcard claim forms and what action plans can be advanced to provide improved user friendly better informed awareness of important issues associated with such forms.*

*I believe legislation is needed to simplify, make easier to understand, postcard Class Action lawsuit claim notices, designed to clearly and conspicuously describe:*

*(1) what potential claim is being sought,*

*(2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled,*

Class Action Lawsuits – Attorney's Fee Problem  - Jan 2023                     Page **37** of **38**

*(3) how the size of the Class Action Claim and attorney's fees are effected if Class Members opt-out of participating in the lawsuit and*

*(4) how attorney fees and expenses are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer and average hourly rate being charged.*

*Such postcard claim form legislation could be an amendment to the Class Action Fairness Act of 2005.*

*It is not uncommon when a Class Member receives a postcard claim form in the mail, short of hiring their own attorney, they need to have a reasonable understanding of how to navigate through online internet systems in order to obtain additional relevant information. The internet navigation process as well as interpreting much of the 'legal mumbo gumbo' cited in important documents, gets lost in translation, leaving Class Members with little insight of their rights and significance of important issues.*

*One issue of importance is the user friendly opportunity to make the postcard claim form easy to understand on which a Class Member can then be able to clearly judge the merits of receiving a small nominal value in a Class Action lawsuit, while attorney's receive huge paychecks, using the Class Action Lawsuit as a vehicle to secure such fee (and justice taking back seat peanut gallery priority), thus allowing Class Members to make a much better informed decision of opting out (not participating) in the Claim or staying in.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

Case 2:19-cv-13429-DML-DRG ECF No. 112, PageID.2359 Filed 02/08/23 Page 212 of 394

Larry D Killion, P.E., J.D.
2114 Oxford Street
Houston, Texas 77008

 

U.S. POSTAGE PAID
FCM LG ENV
HOUSTON, TX
77009
JAN 30, 23
AMOUNT
$1.98
R2305H130627-04

RDC 99        48226

Clerk's Office
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 599
Detroit, MI 48226

# EXHIBIT G

# Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHEREN DISTRICT OF NEW YORK

| IN RE NIELSEN HOLDINGS PLC SECURITIES LITIGATION | |
| --- | --- |

Civil Action No. 1:18-cv-07143-JMF

## OBJECTION TO PROPOSED [CONTINGENCY ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT

1. Objection Applicant, Larry D. Killion, submits this **OBJECTION** and request for modification and downward adjustment of the proposed [Contingency Fee] and Expense Application (herein the 'Application') because such Application is unreasonable, unfair and not in the best interest of the Settlement Class.

2. Since as of the filing of this Objection, Lead Counsel has not filed in *www.NielsenSecuritiesSettlement.com*, copy of the Fee and Expense Application, nor sent a copy to Objection Applicant, the basis of this Objection is based on those documents of record in the cited website so filed as of the date of this Objection.

3. Since Larry D. Killion will not be attending relevant court hearings on this Objection, it is admittedly longer than otherwise needed, but believed to be comprehensive enough to stand in my stead in the absence of my making oral justification arguments to the court.

## SUMMARY OF OBJECTION

4. Summary of the basis of this Objection, includes
   - The [Contingency] Fee and Expense Application was not mutually negotiated and agreed to between Settlement Class members and representing attorneys, contrary to customary practice, and presented by attorneys as a fait accompli (a 'cram down' event).
   - The Application is unreasonable, unfair and its terms not in the best interest of Settlement Class members. The reasoning of the unreasonable claim is discussed herein.
   - The Court can invoke its discretionary powers to modify the Application to make it reasonable.
   - Objection Applicant submits the below example of revised maximum Application options, to aid the Court in its consideration of this Objection, that is more in line with a reasonable contingency fee arrangement, and is representative of the likely content Settlement Class members would have taken into account if they had an opportunity to negotiate an agreed attorney contingency fee arrangement.

- o Since the case has been settled during the alternative dispute resolution medication timeline without a trial, the below example attorney contingency fee structure, suggests a more honest reasonable maximum sliding scale contingency fee structure based on the Settlement Offer, of (20% first $50MM; 15% next $75MM; 10% anything in excess of $125MM) and not the fixed 25% structure.
- o Any reduction in the Application is to be returned to the Settlement Fund and distributed to the Settlement Class.

| CASE TIMELINE | EXAMPLE STRUCTURE OF MAXIMUM AGREED ATTORNEY CONTINGENCY FEE ARRANGEMENT PLUS DIRECT OUT OF POCKET EXPENSES<br>(subject to client approval of any settlement arrangement); Assumes settlement during the particular timeline phase; no unexpected novel legal or factual issues arise). |
|---|---|
| Pre-suit settlement negotiation | Greater of:<br>• Hourly-rate/billable hours/costs or<br>• 5% of Settlement Offer |
| Filing of lawsuit; preliminary discovery; offers of settlement | • Sliding scale contingency fee based on Settlement Offer (20% first $25MM; 15% next $25MM; 10% anything over $50MM) |
| Alternative Dispute Resolution (mediation) | • Sliding scale contingency fee based on Settlement Offer (20% first $50MM; 15% next $75MM; 10% anything over $125MM) |
| Completion of pre-trial discovery; settlement negotiations | • Sliding scale contingency fee based on Settlement Offer (20% first $75MM; 15% next $100MM; 10% anything over $175MM) |
| Trial (by jury) | • Sliding scale contingency fee based on Settlement Offer (25% first $100MM; 20% next $50MM; 15% anything over $150MM) |
| New Trial | • Sliding scale contingency fee based on Settlement Offer (30% first $100MM; 25% next $50MM; 20% anything over $150MM) |
| Appeal | • Sliding scale contingency fee based on Settlement Offer (35% first $100MM; 30% next $50MM; 25% anything over $150MM) |

## DEFINITIONS

4. Definitions as used in Amended Class Action Complaint and Stipulation and Agreement of Settlement also apply herein unless otherwise defined.

## OBJECTION APPLICANT

5. I, Larry D. Killion, an individual (the 'Objection Applicant'), received by first class mail, **NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION AND MOTION FOR ATTORNEY'S FEES AND EXPENSES (herein the 'Notice')**, in regard to the captioned cause and I am a member of the Settlement Class, further confirmed by submission and receipt

(Confirmation Code OHTK2SXQ, copy attached) of Larry D. Killion's Proof of Claim and Release (subject to the court's ruling on this Objection) Form.

6.  I declare and certify I have timely submitted to the Court this **OBJECTION TO PROPOSED [CONTINGENCY ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT** in accordance with the procedures described in the Notice (Section numbered 14, paragraph numbers 49-51).

7.  It is Objection Applicant's assertion such **PROPOSED [CONTINGENCY ATTORNEY] FEE AND EXPENSE APPLICATION,** is unreasonable, unfair and not in the best interest of Settlement Class members, and should be modified and reduced at the discretion of the Judge of the Court. Objection Applicant has provided herein as a guide, suggested minimum reforms and reduction of the Contingent Attorney Fee and Expense Application for the Court's reference, and any reduction be added back into the Settlement Fund and distributed to Settlement Class members.

## BACKGROUND FOR REFERENCE

8.  Plaintiff's in the captioned case alleged that Nielsen Holding PLC (herein 'Nielsen'), intentionally or willfully made fraudulent misstatements and material omissions pertaining to certain financial time periods (Feb2016-Jul2018), in particular regarding:
    a.  Financial performance of Nielsen's Buy business;
    b.  Alleged trends affecting Nielsen's Buy business;
    c.  Nielsen's valuation of the goodwill of its Buy business; and
    d.  Alleged effects of the European Union's General Data Protection Regulation on Nielsen's business

9.  Such misstatements and/or omissions, adversely impacted and damaged Settlement Class members, in violation of Federal Securities Laws. As shown in the below graphs, Nielsen's stock, a component of the S&P 500 index, clearly showed a steady decline in value during the time of interest (Feb2016 to Jul2018) compared to the contrary S&P 500 index steady growth.



Plaintiff's, many of which are retirement funds, are sensitive to valuation declines. As shown in the below graph, Nielsen's share value decrease during the period of interest, was most likely affected by many variables, including human 'panic', world events, economy and reliance of investor's on company accuracy of financial disclosures.



Investor's do not like surprizes.

10.    Plaintiff's and Nielsen entered into a Stipulation and Agreement of Settlement, which will settle all   claims subject to the Courts' approval, in consideration of a cash payment from Nielsen to Plaintiffs, of $73,000,000, the Settlement Fund, to be distributed to Settlement Class members, who timely file a notice of claim and then allocated a share of the Settlement Fund (net of legal and attorney fee expenses) in accordance with an allocation formula described in the Stipulation and Agreement of Settlement.

11.   The Stipulation and Agreement of Settlement included a claim that Plaintiff's attorney's are entitled to a maximum Contingency Fee plus expenses, to be paid out of the Settlement Fund. Such Contingency Fee not to exceed 25% ($18,250,000) of such Settlement Fund, plus $1,110,000 out of pocket litigation expenses plus accrued interest.

12.    Plaintiff's Lead Counsel intend to file in this cause, a Fee and Expense Application (the 'F and E Application'), ostensibly containing relevant detail justifying such fee and expense to be fair, reasonable and in the best interest of the Settlement Class, but as of the date of this Objection such Application has not been filed.

## CONTINGENCY FEE BASICS

13.   While the practice of law seeks justice,  it's still a business, and unless an attorney has agreed to work pro bono,  an attorney can expect compensation in exchange for their legal services. That's how business works.  Attorneys and clients are allowed to use their own discretion when it comes to agreeing on fees.  There is no one size fits all fee structure.

14.   **What is a contingency fee agreement?**

15.   A contingency fee agreement, is a written mutually negotiated agreement (a contract) between a client and their attorney and is a form of billing that allows for an attorney to be paid a percentage of the damages awarded at the end of a case (if the client prevails in such case and awarded damages to be paid by the defendant) instead of an hourly rate. In contingency arrangements, the attorney agrees to take on the case without charging their regular hourly fees. The attorney's payment is dependent on, or "contingent" on winning the case.

16.  Contingency fees are recognized by State and Federal law.  There is no standard percentage. Examples of  contingency fee percentages can range from 5% to 50%.  No one size fits all.

17.   Civil litigation attorneys typically accept cases that present clear liability and a means to collect a judgment or settlement, such as through a defendant's insurance policy. However, in cases where liability is not clear, or if the case is considered too risky, the attorney may not accept the case, even on a contingency basis. When attorneys take cases on a contingency basis, they may be more selective about the cases they agree to take on. They may try to avoid cases that they don't see as easy victories, or may negotiate higher fees for "riskier" cases.

18.  Some jurisdictions limit what type cases can utilize a Contingency Fee.  Generally such fee is allowed  for  actions  such  as  personal  injury  or  workman  compensation,  but  prohibited  for criminal, domestic relation or immigration cases.

**19. What type of Contingency Fee agreements are there?**

20. The structure of a Contingency Fee agreement is at the imagination of the client and attorney.

21. Some may agree a variable contingency fee based on the time spent on the case. For example, the attorney may charge a 10%-15% contingency if the case settles before trial, 25%-30% if the case goes to trial, and higher percentages if the case goes through the appeal process.

22. Others may agree a variable fee based on the amount of the award: 30% of the first $100,000, 20% of the next $100,000 and so forth.

23. There are hybrid fees comprised of both a contingency percentage and a fixed hourly rate, that may or may not offset each other.

**24. What are the advantages and disadvantages of Contingency Fees?**

25. **Advantages**:

- No Up-front Fees. Helps give those lower income clients better access to legal assistance and the court system.
- Incentive. If attorneys don't get paid unless client gets paid (win's its case), the attorney will be highly motivated to do everything in their power in order to get their client the best possible result. A performance based agreement.
- No Costs for Losses. Lawyer is willing to risk not collecting a fee for the work they put into things.
- Contingency fees are helpful in cases where a client is short on funds, and has an otherwise costly or complicated case.

## 26. Disadvantages:

- Encourages attorney to pursue non-merit case as nothing to lose but their time and foregoing other clients, and in a slow work environment, not much may be given up.
- A contingency fee arrangement can and often does cost a client more than a regular hourly fee.
- Once the parties agree on the contingency fee, the client owes the agreed upon percentage no matter how long the case will take—whether it takes a year or a week or two hours. This is especially true in clear-cut cases that may only require a few phone calls and a couple of hours of work in order to settle.
- Some attorneys may offer a flexible contingency fee depending on the outcome of your case or the effort it takes to advance a case.
- Incentivized contingent fee lawyers may settle too soon and for too little to acquire a quick pay check, and the client suffers.
- Contingent fees are usually too high relative to the risks that attorneys bear in a particular case, especially where they control whether or not to take a case and have already run their own risk of winning assessment not shared with the client. (Is this insider knowledge?)

## 27. Can a Court invalidate or modify a Contingency Fee agreement?

28. If the court finds that the contingency fee agreement is unreasonable or unfair, the court may step in using its discretionary powers and either invalidate the agreement or amend it to make it reasonable.

29. In order to determine whether the original fee agreement was reasonable in the first place, the court may consider several factors, including reference to the, Sandra Day O'Connor Constitutional test or model ABA attorney fee structure guideline …reasonableness of fee based on weighing-of-factors tests…where such factors take into account…

- The amount of time the lawyer spent preparing and working on the case;
- The amount of work the lawyer had to turn down in order to meet the demands of this case;
- Typical attorney fees for similar types of cases;
- The amount of money in question in the case and the final total amount of damages awarded;

- The experience, reputation and ability of the lawyer;
- The likelihood of success in the case;
- The complexity of a case.
- The size of the contingency fee should reflect the amount of work that will be required by the attorney;
- Some cases are straightforward; others can be novel or highly uncertain.

## Contingency Attorney Fee – Why is it unreasonable.

30.     Stock valuation methodology discussed in the footnote[1], is a helpful guide to use when understanding the efficacy of the Contingency Attorney Fee unreasonableness objection.

---

[1] **Stock Value – The Basics**

31. The following summary discussion about establishing the value of stocks is useful as a supplemental reference, when the objection to the attorney contingency fee arrangement is assessed.

32. No investor likes to experience their investment lose money! But that risk disclosure is made every day ('there is no guarantee you will make money in the stock market') yet investors continue to invest (and make money) or gamble (and lose money). And that's capitalism.

33.     There is a stock / security fraud legal industry that developed to promote a remedy to those whose stock value dropped not because of the natural physics of market volatility but because there is the desire to find a remedy to cut those losses by claiming an accountable party intentionally and artificially manipulated and fraudulently misrepresented or made material omissions, on which an investor relied.   Federal law defines fraud as any intentional deception or misrepresentation used to benefit yourself or someone else. If fraud is in play, the rules of the stock game become unfair and unequal, the deck is stacked, and the goal of bad actor accountable party making good on the loss.

34.     A company's stock value is determined by the market. What a willing buyer would pay a willing seller for the stock.

35.     There are a whole host of ingredients that go into the minds of buyers and sellers that influences their perception of stock value.  Those perceptions will have alignment on some matters and total diversion on others – but that is what makes a market.  One investor will think stock value will go up and another down – the market, one investor will give more value influencing weight to the business puffing disclosures of the stock company executives promoting their company (that's their job –"World's Best Cup of Coffee", "World's Best Pizza" – good ole' salesmanship puffing that is not considered fraud or misrepresentation) and in a capitalistic environment a thing of beauty to behold.   But just like there is a fine line between accepting the ideology of a freedom fighter vs. a terrorist, investor anti-fraud rules are needed to protect the innocent investor from company executives intentional and willfully misleading or making fraudulent  statements or material omissions that selfishly and artificially influenced the essential ingredients needed to more rationally and objectively assess stock value.  Even so, the investor must maintain some level of  'clean hands' and not forego all personal accountability of analytical assessment be that from the investor's own internal stock value assessment team or reliance on third party financial expert analysts (and in the case of Nielsen, professional analysts who assess and report on Nielsen's stock and financial health include: Goldman Sachs, Citi Bank, JP Morgan, Macquarie, Jeffries, etc.  These folks are not easily dupped and have perceptive filters to sift through what financial messages company executives disclose and determine what is wheat and what is chaff – but even analysts can be dupped in the extreme circumstance by clever (whether fraudulent or not) business sales puffing.

36.     In contrast, it would be a rare company indeed who would disclose the message to not buy the company's stock as it is a poor investment or there are better investment alternatives.  That executive would not have a job very long and more importantly the company would not be in business very long either.  So the challenge is to assess whether an executive's sales puffing has crossed the freedom fighter or terrorist line – or fraud test line...  And when that sales puffing vs fraud judgment call is made, the reasoning unfolds that the assessment and its conclusion, often complex or at least highly variable, while not solidly understood or determined, are 'good enough'.  Just like in Classic Newtonian Physics, everyday perceived human energy and matter assessment predictions are accepted as being 'good enough' but in truth, those predictions have errors because the fundamental underlying spade-time influencing factors are over looked...but they are so small at the macro-level, the physics community accepts predicted results as 'good enough'.

37.     Assessing what component of a stock value was fraudulently fabricated, is ultimately fixed at a number that is 'good enough' since the underlying financial physics are so complex or uncertain, it would take in most circumstances an eternity to assess the true and real value.  And that is the essence of security fraud valuation...a 'good enough' assessment, that the litigation attorney's use their power of persuasion to convince a group of 12 folk to accept as an (not the) appropriate 'good enough' answer.  And hence why stock fraud cases settle because of the uncertainty from all sides of the bar.  The stock fraud legal system

41. Stock fraud claims and artificial valuation allegations are more a matter of economic and value uncertainty assessments – the domain of the non-legal world - than establishing legal liabilities (even establishing fraud is a matter of sales puffing analytics). Persuading a jury in a trial of a 'good enough' answer, has attributes of good legal argument, but in the absence of a trial, those skills and costs are not as critical.

42. In the current circumstance, settlement (with all parties accepting a Settlement Fund amount as an acceptable compromise of all issues) was achieved in two days of mediation and not a trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same [high] percentage fee whether a case settles in two hours or after preliminary discovery and two days of mediation does not make sense and does not pass the smell test.

   a. The perception in this case is that most if not all of the allegations of fraud are based on information available in the public domain (company presentations, analysts statements, company published reports, etc) and hence little novel time and effort expended developing or inventing such evidence.

   b. Readily available public information clearly and readily showed an uncharacteristic decrease in Nielsen's stock value when compared to S&P 500 index (in which Nielsen

---

has created an industry based on this 'good enough' value uncertainty principle, in which legal fees are often times in excess of victim remedies. Makes one wonder and question what justice means -- keeping a stock fraud victim whole or creating a lawyer retirement fee programme.

38.     Many of the ingredients that go into stock valuation may not be based on logic or analytical reasoning. It can be based on pure human emotion, or one party giving more weight to a circumstance they think will effect stock value and another less.

39.     The only thing 'certain' about predicting what the value of a stock will be tomorrow is that, tomorrow there will be another prediction.

40.     Value predictions are influenced by three states of financial physics:

   a.    1. Determinism

      i.   A 'certainty' assessment where cause -and-effect logic and equations are used to predict an outcome – a discrete outcome. Throw a ball in the air, and its path and destination can be predicted with astonishing accuracy, or at least a better than 'good enough' answer. Or take into account conventional financial wisdom and economic information and predict the value of a stock. In fraud cases, weight is given to alleged fraudulent statements that influenced a stock's value and what predicted value portion is attributed to fraud.

   b.    2. Probabilistic or statistical (the Quanta world)

      i.   Predictions are not based on determinism, a cause-and-effect assessment (a discrete result) but on the uncertainties and risk of an outcome occurring and its probability or statistical happening. Saying there is an 80% chance of rain tomorrow means, that it may or may not rain, and there is an 80% high likelihood chance of rain tomorrow. If it rains, the anticipated circumstance prevails, but if it does not rain does not mean that the prediction was wrong, its just that the less likely event occurred. Tough luck for the farmer, good fortune for the golfer. In the stock value game, generally statistics are not used to directly determine the value of a stock in and of itself, but statistics can be used to weigh the probabilities of the ingredients that go into assessing a stock value, and that variability used to develop a potential range of stock values and their likelihood of occurring (50% chance stock value will be $A to $B, 50% chance it will be value $C to $D).

   c.    3. Chaos

      i.   Something that is unpredictable. The same ingredient inputs put into an analysis will result every time in a different answer or output or result or outcome. Human emotion is somewhat by its very nature chaotic. How a human reacts to any set of circumstances can vary from glee to misery, only the shadow knows. All stock values have some component of chaotic (human emotion, the feel good or feel not so good, factor) valuation, albeit in many cases, a small contribution (perhaps Cryptocurrency investments being an exception).

stock is a component) during the alleged period of fraudulent conduct, where the S&P 500 growth trend showed an opposite effect, an increase in value. Consequently, keen legal acumen was not required to readily assess a bizarre and uncharacteristic digression between Nielsen stock value decline and S&P 500 index growth. The market and not lawyerism, determined and reported the market value of Nielsen stock and did so very efficiently and effectively. Clearly there was a pattern that should have put the most casual investor observer on notice of a contrarian trend. Perhaps the Plaintiff's investment advisors and the third party analysts should have been more attentive to their wheelhouse and Plaintiff's reacting more prudently and timely whether or not to stay the course with Nielsen. Of course, reliance on fraudulent allegations as the basis of staying the course with the investment can be asserted, but there is always room for more self-reflective insight and guarded expectations. Stock valuation is fraught with many channels of uncertainty and the unfortunate but realistic circumstance of having to use a combination of determinism, probability and chaos to come up with a 'good enough' answer as to the artificial component of stock value attributed to fraud. So is this fraud value assessment the result of legal acumen demanding high legal fees?, or Just plain ole' uncertainty disguised as negotiations tactics to achieve a result consistent with the principles of justice where the victim is kept as whole as possible and legal assistance and its cost maintained at reasonable standards?

c. While it is instructive to take into account attorney work claims of:

    i. Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in security fraud cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of security fraud law (which the Nielsen case does not so indicate), security law fundamentals are already established and understood and billable time not required to be wasted and spent on developing these items there are already in the library.

    ii. Claims of cataloguing over 130,000 documents, over 800,000 pages, involved in 20 depositions, two days of mediation, etc. are all part of a days work for lawyers. More importantly, many of the documents are believed to be sourced from public records, most documents contain easily discounted pages as not being material and relevant, generally read by support staff and not principle attorneys, normally results in a much less populated list of billable assessment effort. More than likely less than 100,000 pages of document each containing then a lesser content of relevant material is of relevance. This is admittedly a speculative point, but meant to emphasize the casual cataloguing of the paper trail is a nice administrative exercise but does not really justify what fee claims are reasonable. [Recall the Russian submarine captain explaining the loss of his ship at sea in a storm…the accounting of the story by the captain began with an apology but mother nature was the cause of the event…but the captain was able to save 100,000 forks, 100,000 spoons, 150,000 plates, 125,000 cups but only lost one submarine. Moral to the story is not what is in the catalogue list that is important but what *is* important].

iii. The case was settled after some discovery effort and two days of mediation (not trial).  The efficiency of this process is what alternative dispute resolution is all about, to see that the victim is kept as whole as possible while minimizing legal costs.

1. A contingency fee claim of 25% for a mediation settlement result is outrageous and unreasonable!  An $18,250,000 fee plus accrued interest plus expenses (over $1,000,000 – a seemingly valid expense where celebrity economic experts and not lawyers made their determination of case fact making or breaking opinion on artificial stock value inflation assessment attributed to alleged fraudulent claims) is tantamount, using $200 per hour billing rate, of over 47 man-years of full time legal support for an entire year to assess the case and ending with settlement in two days of medication! That time allocation just does not pass the smell test and is unreasonable.  For every unearned legal fee dollar paid to attorneys is a dollar taken away from the real victims of the case, the Settlement Class.

2. The optics of the reported per share cash  settlement of $0.19/share before reduction of fees/interest/costs ($0.05/share) which equates to net benefit to Settlement Class members of $0.14/share, comes across as disproportionately too high an allocation of the Settlement Fund distributed to the attorneys.  This optic challenges who is the victim, Settlement Class members or attorneys?

3. Submitted below are guidelines for the court to consider when assessing the weighing of factors test to determine the reasonableness of the maximum contingency attorney fee claim.

| | The factor | Weighing of factors test to determine reasonableness of attorney fee |
|---|---|---|
| • | The amount of time the lawyer spent preparing and working on the case; | Less time is spent if settlement occurs pretrial as occurred in this case. |
| • | The amount of work the lawyer had to turn down in order to meet the demands of this case; | Always a risk, rarely does a law firm (especially a large one) will turn down cases; they will find the time (typically junior attorney working weekends and after hours) |
| • | Typical attorney fees for similar types of cases; | Apparent 'straight forward' security fraud case so doesn't command super legal skill set. |
| • | The amount of money in question in the case and the final total amount of damages awarded; | Somewhat speculative and depends on argument of experts (but there are liars, damn liars and statisticians); Economic experts not lawyers crafting a persuasive argument. |
| • | The experience, reputation and ability of the lawyer; | Security fraud typically handled by those firms specializing in such. |
| • | The likelihood of success in the case; | Apparent high likelihood of success given public document evidence. |
| • | The complexity of a case. | Not complex...Just finding a fraud case based on 'good enough' evidence and believability |
| • | The size of the contingency fee should reflect the amount of work that will be required by the attorney; | Contingency fee should always be subject to a sliding scale given less work is needed as a case progresses and settlement occurs.  A flat fee for all stages unreasonably rewards early settlement as much less attorney work is involved. |
| • | Some cases are straightforward; others can be novel or highly uncertain. | Apparent straight forward case. |

**Attorney Contingency Fee Cram Down – An Alternative**

43.     Certifying the case as a class action matter, resulted in the application of a 'cram down' (take it or leave it adhesion decision) Attorney Contingency Fee arrangement, thereby overriding the customary practice of a freely negotiated contingent fee contract between attorney and client.

44.     It is asserted that had there been an opportunity for attorney-client contingent attorney fee contract negotiations, those parties would have taken into account, among others, the following matters and land on an acceptable mutually agreed maximum contingency fee structure arrangement.

    a.  First, the backdrop...

        i.  Dramatic reduction in Nielsen stock value (and compared to contrarion S&P 500 index growth trend) during the alleged time frame of stock fraud allegation is readily available from public records, and requires modest effort to establish.  Little legal effort in this analysis seems relevant.

        ii.  Nielsen financial status disclosures during the period of interest coincided with suspected alleged fraud events, with resultant artificially inflated stock value, all of which is predominantly determined by economic experts not lawyers.  Little legal effort in this analysis seems relevant.

        iii.  Alleged security intentional fraud misrepresentations and/or material omissions, are classic issues to be assessed, and do not impose any unique security fraud circumstance.  Little unique legal effort is required in this analysis.

        iv.  The victims harmed by the alleged security fraud allegations, include retirement funds which are sensitive to volatile fund values affected by the noticed decrease in Nielsen stock value.  Hence the victims are more sensitive to harm than other less sensitive investors and should be given some protection.  Unreasonable allocation of settlement funds as attorneys fees is not consistent with this protective objective of focusing on the victim as the party to compensate.

        v.  Public records (Nielsen published financial reports, financial presentations and reports, etc) are readily available to assess a reservoir of potential evidence on which to establish a prima facie case of security fraud claims.  Other than the ability to read English, little legal effort in this analysis seems relevant.

    b.  Given this backdrop, the negotiating parties would have had an opportunity to make an assessment that settlement discussions may happen sooner than later, and hence legal fees would be seen to be lower in the early part of the case compared to later parts, subject to amendment if new evidence resulted in new and novel legal issues not then known and arose during the course of the case.  A time frame of events and example maximum legal contingent fee arrangement (certainly as viewed by the Objection Applicant being a member of the Settlement Class), could include:

| CASE TIMELINE | EXAMPLE STRUCTURE OF MAXIMUM AGREED ATTORNEY CONTINGENCY FEE ARRANGEMENT PLUS DIRECT OUT OF POCKET EXPENSES<br>(subject to client approval of any settlement arrangement); Assumes settlement during the particular timeline phase; no unexpected novel legal or factual issues arise). |
|---|---|
| Pre-suit settlement negotiation | Greater of:<br>• Hourly-rate/billable hours/costs or<br>• 5% of Settlement Offer |
| Filing of lawsuit; preliminary discovery; offers of settlement | • Sliding scale contingency fee based on Settlement Offer (20% first $25MM; 15% next $25MM; 10% anything over $50MM) |
| Alternative Dispute Resolution (mediation) | • Sliding scale contingency fee based on Settlement Offer (20% first $50MM; 15% next $75MM; 10% anything over $125MM) |
| Completion of pre-trial discovery; settlement negotiations | • Sliding scale contingency fee based on Settlement Offer (20% first $75MM; 15% next $100MM; 10% anything over $175MM) |
| Trial (by jury) | • Sliding scale contingency fee based on Settlement Offer (25% first $100MM; 20% next $50MM; 15% anything over $150MM) |
| New Trial | • Sliding scale contingency fee based on Settlement Offer (30% first $100MM; 25% next $50MM; 20% anything over $150MM) |
| Appeal | • Sliding scale contingency fee based on Settlement Offer (35% first $100MM; 30% next $50MM; 25% anything over $150MM) |

Respectfully submitted

This 7 day of June, 2022.

Larry. D. Killion
Settlement Class member

713 906-9135, (mobil)
832 203-7695 (fax)
11235ldk@comcast.net
2114 Oxford Street
Houston, Texas 77008

## CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the 7 day of June, 2022, copies of the **OBJECTION TO PROPOSED [CONTINGENCY ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage (certified mail receipt) to the following recipients:

**UNITED STATES DISTRICT COURT**
**SOUTHEREN DISTRICT OF NEW YORK**
Clerk of the Court
Daniel Patrick Moynihan
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Lead Counsel
Labaton Sucharow LLP
Christine M. Fox, Esq.
140 Broadway
New York, NY 10005

Defendant's Counsel
Representative
Simpson Thacker & Bartlett LLP
Craig S. Waldman, Esq.
425 Lexington Avenue
New York, NY 10017

I, Larry D. Killion, further certify I am a Settlement Class member, having had ownership rights during relevant transaction dates cited in the Complaint, in Nielsen stock as described in the attached Proof of Claim Release Form confirmation.

Larry D. Killion

It is presumed Lead Counsel will post this Objection as a relevant document in *www.NielsenSecuritiesSettlement.com*.

## Larry Killion

**From:** noreply@NielsenSecuritiesSettlement.com
**Sent:** Sunday, June 5, 2022 7:13 PM
**To:** 11235ldk@comcast.net
**Subject:** Nielsen Securities Litigation – Claim Submission Confirmation

Thank you. Your claim has been successfully submitted. Your Confirmation Code is: OHTK2SXQ. Please keep this code for your records.

Sincerely,
Claims Administrator

Questions? Contact the Claims Administrator at 1-855-662-0033 or info@NielsenSecuritiesSettlement.com

*This is an auto generated email. Do not respond to this email.*

1

# EXHIBIT H

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| WILLIAR D. RICHARDSON, and JAMIE YEOMANS, individually and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>IKEA NORTH AMERICA SERVICES, LLC and IKEA U.S. RETAIL, LLC,<br>       Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 2021CH05392 |

**OBJECTION**
**TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND CLASS**
**REPRESENTATIVE SERVICE AWARD**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1. Objection Applicant, Larry D. Killion, herein 'Applicant', a Settlement Class Member (Claim#: IKI-14893879601-4611511 – see attached Notice of Class Action Lawsuit Postcard) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, is not represented by counsel and is a pro se Applicant, to the best of my knowledge the date and location of the purchase of goods from Defendant Ikea for which to the best of my recollection I received a receipt that may have contained more than the last 5 digits of my credit card (but because of the length of time between the purchase in October 2019 and this date, March 2023 over two years, I do not routinely retain copies of such receipts – and candidly I suspect that circumstance applies to the vast majority if not all of the Class Member), occurred at 7810 Katy Fwy, Houston, Harris County, TX 77024, Ikea's local business address, on October 15, 2019 (copy of credit card receipt attached, redacted to delete non-relevant private information), and request for modification and downward adjustment of any pending or submitted Plaintiff's Motion For Award of Attorneys' Fees and Expenses, and Class Representative Service Award (herein the 'Motion') because such Motion is unreasonable, unfair and not in the best interest of the Settlement Class Members.

   *This Objection is based on those documents of record in Plaintiff https://www.ikeaUSfactaclassaction.com, as of the date of this Objection.*

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

## OBJECTION

2.    Rationale behind this Objection, includes...

2.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the the Application, I do not agree with such approval, and hereby submit this Objection.

2.2 The Motion is not in the best interest of Settlement Class Members and is not reasonable.

2.3 The Motion must be thoroughly tested for its reasonableness, and should take into account:

2.3.1 American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees

- o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o   Traditional fee analysis to determine reasonableness takes into account…
  - the time and labor required,
  - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - the fee customarily charged in the locality for similar legal services;
  - the amount involved and the results obtained;
  - the time limitations imposed by the client or by the circumstances;
  - the nature and length of the professional relationship with the client;
  - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - whether the fee is fixed or contingent

2.3.2   The well thought out reasoning of award of Attorney Fees in similar Federal Court Class Action Ruling rulings, in particular attorney fee reasonableness test criteria described in

- o   Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - o   Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
    - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - Reasonableness takes into account the factors used by the traditional fee *determination.*

2.3.3   Class Action Fairness Act of 2005;
  o   Since the case was brought under FACTA, a federal law, Class Action settlements [damages and attorney's fees] are subject to Court approval under State Law consistent with Federal Law which takes into account...
    o   Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3. The Court is requested to deny Plaintiff's request for the Incentive Payments of up to $10,000 to two named Representing Plaintiff's, such payment is in the nature of a bounty paid for winning the race to the Court house to first file a lawsuit, and such bounty merely acts an unjustifiable incentive and inducement for Court house racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members, who are otherwise advised their individual award is in the $30 to $60 per Member range, which compared to the $10,000 bounty (PLUS any additional Settlement Fund allocation), is outrageous, unreasonable and not fair. The Class Members are all victims and to treat some grossly different than others shocks the conscience of justice and should likewise shock the conscience of the Court.

The Court is requested to invoke its discretionary powers to modify and reduce the Motion to make it reasonable.

4.   The economics of the requested Motion indicate:

4.1 The proposed total Settlement Amount to all Class Members is $ $24,250,000.00.

4.2  Individual Class Member award are estimated to be $ 30-$60.

4.3  Total applied for Attorney Fees of $9,700,000 and Expenses of $29,091.16 (to be deducted from Settlement Amount).

4.4  $20,000 Incentive Payment to Representative Plaintiffs (to be deducted from Settlement Amount).

4.5 Plaintiff's counsel have not presented any statements advising of the actual hours spent on the case nor the hourly rate of each individual billing time to the case, nor the indicated average payment to each lawyer claiming a fee.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

FILED DATE: 6/29/2023 4:00 PM  2021CH05392

4.6 The disparity between the amount of recover to each Class Member compared to the paycheck each attorney could receive suggests an exorbitant and unreasonable basis of on which to base attorney fees.

5. Any reduction in the Motion is requested to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees or bounty Incentive Payment.

6. A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $9,700,000 attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

7 Settlement (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial. Consequently, the extent and reasonableness of claimed earned legal fees are in question. Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
   o   While it is instructive to take into account attorney work claims of:
      o   Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of law issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

8. As a supplement and aid to the Court in its deliberation of this Objection, please find attached a discussion paper entitled "ATTORNEY'S FEES IN CLASS ACTION LAWSUITS, WHAT TO DO ABOUT HUGE (UNREASONABLE?) LAWYER PAYCHECKS".

Respectfully submitted,

This _____16_____ day of _Murch_ , 2023.

_Larry D Killion_

[Larry D. Killion, Applicant]
Settlement Class Member

713 906-9135, (mobil)
832 203-7695(fax)
11235ldk@comcast.net  email
2114 Oxford Street

FILED DATE: 6/29/2023 4:00 PM 2021CH05392

Houston, Harris County, Texas 77008

## CERTIFICATE OF SERVICE

I, Larry D. Killion, hereby certify that on the _____16_____ day of _____March_____, 2023, copies of the **OBJECTION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD <u>AND REQUEST FOR DOWNWARD ADJUSTMENT,</u> WERE** mailed by first class prepaid postage or by email, to the following recipients:

CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY DEPARTMENT, CHANCERY DIVISION
IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL
Clerk of the Court
50 W. Washington St.
Chicago, IL 60602

Case Contact Information

*Richardson v. IKEA* Claims Administrator
P.O. Box 6175
Novato, CA 94948-6175

Email: admin@IKEAUSFactaClassAction.com

CLASS COUNSEL

Keith J. Keogh, Esq.
Keogh Law, LTD (Firm No. 39042)
55 W. Monroe Street,
Ste. 3390
Chicago, IL 60603
Keith@KeoghLaw.com

Scott D. Owens, Esq. (pro hac vice)
2750 N. 29th Ave.,
Suite 209A
Hollywood, FL 33020
scott@scottdowens.com

John R. Habashy, Esq. (pro hac vice)

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

LEXICON LAW, PC
633 W. 5th Street,
28th Floor
Los Angeles, CA 90071
john@lexiconlaw.com

Defendant

James J. Sipchen
PRETZEL & STOUFFER, CHARTERED
One S. Wacker,
Suite 2500
Chicago, IL 60606
jsipchen@pretzel-stouffer.com

Claudia D. McCarron
Mullen Coughlin LLC
426 W. Lancaster Ave.,
Suite 200
Devon, PA 19333
cmccarron@mullen.law

*Larry D Killion*

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

 **MileagePlus** UNITED

 **Manage your account online:** www.chase.com/united

 **Customer Service:** 1-800-323-6252

**Mobile:** Download the Chase Mobile® app today



| December 2019 | | | | | | |
|---|---|---|---|---|---|---|
| S | M | T | W | T | F | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |



New Balance

Minimum Payment Due

Payment Due Date
**12/26/19**

## UNITED MILEAGEPLUS AWARD MILES SUMMARY

+ 1 mile per $1 spent on all purchases
+ Additional miles earned on United purchases
+ Additional miles earned at restaurants
+ Additional miles earned on hotel stays

## Total miles transferred to United

Log onto united.com for more information about your MileagePlus account and program benefits or to book travel.

Thank you for using your United(SM) Explorer Card. Use your Card for all your purchases to earn MileagePlus award miles that can be used for flights on United and for many other award options. You'll earn 1 mile per $1 spent on all purchases and 1 additional mile on airline tickets, seat upgrades, Economy Plus®, inflight food, beverages and Wi-Fi purchased from United. You'll also earn 1 additional mile per $1 spent (for a total of 2) on purchases at restaurants and on hotel stays when booked directly through the hotel.

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $37.00.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 3 years | |

If you would like information about credit counseling services, call 1-866-797-2885.

## ACCOUNT SUMMARY

**Account Number: 5524 7540 0878 2417**



Previous Balance
Payment, Credits
Purchases
Cash Advances
Balance Transfers
Fees Charged
Interest Charged
**New Balance**

Opening/Closing Date          11/02/19 -
Credit Limit
Available Credit
Cash Access Line
Available for Cash

**Past Due Amount**
**Balance over the Credit Limit**

FILED DATE: 6/29/2023 4:00 PM 2021CH05392



N Z 01 19/12/01    Page 1 of 3    MA M

**This Statement is a Facsimile - Not an original**

# CHASE ◯

5 5 2 4 7 5 4 0 0 8 7 8 2 4 1 7 0 0 0 0 3 5 0 0 0 0 9 2 2 8 8 0 0 0 0 0 0 0 0 4

P.O. BOX 15123
WILMINGTON, DE 19850-5123
For Undeliverable Mail Only

Get updates on the go
Log on to chase.com/alerts

Payment Due Date: 12/26/19
New Balance:
Minimum Payment:

Account number          2417

$ _____ . _____ Amount Enclosed
Make Mail to Chase Card Services at the address below:

LARRY D KILLION
2114 OXFORD ST
HOUSTON TX 77008-2649

CARDMEMBER SERVICE
PO BOX 6294
CAROL STREAM IL 60197-6294

6028          4178



# MileagePlus
## UNITED ✈

Manage your account online:
www.chase.com/united

Customer Service:
1-800-323-6252

Mobile: Download the
Chase Mobile® app today

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| **PAYMENTS AND OTHER CREDITS** | | |
| 11/12 | | |
| 11/13 | | |
| 11/15 | | |
| 11/15 | IKEA HOUSTON REST HOUSTON TX | 15.67 |
| 11/15 | | |
| 11/16 | | |
| 11/18 | | |
| 11/19 | | |
| 11/23 | | |
| 11/26 | | |

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

# ATTORNEY'S FEES

# IN CLASS ACTION LAWSUITS

# WHAT TO DO ABOUT HUGE (UNREASONABLE?) LAWYER PAYCHECKS



FILED DATE: 6/29/2023 4:00 PM   2021CH05392

## Table of Contents

| | |
|---|---|
| **Class Action Lawsuit Industry** | 3 |
| **Incentive Factors** | 4 |
| **How To Control Award Of Huge Attorney Fees** | 5 |
| **First - Attorney Fee Reduction Action Plans** | 5 |
| **Why These Plans?** | 7 |
| **Short Lesson:   Class Action Lawsuit Boot Camp** | 11 |
| **Advantages of a Class Action Lawsuit, includes**: | 12 |
| **Disadvantage of a Class Action Lawsuit, includes:** | 12 |
| **Attorney's Fees** | 15 |
| **Advantages of Contingency Fee Structure Includes:** | 16 |
| **Disadvantages of Contingency Fee Structure Includes:** | 17 |
| **Attorney Fees Reasonableness Test** | 18 |
| **Use, Misuse and Abuse – Standards of Proof and Other Reforms** | 20 |
| **Justice and Class Action Lawsuits** | 23 |
| **Appendix A –** | 28 |
| **Class Action Lawsuits – Huge Attorney Fee Illustrations** | 28 |
| **Appendix B** | 30 |
| **Example Form Objection To Attorney's Fees** | 30 |
| **Appendix C** | 35 |
| **Example Op=Out Form** | 35 |
| **Appendix D** | 37 |
| **Class Action Lawsuits – Attorney Fee Legislation** | 37 |
| **Appendix E** | 41 |
| **Class Action Lawsuit Postcard Claim Form** | 41 |

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

## Class Action Lawsuit Industry

The Class Action Lawsuit Industry ("**CALI**") is alive and well (some law firms even publicizing their '*Class Action Lawsuit of the Month*', merchandising (carnival barker?) Class Action justice as if it is a used car,



- As post card Class Action Lawsuit mailed notices to victims ('**Class Members'**) (now managed by third party non-lawyer administrators, part of the industry) arrive more frequent than holiday season sales catalogues,
- Accompanied by Class Action representing attorneys demanding huge multi-million dollar fees using the Class Action Lawsuit as a vehicle to secure such fees,
- While Class Members typically each receive a token amount, as Class Action compensation (the so-called Settlement Fund), the vast majority of which do not even know they were victims, and most unaware of the huge attorney fee claim[1].

The smell test of all this does not look or sound right.



Attorney's fee awards in the CALI appear to have settled in on a 'standard' 'rubber-stamp' court approved fee based on 30% to 40% of the Class Action claimed harm – sounds similar to roadside billboard justice using a sledgehammer to crush guilty until proven innocent truck drivers associated with negligence claims while conveniently **NOT** advertising contingency fee subtractions by attorneys from the victims damages, in the 30%? to 40%? range (plus expenses) – feels like the victim has suffered twice. Yet attorney's fees for each Class Action case (whether based on billable hours or contingency fee demands) are supposed to be tested on a standalone reasonableness standard and not a 'one-size-fits-all' demand[2].

---

[1] Rare is the Class Member who will take the time to study court documents to educate themselves about the attorney fee over-reach, and instead, as tactfully understood by representing counsel, lured into the sense of some easy money sourced from the Class Action lawsuit nominal compensation award, sort of like being a surprised winner in a raffle not knowing you were even entered to participate.

[2] Most Class Action lawsuit attorney fee demands are accompanied by voluminous pages (sometimes rivaling the number of pages about the merits of the case) explaining why huge fees are relevant, as well as comparing the current case with prior cases as additional justification why the size of the award is prudent. Both of these arguments

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

### Incentive Factors

Incentive factors causing this Class Action Lawsuit industry growth, especially the award of huge attorney fees (leaving the real victims – if in fact they are victims - of a case with only a nominal award), includes:

- **Incentive No. 1:  Huge Lawyer Fees**.  A review of randomly selected Class Action federal court files[3], illustrates the magnitude of huge attorney fee award incentives, accompanied by small nominal claim awards to individual Class Members.  The example cases cited in Appendix A indicate typical individual award to Class Members of less than $20 and many in the few $100s,  while multi-million dollar awarded attorney's fees representing 25%[+] of **TOTAL** award claim for a minimum average range of **per attorney** fee of $222,000 to $287,000.  The per attorney fee is understated, since the average calculation assumes the estimated number of assigned attorneys to a case, work full time on the case, which is not realistic, and consequently dramatically understates the real average attorney fee take;

- **Incentive No. 2:  'Deep-Pocket' Defendants**.  Many/Most [corporate] defendants in Class Action Lawsuits who honestly try to comply with applicable consumer and investor laws, are well known, established and trusted, and highly regulated, publicly stock traded companies: (Appendix A publicly traded companies include:  Nielsen-NYSE, T-Mobile-NASDAQ, American Airlines-NASDAQ, Oracle Corporation-NYSE), are financially sound with 'deep-pockets' and capable of paying huge attorney fees, thus 'easy-worth-the-effort' litigation incentive targets.  These businesses routinely retain experts to give them advice in regard to compliance with relevant consumer and investor laws and regulations.   These compliance characteristics are indicative of a company NOT out-to-cheat its customers or investors.

- **Incentive No. 3:  Speculative Law Compliance – Use, Misuse, Abuse**.  Consumer and investor laws on which most Class Action lawsuits are based, are not 'black-and-white' and easily interpreted as to what is right and what is wrong, but are complex and subject to wide ambiguous interpretations – for example security fraud  and consumer protection laws – making compliance with these laws challenging even for the most compliant minded company – especially for honest defendants.  Because of the speculative nature of these laws, this is fertile ground for litigation minded lawyers having the incentive to craft a case, whether real or illusionary, that places doubt in jury's and Jurist's minds whether or not such speculative laws have been violated.  As in all things in life, stuff (in this case laws) can be **used** for their intended public protection purposes, or **misused** or **abused,** for whatever reason, such as an over-reaching grant of  attorney fees.

Awareness of these Class Action Lawsuit litigation incentives is nothing new, as there is a history of studies, reports and papers (see the Bibliography of examples of such), discussing and analyzing the pros and cons of Class Action lawsuits, many focusing on and criticizing what justice is all

---

are inconsistent with a one-size-does-not-fit-all lawyer fee claim.  The harder one has to argue for something is all the more reason to instill a sense of suspicion especially where the weight (and not the quality) of the justifying argument is not in the merits of the argument but in the volume of paper being used to cover up fictional proof.

[3] Appendix A is a summary of recent Class Action lawsuits illustrating applications for huge attorney's fees coupled with nominal awards to Class Member victims.

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

about and the disparity between huge plaintiff's attorney's fees paid by honorable defendants coupled with nominal award claims paid to the real victims.   While many of these reports are scholarly and  well researched, they have had little impact on reducing – so-far, or at least shifting, huge attorney fee awards and filtering out unjustified Class Action Lawsuit claims or putting more justified compensation into the pockets of the real victims and less in the pockets of representing attorneys.

*Many of these reports ask the question:*

## *Have Class Action lawsuits merely been used as a vehicle for attorneys to secure huge fees with justice a secondary objective[4]?*

### How To Control Award of Huge Attorney Fees

This paper does not repeat the arguments cited in historical writings…***BUT SUPPLEMENTS*** some new dimensions to the topic.

- **First**:  By suggesting **self-help** and **law-help** action plans the public can adopt to (i) influence the adjustment to huge attorney fee paychecks in Class Action Lawsuits by (ii) honestly assessing the merits of a Class Action claim and whether or not Justice is being served  - and not attorney fee greed AND any attorney fee award claim based on 'honest' reasonableness tests.
- **Second**:  By providing this summary discussion of why such self-help and law-help plans make sense.

### First - Attorney Fee Reduction Action Plans

- **Self-Help**
    - **If attorney fees are viewed as being unreasonably huge (does not pass the smell test[5]), Class Action members should file written Objections with the Court, challenging the unreasonableness of such fees.  (Example objection form provided in Appendix B).**
    - **Class members electing *NOT TO PARTICIPATE* ("Opt-Out")[6] in the Class Action lawsuit. (Example opt-out form provided in Appendix C).**

---

[4] Not uncommon, a huge number of pages filed in Class Action lawsuits are dedicated to defending huge attorney fee applications compared to defending the merits of the actual Class Action Claim.

[5] Like pornography, often you know it when you see  it.

[6] The United States litigation centric legal system and State and Federal Class Action laws, have opted for the "opt-out" form of Class Action Lawsuit claims.  This means the unaware public are 'automatically' ("opted-in") as a Class Member participant and only by pro-actively filing an "opt-out" written notice with the Court will such Member NOT be part of the Class Action Lawsuit result.  As later recommended, the laws should be changed such that the public are NOT automatic members of a class, and only by affirmatively filing an "opt-in" statement with the Court will they then be Class Member participants.  This "opt-in" standard will go a long way toward eliminating non-merit-based Class Action cases (let the affected public decide) as well as substantially reduce the misuse/abuse tactics associated with award of unreasonable legal fees.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

- **Law-Help**
  - **The public contact their elected government Representatives requesting they pass new laws…**
    - **Laws designed to promote reasonableness tests of the award of attorney's fees in Class Action Lawsuits such as a realistic fee formula or caps on awards. (Example contact form provided in Appendix D).**
    - **Laws or rules governing the standard of proof for any Class Action Lawsuit claim to be based on the more stringent Clear and Convincing Evidence standard (and not Preponderance of the Evidence).**
    - **Laws designed to simplify,  easy to understand, postcard Class Action lawsuit notices, clearly and conspicuously describing (1) what potential claim is being sought, (2) how much (cash and non-cash) in total and how much each individual Class Member may  be entitled, (3) how the size of the Class Action Claim and attorney's fees are effected if Class Members op-out of participating in the lawsuit, and (4) how attorney fees are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer. (Example notice form provided in Appendix E).**
    - **Independent Commissions (including non-lawyer participants) be used by the Court to determine if a case should be classified as a Class Action Lawsuit and a similar independent Commission used to assess reasonableness of attorney fee claims.**
    - **Laws regarding the prohibition of contingency legal fees in regard to Class Action Lawsuits, requiring attorneys to justify their fee as being reasonable in regard to hourly rate and time spent on a case.**
    - **Laws requiring prior to a lawsuit being certified as a Class Action Lawsuit, the defendant shall be given a mandatory prior notice (the "Class Action Pre-Certification Notice" or "CAPCN" letter), of such planned certification request, and an opportunity for defendant to resolve the case, avoiding the racking up attorney's fees by Plaintiff's counsel.**
    - **Require any Class Member to act proactively and opt-in to participate in a Class Action lawsuit (with the default being the public are NOT automatically opted-in to a Class Action Lawsuit), unlike the current model where Class Member default is opted -in and to opt-out, the Member must proactively file an opt-out document with the Court.**
    - **Prohibit the payment of Incentive Payments to Representing Plaintiff's, since such payment is in the nature of a bounty paid for winning the race to the Court house to first file a lawsuit, is merely an incentive for Court house racers to promote litigation for the purpose of winning a bounty instead of seeking justice and is an unconscionable taking of assets belonging to Class Members.  The Class Members are all victims and to treat some grossly different than others shocks the**

conscience of justice and should likewise shock the conscience of the Court.

## Why These Plans?

- **Objection:** The law requires prior to the Court's approving of a Class Action Claim that it be tested for being just, fair and reasonable and requested attorney's fees, be tested for 'reasonableness'. Each test is on a case-by-case basis, no one-size-fits-all (at least that's the objective test –yet awards regularly migrate to a 30% to 40% 'standard' of recovery and reasonableness test arguments citing as one of the primary arguments for justifying a fee request based on other cases as a consistent basis of award).

  o Attorneys regularly cite as a part of their reasoning why their [huge] fee request is reasonable because it is consistent with other Class Action Lawsuits (30%-40% contingency fee rationale?) which is contrary to the one-size-does-not-fit all reasonableness test reasoning.

  o Counsel argues why they should be certified as Class Action Lawsuit Class Representing Counsel based on their skills and experience, then argues why a [huge] fee is required because of the complexity (speculative nature?) of a case. It is inconsistent on one hand Counsel will argue it is skilled ostensibly requiring less time/effort to handle a case, yet when it comes to their fee, such fee should be [huge] regardless of the skill factor. *Rare is the worker who argues for a cut in pay.*

  o Class Action Member attorney fee Objections filed with the Court, helps remind the Court of its reasonableness test obligations – especially since the Class Member is the victim and for every dollar paid attorney's is often one less dollar paid to the real victim (at least in contingency fee cases). If the victims don't complain, it would be natural for a Court to *assume* victims are ok with the requested fee, which naturally dampens the Court's enthusiasm, with a busy Court docket, to pursue a deep dive test of reasonableness. It's not that victim's don't have an interest in the case and reasonable attorney's fees, the complexity of filing Objections with the Court as well as studying Court filed documents, deters many well intentioned victims to themselves committing to a deep-dive analysis – and astute Plaintiff's counsel are aware of this lethargic tactic that Class Members don't have the time or initiative or understanding to file a cumbersome objection associated with a few buck claim result.

- **Opt-Out:** If many/most Class Action Members collectively elected not to participate in a Class Action Lawsuit (*opt-out*), then the Claim amount should be automatically reduced (since there are less 'victims'), and if there is a request for [huge] attorney's fees, typically based on a contingency fee (attorney's being paid a percentage of the Claim awarded to the real victims), then the fee would be less. And even if a fee is not based on a contingency payment, a huge attorney fee and trivial victim award compared to that fee, will expose the unreasonableness of the fee claim.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

- o **For example, a 30% fee of $100 million Claim for 100,000 Class Members means $30 million to lawyers and $700.00 to each Class Member, is a lot less than 30% of $500,000 Claim for 500 Class Members means $150,000 to lawyers and $700.00 to each Class Member. Still a disparity between attorney fee and Class Member award, but tempers lawyer's appetite to promote a questionable suit given their fee is much reduced (tension between values associated with earned fee and justice incentives). Or in the alternative, an attorney fee claims for $30million, regardless if the victim remedy is $100million or $0.5million. That smell test thing again.**
  - o **In many Class Action lawsuits, the amount awarded to victims is small and nominal in amount (a few 100 dollars or less, or a discount coupon), while attorney's fee paychecks can potentially exceed $200,000 per lawyer (most likely an understatement since it depends on how many attorneys worked on a case and how long and hourly rate).**
  - o **Class Action members 'giving up' a small nominal award in exchange for stopping, over the top [huge] lawyer fees, is a powerful consumer weapon.**
  - o **While Class Action Lawsuits are designed to punish illegal business practices that harms a large number of the public, always be mindful that payment of Class Action nominal claims and [huge] attorney's fees, can result in the business adding that cost back into the price of the business goods or services which means consumers and investors will in the future end up paying for the illusion of a victorious Class Action win.**
  - o **While a business reputation may suffer a little at first, if at all, generally after the lawsuit combat is over, all is forgiven and the dust settles, it's back to business as usual – except lawyer's fat paychecks have been cashed and deposited, and consumers and investors get stuck with funding the 'hidden' bill.**

- **Attorney Fee Law:** **Request for attorney's fees in a Class Action lawsuit, is often based on a business alleged to have violated some law adversely affecting many parties (such as a consumer protection or securities fraud law), and that law including the statutory right to plaintiff's attorney's fees to be paid as part of the claim by a losing defendant (in contrast to the general 'American Rule' where parties pay for their own attorney's fee regardless of who wins or loses).**
  - o **Laws are not written for Class Action Lawsuits, but to seek justice for individual victims for a particular cause of action including compensating the victim for its incurred attorney's fees as part of the award against bad business practices.**
  - o **Lawyers favor taking cases and bringing lawsuits based on a law that includes award of attorney's fees, especially where the defendant has 'deep pockets' (financially strong) and can afford to pay [huge] fees.**
  - o **There needs to be a Class Action attorney fee law designed to ensure any award of attorney's fee to be based on a statutory and not discretionary 'reasonableness standard', that comes into play any time there is a Class**

Action Lawsuit. Ideally, award of attorney fee would be influenced by the amount EACH victim is awarded – low victim award, low attorney fee – especially since justice is blind to the magnitude of awarded attorney fees.

o In many Class Action Lawsuits, attorney's fees are determined as a percentage of the victim's Claim amount (so called contingency fee). Consequently, the 'losing' defendant in a case, either as a result of a trial judgment or settlement, is somewhat indifferent[7] about the size of the attorney fee since it is deducted from the Claim amount. Even so, such a deduction may not be in the best interest of the Class Members for not receiving fair, reasonable and adequate compensation for such victim's Class Action losses due to such legal fee deduction.

o It is more prudent regarding Class Action Lawsuits, for Class Action laws to prohibit contingency attorney fees (similar to criminal or domestic relation cases), leaving the attorney to honestly defend its time spent on the case and hourly rate, separate and apart to any Claim award paid to Class Members. Such hourly rate attorney fee defense will attract a more systematic and objective assessment of the fee, since (1) if the fee is paid by the victims, the Court will have a much clearer understanding of the details and basis of the hourly rate based fee request, and (2) if the fee is paid by the defendant, the defendant will be in a more realistic and efficient tester of the reasonableness of an hourly rate based fee claim, since the defendant is the one paying the fee.

- **Standard of Proof:** Because of the unique nature of Class Action Lawsuit, that in the context of Justice for ALL[8], places excessive defense burdens on a defendant, justice should demand a Clear and Convincing Evidence standard of proof (and not Preponderance of the Evidence standard) associated with certifying a case as a Class Action lawsuit as well as the same standard of proof to be used in the trial of the matter. This higher burden of proof properly places an incentive on plaintiff's, Class Members and Class Counsel, to honestly pursue a case that has merit and one suited for Class Action and based on the objective of seeking justice for ALL, and not merely an 'easy' Class Action Lawsuit case brought for revenge or a vehicle to secure huge attorney's fees, with justice for harmed citizens as a secondary objective.

- **Class Action Notice:** Postcard claim notices alerting Class Members to a Class Action Lawsuit, are difficult to understand and often require the reader to go online through the internet (or retain their own counsel at their expense), to obtain better informed detail information (if they know how to request online information as well as where to locate information of interest and interpret it).

o The postcard claim notice needs to be much more user-friendly, easy to read and understand, and clearly advise the reader what the Class Action lawsuit is all about, how much is being demanded from the defendant, how much each Class Member will be entitled and full disclosure of how attorney fees are

---

[7] Unless the settlement is artificially pumped up to include attorney's fees as additional compensation instead of the resolve being based on what harm has been incurred by Class Members absent attorney fee claims.

[8] Justice for All, is in the context of the Nation's founding documents (U.S. Constitution, Bill of Rights, Declaration of Independence, etc.), asserting justice to prevail for both plaintiffs AND defendants.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

being determined, what the total attorney fee could be and the average paycheck of how much each lawyer working on the case will receive.

- **Class Action Pre-Certification Notice or "CAPCN" letter**:  A practical remedy to help deter unreasonable attorney fee demands, prior to a Court certifying a case as a Class Action lawsuit, the plaintiff and plaintiff's counsel in such case shall be obligated, to give defendant prior notice (the "CAPCN" letter) which provides clear and unambiguous information concerning:
    o The legal rationale on what the Class Action complaint is all about (a 'show cause' testament);
    o How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee;
    o The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action Lawsuit;
    o Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action Lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.

- **Opt-In Class Action Participation**:  Class Action laws should be modified that require Class Members to affirmatively by written notice to the Court, to "opt-in", in order to participate in the Class Action Lawsuit.  Most non-USA legal systems require an 'opt-in' standard in order to participate in a Class Action Lawsuit.  The history of this opt-in standard illustrates that Class Action Lawsuit filings are few in number and not abused by plaintiff's counsel BUT more important, has NOT resulted in numerous lawsuits by non-Class members bringing their own action – which deters USA plaintiff's counsel opt-out justification arguments that an opt-in standard will cause an explosion of small cases…not true.  An opt-in standard is a great tool to modulate the acceleration of the USA Class Action Lawsuit industry growth…driven much by attorney fee greed.

### Background:   Class Action Lawsuit Boot Camp

**Class Actions** (also known as a **Class-Action Lawsuit, Class Suit, or Representative Action**) are most common where the allegations usually involve at least 40 people who the same defendant has allegedly been injured in the same way. Instead of each damaged person bringing one's own lawsuit, the Class Action allows all the claims of all Class Members—whether they know they have been damaged or not—to be consolidated and resolved in a single proceeding through the efforts of **Representative Plaintiff(s)** and Representative Plaintiff's lawyers appointed as **Class Counsel**. The Class Action binds (by default) all Class Members (victims) of the Class (including being bound by the attorney fee arrangement agreed with the initial Representative Plaintiffs in a Class Action Lawsuit – a huge exception to the general rule where attorneys and their individual clients mutually agree to fee arrangements), unless a Class Member gives timely notice to opt-out and not be represented by such Class Action.   Depending on the Class Action details, any victim that opts-out, may or may not preserve its right to bring its own separate lawsuit (and individual attorney fee arrangement).

There is a familiar saying about "strength in numbers." For example, a single person who was misled into paying 50 cents too much for an illegally overpriced stick of deodorant doesn't have enough incentive to go to the trouble and expense of litigation just to recover that small amount of money.  Even-so, because the United States has had a culture of being litigious (billboard justice has become the norm), regardless of the merits or size of a claim (perhaps on occasion Caveat Emptor- buyer beware -  is the better and more honest remedy), U.S. centric attorneys are quick on the lawsuit panic button, because the fabric of U.S. justice promotes win-lose sledge hammer litigation mindedness accompanied with huge attorney fee awards  and not mature hand-shake win-win resolve. (Restitution is better placed in the Board Room and not the Court Room).

It's when many people—often tens of thousands, or more—are honestly harmed a similar way by the same problem, that a Class Action lawsuit _**may**_ be worth bringing. (_**May**_ in the sense every little wrong does not justify a remedy – as some assumption of risk and impact is the more honorable and logical thing to do – just like bringing up a child, until a boundary is known and not to be broken, punishing a first-time innocent offender does nothing to promote the development of a child into healthy adolescence).  Uniting all similarly affected parties into a plaintiff's Class (Class Members) has the effect of raising the stakes significantly for [corporate] defendants. That's part of the law of the jungle.  It's more likely that an honorable Class payoff will be worth fighting for, and companies that face the prospect of Class Action liability, have a strong incentive to settle a merit based claim and correct their behavior (even though many have acted innocently and without intent to do wrong) and implement better (learn from their unintentional mistakes) business practices, designed to prevent bad (whether intentional or unintentional) practices – which illustrates a merit based circumstance, and not one based on astute plaintiff's legal counsel crafting a claim (and sugar plum vision of huge attorney fee award) because of the uncertainty and speculative nature of the underlying law.

Even-so, small claim litigation revenge tactics should [must?] always be tempered (rejected?) with what justice is all about.  All small claim infractions do not justify seeking combat lawsuit justice, more times than not premised on seeking revenge – where in many cases, attorney's stir the

emotions pot of the 'victims' to use the litigation hammer and unjustifiably beat up the alleged wrongdoing but honest defendant. In whose best interest are Class Action Lawsuits brought? For alleged victims? Huge fee greedy attorneys? Correcting a real wrong? Correcting an illusionary wrong? Justice for ALL?

### Advantages[9] of a Class Action Lawsuit, includes:

- **Efficiency**. Combining meritorious cases in a Class Action can increase the efficiency of the legal process and lower the costs of litigation. In cases with common questions of law and fact, aggregation of claims into a Class Action may avoid the necessity of repeating days of the same witnesses, exhibits and issues from trial to trial. That's the theoretical argument…but in reality, the likelihood of a plethora of case filings is highly unlikely.
- **Meaningful**. A Class Action may overcome the problem that meaningful small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A Class Action ensures that a defendant who engages in widespread harm (whether intentional or not) – but does so minimally against each individual plaintiff – must compensate all affected individuals for their injuries. But in all cases, is that justice? (Every little wrong may have a remedy but that remedy may be a mature assumption of risk attitude and get on with life and not revenge or a course of conduct to create a vehicle to justify an award of large attorney fees way out of proportion of victim awards).
- **Behaviour Incentive**. Class-Action cases may be brought to purposely and honorably change behaviour (whether by intentional or unintentional acts) of a class of which the defendant is a member.
- **Race To the Bank**. In "limited fund" cases (which means the defendant(s) do not have 'deep pockets' and not financially strong), a Class Action ensures that all plaintiffs (victims) receive some relief and that early filing plaintiffs (they win the race to the bank) do not raid the common fund (owned by the shallow pockets of the defendant) of all its assets before other plaintiffs may be compensated.
- **Confusion**. A Class Action avoids the situation where different court rulings could create incompatible standards of conduct for the defendant to follow.

### Disadvantage of a Class Action Lawsuit, includes:

- **Caveat Emptor (Buyer Beware – Victim Liable for Certain Consequences)**. Class Action procedures are arguably inconsistent with due process mandates and unnecessarily promote litigation of otherwise small, trivial claims, and challenges what Justice is all about. A certain amount of risk is expected to be assumed by the public without recourse for someone else to pay in all circumstances. There needs to be a rational balance between seeking justice and seeking revenge or a vehicle to achieve an award of large attorney fees. What is honorable and what is greed?

---

[9] While these advantages in a theoretical sense make for good ideological arguments…and justification behind plaintiff's and their counsel promoting Class Action Lawsuit cases, the reality of life is that it is highly unlikely a plethora of individual cases will flood the courts with nominal claims, nor inconsistent rulings influence the cause of Justice.

- **Abuse**.  The preamble to the (Federal) Class Action Fairness Act of 2005, implies that some Class Actions are abusive, harm Class Members with legitimate claims, especially where most defendants have tried to honestly act responsibly, and such abuse, adversely affecting interstate commerce (legitimate businesses stops providing useful consumer goods or services in fear of defending costly abusive Class Actions), and undermined public respect for the country's judicial system and what Justice for ALL means (the Court's permitting abusive Class Actions to be pursued – sometimes as a vehicle for Class Counsel to secure huge fees while the real victim's receive nominal value).
  - o More times than not, Class Action Lawsuit defendants are reputable companies. These companies utilize their own legal and business experts who give advice and counseling and what to do to comply with relevant State and Federal laws.  Rare is the reputable company that intentionally violates a law but in contrast, acts responsibly for law compliance.  Even-so, many laws are written so broadly and many ambiguous as to what is right or wrong, and because of business complexity and broad interpretations of the law, stealthy plaintiff's litigation counsel are capable of crafting an argument (with or without merit) that often creates an illusionary environment of uncertainty (the 'fog index') whether or not a reputable company violated a law.  An attorney's job is to represent the best interest of their client and earn a fee (legal representation is a vocation and profession) AND comply with professional standards of conduct – the ethics of law – Justice for ALL mandates.  Because of law interpretation uncertainty and speculation, reputable companies will, without any admission of liability, often settle a case, to avoid unnecessary defense expenses, wasted time, and unwanted bad publicity – since rare is the opportunity for the defendant to honestly present the more honest defense facts, as the consuming public do not have the time or inclination to listen to such (that's human nature that plaintiff's counsel understand and use to their benefit).  (Not unlike the quick message broadcast in roadside billboard lawyer advertisements, advising that the 'hammer' goes after truck drivers involved in accidents – automatic guilt and remedy – so much for due process.  The ugly side of Justice).
- **Victims Are Secondary**.  Class Members often receive little or nominal benefit from Class Actions.
  - o Examples
    - ▪ Huge fees for the attorneys, while leaving Class Members with token coupons or other awards of little or nominal value;
    - ▪ Unjustified awards are made to certain plaintiffs at the expense of other Class Members (such as Representative Plaintiff's requesting priority payments for them having started the lawsuit or acting as Representative Plaintiffs); or such Representative Plaintiff's being paid a 'bounty' fee for having initiated a case that prompted the Class Action certification, and hence an 'entitlement' to a bounty that other Class Members, who merely missed out on being the initial claimant, is not entitled to such bounty.  This

FILED DATE: 6/29/2023 4:00 PM 2021CH05392

- bounty is an unreasonable win-fall for such plaintiff's and contrary to ALL Class Members being treated the same;
  - Confusing published and mailed Class Action postcard claim notices, that interfere with Class Members being able to fully understand and effectively exercise their rights;
  - Laws require the Court's approval of all Class-Action settlements, and in most cases, Class Members are given a chance to opt-out (not participate) in Class Action settlements. Even so, though Class Members, despite being given opt-out post card claim notices, may be unaware of their right to opt-out because they did not receive the notice, did not read it or did not understand it.
    - The Class Action Fairness Act of 2005 attempts to address some of these concerns…
      - o An independent expert may scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.
      - o Since many Class Members do not use or spend their coupons (many are trashed or forgotten), the award of contingency attorney's fees includes the value of unused coupons which means such fees should be lowered in regard to unused coupons. Even so, coupons are not customarily part of Class Action lawsuit settlements.
- **Who Is the Victim?** Various studies of Class Actions in federal court found that many plaintiffs (victims) received only a tiny fraction of the money awarded while plaintiff lawyers frequently secured a huge, highly disparate share of the settlement than their clients – the real victims in the lawsuit. Many Class Action lawsuits can be viewed as merely a vehicle or conduit through which attorneys can secure huge fees and not an honest mechanism of seeking Justice for real victims.

State and Federal laws provide for the bringing of Class Action Lawsuits. Most of the time a Class Action lawsuit is brought in federal court and not a State court, because:

- The victims (plaintiffs) in the lawsuit are resident in many States (diversity of citizenship), consequently, federal court is viewed as being fairer to all plaintiff's instead of those residing in any one particular State;
- Federal Courts are more experienced with hearing Class Action Lawsuits;
- Class Action Fairness Act of 2005, is a federal law that makes it easier for Class Action Lawsuits to be heard in federal courts.

An individual lawsuit often starts out with one or more initial plaintiffs (victims), claiming some business or entity violated a Federal (or State) law. Coincident with that case, the underlying complaint indicates there are many more similarly and adversely affected victims.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

Attorneys who accept such a 'small' case, recognizing there are many potential victims with similar claims, will petition a [federal] court to *certify* the case as a Class Action lawsuit (thereby turning a small case into a big case on which to base large attorney fees), naming the initial plaintiff's as 'Representative Plaintiff's' (or lead plaintiff's) in the Class Action claim and the attorneys requesting the Court (because of counsel's Class Action skills) to also name (certify) them as Class Counsel, thereby representing all victims. By such Representative Plaintiff winning the race to the courthouse and advancing a Class Action certification claim, that initial plaintiff filing and certification filings has automatically resulted in many rights of other potential Class Member plaintiff's being denied: such as (1) the right to select counsel and agree an attorney fee arrangement, (2) the right to pursue a claim or not, and (3) the right not to be forced into a lawsuit as a participant since State and Federal Class Action laws default to an automatic opt-in standard of participation.

After the Class Action Lawsuit is well advanced – sometimes many months or years (where Class Counsel has reached a tentative settlement agreement with defendants for both victim's damages and attorney's fees or resolved a case at trial), Class Member's for the first time become aware of the Class Action Lawsuit, by receiving a postcard claim notice in the mail:

- Advising them of the lawsuit (most not even aware they were a party to a lawsuit),
- Awareness that they are an identified Class Member victim,
- Guidance on where to obtain information (usually on-line through the internet), that includes guidance on what the suit is about and what remedy Class Members may be entitled and how to file a claim as well as some general reference to filing objections (regarding adequacy of the claim settlement or reasonableness of requested attorney fees).
- The notice will also cite unless the Class Member timely opts-out (elects not to participate in the Class Action lawsuit) of the suit, they will automatically be included, generally at no cost, and will be bound by any outcome of the suit or settlement.

When plaintiff's Class Counsel wins a Class Action lawsuit, or when they secure a pre-trial settlement with the defendant, legal fees and court costs are typically demanded in the award or Claim. This Total award or Claim is often referred to as the "Common Fund," from which legal fees, as well as recovery for Class Members damages, are paid, unless a separate claim is made for attorney's fees on top of total Claim to be awarded Class Members.

### Attorney's Fees

While the practice of law seeks Justice, it's still a business, and unless an attorney has agreed to work pro bono (free of charge, a public service), an attorney can expect [reasonable] compensation in exchange for their legal services.

Federal and State Courts in the United States in regard to attorney's fees, follow what is called the 'American Rule'. What this rule means is that each party (both plaintiffs and defendants) in a lawsuit are responsible for funding and paying their own attorney's fees, no matter who wins the case.

However, this Rule can be modified by either…

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

- **Contract**:  Parties to a contract can agree under certain circumstances, one of the parties will pay the legal fees of the other in regard to a particular dispute,  or
- **Statute**: If there is a law (a statute) that specifically provides as part of its remedies, award of attorney's fees to a successful party – normally the plaintiff (i.e., a defendant is ordered to pay plaintiff's attorney fees).  Many times, such statute-based award of attorney's fees can be many times greater than the value of actual damages suffered by a successful plaintiff, or
- **Settlement**: Plaintiff's attorney fees could also be paid by defendant, as a result of the defendant settling a case and volunteers to include payment of plaintiff's attorney fees as part of the settlement.  (Theoretically, attorney's fees agreed by defendant as part of the settlement, is a form of a contract whereby, the attorney's client acquiesces in that fee arrangement as if the attorney and their client negotiated such fee arrangement).

The details of how attorney fees are typically determined and calculated is a matter of negotiated contract between an attorney and their client, and can be:

- An agreed hourly rate billed by the attorney and paid by the client (a 'fixed fee' arrangement), or
- A contingency fee, where the attorney does not charge a separate fee, but will take a percentage (25% to 40% as examples) out of a successful award (hence the attorney fee is contingent on winning a case).  If the attorney is not successful in winning a case (either by going to trial or securing a pre-trial settlement), then it will not receive a fee, or
- A combination of fixed fee and contingency fee.

In a Class Action Lawsuit, the Representative Plaintiff is the _**only**_ plaintiff who negotiates attorney fee arrangements for the Class Action.  All other Class Members do not participate in such negotiations, and as a consequence, if they participate in the Class Action (and not opting out), then those Class Members have impliedly and automatically agreed with the attorney fee arrangement established between Class Counsel and Representative Plaintiffs.   Typically, Representative Plaintiffs will agree with Class Counsel to a contingency fee (and not a separate out-of-pocket 'fixed fee' hourly rate – unless the claim is based on a statute that provides for award of attorney fees), which means Class Counsel will deduct its contingency fee from any Class Action successful award (either determined by trial or pre-trial settlement).

*Even so, any attorney fee arrangement must still be tested by the Court for reasonableness.  This reasonableness test applies even with "clear sailing" agreements which are cases in which the defendant agrees to a noticeably large award of attorney fees and agrees not to object to that amount (perhaps a defendant quick dispute resolution tactic whereby Class Counsel are incentivized with a quick paycheck while the victims award may be lacking – which may challenge the ethics of representative counsel giving priority to representing  the client's best interest and not preference to the attorney's paycheck).*

**Advantages of Contingency Fee Structure Includes:**

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

- No Up-front Fees. Helps give those lower-income clients better access to legal assistance and the court system.
- Incentive.  If attorneys don't get paid unless client gets paid (win's its case), the attorney will be highly motivated to do everything in their power in order to get their client the best possible result.  A performance-based agreement.
- No Costs for Losses. Lawyers are willing to risk not collecting a fee for the work they put into things.
- Contingency fees are helpful in cases where a client is short on funds and has an otherwise costly or complicated case.

## Disadvantages of Contingency Fee Structure Includes:

- Encourages attorney to pursue non-merit case as nothing to lose but their time and foregoing other clients, and in a slow work environment, not much may be given up, or the pot of gold huge attorney fee incentive is worth the gamble to pursue a case[10].
- A contingency fee arrangement can and often does cost a client more than a regular hourly fee.
- Once the parties agree on the contingency fee, the client owes the agreed upon percentage no matter how long the case will take–whether it takes a year or a week or two hours. This is especially true in the rare 'clear-cut' cases that may only require a few phone calls and a couple of hours of work in order to settle.
- Incentivized contingent fee lawyers may settle too soon and for too little to acquire a quick paycheck, and the client suffers.
- Contingent fees are usually too high relative to the risks that attorneys bear in a particular case, especially where they control whether or not to take a case and have already run their own risk of winning assessment analysis not shared with the client.  (Is this insider knowledge and not in the best interest of the client?)

Since Class Counsel represents all Class Members and not just the Representative Plaintiffs, the Court must approve any settlement award for all Class Members including attorney fees.

Approval is conditioned on the _settlement_ amount being _fair, reasonable and adequate_, and _attorney's fees_ are _reasonable_.

Whether a Class Action settlement agreement is fair, reasonable and adequate, has been a bone of contention for companies who have pushed for **tort reform**, particularly as it concerns awards of huge attorney fees in Class Action litigation. These companies often complain about the huge awards of attorney fees that often change hands in Class Action settlements the amount of which are often extremely greater than actual damages claimed by plaintiffs, and they argue that **damage caps** and limits on attorney fees are necessary for the sake of justice, reasonableness and fairness.

---

[10] While there is a risk in a contingency fee structured case of losing and not receiving a fee, attorneys who accept contingency cases are normally skilled at assessing the risk of recovery, and consequently are comfortable when they take on such cases that they  more than likely will receive a fee.  Not unlike the contingency fee-based billboard litigation hammer attorney seeking justice from truck driver accident bad guy defendants (and their insurers). Such sound bit messaging masks over the more honest concepts of justice, due process, unintentional accident, factual circumstances and a few other miscellaneous tid-bits that populist minded ears don't have time to listen to.

**Attorney Fees Reasonableness Test**

Court's look to a variety of resources to assist them in determining if requested attorney's fees in a Class Action lawsuit are reasonable. If the court finds that the attorney fee agreement is unreasonable or unfair, the court may step in using its discretionary powers and either invalidate the agreement or amend it to make it reasonable.

Four significant resources used by the Court to test for reasonableness include:

1. American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees (many State Bar Association Rules of Professional Conduct are patterned after the ABA Model, and an attorney is duty bound to adhere to the Rules of Conduct else suffer consequences which could include disbarment from practicing law);
   o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
   o Traditional fee analysis to determine reasonableness takes into account…
     ▪ the time and labor required,
     ▪ the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
     ▪ the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
     ▪ the fee customarily charged in the locality for similar legal services;
     ▪ the amount involved and the results obtained;
     ▪ the time limitations imposed by the client or by the circumstances;
     ▪ the nature and length of the professional relationship with the client;
     ▪ the experience, reputation, and ability of the lawyer or lawyers performing the services; and
     ▪ whether the fee is fixed or contingent
   o The traditional approach to proving attorneys' fees is for an attorney—sometimes the same attorney representing the party seeking fees—to testify as an expert on what are reasonable fees for the case (a little self-serving but them's the rules).

2. Federal Rules of Civil Procedure, Class Action Rule 23;
   o The Court '*may*' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3. Class Action Fairness Act of 2005;
   o Class Action settlements [damages and attorney's fees] are subject to Court approval,
   o Reports are to be filed with the House of representatives and the Senate containing
     ▪ Recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit;
     ▪ Recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action

settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation;

- Recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement.

4. Court rulings, in particular attorney fee reasonableness test criteria described in

- o Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
- o Determining reasonable fees under the **lodestar method** is a two-step process.
  - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
  - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
- o Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
- o Reasonableness takes into account the factors used by the traditional fee determination.
- o Lodestar, presumably refers to a number that provides a guiding point-or lodestar-in the determination of an appropriate attorney fee award.

What is evident from assessing the resources used to determine what is or is not a reasonable attorney fee, is fraught with many subjective elements and not much independent deterministic[11] tests.

Class Counsel submit copious documents defending its request for attorney's fees. The extent of this documentation can be voluminous and taxes the limited resources and busy dockets Courts have to study in detail all documents, consequently a challenged circumstance to fully assess all allegations and supporting documents. At times the sheer weight of filed documents can be a substitute for believed validity and justification. Elegant simplicity is more beneficial and honorable than intellectual complexity. The observation is that better guidance is needed in resolving what is or is not reasonable in regard to attorney's fees and perhaps time for updated legislation to provide clarity and reduce the fog.

Consequently because of this absence of certainty, or at least a more determined method of attorney fee computation in Class Action lawsuits, astute counsel is free to argue for just about any fee they wish and paint it with broad strokes of reasonableness and justification whether in fact or

---

[11] As in physics, deterministic refers to a cause-and-effect result which means if the same input to a situation is used again, then the same result will occur. A consistent and expected result. In contrast, a probabilistic result means if the same input is used again in a situation the outcome can be different. An inconsistent and uncertain result such as a 50% chance of such and such happening. Chaos is the extreme of the two which refers to a circumstance that is totally unpredictable regardless of the input.

illusionary.   Just how long is a piece of string?  Where is justice in all this, other than the rubber stamp embossed with '**APPROVED**'?

**Use, Misuse and Abuse – Standards of Proof and Other Reforms**

As in most things in life, we humans can use a tool or seek justice, in the spirit of what was honestly intended – a proper use, or take a less honest path of misusing or abusing the circumstance.

The more honest argument of the extent the Class Action industry and the participants in that syndicate have often wandered from the righteous path of intended honorable use to less honest misuse or abuse paths are illustrated in the following examples…

**Certification Reform**.  Original or Representative Plaintiffs seeking to certify a case as a Class Action lawsuit under Federal Rules of Civil Procedure, Rule 23 must plead and prove: (1) an adequate class definition (precise and unambiguous, identity of class members is reasonably determined excluding remote and unlikely victims) (2) ascertainability (fairly easy process to identify class members), (3) numerosity (a showing that joining and naming all Class Members in a common lawsuit is impractical) , (4) commonality (questions of common fact and law), (5) typicality (claims of the Representative Plaintiffs are typical of the claims of Class Members), (6) adequacy (Representative Plaintiffs will fairly and adequately protect the interests of the class – no conflict of interests) and (7) at least one of the requirements in Rule 23(b), namely: (a) separate adjudications will create a risk of decisions that are inconsistent with or dispositive of other class members' claims, (b) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (c) common questions predominate and a class action is superior to individual actions.

Not unusual, expert testimony (often from compensated academia professors – hired guns, invoking often complex and little understood statistical analyses and arguments of why the ingredients exist for justifying a case as a Class Action lawsuit – who are also governed by use, misuse and abuse standards of conduct) are used by attorney's as a resource to establish enough 'doubt' in the mind of the judiciary, that the easy course is to certify a case as a Class Action lawsuit.  The adage there are liars, damn liars and statisticians, is still in vogue.  Given enough complex equations, PowerPoint slides and laser pointers, an expert can argue just about any side of a case and sound pretty convincing – especially when it's paid for testimony and the basis of a decision is foggy, not deterministic and dependent on subjective feelings.  And to think all of this insightful assessment of class certification takes place in a few minutes or a few hours at a court room hearing (the court docket of which is always busy and a court's objective to move things along – justice to is dependent on the sweep of a ticking clock) in which participants in that hearing claim some sort of justified immediate understanding and acceptance of what the truth is and make an on the spot decision – yay or nay to certification.  It takes a university student often many hours if not days just to solve one calculus or differential equation math problem – not including the study and prep time…yet the complexity of class action certification decisions happens in the twinkle or an eye.

The Representative Plaintiffs bear the burden of proving that the prerequisites to class certification have been met by a *preponderance of the evidence*.  Theoretically this standard is supposed to be based on evidence and not speculation.

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023                              Page **20** of **42**

A certification decision can be challenged, and an appeal made to a higher court. An appeal may be accepted when: (1) the decision is questionable and the certification order represents the death knell for a defendant who will be compelled to settle even if the plaintiff's claims are not meritorious, (2) the decision raises an unsettled, fundamental and generally applicable issue of law that will likely evade end-of-the-case review, or (3) the decision is manifestly erroneous.

Reform is needed in the law or Rules, to cause the courts to be more pragmatic and reflective in a class certification decision. Some potential reforms might include:

- A separate Commission is relevant, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)
  - o Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct;
- A separate and specially trained or class action certification expert judge or magistrate independent from the court a case is filed in, rules on a certification argument.
- If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter. A statutory form of attorney fee but paid by the losing plaintiff.

**Standards of Proof Reform**. The standard of proof in a court, listed in order of the degree of persuasive arguments (highest and most intense listed first) include:

- Beyond a reasonable doubt in criminal law.
- Clear and convincing evidence
  - o Present evidence that leaves the listener with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.
- Preponderance of the evidence in most civil cases.
  - o Prove that something is more likely than not.
- Probable cause in the acquisition of a warrant or arrest proceeding.
- Reasonable belief as part of establishing probable cause.
- Reasonable suspicion in cases involving police stop and searches.
- Some credible evidence in cases necessitating immediate intervention, like child protective services disputes.
- Some evidence in cases involving inmate discipline.
- Substantial evidence in many appellate cases.
  - o Degree of relevant evidence which a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.

Class Action certification and other proofs in a Class Action lawsuit are governed by the Preponderance of the Evidence standard of proof, as is most civil lawsuits. Because of the unique nature of a Class Action lawsuit, and the heightened unique exposure to claims of a defendant to

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

many plaintiffs and defendant's expanded defense burdens, the standard of proof in a Class Action lawsuit should be based on Clear and Convincing Evidence. Such a standard will go a long way towards self-governing promotion of the honesty of a case in regard to hired gun expert Class Certification complex testimony and Class Action attorney specialists promoting the Class Action industry. Justice can still prevail even with a Clear and Convincing Evidence standard of proof, but the burden shifts to the plaintiff to present a more honest case.

**Self-Serving Reform**. Class Counsel representing a Class Action lawsuit, is obligated to demonstrate Class Member (victim) remedies are tested to a standard of being **fair, reasonable and adequate** and any claim for attorney's fees be tested to a standard of **reasonableness**.

In many cases Class Counsel unnecessarily strains the honesty standard of argument, that the case is shoe-horned to fit within the standards of reasonableness, fairness or adequacy. The more honest arguments include:

- Argument: Class Members have not objected to the size of the remedy or attorney's fees so therefore they must by default be reasonable.
  - Reform: Most Class Members only became aware they were entitled to a claim when they received postcard notice from Class Counsel the claim exists, and typically the claim amount is so small, the Class Member may or may not file a claim (assuming they spend time to study the notice), and spend no time challenging the suit given the small nature of the event. Hence arguing the absence of objection as part of the rationale of a claim and attorney fee being reasonable is a rather salty circular self-serving argument, and one hopefully a court will disregard (ignore?).
- Argument: Attorney's fee claims are comparable to other Class Action lawsuit awards, citing common percentage take regarding contingency fee awarded attorney's fee in other cases.
  - Reform: This one-size-fits-all attorney fee reasonableness standard is contrary to the obligation of attorneys to determine their fee on the merits and effort involved in each individual case. Reasonable attorney's fee justification is not like earning a fixed real estate agent sales commission (the 6% 'standard' shared between buyer and seller agents). Then again, justifying a fee based on other case 'standards', is another admission of the observation that Class Action lawsuits have become a commoditized industry and vehicle to rack up huge attorney's fees and not a forum for justice.
- Argument: Expert testimony (often university professor experts – hired guns) demonstrate with subjective little understood complex statistical stealth, that the basis of a case is sounded as evidence and proof of the bad conduct of a defendant.
  - Reform: An expert arguing in a security fraud case for example, that defendant's alleged bad conduct caused an inappropriate one penny swing in a defendant's stock price…is a pretty far-fetched argument to make, given stock price swings happen on a daily basis and to pin-point specific conduct of a defendant why the swing happened, especially when a nominal amount, is often a bridge to far…and all the more reason to have a Clear and Convincing Evidence standard of proof.
- Argument: Class Counsel base their attorney fee on a contingency basis, a percentage of the Claim award to Class Members, citing Class Action 'victims' are seeking justice and

Class Counsel graciously accepting a case to advance that justice and willing to do so on a contingency basis relieving the Class Members of bearing the legal costs of a case, and usually such fees are paid by a losing defendant if an underlying statute on which a case is brought provides for attorney fees as part of the remedy.

- o Reform: How often does Class Counsel seek to orchestrate a case as a Class Action lawsuit, driven by the objective of increasing the size of a Claim because of Class Member participation, and the size of the percentage take from a large Class Action Claim as attorney's fees, is hugely more valuable than a percentage take from an individual plaintiff claim? Thus, an observation that contingency attorney's fees should not be permitted in Class Action lawsuits, leaving the attorney to justify their fee based on reasonableness standard tests associated with time and hourly rates.

- Argument: Class Counsel justify the merits of a Class Action case (either as certification as a Class Action or violation of a law) and their right to attorney's fees, based on a plethora of cited cases, mountains of self-serving justification documentation and other resources heaped upon a court's already busy docket. The weight of the argument is based on the paper weight of the documents filed and not on the quality and weight of evidence of the argument.

- o Reform: Similar to discovery proceedings, perhaps attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.

## Justice and Class Action Lawsuits

The Class Action lawsuit industry seems to have wrinkled the path of what justice (or injustice) is all about.

The Declaration of Independence, the Constitution of the United States of America, and the Bill of Rights, the "founding documents" of the nation, speak directly to the ideals of freedom from oppression, equality, and justice *for all*. Justice is fairness and equal treatment and applies to both the plaintiff AND the defendant since that simple '*all*' word is rather encompassing.

Class Action Lawsuits seem to treat defendants as tyrants and oppressors of the public. That is not justice for *all*.

What is just remains a matter for debate. Observing the same outcome of a situation, one person may say justice was done. Another may declare the outcome an injustice and great wrong. Is the porridge too hot or just, right? Is the attorney fee too huge or just, right?

Justice may be viewed as a subjective process of assessing the fairness of relations between individuals and groups of people, such as...

- Getting what one deserves.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

- Equitable sharing of civic burdens.
  - We all get car door ding marks, and we all give them. While such is normally an accidental 'wrong', to seek a $50 door ding damage repair bill and charge a $10,000 attorney fee is not what justice is *all* about. Revenge maybe. Assumption of a certain amount of risk is a constant balancing act in anything us humans do. (Maybe the door ding issue can be resolved by car makers installing soft bumper guards on door edges or wider parking lanes.)
- Individual virtue and ethical conduct (especially attorney's whose law license demands they honor Bar Association ethics and code of professional conduct and act responsibly and always seek justice for *all* and not revenge).

Is it unreasonable/unethical for plaintiff's attorney to pursue a Class Action lawsuit, knowing their fee will be many many magnitudes greater than any nominal recovery of victims, where such huge fee is paid to the attorney instead of compensation to the victims? Is that justice?

Are huge attorney fee awards seen as a substitute for punitive ('punishment') damages above and beyond actual damages, of a Class Action lawsuit defendant? Justice would suppose punishment is by way of compensation paid to victims, and where applicable, award of punitive damages (also paid to victims above and beyond actual damages) as a punishment for unacceptable intentional egregious acts of defendants. Attorney fees are in relation to reasonable honest legal services provided on behalf of the plaintiff/victims and NOT a means of punitive punishment of defendants.

Who does justice define as the victim? The Class Member victims? Plaintiff's lawyers as victims? Defendant victims being exposed to paying huge legal fees and lawyers misusing or abusing what justice is *all* about?

It's time for a change.

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

## Bibliography

Baker, Lynn A., Perino, Michael A., Silver, Charles, "Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions", Columbia Law Review, vol. 115, no. 6, (2015).

Boatright, Jason, "The History, Meaning, and Use of the Words Justice and Judge", *St. Mary's Law Journal*, vol. 49, no. 4, Article 1, 727 (2018).

Carter, Jimmy, "Law Day Address at the University of Georgia in Athens, Georgia", *The American Presidency Project*, https://www.presidency,ucsb.edu, (1974).

"Class Action", Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/we/class_action, Dec 2022.

"Class Action", *Wikipedia*, December 22, 2022

"Class Action Fairness Act of 2005, *28 USC, Public Law 109-2*, Feb 18, 2005.

"Class Action Fairness Act of 2005, Wikipedia, December 22, 2022.

Connolly, Neil, "Extreme Couponing: Reforming the Method of Calculating Attorney's Fees in Class Action Coupon Settlements", *102 Iowa Law Review 1335* (2017)

Douglas, Frederick, "What, To The Slave, Is the Fourth of July (1852)", *Blackpast*, (2007)

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: 1993-2008", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2010).

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: Empirical Study", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2004).

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

"Federal Rules of Civil Procedure", *Title IV. Parties, Rule 23, Class Actions*.

"Fees and Expenses", American Bar Association, https://www.americanbar.org/ groups/legal_services/milvets/aba_home_front/information_center/working_with_lawyer /fees_and_expenses/, Dec. 2022.

Frankel, Alison, "In biggest cases, class action lawyers are low-balling fee requests – and that's a good thing", *Reuters*, November 2, 2016.

Gentry, Caroline H., "*A Primer on Class Certification Under Federal Rule 23*", Corporate Counsel CLE Seminar, Rancho Mirage/CA (https://www.classactiondeclassified.com/wp-content/uploads/sites/26/2017/08/a_primer_class_certification_under_federal_rule.pdf, 2017)

Hartmann, Michelle, Miller, Ralph I., Zambrano, Angela C.. "Attorneys' Fees", *SMU Law Review*, vol. 57, Issue 3 Annual Survey of Texas Law, Article 4, 2004.

Ibrahim, Melissa, "Bills, Bills, Bills: The Effect of a Rejected Settlement on Attorney's Fees Under the Civil Rights Attorney's Fees Award Act of 1976", *Cardozo Law Review*, vol. 36, p. 1987, 1988.

Johnson, Charles T. et al v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020).

King, Martin Luther Jr., "Letter from Birmingham Jail", *Atlantic Monthly*, vol. 212, no. 2, p. 78 (1963).

Klonoff, Robert H., "Why Most Nations Do Not Have U.S.-Style Class Actions", Bloomberg Law, https://news.bloomberglaw.com/class-action/why-most-nations-do-not-have-us-style-class-actions.

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

Lender, David J. et al, "Class Action Fairness Act of 2005 (DAFA): Overview", *Practical Law Company.com*, (2013).

"Opinion #17. Negotiation of Attorney's Fees in Class Actions", *Professional Ethics Commission, Board of Overseers of the Bar*, (January 15, 1981).

Ratner, Morris, "Civil Procedure: Class Action Fee and Cost Awards", *The Judges Book*, vol. 1, art. 9, http://repository.uchastings.edu/judgesbook (2017).

"Rule 1.5 Fees- Comment", *American Bar Association Model Rules of Professional Conduct*, Client-Lawyer Relationship (2018).

Shepherd, Joanna, "An Empirical Survey of No-Injury Class Actions", Emory University School of Law, Legal Research Paper Series, Research Paper No. 16-402, http://ssrn.com/abstract=2726905 (2016).

Sohoni, Mila, "The Idea of "Too Much Law", *Fordham Law Review*, vol. 80, Issue 4, Article 3, 2012.

Tribe, Lawrence H., "Too Much Law, Too Little Justice: An Argument for Delegalizing America", The Atlantic, July 1979.

"What Is Justice", *School of Criminal Justice, University of Albany*, Module 1, https://www.albany.edu/justiceinstitute/33471.php, (2022).

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

**Appendix A –**

**Class Action Lawsuits – Huge Attorney Fee Illustrations**

**Example Class Action Case 1 (https://www.nielsensecuritiessettlement.com/)**

In Re Nielsen Holdings PLC Securities Litigation
Civil Action No. 1:18-cv-07143-JMF
United States District Court
Southern District of New York

| | | |
|---|---|---|
| Proposed Settlement Fund | $73,000,000 | ($0.19 per share) |
| Proposed Contingency Attorney's Fees (25%) | $18,250,000 | ($0.05 per share) |
| Plus Attorney Expenses | $ 1,110,000 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 17,206 | |
| Total Class Member (Victims) | 384,000,000 ($73,000,000/$0.19) | |
| Attorney Hourly Rate Disclosure Ranges | | |
|     Paralegals | $315 to $505 | |
|     Associate Attorneys | $895 to $2,017 | |
|     Of Counsel | $975 to $1,560 | |
|     Partners | $1,250 to $1,983 | |
| | | |
| Average Attorney hourly rate | $1,060 | ($18,250,000/17,206) |
| Attorney Fee Per Lawyer (assuming 82 lawyers) | $222,561 | ($18,250,000/82) |
| Range of Victim Award (depends on shares owned) | | |
|     500 shares | $70 | (500*$0.14) |
|     10,000 shares | $1,400 | (10,000*$0.14) |
|     100,000 shares | $14,500 | (100,000*0.14) |

**Example Class Action Case 2 (https://www.t-mobilesettlement.com/**

In Re T-Mobile Customer Data
Security Breach Litigation
Civil Action No. 4:21-md-03019-BCW
United States District Court
Western District of Missouri

| | | |
|---|---|---|
| Proposed Settlement Fund | $350,000,000 | |
| Plus Future Data Security Upgrades | $150,000,000 | |
| Proposed Contingency Attorney's Fees (22.5%) | $78,750,000 | (reduced from 30%) |
| Plus Attorney Expenses | $ 147,982 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 8,225 | |
| Total Class Member (Victims) | 79,150,000 | |
| Attorney Hourly Rate Disclosure Ranges | $270 to $1275 | |

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

| | | |
|---|---|---|
| Average Attorney hourly rate | $9,574 | ($78,750,000/8,225) |
| Attorney Fee Per Lawyer (assuming 100 lawyers) | $787,500 | ($78,750,000/100) |
| Range of Victim Award (depends on shares owned) | $3.42 | ($271,250,000/79,150,000) |

## Example Class Action Case 3 (https://www.baggagefeeclassaction.com/)

Cleary v. American Airlines Inc.
Baggage Claim
Civil Action No. 4:21-cv-00184-O
United States District Court
Northern District of Texas

| | | |
|---|---|---|
| Proposed Settlement Fund | $7,500,000 | (min.) |
| Proposed Fixed Fee Attorney's Fees | $2,850,000 | (27.5% total award) |
| Attorney Expenses | $1,142,945 | |
| Claimed Attorney Hours | 3,641 | |
| Total Class Member (Victims) | 588,654 | |
| Average Attorney hourly rate | $782 | ($2,850,000/3,641) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $285,000 | ($2,850,000/10) |
| Victim Award | $12.74 | ($7,500,000/588,654) |

## Example Class Action Case 4 (https://www.OracleSecuritiesLitigation.com)

In re Oracle Corporation Securities Litigation
Securities Fraud
Civil Action No. 18-cv-04844-BLF
United States District Court
Northern District of California, San Jose Division

| | | |
|---|---|---|
| Proposed Settlement Fund | $17,500,000 | |
| Proposed Fixed Fee Attorney's Fees | $3,500,000 | (20% total award) |
| Attorney Expenses | $900,000 | |
| Claimed Attorney Hours | 17,900 | |
| Total Class Member (Victims) | 979,000 | |
| Average Attorney hourly rate | $195 | ($3,500,000/17,900) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $350,000 | ($3,500,000/10) |
| Victim Award | $0.01/share (~2.7 bn shares) | |
| | (~1800 shares per shareholder avg) | |
| | $18 avg share of claim | |

A self-serving assertion: The small number of objections in comparison to the size of the Class supports a finding that the Settlement is fair, reasonable, and adequate. The reason folks did not opt-out have nothing to do with a fair, reasonable and adequacy test. Case cites false statements illegally inflated Oracles stock value – then trading between $43 and $47.  Jan 2023 trade value is over $85, and a peak end of 2022 at over $100.  The casual observer would cite business as usual and a good year for Oracle investors…justifying a 1 cent swing in stock value because of excessive puffing – craftily disguised as security fraud (with a lot of academic experts pontificating on their crystal ball insightfulness and naval gazing) is poppycock.  Liars, damn liars and statisticians come to mind.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

**Appendix B**

**Example Form Objection to Attorney's Fees**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____ DISTRICT OF _____ (*State*)**
**_____ DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | )<br>)     Case No. _____ |

_____

**OBJECTION[12] TO PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1. Objection Applicant, _____ (*your name*) (pro se[13]), a Settlement Class Member (Class Member ID[14] _____, claim number[15] _____) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, has not objected to any class action settlement within the past three years, and request for modification and downward adjustment of any pending or submitted Attorney Fee and Expense Application (herein the 'Application') because such Application is unreasonable, unfair and not in the best interest of the Settlement Class Members.

   *[Cross through or delete Option 1 or Option 2 that does not apply]*

2. *Option (1) Since as of the filing of this Objection, Lead Counsel has not filed in https://www[16]._____, copy of the Application, nor sent a copy to Objection Applicant, this Objection is based on those documents of record in the cited website so filed as of the date of this Objection.*

---

[12] Read the post card claim notice and follow any specific instructions regarding filing of an objection, such as timing, address to send the Objection to, and any conditions. This Appendix B form contains typical conditions but may not be complete.

[13] Pro se means you are representing yourself.

[14] Class member ID is usually cited in the post card claim notice received in the mail concerning the Class Action

[15] If you have filed a claim after receiving the post card claim notice, you usually will be issued a claim number.

[16] The Class Action lawsuit will be found on the internet which will allow you to have access to all case documents and other information about the case. Insert the internet website. Often times an Objection is filed before all relevant documents are filed online. Final attorney fee applications are often filed late.

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

*Option (2) This Objection is based on those documents of record in https://www_____, as of the date of this Objection.*

**OBJECTION**

3.    Rationale behind this Objection, includes…

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the Application, I do not agree with such approval, and hereby submit this Objection.

3.3  The Application is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

3.3.1    American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- Traditional fee analysis to determine reasonableness takes into account…
  - the time and labor required,
  - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - the fee customarily charged in the locality for similar legal services;
  - the amount involved and the results obtained;
  - the time limitations imposed by the client or by the circumstances;
  - the nature and length of the professional relationship with the client;
  - the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - whether the fee is fixed or contingent

3.3.2    Federal Rules of Civil Procedure, Class Action Rule 23;
- The Court '*may*' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3.3.3    Class Action Fairness Act of 2005;
- Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account…
  - Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the

litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3.3.4    Court rulings, in particular attorney fee reasonableness test criteria described in

- Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a *reasonable* fee in the case.
    - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - Reasonableness takes into account the factors used by the traditional fee *determination.*

4. The Court is requested to invoke its discretionary powers to modify and reduce the Attorney Fee Expense Application to make it reasonable.

5.  The economics of the requested Application indicate:

5.1 The proposed Settlement Common Fund to all Class Members is $_____. (Total indicated settlement to be paid to victims)

5.2 Total Class Members are _____ (total number of victims)

5.3  Individual Class Member award are estimated to be $ _____ (cite how much each victim may receive or at least a range)

5.4  Total Attorney Fees and Expenses applied for are $ _____

5.5  The total legal hours expended on the case are _____

5.6  The average hourly rate charged for legal services is $ _____ (paragraph 5.4 divided by paragraph 5.5)

5.7  The average paycheck for each attorney working on the case is $ _____

(paragraph 5.4 divided by the total number of attorneys estimated to be working on the case, small cases may be up to 5, big cases may be 75 or more)

5.8  The disparity between the amount of recovery to each Class Member compared to the paycheck each attorney could receive suggests an exorbitant and unreasonable basis on which to base attorney fees.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

6.  Any reduction in the Application is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

7.  A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $_____[*insert amount of claimed fee*] attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

8  Settlement  (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial.  Consequently, the extent and reasonableness of claimed earned legal fees are in question.  Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.
    o   While it is instructive to take into account attorney work claims of:
        o   Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

9.  [*Add any other information that is unique to the case that illustrates why you think the requested attorney fee and expense application is unreasonable*]  *At your discretion you might also include a copy of the above paper that might give the Court some additional information to think about].*

Respectfully submitted.

This _____ day of _____, 20__.

_____
[*name, printed and sign document*]
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

## CERTIFICATE OF SERVICE

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

I, _____, hereby certify that on the _____ day of _____, 20\_\_\_\_, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT, WERE** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____DISTRICT OF _____**
**_____ DIVISION**
Clerk of the Court
[address/email]

CLASS COUNSEL
[name]
[address/email]

Defendant
[address/email]

I, _____, further certify I am a Settlement Class Member.

_____

[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

**Appendix C**

**Example Op-Out Form**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____ DISTRICT OF _____ (*State*)**
**_____ DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | ) ) ) |

Case No. _____

_____

**ELECTION TO OPT-OUT OF THE CAPTIONED CLASS ACTION LAWSUIT**

1.  Opt-out Applicant, _____ (*your name*) (pro se[17]), a Settlement Class Member (Class Member ID[18] _____) submits this **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, and without prejudice, reserve any and all of my rights to pursue a separate claim**

Respectfully submitted.

This _____ day of _____, 20__.

_____

*[name, printed and sign document]*
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

**CERTIFICATE OF SERVICE**

---

[17] Pro se means you are representing yourself in the objection.
[18] Class member ID is usually cited in the post card notice you received about the Class Action

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023                    Page **35** of **42**

FILED DATE: 6/29/2023 4:00 PM    2021CH05392

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, was** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____DISTRICT OF _____**
**_____ DIVISION**
Clerk of the Court
[address/email]

CLASS COUNSEL
[name]
[address/email]

Defendant
[address/email]

I, _____, further certify I am a Settlement Class Member.

_____
[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

*[This is a general form. The postcard notice received about the Class Action lawsuit may contain other information of what to do to opt-out of the case. Please refer to that detail as required].*

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

**Appendix D**

**Class Action Lawsuits – Attorney Fee Legislation**

*[Date]*

*To:*

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

*From*

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re:  Class Action Lawsuit – Attorney Fee Legislation*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and Attorney Fee Legislation.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding huge attorney's fees granted in many Class Action cases and what action plans can be advanced to provide some control over run-away fees.*

*While the judicial Court system has oversight to assess the reasonableness of such fees, there seems to be a consistent 'one-size-fits-all' demeanor advanced when such fees are defended by Class Counsel.  This demeanor is contrary to the reasoning that one-size-does-not-fit- all where each case and its fee structure are to be assessed on their  own merits and tested against a standard of fairness, reasonableness and adequacy.  Most Class Counsel argue that their claimed attorney's fees (a self-serving argument) are consistent in the formula used to determine fees among all other cases.*

*The attached paper and my own experience suggest legislation may well be required to provide the necessary control over excessive fee awards.*

*I am writing to seek your counseling and perhaps leadership in advancing relevant legislation that can address the run-away legal fee paycheck issues and problems outlined in the attached paper.*

*While I don't have the answers, I do have some ideas.*

### *Contingency Fee Prohibition*

*Perhaps, similar to prohibition of the use of contingency legal fees (where the fee is based on the attorney taking a percentage of the case outcome) in regard to domestic relation and criminal cases, Class Action lawsuit may well be added to the prohibited list, thereby leaving attorneys to argue and defend a fee based on 'fixed fee' reasonable hours and reasonable billing rate arguments.*

*As you know, the legal profession has almost unanimously determined for years that allowing attorneys to base their contingency fee on the outcome of a divorce or child custody case would create a risk of the attorney having a financial interest in the outcome as well as being against public policy and therefor unreasonable by default. This could potentially lead unscrupulous attorneys to take actions that could be against the interests of children, or it could encourage attorneys to do things to make sure clients actually divorce. On the contrary, a skilled and ethical divorce attorney should always consider reconciliation, resolution, and fairness to be part of the goal and avoidance of the destruction of family relationships. There can be no financial interest in seeing to it that clients get divorced.*

*Likewise, contingency fees are prohibited in regard to criminal cases also based on public policy reasons.*

*Shouldn't Class Action counsel likewise ethically consider resolution and fairness to be the goal of such actions.*

### *Reasonableness Tests Codification*

*As outlined in the attached paper, the groundwork for attorney fee codification has been laid out in the various resources currently consulted to assess attorney fee reasonableness.*

*Those resources include: American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees; Federal Rules of Civil Procedure, Class Action Rule 23; Class Action Fairness Act of 2005; court rulings, in particular attorney fee reasonableness test criteria described in Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.*

*Should legislation be passed to codify the various methods used to test for reasonableness of attorney's fees, thereby removing much of the subjective uncertainty and differences without a distinction confusion?*

*Should a codified formula (which may also include a cap) be determined that provides guidance what is considered a reasonable attorney fee, with an opportunity for attorneys to challenge the formula if they can demonstrate why their fee structure is the better reasonable structure?*

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

### *Independent Committee*

*Currently, attorney fee reasonableness tests are assessed by other attorneys.  I have included the Court system in this testing network since most jurists are attorneys.  Should there be some form of independent committee, commission or panel used to test the reasonableness of attorney fees, the participants of which also includes non-lawyers?  Professions that come to mind that might be part of such panel includes Insurance (risk management), Accountants, Professional Engineers, Military Officer, Police Officer, Day Care Management, Clergy, Local Union Leadership.*

*An independent committee, commission or panel is not unlike the independent expert appointed under the Class Action Fairness Act of 2005, who is instructed to scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.*

*Class Action Counsel might argue that the complexity of defending why legal fees are reasonable, is not readily understood by the lay person.  Quite the contrary, if attorneys cannot argue their defense of why their fee is reasonable in plain understood English, then the fog index is in full force…and that corrupts the concept that a little bit of sunshine is a great disinfectant.*

### *Class Action Certification Reform*

*A separate Class Action certification Commission should be created, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)*

*Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue a highly questionable course of conduct.*

*If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter.*

### *Plaintiff Filing Reform*

*Similar to discovery proceedings, Class Counsel attorneys should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary.  The goal being elegant simplicity vs intellectual complexity.  Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.*

FILED DATE: 6/29/2023 4:00 PM  2021CH05392

### *Standard of Proof Reform*

*The standard of proof used to either certify a case as a Class Action or evidence presented in a trial of the matter, should be based on Clear and Convincing Evidence and not Preponderance of the Evidence. A higher standard of proof makes sense, since such standard will have a self-governing incentive for plaintiff's and Class Counsel to advance an honest case as well as promoting the nation's founding documents objective of Justice for ALL, especially since a defendant is confronted with the unique and unusual aspects defending a Class Action claim.*

### *Pre-Certification Notice*

*The honest merits of a lawsuit certified as a Class Action, should first be tested, that prior to such certification, Plaintiff's should first submit a mandatory notice letter (the Class Action Pre-Certification Notice Letter, or CAPCN) to the defendant giving them clear and unambiguous information concerning: (i) The legal rationale on what the Class Action complaint is all about; (ii) How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee; and (iii) The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action lawsuit;*

*Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

**Appendix E**

**Class Action Lawsuit Postcard Claim Form**

*[Date]*

*To:*

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

*From*

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re:  Class Action Lawsuit – Postcard Claim Form*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and the content of postcard claim forms used to notify potential Class Members of their claim rights.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding user friendly notification and information contained in postcard claim forms and what action plans can be advanced to provide improved user-friendly better-informed awareness of important issues associated with such forms.*

*I believe legislation is needed to simplify, make easier to understand, postcard Class Action lawsuit claim notices, designed to clearly and conspicuously describe:*

*(1) what potential claim is being sought,*

*(2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled,*

Class Action Lawsuits – Attorney's Fee Problem  - Mar 2023                    Page **41** of **42**

FILED DATE: 6/29/2023 4:00 PM   2021CH05392

*(3) how the size of the Class Action Claim and attorney's fees are effected if Class Members opt-out of participating in the lawsuit and*

*(4) how attorney fees and expenses are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer and average hourly rate being charged.*

*Such postcard claim form legislation could be an amendment to the Class Action Fairness Act of 2005.*

*It is not uncommon when a Class Member receives a postcard claim form in the mail, short of hiring their own attorney, they need to have a reasonable understanding of how to navigate through online internet systems in order to obtain additional relevant information. The internet navigation process as well as interpreting much of the 'legal mumbo gumbo' cited in important documents, gets lost in translation, leaving Class Members with little insight of their rights and significance of important issues.*

*One issue of importance is the user friendly opportunity to make the postcard claim form easy to understand on which a Class Member can then be able to clearly judge the merits of receiving a small nominal value in a Class Action lawsuit, while attorney's receive huge paychecks, using the Class Action Lawsuit as a vehicle to secure such fee (and justice taking back seat peanut gallery priority), thus allowing Class Members to make a much better informed decision of opting out (not participating) in the Claim or staying in.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE THE ALLSTATE CORPORATION SECURITIES LITIGATION | Case No. 16-cv-10510<br><br>Hon. Robert W. Gettleman<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF**
**CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY**
**<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL BACKGROUND.............................................................................................. 2

ARGUMENT ............................................................................................................................. 5

I.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................ 5

    A.  Standards Governing Approval of Class Action Settlements ................................. 5

    B.  Approval of the Settlement Is Likely Under Rule 23(e)(2) .................................... 6

        1.  Class Representatives and Counsel Have Adequately Represented
            the Class ..................................................................................................... 6

        2.  The Proposed Settlement Is the Result of Good Faith Arm's-
            Length Negotiations ................................................................................... 7

        3.  The Relief Provided by the Proposed Settlement Is Adequate .................... 8

            a.  The Settlement Provides Significant and Certain Benefits to
                the Class ......................................................................................... 8

            b.  The Effective Process for Distributing Relief............................... 12

            c.  Anticipated Attorneys' Fees and Expenses................................... 13

II.  THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ....................................... 13

III.  PROPOSED SCHEDULE OF EVENTS....................................................................... 15

CONCLUSION........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2998, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ......................................................6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   No. 94C 897, 1996 WL 167347 (N.D. Ill. Apr. 4, 1996)........................................................14

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................................10

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v.*
   *Pricewaterhouse Coopers, LLP*,
   212 F.R.D. 400 (E.D. Wis. 2002) .............................................................................................8

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................................................5

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   No. 02-5893, 2012 WL 4343223 (N.D. Ill. Sept. 21, 2012).....................................................11

*McCue v. MB Fin., Inc.*,
   No. 1:15-cv-00988, 2015 WL1020348 (N.D. Ill. Mar. 6, 2015) ...............................................8

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...................................................8

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................................11, 12

*Shah v. Zimmer Biomet Holdings, Inc.*,
   No. 3:160cv0815-PPS-MGG, 2020 WL 5627171 (N.D. Ind. Sept. 18, 2020)..............8, 11, 14

*Silverman v. Motorola,*
   No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012),
   *aff'd*, 739 F.3d 956 (7th Cir. 2013)........................................................................................13

*Washtenew Cnty. Emps. Ret. Sys. v. Walgreen Co.*,
   No. 1:15-cv-3187, ECF No. 526 (N.D. Ill. Oct. 11, 2022) ......................................................13

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ..........................................................................................6, 7, 8

**Statutes**

15 U.S.C. § 78u-4(a)(7)(A)-(F)...................................................................................................15

## Rules

Fed. R. Civ. P. 23.......................................................................................................1, 2, 6, 14

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................15

Fed. R. Civ. P. 23(e) ............................................................................................1, 5

Fed. R. Civ. P. 23(e)(1)...........................................................................................13

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................5, 6, 13

Fed. R. Civ. P. 23(e)(2)......................................................................................5, 6, 13

Fed. R. Civ. P. 23(e)(2)(A) .....................................................................................6, 7

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................7

Fed. R. Civ. P. 23(e)(2)(C)(i)....................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(iv)..................................................................................6

Fed. R. Civ. P. 23(e) .............................................................................................6

Fed. R. Civ. P. 23(e)(3)..........................................................................................6

Fed. R. Civ. P. 23(f).............................................................................................3, 7

## Other Authorities

David F. Herr, *Manual for Complex Litigation* (4th ed. 2019)......................................................5

Carpenters Pension Trust Fund for Northern California, Carpenters Annuity Trust Fund for Northern California (together, "Northern California Carpenters" or "Lead Plaintiffs") and named plaintiff City of Providence ("Providence" and, together with Northern California Carpenters, "Class Representatives"), on behalf of themselves and the members of the certified Class, submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed Settlement of the above-captioned action (the "Action"), pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of August 11, 2023 ("Stipulation"), which was entered into by all Parties to the Action.[1]

## PRELIMINARY STATEMENT

Pursuant to the Settlement, Allstate has agreed to cause the payment of, on behalf of all Defendants, $90,000,000 in cash in exchange for the release of all claims asserted in the Action, or that could have been asserted. Class Representatives request that the Court preliminarily approve the proposed Settlement. As explained herein, Class Representatives respectfully submit that the Settlement represents a very favorable recovery for the Class and satisfies all of the Rule 23(e) approval factors and Seventh Circuit precedent.

Upon the Court's entry of the proposed Preliminary Approval Order, Class Representatives will provide notice of the Settlement's terms and conditions to potential Class Members. Following a final approval hearing (the "Settlement Hearing"), the Court will make a final determination as to whether the Settlement is fair, reasonable, and adequate. At the Settlement

---

[1] All capitalized terms used and not otherwise defined in this memorandum of law have the meanings ascribed to them in the Stipulation, which is attached as Exhibit 1 to the Declaration of Michael P. Canty ("Canty Decl."), filed herewith. Defendants are The Allstate Corporation ("Allstate" or the "Company"), Thomas J. Wilson and Matthew E. Winter (collectively, "Defendants," and together with Class Representatives, the "Parties").

Hearing, the Court will also be asked to approve the proposed Plan of Allocation for distributing Settlement proceeds among eligible Class Members and to consider Class Counsel's request for an award of attorneys' fees and Litigation Expenses.

The proposed Preliminary Approval Order, negotiated by the Parties, will, among other things: (i) preliminarily approve the Settlement on terms set forth in the Stipulation; (ii) approve the form and content of the Settlement Notice, Claim Form, and Summary Notice, attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (iii) find that the procedures for disseminating notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) set a date and time for the Settlement Hearing and a schedule for various Settlement-related events; and (v) appoint A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator") to administer the Settlement process.

## PROCEDURAL BACKGROUND

The Action commenced in November 2016 with the filing of an initial complaint against Allstate and certain of its executives.  ECF No. 1.  On January 17, 2017, the Court issued an order appointing Northern California Carpenters as Lead Plaintiffs and approving their selection of Labaton Sucharow LLP as Lead Counsel for the Class ("Lead Counsel") and Pomerantz LLP as Liaison Counsel for the Class.  ECF No. 35.

Lead Plaintiffs filed the Consolidated Class Action Complaint on March 30, 2017 (the "Complaint"), alleging violations of §§10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act").  ECF No. 50.  Defendants moved to dismiss the Complaint on June 1, 2017. ECF Nos. 54-56.  On February 27, 2018, the Court issued a Memorandum Opinion and Order denying Defendants' motion to dismiss.  ECF No. 67.

On June 22, 2018, Lead Plaintiffs moved for class certification, appointment of the Northern California Carpenters and Providence as class representatives, and appointment of Lead Counsel as class counsel. ECF No. 88. Following extensive briefing of the motion, on March 26, 2019, the Court granted Lead Plaintiffs' class certification motion. ECF No. 172. Defendants filed a petition for permission to appeal the Court's class certification order under Fed. R. Civ. P. 23(f) in the Seventh Circuit Court of Appeals, which the Seventh Circuit granted on April 25, 2019.

Lead Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint ("Second Amended Complaint"), to add Providence as a named plaintiff on September 12, 2018. ECF No. 106.

On June 10, 2019, Defendants filed their appellate brief and Lead Plaintiffs filed their appellees' brief on July 10, 2019, and on July 16, 2020, the Seventh Circuit issued an opinion affirming this Court's class certification order, in part, and vacating and remanding it, in part. On October 5, 2020, the Court ordered the Parties to submit supplemental class certification briefing. On December 21, 2020, the Court issued its second order granting class certification. ECF No. 348. Defendants filed a petition to appeal that order in the Seventh Circuit on January 4, 2021, which the Seventh Circuit denied following briefing on the petition.

Beginning on March 12, 2021, notice of the pendency of the Action (the "Class Notice") was mailed to potential Class Members and made available on the case website, www.AllstateSecuritiesLitigation.com. The Class Notice provided Class Members with the opportunity to request exclusion from the Class (*i.e.*, to "opt out"), the requirements for requesting exclusion, and a May 11, 2021 deadline for seeking exclusion. Information in summary form was also published in *Investor's Business Daily* and transmitted over the Internet via *PR Newswire*. There were three requests for exclusion from the Class. ECF No. 419.

Before the Parties agreed to settle the Action, they had completed extensive fact and expert discovery, which including taking or defending 35 fact and expert depositions and Class Counsel's review of nearly 300,000 pages of documents produced by Defendants and third parties. Defendants filed a motion for summary judgment, seeking dismissal of all claims alleged in the Action, which Class Representatives opposed on May 12, 2022. ECF Nos. 456, 475, 487. On July 26, 2022, the Court issued an order granting in part and denying in part Defendants' summary judgment motion. ECF No. 492.

The Parties submitted a joint pretrial order on January 11, 2023. ECF No. 517. On January 10, 2023, Class Representatives filed a motion to bifurcate trial, Defendants filed a trial brief, and the Parties filed various motions *in limine*. ECF Nos. 510, 507-09, 513-15. The motions were pending when the Parties agreed to a resolution of the Action.

Following the submission of the Joint Pretrial Order, the Parties agreed to explore the possibility of a negotiated resolution of the Action and engaged the Honorable Layn R. Phillips (Ret.), a well-respected and highly experienced mediator and retired federal judge who had conducted two prior mediations in the Action, one in August 2019 and the second in June 2022. In advance of a June 28, 2023 mediation session, Class Representatives provided a detailed mediation statement to the mediator, which addressed issues of both liability and damages. On June 28, 2023, a representative of Northern California Carpenters and counsel for all Parties met for a full day mediation session with Judge Phillips in an attempt to reach a settlement. The Parties reached an agreement in principle to settle the Action that day and executed a Term Sheet, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers.

**ARGUMENT**

## I. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. Standards Governing Approval of Class Action Settlements

As a matter of public policy, settlement is a strongly favored method for resolving class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). Federal Rule of Civil Procedure 23(e) requires judicial approval of the settlement of class actions. Such approval involves a two-step process: first, a "preliminary approval" order authorizing notice of the proposed settlement be provided to the class; and second, after notice has been provided and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment. *See* David F. Herr, *Manual for Complex Litigation*, at §13.14 (4th ed. 2019).

In determining whether notice should be provided to the class, the reviewing court considers whether the court "***will likely be able to***" finally approve the settlement, given the factors enumerated in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B).[2] Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

---

[2] Herein, internal citations are omitted and all emphasis is added unless otherwise noted.

(iv)　any agreement required to be identified under Rule 23(e)(3)[3]; and

(D)　the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).[4] Rule 23, as amended in December 2018, has not changed the established overall standard for approving a proposed class settlement, *i.e.*, evaluating whether it is fair, adequate, and reasonable. At this preliminary approval stage, the Court's task is to determine whether the Settlement will "likely" satisfy the standard for final approval. *See* Fed. R. Civ. P. 23(e)(1)(B). In other words, the court need only "'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2998, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (granting approval of class action settlement).

## B.　Approval of the Settlement Is Likely Under Rule 23(e)(2)

### 1.　Class Representatives and Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) instructs courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). As set forth herein,

---

[3]　Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement. Here, in addition to the Stipulation, on June 28, 2023 the Parties executed a settlement term sheet and, as of August 11, 2023, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Allstate has the discretion to terminate the Settlement in connection with requests for exclusion from the Class. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. Such supplemental agreements are kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The term sheet, Stipulation, and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

[4]　The Rule 23(e)(2) factors overlap with the Seventh Circuit's previously-determined final approval factors: (1) the strength of the case, balanced against the settlement amount; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the opinion of competent counsel; and (7) the stage of the proceedings. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

Class Counsel is highly experienced in securities class action litigation, and both Class Representatives and Class Counsel have diligently prosecuted the Action and considered the benefits of a negotiated resolution. Class Representatives and Class Counsel have, for example, conducted a thorough investigation; prepared and filed detailed consolidated amended complaints; prepared oppositions to Defendants' motion to dismiss; successfully moved for class certification and overcame a Rule 23(f) appeal; completed fact discovery that included the review of more than 46,000 documents produced by Defendants and third parties (nearly 300,000 pages) and taking or defending 27 fact depositions; completed expert discovery, which included the Parties' submission of 15 expert reports, including oppositions and replies thereto, and taking or defending eight expert depositions; opposed Defendants' motion for summary judgment; extensively prepared for trial, including by drafting the Proposed Pretrial Order and exhibits; briefed a motion to bifurcate the trial; and prepared for and participated in three mediation sessions, including preparation of mediation statements. Class Representatives and Class Counsel have carefully considered the benefits of the Settlement and believe it to be fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(A); *see also Accretive*, 773 F. 3d at 863-64 (stating that "'the opinion of competent counsel'" is a relevant factor for settlement approval).

### 2. The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As noted above, the Parties participated in two separate mediation sessions that did not result in a resolution of the Action - one in August 2019 and the second in June 2022. It was only after extensive litigation and a third mediation session before Judge Phillips on July 28, 2023 that the Parties agreed to settle. Accordingly, the proposed Settlement was clearly the result of extensive arm's-length negotiations among highly-experienced and informed counsel over the span of four years. This arm's-length process supports approval.

7

*See McCue v. MB Fin., Inc.,* No. 1:15-cv-00988, 2015 WL1020348, at *2 (N.D. Ill. Mar. 6, 2015) (preliminarily approving settlement and finding it to be "result of extensive, arms'-length negotiations by counsel" with the assistance of an experienced mediator"); *Shah v. Zimmer Biomet Holdings, Inc.,* No. 3:160cv0815-PPS-MGG, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) (preliminarily approving settlement and noting that the settlement was the "product of two lengthy mediation sessions" conducted by two leading mediators). Indeed, "a strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation." *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. Pricewaterhouse Coopers, LLP.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

### 3. The Relief Provided by the Proposed Settlement Is Adequate

#### a. The Settlement Provides Significant and Certain Benefits to the Class

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Relatedly, the Seventh Circuit has instructed courts to consider "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement'" and "'the complexity, length, and expense of further litigation.'" *Accretive*, 773 F.3d at 863-64. Courts have recognized that "[s]ecurities fraud litigation is long, complex and uncertain." *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) (collecting cases).

Here, while Class Representatives remain confident in their ability to ultimately prove their claims, further litigation and trial is always a costly and risky proposition. As an initial matter, Class Representatives faced challenges in proving that all of the surviving misstatements were materially false. Defendants have strenuously argued that Class Representatives would be unable to prove that each of their statements were false and misleading at trial. For example, Defendants have argued that the evidence at trial would show that the Class Period should begin on December

8

9, 2014 at the earliest because, based on the reasoning in the Court's summary judgment ruling, none of the alleged misstatements in October 2014 could provide a basis for liability under the securities laws. *See* ECF No. 503 ("Defendants' Trial Brief") at 1 n.1 (citing ECF No. 492 (Summary Judgment Order at 8–9 ("Allstate had no duty during its third-quarter earnings call to make any statements regarding a potential frequency increase in the fourth quarter, and Allstate spoke only about its third-quarter results. . . . Consequently, no reasonable jury could find the October 30, 2014 statements to be misleading, or the basis for securities fraud.")). Defendants explicitly stated their intent to "bring an appropriate motion for partial class de-certification as to the beginning of the class period upon demonstrating this at trial." *Id.* at 1.

Defendants also have argued they would prove at trial that they did not make ***any*** misrepresentations concerning claim frequency. *See id.* at 1. To the contrary, they have argued that Allstate accurately and timely disclosed the Company's increase in claim frequency and did so with much more detail than the securities laws require. Specifically, Defendants noted that Allstate voluntarily disclosed substantial amounts of additional information concerning claim frequency on a quarterly basis in an "Earnings News Release" and an "Investor Supplement." *Id.* Defendants further argued they would prove at trial that Allstate accurately reported its understanding of the factors that caused the increase—namely, "miles driven and precipitation." *Id.* at 1-2. Defendants stated their understanding "was based on Allstate's own contemporaneous, internal analyses showing that frequency was up across new and renewal business, and that Allstate's customers were driving more and in worse weather, which resulted in more accident claims." *Id.* at 2. Defendants further stated they also would "present evidence that Allstate's competitors, including GEICO and Progressive, experienced increased claim frequency during the same period and for the same reasons." *Id.* Thus, Defendants argued, "in every instance, Allstate

told the public the truth about claim frequency in its quarterly announcements and other public statements during the Class Period." *Id.*

Defendants also would likely have argued that, for the same reasons, they did not act intentionally or recklessly (*i.e.*, with scienter). *See id.* at 2 (citing *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704 (7th Cir. 2008)). Defendants stated, "In addition to being factually accurate, Allstate's public statements were and remain consistent with its internal communications and analyses. Allstate continuously analyzed changes in claim frequency and accurately updated the public on what its analyses indicated each quarter." *Id.*

In addition, Defendants have argued that Class Representatives would not be able to prove loss causation, materiality or damages at trial. *See id.* at 2; *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Specifically, Defendants argued, "Allstate warned the market that a risk of increased frequency existed when it implemented its growth initiatives before the Class Period, and Plaintiffs' experts ignore this critical factor. Plaintiffs' experts also overlook alternative causes for changes in Allstate's stock price, and use a damages theory that incorrectly assumes Allstate had a duty to engage in prognostication." Defendants' Trial Brief at 2-3.

Defendants further argued that, while Class Representatives planned to establish reliance using the fraud-on-the-market doctrine, "they would have to establish the evidentiary prerequisites for doing so, and Defendants would be entitled to rebut reliance both on a class-wide and individual basis." *Id.* at 2 n.2 (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)). Defendants argued that, if the trial were bifurcated, then Defendants would be "entitled to further discovery as necessary to fully develop and present these issues." *Id.* (citing *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 586 (S.D.N.Y. 2011) (absence of formal pre-trial order specifying that individual

10

issues were reserved for after class trial did not preclude resolution of individualized issues in further proceedings after class trial); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-5893, 2012 WL 4343223, at *5 (N.D. Ill. Sept. 21, 2012) (after Phase 1 trial, court authorized several months of discovery from class members on individual reliance and claim issues, involving depositions and culminating in a summary judgment process before a Phase 2 trial).

In sum, Defendants argued, "As a result of these failures, Plaintiffs will be unable to prove their claims and will not recover any damages at trial." *Id.* at 2-3. Acceptance of any such arguments regarding loss causation, materiality, or damages by a jury, in whole or part, would dramatically limit any potential recovery for the Class, or eliminate it altogether.

Finally, Defendants explicitly stated their intention "to move for a directed verdict at the close of evidence." *Id.* at 15. Class Representatives and the Class faced appellate risk from a favorable ruling on such a motion, the motions *in limine*, or any number of other evidentiary rulings the Court would have to make during trial.

In contrast, the Settlement avoids the potential impact of each of these challenges and other risks and achieves a fair and certain result. Indeed, the Settlement represents a meaningful portion of the Class's reasonably recoverable damages, as estimated under various potential scenarios analyzed by financial economists retained by Class Representatives. If the Class's claims survived trial, post trial motions, and appeals completely intact, and liability and damages were found 100% supported at trial, then aggregate damages were estimated at approximately $556 million, making the Settlement a recovery of approximately 16% of estimated damages. This percentage is far greater than most other court-approved securities settlements in courts within the Seventh Circuit. *See, e.g., Shah v. Zimmer Biomet Holdings, Inc.,* 2020 WL 5627171, at *5 (preliminarily approving $50 million settlement representing 8% of plaintiffs' maximum possible damages); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (approving settlement representing 10% of

11

estimated damages and noting approval of settlements around or below this percentage). Moreover, if Defendants' arguments regarding the October 2014 misstatements prevailed and those misstatements were trimmed from the case, then the Class Period would start on December 9, 2014, and the aggregate damages were estimated at $531 million. Under this scenario, the Settlement represents approximately 17% of estimated damages.

The $90 million Settlement also far exceeds the median reported recovery in securities class actions in 2022, which was $13 million, and $10.2 million from 2017 through 2021. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2022 Review and Analysis, at 1 (Cornerstone Research 2023), attached as Exhibit 2 to the Canty Declaration.

In addition to the substantial risks and uncertainty inherent in continued litigation and trial, further litigation of the Action would also be extremely expensive and time consuming for both sides. The fact that the Settlement eliminates this delay and expense, along with the risks discussed above, strongly favors preliminary approval.

### b. The Effective Process for Distributing Relief

The method and substance of the proposed claim process is effective. The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator, A.B. Data, which was previously appointed by the Court to disseminate the Class Notice. *See* Exhibit 3 (A.B. Data background material). The Claims Administrator will employ a well-tested protocol for processing claims in a securities class action. A potential Class Member will submit a Claim Form that requests the information necessary to calculate the claim pursuant to the proposed Plan of Allocation. The Plan of Allocation, which is reported in full in the Settlement Notice, will govern how claimants' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. Claimants will be notified of any defects or conditions of ineligibility in their claims and will be given the chance to contest the

rejection of their claims. *See* Stipulation at ¶28(a)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id*.

### c. Anticipated Attorneys' Fees and Expenses

Class Counsel will request an award of attorneys' fees not to exceed 25% of the Settlement Fund and expenses not to exceed $4,600,000, which may include an application for reimbursement by the Class Representatives pursuant to the PSLRA, all to be paid from the Settlement Fund. The application will be made at the time Class Counsel moves for final approval of the Settlement. Class Counsel's requested fees in this case are well within the range of reasonableness. *See, e.g., Washtenew Cnty. Emps. Ret. Sys. v. Walgreen Co.*, No. 1:15-cv-3187, ECF No. 526, (N.D. Ill. Oct. 11, 2022), (awarding 27.5% of $105 million settlement); *Silverman v. Motorola*, Inc., No. 07 C 4507, 2012 WL 1597388, at *1, 5 (N.D. Ill. May 7, 2012) (awarding 27.5% of $200 million settlement), *aff'd*, 739 F.3d 956 (7th Cir. 2013).

In sum, the proposed Settlement satisfies each of the Rule 23(e)(2) factors and should be preliminarily approved so the Settlement Notice can be sent to potential members of the Class.

## II. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Class Counsel propose to provide Class Members notice of the Settlement by (i) mailing a copy of the long-form Settlement Notice to all potential Class Members who can reasonably be identified and located using mailing information obtained in connection with the Class Notice, as supplemented by banks and brokers (nominees) who may have additional customers; (ii) publication of the Summary Notice in *The Wall Street Journal*; and (iii) dissemination of the Summary Notice on the internet using *PR Newswire*. The Settlement Notice and Summary Notice are attached to the Preliminary Approval Order as Exhibits A-1 and A-3.

13

The Settlement Notice and Claim Form will also be posted on both the case website and Class Counsel's website. Sending the Settlement Notice by first-class mail, combined with the publication of the Summary Notice in a major publication, and posting the Settlement Notice on a website is typical of notice provided in other securities class actions and satisfies the requirements of Rule 23 and due process. *See*, *e.g.*, *Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *6. Accordingly, the proposed notice program is reasonably calculated to apprise Class Members of the Settlement and afford them an opportunity to present their objections.

In addition, the form and substance of the notice program are also sufficient. The proposed forms of notice collectively describe the terms of the Settlement; the considerations that caused Class Representatives and Class Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and Litigation Expenses that may be sought; the procedure for objecting and submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing.[5]

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable even if Class Representatives prevailed on each of their claims; (iii) that Class Counsel intends to make an application for an award of attorneys' fees and expenses (including the amount of such fees and

---

[5] In light of the extensive notice of pendency program previously provided – and the ample opportunity afforded to Class Members to request exclusion from the Class at that time – Class Representatives respectfully submit that no second opportunity to request exclusion should be provided to Class Members, and the proposed Settlement Notice does not provide for a second opportunity. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.,* No. 94C 897, 1996 WL 167347, at *4 (N.D. Ill. Apr. 4, 1996) ("due process does not warrant a second chance to opt-out of the plaintiff class"). As discussed above, the Class Notice provided Class Members with the opportunity to request exclusion, explained that right, and set forth the deadlines and procedures for doing so. The Class Notice also informed Class Members that if they choose to remain a member of the Class, they would "be bound by all court orders, whether favorable or unfavorable. . . ." There were only three requests for exclusion. ECF No. 419.

14

expenses determined on an average per share basis), as well as a request for a reimbursement award to Class Representatives; (iv) the name, telephone number, and address of a representative of Class Counsel who will be available to answer questions; (v) the reasons why the Parties are proposing the Settlement; and (vi) other information as may be required by the Court. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Thus, the proposed Settlement notice program provides the information required under the PSLRA and courts have found that such notice constitutes the "best notice that is practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, in granting preliminary approval of the proposed Settlement, Class Representatives respectfully request that the Court also approve the Parties' proposed form and method of giving notice to the Class.

## III. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a Settlement Hearing date, dates for mailing the Settlement Notice and publishing the Summary Notice, and deadlines for objecting, filing papers in support of the Settlement and request for fees and expenses, and the submission of Claim Forms. Class Representatives propose the schedule attached hereto as Appendix A, with a final Settlement Hearing occurring the week of November 20, 2023 either in person or remotely, at the Court's convenience.

### CONCLUSION

For all the foregoing reasons, the proposed Settlement warrants the Court's preliminary approval and the Preliminary Approval Order should be entered.

DATED: August 14, 2023

Respectfully submitted,

**LABATON SUCHAROW LLP**
MICHAEL P. CANTY (*pro hac vice*)
THOMAS G. HOFFMAN, JR. (*pro hac vice*)

15

*s/ Michael P. Canty*
MICHAEL P. CANTY

140 Broadway
New York, New York 10005
Telephone:  (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
thoffman@labaton.com

*Class Counsel for Class Representatives and
the Class*

**POMERANTZ LLP**
PATRICK V. DAHLSTROM
LOUIS C. LUDWIG

10 S. LaSalle Street Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

*Additional Counsel for Plaintiffs*

16

**APPENDIX A**

| Event | Proposed Timing |
|---|---|
| Deadline for commencing the mailing of the Settlement Notice and Claim Form to Settlement Class Members ("Notice Date") | Not later than 10 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Not later than 14 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Class Counsel's motion for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At the Court's convenience, but preferably the week of November 20, 2023 |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

# EXHIBIT J

**Pages 1 - 5**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge Presiding

PURPLE MOUNTAIN TRUST,       )
                           )
         Plaintiff,      )
                           )
  VS.                    )     **NO. C 18-03948 JD**
                           )
WELLS FARGO & COMPANY, et al.,)
                           )
         Defendants.     )
_____)

San Francisco, California
Thursday, August 17, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                ROBBINS, GELLER, RUDMAN & DOWD LLP
                655 West Broadway - Suite 1900
                San Diego, California  92101
      **BY:  SCOTT H. SAHAM**
            **THEODORE J. PINTAR**
            **ATTORNEYS AT LAW**

      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Stenographically Reported by:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Reporter

**APPEARANCES**:   (CONTINUED)

For Defendant Wells Fargo & Company:

> SULLIVAN & CROMWELL
> 1870 Embarcadero Road
> Palo Alto, California   94303
> BY:   **BRENDAN P. CULLEN**
> **ALEXIS C. HOLMES**
> **ATTORNEY AT LAWS**

For Defendant Timothy Sloan:

> CLARENCE, DYER & COHEN LLP
> 899 Ellis Street
> San Francisco, California   94109
> BY:   **JOSH A. COHEN**
> **ATTORNEY AT LAW**

Thursday - August 17, 2023                                    .m.

P R O C E E D I N G S

---000---

THE CLERK:  Calling civil 18-3948, Purple Mountain Trust versus Wells Fargo & Company.

Counsel, you need to go to the podiums and state your appearances for the record.

ATTORNEY SAHAM:  Good morning, Your Honor.  Scott Saham, Spence Burkholz, and Theodore Pinter for the plaintiffs.

ATTORNEY CULLEN:  Good morning, Your Honor.  Brendan Cullen, Alexi Holmes, and Taylor Barker from Sullivan & Cromwell for Wells Fargo.

THE COURT:  Good morning.

ATTORNEY COHEN:  And good morning, Your Honor.  Josh Cohen for defendant Timothy Sloan.

ATTORNEY SAHAM:  Good morning, Your Honor.  Very briefly, we believe it's a tremendous settlement for the class. We've put out over 1.1 million notices; and as a result, which is uncommon in these cases, there's not a single objection not only to the settlement or the fee request.

The percentage of recovery is magnitudes above the typical recovery in one of these cases; and unless the Court has any other questions that you'd like us to address --

THE COURT:  Let me ask this.  How many -- has anybody opted out?  I know no one has objected.  How many opted out?

**ATTORNEY SAHAM:** Yes. So, Your Honor, the opt-out period occurred, there were two notices in this case. While the litigation was pending shortly before trial, notice went out to 1.1 million people as well, and there were 76 opt outs with a total number shares of 5600 which is a tiny fraction of the number of shares.

**THE COURT:** 5600 shares total?

**ATTORNEY SAHAM:** Correct, Your Honor.

**THE COURT:** Now this is usually the institutional claimants who file these things. So what's the claim rate so far? 75? 80?

**ATTORNEY SAHAM:** Your Honor, we're highly confident the claims deadline is not for four days yet so the --

**THE COURT:** Four more days?

**ATTORNEY SAHAM:** Yeah. And typically in these cases a large majority of the claims, particularly the institutions and electronic filers, come in the last date, but we're very confident the claims rate given what's come in already that it will be in excess of 80 percent and probably in excess of 90 percent.

**THE COURT:** All right. That's good. Well, I said at preliminary approval I thought it was a pretty good deal. I was a little concerned about the 25 percent cut for the plaintiffs, but I remembered vividly all the work I had to do which meant all the work you had to do. And I know it was a

difficult case. It has some challenging issues and points. There was a big thing about privilege logs and you all got to get ready for trial.

So 25 percent it is. 9,000 for the -- wait are you the person who asked for 9,000?

**ATTORNEY SAHAM:** Yes, Your Honor.

**THE COURT:** I'm not sure I'm going to do that for a service fee. That's a larger issue you don't need to get enmeshed with, but I'll probably cut that down a bit.

But I'm going to withhold 25 percent -- everything is granted. I'm going to withhold 25 percent pending filing of the final report pursuant to our settlement guidelines. Okay.

So you give that to me. You can take 75 percent of the fees, whatever your timing is under the settlement agreement, but 25 percent has to remain in trust until I sign off on it after I get the final report, final accounting. Okay.

All right. That's it. Good work. Okay. Thanks for coming in.

**ALL:** Thank you, Your Honor.

(Proceedings adjourned at 10:27 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Monday, August 28, 2023

_____

Kelly Shainline, CSR No. 13476, RPR, CRR
U.S. Court Reporter

# EXHIBIT K

📞 832-203-7695          ✉ lkillion@ino-consumerhelp.com          👍 Notice:   **Welcome!**

Quick Links

# iNo! Blog

Informed – I know; Decision – I No! : ConsumerHelp

Search...                                                                                     Sea

☰ ✖ Menu

Home          About iNo!          About Me          Contact Me

# Class Action Lawsuit and Attorney Fee Reform

📅 March 5, 2023     👤 Larry Killion

What to do about excessive attorney fee awards in Class Action Lawsuits. Self-Help and Law-Help attorney fee reform remedies.

A 38 page Class Action discussion document with forms and a short summary video.

Discussion document: https://ino-consumerhelp.com/wp-content/uploads/2023/03/ClassActionLawsuitAttyFeeReform.pdf

Short summary video: https://ino-consumerhelp.com/wp-content/uploads/2023/03/ClassActionLawSuitAttorneyFeeReform.mp4

**Share this: Social Media**

Share 0          Tweet

**Like this:**

Like

Be the first to like this.

🗁 Consumer     🏷 Action, Attorney, Certification, Class, Fees, Lawsuit

NOW WHAT? WHAT TO DO IF YOU EXPERIENCE CAR THEFT OR BURGLARY IN A TEXAS PARKING LOT...

Understanding Blockchain and Cryptocurrency Technology – "Blockchain For Legislators – A Guide, Disruptive Technology – Promotes Progress, Distructive Technology – Not So Much"

## Welcome!

Welcome to my iNo! consumer he blog.  Consumer is a broad term r only referring to someone seeking goods and services but also anyor seeking background research and in order to make better informed decision.  A variety of topics will b blogged and I hope you find them useful.

## Subscribe to Blog via Emai

Enter your email address to subso to this blog and receive notificatic new posts by email.

Join 4 other subscribers

Email Address

Subscribe

Search...                         Sea

## Recent Posts

» Houston, Texas Water Facts: C and Typical Residential Use

» CAR FRONT END BUG COVERS WHY I STOPPED USING THEM

» A Discussion Paper: Commerc Contracts and Covenants Not Compete, Area of Mutual Inte (common project area), Stabil Clauses (defending against government contract invalida risk), Indemnity

» Summary of Contractual Righ Regarding: Assignments, Dele and Novation in Commercial Contracts.

» SOLAR ENERGY FINANCIAL AN BREAK INCENTIVES...THEIR LEGITIMATE PURPOSE...

## Recent Comments

## Archives

» August 2023
» June 2023
» March 2023
» February 2023
» November 2022
» April 2022
» March 2021
» December 2020
» November 2020
» April 2020
» March 2020
» January 2019
» December 2018
» October 2018

## Categories

Select Category

## Meta

» Log in
» Entries feed
» Comments feed
» WordPress.org

Uncategorized | Health | Mineral Resource Ownership

Copyright. All rights reserved.

Proudly powered by WordPress | Education Hub by WEN Themes

# EXHIBIT L

**ATTORNEY'S FEES**

**IN CLASS ACTION LAWSUITS**

**WHAT TO DO ABOUT HUGE (UNREASONABLE?) LAWYER PAYCHECKS**



Table of Contents

**Class Action Lawsuit Industry**                                                   3

**Incentive Factors**                                                               4

**How To Control Award Of Huge Attorney Fees**                                      5

**First - Attorney Fee Reduction Action Plans**                                     5

**Why These Plans?**                                                                6

**Background:   Class Action Lawsuit Boot Camp**                                   10

**Advantages of a Class Action Lawsuit, includes**:                                11

**Disadvantage of a Class Action Lawsuit, includes:**                              11

**Attorney's Fees**                                                                14

**Advantages of Contingency Fee Structure Includes:**                              15

**Disadvantages of Contingency Fee Structure Includes:**                           15

**Attorney Fees Reasonableness Test**                                              16

**Use, Misuse and Abuse – Standards of Proof and Other Reforms**                   18

**Justice and Class Action Lawsuits**                                              22


**Appendix A –**                                                                   27

**Class Action Lawsuits – Huge Attorney Fee Illustrations**                        27


**Appendix B**                                                                     29

**Example Form Objection To Attorney's Fees**                                      29


**Appendix C**                                                                     34

**Example Op-Out Form**                                                            34


**Appendix D**                                                                     36

**Class Action Lawsuits – Attorney Fee Legislation**                              36

**Class Action Lawsuit Postcard Claim Form**                                       40

## Class Action Lawsuit Industry

The Class Action Lawsuit Industry ("***CALI***") is alive and well (some law firms even publicizing their '*Class Action Lawsuit of the Month*', merchandising (carnival barker?) Class Action justice as if it is a used car,



- As post card Class Action Lawsuit mailed notices to victims ('***Class Members'***) (generally managed by third party non-lawyer administrators, part of the CALI) arrive more frequent than holiday season  sales catalogues,
- Accompanied by Class Action representing attorneys demanding (but unadvertised) huge multi-million dollar fees using the Class Action Lawsuit as a vehicle to secure such fees,
- While Class Members each receive a few hundred bucks or less, as Class Action compensation, the vast majority of which do not even know they were victims, and most unaware of the huge attorney fee claim[1].

The smell test of all this does not look or sound right.



Attorney's fee awards in the CALI appear to have settled in on a 'standard' 'rubber-stamp' court approved fee based on 30% to 40% of the Class Action claimed harm – sounds similar to roadside billboard justice using a sledge hammer to crush guilty until proven innocent truck drivers associated with negligence claims while conveniently ***NOT*** advertising contingency fee taking by attorneys in the 30%? to 40%? range. Yet attorney's fees for each Class Action case (whether based on billable hours or contingency fee demands) are supposed to be tested on a standalone reasonableness standard and not a 'one-size-fits-all' mentality[2].

---

[1] Rare is the Class Member who will take the time to study court documents to educate themselves about the attorney fee over-reach, and instead, as tactfully understood by representing counsel, lured into the sense of some easy money sourced from the Class Action lawsuit nominal compensation award, sort of like being a surprized winner in a raffle not knowing you were even entered to participate.

[2] Most Class Action lawsuit attorney fee demands are accompanied by voluminous pages (sometimes rivaling the number of pages about the merits of the case) explaining why huge fees are relevant, as well as comparing the current case with prior cases as additional justification why the size of the award is prudent.  Both of these arguments are inconsistent with a one-size-does-not-fit-all lawyer fee claim.  The harder one has to argue for something is all

**Incentive Factors**

Incentive factors influencing this Class Action industry growth, especially the award of huge attorney fees (leaving the real victims of a case with only a nominal award), includes:

- **Incentive No. 1: Huge Lawyer Fees**. A review of randomly selected Class Action federal court files[3], illustrates the magnitude of huge attorney fee award incentives, accompanied by small nominal claim awards to individual Class Members. The example cases cited in Appendix A indicate typical individual award to Class Members of less than $20 and many in the few $100s, while multi-million dollar awarded attorney's fees representing 25%[+] of **TOTAL** award claim for a minimum average range of **per attorney** fee of $222,000 to $287,000. The per attorney fee is probably understated, since the average calculation assumes the estimated number of assigned attorneys to a case, work full time on the case, which is probably not realistic, and consequently dramatically understates the real average attorney fee take;

- **Incentive No. 2: 'Deep-Pocket' Defendants**. Many/Most [corporate] defendants in Class Action lawsuits who honestly try to comply with applicable consumer and investor laws, are well known, established and trusted, and highly regulated, publicly stock traded companies: (Appendix A publicly traded companies include: Nielsen-NYSE, T-Mobile-NASDAQ, American Airlines-NASDAQ), Oracle Corporation-NYSE, financially sound with 'deep-pockets' and capable of paying huge attorney fees, thus 'easy-worth-the-effort' litigation incentive targets). These businesses routinely retain experts to give them advice in regard to compliance with relevant consumer and investor laws and regulations. These compliance characteristics are indicative of a company NOT out-to-cheat its customers or investors.

- **Incentive No. 3: Speculative Law Compliance – Use, Misuse, Abuse**. Consumer and investor laws on which most Class Action lawsuits are based, are not 'black-and-white' and easily interpreted as to what is right and what is wrong, but are complex and subject to wide ambiguous interpretations – for example security fraud and consumer protection laws – making compliance with these laws challenging even for the most compliant minded company – especially for honest defendants. Because of the speculative nature of these laws, this is fertile ground for litigation minded lawyers having the incentive to craft a case, whether real or illusionary, that places doubt in jury's and Jurist's minds whether or not such speculative laws have been violated. As in all things in life, stuff (in this case laws) can be **used** for their intended public protection purposes, or **misused** or **abused,** for what-ever reason, such as an over-reaching grant of attorney fees.

Awareness of these Class Action litigation incentives is nothing new, as there is a history of studies, reports and papers (see the Bibliography of examples of such), discussing and analyzing the pros and cons of Class Action lawsuits, many focusing on and criticizing what justice is all about and the disparity between huge plaintiff's attorney's fees paid by honorable defendants

---

the more reason to instill a sense of suspicion especially where the weight (and not the quality) of the justifying argument is not in the merits of the argument but in the volume of paper being used to cover up questionable proof.

[3] Appendix A is a summary of recent Class Action lawsuits illustrating applications for huge attorney's fees coupled with nominal awards to Class Member victims.

coupled with nominal award claims paid to the real victims.   While many of these reports are scholarly and  well researched, they have had little impact on reducing – so-far, or at least shifting, huge attorney fee awards and filtering out unjustified Class Action claims or putting more justified compensation into the pockets of the real victims and less in the pockets of representing attorneys.

*Many of these reports ask the question:*

## *Have Class Action lawsuits merely been used as a vehicle for attorney's to secure huge fees with justice a secondary objective[4]?*

### How To Control Award Of Huge Attorney Fees

This paper does not repeat the arguments cited in historical writings…***BUT SUPPLEMENTS*** some new dimensions to the topic.

- **First**:  By suggesting **self-help** and **law-help**  action plans the public can adopt to (i) influence the adjustment to huge attorney fee paychecks in Class Action lawsuits by (ii) honestly assessing the merits of any attorney fee award claim based on 'honest' reasonableness tests.
- **Second**:  By providing this summary discussion of why such self-help and law-help plans make sense.

#### First - Attorney Fee Reduction Action Plans

- **Self-Help**
  - o **If attorney fees are viewed as being unreasonably huge (does not pass the smell test[5]), Class Action members should file written Objections with the Court, challenging the unreasonableness of such fees.  (Example objection form provided in Appendix B).**
  - o **Class members electing *NOT TO PARTICIPATE* ("Opt Out") in the Class Action lawsuit. (Example opt-out form provided in Appendix C).**
- **Law-Help**
  - o **The public contact their elected government Representatives  requesting they pass new laws…**
    - ▪ **Laws designed to promote reasonableness tests of the award of attorney's fees in Class Action lawsuits such as a realistic fee formula or caps on awards.  (Example contact form provided in Appendix D).**
    - ▪ **Laws or rules governing the standard of proof for any Class Action Lawsuit claim to be based on the more stringent Clear and Convincing Evidence standard (and not Preponderance of the Evidence).**
    - ▪ **Laws designed to simplify,  easy to understand, postcard Class Action lawsuit notices, clearly and conspicuously describing (1) what potential**

---

[4] Not uncommon, a huge number of pages filed in Class Action lawsuits are dedicated to defending huge attorney fee applications compared to defending the merits of the actual Class Action Claim.
[5] Like pornography, often you know it when you see  it.

claim is being sought, (2) how much (cash and non-cash) in total and how much each individual Class Member may be entitled, (3) how the size of the Class Action Claim and attorney's fees are effected if Class Members op-out of participating in the lawsuit, and (4) how attorney fees are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer. (Example notice form provided in Appendix E).

- Laws regarding the prohibition of contingency legal fees in regard to Class Action lawsuits, requiring attorneys to justify their fee as being reasonable in regard to hourly rate and time spent on a case.
- Laws requiring prior to a lawsuit being certified as a Class Action lawsuit, the defendant shall be given a mandatory prior notice (the "Class Action Pre-Certification Notice" or "CAPCN" letter), of such planned certification request, and an opportunity for defendant to resolve the case.

## Why These Plans?

- **Objection**:  The law requires prior to Court's approving a Class Action Claim and requested attorney's fees, such fees be tested for 'reasonableness'.  Each test is on a case-by-case basis, no one-size-fits-all (at least that's the objective test –yet awards all seem to migrate to a 30% to 40% standard of recovery and reasonableness test arguments citing other cases as a consistent basis of award).
  - Attorney's regularly cite as a part of their reasoning why their [huge] fee request is reasonable is because it is consistent with other Class Action lawsuits (30%-40% contingency fee rationale?) which is contrary to the one-size-does-not-fit all reasoning.
  - Counsel argues why they should be certified as Class Action lawsuit Class Representing Counsel based on their skills and experience, then argue why a [huge] fee is required because of the complexity (speculative nature?) of a case. Seems odd that on one hand Counsel will argue it is skilled ostensibly requiring less time/effort to handle a case, yet when it comes to their fee, such fee should be [huge] regardless of the skill factor.  *Rare is the worker who argues for a cut in pay.*
  - Class Action Member attorney fee Objections filed with the Court, helps remind the Court of its reasonableness test obligations – especially since the Class Member is the victim and for every dollar paid attorney's is often one less dollar paid to the real victim (at least in contingency fee cases).  If the victim's don't complain, it would be natural for a Court to *assume* victim's are ok with the requested fee, which naturally dampens their enthusiasm, with a busy Court docket, to pursue a deep dive test of reasonableness.  It's not that victim's don't have an interest in the case and reasonable attorney's fees, the complexity of filing Objections with the Court as well as studying Court filed

documents, deters many well intentioned victims to themselves committing to a deep-dive analysis.

- **Opt-Out:** If many/most Class Action Members collectively elected not to participate in a Class Action lawsuit (*opt-out*), then the Claim amount would be automatically reduced (since there are less 'victims'), and if there is a request for [huge] attorney's fees, typically based on a contingency fee (attorney's being paid a percentage of the Claim awarded to the real victims), then the fee would be less. And even if a fee is not based on a contingency payment, a huge attorney fee and trivial victim award compared to that fee, will expose the unreasonableness of the fee claim.

  o For example, 30% fee of $100 million Claim for 100,000 Class Members means $30 million to lawyers and $700.00 to each Class Member, is a lot less than 30% of $500,000 Claim for 500 Class Members means $150,000 to lawyers and $700.00 to each Class Member. Still a disparity between attorney fee and Class Member award, but tempers lawyer's appetite to promote a questionable suit given their fee is much reduced (tension between values associated with earned fee and justice incentives). Or in the alternative, an attorney fee claim for $30million, regardless if the victim remedy is $100million or $0.5million. That smell test thing again.

  o In many Class Action lawsuits, the amount awarded to victims is small and nominal in amount (a few 100 dollars or less, or a discount coupon), while attorney's fee paychecks can potentially exceed $200,000 per lawyer (most likely an understatement since it depends on how many attorney's worked on a case and how long).

  o Class Action members 'giving up' a small nominal award in exchange for stopping, over the top [huge] lawyer fees, is a powerful consumer weapon.

  o While Class Action lawsuits are designed to punish illegal business practices that harms a large number of the public, always be mindful that payment of Class Action nominal claims and [huge] attorney's fees, can result in the business adding that cost back into the price of the business goods or services which means consumers and investors will in the future end up paying for the illusion of a victorious Class Action win.

  o While a business reputation may suffer a little at first, if at all, generally after the lawsuit combat is over, all is forgiven and the dust settles, it's back to business as usual – except lawyer's fat paychecks have been cashed and deposited, and consumers and investors get stuck with funding the 'hidden' bill.

- **Attorney Fee Law:** Request for attorney's fees in a Class Action lawsuit, is often based on a business alleged to have violated some law adversely affecting many parties (such as a consumer protection or securities fraud law), and that law including the statutory right to plaintiff's attorney's fees to be paid as part of the claim by a losing defendant (in contrast to the general 'American Rule' where parties pay for their own attorney's fee regardless of who wins or loses).

- o **Laws are not written for Class Action lawsuits, but to seek justice for individual victims for a particular cause of action including compensating the victim for its incurred attorney's fees as part of the award against bad business practices.**
- o **Lawyers favor taking cases and bringing lawsuits based on a law that includes award of attorney's fees, especially where the defendant has 'deep pockets' (financially strong) and can afford to pay [huge] fees.**
- o **There needs to be a Class Action attorney fee law designed to ensure any award of attorney's fee to be based on a statutory and not discretionary 'reasonableness standard', that comes into play any time there is a Class Action lawsuit. Ideally, award of attorney fee would be influenced by the amount EACH victim is awarded – low victim award, low attorney fee – especially since justice is blind to the magnitude of awarded attorney fees.**
- o **In many Class Action Lawsuits, attorney's fees are determined as a percentage of the victim's Claim amount (so called contingency fee). Consequently, the 'losing' defendant in a case, either as a result of a trial judgment or settlement, is somewhat indifferent[6] about the size of the attorney fee since it is deducted from the Claim amount. Even-so, such deduction may not in the best interest of the Class Member clients for not receiving a fair, reasonable and adequate compensation for such victim's Class Action losses due to such legal fee deduction.**
- o **It is arguably more prudent regarding Class Action lawsuits, for Class Action laws to prohibit contingency attorney fees (similar to criminal or domestic relation cases), leaving the attorney to honestly defend its time spent on the case and hourly rate, separate and apart to any Claim award paid to Class Members. Such hourly rate attorney fee defense will attract a more systematic and objective assessment of the fee, since (1) if the fee is paid by the victims, the Court will have a much clearer understanding of the details and basis of the fee request, and (2) if the fee is paid by the defendant, the defendant will be in a more realistic and efficient tester of the reasonableness of a fee claim, since the defendant is the one paying the fee.**
- **Standard of Proof:** **Because of the unique nature of Class Action lawsuit, that in the context of Justice for ALL[7], places excessive defense burdens on a defendant, justice should demand a Clear and Convincing Evidence standard of proof (and not Preponderance of the Evidence standard) associated with certifying a case as a Class Action lawsuit as well as the standard of proof used in the trial of the matter. This higher burden of proof properly places an incentive on plaintiff's, Class Members and Class Counsel, to honestly pursue a case that has merit and one suited for Class Action and based on the objective of seeking justice for ALL, and not merely an 'easy'**

---

[6] Unless the settlement is artificially pumped up to include attorney's fees as additional compensation instead of the resolve being based on what harm has been incurred by Class Members absent attorney fee claims.

[7] Justice for All, is in the context of the Nation's founding documents (U.S. Constitution, Bill of Rights, Declaration of Independence, etc), asserting justice to prevail for both plaintiffs AND defendants.

Class Action lawsuit case brought for revenge or a vehicle to secure huge attorney's fees, with justice for harmed citizens as a secondary objective.

- <u>Class Action Notice</u>:  Postcard claim notices alerting Class Members to a Class Action lawsuit, are difficult to understand and often require the reader to go online through the internet (or retain their own counsel at their expense), to obtain more detail information (if they know how to request online information as well as where to locate information of interest and interpret it).
  - o The postcard claim notice needs to be much more user-friendly, easy to read and understand, and clearly advise the reader what the Class Action lawsuit is all about, how much is being demanded from the defendant, how much each Class Member will be entitled and full disclosure of how attorney fees are being determined, what the total attorney fee could be and the average paycheck of how much each lawyer working on the case will receive.
- <u>Class Action Pre-Certification Notice or "CAPCN" letter</u>:  As another practical remedy to help deter unreasonable attorney fee demands, prior to a Court certifying a case as a Class Action lawsuit, the plaintiff and plaintiff's counsel in such case shall be obligated, to give defendant prior notice (the "CAPCN" letter) which provides clear and unambiguous information concerning:
  - (i) The legal rationale on what the Class Action complaint is all about;
  - (ii) How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee; and
  - (iii) The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action lawsuit;
  - Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.

**Background:   Class Action Lawsuit Boot Camp**

**Class Actions** (also known as a **Class-Action Lawsuit, Class Suit, or Representative Action**) are most common where the allegations usually involve at least 40 people who the same defendant has allegedly injured in the same way. Instead of each damaged person bringing one's own lawsuit, the Class Action allows all the claims of all Class Members—whether they know they have been damaged or not—to be consolidated and resolved in a single proceeding through the efforts of **Representative Plaintiff(s)** and Representative Plaintiff's lawyers appointed as **Class Counsel**. The  Class Action binds (by default) all Class Members (victims) of the Class (including being bound by the attorney fee arrangement agreed with the initial Representative Plaintiffs in a Class Action Lawsuit – a huge exception to the general rule where attorneys and their individual clients mutually agree to fee arrangements), unless a Class Member gives timely notice to opt-out and not be represented by such Class Action.  Depending on the Class Action details, any victim that opts-out, may or may not preserve its right to bring its own separate lawsuit (and individual attorney fee arrangement).

There is a familiar saying about "strength in numbers." For example, a single person who was misled into paying 50 cents too much for an illegally overpriced stick of deodorant doesn't have enough incentive to go to the trouble and expense of litigation just to recover that small amount of money.  Evenso, because the United States has had a culture of being litigious (billboard justice has become the norm), regardless of the merits or size of a claim (perhaps on occasion Caveat Emptor- buyer be ware -  is the better and more honest remedy), U.S. centric attorneys are quick on the lawsuit panic button, because the fabric of U.S. justice promotes win-lose sledge hammer litigation mindedness accompanied with huge attorney fee awards  and not mature hand-shake win-win resolve.

It's when many people—often tens of thousands, or more—are honestly harmed a similar way by the same problem, that a Class Action lawsuit **_may_** be worth bringing. (**_May_** in the sense every little wrong does not need a remedy – as some assumption of risk and impact is the more honorable thing to do – just like bringing up a child, until a boundary is known and not to be broken, punishing a first time offender does nothing to promote the development of a child into healthy adolescence). Uniting all similarly affected parties into a plaintiff's Class (Class Members) has the effect of rasing the stakes significantly for [corporate] defendants. That's part of the law of the jungle.  It's more likely that an honorable Class payoff will be worth fighting for, and companies that face the prospect of Class Action liability, have a strong incentive to settle a merit based claim and correct their behavior (even though many have acted innocently and without intent to do wrong) and implement better (learn from their mistakes) business practices, designed to prevent bad (whether intentional or unintentional) practices – which illustrates a merit based circumstance, and not one based on astute legal counsel crafting a claim because of the uncertainty and speculative nature of the underlying law.

Evenso, small claim litigation revenge tactics should [must?] always be tempered (rejected?) with what justice is all about.  All small claim infractions do not justify seeking combat lawsuit justice, more times than not premised on seeking revenge – where in many cases, attorney's stir the emotions pot of the 'victims' to use the litigation hammer and unjustifiably beat up the alleged

wrongdoing but honest defendant.  In whose best interest are Class Action lawsuits brought?  For alleged victims?  Huge fee greedy attorneys? Correcting a real wrong?  Correcting an illusionary wrong?

**Advantages of a Class Action Lawsuit, includes**:
- **Efficiency**.  Combining meritorious cases in a Class Action can increase the efficiency of the legal process, and lower the costs of litigation.   In cases with common questions of law and fact, aggregation of claims into a Class Action may avoid the necessity of repeating days of the same witnesses, exhibits and issues from trial to trial.
- **Meaningful**. A Class Action may overcome the problem that meaningful small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.   A Class Action ensures that a defendant who engages in widespread harm (whether intentional or not) – but does so minimally against each individual plaintiff – must compensate all affected individuals for their injuries.  But in all cases, is that justice? (Every little wrong may have a remedy but that remedy may be a mature assumption of risk attitude and get on with life and not revenge).
- **Behaviour Incentive**. Class-Action cases may be brought to purposely and honorably change behavior of a class of which the defendant is a member.
- **Race To The Bank**.  In "limited fund" cases (which means the defendant(s) do not have 'deep pockets' and not financially strong), a Class Action ensures that all plaintiffs (victims) receive some relief and that early filing plaintiffs (they win the race to the bank) do not raid the common fund (owned by the defendant) of all its assets before other plaintiffs may be compensated.
- **Confusion**. A Class Action avoids the situation where different court rulings could create incompatible standards of conduct for the defendant to follow.

**Disadvantage of a Class Action Lawsuit, includes:**
- **Caveat Emptor (Buyer Beware – Victim Liable For Certain Consequences)**.  Class Action procedures are arguably inconsistent with due process mandates and unnecessarily promotes litigation of otherwise small, trivial claims, and challenges what Justice is all about.  A certain amount of risk is expected to be assumed by the public without recourse for someone else to pay.  There needs to be a balance between seeking justice and seeking revenge.  What is honorable and what is greed.
- **Abuse**.  The preamble to the (Federal) Class Action Fairness Act of 2005, implies that some Class Actions are abusive, harm Class Members with legitimate claims, especially where defendants have tried to honestly act responsibly, and such abuse, adversely affecting interstate commerce (legitimate businesses stops providing useful consumer goods or services in fear of defending costly abusive Class Actions), and undermined public respect for the country's judicial system (the Court's permitting abusive Class Actions to be pursued – sometimes as a vehicle for Class Counsel to secure huge fees while the real victim's receive nominal value).
  - More times than not, Class Action lawsuit defendant's are reputable companies.  These companies utilize their own legal and business experts who give advice and

counseling and what to do to comply with relevant State and Federal laws. Rare is the reputable company that intentionally violates a law but in contrast, acts responsibly for law compliance. Even-so, many laws are written broadly and many ambiguous as to what is right or wrong, and because of business complexity and broad interpretations of the law, stealthy litigation counsel can craft an argument that often creates an environment of uncertainty (the 'fog index') whether or not a reputable company violated a law. An attorney's job, is to represent to the best interest of their client, and earn a fee, AND comply with professional standards of conduct – the ethics of law – Justice for ALL mandates. Because of law interpretation uncertainty and speculation, reputable companies will, without any admission of liability, often settle a case, to avoid unnecessary defense expenses, wasted time, and unwanted bad publicity – since rare is the opportunity for the defendant to honestly present the more honest facts as the consuming public do not have the time to listen to such. (Not unlike the quick message broadcast in roadside billboard lawyer advertisements, advising that the 'hammer' goes after truck drivers involved in accidents – automatic guilt and remedy – so much for due process. The ugly side of justice).

- **Victims Are Secondary**. Class Members often receive little or nominal benefit from Class Actions.
  - o Examples
    - ▪ Huge fees for the attorneys, while leaving Class Members with coupons or other awards of little or nominal value;
    - ▪ Unjustified awards are made to certain plaintiffs at the expense of other Class Members (such as Representative Plaintiff's requesting priority payments for them having started the lawsuit or acting as Representative Plaintiffs); or such Representative Plaintiff's being paid a 'bounty' fee for having initiated a case that prompted the Class Action certification, and hence an 'entitlement' to a bounty that other Class Members, who merely missed out on being the initial claimant, is not entitled to such bounty;
    - ▪ Confusing published and mailed Class Action postcard claim notices, that interfere with Class Members being able to fully understand and effectively exercise their rights;
    - ▪ Laws require the Court's approval of all Class-Action settlements, and in most cases, Class Members given a chance to opt-out (not participate) in Class Action settlements. Even-so, though Class Members, despite being given opt-out post card claim notices, may be unaware of their right to opt-out because they did not receive the notice, did not read it or did not understand it.
      - • The Class Action Fairness Act of 2005 attempts to address some of these concerns…
        - o An independent expert may scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services)

before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.

- o Since many Class Members do not use or spend their coupons (many are trashed or forgotten), award of contingency attorney's fees include the value of unused coupons which means such fees should be lowered in regard to unused coupons. Even-so, coupons are not customarily part of Class Action lawsuit settlements.

- **Who Is The Victim?** Various studies of Class Actions in federal court found that many plaintiffs (victims) received only a tiny fraction of the money awarded while plaintiff lawyers frequently secured a huge, highly disparate share of the settlement than their clients – the real victims in the lawsuit. Many Class Action lawsuits can be viewed as merely a vehicle or conduit through which attorney's can secure huge fees and not an honest mechanism of seeking justice for real victims.

State and Federal laws provide for the bringing of Class Action lawsuits. Most of the time a Class Action lawsuit is brought in federal court and not a State court, because:

- The victims (plaintiffs) in the lawsuit are resident in many States (diversity of citizenship), consequently, federal court is viewed as being more fair to all plaintiff's instead of those residing in any one particular State;
- Federal Courts are more experienced with hearing Class Action Lawsuits;
- Class Action Fairness Act of 2005, is a federal law that makes it easier for Class Action lawsuits to be heard in federal courts.

An individual lawsuit often starts out with one or more initial plaintiffs (victims), claiming some business or entity violated a Federal (or State) law. Coincident with that case, the underlying complaint indicates there are many more similarly and adversely affected victims.

Attorney's who accept such a case, recognizing there are many victims with similar claims, will petition a [federal] court to *certify* the case as a Class Action lawsuit, naming the initial plaintiff's as 'Representative Plaintiff's' (or lead plaintiff's) in the Class Action claim and the attorneys requesting the Court (because of counsel's Class Action skills) to also name (certify) them as Class Counsel, thereby representing all victims.

After the Class Action Lawsuit is well advanced – sometimes many months or years (where Class Counsel has reached a tentative settlement agreement with defendants for both victim's damages and attorney's fees or resolved a case at trial), Class Member's for the first time become aware of the Class Action Lawsuit, by receiving a postcard claim notice in the mail:

- Advising them of the lawsuit,
- Awareness that they are an identified Class Member victim,
- Guidance on where to obtain information (usually on-line through the internet), that includes guidance on what the suit is about and what remedy Class Members may be

- entitled and how to file a claim as well as some general reference to filing objections (regarding adequacy of the claim settlement or reasonableness of requested attorney fees).
- The notice will also cite unless the Class Member timely opts-out (elects not to participate in the Class Action lawsuit) of the suit, they will automatically be included, generally at no cost, and will be bound by any outcome of the suit or settlement.

When plaintiff's Class Counsel win a Class Action lawsuit, or when they secure a pre-trial settlement with the defendant, legal fees and court costs are typically demanded in the award or Claim. This Total award or Claim is often referred to as the "Common Fund," from which legal fees, as well as recovery for Class Members damages, are paid, unless a separate claim is made for attorney's fees on top of total Claim to be awarded Class Members.

### Attorney's Fees

While the practice of law seeks justice, it's still a business, and unless an attorney has agreed to work pro bono (free of charge, a public service), an attorney can expect [reasonable] compensation in exchange for their legal services.

Federal and State Courts in the United States in regard to attorney's fees, follow what is called the 'American Rule'. What this rule means is that each party (both plaintiffs and defendants) in a lawsuit are responsible for funding and paying their own attorney's fees, no matter who wins the case.

However, this Rule can be modified by either…

- **Contract**: Parties to a contract can agree under certain circumstances, one of the parties will pay the legal fees of the other in regard to a particular dispute, or
- **Statute**: If there is a law (a statute) that specifically provides as part of its remedies, award of attorney's fees to a successful party – normally the plaintiff (i.e. a defendant is ordered to pay plaintiff's attorney fees). Many times, such statute based award of attorney's fees can be many times greater than the value of actual damages suffered by a successful plaintiff, or
- **Settlement**: Plaintiff's attorney fees could also be paid by defendant, as a result of the defendant settling a case and volunteers to include payment of plaintiff's attorney fees as part of the settlement. (Theoretically, attorney's fees agreed by defendant as part of the settlement, is a form of a contract whereby, the attorney's client acquiesces in that fee arrangement as if the attorney and their client negotiated such fee arrangement).

The details of how attorney fees are typically determined and calculated is a matter of negotiated contract between an attorney and their client, and can be:

- An agreed hourly rate billed by the attorney and paid by the client (a 'fixed fee' arrangement), or
- A contingency fee, where the attorney does not charge a separate fee, but will take a percentage (25% to 40% as examples) out of a successful award (hence the attorney fee is

contingent on winning a case). If the attorney is not successful in winning a case (either by going to trial or securing a pre-trial settlement), then it will not receive a fee, or

- A combination of fixed fee and contingency fee.

In a Class Action lawsuit, the Representative Plaintiff is the **_only_** plaintiff who negotiates attorney fee arrangements for the Class Action. All other Class Members do not participate in such negotiations, and as a consequence, if they participate in the Class Action (and not opting out), then those Class Members have impliedly and automatically agreed with the attorney fee arrangement established between Class Counsel and Representative Plaintiffs. Typically, Representative Plaintiffs will agree with Class Counsel to a contingency fee (and not a separate out-of-pocket 'fixed fee' hourly rate – unless the claim is based on a statute that provides for award of attorney fees), which means Class Counsel will deduct its contingency fee from any Class Action successful award (either determined by trial or pre-trial settlement).

***Even-so, any attorney fee arrangement must still be tested by the Court for reasonableness. This reasonableness test applies even with "clear sailing" agreements which are cases in which the defendant agrees to a noticeably large award of attorney fees and agrees not to object to that amount (perhaps a defendant quick dispute resolution tactic whereby Class Counsel are incentivized with a quick paycheck while the victims award may be lacking – which may challenge the ethics of representative counsel giving priority to representing the client's best interest and not preference to the attorney's paycheck).***

**Advantages of Contingency Fee Structure Includes:**

- No Up-front Fees. Helps give those lower income clients better access to legal assistance and the court system.
- Incentive. If attorneys don't get paid unless client gets paid (win's its case), the attorney will be highly motivated to do everything in their power in order to get their client the best possible result. A performance based agreement.
- No Costs for Losses. Lawyer is willing to risk not collecting a fee for the work they put into things.
- Contingency fees are helpful in cases where a client is short on funds, and has an otherwise costly or complicated case.

**Disadvantages of Contingency Fee Structure Includes:**

- Encourages attorney to pursue non-merit case as nothing to lose but their time and foregoing other clients, and in a slow work environment, not much may be given up, or the pot of gold huge attorney fee incentive is worth the gamble to pursue a case[8].

---

[8] While there is a risk in a contingency fee structured case of losing and not receiving a fee, attorney's who accept contingency cases are normally skilled at assessing the risk of recovery, and consequently are comfortable when they take on such cases that they more than likely will receive a fee. Not unlike the contingency fee based billboard litigation hammer attorney seeking justice from truck driver accident bad guy defendants (and their insurers). Such sound bit messaging masks over the more honest concepts of justice, due process, unintentional accident, factual circumstances and a few other miscellaneous tid-bits that populist minded ears don't have time to listen to.

- A contingency fee arrangement can and often does cost a client more than a regular hourly fee.
- Once the parties agree on the contingency fee, the client owes the agreed upon percentage no matter how long the case will take–whether it takes a year or a week or two hours. This is especially true in the rare 'clear-cut' cases that may only require a few phone calls and a couple of hours of work in order to settle.
- Incentivized contingent fee lawyers may settle too soon and for too little to acquire a quick paycheck, and the client suffers.
- Contingent fees are usually too high relative to the risks that attorneys bear in a particular case, especially where they control whether or not to take a case and have already run their own risk of winning assessment analysis not shared with the client. (Is this insider knowledge and not in the best interest of the client?)

Since Class Counsel represents all Class Members and not just the Representative Plaintiffs, the Court must approve any settlement award for all Class Members including attorney fees.

Approval is conditioned on the **_settlement_** amount being **_fair, reasonable and adequate_**, and **_attorney's fees_** are **_reasonable_**.

Whether a Class Action settlement agreement is fair, reasonable and adequate, has been a bone of contention for companies who have pushed for **tort reform**, particularly as it concerns awards of huge attorney fees in Class Action litigation. These companies often complain about the huge awards of attorney fees that often change hands in Class Action settlements the amount of which are often extremely greater than actual damages claimed by plaintiffs, and they argue that **damage caps** and limits on attorney fees are necessary for the sake of justice, reasonableness and fairness.

**Attorney Fees Reasonableness Test**
Court's look to a variety of resources to assist them in determining if requested attorney's fees in a Class Action lawsuit are reasonable. If the court finds that the attorney fee agreement is unreasonable or unfair, the court may step in using its discretionary powers and either invalidate the agreement or amend it to make it reasonable.

Four significant resources used by the Court to test for reasonableness include:

1. American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees (many State Bar Association Rules of Professional Conduct are patterned after the ABA Model, and an attorney is duty bound to adhere to the Rules of Conduct else suffer consequences which could include disbarment from practicing law);
   o A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
   o Traditional fee analysis to determine reasonableness takes into account…
     - the time and labor required,
     - the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

- the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
- the fee customarily charged in the locality for similar legal services;
- the amount involved and the results obtained;
- the time limitations imposed by the client or by the circumstances;
- the nature and length of the professional relationship with the client;
- the experience, reputation, and ability of the lawyer or lawyers performing the services; and
- whether the fee is fixed or contingent
  - The traditional approach to proving attorneys' fees is for an attorney—sometimes the same attorney representing the party seeking fees—to testify as an expert on what are reasonable fees for the case (a little self-serving but them's the rules).

2. Federal Rules of Civil Procedure, Class Action Rule 23;
   - The Court '***may***' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.
3. Class Action Fairness Act of 2005;
   - Class Action settlements [damages and attorney's fees] are subject to Court approval,
   - Reports are to be filed with the House of representatives and the Senate containing
     - Recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit;
     - Recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the litigation;
     - Recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement
4. Court rulings, in particular attorney fee reasonableness test criteria described in
   - Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
   - Determining reasonable fees under the **lodestar method** is a two-step process.
     - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
     - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a ***reasonable*** fee in the case.
   - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.

- o Reasonableness takes into account the factors used by the traditional fee determination.
- o Lodestar, presumably refers to a number that provides a guiding point-or lodestar-in the determination of an appropriate attorney fee award.

What is evident from assessing the resources used to determine what is or is not a reasonable attorney fee, is fraught with many subjective elements and not much independent deterministic[9] tests.

Class Counsel submit copious documents defending its request for attorney's fees. The extent of this documentation can be voluminous and taxes the limited resources and busy dockets Courts have to study in detail all documents, consequently a challenged circumstance to fully assess all allegations and supporting documents. At times the shear weight of filed documents can be a substitute for believed validity and justification. Elegant simplicity is more beneficial and honorable than intellectual complexity. The observation is that better guidance is needed in resolving what is or is not reasonable in regard to attorney's fees and perhaps time for updated legislation to provide clarity and reduce the fog.

Consequently because of this absence of certainty, or at least a more determined method of attorney fee computation in Class Action lawsuits, astute counsel are free to argue for just about any fee they wish and paint it with broad strokes of reasonableness and justification whether in fact or illusionary. Just how long is a piece of string? Where is justice in all this, other than the rubber stamp embossed with '**APPROVED**'?

## Use, Misuse and Abuse – Standards of Proof and Other Reforms

As in most things in life, us human's can use a tool or seek justice, in the spirit of what was honestly intended – a proper use, or take a less honest path of misusing or abusing the circumstance.

The more honest argument of the extent the Class Action industry and the participants in that syndicate have often wandered from the righteous path of intended honorable use to less honest misuse or abuse paths are illustrated in the following examples…

**Certification Reform**. Original or Representative Plaintiffs seeking to certify a case as a Class Action lawsuit under Federal Rules of Civil Procedure, Rule 23 must plead and prove: (1) an adequate class definition (precise and unambiguous, identity of class members is reasonably determined excluding remote and unlikely victims) (2) ascertainability (fairly easy process to identify class members), (3) numerosity (a showing that joining and naming all Class Members in a common lawsuit is impractical) , (4) commonality (questions of common fact and law), (5) typicality (claims of the Representative Plaintiffs are typical of the claims of Class Members), (6) adequacy (Representative Plaintiffs will fairly and adequately protect the interests of the class –

---

[9] As in physics, deterministic refers to a cause and effect result which means if the same input to a situation is used again, then the same result will occur. A consistent and expected result. In contrast, a probabilistic result means if the same input is used again in a situation the outcome can be different. An inconsistent and uncertain result such as a 50% chance of such and such happening.. Chaos is the extreme of the two which refers to a circumstance that is totally unpredictable regardless of the input.

no conflict of interests) and (7) at least one of the requirements in Rule 23(b), namely: (a) separate adjudications will create a risk of decisions that are inconsistent with or dispositive of other class members' claims, (b) declaratory or injunctive relief is appropriate based on the defendant's acts with respect to the class generally, or (c) common questions predominate and a class action is superior to individual actions.

Not unusual, expert testimony (often from compensated academia professors – hired guns, invoking often complex and little understood statistical analyses and arguments of why the ingredients exist for justifying a case as a Class Action lawsuit – who are also governed by use, misuse and misuse standards of conduct) are used by attorney's as a resource to establish enough 'doubt' in the mind of the judiciary, that the easy course is to certify a case as a Class Action lawsuit.  The adage there are liars, damn liars and statisticians, is still in vogue.  Given enough complex equations, powerpoint slides and laser pointers, an expert can argue just about any side of a case and sound pretty convincing – especially when its paid for testimony and the basis of a decision is foggy, not deterministic and dependent on subjective feelings.  And to think all of this insightful assessment of class certification takes place in a few minutes or a few hours at a court room hearing (the court docket of which is always busy and a court's objective to move things along – justice to is dependent on the sweep of a ticking clock) in which participants in that hearing claim some sort of justified immediate understanding and acceptance of what the truth is and make an on the spot decision – yay or nay to certification.  It takes a university student often many hours if not days just to solve one calculus or differential equation math problem – not including the study and prep time…yet the complexity of class action certification decisions happens in the twinkle or an eye.

The Representative Plaintiffs bear the burden of proving that the prerequisites to class certification have been met by a *preponderance of the evidence*.  Theoretically this standard is supposed to be based on evidence and not speculation.

A certification decision can be challenged and an appeal made to a higher court.  An appeal may be accepted when: (1) the decision is questionable and the certification order represents the death knell for a defendant who will be compelled to settle even if the plaintiff's claims are not meritorious, (2) the decision raises an unsettled, fundamental and generally applicable issue of law that will likely evade end-of-the-case review, or (3) the decision is manifestly erroneous.

Reform is needed in the law or Rules, to cause the courts to be more pragmatic and reflective in a class certification decision.  Some potential reforms might include:
- A separate Commission is relevant, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)
  - Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct;
- A separate and specially trained or class action certification expert judge or magistrate independent from the court a case is filed in, rules on a certification arguments.

- If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter. A statutory form of attorney fee but paid by the losing plaintiff.

**Standards of Proof Reform**. The standard of proof in a court, listed in order of the degree of persuasive arguments (highest and most intense listed first) include:

- Beyond a reasonable doubt in criminal law.
- Clear and convincing evidence
    - Present evidence that leaves the listener with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.
- Preponderance of the evidence in most civil cases.
    - Prove that something is more likely than not.
- Probable cause in the acquisition of a warrant or arrest proceeding.
- Reasonable belief as part of establishing probable cause.
- Reasonable suspicion in cases involving police stop and searches.
- Some credible evidence in cases necessitating immediate intervention, like child protective services disputes.
- Some evidence in cases involving inmate discipline.
- Substantial evidence in many appellate cases.
    - Degree of relevant evidence which a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree

Class Action certification and other proofs in a Class Action lawsuit are governed by the Preponderance of the Evidence standard of proof, as is most civil lawsuits. Because of the unique nature of a Class Action lawsuit, and the heightened unique exposure to claims of a defendant to many plaintiffs and defendant's expanded defense burdens, the standard of proof in a Class Action lawsuit should be based on Clear and Convincing Evidence. Such a standard will go a long way towards self-governing promotion of the honesty of a case in regard to hired gun expert Class Certification complex testimony and Class Action attorney specialists promoting the Class Action industry. Justice can still prevail even with a Clear and Convincing Evidence standard of proof, but the burden shifts to the plaintiff to present a more honest case.

**Self-Serving Reform**. Class Counsel representing a Class Action lawsuit, is obligated to demonstrate Class Member (victim) remedies are tested to a standard of being **fair, reasonable and adequate** and any claim for attorney's fees be tested to a standard of **reasonableness**.

In many cases Class Counsel unnecessarily strain the honesty standard of argument, that the case is shoe-horned to fit within the standards of reasonableness, fairness or adequacy. The more honest arguments include:
- Argument: Class Members have not objected to the size of the remedy or attorney's fees so therefore they must by default be reasonable.
    - Reform: Most Class Members only became aware they were entitled to a claim when they received postcard notice from Class Counsel the claim exists, and typically the claim amount is so small, the Class Member may or may not file a

claim (assuming they spend time to study the notice), and spend no time challenging the suit given the small nature of the event. Hence arguing the absence of objection as part of the rationale of a claim and attorney fee being reasonable is a rather salty circular self-serving argument, and one hopefully a court will disregard (ignore?).

- Argument: Attorney's fee claims are comparable to other Class Action lawsuit awards, citing common percentage take regarding contingency fee awarded attorney's fee in other cases.
    - o Reform: This one-size-fits-all attorney fee reasonableness standard is contrary to the obligation of attorney's to determine their fee on the merits and effort involved in each individual case. Reasonable attorney's fee justification is not like earning a fixed real estate agent sales commission (the 6% 'standard' shared between buyer and seller agents). Then again, justifying a fee based on other case 'standards', is another admission of the observation that Class Action lawsuits have become a commoditized industry and vehicle to rack up huge attorney's fees and not a forum for justice.
- Argument: Expert testimony (often university professor experts – hired guns) demonstrate with subjective little understood complex statistical stealth, that the basis of a case is sounded as evidence and proof of the bad conduct of a defendant.
    - o Reform: An expert arguing in a security fraud case for example, that defendant's alleged bad conduct caused an inappropriate one penny swing in a defendant's stock price…is a pretty far-fetched argument to make, given stock price swings happen on a daily basis and to pin-point specific conduct of a defendant why the swing happened, especially when a nominal amount, is often a bridge to far…and all the more reason to have a Clear and Convincing Evidence standard of proof.
- Argument: Class Counsel base their attorney fee on a contingency basis, a percentage of the Claim award to Class Members, citing Class Action 'victims' are seeking justice and Class Counsel graciously accepting a case to advance that justice and willing to do so on a contingency basis relieving the Class Members of bearing the legal costs of a case, and usually such fees are paid by a losing defendant if an underlying statute on which a case is brought provides for attorney fees as part of the remedy.
    - o Reform: How often does Class Counsel seek to orchestrate a case as a Class Action lawsuit, driven by the objective of increasing the size of a Claim because of Class Member participation, and the size of the percentage take from a large Class Action Claim as attorney's fees, is hugely more valuable than a percentage take from an individual plaintiff claim? Thus an observation that contingency attorney's fees should not be permitted in Class Action lawsuits, leaving the attorney to justify their fee based on reasonableness standard tests associated with time and hourly rates.
- Argument: Class Counsel justify the merits of a Class Action case (either as certification as a Class Action or violation of a law) and their right to attorney's fees, based on a plethora of cited cases, mountains of self-serving justification documentation and other resources heaped upon a court's already busy docket. The weight of the argument is based on the paper weight of the documents filed and not on the quality and weight of evidence of the argument.

o Reform: Similar to discovery proceedings, perhaps attorney's should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.

## Justice and Class Action Lawsuits

The Class Action lawsuit industry seems to have wrinkled the path of what justice (or injustice) is all about.

The Declaration of Independence, the Constitution of the United States of America, and the Bill of Rights, the "founding documents" of the nation, speak directly to the ideals of freedom from oppression, equality, and justice **_for all_**. Justice is fairness and equal treatment, and applies to both the plaintiff AND the defendant since that simple '_all_' word is rather encompassing.

Class Action lawsuits seem to treat defendants as tyrants and oppressors of the public. That is not justice for _all_.

What is just remains a matter for debate. Observing the same outcome of a situation, one person may say justice was done. Another may declare the outcome an injustice and great wrong. Is the porridge too hot or just right? Is the attorney fee too huge or just right?

Justice may be viewed as a subjective process of assessing the fairness of relations between individuals and groups of people, such as...

- Getting what one deserves.
- Equitable sharing of civic burdens.
    - We all get car door ding marks and we all give them. While such is normally an accidental 'wrong', to seek a $50 door ding damage repair bill and charge a $10,000 attorney fee is not what justice is _all_ about. Revenge maybe. Assumption of a certain amount of risk is a constant balancing act in anything us humans do. (Maybe the door ding issue can be resolved by car makers installing soft bumper guards on door edges or wider parking lanes.)
- Individual virtue and ethical conduct (especially attorney's whose law license demands they honor Bar Association ethics and code of professional conduct and act responsibly and always seek justice for _all_ and not revenge).

Is it unreasonable/unethical for plaintiff's attorney to pursue a Class Action lawsuit, knowing their fee will be many many magnitudes greater than any nominal recovery of victims, where such huge fee is paid to the attorney instead of compensation to the victims? Is that justice?

Are huge attorney fee awards seen as a substitute for punitive ('punishment') damages above and beyond actual damages, of a Class Action lawsuit defendant? Justice would suppose punishment

is by way of compensation paid to victims, and where applicable, award of punitive damages (also paid to victims above and beyond actual damages) as a punishment for unacceptable intentional egregious acts of defendants. Attorney fees are in relation to reasonable honest legal services provided on behalf of the plaintiff/victims and NOT a means of punitive punishment of defendants.

Who does justice define as the victim? The Class Member victims? Plaintiff's lawyers as victims? Defendant victims being exposed to paying huge legal fees and lawyers misusing or abusing what justice is *all* about?

It's time for a change.

**Bibliography**

Baker, Lynn A., Perino, Michael A., Silver, Charles, "Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions", Columbia Law Review, vol. 115, no. 6, (2015).

Boatright, Jason, "The History, Meaning, and Use of the Words Justice and Judge", *St. Mary's Law Journal*, vol. 49, no. 4, Article 1, 727 (2018).

Carter, Jimmy, "Law Day Address at the University of Georgia in Athens, Georgia", *The American Presidency Project*, https://www.presidency,ucsb.edu, (1974).

"Class Action", Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/we/class_action, Dec 2022.

"Class Action", *Wikipedia*, December 22, 2022

"Class Action Fairness Act of 2005, *28 USC, Public Law 109-2*, Feb 18, 2005.

"Class Action Fairness Act of 2005, Wikipedia, December 22, 2022.

Connolly, Neil, "Extreme Couponing: Reforming the Method of Calculating Attorney's Fees in Class Action Coupon Settlements", *102 Iowa Law Review 1335* (2017)

Douglas, Frederick, "What, To The Slave, Is the Fourth of July (1852)", *Blackpast*, (2007)

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: 1993-2008", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2010).

Eisenberg, Theodore, Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: Empirical Study", *Cornell Law Faculty Publications, Cornell University Law School*, http://scholarship.law.cornell.edu/facpub, (2004).

"Federal Rules of Civil Procedure", *Title IV. Parties, Rule 23, Class Actions*.

"Fees and Expenses", American Bar Association, https://www.americanbar.org/

     groups/legal_services/milvets/aba_home_front/information_center/working_with_lawyer

     /fees_and_expenses/, Dec. 2022.

Frankel, Alison, "In biggest cases, class action lawyers are low-balling fee requests – and that's a

     good thing", *Reuters*, November 2, 2016.

Gentry, Caroline H., "*A Primer on Class Certification Under Federal Rule 23*", Corporate

     Counsel CLE Seminar, Rancho Mirage/CA (https://www.classactiondeclassified.com/wp-

     content/uploads/sites/26/2017/08/a_primer_class_certification_under_federal_rule.pdf,

     2017)

Hartmann, Michelle, Miller, Ralph I., Zambrano, Angela C.. "Attorneys' Fees", *SMU Law

     Review*, vol. 57, Issue 3 Annual Survey of Texas Law, Article 4, 2004.

Ibrahim, Melissa, "Bills, Bills, Bills: The Effect of a Rejected Settlement on Attorney's Fees Under

     the Civil Rights Attorney's Fees Award Act of 1976", *Cardozo Law Review*, vol. 36, p.

     1987, 1988.

Johnson, Charles T. et al v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020).

King, Martin Luther Jr., "Letter from Birmingham Jail", *Atlantic Monthly*, vol. 212, no. 2, p. 78

     (1963).

Lender, David J. et al, "Class Action Fairness Act of 2005 (DAFA): Overview", *Practical Law

     Company.com*, (2013).

"Opinion #17. Negotiation of Attorney's Fees in Class Actions", *Professional Ethics Commission, Board of Overseers of the Bar*, (January 15, 1981).

Ratner, Morris, "Civil Procedure: Class Action Fee and Cost Awards", *The Judges Book*, vol. 1, art. 9, http://repository.uchastings.edu/judgesbook (2017).

"Rule 1.5 Fees- Comment", *American Bar Association Model Rules of Professional Conduct*, Client-Lawyer Relaionship (2018).

Shepherd, Joanna, "An Empirical Survey of No-Injury Class Actions", Emory University School of Law, Legal Research Paper Series, Research Paper No. 16-402, http://ssrn.com/abstract=2726905 (2016).

Sohoni, Mila, "The Idea of "Too Much Law", *Fordham Law Review*, vol. 80, Issue 4, Article 3, 2012.

Tribe, Lawrence H., "Too Much Law, Too Little Justice: An Argument for Delegalizing America", The Atlantic, July 1979.

"What Is Justice", *School of Criminal Justice, University of Albany*, Module 1, https://www.albany.edu/justiceinstitute/33471.php, (2022).

**Appendix A –**
**Class Action Lawsuits – Huge Attorney Fee Illustrations**

**Example Class Action Case 1 (https://www.nielsensecuritiessettlement.com/)**

In Re Nielsen Holdings PLC Securities Litigation
Civil Action No. 1:18-cv-07143-JMF
United States District Court
Southern District of New York

| | | |
|---|---|---|
| Proposed Settlement Fund | $73,000,000 | ($0.19 per share) |
| Proposed Contingency Attorney's Fees (25%) | $18,250,000 | ($0.05 per share) |
| Plus Attorney Expenses | $ 1,110,000 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 17,206 | |
| Total Class Member (Victims) | 384,000,000 ($73,000,000/$0.19) | |
| Attorney Hourly Rate Disclosure Ranges | | |
| Paralegals | $315 to $505 | |
| Associate Attorneys | $895 to $2,017 | |
| Of Counsel | $975 to $1,560 | |
| Partners | $1,250 to $1,983 | |
| | | |
| Average Attorney hourly rate | $1,060 | ($18,250,000/17,206) |
| Attorney Fee Per Lawyer (assuming 82 lawyers) | $222,561 | ($18,250,000/82) |
| Range of Victim Award (depends on shares owned) | | |
| 500 shares | $70 | (500*$0.14) |
| 10,000 shares | $1,400 | (10,000*$0.14) |
| 100,000 shares | $14,500 | (100,000*0.14) |

**Example Class Action Case 2 (https://www.t-mobilesettlement.com/**

In Re T-Mobile Customer Data
Security Breach Litigation
Civil Action No. 4:21-md-03019-BCW
United States District Court
Western District of Missouri

| | | |
|---|---|---|
| Proposed Settlement Fund | $350,000,000 | |
| Plus Future Data Security Upgrades | $150,000,000 | |
| Proposed Contingency Attorney's Fees (22.5%) | $78,750,000 | (reduced from 30%) |
| Plus Attorney Expenses | $ 147,982 | |
| Total Legal Cost | $19,360,000 | |
| Claimed Attorney Hours | 8,225 | |
| Total Class Member (Victims) | 79,150,000 | |
| Attorney Hourly Rate Disclosure Ranges | $270 to $1275 | |

| | | |
|---|---|---|
| Average Attorney hourly rate | $9,574 | ($78,750,000/8,225) |
| Attorney Fee Per Lawyer (assuming 100 lawyers) | $787,500 | ($78,750,000/100) |
| Range of Victim Award (depends on shares owned) | $3.42 | ($271,250,000/79,150,000) |

**Example Class Action Case 3 (https://www.baggagefeeclassaction.com/)**

Cleary v. American Airlines Inc.
Baggage Claim
Civil Action No. 4:21-cv-00184-O
United States District Court
Northern District of Texas

| | | |
|---|---|---|
| Proposed Settlement Fund | $7,500,000 | (min.) |
| Proposed Fixed Fee Attorney's Fees | $2,850,000 | (27.5% total award) |
| Attorney Expenses | $1,142,945 | |
| Claimed Attorney Hours | 3,641 | |
| Total Class Member (Victims) | 588,654 | |
| Average Attorney hourly rate | $782 | ($2,850,000/3,641) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $285,000 | ($2,850,000/10) |
| Victim Award | $12.74 | ($7,500,000/588,654) |

**Example Class Action Case 4 (https://www.OracleSecuritiesLitigation.com)**

In re Oracle Corporation Securities Litigation
Securities Fraud
Civil Action No. 18-cv-04844-BLF
United States District Court
Northern District of California, San Jose Division

| | | |
|---|---|---|
| Proposed Settlement Fund | $17,500,000 | |
| Proposed Fixed Fee Attorney's Fees | $3,500,000 | (20% total award) |
| Attorney Expenses | $900,000 | |
| Claimed Attorney Hours | 17,900 | |
| Total Class Member (Victims) | 979,000 | |
| Average Attorney hourly rate | $195 | ($3,500,000/17,900) |
| Attorney Fee Per Lawyer (assuming 10 lawyers) | $350,000 | ($3,500,000/10) |
| Victim Award | $0.01/share (~2.7 bn shares) | |
| | (~1800 shares per shareholder avg) | |
| | $18 avg share of claim | |

A self-serving assertion: The small number of objections in comparison to the size of the Class supports a finding that the Settlement is fair, reasonable, and adequate. The reason folks did not opt-out had nothing to do with a fair, reasonable and adequacy test. Case cites false statements illegally inflated Oracles stock value – then trading between $43 and $47. Jan 2023 trade value is over $85, and a peak end of 2022 at over $100. The casual observer would cite business as usual and a good year for Oracle investors…justifying a 1 cent swing in stock value because of excessive puffing – craftily disguised as security fraud (with a lot of academic experts pontificating on their crystal ball insightfulness and naval gazing) is poppy-cock. Liars, damn liars and statisticians come to mind.

Appendix B

**Example Form Objection To Attorney's Fees**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____ DISTRICT OF _____ (_State_)**
**_____ DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | ) <br> )      Case No. _____ |

_____

**OBJECTION[10] TO PROPOSED ATTORNEY FEE AND EXPENSE APPLICATION**
**AND REQUEST FOR DOWNWARD ADJUSTMENT**

1.    Objection Applicant, _____ (_your name_) (pro se[11]), a Settlement Class Member (Class Member ID[12] _____, claim number[13] _____) submits this **OBJECTION, to apply to the entire class (and not just to me personally),** the Applicant does not plan to attend the Final Approval Hearing, has not objected to any class action settlement within the past three years, and request for modification and downward adjustment of any  pending or submitted Attorney Fee and Expense Application (herein the 'Application') because such Application is unreasonable, unfair and not in the best interest of the Settlement Class Members.

_**[Cross through or delete Option 1 or Option 2 that does not apply]**_

2.    _Option (1) Since as of the filing of this Objection, Lead Counsel has not filed in https://www[14]._____, copy of the Application, nor sent a copy to Objection Applicant, this Objection  is based on those documents of record in the cited website so filed as of the date of this Objection._

---

[10] Read the post card claim notice and follow any specific instructions regarding filing of an objection, such as timing, address to send the Objection to, and any conditions.  This Appendix B form contains typical conditions but may not be complete.

[11] Pro se means you are representing yourself.

[12] Class member ID is usually cited in the post card claim notice  received in the mail concerning the Class Action

[13] If you have filed a claim after receiving the post card claim notice, you usually will be issued a claim number.

[14] The Class Action lawsuit will be found on the internet which will allow you to have access to all case documents and other information about the case.  Insert the internet website.   Often times an Objection is filed before all relevant documents are filed online.  Final attorney fee applications are often filed late.

*Option (2) This Objection is based on those documents of record in*
*https://www_____, as of the date of this Objection.*

## OBJECTION

3.      Rationale behind  this Objection, includes…

3.1 Although Representative Plaintiff's in this Class Action Lawsuit have ostensibly approved the the Application, I do not agree with such approval, and hereby submit this Objection.

3.3  The Application is not in the best interest of Settlement Class Members and is not reasonable.

3.3 The Application must be thoroughly tested for its reasonableness, including taking into account:

3.3.1    American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees
- o   A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.
- o   Traditional fee analysis to determine reasonableness  takes into account…
  - ▪   the time and labor required,
  - ▪   the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  - ▪   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  - ▪   the fee customarily charged in the locality for similar legal services;
  - ▪   the amount involved and the results obtained;
  - ▪   the time limitations imposed by the client or by the circumstances;
  - ▪   the nature and length of the professional relationship with the client;
  - ▪   the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  - ▪   whether the fee is fixed or contingent

3.3.2    Federal Rules of Civil Procedure, Class Action Rule 23;
- o   The Court '***may***' [*emphasis added, a discretionary power*] award reasonable attorney's fees that are authorized by law or by the parties' agreement.

3.3.3    Class Action Fairness Act of 2005;
- o   Class Action settlements [damages and attorney's fees] are subject to Court approval, taking into account…
  - o   Reports filed with the House of representatives and the Senate containing recommendations on the best practices that courts can use to ensure that proposed class action settlements are fair to the class members that the settlements are supposed to benefit and recommendations on the best practices that courts can use to ensure that— the fees and expenses awarded to counsel in connection with a class action settlement appropriately reflect the extent to which counsel succeeded in obtaining full redress for the injuries alleged and the time, expense, and risk that counsel devoted to the

litigation; recommendations on the class members on whose behalf the settlement is proposed are the primary beneficiaries of the settlement

3.3.4   Court rulings, in particular attorney fee reasonableness test criteria described in
- Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.
  - Determining reasonable fees under the **lodestar method** is a two-step process.
    - First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. By multiplying the number of reasonable hours by the reasonable hourly rate, the court determines the base fee or 'lodestar'.
    - The court then may adjust the base fee or lodestar up or down (by applying a multiplier), if relevant factors indicate an adjustment is necessary to reach a ***reasonable*** fee in the case.
    - Under the lodestar method, the most heavily weighted multipliers are the time and labor required.
    - Reasonableness takes into account the factors used by the traditional fee *determination.*

4. The Court is requested to invoke its discretionary powers to modify and reduce the Attorney Fee Expense Application to make it reasonable.

5.  The economics of the requested Application indicate:

5.1 The proposed Settlement Common Fund to all Class Members is $_____. (total indicated settlement to be paid to victims)

5.2 Total Class Members are _____ (total number of victims)

5.3  Individual Class Member award are estimated to be $ _____ (cite how much each victim may receive or at least a range)

5.4  Total Attorney Fees and Expenses applied for are $ _____

5.5  The total legal hours expended on the case are _____

5.6   The average hourly rate charged for legal services is $ _____ (paragraph 5.4 divided by paragraph 5.5)

5.7  The average paycheck for each attorney working on the case is $ _____

(paragraph 5.4 divided by the total number of attorneys estimated to be working on the case, small cases may be up to 5, big cases may be 75 or more)

5.8  The disparity between the amount of recover to each Class Member compared to the paycheck each attorney could receive suggests a exorbitant and unreasonable basis of on which to base attorney fees.

6.  Any reduction in the Application is to be returned to and distributed to the Settlement Class Members, the real victims of this cause of action, and not as a contribution to attorney fees.

7.  A review of class action settlements suggests attorneys typically are 'rubber stamped' awarded their request because in part they have subjected the court to a plethora of case law cites, statutory law prose, subjective facts, mountains of documents and other heaps of information (extracted from past cases) – especially when a $_____[*insert amount of claimed fee*] attorney paycheck is in the offing - all of which may or may not be germane to the case but certainly adds a lot of fog to the landscape that a Court with limited budget of resources most likely cannot fully assimilate.

8  Settlement  (with all parties accepting a cash Settlement amount as an acceptable compromise of the issues) was achieved without trial.  Consequently, the extent and reasonableness of claimed earned legal fees are in question.  Using the same high fee whether a case settles in two hours or after preliminary discovery and pre-trial settlement negotiation does not make sense and does not pass the smell test.

> o   While it is instructive to take into account attorney work claims of:
>> o   Preparing legal documents (complaints, depositions, subpoenas, attending hearings, legal research), law firms versed in class action cases already have in hand the understanding of relevant statutes and case law, and unless a novel area of data breach issues are understood and billable time not required to be wasted and spent on developing these items, they are already in the library.

9.  [*Add any other information that is unique to the case that illustrates why you think the requested attorney fee and expense application is unreasonable*]  *At your discretion you might also include a copy of the above paper that might give the Court some additional information to think about*].

Respectfully submitted

This _____ day of _____, 20__.

_____
*[name, printed and sign document]*
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

## CERTIFICATE OF SERVICE

I, _____, hereby certify that on the _____ day of _____, 20____, copies of the **OBJECTION TO PROPOSED ATTORNEY] FEE AND EXPENSE APPLICATION AND REQUEST FOR DOWNWARD ADJUSTMENT,** **WERE** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____DISTRICT OF _____**
**_____ DIVISION**
Clerk of the Court
[address/email]


CLASS COUNSEL
[name]
[address/email]


Defendant
[address/email]


I, _____, further certify I am a Settlement Class Member.


_____

[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

**Appendix C**

**Example Op-Out Form**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____ DISTRICT OF _____ (*State*)**
**_____ DIVISION**

| | |
|---|---|
| IN RE [NAME USED IN COURT DOCUMENTS] | ) )  Case No. _____ |

_____

**ELECTION TO OPT-OUT OF THE CAPTIONED CLASS ACTION LAWSUIT**

1.  Opt-out Applicant, _____ (*your name*) (pro se[15]), a Settlement Class Member (Class Member ID[16] _____) submits this **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, and without prejudice, reserve any and all of my rights to pursue a separate claim**

Respectfully submitted

This _____ day of _____, 20\_\_.

_____
*[name, printed and sign document]*
Settlement Class Member

_____, (mobil)
_____(fax)
_____ email
_____ address
_____ address

**CERTIFICATE OF SERVICE**

---

[15] Pro se means you are representing yourself in the objection.
[16] Class member ID is usually cited in the post card notice you received about the Class Action

I, _____, hereby certify that on the _____ day of _____, 20_____, copies of the **Election to Opt-Out of the captioned class action lawsuit and not participate in such suit, was** mailed by first class prepaid postage or by email, to the following recipients:

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**_____DISTRICT OF _____**
**_____ DIVISION**
Clerk of the Court
[address/email]


CLASS COUNSEL
[name]
[address/email]


Defendant
[address/email]


I, _____, further certify I am a Settlement Class Member.


_____
[*name*]

It is presumed Lead Counsel will post this Objection as a relevant document in this case online internet posting cite.

*[This is a general form. The post card notice received about the Class Action lawsuit may contain other information of what to do to opt-out of the case. Please refer to that detail as required].*

**Appendix D**

**Class Action Lawsuits – Attorney Fee Legislation**

*[Date]*

*To:*

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

*From*

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re:  Class Action Lawsuit – Attorney Fee Legislation*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and Attorney Fee Legislation.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding huge attorney's fees granted in many Class Action cases and what action plans can be advanced to provide some control over run-away fees.*

*While the judicial Court system has oversight to assess the reasonableness of such fees, there seems to be a consistent 'one-size-fits-all' demeanor advanced when such fees are defended by Class Counsel.  This demeanor is contrary to the reasoning that one-size-does-not-fit- all where each case and its fee structure are to be assessed  on their  own merits and tested against a standard of fairness, reasonableness and adequacy.  Most Class Counsel argue that their claimed attorney's fees (a self-serving argument) are consistent in the formula used to determine fees among all  other cases.*

*The attached paper and my own experience suggests legislation may well be required to provide the necessary control over excessive fee awards.*

*I am writing to seek your counseling and perhaps leadership in advancing relevant legislation that can address the run-away legal fee paycheck issues and problems outlined in the attached paper.*

*While I don't have the answers I do have some ideas.*

## Contingency Fee Prohibition

*Perhaps, similar to prohibition of the use of contingency legal fees (where the fee is based on the attorney taking a percentage of the case outcome) in regard to domestic relation and criminal cases, Class Action lawsuit may well be added to the prohibited list, thereby leaving attorney's to argue and defend a fee based on 'fixed fee' reasonable hours and reasonable billing rate arguments.*

*As you know, the legal profession has almost unanimously determined for years that allowing attorneys to base their contingency fee on the outcome of a divorce or child custody case would create a risk of the attorney having a financial interest in the outcome as well as being against public policy and therefor unreasonable by default. This could potentially lead unscrupulous attorneys to take actions that could be against the interests of children or it could encourage attorneys to do things to make sure clients actually divorce. On the contrary, a skilled and ethical divorce attorney should always consider reconciliation, resolution, and fairness to be part of the goal and avoidance of the destruction of family relationships. There can be no financial interest in seeing to it that clients get divorced.*

*Likewise, contingency fees are prohibited in regard to criminal cases also based on public policy reasons.*

*Shouldn't Class Action counsel likewise ethically consider resolution and fairness to be the goal of such actions.*

## Reasonableness Tests Codification

*As outlined in the attached paper, the ground work for attorney fee codification has been laid out in the various resources currently consulted to assess attorney fee reasonableness.*

*Those resources include: American Bar Association Model Rules of Professional Conduct, Rule 1.5 Fees; Federal Rules of Civil Procedure, Class Action Rule 23; Class Action Fairness Act of 2005; court rulings, in particular attorney fee reasonableness test criteria described in Stabraker v. DLC Ltd., 376 F.3d 819, 825 (8th Cir. 2004), which initiated the **lodestar standard**.*

*Should legislation be passed to codify the various methods used to test for reasonableness of attorney's fees, thereby removing much of the subjective uncertainty and differences without a distinction confusion?*

*Should a codified formula (which may also include a cap) be determined that provides guidance what is considered a reasonable attorney fee, with an opportunity for attorney's to challenge the formula if they can demonstrate why their fee structure is the better reasonable structure?*

### *Independent Committee*

*Currently, attorney fee reasonableness tests are assessed by other attorneys. I have included the Court system in this testing network since most jurists are attorneys. Should there be some form of independent committee, commission or panel used to test for reasonableness of attorney fees, the participants of which also includes non-lawyers? Professions that come to mind that might be part of such panel includes Insurance (risk management), Accountants, Professional Engineers, Military Officer, Police Officer, Day Care Management, Clergy, Local Union Leadership.*

*An independent committee, commission or panel is not unlike the independent expert appointed under the Class Action Fairness Act of 2005, who is instructed to scrutinize 'coupon settlements' (where a business is willing to issue 'coupons' that provide for a discount or payment for future goods or services) before the Court's approval of the settlement, in order to ensure that the settlement will be of [some?] value to the Class Members.*

*Class Action Counsel might argue, that the complexity of defending why legal fees are reasonable, is not readily understood by the lay person. Quite the contrary, if attorney's cannot argue their defense of why their fee is reasonable in plain understood English, then the fog index is in full force…and that corrupts the concept that a little bit of sunshine is a great disinfectant.*

### *Class Action Certification Reform*

*A separate Class Action certification Commission should be created, composed of independent experts from many disciplines, who must first hear the class certification arguments and provide their opinion to the court whether the tests for certification are honestly and factually present, the cost of such Commission paid for by the plaintiff (and if a class is certified as a Class Action, the plaintiff in a successful Class Action lawsuit may include that cost in their recovery)*

*Often times when one is at risk of incurring an out-of-pocket cost, their desire to pursue a certain path is more tempered and reflective and becomes a self-assessing factor to not pursue highly questionable course of conduct.*

*If a class certification request is denied, the plaintiff is responsible for paying the defendant's costs and attorney's fees for defending the matter.*

### *Plaintiff Filing Reform*

*Similar to discovery proceedings, Class Counsel attorney's should be limited to the number of pages of documentation they file in a case, unless a show cause hearing is held to show why more and not less is necessary. The goal being elegant simplicity vs intellectual complexity. Whenever an argument is based on excessive rhetoric and paper weight, red alarm bells should ring louder than ever that the underlying honesty of the argument is lacking and being displaced and made up by heavy mass and not quality class arguments.*

***Standard of Proof Reform***

*The standard of proof used to either certify a case as a Class Action or evidence presented in a trial of the matter, should be based on Clear and Convincing Evidence and not Preponderance of the Evidence. A higher standard of proof makes sense, since such standard will have a self-governing incentive for plaintiff's and Class Counsel to advance an honest case as well as promoting the nation's founding documents objective of Justice for ALL, especially since a defendant is confronted with the unique and unusual aspects defending a Class Action claim.*

***Pre-Certification Notice***

*The honest merits of a lawsuit certified as a Class Action, should first be tested, that prior to such certification, Plaintiff's should first submit a mandatory notice letter (the Class Action Pre-Certification Notice Letter, or CAPCN) to the defendant giving them clear and unambiguous information concerning: (i) The legal rationale on what the Class Action complaint is all about; (ii) How much Class Member compensation (cash and non-cash) the defendant is expected to pay to resolve the complaint, net of any attorney fee; and (iii) The amount of claimed attorney's fees incurred as of the CAPCN letter, but prior to certifying a case as a Class Action lawsuit;*

*Such letter then giving the defendant an opportunity to resolve the complaint without Class Action certification, and if a defendant offer of resolution is rejected, if after a case is certified as a Class Action lawsuit, and the case is resolved in favor of Class Members (either by settlement or court judgment) the Class Action claim (not including attorney's fees) is equal to or less than what the defendant offered to settle with the CAPCN letter, then in that circumstance, any claimed attorney fees will be limited to what was offered at the CAPCN stage of resolution.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*

*Name*

**Appendix E**

**Class Action Lawsuit Postcard Claim Form**

*[Date]*

To:

*Name of U.S. Representative/Senator*
*[address – local/Capitol]*
*Via mail, email, fax*

From

*[name]*
*[address]*
*[email]*
*[phone]*
*[fax]*

*Re:  Class Action Lawsuit – Postcard Claim Form*

*Dear Congress Person [name] or Senator [name],*

*My name is [name] _____ and I live and vote in the district you represent.*

*I write to you as a concerned citizen regarding Class Action Lawsuits and the content of postcard claim forms used to notify potential Class Members of their claim rights.*

*I am sure you are aware of Class Action Lawsuit rights and the public service such activities serve.*

*I have attached a recent paper on such action, in particular the concern regarding user friendly notification and information contained in postcard claim forms and what action plans can be advanced to provide improved user friendly better informed awareness of important issues associated with such forms.*

*I believe legislation is needed to simplify,  make easier to understand, postcard Class Action lawsuit claim notices, designed to clearly and conspicuously describe:*

*(1) what potential claim is being sought,*

*(2) how much (cash and non-cash) in total and how much each individual Class Member may  be entitled,*

*(3) how the size of the Class Action Claim  and attorney's fees are effected if Class Members opt-out of participating in the lawsuit and*

*(4) how attorney fees and expenses are calculated, estimated total amount to be requested and indicative average attorney fee per lawyer and average hourly rate being charged.*

*Such postcard claim form legislation could be an amendment to the Class Action Fairness Act of 2005.*

*It is not uncommon when a Class Member receives a postcard claim form in the mail, short of hiring their own attorney, they need to have a reasonable understanding of how to navigate through online internet systems in order to obtain additional relevant information.  The internet navigation process as well as interpreting much of the 'legal mumbo gumbo' cited in important documents, gets lost in translation, leaving Class Members with little insight of their rights and significance of important issues.*

*One issue of importance is  the user friendly opportunity to make the postcard claim form easy to understand on which a Class Member can then be able to clearly  judge the merits of receiving a small nominal value in a Class Action lawsuit, while attorney's receive huge paychecks, using the Class Action Lawsuit as a vehicle to secure such fee (and justice taking back seat peanut gallery priority), thus allowing Class Members to make a much better informed decision of opting out (not participating) in the Claim or staying in.*

*I trust you find this request of interest and can shed some light on the issues and help find resolution to some of the problems cited.*

*Regards,*


*Name*

# EXHIBIT M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

CITY OF STERLING HEIGHTS POLICE &   :    Civil Action No. 1:20-cv-10041-PKC
FIRE RETIREMENT SYSTEM, Individually   :
and on Behalf of All Others Similarly Situated,  :    CLASS ACTION
                                              :
                    Plaintiff,     :    [PROPOSED] ORDER AWARDING     *PKC*
                                          :    ATTORNEYS' FEES AND EXPENSES AND
       vs.                            :    AN AWARD TO LEAD PLAINTIFF
                                          :    PURSUANT TO 15 U.S.C. §78u-4(a)(4)
RECKITT BENCKISER GROUP PLC,     :
RAKESH KAPOOR, and SHAUN          :
THAXTER,                       :
                                       :
                Defendants.   :
                                           :

———————————————————————— x

This matter having come before the Court on July 19, 2023, on the motion of Lead Counsel for an award of attorneys' fees and expenses and an award to Lead Plaintiff (the "Fee Motion"), the Court, having considered all papers filed and proceedings conducted herein, having found the Settlement of this Litigation to be fair, reasonable and adequate, and otherwise being fully informed of the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Order incorporates by reference the definitions in the Stipulation of Settlement dated March 10, 2023 (the "Stipulation"), and all capitalized terms used, but not defined herein, shall have the same meanings as set forth in the Stipulation.

2. This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Class who have not timely and validly requested exclusion.

3. Notice of Lead Counsel's Fee Motion was given to all Class Members who could be located with reasonable effort. The form and method of notifying the Class of the Fee Motion met the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4(a)(7)), due process, and any other applicable law, constituted the best notice practicable under the ~~PtC~~ circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. The Court hereby awards Lead Counsel attorneys' fees of ~~27.5%~~ *25%* of the Settlement Amount, [*i.e. $4,900,000 PtC*] plus expenses in the amount of $574,923.16, together with the interest earned on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is fair, reasonable, and appropriate under the "percentage-of-recovery" method.

- 1 -

5.     The awarded attorneys' fees and expenses and interest earned thereon, shall be paid to Lead Counsel immediately upon execution of the Final Judgment and this Order and subject to the terms, conditions, and obligations of the Stipulation, and in particular, ¶6.2 thereof, which terms, conditions, and obligations are incorporated herein.

6.     In making this award of fees and expenses to Lead Counsel, the Court has considered and found that:

(a)     the Settlement has created a fund of $19,600,000 in cash that is already on deposit, and numerous Class Members who submit, or have submitted, valid Proof of Claim and Release forms will benefit from the Settlement created by Lead Counsel;

(b)     over 198,900 copies of the Notice were disseminated to potential Class Members indicating that Lead Counsel would move for attorneys' fees in an amount not to exceed 33% of the Settlement Amount and for expenses in an amount not to exceed $610,000, plus interest on both amounts;

(c)     Lead Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class;

(d)     Lead Counsel pursued the Litigation entirely on a contingent basis;

(e)     the Litigation involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(f)     had Lead Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from the Defendants;

(g)     public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation; and

(h)     the attorneys' fees and expenses awarded are fair and reasonable.

- 2 -

7. Pursuant to 15 U.S.C. §78u-4(a)(4), the Court awards $1,500 to Lead Plaintiff City of Birmingham Retirement and Relief System for the time it spent directly related to its representation of the Class.

8. The Court has considered the objection to the fee application filed by Larry D. Killion (ECF 175) and finds it to be without merit. The objection is overruled in its entirety.

9. Any appeal or any challenge affecting this Court's approval regarding the Fee Motion shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

10. In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided in the Stipulation and shall be vacated in accordance with the Stipulation.

IT IS SO ORDERED.

DATED: July 19, 2023

_____
THE HONORABLE P. KEVIN CASTEL
UNITED STATES DISTRICT JUDGE

- 3 -

# EXHIBIT N

ROBBINS GELLER RUDMAN
&amp; DOWD LLP
JAMES I. JACONETTE (179565)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619-231-1058
Facsimile: 619-231-7423
jamesj@rgrdlaw.com

COTCHETT, PITRE &amp; MCCARTHY, LLP
MARK C. MOLUMPHY (168009)
TYSON REDENBARGER (294424)
ELLE LEWIS (238329)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
mmolumphy@cpmlegal.com
tredenbarger@cpmlegal.com
elewis@cpmlegal.com

SCOTT+SCOTT ATTORNEYS AT LAW LLP
JOHN T. JASNOCH (281605)
JOSEPH A. PETTIGREW (236933)
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
jjasnoch@scott-scott.com
jpettigrew@scott-scott.com

*Class Counsel*

**FILED**
**SAN MATEO COUNTY**

JUL 27 2023

Clerk of the Superior Court

By_____
DEPUTY CLERK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| In re MICRO FOCUS INTERNATIONAL PLC SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Lead Case No. 18CIV01549<br><br>CLASS ACTION<br><br>[PROPOSED] JUDGMENT AND ORDER GRANTING FINAL APPROVAL, APPROVING PLAN OF ALLOCATION, AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVING SERVICE AWARDS<br><br>Assigned for All Purposes to:<br>Hon. Marie S. Weiner, Dept. 2<br><br>DATE: July 25, 2023<br>TIME: 2:00 pm<br><br>Date Action Filed: 03/28/18 |

[PROPOSED] JUDGMENT AND ORDER GRANTING FINAL APPROVAL, APPROVING PLAN OF ALLOCATION, AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVING SERVICE AWARDS

WHEREAS, the Court is advised that the Parties, through their counsel, have agreed, subject to Court approval following notice to the Settlement Class and a hearing, to settle this Action upon the terms and conditions set forth in the Stipulation of Settlement dated January 24, 2023 (the "Stipulation" or "Settlement"); [1] and

WHEREAS, on February 7, 2023, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice, which preliminarily approved the Settlement, and approved the form and manner of notice to the Settlement Class of the Settlement, and said notice has been made, and the fairness hearing having been held; and

NOW, THEREFORE, based upon the Stipulation and all of the filings, records and proceedings herein, and it appearing to the Court upon examination that the Settlement set forth in the Stipulation is fair, reasonable and adequate, and upon a Settlement Fairness Hearing having been held after notice to the Settlement Class of the Settlement to determine if the Settlement is fair, reasonable, and adequate and whether the Final Judgment should be entered in this Action:

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

A.     The provisions of the Stipulation, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

B.     This Court has jurisdiction of the subject matter of this Action and over all of the Parties and all Settlement Class Members.

C.     The Settlement Class is certified and Plaintiffs Ian Green and Cardella Family Irrevoc Trust U/A 06/17/15, whom the Court previously appointed as Class Representatives for the Certified Class, have adequately represented the Class and shall remain in that role, as Settlement Class Representatives. The Class Members are ascertainable and it is impracticable to bring all of them before the Court individually. Common questions of law and fact predominate over individual issues. The claims of the Class Representatives are typical of the claims of the Settlement Class. Class treatment is superior to individual lawsuits for resolving the claims alleged.

---

[1]     All capitalized terms not defined herein are defined in the Stipulation.

- 2 -

[PROPOSED] JUDGMENT AND ORDER GRANTING FINAL APPROVAL, APPROVING PLAN OF ALLOCATION, AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVING SERVICE AWARDS

D. The form, content, and method of dissemination of notice given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who could be identified through reasonable effort.

E. Notice, as given to the Settlement Class, complied with the requirements of California law, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.

F. The Settlement set forth in the Stipulation, which calls for a cash payment in the amount of $107.5 million, is fair, reasonable, and adequate.

(i) The Settlement was negotiated at arm's length by the Parties, all of whom were represented by highly experienced and skilled counsel. The Settlement was reached only after, among other things: (a) extensive proceedings, including motion practice, in this Action and in the Federal Action, as well as related proceedings on appeal; (b) the completion of a substantial amount of fact discovery in this Action, including 21 depositions of fact witnesses and the production of millions of pages of documents by or on behalf of Defendants and third parties; (c) two mediations conducted by an experienced mediator who was thoroughly familiar with this Action; (d) prior to the mediations, the exchange between the Plaintiffs and Defendants of detailed mediation statements, together with accompanying documentary exhibits, which highlighted the factual and legal issues in dispute; (e) follow-up negotiations between Plaintiffs and Defendants with the assistance of the mediator and the involvement, on certain occasions, of the Federal Plaintiff; and (f) Plaintiffs' Counsel's extensive investigations. Accordingly, the Parties were well-positioned to evaluate the settlement value of this Action. The Stipulation has been entered into in good faith and is not collusive.

(ii) If the Settlement had not been achieved, the Parties faced the expense, risk, and uncertainty of extended litigation. The Court takes no position on the merits of the Parties' arguments, but notes these arguments as evidence in support of the reasonableness of the Settlement.

G. Plaintiffs and their counsel have fairly and adequately represented the interests of Settlement Class Members in connection with the Settlement.

- 3 -

[PROPOSED] JUDGMENT AND ORDER GRANTING FINAL APPROVAL, APPROVING PLAN OF ALLOCATION, AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVING SERVICE AWARDS

H.     Plaintiffs, all Settlement Class Members, and Defendants are hereby bound by the terms of the Settlement set forth in the Stipulation.

**IT IS HEREBY ORDERED THAT:**

1.     The Settlement, on the terms set forth in the Stipulation, is finally approved as fair, reasonable, and adequate, and, based on the findings set forth above, the Settlement Class defined in the Stipulation is certified.  The Settlement shall be consummated in accordance with the terms and provisions of the Stipulation.  The Parties shall bear their own costs, except as otherwise provided in the Stipulation.

2.     All Released Parties as defined in the Stipulation are fully and finally released in accordance with, and as defined in, the Stipulation.

3.     Upon the Effective Date, Plaintiffs and each Settlement Class Member, including the Federal Plaintiff, shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release.

4.     Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released Plaintiffs, Plaintiffs' Counsel, and each and all of the Settlement Class Members, including the Federal Plaintiff, from all Released Defendants' Claims.

5.     All Settlement Class Members who have not timely made their objections to the Settlement in the manner provided in the Notice of Proposed Settlement of Class Action ("Notice") are deemed to have waived any objections by appeal, collateral attack, or otherwise.

6.     All Settlement Class Members who have failed to properly and timely submit valid requests for exclusion (requests to opt out) from the Settlement Class are bound by the terms and conditions of the Stipulation and this Final Judgment.

7.     The requests for exclusion by the persons or entities identified in Exhibit A to this Final Judgment are accepted by the Court.

- 4 -

8.      All other provisions of the Stipulation are incorporated into this Final Judgment as if fully rewritten herein.

9.      Plaintiffs and all Settlement Class Members, including the Federal Plaintiff, are hereby permanently barred and enjoined from instituting, commencing, maintaining, or prosecuting in any court or tribunal any of the Released Claims against any of the Released Parties.

10.      Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:

(a)      shall be offered or received against any Defendant as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any Defendant of the truth of any of the allegations in the Action or the Federal Action, or the validity of any claim that has been or could have been asserted in the Action or the Federal Action, or the deficiency of any defense that has been or could have been asserted in the Action or the Federal Action, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any Defendant;

(b)      shall be offered or received against any Defendant as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any Defendant, in any other civil, criminal, or administrative action or proceeding, in any jurisdiction, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that Defendants may refer to the Stipulation to effectuate the liability protection granted them hereunder;

(c)      shall be construed as or received in evidence as an admission, concession, finding or presumption against Defendants that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than this Settlement, or that any of the claims of Plaintiffs, Federal Plaintiff, or Settlement Class Members have merit;

(d)      shall be construed as or received in evidence as an admission, concession, finding or presumption against Plaintiffs, the Federal Plaintiff, or any Settlement Class Member that

- 5 -

any of their claims are without merit, or that any defenses asserted by Defendants have merit, or that damages recoverable in this Action or the Federal Action, or pursuant to any subsequent operative complaint filed in this Action or the Federal Action, would have exceeded the Settlement Fund; and

(e)     Notwithstanding the foregoing, Defendants, Plaintiffs, Federal Plaintiff, Settlement Class Members and/or the Released Parties may file the Stipulation and/or this Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.     The Court hereby finds and concludes that the Action was brought, prosecuted and/or defended in good faith, with a reasonable basis.

12.     Pursuant to and in full compliance with California law, this Court hereby finds and concludes that due and adequate notice was directed to all Persons and entities who are Settlement Class Members advising them of the Plan of Allocation and of their right to object thereto, and a full and fair opportunity was accorded to all Persons and entities who are Settlement Class Members to be heard with respect to the Plan of Allocation.

13.     The Court hereby finds and concludes that the formula for the calculation of the claims of Authorized Claimants, which is set forth in the Notice sent to Settlement Class Members, provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund established by the Stipulation among Settlement Class Members, with due consideration having been given to administrative convenience and necessity. Defendants and their Related Parties shall have no responsibility or liability for determining the allocation of, or distributing, any payments to any Settlement Class Members or Authorized Claimants or for any other matters pertaining to the Plan of Allocation.

14.     The Court hereby awards Plaintiffs' Counsel attorneys' fees of $ *35,833,333* _____, plus expenses in the amount of $ *843,852*, together with a proportionate share of the interest earned on the Settlement Fund, at the same rate as that earned on the Settlement Fund, from the date of the

- 6 -

establishment of the Settlement Fund to the date of payment. The Court finds that the amount of fees awarded is fair, reasonable, and appropriate, given the contingent nature of the case and the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class.

15. The awarded attorneys' fees and expenses and interest earned thereon shall immediately be paid to Lead Counsel from the Settlement Fund subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

16. Plaintiffs and the Federal Plaintiff are awarded the following amounts: Cardella Family Irrevoc Trust U/A 06/17/15, $15,000; Ian Green, $15,000; Iron Workers Local No. 25 Pension Fund, $15,000. Such payments are appropriate considering their active participation in representing the interests of the Settlement Class, as attested to by the declarations submitted to the Court. The payments are to be made from the Settlement Fund.

17. In the event that the Stipulation is terminated in accordance with its terms: (i) this Final Judgment shall be rendered null and void and shall be vacated *nunc pro tunc*; and (ii) this Action shall proceed as provided in the Stipulation.

18. Without affecting the finality of this Final Judgment in any way, this Court retains continuing jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, interest, and expenses in the Action; and (d) all Parties hereto for the purpose of construing, enforcing, and administrating the Stipulation.

19. For the reasons stated in the Reply Memorandum of Points and Authorities, the Court overrules the objections of Larry D. Killion and James J. Wacker.

20. Plaintiffs shall promptly file and serve Notice of Entry of Judgment.

DATED: _July 27, 2023_

_____
THE HONORABLE MARIE S. WEINER
JUDGE OF THE SUPERIOR COURT

-7-

[PROPOSED] JUDGMENT AND ORDER GRANTING FINAL APPROVAL, APPROVING PLAN OF ALLOCATION, AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVING SERVICE AWARDS

# EXHIBIT A

## Exhibit A-1
### Timely Exclusion Requests from the Settlement Class

| | | | |
|---|---|---|---|
| 1. | Barbara J. Dash | 41. | James D. Brothers |
| 2. | Elese M. Talone | 42. | Diana LeJeune |
| 3. | Joseph L. Lestieri | 43. | Michelle Schumacher |
| 4. | Lona L. Peterson | 44. | Roger Deminna |
| 5. | Laura E. Werry | 45. | Virginia Winston |
| 6. | David J. Smyth | 46. | Jacqualine C. Boyson |
| 7. | Michael Banks | 47. | Herbert A. Kai |
| 8. | Jeffrey J Mosteller | 48. | Madelina R. Sabato |
| 9. | Estate of Mr. E. Vos | 49. | Cynthia S. Tiger |
| 10. | Diane M. Giles | 50. | Elizabeth Mary Thomas |
| 11. | Marta Hage | 51. | Jean-Marie Fierling |
| 12. | Miriam Villanueva | 52. | Lisa MacFarlane |
| 13. | Hans Leisentritt | 53. | Myra Kiely |
| 14. | Bessie Gray | 54. | Patricia Garvey |
| 15. | Herbert Muhl | 55. | Donna Lenifero |
| 16. | Joan Polea | 56. | Carol H. Antunano |
| 17. | Andrea Pickard | 57. | Marion L. Dodd GDN |
| 18. | Rodney M. Welk | 58. | John A. Suchina |
| 19. | Sandra Liatsos | 59. | Samuel M. Sokoloff |
| 20. | Mark D. Van DeWege | 60. | Melba J Roberts |
| 21. | Catherine Killen | 61. | Jesse A Perez |
| 22. | Estate of Paul Winicki | 62. | Donald Cronin |
| 23. | Alfred Bracht | 63. | Barbara G. Bayne |
| 24. | Otto Langenbacher | 64. | Francesco Bonetti |
| 25. | Estate of Louise Kozerski | 65. | Elizabeth J Gow |
| 26. | Susan Byrdy | 66. | Alberto Coll |
| 27. | Siobhan Caverly | 67. | Lola Escalante |
| 28. | George Thomas Davis | 68. | Joshua Meyer |
| 29. | Marcia E. McKinney | 69. | Vernelie Overman |
| 30. | Bradley Dettinger | 70. | Hilke Borbath |
| 31. | Naomi Judy | 71. | Louis A. DiMauro Jr. |
| 32. | Betty Ann Stewart | 72. | Helen L. Nolte |
| 33. | Doris F. Chisler | 73. | Robert Lee McCumber Trustee |
| 34. | Denyse R. Rice | 74. | Marcella A. Martelli |
| 35. | Richard S. Wagner | 75. | Arlene L. Storm |
| 36. | Diane M. Lathrop | 76. | Dennis D. Johnson |
| 37. | Kay R Kelly | 77. | Charles E. Ohman |
| 38. | Borel Setten | 78. | Althea Grace Piveda |
| 39. | Robert C. Cohen | 79. | George Leskevich |
| 40. | Lynda Frances Bassett | 80. | Michael J DeSantis |

1

## Exhibit A-1
### Timely Exclusion Requests from the Settlement Class

81. Judith Ann Payne
82. Otto E. Ehlers, Sr. Trust
83. Junko Sakazume
84. Monica M. Pollich
85. Anneliese M. Pollich
86. Bruno Isaia Schiesser
87. Julie Bowles
88. Margot Pieroway
89. Linda Kay Harris
90. Cecil J. Shaffer
91. Ivan Prikyl
92. E. Brown
93. Debbie Jernigan
94. Marc Schmitt
95. Barbara A. Baylard
96. Susana Sabadias
97. Norbert Wurle
98. Xavier Douchez
99. Jan Bojtos
100. Melba J Roberts
101. Vivien Joan Lambert
102. Giacinta Coriale
103. Katerina Louise Nommeots-Nomm

**Exhibit A-2**
**Untimely Exclusion Requests from the Settlement Class**

1.  Barbara A Baylard on behalf of
    Jonathan Steward, Deceased

## Exhibit A-3
### Timely Exclusion Requests from the Certified Class

1. Joseph Baczynski
2. Elese M Talone
3. Alberto Coll
4. Donald B Gibson
5. Cynthia Winterhalter
6. Gloria Danet
7. Howard Easton
8. Marta Hage
9. Jennifer Jarret
10. Michael Niegel
11. Sandra Ellis
12. Jacqueline Suzanne Jones
13. Carol J. Arney
14. Robert De Bie
15. Hiroshi Matsuo
16. Cornelia H.M. Kerner-Huipen
17. Joseph Lettieri
18. Barbara J Dash
19. Marilyn B. Hilgers Trust
20. Miriam H. Rothengatter
21. Elizabeth Kesang
22. Cardo Investments Lp
23. Carlos Khouri Silva
24. Berenika Duda Uhryn
25. Arnold S. Berger, Phd
26. Marco Taddia
27. Alfred Borg
28. Ms. Goh Siew Lee
29. Carlos Khouri Silva
30. Bonita Hempel
31. Vivien Joan Lambert
32. S. Fil
33. Kenneth H. Peok Jr.
34. Michael Canry
35. Mark Francis Boffa
36. Antje Everink
37. Irmell Paanu-Eskola
38. John Mostyn
39. Linda L. Johnson
40. Tuomo Tainela
41. Scott L. Mccarthy
42. Luca Razzi
43. Ziad Odeh
44. Oran Cunning
45. Virginia Long
46. Russell Martin
47. Karalee A Moore

1

## Exhibit A-4
## Untimely Exclusion Requests from the Certified Class

1. Peter Craig
2. Anna Mounier
3. Agnes Prince-Crespel
4. Tay Hong Neo Catherine
5. Luca Razzi
6. Jeanne Newton
7. George Risly
8. Cheung Wai Chung



**SUPERIOR COURT OF SAN MATEO COUNTY**

400 County Center          800 North Humboldt Street
Redwood City, CA 94063          San Mateo, CA 94401

(650) 261-5100
www.sanmateocourt.org

**FILED**

SAN MATEO COUNTY

7/27/2023

**Clerk of the Superior Court**

/s/ Andrea Daley

DEPUTY CLERK

### CLERK'S CERTIFICATE OF SERVICE BY MAIL

Date:                    7/27/2023

In the Matter of:        JAMES RAGSDALE vs MICRO FOCUS INTERNATIONAL PLC

Case No.:                18-CIV-01549

Documents:               JUDGMENT AND ORDER GRANTING FINAL APPROVAL, APPROVING PLAN OF ALLOCATION, AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVING SERVICE AWARDS

     I certify that I am a Deputy Clerk of the San Mateo County Superior Court, that I am not a party to this cause, and that the above-listed documents were served upon the persons whose names and addresses are set forth below, on this date in San Mateo County, California, by placing the documents for collection and mailing so as to cause it to be mailed with the United States Postal Service by first class mail in a sealed addressed envelope with postage fully prepaid, following standard court practices. I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on: 7/27/2023          Neal I Taniguchi, Court Executive Officer/Clerk

                 By:    /s/ Andrea Daley

                     Andrea Daley, Deputy Clerk

<u>Copies Mailed To:</u>

    SEE ATTACHED SERVICE LIST:

Rev. Jun. 2016

SERVICE LIST
*Micro Focus*, Class Action Master File 18CIV1549
as of July 2023

Plaintiffs' Co-Lead Counsel:

MARK MOLUMPHY
TYSON REDENBARGER
JULIA PENG
COTCHETT PITRE & McCARTHY LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
(650) 697-6000
mmolumphy@cpmlegal.com
tredenbarger@cpmlegal.com
jpeng@cpmlegal.com

JAMES JACONETTE
ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
(619) 231-1058
jamesj@rgrdlaw.com

JOSEPH RUSSELLO
ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100
jrussello@rgrdlaw.com

JOHN JASNOCH
JOSEPH PETTIGREW
SCOTT + SCOTT
600 West Broadway, Suite 3300
San Diego, CA 92101
(619) 233-4565
jjasnoch@scott-scott.com
jpettigrew@scott-scott.com

JEFFREY JACOBSON
SCOTT + SCOTT
The Helmsley Building, 17th Floor
230 Park Avenue
New York City, NY 10169
(212) 223-6444

3

jjacobsen@scott-scott.com

AMANDA LAWRENCE
SCOTT + SCOTT
156 South Main Street
P.O. Box 192
Colchester, CT 06415
(860) 537-5537
alawrence@scott-scott.com

Attorneys for Defendants:

LEE RUBIN
CHRISTOPHER KELLY
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-2000
lrubin@mayerbrown.com
cjkelly@mayerbrown.com

SARAH BALKISSOON
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
(650) 331-2000
sbalkissoon@mayerbrown.com

TIMOTHY CAMERON
LAUREN ROSENBERG
PERRY GOFFNER
CRAVATH SWAINE & MOORE LLP
825 Eighth Avenue
New York City, NY 10019
(212) 474-1000
tcameron@cravath.com
lrosenberg@cravath.com

Attorneys for Hsu:

DANIEL BERGESON
JOHN PERNICK
ADAM TRIGG
BERGESON LLP
111 North Market Street, Suite 600
San Jose, CA 95113
(408) 291-6200

4

# EXHIBIT O

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

CLAIR REYNOLDS, *et al.*,

       Plaintiffs,

       v.

FCA US LLC,

       Defendant.

Case No. 2:19-cv-11745-MAG-EAS

Hon. Mark A. Goldsmith

Magistrate Judge Elizabeth A. Stafford

## ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS (Dkt. 96)

THIS MATTER having come before the Court for consideration of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards ("Fee Motion");

WHEREAS, Defendant FCA US LLC ("FCA US") and Plaintiffs Clair Reynolds, Monica Martirano, William Martin Powers, Trina Hancock, Melinda Martinez, and Brady Laing (collectively, "Plaintiffs" or "Class Representatives"), by and through their attorneys, reached a Class Settlement (the "Settlement");

WHEREAS, the Parties submitted the Settlement Agreement together with Plaintiffs' Unopposed Motion for Preliminary Approval of the proposed settlement to the Court;

WHEREAS, the Court provisionally certified a Settlement Class and gave its preliminary approval of the Settlement on October 26, 2022 (the "Preliminary

Approval Order") and directed the Parties to provide notice to the Class of the proposed Settlement and the Final Approval Hearing by regular mail and via the internet;

WHEREAS, the Court-appointed Settlement Claims Administrator CPT Group Administration effectuated notice to the Settlement Class in accordance with the Preliminary Approval Order;

WHEREAS, Plaintiffs submitted their Fee Motion on April 5, 2023;

WHEREAS, on April 19, 2023, the Court conducted the Final Approval Hearing to determine whether the proposed Settlement is fair, reasonable, and adequate, whether the Settlement should be granted final approved by this Court; and whether the Court should grant Plaintiffs' Fee Motion; and

WHEREAS, the Parties having appeared at the Final Approval Hearing;

THEREFORE, after reviewing the pleadings and evidence filed in support of Plaintiffs' Fee Motion, all objections and responses thereto, and hearing from the attorneys for the Parties,

**IT IS ON THIS 27th day of June, 2023, ORDERED and, ADJUDGED that the Court finds and orders as follows**:

1. All terms herein shall have the same meaning as defined in the Settlement Agreement.

2.      This Order incorporates and makes part hereof the Settlement Agreement.

3.      This Court has jurisdiction over the subject matter of this Litigation and over the Parties to this Litigation including all Settlement Class Members.

4.      Notice to the Settlement Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, by mailing such Notice by first-class mail. The Settlement Claims Administrator, CPT Group Administration, also placed the Notice on the settlement website. Thus, notice has been given in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.

5.      The Settlement, including the requested fees and expenses, was a result of arm's-length negotiation by experienced counsel with an understanding of the strengths and weaknesses of their respective cases. In its Final Order, the Court has determined that the Settlement, including the requested fees and expenses, is fair, reasonable, and adequate, and serves the best interests of the Settlement Class, in light of all the relevant factors.

6.      The Parties and Settlement Class Members have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of this Settlement.

7. The Court received two objections to the relief requested in the Fee Motion.

a. The objection of Larry D. Killion ("Killion Objection") (ECF No. 93) is overruled. The Killion Objection's challenge to the contingent nature of the requested attorneys' fees is not well taken and inconsistent with the law of this Circuit. Further, the information provided in the Killion Objection fails to establish standing as a member of the Settlement Class because the Vehicle Identification Number provided is not a Class Vehicle according to FCA US's records.

b. The objection of FCA US LLC (ECF No. 98) was withdrawn after Plaintiffs' opposition (ECF No. 102) was filed. *See* ECF No. 103.

8. Class Counsel are hereby awarded attorneys' fees and expenses in the amount of $3,500,000, a sum which the Court finds to be fair and reasonable. This sum includes the $201,882,84 in litigation expenses that are approved by the Court. The attorneys' fees and expenses awarded will be paid to Class Counsel by FCA US in accordance with the terms in the Settlement.

9. In making this award of attorneys' fees and expenses, the Court has considered and found that the requested fee award is reasonable because:

a. Settlement Class Members will benefit significantly from the Settlement that occurred because of the efforts of Class Counsel;

b. The fee sought by Class Counsel has been reviewed and approved as reasonable by Plaintiffs, who oversaw the prosecution and resolution of the Action;

c. Notice was mailed to potential Settlement Class Members stating that Class Counsel would apply for attorneys' fees and expenses in an amount not to exceed $3,950,000 and service awards to Plaintiffs in amounts of $4,000 each;

d. Class Counsel have conducted the Litigation and achieved the Settlement with diligent advocacy against experienced and skilled opposing counsel;

e. The Litigation raised a number of complex issues;

f. Had Class Counsel not achieved the Settlement, there would remain a significant risk Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendant;

g. Class Counsel devoted more than 4,428 hours, with a lodestar value of more than $2,800,000 million based on a reasonable number of hours at reasonable rates, to achieve the Settlement;

h. The amount of attorneys' fees and expenses awarded are fair, reasonable, appropriate, and consistent with awards in similar cases; and

      i.  The service awards to Plaintiffs, $4,000 each for a total of $24,000, are separately paid by Defendant and in addition to all other monies paid and relief afforded to the Class pursuant to the Settlement.

10.    Plaintiffs Clair Reynolds, Monica Martirano, William Martin Powers, Trina Hancock, Melinda Martinez, and Brady Laing are hereby awarded $4,000 each (for an aggregate total of $24,000) for their representation of the Settlement Class, which the Court concludes is a reasonable method of compensating the Class Representatives for the time and effort expended in assisting the prosecution of this litigation and the risks incurred by becoming a litigant.

11.    Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

12.    Co-Lead Counsel shall have the discretion to allocate the $3,500,000 in attorneys' fees and expenses awarded in this Order to all Class Counsel in their sound discretion.

13.    The Court finds that no just reason exists for delay in entering this Order. Accordingly, the Clerk is hereby directed to enter this Order.

**IT IS SO ORDERED**

Dated:  June 27, 2023                s/Mark A. Goldsmith
        Detroit, Michigan              MARK A. GOLDSMITH
                                United States District Judge

# EXHIBIT P

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PUBLIC EMPLOYEES RETIREMENT
SYSTEM OF MISSISSIPPI,

                  Lead Plaintiff,


CRAIG GORDON, Individually and
On behalf of all others
Similarly situated,

                  Plaintiffs,

          v.                           18 CV 7143 (JMF)

NIELSEN HOLDINGS PLC, *et al.*,

                  Defendants.          Hearing
                                       (via Telephone)
------------------------------x
                                       New York, N.Y.
                                       July 20, 2022
                                       4:00 p.m.

Before:

                  HON. JESSE M. FURMAN,

                                       District Judge


                        APPEARANCES

LABATON & SUCHAROW LLP
     Attorneys for Lead Plaintiff
BY:  CHRISTINE M. FOX

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for Plaintiffs
BY:  ELLEN GUSIKOFF STEWART

SIMPSON THACHER & BARTLETT LLP
     Attorneys for Defendants
BY:  ALAN C. TURNER
     TYLER ANGER


                SOUTHERN DISTRICT REPORTERS, P.C.•••
                      (212) 805-0300

THE COURT: Good afternoon. This is Judge Furman. We are here in the matter of In Re Nielsen Holdings PLC Securities Litigation, 18 CV 7143.

Before I take appearances from counsel, couple of quick reminders. One, please mute your phone so there is no background noise distraction, especially all those that are on listen-only status. Number two, remember to unmute if or when you wish to say something, and please begin with your name so that the court reporter and I are clear on who is doing the speaking. Number three, a reminder that this is a public conference just as it would be if we were in open court. And, finally, a reminder that the conference may not be recorded or rebroadcast by anyone.

With that, I'll take appearances, beginning with counsel for lead plaintiff.

MS. FOX: Christine Fox from Labaton & Sucharow on behalf of plaintiffs.

MS. STEWART: Good afternoon, your Honor, Ellen Gusikoff Stewart of Robbins Geller, also on behalf of plaintiffs.

THE COURT: Good afternoon.

Counsel for defendants.

MR. TURNER: Good afternoon, your Honor, Alan Turner from Simpson Thacher & Bartlett, representing the defendants, and appearing with me is Mr. Anger, Tyler Anger.

THE COURT: Good afternoon to you as well.

We are here for the fairness hearing in connection with the proposed settlement. I did receive a motion for final approval of the settlement, as well as the plan of allocation for approval of proposed fees, costs, and payments to lead plaintiff and other named plaintiffs.

Earlier today I received and docketed a letter that I received. I am not quite sure why it took so long to make its way to me, but I got it just before this proceeding, which does purport to be an objection to the fee application. It's not clear from the face of the objection that it comes from a class member, but I guess I will presume it is an otherwise valid objection. It does appear to be timely, given when it was sent. I want to just make sure everybody has seen that.

Beyond that, I also received the moving papers, as well as one objection by Mr. Killion to the proposed fee application and supplemental objections, and I have also received a reply memorandum and related filings and then three proposed orders. Number one, I don't know if there was else I should have received, but let me check with you and also check if you have any updates beyond what I would have learned from reading all of those papers.

Ms. Fox.

MS. FOX: Good afternoon, your Honor.

The parties did receive one additional exclusion after

the filing of the reply memo.  While that exclusion appears to be invalid, we wanted to let your Honor know about that.  We also have some additional, more up-to-date metrics from the claims administrator regarding the number of claims that have come in to date, if your Honor would like me to go through that.

THE COURT:  Yes, please.

MS. FOX:  So the claims submission deadline just passed on Friday, July 15.  The notice program, which was very robust, we sent out more than 273,000 notices.  And so far, through electronic mail that has been processed and paper mail that has been opened and processed, the claims administration firm has received 14,700 claims.  Of those 14,700 claims, approximately 12,098 appear to be valid claims and 2602 claims are invalid or are pending submission of additional data.

Now, the claims administration firm reports that they do expect these numbers to continue to increase, especially since the claims submission deadline only passed a few days ago, and there are claims of all sizes that are still being opened and processed.

THE COURT:  Thank you.

Any other relevant or new information?

MS. FOX:  That's all that we have, your Honor.

THE COURT:  Obviously, you have been heard in connection with Mr. Killion's objection.  I don't know if the

letter docketed earlier today requires any additional response, but I wanted to give you an opportunity to respond or be heard on that, if you wish.

MS. FOX:  Certainly, your Honor.

In both our opening memo and in our reply memo, we addressed Mr. Killion's objection, which we feel should be overruled for a number of reasons, including the fact that it's counsel's opinion that the factors raised by Mr. Killion are not the factors which are looked at in this circuit.  And in fact we have set forth in our memo why we are asking for a fee of 25 percent pursuant to the *Goldberger* factors.  And I'm happy to go through any one of those if your Honor would like additional information.

But, in short, we feel that Mr. Killion's objection misses the mark on all fronts.  And with respect to the objection that we just received before the hearing, we will rest on our papers regarding the support for the 25 percent fee requested.

THE COURT:  Mr. Turner, anything you wish to say before I proceed?

MR. TURNER:  Nothing further from the defendants, your Honor.

THE COURT:  Thank you both and thank plaintiffs and lead counsel for their thorough submissions.

I am prepared to rule on the motions at this time, so

I will proceed.

On April 4, I preliminarily approved a settlement and certified a settlement class. That appears at ECF number 140. In the same order, I approved a plan of notice, set deadlines for the filing of claims, exclusions, objections, and final approval papers, and a date for this fairness hearing.

Upon review of plaintiffs' unopposed motion for final approval of the settlement and plan of allocation, *see* ECF number 143, the motion is granted, substantially for the reasons set forth in plaintiffs' thorough memoranda of law. *See* ECF numbers 145, which I will refer to as settlement memorandum, and 148, which I will refer to as the reply.

As an initial matter, nothing material having changed since my preliminary certification order, I find that certification of the settlement class and appointment of the named plaintiffs and class counsel pursuant to Rule 23 are appropriate.

I also find that the notice, which included almost 257,000 copies of the notice by mail, I think, summary notice in the Wall Street Journal and on PR Newswire, *see* ECF number 146-4 at paragraphs 7-8 and the settlement memorandum, pages 20 and 24-25, satisfies the requirements of Rule 23(e)(1) and the due process clause.

Second, I find that the settlement itself is fair, reasonable, and adequate, in light of the factors set forth in

Rule 23(e)(2) and in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). These factors include "the complexity of the litigation, comparison of the proposed settlement with the likely result of litigation, experience of class counsel, scope of discovery preceding settlement, and the ability of the defendant to satisfy a greater judgment." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 292 (2d Cir. 1992).

Here, all of the so-called *Grinnell* factors favor approval except perhaps the ability of the defendant to satisfy a greater judgment, but that factor, standing alone, does not suggest that a settlement is unfair. *See, e.g., Castagna v. Madison Square Garden L.P.*, 2011 WL 2208614 at *7 (S.D.N.Y. June 7, 2011). Among other things, the settlement compares favorably with comparable settlements, *see* the settlement memorandum, 22-23; *see* also ECF number 146-3 at pages 1 and 19, and the settlement was negotiated at arm's length by highly experienced counsel under the supervision of a third-party mediator. *See* settlement memorandum at page 7. Moreover, the litigation was highly complex, with significant risks for the class, and plaintiffs had engaged in substantial litigation and discovery before agreeing to a settlement. *See* settlement memorandums 8-17, 21. Finally, the reaction of the class has been very positive. There were zero objections to the proposed settlement and only one valid request for exclusion. *See* pages 1-2 of the reply and ECF number 149 at paragraphs 4 and 5.

That reaction is especially noteworthy, given the many class members are institutional investors or pension funds.  In short, or, in sum, on balance, the *Grinnell* factors strongly favor approval.

Next, I find that the allocation plan is fair and adequate and has a reasonable rational basis, taking into account "the relative strength and values of different categories of claims."  *In re Telik, Inc. Securities Litigation*, 576 F.Supp.2d 570, 580 (S.D.N.Y. 2008).  *See* also the settlement memorandum, pages 23 and 24.

That leaves the motion for fees and costs.  The Second Circuit has articulated six factors that courts must consider when determining whether to award attorneys' fees where the settlement contains a common fund:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *See In re World Trade Center Disaster Site Litigation*, 754 F.3d 114, 126 (2d Cir. 2014) (quoting *Goldberger v. Integrated Research Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).  In addition to considering those factors, commonly referred to as the *Goldberger* factors, a Court may use one of two methods to calculate attorneys' fees:  The lodestar method or the percentage-of-the-fund method.  *See, e.g., McDaniel v. County of Schenectady*, 595 F.3d

411, 417 (2d Cir. 2010). The "trend in this circuit" favors the percentage method. *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), upon which plaintiffs rely here, and using the lodestar to conduct a cross-check.

Applying the *Goldberger* factors here, I find that the proposed fee award is reasonable. To what I've already said, since there is substantial overlap between the *Grinnell* factors and the *Goldberger* factors, I will add that the percentage proposed is consistent with the percentage of fees commonly awarded in this circuit in comparable litigations. *See* settlement memorandum, pages 26-28 (citing cases, including several of my own prior decisions). The reasonableness of the fee award is further confirmed by the lodestar cross-check, which results in a multiplier of 1.7, which is also comparable, if not below, those in other, similar cases both within and outside of this district. *See* the settlement memorandum at pages 33-35. That confirms that the "otherwise reasonable personal fee" does not result in a windfall. *In re Colgate Palmolive Company ERISA Litigation*, 36 F.Supp. 3d 344, 353 (S.D.N.Y. 2014).

Once again, the reaction of the class supports that conclusion. One and only one class -- arguably, two class members did object to the proposed fee award, *see* ECF numbers 146-9, 147, and the order of earlier today, 155, that small number is itself "powerful evidence that the requested fee is

fair and reasonable." That's also from *In re Telik, Inc. Securities Litigation* at page 594. Moreover, I find that the one objection from Mr. Killion is flawed both as a matter of law and a matter of fact, substantially for the reasons set forth in the reply at pages 5-7. The objection is particularly off base in suggesting that lead counsel's talent and experience is a reason to discount their fee; such a conclusion would provide a perverse incentive to experienced counsel to seek leadership positions, which would obviously redound to the disadvantage of plaintiffs' classes.

With respect to the objection that I received earlier today, number one, as I stated earlier, it's not readily apparent from the letter that it is even a valid objection from a member of the class. And, in any event, it provides no reason, no citation to any law or the relevant standards. Bottom line, no basis to conclude that the proposed fee award is unreasonable.

Accordingly, I exercise my "very broad discretion," that's from *Goldberger*, 209 F.3d at 57, to overrule the one or possibly two objections and conclude that the proposed fee award is fair, reasonable, and appropriate. I further find that lead counsel are entitled to the $850,266.93 in expenses that they seek in reimbursement, substantially for the reasons explained in their motion. *See* pages 35-37 of the settlement memorandum.

Finally, I approve of service awards to lead plaintiff Mississippi PERS and additionally named plaintiff Monroe County, substantially for the reasons explained in their motion as well. *See* pages 37-39. *See* also ECF number 146-1 and 146-2; as well as *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015).

That resolves the pending motions. I will go ahead and sign the proposed orders making any changes that I think are appropriate.

Is there anything else for us to discuss, Ms. Fox?

MS. FOX: No. Thank you, your Honor. Appreciate the time and consideration.

THE COURT: Thank you for your efforts and, again, your thorough submissions.

Anything else from defendants. Mr. Turner?

MR. TURNER: Nothing, your Honor. Thank you.

THE COURT: Again, I will deal with the orders promptly.

With that, we are adjourned. I wish everybody a pleasant afternoon. Stay safe and healthy.

(Adjourned)